**LOWENSTEIN SANDLER LLP**
Arielle Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING AND (D) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned proposed counsel, submits this motion (the "Motion") for entry of an interim order[2] substantially in the form attached hereto (the "Interim Order"), pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 and Fed. R. Bankr. P. 4001, (i) approving the use of cash collateral, (ii) providing adequate protection, (iii) scheduling a final hearing (the "Final Hearing") pursuant to Fed. R. Bankr. P. 4001; and (iv) granting related relief. In support of this Motion, the Debtor submits and

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

[2] A proposed final order granting this Motion will be submitted in advance of the final hearing on the Motion.

relies on the *Declaration of Brendan Murray in Support of First Day Relief* (the "First Day Declaration"), filed contemporaneously herewith, and respectfully states as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 dated as of September 18, 2012 (Simandle, C.J.). Venue is proper in this District pursuant to 28 U.S.C. sections 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. section 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the applicable Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

3. The Debtor consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

**CONCISE STATEMENT OF THE RELIEF REQUESTED PURSUANT TO BANKRUPTCY RULE 4001(b)(1)(B)**

4. Pursuant to the Motion, the Debtor requests authority to use the Cash Collateral (as defined below)[3] of the Debtor's secured lender PNC Bank, National Association ("PNC Bank" or "Prepetition Lender"). Without the use of the Cash Collateral, the Debtor will be unable to pay its ordinary and necessary business expenses including, but not limited to, payroll and related obligations, taxes, utilities, rents, subcontractors, vendors and material suppliers, insurance, and the costs of administration of their cases. As a result, the Debtor's operations would cease, thereby

---

[3] Terms not otherwise defined herein shall the meanings ascribed to them in the Interim Order.

resulting in the loss of jobs and causing the Debtor's estate to suffer immediate and irreparable harm.

5. As described below, PNC Bank will be provided adequate protection in exchange for the Debtor's use of the Cash Collateral by virtue of (i) the Debtor making monthly post-petition cash payments equal to the interest due to PNC Bank at the non-default interest rate, (ii) the granting of replacement liens to PNC Bank on all the Debtor's present and after-acquired property only to the extent of diminution of the value of PNC Bank's Collateral after the Petition Date, (iii) granting a super-priority administrative claim under Section 507(b) of the Bankruptcy Code, and (iv) the Debtor continuing to maintain insurance on the Collateral in accordance with the terms of the Prepetition Facilities.

6. The Debtor requests authority to use Cash Collateral in accordance with the budget (the "Budget") attached as Exhibit 1 to the proposed Interim Order. The use of Cash Collateral as requested herein will allow the Debtor to continue operations during the pendency of this case. The use of Cash Collateral will also preserve the value of the Debtor's estate for all parties-in-interest, including the PNC Bank, preserve employment for its employees, and preserve the Debtor's going-concern value through the bankruptcy process.

## BACKGROUND

**A. General Background**

7. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "Chapter 11 Case") in the United States Bankruptcy Court for the District of New Jersey (the "Court").

8. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this

Motion, no request has been made for the appointment of a trustee or examiner and no statutory committee has been appointed in the Chapter 11 Case.

9. A detailed description of the Debtor's business and the facts surrounding the commencement of the Chapter 11 Case is set forth in the First Day Declaration, which is incorporated herein by reference.

**B.    The Debtor's Prepetition Capital Structure**

10. As of the Petition Date, the Debtor has an outstanding line of credit up to the principal amount of $15,000,000, plus accrued interest, fees and other costs (collectively, the "Line of Credit") owed to PNC Bank. The Line of Credit is evidenced by a note (the "PNC Note") and related (i) Borrowing Base Rider and (ii) Security Agreement, each dated as of November 13, 2014 (collectively, as modified or amended, the "Line of Credit Facility").

11. As of the Petition Date, the Debtor is also indebted to PNC Bank under a term loan in the original principal amount of $1,600,000, plus accrued interest, fees and other costs (collectively, the "Term Loan") pursuant to a term note (the "Term Note") dated September 26, 2018. The Term Note is secured by the Security Agreement (collectively, as modified or amended, the "Term Loan Facility," and along with the Line of Credit Facility, the "Prepetition Facilities").

12. To secure the prepetition obligations owed under the Prepetition Facilities, the Debtor granted the Prepetition Lender a first priority security interest in, and liens on, substantially all the Debtor's assets (collectively, the "Prepetition Collateral").

**C.    The Debtor's Prepetition Surety Bond Program**

13. Prior to the Petition Date, Arch Insurance Company, Arch Reinsurance Company and any present or future subsidiary or affiliate or Arch Insurance Company (collectively, "Arch" or "Surety") executed certain performance and payment bonds (the "Bonds") on behalf of the

-4-

Debtor including the Bonds bearing bond numbers and for certain obligees (the "Project Owners") of and for fourteen (14) of the Debtor's ongoing construction projects (the "Bonded Projects") which Bonds relate to certain of the contracts which the Debtor was performing under as of the Petition Date.

14. In order to induce the Surety to execute the Bonds on behalf of the Debtor, the Debtor, as well as certain individuals (collectively, the "Indemnitors"), entered into a General Indemnity Agreement (the "Indemnity Agreement") with the Surety.

15. Arch contends that the progress payments, retainage, change order and claim proceeds that are outstanding and/or which may be earned and come due in the future with respect to the Bonded Projects (collectively, "Bonded Project Proceeds"), when paid by Project Owners constitute trust funds for the benefits of laborers, subcontractors, suppliers and materialmen of the Bonded Projects pursuant to applicable state statutes. Arch further contends that such Bonded Project Proceeds are subject to the interests of Surety under (i) the trust provisions of certain Indemnity Agreements; (ii) where applicable, state statutes; and (iii) common law principles of subrogation to the extent Surety has made or may make payment under the Bonds (the "Trust Fund Beneficiaries").

16. For purposes of Debtor's use of Cash Collateral, Arch seeks to have the Debtor segregate Bonded Project Proceeds from the proceeds and financing for non-bonded projects (the "Non-Bonded Projects") in order to comply with certain statutory and common law obligations such that when Bonded Project Proceeds are paid by Project Owners to the Debtor or its assigns that such Bonded Project Proceeds constitute trust funds and shall be applied exclusively to satisfy Bond obligations and claims of Trust Fund Beneficiaries.

17. The Debtor is working with Arch to address and consensually resolve these issues and anticipates adding appropriate language into the proposed form of order to be presented to the Court in advance of the first day hearing.

## SUMMARY OF CASH COLLATERAL INTERIM ORDER

18. In accordance with the disclosure requirements of D.N.J Local Rule 4001-3, a summary of the material terms of the proposed usage of Cash Collateral, including a description of each of the provisions required to be highlighted by such rules, are set forth in the chart below.[4]

| | |
|---|---|
| *Amount of Cash Collateral Sought to be Utilized* | The Debtor shall use Cash Collateral in the ordinary course of the Debtor's business for the purposes of supporting the Debtor's ongoing operations and working capital needs, to the extent and up to the amounts set forth in the budget attached the Interim Order (as may be amended or modified, the "Budget"). <br><br> Interim Order ¶ 1. |
| *Adequate Protection* | The following adequate protection will be provided: <br><br> Payment of Interest. The Prepetition Facilities shall continue to bear interest at the applicable non-default interest rate as set forth in the underlying loan documents, and is due and payable monthly in accordance with this Interim Order and the Prepetition Facilities without further notice, motion or application, to, or order of, or hearing before this Court. <br><br> Adequate Protection Lien. As adequate protection for any diminution in the value of PNC Bank's interests in the Prepetition Collateral from the Petition Date and thereafter, including any diminution resulting from the use of Cash Collateral on or after the Petition Date, PNC Bank is hereby granted, pursuant to sections 361, 362 and 363 of the Bankruptcy Code, a valid, binding, enforceable and automatically perfected replacement liens on and security interests in (collectively, the "Adequate Protection Liens") all personal property of the Debtor, wherever located and whether created, acquired or arising prior to, on or after the Petition Date, including, without limitation, all of the Debtor's accounts, general intangibles, trademarks, tradenames, patents, copyrights, documents, chattel paper, inventory, and equipment (the "Replacement Collateral," and together with the Prepetition Collateral, the "Collateral"). <br><br> Rights Under Section 507(b) of the Bankruptcy Code. PNC Bank shall |

---

[4] The descriptions of the material terms of the proposed Interim Order provided in this Motion are intended only as a summary thereof. In the event of any inconsistency between the descriptions set forth herein and the terms of the Interim Order, the terms of the Interim Order shall govern. All capitalized terms used but not otherwise defined in this summary chart shall have the meanings ascribed to them in the Motion or, to the extent not defined herein, the Interim Order. References to the Interim Order are provided for sections that must be highlighted for the Court under either Bankruptcy Rule 4001(c) or D.N.J. Local Rule 4001-3.

| | |
|---|---|
| | be entitled to assert an administrative priority claim under section 507(b) of the Bankruptcy Code in the amount, if any, by which the protections afforded herein for the Debtor's use, sale, consumption or disposition of any Pre-Petition Collateral (including, without limitation, Cash Collateral) prove to be inadequate.<br><br>Insurance:  The Debtor shall keep the Collateral fully insured in accordance with the Prepetition Facilities and, to the extent not already the case, shall cause PNC Bank to be named as loss payee on all insurance policies relating to such Collateral.<br><br>Interim Order, ¶ 2. |
| *Effect of Relief on Existing Liens* | The Adequate Protection Liens shall be junior in priority only to any fees payable to the Clerk of this Court or pursuant to 28 U.S.C. § 1930, the United States Trustee.<br><br>Interim Order, ¶ 2.b. |
| *Events of Default; Termination; Change of Control; Filing of Motion for Appointment of Trustee or Examiner* | The Interim Order provides for the following  "Events of Default" (i) the Debtor has failed to discharge any duty or other obligation imposed upon it in this Order, or has otherwise violated any requirement or condition to use of Cash Collateral provided in this Order, and has not cured such failure or violation within five (5) business days after receiving written notice thereof from PNC Bank (provided that the Debtor shall have the ability to seek an emergency hearing within 72 hours to challenge any such written notice, and authority to continue usage of Cash Collateral until the Court rules on such dispute), or (ii) there is pending any motion by the Debtor to dismiss or convert this chapter 11 case to a case under chapter 7.<br><br>Interim Order, ¶ 3.a. |
| *506(c) Rights* | PNC Bank has not consented to any surcharge of any of the Collateral under section 506(c) of the Bankruptcy Code, and no such consent shall be implied from any action, failure to act, or acquiescence by PNC Bank. Likewise, the Debtor and its estate have not waived any rights under section 506(c) of the Bankruptcy Code.<br><br>Interim Order, ¶ 2.b. |
| *Agreement Binding the Debtor or Other Parties in Interest With Respect to the Validity, Perfection, or Amount of the Prepetition Lender's Claim;* | None. |

| | |
|---|---|
| *Waiver of Claims and Challenge Rights* | |
| *Avoidance Actions* | The Replacement Collateral shall not include any claims or causes of action of the Debtor under 11 U.S.C. §§ 544, 547, 548, 549, 550 or 551 ("Avoidance Actions") or any proceeds of any of such claims or causes of action ("Avoidance Proceeds). Interim Order, ¶ 2.b. |

## BASIS FOR RELIEF

19. Without the use of Cash Collateral, specifically in the form of the collection of accounts receivable, the Debtor will be unable to pay salaries, rent, utilities, subcontractors, material suppliers and other operating expenses incurred in the ordinary course of business that are crucial to its ongoing operational needs. Absent the authority to use the Cash Collateral, the Debtor's ability to preserve and maximize the value of its assets will be irreparably harmed and substantially jeopardized. In light of the foregoing, the Debtor seeks Court approval to use Cash Collateral in accordance with the Budget.

20. Under section 363(c)(2) of the Bankruptcy Code, the Debtor may not use cash collateral without the consent of any entity with an interest in such cash collateral or authority granted by the Court. The Debtor is in negotiations with PNC Bank for its consent to the use of Cash Collateral and hopes to reach a consensual resolution of this Motion with PNC Bank.

21. Bankruptcy Code section 363(e) provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to:

(a) lump sum or periodic cash payments to the extent that such use will result in a decrease in value of such entity's interest in the property; (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of such entity's interest in the property; and (c) such other relief as will result in the realization by the entity of the indubitable equivalent of such entity's interest in the property. 11 U.S.C. § 361.

22. By adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996).

23. While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by case basis. *See In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *see also In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Swedeland Dcv. Grp.*, Inc., 16 F.3d 552, 564 (3d Cir. 1994); *In re Mosello,* 195 BR. 277, 289 (Bankr. S.D,N.Y. 1996); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy § 361.01[1] at 361-66 (15th ed. 1993)) (explaining that what constitutes adequate protection is not defined, and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

24. For example, courts have held that replacement liens are sufficient adequate protection for use of cash collateral. *See In re Mt. Olive Hospitality, LLC*, Civil No. 13-3395 (RBK), 2014 WL 1309953, at *3, n.6 (D.N.J. March 31, 2014); *see also In re Airport Inn Assocs.,*

*Ltd.*, 132 B.R. 951, 960 (Bankr. D. Col. 1990) ("The court could order a lien in postpetition accounts receivable as adequate protection if that relief was requested . . . ."); *In re Int'l Design & Display Grp., Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (court authorized debtor to use cash collateral and, as adequate protection, granted secured creditor replacement lien on all postpetition accounts receivable, inventory and contracts to the extent the creditor's collateral was depleted).

25. The Interim Order provides for the continued payment of monthly interest at the non-default rate of interest on the Prepetition Facilities as adequate protection. The Interim Order also provides adequate protection of the interests of PNC Bank in the form of valid, binding, enforceable, non-avoidable and automatically perfected replacement security liens on the Debtor's post-petition assets to the same extent, validity and priority that existed as of the Petition Date, to the extent of any post-petition diminution in value of the Prepetition Collateral.

26. Moreover, as set forth in the Interim Order, to the extent that the adequate protection provided for fails to protect PNC Bank against any diminution in value of its collateral, PNC Bank is also being granted a superpriority administrative expense claim as provided for in Section 507(b) of the Bankruptcy Code. The Debtor believes that such adequate protection is fair and reasonable.

27. The Debtor's ability to pay for goods and services is crucial to its continued operational needs and the employment of the Debtor's employees during the pendency of this chapter 11 case. Accordingly, the Debtor respectfully submits that the use of Cash Collateral on the terms set forth in the attached proposed Interim Order provides PNC Bank with adequate protection and is in the best interest of the Debtor's estate, its creditors and all parties in interest and, therefore, should be authorized by this Court.

**INTERIM APPROVAL SHOULD BE GRANTED**

28. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after service of such motion. The court, however, may conduct an expedited hearing prior to the expiration of such 14-day period and authorize the use of cash collateral where, as here, such relief is necessary to avoid immediate and irreparable harm to a debtor's estate.

29. For the reasons set forth above, the failure to obtain approval of the use of Cash Collateral on an expedited basis would very likely lead to immediate and irreparable harm to the Debtor's estate and the value of the Debtor's assets. Accordingly, the Debtor seeks immediate entry of the Interim Order to prevent immediate and irreparable harm pending the Final Hearing, pursuant to Bankruptcy Rule 4001(b).

**REQUEST FOR FINAL HEARING**

30. Pursuant to Bankruptcy Rules 4001(b)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the final hearing for parties to file objections to the Motion.

**WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)**

31. To implement the foregoing successfully, the Debtor seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**WAIVER OF MEMORANDUM OF LAW**

32. The legal basis upon which the Debtor relies is set forth herein. The Motion does not raise any novel issues of law. Therefore, the Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3).

## NO PRIOR REQUEST

33. No prior motion for the relief sought herein has been made to this or to any other court.

## NOTICE

34. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (ii) counsel for PNC Bank, the Debtor's secured lender, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman; (iii) the Internal Revenue Service, 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016; (iv) the Office of the United States Attorney, 970 Broad Street, Suite 700, Newark, NJ 07102; (v) the New Jersey Division of Taxation Compliance and Enforcement - Bankruptcy Unit, 50 Barrack Street, 9th Floor, Trenton, NJ 08695; (vi) the Office of the Attorney General of the State of New Jersey, Division of Law, Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08625; (vii) the Pennsylvania Department of Revenue, Bankruptcy Division, P.O. Box 2809467, Harrisburg, PA 17128-0946; (viii) Commonwealth of Pennsylvania Office of Attorney General, 16th Floor, Strawberry Square, Harrisburg, PA 17120; (ix) New York State Department of Taxation and Finance, Attention: Office of Counsel, Building 9, W A Harriman Campus, Albany NY 12227; (x) New York State Office of Attorney General, The Capitol, Albany, NY 12224-0341; (xi) Arch Insurance Company c/o Armen Shahinian, Esq., Chiesa Shahinian & Giantomasi PC, One Boland Drive, West Orange, NJ 07052 and 11 Times Square, 31st Floor, New York, NY 10036; (xii) the Debtor's twenty largest unsecured creditors; and (xiii) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

**WHEREFORE**, the Debtor respectfully request that this Court: (i) enter an order, substantially in the form submitted herewith, granting the relief requested herein; and (ii) grant the Debtor such other and further relief as the Court deems just and proper.

Dated:  September 11, 2019						Respectfully submitted,

											**LOWENSTEIN SANDLER LLP**

											/s/ *Kenneth A. Rosen*
											Kenneth A. Rosen, Esq.
											Bruce Buechler, Esq.
											Joseph J. DiPasquale, Esq.
											Mary E. Seymour, Esq.
											Jennifer B. Kimble, Esq. (*pro hac vice* pending)
											Arielle Adler, Esq.
											One Lowenstein Drive
											Roseland, New Jersey 07068
											(973) 597-2500 (Telephone)
											(973) 597-2400 (Facsimile)
											krosen@lowenstein.com
											bbuechler@lowenstein.com
											jdipasquale@lowenstein.com
											mseymour@lowenstein.com
											jkimble@lowenstein.com
											aadler@lowenstein.com

											*Proposed Counsel to the Debtor and Debtor-in-Possession*