**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC**,[1]<br><br>                    Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date: October __, 2019 at 10:00 a.m.<br><br>Objection Deadline: October __, 2019 at 4:00 p.m. |

**DEBTOR'S MOTION FOR AN ORDER APPROVING OF A SETTLEMENT AND COMPROMISE BY AND AMONG THE DEBTOR AND VETERANS ROAD SPE LLC PURSUANT TO FED. R. BANKR. P. 9019**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned proposed counsel, hereby submits this motion (the "Motion") seeking the entry of an order, substantially in the form submitted herewith (the "Proposed Order"), approving a Stipulation of Settlement by and among the Debtor and Veterans Road SPE LLC pursuant to Fed. R. Bankr. P. 9019 and represents as follows:

**JURISDICTION, VENUE, AND STATUTORY PREDICATES**

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The Debtor consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4. The statutory predicates for the relief requested in this Motion are sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 9019, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5. On September 11, 2019 (the "Petition Date"), the above-captioned Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case"). The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this Chapter 11 Case.

6. On September 23, 2019, the Office of the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee") in this Chapter 11 Case.

7. Additional details regarding the Debtor's business and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Brendan Murray in Support of First Day Relief* (the "First Day Declaration") [Docket No. 15].

## THE DEBTOR'S BUSINESS OPERATIONS

8. As noted in the First Day Declaration, the Debtor operates a substantial construction business. In calendar year 2018, the Debtor collected approximately $292,034,763 in gross revenue. The Debtor depends on payments from project owners upon completion of the

project and at certain stages of the project. The Debtor's receivables from those project owners are assets of the Debtor and property of its bankruptcy estate. If the Debtor cannot finish a project, it may be subject to future obligations and additional liabilities. Further, the Debtor is concerned that various subcontractors, materialmen and other suppliers may lien job sites or continue to prosecute their construction liens to collect on monies due for pre-petition services and/or goods supplied by filing or foreclosing on construction liens against the real property on which the Debtor does (or did) supervise construction and development despite the automatic stay (which may not apply in certain circumstances). Only through ongoing operations will the Debtor be able to realize approximately $75,000,000 (including retainage) in open accounts receivable.

9. The Debtor and Veteran Road SPE LLC ("Veterans Road" or the "Owner") engaged in arms-length negotiations in an effort to resolve their dispute concerning the Debtor's performance on the Veteran's Road Self Storage construction project located at 2601 Veterans Road West, Staten Island, New York 10309 (the "Project"). As a result of such negotiations, they have entered into a settlement agreement, a copy of which is attached as Exhibit A (the "Settlement Agreement")[2].

10. Pursuant to the Settlement Agreement,[3] the Parties have agreed, *inter alia*, that to avoid damages to the Debtor and to the Owner that would arise from further delays in completing the Project, the Debtor will continue to supervise its subcontractors on the Project through completion of same; the Debtor authorizes the Owner and Owner's lender to pay subcontractor amounts due for all post-petition work as necessary to obtain the Temporary Certificate of Occupancy (the "TCO") for the Project and the Final or Permanent Certificate of Occupancy (the "Final CO"); Owner or its lender will pay the Debtor reasonable Project management costs incurred to obtain the TCO and the Final CO; and Owner and/or its lender will pay the Debtor all remaining contract balances and all retainage in excess of $1 Million

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement.
[3] This Motion contains a summary of the settlement terms only. In the event of any conflict between the terms of the Settlement Agreement and this Motion, the Settlement Agreement shall govern.

Dollars (approximately $260,000) upon delivery of the TCO, which amount shall be placed into escrow.

## RELIEF REQUESTED

11. By this Motion, the Debtor seeks the entry of an order (i) approving the Settlement Agreement between the Debtor and the Owner pursuant to Bankruptcy Rule 9019; (ii) authorizing the Owner and/or its lender to issue payments directly to subcontractors amounts due for post-petition work as necessary to complete the Project; and (iii) approving the mutual releases contemplated under the Settlement Agreement.

## BASIS FOR RELIEF

**A.    Approval of the Settlement**

12. Bankruptcy Rule 9019(a) provides, in pertinent part, that upon a motion, and after notice and a hearing, the Court may approve a compromise or settlement. Approval of a settlement remains in the sound discretion of the Bankruptcy Court. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986). In determining whether to approve a settlement, the Court should determine whether the proposed settlement is in the best interests of the estate. *Id; see also, In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).

13. The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (noting that "[c]ompromises are 'a normal part of the process of reorganization.'") (citation omitted), *reh'g denied*, 391 U.S. 909 (1968).

14. Further, the settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Penn Central Transp.*, 596 F.2d 1102 (3d Cir. 1979); *In re Mavrode*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997).

15. The Third Circuit, applying *TMT Trailer* in the context of a settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

16.     In determining whether to approve a settlement, the Bankruptcy Court should not substitute its judgment for that of the debtor and the parties. *See Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803. The Bankruptcy Court is not to decide the numerous questions of fact or law raised by the controversy, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Cosoffi v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608, 613 (2nd Cir.) (citations omitted), *cert denied*, 464 U.S. 822 (1983); *Mavrode*, 205 B.R. at 720. Thus, in reaching its decision regarding the approval of the proposed compromise this Court need not conclusively determine the claims which are the subject of the compromise, nor find that the compromise constitutes the best result obtainable. *See W.T. Grant*, 699 F.2d at 613.

17.     The Debtor respectfully submits that the proposed settlement set forth in the Settlement Agreement is fair and prudent, is in the best interests of the estate, and falls within the "range of reasonableness." The Debtor and Veterans Road agree that the Debtor is presently in default under the Contract and that Veterans Road has the right to seek to terminate the Contract. The Debtor has an equity interest in the Project (the "<u>Equity Participation</u>"). If the Contract were terminated, the Debtor would lose a substantial amount of Contract revenue and Retainage, as well as its Equity Participation. Veterans Road would also suffer substantial damages, including the costs of obtaining a replacement contractor and additional delay. The Settlement Agreement will allow the Debtor to finish the Project, which is extremely close to completion, in accordance with the terms of the Contract as modified in the Settlement Agreement.

18.     Completing the Veteran's Road Project and obtaining issuance of the TCO and Final CO will inure to the benefit of the Debtor's estate as the Debtor will receive Project management fees if the Project is completed, as well as remaining Contract balances and

Retainage in excess of $1 Million dollars. As the Owner is willing to issue payment of post-petition amounts due to subcontractors as necessary to obtain the TCO and the Final CO in exchange for a mutual release of claims, the proposed settlement also relieves the Debtor from go forward liabilities and obligations it may not be able to honor and reduces claims against the estate. Thus, the Settlement Agreement will benefit the estate of the Debtor and its creditors and is a reasonable exercise of the Debtor's business judgment.

19. In addition, the Debtor believes the Settlement Agreement is in the best interest of its estate and creditors as future proceedings could be protracted and expensive, may require the resolution of complex issues and involve substantial uncertainties and risks inherent in litigation.

20. Finally, the proposed mutual releases between the Debtor and the Owner are reasonable and appropriate under the circumstances. The mutual releases between the Debtor and the Owner are an essential component of the Settlement Agreement. The Owner's agreement to continue with the Project, to pay subcontractors amounts due for post-petition work as necessary to obtain the TCO and the Final CO and to pay the Debtor for Project management costs, the outstanding Contract balances and Retainage under the Contract, is in exchange for the mutual releases provided for in the Settlement Agreement. Moreover, absent the releases, it is unlikely that the Debtor would receive the proceeds of the Debtor's Equity Participation in the Project. With these considerations in mind, the Debtor has concluded that the releases contemplated under the Settlement Agreement are justified.

21. For the foregoing reasons, the Debtor submits that the Settlement Agreement is (i) fair and equitable, (ii) a reasonable resolution, (iii) in the best interests of the Debtor and its estate, and (iv) in the paramount interests of the Debtor's creditors. The Debtor requests that the Court approve the Settlement Agreement.

## WAIVER OF BANKRUPTCY RULES 6004 AND 6006

22. The Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rules 6004(a) and 6006(c), and (ii) the stay of any order under Bankruptcy Rules 6004(h) and 6006(d),

to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate and creditors.

## WAIVER OF MEMORANDUM OF LAW

23. The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies is set forth herein and the Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

24. No prior request for the relief sought in this Motion has been made to this or any other court.

## NOTICE

25. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (ii) counsel for PNC Bank, the Debtor's secured lender, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman; (iii) counsel to the Committee, McManimon Scotland & Baumann; (iv) counsel to Veterans Road SPE LLC, Westerman Ball Ederer Miller Zucker & Sharfstein, LLP; (v) the Internal Revenue Service, 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016; (vi) the Office of the United States Attorney, 970 Broad Street, Suite 700, Newark, NJ 07102; (vii) the New Jersey Division of Taxation Compliance and Enforcement - Bankruptcy Unit, 50 Barrack Street, 9th Floor, Trenton, NJ 08695; (viii) the Office of the Attorney General of the State of New Jersey, Division of Law, Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08625; (ix) the Pennsylvania Department of Revenue, Bankruptcy Division, P.O. Box 2809467, Harrisburg, PA 17128-0946; (x) Commonwealth of Pennsylvania Office of Attorney General, 16th Floor, Strawberry Square, Harrisburg, PA 17120; (xi) New York State Department of Taxation and Finance, Attention: Office of Counsel, Building 9, W A Harriman Campus, Albany NY 12227; (xii) New York State Office of Attorney General, The Capitol, Albany, NY 12224-0341; and (xiii) all parties that have

requested to receive notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, in the form submitted herewith, (i) approving of the Settlement Agreement and authorizing and directing the Debtor to perform its obligations under the Settlement Agreement, (ii) approving the mutual releases set forth in the Settlement Agreement, and (iii) granting the Debtor such other and further as the Court deems just and equitable.

Dated: September 30, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Arielle B. Adler, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
aadler@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
jkimble@lowenstein.com
krosen@lowenstein.com
mseymour@lowenstein.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*