| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY**<br>Caption in Compliance with D.N.J. LBR 9004-1<br><br>Duane Morris LLP<br>James J. Holman, Esq. (jjholman@duanemorris.com)<br>Sommer L. Ross, Esq. (slross@duanemorris.com)<br>222 Delaware Avenue, Suite 1600<br>Wilmington, DE 19801-1659<br>T: (302) 657-4900<br>F: (302) 657-4901<br><br>*Counsel to PNC Bank, National Association* | |
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date: October 8, 2019 at 11:30 a.m. |

**LIMITED OBJECTION OF PNC BANK, NATIONAL ASSOCIATION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION WAGES [DOCKET NO. 8] AND ITS SUPPLEMENT [DOCKET NO. 126]**

PNC Bank, National Association ("PNC"), by and through its undersigned counsel, hereby files this limited objection ("Limited Objection") to the (i) *Debtor's Motion For Interim And Final Orders (I) Authorizing But Not Directing The Debtor To (A) Pay Pre-Petition Wages, Salaries, And Related Obligations, (B) Pay And Remit Pre-Petition Payroll Taxes And Other Deductions To Third Parties, And (C) Honor Employee Benefit Programs In The Ordinary Course Of Business; (II) Authorizing And Directing Banks To Honor Checks And Transfers For Payment Of Pre-Petition Employee Obligations; And (III) Granting Related Relief Filed* [Docket No. 8] (the "Original Motion") and the (ii) *Supplement to Debtors [sic] Motion for Interim and Final Orders (I) Authorizing but not Directing the Debtor to (A) Pay Pre-Petition Wages, Salaries, and Related*

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

DM3\6104092.2

*Obligations, (B) Pay and Remit Pre-Petition Payroll Taxes and Other Deductions to Third Parties, and (C) Honor Employee Benefit Programs in the Ordinary Course of Business; (II) Authorizing and Directing Banks to Honor Checks and Transfers for Payment of Pre-Petition Employee Obligations; and (iii) Granting Related Relief* [Docket No. 126] (the "Supplement" and, together with the Original Motion, the "Employee Wages Motion") filed by the above-captioned debtor ("Debtor"). In support of this Limited Objection, PNC respectfully states as follows:

## PRELIMINARY STATEMENT

1. It is no secret that the Debtor's chapter 11 case hinges on the Debtor's ability to negotiate global settlement agreements with most, if not all, of its project owners and project stakeholders, and that the Debtor has a very narrow window within which to accomplish this goal.

2. While the Debtor recently indicated that it is making progress in reaching a resolution with certain project owners and subcontractors, it is unclear that there will be a sufficient number of settlements reached and that those settlements will (i) generate sufficient cash flow to the Debtor's estate and PNC, and/or (ii) cover the administrative costs associated with the Debtor's chapter 11 case.

3. PNC does not dispute that if the Debtor is going to remain a debtor-in-possession the relief requested in the Wages Motion is necessary, as is payment to the Debtor's employees. However, since the Debtor has only a finite amount of cash on hand, all of which is PNC's cash collateral, and no current debtor-in-possession facility exists or appears to be on the horizon, PNC files this Limited Objection to note that the Debtor has not yet justified the relief requested in the Supplement and, as a result, does not consent to use of its Cash Collateral to pay the Prepetition Amex Charges (as defined herein).

2

## RELEVANT FACTUAL BACKGROUND

### A. The Debtor

4. The Debtor is a commercial construction services firm that provides construction management services, *i.e.*, professional management services for construction projects. The Debtor does not perform construction work itself, but instead partners with subcontractors through the pre-construction, construction, and post-construction phases of a project to accomplish the goals established by the project owner and the project owner's professionals. *See Declaration of Brendan Murray in Support of First Day Relief* ("First Day Declaration"), Docket No. 15 at ¶ 5.

5. Specifically, the Debtor employs and oversees the work of vendors, contractors, subcontractors and materialmen (together, "Subcontractors") on the projects. Typically, the project owners compensate the Debtor pursuant to progress payment orders for the work performed on their projects. In turn, the Debtor pays the Subcontractors for the goods and/or services they provided for the particular project. *Id.* at ¶ 13. Project owner payments and receivables are the Debtor's sole source of operating revenue. *Id.* at ¶ 14.

6. Prior to the Petition Date (defined below), the Debtor was unable to fully service all of its project owners' projects. *Id.* at ¶ 34. The Debtor was also not able to ensure that its Subcontractors were paid on the agreed-upon schedule. *Id.* As a result, certain Subcontractors stopped performing on their contracts with the Debtor and certain project owners ceased making remittance or progress payments to the Debtor on projects that were pending or completed, but not yet paid in full. *Id.* at ¶ 35. As project owner payments are the Debtor's sole source of operating revenue, non-payment led to the Debtor experiencing significant operational cash flow and liquidity issues. *Id.*

3

B. **The Chapter 11 Case**

7. On September 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

8. The Debtor is operating its business and managing its assets as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On September 23, 2019, the United States Trustee for the District of New Jersey appointed an Official Committee of Unsecured Creditors.

C. **PNC and The Secured Obligations**

10. PNC is Debtor's secured creditor. PNC extended a line of credit to the Debtor in the principal amount of $15,000,000.00, as evidenced by a certain credit note dated December 30, 2015 (the "Credit Note") and related (i) Borrowing Base Rider dated November 13, 2014 between the Debtor and PNC and (ii) Security Agreement dated November 13, 2014 executed and delivered by the Debtor in favor of PNC (collectively, and together with the Credit Note and all other documents related to and/or evidencing the Line of Credit, as amended, supplemented, modified and/or restated prior to the date hereof, the "Line of Credit Loan Documents"). In addition, PNC loaned the Debtor the principal amount of $1,600,000.00 (the "Term Loan"). The Term Loan is evidenced by, *inter alia*, the Term Loan Note dated as of September 26, 2018 (the "Term Loan Note") (together, and with all other documents and/or restated prior to the date hereof, the "Term Loan Documents" and, together with the Line of Credit Loan Documents, the "PNC Credit Documents").

11. The Debtor's obligations under the PNC Credit Documents ("Secured Obligations") are secured by a first priority security interest and lien upon substantially all of the

4

Debtor's assets, including, but not limited to, all of the Debtor's accounts receivable, cash, and other amounts on deposit or maintained in any account or accounts by the Debtor generated by the collection of accounts receivable, and the proceeds of any of the foregoing (the "Cash Collateral").

12. As of the Petition Date, the Debtor was in default of its Secured Obligations. In the aggregate, approximately $15,321,371 was due and owing to PNC as of the Petition Date.

### D.    The Interim Cash Collateral Orders

13. On the Petition Date, the Debtor filed *Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Scheduling a Final Hearing and (D) Granting Related Relief* [Docket No. 14] (the "Cash Collateral Motion").

14. On September 16, 2019, the Court entered the *First Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 90] (the "First Interim Cash Collateral Order"). The First Interim Cash Collateral Order authorized the Debtor's use of PNC's Cash Collateral pursuant to a one (1) week cash collateral budget that was approved by PNC and ran through September 24, 2019 (the "Week 1 Budget").

15. On September 25, 2019, the Court entered the *Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 158] (the "Second Interim Cash Collateral Order"). The Second Interim Cash Collateral Order authorizes the Debtor's use of PNC's Cash Collateral pursuant to a second one (1) week cash collateral budget that was approved by PNC and runs through October 1, 2019 (the "Week 2 Budget").

16. The Court is scheduled to hold a further interim hearing on the Cash Collateral Motion, if necessary, on October 2, 2019. However, the Court authorized the parties to submit a consensual form of order governing the Debtor's further use of Cash Collateral on an interim basis beyond October 1, 2019. A further hearing on the Cash Collateral Motion is scheduled for October 8, 2019.

E. **Post-Petition Financing**

17. As of the date hereof, PNC has not consented to or provided the Debtor with any post-petition financing.

F. **The Employee Wages Motion**

18. On the Petition Date, the Debtor filed the Original Motion. By the Employee Wages Motion, the Debtor requests entry of interim and final orders (i) authorizing the Debtor to honor and pay all ordinary course pre-petition claims, expense reimbursement, and obligations owed to certain employees, which the Debtor originally estimated to be approximately $65,000 on an interim and final basis, and (b) continue to offer, honor, and facilitate all employee obligations and employee benefits programs in the ordinary course of business during the pendency of this chapter 11 case; (ii) authorizing the Debtor to reissue checks, wire transfers, automated clearing house payments, electronic payments, or other similar methods of payment for such payments where such method of payment has been dishonored post-petition; (iii) directing all banks to honor the Debtor's prepetition and post-petition checks, wire transfers, automated clearing house payments, electronic payments, or other similar methods of payment for payment of the employee-related obligations, including those related to the pre-petition period; and (iv) granting related relief. Original Motion at ¶ 29.

19. On September 18, 2019, the Court entered the *Interim Order (I) Authorizing But Not Directing The Debtor To (A) Pay Pre-Petition Wages, Salaries, And Related Obligations, (B) Pay And Remit Pre-Petition Payroll Taxes And Other Deductions To Third Parties, And (C) Honor Employee Benefit Programs In The Ordinary Course Of Business; (II) Authorizing And Directing Banks To Honor Checks And Transfers For Payment Of Pre-Petition Employee Obligations; And (III) Granting Related Relief* [Docket No. 102].

20. On September 20, 2019, the Debtor filed the Supplement. According to the Supplement, the Debtor omitted from the Original Motion that fourteen (14) of the Debtor's employees were issued company credit cards through American Express (the "Amex Cards") that have a total outstanding pre-petition balance of $672,279.39 (the "Prepetition Amex Charges"). Supplement at ¶ 3-4. The pre-petition charges on the individual Amex Cards range from $23.00 to approximately $303,270.00. *Id.* at ¶ 3. A table attached as Exhibit A to the Supplement states the name and title of each employee cardholder, the types of charges made on each card, and the outstanding pre-petition amount on each card. By and through the Supplement, the Debtor seeks authorization to pay the Prepetition Amex Charges directly to American Express. *Id.* at ¶ 5.

21. The final hearing on the Employee Wages Motion is scheduled for October 8, 2019.

## LIMITED OBJECTION

22. PNC objects to the use of its Cash Collateral to pay any and all employee wages unless such payments are expressly provided for in a budget that has been approved by PNC and approved by this Court in the context of a court-approved Cash Collateral order.

23. PNC further objects to the use of its Cash Collateral to pay the Prepetition Amex Charges as an unapproved and unauthorized use of its Cash Collateral.

DM3\6104092.2

24. In support of this objection, PNC submits that the disclosures related to the Prepetition Amex Charges contained within the Supplement are inadequate. Specifically, the Supplement does not provide sufficient information to determine if the Prepetition Amex Charges are in fact business expenses or whether anyone has personally guaranteed the expenses, payment of which would reduce the Debtor's liability. Although the Debtor categorizes the charges as, for example, "[s]ubcontractor/vendor expenses," Supplement Ex. A, the Debtor has produced no evidence to support these categorizations. In addition, the Debtor fails to disclose what portion of the Amex Charges is related to bonded versus non-bonded projects or to present any evidence to support such a distinction.

25. Furthermore, the Debtor has not demonstrated that it is necessary for the Debtor to pay the Prepetition Amex Charges. According to the Supplement, the individual employees listed in Exhibit A attached thereto "have personal liability to American Express in the event the [Debtor] fails to pay on the card balances." Supplement at ¶ 4. The Debtor argues that these employees "are crucial to the Debtor's reorganization process and, therefore, it is critical that they not be saddled with potentially huge debt." *Id*. However, based upon a preliminary review of the American Express agreement, it is unclear whether the individual employees would be personally liable for any portion of the Prepetition Amex Charges charged to the company Amex Cards. Absent any such personal liability, the Debtor has not demonstrated that it is necessary to pay the Prepetition Amex Charges and that these amounts should receive priority payment.

## RESERVATION OF RIGHTS

26. In addition to its Limited Objection, PNC hereby reserves and preserves any and all rights afforded to it, either at law or in equity, to (i) enforce its rights and interests under the PNC Credit Documents, (ii) exercise the right to terminate or object to the Debtor's continued or

future use of PNC's Cash Collateral, and/or (iii) to take such other action as PNC may deem necessary and appropriate to preserve, protect, and enforce its rights under the PNC Credit Documents or other applicable law.

WHEREFORE, PNC respectfully requests that any Order entered granting the Employee Wages Motion (i) provide that the Order does not and shall not be deemed to authorize or approve the payment of any pre-petition employment obligations from PNC's Cash Collateral unless expressly consented to by PNC; (ii) preserve any and all rights afforded to PNC, either at law or in equity, to: (a) enforce its rights and interests under the PNC Credit Documents; (b) to terminate or object to the Debtor's continued or future use of PNC's Cash Collateral; and/or (c) to take such other action as PNC may deem necessary and appropriate to preserve, protect, and enforce its rights under the PNC Credit Documents or other applicable law; and (iii) grant such other relief as is just and proper.

Respectfully submitted,

Dated: October 1, 2019

*/s/ Sommer L. Ross*
DUANE MORRIS LLP
James J. Holman, Esq. (NJ Bar No. 015341989)
Sommer L. Ross, Esq. (NJ Bar No. 004112005)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: jjholman@duanemorris.com
slross@duanemorris.com

*Counsel for PNC Bank, National Association*

DM3\6104092.2