UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 19-27439 (MBK) |
| Hollister Construction Services, LLC, | |
| | Honorable Michael B. Kaplan |
| Debtor. | |
| | Hearing Date: October 8, 2019 at 11:30 a.m. |

**LIMITED OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE SUPPLEMENT TO THE DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING BUT NOT DIRECTING THE DEBTOR TO PAY (A) PRE-PETITION WAGES, SALARIES, AND RELATED OBLIGATIONS, (B) PAY AND REMIT PRE-PETITION PAYROLL TAXES AND OTHER DEDUCTIONS TO THIRD PARTIES AND, (C) HONOR EMPLOYEE BENEFIT PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING AND DIRECTING BANKS TO HONOR CHECKS AND TRANSFERS OF PAYMENT OF PRE-PETITION EMPLOYEE OBLIGATIONS; AND (III) GRANTING RELATED RELIEF**

The Acting United States Trustee (the "U.S. Trustee"), by and through counsel, in furtherance of his duties under 28 U.S.C. § 586(a)(3)(H), hereby files this limited objection ("Limited Objection") to the relief requested in the *Supplement* (Docket No. 126) to the *Debtor's Motion for Interim and Final Orders (I) Authorizing But Not Directing the Debtor to Pay (A) Pre-Petition Wages, Salaries, and Related Obligations, (B) Pay and Remit Pre-Petition Payroll Taxes and Other Deductions to Third Parties and, (C) Honor Employee Benefit Programs in the*

1

*Ordinary Course of Business; (II) Authorizing and Directing Banks to Honor Checks and Transfers of Payment of Pre-Petition Employee Obligations; and (III) Granting Related Relief* ("Wage Motion") (Docket No. 15), and respectfully states as follows:

## BACKGROUND

1. On September 11, 2019 ("Petition Date"), Hollister Construction Services, LLC ("Hollister"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" or "Code"). *See* Docket No. 1.

2. On the Petition Date, Hollister filed certain first day motions, including the Wage Motion. *See* Docket No. 8. The Wage Motion is supported by the *Declaration of Brendan Murray in Support of First Day Relief* ("First Day Declaration"). *See* Docket No. 15.

3. The Wage Motion included a request for authorization to pay outstanding pre-petition expense reimbursement to employees of the Debtor. *See* Docket No. 8 at ¶ 14. The Debtor stated that "[i]n the ordinary course of [] business, the Debtor reimburses Employees for certain expenses incurred while performing their duties." *See id.* at ¶ 14. The Debtor stated the "reimbursable expenses include payments for travel, lodging, reimbursable meals, business meals and entertainment, and other business-related activities." *See id.*

4. The Debtor further stated that "it incurs approximately $20,000 in Employee expense reimbursements per month." *See id.* at ¶ 15. And further, that the Debtor "believes it is obligated to pay approximately $10,000 in outstanding pre-petition expense reimbursements that accrued pre-petition and that may become payable after the Petition Date." *See id.*

5. The relief requested in the Wage Motion was pursuant to Section 363. *See id.* at ¶33. The business justification set forth by the Debtor was to "maintain[] the Debtor's business

operations, maximiz[e] the value of the Debtor's estate, and preserv[e] the value of the Debtor while it seeks to reorganize and pursue restructuring alternatives[.]" *See id*. at ¶ 34. Further, under the necessity of payment doctrine, the Debtor stated its employees are critical to its restructuring efforts and if the obligations "remain unpaid, these constituents may be unwilling to continue working for the Debtor and/or their morale and productivity may suffer to the detriment of the Debtor's estates." *See id*. at ¶ 38.

6. On September 18, 2019, the Court entered an *Interim Order* on the Wage Motion ("Interim Wage Order"). *See* Docket No. 102.

7. Subsequent to entry of the Interim Wage Order, the Debtor filed the Supplement. *See* Docket No. 126. In the Supplement, the Debtor seeks to expand on paragraphs 14-15 of the Wage Motion to include payment of American Express bills for business expenses incurred by fourteen employees, for which the employees are personally liable. *See id*. at ¶¶ 2 and 3. The total amount attributable to the American Express cards is $672,279.39. *See id*., Exhibit A.

8. As set forth in the Supplement and on the attached Exhibit, in addition to charges for travel and meals, the charges also included "subcontractor/vendor expenses." *See* Docket No. 126. Pursuant to the Supplement, the Debtor seeks to pay American Express on behalf of these employees stating that the employees identified on Exhibit A "are crucial to the Debtor's reorganization process and, therefore, it is critical that they not be saddled with potentially huge debt[.]" *See id*. at ¶ 4. These statements are not supported by a Certification.

9. Upon information and belief, the Debtor's cash as of October 1, 2019 is approximately $500,000.

3

**LIMITED OBJECTION**

10. The relief requested in the Supplement is not supported by the record. In the Wage Motion, the Debtor identified "approximately $10,000 in outstanding pre-petition expense reimbursements that accrued pre-petition and that may become payable after the Petition Date." *See* Docket No. 8 at ¶15. This was the estimated total amount owed for unreimbursed expenses on account of ninety-six (96) employees.

11. In support of relief under Section 363 to pay the approximate $10,000 in expense reimbursements, the Debtor's business justification was to "maintain[] the Debtor's business operations, maximiz[e] the value of the Debtor's estate, and preserv[e] the value of the Debtor while it seeks to reorganize and pursue restructuring alternatives[.]" *See id*. at ¶ 34. Under the necessity of payment doctrine, the Debtor stated its employees are critical to its restructuring efforts and if the obligations "remain unpaid, these constituents may be unwilling to continue working for the Debtor and/or their morale and productivity may suffer to the detriment of the Debtor's estates." *See id*. at ¶ 38.

12. Now, the Debtor supplements the Wage Motion with a request to pay American Express on account of pre-petition charges for which fourteen (14) employees will otherwise be personally liable. *See* Docket No. 126. The charges go beyond the reimbursable expenses identified in the Wage Motion, i.e., "travel, lodging, reimbursable meals, business meals, and entertainment, and other business-related activities" and now includes "amounts that were paid to certain subcontractors and/or vendors." *See* Docket No. 8 at ¶ 14 and Docket No. 126 at ¶ 4.

13. The two largest amounts due, $303,267.45 and $237,110.09, are exclusively for "subcontractor/vendor expenses." *See* Docket No. 126, Exhibit A. And the third largest,

4

$108,741.70, is for "subcontractor/vendor expenses, permits, travel and meals." *See id*.

14. There is no additional information provided regarding the nature of the payments for "subcontractor/vendor expenses." Nor is there any additional information regarding how recently these charges were incurred. In other words, it is not clear if these are amounts incurred pre-petition that did not become due until post-petition, as set forth in the Wage Motion, or whether these are debts that have remained unpaid leading up to the Petition Date.

15. There is also no explanation as to how the payment of these American Express charges fits into the Debtor's business justification provided in the Wage Motion, *i.e.*, to "maintain[] the Debtor's business operations, maximiz[e] the value of the Debtor's estate, and preserv[e] the value of the Debtor while it seeks to reorganize and pursue restructuring alternatives[.]"

16. The facts of this case include that the Debtor is operating with the use of cash collateral on a week-to-week basis. The Debtor only has approximately $500,000 in cash. The Debtor does not have any post-petition financing. The Debtor does not have any income from operations at this time. Accordingly, it is unclear how the payment of $672,279.39 to American Express could help the Debtor to "maintain[] the Debtor's business operations, maximiz[e] the value of the Debtor's estate, and preserv[e] the value of the Debtor while it seeks to reorganize and pursue restructuring alternatives[.]"

17. The Supplement states these fourteen (14) employees "are crucial to the Debtor's reorganization process and, therefore, it is critical that they not be saddled with potentially huge debt[.]" *See* Docket No. 126 at ¶ 4.

18. Beside the First Day Declaration with general statements regarding the ninety-six

5

employees and the justification to pay "approximately $10,000 in outstanding pre-petition expense reimbursements that accrued pre-petition and that may become payable after the Petition Date[,]" there is no further Declaration or Certification to support the payment of over $670,000 on account of fourteen (14) employees.

19. There is simply not enough information to support the relief requested in the Supplement.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the relief requested in the Supplement to the Debtor's Wage Motion, or require the Debtor to provide additional information to meet their burden before the relief requested in the Supplement is granted.

                                      Respectfully submitted,
                                      ANDREW R. VARA
                                      ACTING UNITED STATES TRUSTEE
                                      REGION 3

                                      /s/ *Lauren Bielskie*
                                      Lauren Bielskie
DATED: October 1, 2019               Trial Attorney