**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Proposed Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| **HOLLISTER CONSTRUCTION SERVICES, LLC,**[1] | Case No. 19-27439 (MBK) |
| Debtor. | Proposed Hearing Date: October 8, 2019 at 11:30 a.m. |

**DEBTOR'S MOTION FOR AN ORDER APPROVING OF A SETTLEMENT AND COMPROMISE BY AND AMONG THE DEBTOR AND WAYPOINT HACKENSACK URBAN RENEWAL OWNER LLC PURSUANT TO FED. R. BANKR. P. 9019 AND FOR THE ASSUMPTION AND ASSIGNMENT AND REJECTION OF CERTAIN EXECUTORY CONTRACTS**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned proposed counsel, hereby submits this motion (the "Motion") seeking the entry of an order approving of a Settlement and Compromise by and among the Debtor and Waypoint Hackensack Urban Renewal Owner LLC ("Waypoint") pursuant to Fed. R. Bankr. P. 9019 and for the assumption and assignment and rejection of certain executory contracts, substantially in the form submitted herewith, and represents as follows:

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The Debtor consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4. The statutory predicates for the relief requested in this Motion are sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 9019, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5. On September 11, 2019 (the "Petition Date"), the above-captioned Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case"). The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner and no committee has been appointed in this Chapter 11 Case.

6. Additional details regarding the Debtor's business and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Brendan Murray in Support of First Day Relief* [Docket No. 15].

## THE DEBTOR'S BUSINESS OPERATIONS

7. The Debtor operates a substantial construction business. In calendar year 2018, the Debtor collected approximately $292,034,763 in gross revenue. The Debtor depends on payments from project owners upon completion of the project and at certain stages of the project.

The Debtor's receivables from those project owners are assets of the Debtor's and property of its bankruptcy estate. However, if the Debtor cannot finish a project, it may be subject to future obligations and additional liabilities. Further, the Debtor is concerned that various subcontractors, materialmen and other suppliers may lien job sites or continue to prosecute their construction liens to collect on monies due for pre-petition services and/or goods supplied by filing or foreclosing on construction liens against the real property on which the Debtor does or did supervise construction and development despite the automatic stay (which may not apply in certain circumstances).

8. One of the Debtor's projects that is of particular concern is a construction project identified as Waypoint Hackensack located at 435 Main Street, Hackensack, New Jersey (the "Project"). Given the work to be completed at the Project, the amount of outstanding pre-petition receivables owing to subcontractors and other vendors of the Debtor, and the projected income potentially due to the Debtor under its agreement with Waypoint, the Debtor has determined this is not an economically viable project on a go forward basis. The Debtor and Waypoint engaged in arms-length negotiations in an effort to resolve their dispute concerning the Debtor's performance at the Project. As a result of such negotiations, the Debtor and Waypoint have entered into a settlement agreement, a copy of which is attached as Exhibit A (the "Settlement Agreement"), which will permit Waypoint to complete the Project in exchange for releases and other terms as set forth in the Settlement Agreement.

9. Pursuant to the Settlement Agreement,[2] the Parties have agreed, *inter alia*, as follows:

a. For the Debtor to assume and assign to Waypoint or its designee all subcontractor and third party agreements related to the Project as set forth on the schedule attached as Exhibit B. Waypoint will pay the cure costs due.

b. For the rejection of the Debtor's Project Agreement with Waypoint.

---

[2] This Motion contains a summary of the settlement terms only. In the event of any conflict between the terms of the Settlement Agreement and this Motion, the Settlement Agreement shall govern.

c. The Debtor and Waypoint will mutually release each other (including the Debtor's officers, directors, members and managers) except for their respective obligations under the Settlement Agreement.

d. Waypoint will indemnify and hold harmless the Debtor from the effective date for any failure by Waypoint to fulfill its obligations under the Settlement Agreement, and specifically claims related to the contracts to be assumed and assigned to Waypoint.

## RELIEF REQUESTED

10. By this Motion, the Debtor seeks the entry of an order (i) approving of the Settlement Agreement pursuant to Bankruptcy Rule 9019, and (ii) authorizing the assumption and assignment of the Debtor's executory contracts with certain subcontractors and vendors listed on the schedule attached as Exhibit B (collectively, the "Contracts") and rejection of the Debtor's Project Agreement with Waypoint pursuant to section 365 of the Bankruptcy Code. Exhibit B also lists the cure amount, if any, due to the non-debtor parties to the Contracts.

## BASIS FOR RELIEF

### A. Approval of the Settlement

11. Bankruptcy Rule 9019(a) provides, in pertinent part, that upon a motion, and after notice and a hearing, the Court may approve a compromise or settlement. Approval of a settlement remains in the sound discretion of the Bankruptcy Court. *See In re Neshaminy Office Bldg. Assoc.*, 62 B.R. 798, 803 (E.D. Pa. 1986). In determining whether to approve a settlement, the Court should determine whether the proposed settlement is in the best interests of the estate. *Id. See also, In re Matter of Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).

12. The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (noting that "[c]ompromises are 'a normal part of the process of reorganization.'") (citation omitted), *reh'g denied*, 391 U.S. 909 (1968).

13. Further, the settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Penn Central Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979); *In re Mavrode*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997).

14. The Third Circuit, applying *TMT Trailer* in the context of a settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

15. In determining whether to approve a settlement, the Bankruptcy Court should not substitute its judgment for that of the debtor and the parties. *See Neshaminy Office Bldg.*, 62 B.R. at 803. The Bankruptcy Court is not to decide the numerous questions of fact or law raised by the controversy, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Cosoffi v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608, 613 (2nd Cir.) (citations omitted), *cert denied*, 464 U.S. 822 (1983); *Mavrode*, 205 B.R. at 720. Thus, in reaching its decision regarding the approval of the proposed compromise this Court need not conclusively determine the claims which are the subject of the compromise, nor find that the compromise constitutes the best result obtainable. *See W.T. Grant*, 699 F.2d at 613.

16. The Debtor respectfully submits that the proposed settlement is fair and prudent, is in the best interests of the estate, and falls within the "range of reasonableness." The Debtor lacks the financial wherewithal to complete the Project and the Debtor has determined it is not an economically viable project on a go forward basis. Surrendering the Project to the owner, Waypoint, and assuming and assigning the Contracts to Waypoint or its designee in exchange for a mutual waiver of claims that relieves the Debtor and its estate from go forward liabilities and obligations it cannot honor and reduces claims against the estate is beneficial. Likewise, the

Debtor will reject its Project Agreement with Waypoint because the Debtor will not be doing further work on this Project. Thus, the Settlement Agreement will benefit the estate of the Debtor and its creditors. In addition, future proceedings regarding the Debtor's ability to complete the Project – both with Waypoint and the Debtor's subcontractors engaged at the Project - could be protracted and expensive, may require the resolution of complex issues and involve substantial uncertainties and risks inherent in litigation. With these forgoing considerations in mind, the Debtor has concluded that the Settlement Agreement is (i) fair and equitable, (ii) a reasonable resolution, (iii) in the best interests of the Debtor and its estate, and (iv) in the paramount interests of the Debtor's creditors.

17. For the foregoing reasons, the Debtor submits that this Court should approve the Settlement Agreement.

**B. The Assumption and Assignment of the Contracts Should Be Authorized Pursuant to Section 365 of the Bankruptcy Code.**

18. The Debtor also seeks authorization to assume and assign to Waypoint or its designee the Contracts listed in Exhibit B attached hereto as part of the Settlement Agreement pursuant to section 363 of the Bankruptcy Code. Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume and assign an executory contract or unexpired lease subject to Court approval. Section 365(b) of the Bankruptcy Court requires a debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the contract to be assumed.

19. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). By enacting section 365(a) of the Bankruptcy Code, Congress intended to allow a debtor to assume those leases/contracts that benefit the estate, and to reject those that are of no value or are burdensome to the estate. *See Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001).

20. The Contracts are those executory contacts that are to be assumed by the Debtor and assigned to Waypoint or its designee as part of the Settlement Agreement to enable Waypoint, the Project owner, to complete the Project. The Debtor further requests that the proposed Order provides that the Contracts will be assigned to, and remain in full force and effect for the benefit of Waypoint notwithstanding any provisions in the Contracts, including those described in sections 365(b)(2) and (f)(l) and (3) of the Bankruptcy Code, that prohibit such assignment.

21. A debtor's determination of whether to assume or reject an executory contract or unexpired lease is governed by the "business judgment" standard. *See In re Market Square Inn, Inc*., 978 F.2d 116, 121 (3d Cir. 1992) (stating that the resolution of the issue of assumption or rejection of a lease "will be a matter of business judgment by the bankruptcy court."); *In re Armstrong World Indus., Inc.* 348 B.R. 136, 162 (D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease is appropriate under section 365(a) of the Bankruptcy Code."); *In re HQ Global Holdings, Inc*., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (stating that a debtor's decision to assume or reject executory contracts is governed by the business judgment standard and can only be overturned if the decision was a product of bad faith, whim, or caprice). *See also Sharon Steel v. Nat'l Fuel Gas Distrib. Corp*., 872 F.2d 36, 39-40 (3d Cir. 1989) (finding the bankruptcy court properly granted the debtor's motion to reject the agreement upon a finding that rejection would benefit the estate).

22. Upon finding that a debtor has exercised sound business judgment in determining that the assumption or rejection of an unexpired lease or executory contract is in the best interests of the debtor, its creditors, and all parties in interest, the court should approve such assumption or rejection under section 365(a). *See In re Fed. Mogul Global, Inc*., 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); *Armstrong World Indus*., 348 B.R. at 162 (same). As such, when applying the business judgment

rule, courts show great deference to a debtor's decision-making. *See In re Crystalin, L.L.C.*, 293 B.R. 455, 464 (B.A.P. 8th Cir. 2003) (finding that the court need not "place itself in the position of the trustee or the debtor-in-possession") (citations omitted); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course").

23. Moreover, a debtor may assign an executory contract or unexpired lease if (i) the contract was assumed in accordance with the terms of section 365(b) of the Bankruptcy Code, and (ii) adequate assurance of future performance is provided. 11 U.S.C. § 365(f)(2). What constitutes adequate assurance of future performance is a fact-sensitive inquiry based on the circumstances of each case. *See In re Carlisle Homes, Inc.*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988). "The phrase 'adequate assurance of future performance' … is to be given a practical, pragmatic construction … [and] the required assurance will fall considerably short of an absolute guarantee of performance." *Id.* (citations omitted). Waypoint is responsible for providing evidence of "adequate assurance of future performance" to the extent required in connection with the assumption and assignment of the Contracts under the Settlement Agreement, and Waypoint will pay any cure amount due to the non-debtor parties to the Contracts, which amounts are set forth on Exhibit B, unless the non-debtor party agrees to a reduction or waiver of the cure amount.

24. By the Motion, the Debtor seeks to assume and assign the Contracts, which are the subcontractor and vendor agreements for the Project, so Waypoint or its designee can complete the Project. Assumption and assignment is necessary to enable Waypoint to efficiently complete the Project as part of the Settlement Agreement whereby Waypoint is waiving any claims it has against the Debtor and its estate. Thus, the assumption and assignment of the Contracts to Waypoint or its designee pursuant to the Settlement Agreement is a reasonable exercise of the Debtor's business judgment.

25. The Debtor also seeks to reject its Project Agreement with Waypoint because, as a result of the Settlement Agreement, the Debtor will no longer be performing on this Project.

Thus, rejection of the Debtor's Project Agreement with Waypoint is a reasonable exercise of the Debtor's business judgment.

**WAIVER OF BANKRUPTCY RULES 6004 AND 6006**

26. The Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rules 6004(a) and 6006(c), and (ii) the stay of any order under Bankruptcy Rules 6004(h) and 6006(d), to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate and creditors.

**WAIVER OF MEMORANDUM OF LAW**

27. The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies is set forth herein and the Motion does not raise any novel issues of law.

**NO PRIOR REQUEST**

28. No prior request for the relief sought in this Motion has been made to this or any other court.

**NOTICE**

29. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102; (ii) counsel for PNC Bank, the Debtor's secured lender, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman; (iii) the Internal Revenue Service, 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016; (iv) the Office of the United States Attorney, 970 Broad Street, Suite 700, Newark, NJ 07102; (v) the New Jersey Division of Taxation Compliance and Enforcement - Bankruptcy Unit, 50 Barrack Street, 9th Floor, Trenton, NJ 08695; (vi) the Office of the Attorney General of the State of New Jersey, Division of Law, Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08625; (vii) the Pennsylvania Department of Revenue, Bankruptcy Division, P.O. Box 2809467, Harrisburg, PA 17128-0946; (viii) Commonwealth of Pennsylvania Office of Attorney General, 16th Floor, Strawberry Square, Harrisburg, PA 17120; (ix) New York State Department of Taxation and

Finance, Attention: Office of Counsel, Building 9, W A Harriman Campus, Albany NY 12227; (x) New York State Office of Attorney General, The Capitol, Albany, NY 12224-0341; (xi) the Debtor's twenty largest unsecured creditors; (xii) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002; (xiii) counsel to Waypoint; and (xiv) the non-debtor parties to the Contracts. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, in the form submitted herewith, (i) approving of the Settlement Agreement and authorizing and directing the Debtor to perform its obligations under the Settlement Agreement; (ii) authorizing the Debtor to assume and assign the Contracts to Waypoint or its designee; (iii) authorizing the Debtor to reject its Project Agreement with Waypoint; and (iv) granting the Debtor such other and further as the Court deems just and equitable.

Dated: October 3, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com
*Proposed Counsel to the Debtor and Debtor-in-Possession*