| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** | |
| Caption in compliance with D.J.J. LBR 9004-1 | |
| GREENBAUM, ROWE, SMITH & DAVIS LLP<br>99 Wood Avenue South<br>Iselin, New Jersey 08830-2712<br>(732) 549-5600<br>David L. Bruck, Esq.<br>Attorneys for Creditor, Nomad Framing Inc. | |
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC,**<br><br>Debtor. | CHAPTER 11<br><br>Case No.: 19-27439 (MBK) |

**OBJECTION AND RESERVATION OF RIGHTS BY NOMAD FRAMING LLC WITH RESPECT TO DEBTOR'S FOURTH MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION; (C) SCHEDULING FINAL HEARING; AND (D) GRANTING RELATED RELIEF**

By this pleading, Nomad Framing Inc. ("Nomad") through counsel, Greenbaum, Rowe, Smith & Davis LLP, submits an objection and reservation of rights (the "Objection") to the Fourth Motion of the Debtor, Hollister Construction Services LLC, for entry of orders (a) authorizing use of cash collateral, (b) granting adequate protection, (c) scheduling final hearing and (d) granting related relief.

Nomad states as follows in support of its Objection:

1. Nomad entered into contracts with the Debtor to provide materials and supplies and to perform rough carpentry and framing on a project at which the Debtor served as the general contractor or construction manager located in Harrison, New Jersey. The project is identified as the Harrison Hub Project and bears identification #17-009. The Harrison Hub

Project is a non-bonded project. The Owner of the Harrison Project is Accordia Harrison Urban Renewal LLC.

2. The subcontracts between Hollister and Nomad are dated October 18, 2017 and February 6, 2018. The first contract is in the amount of $1,494,627 and includes rough carpentry and metal framing. The second contract is in the amount of $2,441,819 and includes materials and rough carpentry. The contracts were amended to add extra labor in the amount of $227,267. The total contract amount is $4,163,714.

3. Nomad completed its work on both contracts. Prior to the petition date and over a period of two years Nomad was paid $3,723,214.

4. Nomad submitted a payment requisition and a certification of completion in August 2019. Nomad did not receive any payment from Hollister with respect to its requisition. There is a balance due to Nomad under the subcontract with Hollister of $440,499.97. The amount due represents the retainage held back by the Debtor as provided in the contracts.

5. Nomad filed a Notice of Unpaid Balance on September 5, 2019 and provided notice of the filing to Hollister and the owner of the Harrison Hub Project.

6. On September 11, 2019, the Debtor filed the within Chapter 11 proceeding.

7. Since the filing of the petition, the Debtor has filed several motions including the captioned motion to which this Objection applies.

8. The first cash collateral motion was returnable on September 16, 2019. On September 16, 2019, the Court entered an interim order (Doc #90) which permitted the Debtor to use cash collateral (the "First CC Order") subject to conditions and in accordance with a budget[1] attached to the First CC Order for a period of eight (8) days. The First CC Order provided for a

---

[1] The budget attached to the Order lists only expenses. No starting cash balance is reflected nor is there a disclosure of how much cash the Debtor has received post-petition.

reservation of the rights of all parties with respect to the Debtor's use of cash collateral and it directed, as set forth in Paragraph 19, the establishment of an escrow account for the deposit by the Debtor of receipts of cash post-petition on the <u>Non Bonded Projects</u> pending the further order of the Court. No mention was made of the use by the Debtor of cash received from time prior to the Petition Date for the Non Bonded Projects. To this date, no accounting of the source of the funds received by the Debtor and/or deposited in the escrow accounts to be established in the Orders entered on the Non Bonded Projects has been provided to Nomad or, to the best of my knowledge, to any of the subcontractors. Creditors have no information as to the Debtor's receipt of monies post-petition; nor do the creditors have any information as to the source of the monies set forth in the Budget attached to the proposed Fourth Interim Cash Collateral Order.

9. On October 2, 2019, the Court entered an order continuing again the Debtor's interim use of cash collateral until October 8, 2019 (see Doc #219).

10. In response to my letter to counsel to the Debtor requesting a copy of the contract between the Owner of the Harrison Hub Project and Hollister, counsel provided me with a copy of the contract. The contract contains language indicative of the fact that the Owner intended and Hollister accepted, that monies disbursed to it based upon Applications for Payment were "to be held" for the benefit of subcontractors. The language is persuasive that the funds to be disbursed are not intended as the general funds of the Debtor.

11. Nomad believes and asserts that the funds being held as retainage by either the owner of the Harrison Hub project or by the Debtor are "trust funds" and that the contract between the Owner and Hollister states that the funds in the Debtor's hands are to be held for the benefit of the subcontractors. The Debtor has no equitable interest in the funds being held by the

5885701.1

Owner nor in the funds received prior to the petition date or which may have been received since the petition date.

12. Over the weekend, Hollister proposed a 40% payment to subcontractors at the Harrison Hub Project. The proposal does not disclose whether 100% of the subcontractors must consent for the proposal to be effective. Nomad believes that the funds in the Owner's hands are constructively trust funds and is preparing a Motion requesting the entry of an Order to that effect.

13. Specifically, but not by way of limitation Nomad objects to the entry of any further interim or final cash collateral order which does not direct the Debtor to account to the Court and the creditor body as to the source of the monies in the DIP account, and deposited into established escrow accounts as ordered in the First, Second and Third Cash Collateral Orders.

14. Nomad reserves all rights.

WHEREFORE, Nomad respectfully requests that this Court deny further use of cash collateral by the Debtor absent modification of the Order as set forth above.

GREENBAUM, ROWE, SMITH & DAVIS LLP
Counsel to Creditor, Nomad Framing Inc.

By:_____
David L. Bruck

Dated:   October 7, 2019