| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1 <br><br> Duane Morris LLP <br> James J. Holman, Esq. (jjholman@duanemorris.com) <br> Sommer L. Ross, Esq. (slross@duanemorris.com) <br> 222 Delaware Avenue, Suite 1600 <br> Wilmington, DE 19801-1659 <br> T: (302) 657-4900 <br> F: (302) 657-4901 <br><br> *Counsel to PNC Bank, National Association* | |
| In re: <br><br> HOLLISTER CONSTRUCTION SERVICES, LLC,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 19-27439 (MBK) <br><br> Hearing Date: October 17, 2019 at 10:00 a.m. |

**LIMITED OBJECTION OF PNC BANK, NATIONAL ASSOCIATION TO THE DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS [DOCKET NO. 127] AND ITS SUPPLEMENT [DOCKET NO. 216]**

PNC Bank, National Association ("PNC"), by and through its undersigned counsel, hereby files this limited objection ("Limited Objection") to the (i) *Debtor's Motion for an Order Authorizing the Debtor to Employ and Compensate Professionals Utilized in the Ordinary Course of Business* [Docket No. 127] (the "Original Application") and the (ii) *Supplement to Debtor's Motion for an Order Authorizing the Debtor to Employ and Compensate Professionals Utilized in the Ordinary Course of Business* [Docket No. 216] (the "Supplement" and, together with the Original Application, the "OCP Retention Application") filed by the above-captioned debtor ("Debtor"). In support of this Limited Objection, PNC respectfully states as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

## PRELIMINARY STATEMENT

1. It is no secret that the Debtor's chapter 11 case hinges on the Debtor's ability to negotiate global settlement agreements with most, if not all, of its project owners and project stakeholders, and that the Debtor has a very narrow window within which to accomplish this goal.

2. While the Debtor has indicated that it is making progress in reaching a resolution with certain project owners and subcontractors, it is unclear that there will be a sufficient number of settlements reached and that those settlements will (i) generate sufficient cash flow to the Debtor's estate and PNC, and/or (ii) cover the administrative costs associated with the Debtor's chapter 11 case.

3. PNC does not dispute that if the Debtor is going to remain a debtor-in-possession the OCP Retention Application is necessary, as is payment to the professionals. However, since the Debtor has only a finite amount of cash on hand, all of which is PNC's cash collateral, and no current debtor-in-possession facility exists or appears to be on the horizon, PNC files this Limited Objection to note that it does not consent to use of its Cash Collateral for payment of professional fees and that it objects to the OCP Retainers (as defined below) having been paid on the day immediately prior to the Petition Date (as defined below).

## RELEVANT FACTUAL BACKGROUND

### A. The Debtor

4. The Debtor is a commercial construction services firm that provides construction management services, *i.e.*, professional management services for construction projects. The Debtor does not perform construction work itself, but instead partners with subcontractors through the pre-construction, construction, and post-construction phases of a project to accomplish the

goals established by the project owner and the project owner's professionals. *See Declaration of Brendan Murray in Support of First Day Relief* ("First Day Declaration"), Docket No. 15 at ¶ 5.

5. Specifically, the Debtor employs and oversees the work of vendors, contractors, subcontractors and materialmen (together, "Subcontractors") on the projects. Typically, the project owners compensate the Debtor pursuant to progress payment orders for the work performed on their projects. In turn, the Debtor pays the Subcontractors for the goods and/or services they provided for the particular project. *Id*. at ¶ 13. Project owner payments and receivables are the Debtor's sole source of operating revenue. *Id*. at ¶ 14.

6. Prior to the Petition Date (defined below), the Debtor was unable to fully service all of its project owners' projects. *Id*. at ¶ 34. The Debtor was also not able to ensure that its Subcontractors were paid on the agreed-upon schedule. *Id*. As a result, certain Subcontractors stopped performing on their contracts with the Debtor and certain project owners ceased making remittance or progress payments to the Debtor on projects that were pending or completed, but not yet paid in full. *Id*. at ¶ 35. As project owner payments are the Debtor's sole source of operating revenue, non-payment led to the Debtor experiencing significant operational cash flow and liquidity issues. *Id*.

**B.    The Chapter 11 Case**

7. On September 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

8. The Debtor is operating its business and managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On September 23, 2019, the United States Trustee for the District of New Jersey appointed an Official Committee of Unsecured Creditors.

### C. PNC and The Secured Obligations

10. PNC is Debtor's secured creditor. PNC extended a line of credit to the Debtor in the principal amount of $15,000,000.00, as evidenced by a certain credit note dated December 30, 2015 (the "Credit Note") and related (i) Borrowing Base Rider dated November 13, 2014 between the Debtor and PNC and (ii) Security Agreement dated November 13, 2014 executed and delivered by the Debtor in favor of PNC (collectively, and together with the Credit Note and all other documents related to and/or evidencing the Line of Credit, as amended, supplemented, modified and/or restated prior to the date hereof, the "Line of Credit Loan Documents"). In addition, PNC loaned the Debtor the principal amount of $1,600,000.00 (the "Term Loan"). The Term Loan is evidenced by, *inter alia*, the Term Loan Note dated as of September 26, 2018 (the "Term Loan Note") (together, and with all other documents and/or restated prior to the date hereof, the "Term Loan Documents" and, together with the Line of Credit Loan Documents, the "PNC Credit Documents").

11. The Debtor's obligations under the PNC Credit Documents ("Secured Obligations") are secured by a first priority security interest and lien upon substantially all of the Debtor's assets, including, but not limited to, all of the Debtor's accounts receivable, cash, and other amounts on deposit or maintained in any account or accounts by the Debtor generated by the collection of accounts receivable, and the proceeds of any of the foregoing (the "Cash Collateral").

12. As of the Petition Date, the Debtor was in default of its Secured Obligations. In the aggregate, approximately $15,321,371 was due and owing to PNC as of the Petition Date.

### D. The Interim Cash Collateral Orders

13. On September 11, 2019, the Debtor filed the *Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Scheduling a Final Hearing and (D) Granting Related Relief* [Docket No. 14] (the "Cash Collateral Motion").

14. On September 16, 2019, the Court entered the *First Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 90] (the "First Interim Cash Collateral Order"). The First Interim Cash Collateral Order authorized the Debtor's use of PNC's Cash Collateral pursuant to a one (1) week cash collateral budget that was approved by PNC and ran through September 24, 2019.

15. On September 25, 2019, the Court entered the *Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 158] (the "Second Interim Cash Collateral Order"). The Second Interim Cash Collateral Order authorized the Debtor's use of PNC's Cash Collateral pursuant to a second one (1) week cash collateral budget that was approved by PNC and ran through October 1, 2019.

16. On October 2, 2019, the Court entered the *Third Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 219] (the "Third Interim Cash Collateral Order"). The Third Interim Cash Collateral Order authorized the Debtor's use of PNC's Cash Collateral pursuant to a third one (1) week cash collateral budget that was approved by PNC and ran through October 8, 2019.

17. On October 8, 2019, the Court entered the *Fourth Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 279] (the "Fourth Interim Cash Collateral Order"). The Fourth Interim Cash Collateral Order authorizes the Debtor's use of PNC's Cash Collateral pursuant to a fourth one (1) week cash collateral budget that was approved by PNC and that runs through October 22, 2019.

18. A further hearing on the Cash Collateral Motion is scheduled for October 22, 2019.

### E. Post-Petition Financing

19. As of the date hereof, PNC has not consented to or provided the Debtor with any post-petition financing.

### F. The OCP Retention Application

20. On September 20, 2019, the Debtor filed the Original Application. By the Original Application, the Debtor requests authorization to retain David C. Dreifuss of Dreifuss, Bonacci & Parker LLC ("DB&P") as Surety Counsel; Robert Lawless of Hedinger & Lawless ("H&L") as Construction Counsel; and Russel McEwan of Littler Mendelson ("Littler") as Labor Counsel (collectively, the "Ordinary Course Professionals") pursuant to sections 105(a), 327, 328, 330, and 331 of the Bankruptcy Code. The Debtor seeks authority to "pay each Ordinary Course Professional, without prior motion to the Court, 100% of the fees requested, up to $30,000 per month on average over a rolling three (3) month period, for each Ordinary Course Professional, excluding costs and disbursements, and provided further that the Debtor shall not pay any individual Ordinary Course Professional in excess of $100,000 (excluding costs and disbursements) during the course of this Chapter 11 Case" (the "Fee Cap"). Original Application at ¶ 11.

6

21. On October 2, 2019, the Debtor filed the Supplement. The Supplement discloses that "on September 10, 2019, [the Debtor] provided the three (3) Ordinary Course Professionals firms with retainers for post-petition services by wire transfers." Supplement at ¶ 2. The Debtor provided $50,000 to DB&P, $50,000 to H&L, and $10,000 to Littler (collectively, the "OCP Retainers"). *Id.*

## LIMITED OBJECTION

22. PNC objects to the OCP Retention Application to the extent that it seeks authority to use PNC's Cash Collateral to pay the Debtor's Ordinary Course Professionals. Specifically, PNC objects to the OCP Retention Application to the extent that it seeks authority to compensate any Ordinary Course Professional if such payment is not explicitly provided for in an agreed budget approved by PNC in the context of a court-approved Cash Collateral order.

23. Further, PNC submits that the disclosures in the OCP Retention Application are inadequate. The Original Application does not disclose the particular work to be performed by each of the Ordinary Course Professionals. Without this information, PNC cannot determine the reasonableness of the Fee Cap. Furthermore, the Supplement does not state whether the Fee Cap includes the payment of the OCP Retainers or whether the OCP Retainers were paid in addition to and apart from the proposed Fee Cap.

## RESERVATION OF RIGHTS

24. PNC hereby reserves and preserves any and all rights afforded to it, either at law or in equity, to (i) seek disgorgement of any amounts paid to the Ordinary Course Professionals, whether pre or post-petition, to the extent that such amounts were improperly funded by or paid from PNC's Cash Collateral, (ii) object to any fee application filed by any of the Ordinary Course Professionals, (iii) enforce its rights and interests under the PNC Credit Documents, (iv) exercise

the right to terminate or object to the Debtor's continued or future use of PNC's Cash Collateral, and/or (v) to take such other action as PNC may deem necessary and appropriate to preserve, protect, and enforce its rights under the PNC Credit Documents or other applicable law.

[*Remainder of page intentionally life blank*]

WHEREFORE, PNC respectfully requests that any Order entered granting the OCP Retention Application (i) provide that the Debtor's retention of the Ordinary Course Professionals does not and shall not be deemed to authorize or approve the payment of any compensation or expenses to the Ordinary Course Professionals from PNC's Cash Collateral unless expressly consented to by PNC; (ii) preserve any and all rights afforded to PNC, either at law or in equity, to: (a) seek disgorgement of any amounts paid to the Ordinary Course Professionals, whether pre or post-petition, to the extent that such amounts were improperly funded by or paid from PNC's Cash Collateral, (b) object to any fee application filed by any of the Ordinary Course Professionals, (c) enforce its rights and interests under the PNC Credit Documents, (d) exercise the right to terminate or object to the Debtor's continued or future use of PNC's Cash Collateral; and/or (e) to take such other action as PNC may deem necessary and appropriate to preserve, protect, and enforce its rights under the PNC Credit Documents or other applicable law; and (iii) grant such other relief as is just and proper.

Dated: October 11, 2019

Respectfully submitted,

*/s/ Sommer L. Ross*
DUANE MORRIS LLP
James J. Holman, Esq. (NJ Bar No. 015341989)
Sommer L. Ross, Esq. (NJ Bar No. 004112005)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: jjholman@duanemorris.com
slross@duanemorris.com

*Counsel for PNC Bank, National Association*