| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1<br><br>Duane Morris LLP<br>James J. Holman, Esq. (jjholman@duanemorris.com)<br>Sommer L. Ross, Esq. (slross@duanemorris.com)<br>222 Delaware Avenue, Suite 1600<br>Wilmington, DE 19801-1659<br>T: (302) 657-4900<br>F: (302) 657-4901<br><br>*Counsel to PNC Bank, National Association* | |
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK) |

**LIMITED OBJECTION OF PNC BANK, NATIONAL ASSOCIATION TO THE APPLICATION FOR AN ORDER APPROVING THE RETENTION OF EISNERAMPER LLP AS ACCOUNTANTS AND FINANCIAL ADVISORS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS [DOCKET NO. 277]**

PNC Bank, National Association ("PNC"), by and through its undersigned counsel, hereby files this limited objection ("Limited Objection") to the *Application for an Order Approving the Retention of EisnerAmper LLP as Accountants and Financial Advisors for the Official Committee of Unsecured Creditors* [Docket No. 277] (the "FA Retention Application") filed by the Official Committee of Unsecured Creditors of Hollister Construction Services, LLC (the "Committee"). In support of this Limited Objection, PNC respectfully states as follows:

**PRELIMINARY STATEMENT**

1. It is no secret that the chapter 11 case of the Debtor (as defined below) hinges on the Debtor's ability to negotiate global settlement agreements with most, if not all, of its creditors,

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

and that the Committee has a key role to play in accomplishing this goal. Accordingly, PNC does not dispute that the FA Retention Application is necessary, as is payment to the Committee's accountants and financial advisors. However, since the Debtor has only a finite amount of cash on hand, all of which is PNC's cash collateral, and no current debtor-in-possession facility exists or appears to be on the horizon, PNC files this Limited Objection to note that it does not, at this time, consent to use of its Cash Collateral for payment of professional fees.

## RELEVANT FACTUAL BACKGROUND

### A. The Debtor

2. Hollister Construction Services, LLC (the "Debtor") is a commercial construction services firm that provides construction management services, *i.e.*, professional management services for construction projects. The Debtor does not perform construction work itself, but instead partners with subcontractors through the pre-construction, construction, and post-construction phases of a project to accomplish the goals established by the project owner and the project owner's professionals. *See Declaration of Brendan Murray in Support of First Day Relief* ("First Day Declaration"), Docket No. 15 at ¶ 5.

3. Specifically, the Debtor employs and oversees the work of vendors, contractors, subcontractors and materialmen (together, "Subcontractors") on the projects. Typically, the project owners compensate the Debtor pursuant to progress payment orders for the work performed on their projects. In turn, the Debtor pays the Subcontractors for the goods and/or services they provided for the particular project. *Id*. at ¶ 13. Project owner payments and receivables are the Debtor's sole source of operating revenue. *Id*. at ¶ 14.

4. Prior to the Petition Date (defined below), the Debtor was unable to fully service all of its project owners' projects. *Id*. at ¶ 34. The Debtor was also not able to ensure that its

Subcontractors were paid on the agreed-upon schedule. *Id*. As a result, certain Subcontractors stopped performing on their contracts with the Debtor and certain project owners ceased making remittance or progress payments to the Debtor on projects that were pending or completed, but not yet paid in full. *Id*. at ¶ 35. As project owner payments are the Debtor's sole source of operating revenue, non-payment led to the Debtor experiencing significant operational cash flow and liquidity issues. *Id*.

B. **The Chapter 11 Case**

5. On September 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

6. The Debtor is operating its business and managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On September 23, 2019, the United States Trustee for the District of New Jersey appointed the Committee.

C. **PNC and The Secured Obligations**

8. PNC is the Debtor's secured creditor. PNC extended a line of credit to the Debtor in the principal amount of $15,000,000.00, as evidenced by a certain credit note dated December 30, 2015 (the "Credit Note") and related (i) Borrowing Base Rider dated November 13, 2014 between the Debtor and PNC and (ii) Security Agreement dated November 13, 2014 executed and delivered by the Debtor in favor of PNC (collectively, and together with the Credit Note and all other documents related to and/or evidencing the Line of Credit, as amended, supplemented, modified and/or restated prior to the date hereof, the "Line of Credit Loan Documents"). In addition, PNC loaned the Debtor the principal amount of $1,600,000.00 (the "Term Loan"). The

Term Loan is evidenced by, *inter alia*, the Term Loan Note dated as of September 26, 2018 (the "Term Loan Note") (together, and with all other documents and/or restated prior to the date hereof, the "Term Loan Documents" and, together with the Line of Credit Loan Documents, the "PNC Credit Documents").

9. The Debtor's obligations under the PNC Credit Documents ("Secured Obligations") are secured by a first priority security interest and lien upon substantially all of the Debtor's assets, including, but not limited to, all of the Debtor's accounts receivable, cash, and other amounts on deposit or maintained in any account or accounts by the Debtor generated by the collection of accounts receivable, and the proceeds of any of the foregoing (the "Cash Collateral").

10. As of the Petition Date, the Debtor was in default of its Secured Obligations. In the aggregate, approximately $15,321,371 was due and owing to PNC as of the Petition Date.

**D.     The Interim Cash Collateral Orders**

11. On September 11, 2019, the Debtor filed the *Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Scheduling a Final Hearing and (D) Granting Related Relief* [Docket No. 14] (the "Cash Collateral Motion").

12. On September 16, 2019, the Court entered the *First Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 90] (the "First Interim Cash Collateral Order"). The First Interim Cash Collateral Order authorized the Debtor's use of PNC's Cash Collateral pursuant to a one (1) week cash collateral budget that was approved by PNC and ran through September 24, 2019.

13. On September 25, 2019, the Court entered the *Second Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 158] (the "<u>Second Interim Cash Collateral Order</u>"). The Second Interim Cash Collateral Order authorized the Debtor's use of PNC's Cash Collateral pursuant to a second one (1) week cash collateral budget that was approved by PNC and ran through October 1, 2019.

14. On October 2, 2019, the Court entered the *Third Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 219] (the "<u>Third Interim Cash Collateral Order</u>"). The Third Interim Cash Collateral Order authorized the Debtor's use of PNC's Cash Collateral pursuant to a third one (1) week cash collateral budget that was approved by PNC and ran through October 8, 2019.

15. On October 8, 2019, the Court entered the *Fourth Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing and, (IV) Granting Related Relief* [Docket No. 279] (the "<u>Fourth Interim Cash Collateral Order</u>"). The Fourth Interim Cash Collateral Order authorizes the Debtor's use of PNC's Cash Collateral pursuant to a two (2) week cash collateral budget that was approved by PNC and that runs through October 22, 2019.

16. A further hearing on the Cash Collateral Motion is scheduled for October 22, 2019.

### E. <u>Post-Petition Financing</u>

17. As of the date hereof, PNC has not consented to or provided the Debtor with any post-petition financing.

### F. <u>The FA Retention Application</u>

18. On October 8, 2019, the Committee filed the FA Retention Application. By the FA Retention Application, the Committee requests authorization to retain EisnerAmper LLP ("EisnerAmper") as accountants and financial advisors pursuant to section 1103 of the Bankruptcy Code, *nunc pro tunc* to September 23, 2019.

## LIMITED OBJECTION

19. As noted above, PNC does not object to the Committee retaining an accountant and financial advisor. Instead, PNC objects to the FA Retention Application to the extent that it seeks authority to use PNC's Cash Collateral to pay EisnerAmper. Specifically, PNC objects to the FA Retention Application to the extent that it seeks authority to compensate EisnerAmper if any payment is not explicitly provided for in an agreed budget approved by PNC in the context of a court-approved Cash Collateral order.

## RESERVATION OF RIGHTS

20. PNC hereby reserves and preserves any and all rights afforded to it, either at law or in equity, to (i) object to any fee application filed by EisnerAmper, (ii) enforce its rights and interests under the PNC Credit Documents, (iii) exercise the right to terminate or object to the Debtor's continued or future use of PNC's Cash Collateral, and/or (iv) to take such other action as PNC may deem necessary and appropriate to preserve, protect, and enforce its rights under the PNC Credit Documents or other applicable law.

[*Remainder of page intentionally left blank*]

WHEREFORE, PNC respectfully requests that any Order entered granting the FA Retention Application (i) provide that the Committee's retention of EisnerAmper does not and shall not be deemed to authorize or approve the payment of any compensation or expenses to EisnerAmper from PNC's Cash Collateral unless expressly consented to by PNC; (ii) preserve any and all rights afforded to PNC, either at law or in equity, to: (a) object to any fee application filed by EisnerAmper; (b) enforce its rights and interests under the PNC Credit Documents; (c) exercise the right to terminate or object to the Debtor's continued or future use of PNC's Cash Collateral; and/or (d) to take such other action as PNC may deem necessary and appropriate to preserve, protect, and enforce its rights under the PNC Credit Documents or other applicable law; and (iii) grant such other relief as is just and proper.

Respectfully submitted,

Dated: October 14, 2019

*/s/ Sommer L. Ross*
DUANE MORRIS LLP
James J. Holman, Esq. (NJ Bar No. 015341989)
Sommer L. Ross, Esq. (NJ Bar No. 004112005)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: jjholman@duanemorris.com
slross@duanemorris.com

*Counsel for PNC Bank, National Association*