**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1

**COZEN O'CONNOR**
Mark E. Felger, Esquire
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000 phone
(856) 910-5075 facsimile
mfelger@cozen.com

*Counsel to Ricoh USA, Inc.*

Order Filed on October 17, 2019
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

HOLLISTER CONSTRUCTION SERVICES,
LLC,[2]

Case No. 19-27439 (MBK)

Chapter 11

Judge: Michael B. Kaplan

**ORDER APPROVING AGREEMENT RESOLVING THE MOTION OF RICOH USA,
INC. TO (I) COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY
CONTRACT, OR (II) IN THE ALTERNATIVE, TO GRANT RELIEF
FROM THE AUTOMATIC STAY**

The relief set forth on the following pages, numbered two (2) through and including three

(3) is hereby **ORDERED**.

DATED: October 17, 2019

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[2] The Debtor in this Chapter 11 case and the last four digits of its taxpayer identification number is: Hollister
Construction Services, LLC (5404).

Page: 2
Debtor: Hollister Construction Services, LLC
Case No. 19-27439 (MBK)
Caption: Order Granting the Motion of Ricoh USA, Inc. (I) Compelling Debtor to Assume or Reject Executory Contract, or (II) In the Alternative, Granting Relief from the Automatic Stay

Upon the *Motion of Ricoh USA, Inc. for entry of an Order (I) Compelling Debtor to Assume or Reject Executory Contract, or (II) in the Alternative, to Grant Relief from the Automatic Stay* [Doc. No. 144] (the "Motion")[3]; and it appearing that this Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and no other or further notice being required; and the Court having held a hearing on October 8, 2019 and Chambers calls on October 15 and October 16, 2019 and the Court having considered the oral responses of interested parties to the Motion, and all such responses having been either overruled or withdrawn; and the Court having been apprised that the Debtor and Ricoh have entered into an agreement (the "Agreement") resolving the Motion, and the Court having determined that the legal and factual bases set forth in the Motion and at the hearing and Chambers' conferences establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore and opportunity for a hearing, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1.     The Motion is granted in part, as set forth herein and in the Agreement.

2.     The Agreement annexed hereto as Exhibit "A" is hereby approved, and the Debtor and Ricoh are authorized to perform their respective obligations thereunder.

---

[3] Capitalized terms used but otherwise not defined herein shall have the same meaning ascribed to them in the Motion.

LEGAL\42966521\6

3. The automatic stay imposed by Section 362(a) of the Bankruptcy Code is hereby modified as set forth in paragraph 27 of the Agreement to allow Ricoh to take all actions necessary and appropriate under the Contract and the Agreement.

4. This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation, implementation, and enforcement of this Order.

5. This Order is immediately valid and fully effected upon its entry and the 14 day stay pursuant to Bankruptcy Rules 4001(a) and 6006(d) are hereby waived.

EXECUTION VERSION

### SETTLEMENT AGREEMENT BY BETWEEN AND AMONG HOLLISTER CONSTRUCTION SERVICES, LLC, THE PROJECT OWNER AND CERTAIN <u>SUBCONTRACTORS</u>

This Settlement Agreement (the "<u>Agreement</u>") is entered into as of October /6, 2019, by between and among Hollister Construction Services, LLC, as construction manager (the "<u>Debtor</u>"); Ricoh USA as Owner ("<u>Owner</u>"); and each of the subcontractors identified on Exhibit A hereto (the "<u>Subcontractors</u>")(each a "<u>Party</u>," and collectively, the "<u>Parties</u>").

WHEREAS, Debtor and Owner are parties to certain contract documents dated as of April, 22, 2019, including, without limitation, that certain Construction Work/Trade Services Contract, and all exhibits annexed thereto, and all subsequent riders, modifications, and change orders (collectively, the "<u>Contract</u>"),[1] relating to construction of 2 Gatehall Drive, Parsippany, New Jersey (the "<u>Project</u>"); and

WHEREAS, on September 11, 2019 ("<u>Petition Date</u>"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>"), Case No. 19-27439 (MBK); and

WHEREAS, the Owner believes it has a right to terminate the Contract for cause and otherwise asserts that the Debtor has defaulted on the Contract; and

WHEREAS, the Subcontractors provided goods and/or services to the Project prior to the Petition Date and are owed money as of the Petition Date in the amounts set forth on Exhibit A hereto; and

---

[1]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Contract.

37322/3
10/15/2019 205213937 3

WHEREAS, PNC Bank, N.A. ("PNC") is the Debtor's primary secured creditor and asserts liens upon and security interests in all assets of the Debtor, including all accounts receivable and all contracts of the Debtor; and

WHEREAS, if the Contract was terminated, the Debtor may lose a substantial amount of contract revenue and retainage related to the Project; and

WHEREAS, the Owner may suffer damages attendant with delay and completion costs due if the Owner exercised its rights to terminate the Contract and if the Project is not completed in a timely manner; and

WHEREAS, the Parties are desirous of finishing the Project forthwith in accordance with the terms of the Contract, as modified herein, and it is in the best interests of the Debtor, its estate and creditors to complete the Project as soon as possible and with as little delay as possible,

NOW, THEREFORE, subject to Bankruptcy Court approval, the Parties stipulate and agree as follows:

1.      Acknowledgement of Contract Amounts.      The Parties acknowledge and agree that: (a) $703,725,99 is due and payable to the Debtor for work performed under the Contract as of September 11, 2019, ("Pre-Petition Obligation"), (b) the Owner is currently holding as security under the Contract an additional $177,534.30 as retainage ("Pre-Petition Retainage") which will be due to the Debtor upon completion of the Contract, as modified herein, (c) there is approximately $599,546.00 of incomplete work which costs will be due and payable if the Project is completed by the Debtor ("Post-Petition Obligation"), and (d) there will be approximately $66,616.00 of additional retainage held for Post-Petition Work ("Post-Petition Retainage").

2.      Acknowledgement of Defaults.  The Parties acknowledge and agree that (a) the Debtor is presently in default under the Contract and that Owner has the right to seek to terminate the Contract, (b) if the Contract were terminated as a result of Debtor's alleged defaults, the Debtor

2

would suffer an economic loss, and (c) Owner will suffer damages in the event it is forced to terminate the Contract and replace the Debtor, including, without limitation, the costs of a replacement contractor and additional attendant delay, which costs would reduce or exhaust (and likely exceed) any remaining amounts claimed to be presently due to the Debtor under the Contract.

3. Modification of the Contract. In order to avoid the damages to the Debtor and Owner described above, and subject to Bankruptcy Court approval, the Debtor agrees to perform its obligations under the Contract as modified herein. Approval of this Agreement by the Bankruptcy Court shall be deemed approval of the Contract as modified herein.

4. Waiver of Defaults and Delay Claims by Owner. Upon entry of an Order of the Bankruptcy Court approving this Agreement, and subject to satisfactory completion of the Project, Owner waives any defaults or other monetary claims for delay existing as of the date of Owner's execution of this Agreement, without prejudice to any other rights and remedies of the Owner under the Contract as modified by this Agreement which may arise from and after Owner's execution of this Agreement.

5. Project Escrow Account. Prior to the execution of this Agreement, Debtor shall establish an escrow account with PNC ("Escrow Account") administered by an independent funds control agent pursuant to a separate Escrow Agreement with PNC that is reasonably acceptable to Owner. All funds deposited into the Escrow Account in excess of the amount necessary to pay the Subcontractors for their Pre-Petition Work and Post-Petition Work as set forth in this Agreement will be subject to PNC's existing liens on cash collateral of the Debtor, and all funds paid pursuant to this Agreement or under the Contract shall be paid through the Escrow Account.

6. Payment to Subcontractors for Work Performed or Goods Provided After the Petition Date ("Post-Petition Work"). Post-Petition    Work    and    Post-Petition    Retainage,

3

specifically including any Post Petition orders approved in the ordinary course, shall be paid pursuant to the Contract in the ordinary course of business without any discount or reduction due to Debtor's bankruptcy. Notwithstanding anything to the contrary in the Contract or herein, the Debtor will continue to supervise its Subcontractors on the Project through completion of same and authorizes the Owner to pay the Subcontractors through the Escrow Account the amounts due to them for services and/or goods provided after the Petition Date as necessary to complete the Project in the ordinary course of work and upon submission by the Subcontractors of all normal and customary documentation to the Debtor and/or Owner and, if required, to obtain either a temporary or final certificate of occupancy for the Project.   All such payments to the Subcontractors shall be subject to prior approval of the Debtor, which approval shall not be unreasonably withheld or delayed, and execution of a lien waiver by each Subcontractor.  Amounts held as Post-Petition Retainage shall be held by Owner and released through the Escrow Account pursuant to the Contract in the ordinary course of business.

7.    <u>Mechanism for Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date ("Pre-Petition Work").</u>  Upon: (a) the release of all filed and asserted liens on the Project's real property and any improvements thereon, and (b) five (5) business days after the entry of an Order (the "<u>Approval Order</u>") of the Bankruptcy Court approving of this Agreement, the Owner will deposit into the Escrow Account an amount representing the sum of 25% of the Pre-Petition Obligation (the "<u>Initial Payment</u>").  Within seven (7) business days from receipt of the Initial Payment, the escrow agent shall release 40% of the amount attributable to the Subcontractors from the Initial Payment in the amounts set forth in Exhibit A hereto, on account of their respective prepetition claims.  The remaining balance from the Initial Payment shall only be disbursed in accordance with the cash collateral order then in effect (as the case may be, the "<u>Current Cash Collateral Order</u>") or, if no Current Cash Collateral Order is then in effect, upon

4

entry of a final order relating to disposition of such balance by of the Bankruptcy Court. Within fifteen (15) business days after the entry of the Approval Order, the Owner will deposit into the Escrow Account an amount representing the sum of 75% of the Pre-Petition Obligation set forth on Exhibit A hereto (the "Additional Payment"). Within seven (7) business days of completion of the Project and the Subcontractors providing all required closeout documentation, including lien waivers, the escrow agent shall release up to 40% of the amount attributable to the Subcontractors from the Additional Payment in the amounts set forth in Exhibit A hereto, for application to the balance, if any, due to each Subcontractor on account of its prepetition claim. Said money will be paid directly to the individual Subcontractors from the Escrow Account in the amounts set forth on Exhibit A. The Subcontractors shall release all filed and asserted liens on the Project's real property and any improvements thereon within five (5) business days after the entry of an Order of the Bankruptcy Court approving of the Agreement. The remaining balance from the Additional Payment shall only be disbursed in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

8.　　Mechanism for Retainage Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date. Pre-Petition Retainage shall be paid by the Owner, when due under the Contract, in such amounts held against Subcontractors set forth in Exhibit A hereto, through the Escrow Account, 40% to the Subcontractors pursuant to Exhibit A, for application to the balance, if any, due to each Subcontractor on account of its prepetition claim. The remaining balance from the Pre-Petition Retainage shall only be disbursed in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

9.    <u>Subcontractor Release and Unsecured Claim.</u>  By executing this Agreement, the Subcontractors agree to perform all remaining work on the Project on a go forward basis as set forth herein, and specifically agree to a 60% discount on the amount of receivable, including retainage, due to them for goods and/or services provided on the Owner's Project prior to the Petition Date.  Upon the Subcontractor's receipt of the payments required hereunder, the Subcontractor waives and releases any right to assert any claim (as defined in section 101(5) of the Bankruptcy Code) against the Owner and the Project for this 60% amount, and agrees to accept in full satisfaction of its claim for goods and/or services provided prior to the Petition Date the 40% placed in escrow as provided for above.  The Subcontractor will be allowed a general unsecured claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

10.    <u>Release of Preferences.</u>  Upon payment of all monies due pursuant to this Agreement and the release of all liens by Subcontractors, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and seek to avoid any alleged preference payments under sections 547 and 550 of the Bankruptcy Code.

11.    <u>Payment Due to Debtor</u>.  The Owner shall pay the Pre-Petition Obligation due to the Debtor under this Agreement and the Contract, as well as the Pre-Petition Retainage, into the Escrow Account through the funding of the Initial Payment and the Additional Payment as set forth in Article 7.  The Owner shall pay the Post-Petition Obligation due to the Debtor under this Agreement and the Contract, as well as the Post Petition Retainage, into the Escrow Account in the ordinary course of business pursuant to the Contract.  The funds in the Escrow Account in excess of amounts due to Subcontractors under this Agreement shall only be disbursed in

6

accordance with Cash Collateral Orders entered by the Bankruptcy Court or a further Order of the Bankruptcy Court.

    12.    <u>Releases</u>.

        (a)    <u>Release by Owner</u>.  Upon payment of all monies due pursuant to this Agreement, the Owner and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "<u>Owner Releasors</u>") do hereby release and forever discharge the Debtor and its officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "<u>Debtor Released Parties</u>") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Debtor Released Parties, arising out of or related to the Contract or the Project.  Notwithstanding the foregoing release, such release shall not release or discharge the Debtor Released Parties from their obligations under the Contract, as expressly modified hereunder, and this Agreement.

        (b)    <u>Release by the Debtor</u>. Upon payment of all monies due pursuant to this Agreement, the Debtor and its officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "<u>Debtor Releasors</u>") do hereby release and forever discharge the Owner and its parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "<u>Owner Released Parties</u>") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which

7

the Debtor Releasors, or any of them, ever had or now has against any one or more of the Owner Released Parties, arising out of or related to the Contract or the Project.

(c).    Release by Subcontractors.  Upon payment of all monies due pursuant  to this Agreement, the Subcontractor and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Subcontractor Releasors") do hereby release and forever discharge the Owner and the Debtor and their respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Debtor Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Subcontractor Releasors, or any of them, ever had or now has against any one or more of the Owner and Debtor Released Parties, arising out of or related to the Contract or the Project.  Subcontractor agrees to indemnify and hold the Owner and Debtor Released Parties harmless against any liens or claims by any supplier, materialmen, vendor, subcontractor of any tier, employee, or other claimant asserting any rights against Owner and Debtor Released Parties by virtue of separate agreement with Subcontractor. Nothing contained herein shall waive or release the Subcontractors' ability to file a general unsecured claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

(d)  Release of PNC Bank.  Except as expressly set forth in this Agreement, subject only to the disbursement of funds as provided for in this Agreement, each Owner and Subcontractor and their respective parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Subcontractor Releasors") do hereby release and forever discharge

8

PNC Bank and its respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "PNC Bank Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner and Subcontractor Releasors, or any of them, ever had or now has against any of the PNC Bank Released Parties, arising out of or related to the Contract or the Project.

13.    Releases as a Defense.  Each of the Owner, Debtor and Subcontractor acknowledge and agree that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

14.    No Assignment of Released Claims.  Each of the Owner, Debtor and Subcontractor represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

15.    Governing Law.  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

9

16.    <u>Contract as Modified In Full Force and Effect</u>.   Except as modified herein, the Contract, as modified by this Agreement, shall be binding upon, and shall inure to the benefit of, the Parties hereto and remains in full force and effect.

17.    <u>Subcontractors.</u>   The Debtor represents that the Subcontractors comprise all of the parties that have provided goods and/or services to the Project prior to the Petition Date. The Debtor agrees that it will not engage any other subcontractor to work on the Project, unless the Owner consents and such party agrees to be bound by this Agreement.

18.    <u>Headings</u>.   The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

19.    <u>Counterparts</u>.   This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

20.    <u>No Oral Modification, Termination or Waiver</u>.   This Agreement cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

21.    <u>Further Assurances</u>.   The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

22.    <u>Jurisdiction and Venue</u>.   The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County.   THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

23.    <u>Authorization</u>.  Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement.  The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

24.    <u>Jointly Drafted</u>.  The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.  The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

25.    <u>Completion Schedule</u>. The Parties agree that the Project shall be restarted as soon as reasonably practicable after approval of this Agreement by the Bankruptcy Court, which shall occur no later than October 16, 2019. The Parties agree that the Project shall be completed no later than ten (10) weeks from the date of remobilization (the "<u>Completion Date</u>") and the remobilization date shall occur no later than Monday, October 21, 2019.  The Parties further agree that upon approval of this Agreement, they will execute a change order in the amount of $50,000, which shall reduce Owner's payment obligation under the Contract and this Agreement in exchange for the extension of the Completion Date.

26.    <u>Bonds</u>. The Parties acknowledge that the bonds on the Project shall remain in place and not be discharged until the Project is fully completed.

27.    <u>Relief From Automatic Stay.</u>  In the event that (a) the bankruptcy case is converted to Chapter 7, or (b) Debtor fails to timely perform its obligations under the Contract as modified by this Agreement and/or its obligations under this Agreement, the automatic stay shall be deemed

11

terminated as to Owner and Owner may exercise its rights under the Contract, including without limitation, termination of the Contract for cause, provided however, that the Owner shall provide Debtor with five (5) days' prior written notice of Owner's intent under section (b) above.

28.    <u>Bankruptcy Court Approval</u>. The Parties stipulate and agree that this Agreement shall only become effective upon the approval of the Bankruptcy Court.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____
        Brendan Murray, President
        399 Jefferson Road
        Parsippany, NJ 07054

**OWNER**
Ricoh USA

By: _____
        Name:
        Title:
        Address:

12

terminated as to Owner and Owner may exercise its rights under the Contract, including without limitation, termination of the Contract for cause, provided however, that the Owner shall provide Debtor with five (5) days' prior written notice of Owner's intent under section (b) above.

28.    <u>Bankruptcy Court Approval</u>. The Parties stipulate and agree that this Agreement shall only become effective upon the approval of the Bankruptcy Court.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____
        Brendan Murray, President
        399 Jefferson Road
        Parsippany, NJ 07054

**OWNER**
Ricoh USA

By: _____
        Name:    Tina M. Johns
        Title:    VP, Finance Operations
        Address:    300 Eagleview Blvd. Ste 200
                        Exton PA 19341

**SUBCONTRACTOR**
Benco, Inc.:

By: _____

Name: Karen Ryznin

Title: CEO

Address: 10 Madison Rd, Unit E Fairfield NJ 07004

12

**SUBCONTRACTOR**

Bridge Builders Newark

By:

    Name: Gerald Whitaker

    Title: CEO

    Address: 211 Warren St. #23

              Newark, NJ. 07103

13

**SUBCONTRACTOR**
Cardella Waste

By: _____

    Name: Joseph Cardella

    Title: SVP

    Address:

    2400 Tonnelle Avenue,

    North Bergen, NJ 07047

14

**SUBCONTRACTOR**
Everlast Floors Inc.

By: _____

Name: Greg DAVEE

Title: PRESIDENT

Address: 600 RTE 10, Whippany NJ 07781

SUBCONTRACTOR
Cardella Waste

By: _____

    Name:

    Title:

    Address:

SUBCONTRACTOR
Everlast Floors Inc.

By: _____

    Name:

    Title:

    Address:

SUBCONTRACTOR
Glass Tech Inc.

By: _Lisa A. Morris_

    Name: Lisa A. Morris    10-14-19

    Title: V.P.

    Address: 2300 South Clinton Ave.
    South Plainfield NJ 07080

SUBCONTRACTOR
Industrial Maintenance, Inc.

By: _____

    Name:

    Title:

    Address:

SUBCONTRACTOR
Infinity Electric

By: _____

    Name:

    Title:

    Address:

10-14-19
Page 6 of 7

**SUBCONTRACTOR**
Industrial Maintenance, Inc.

By: _____

     Name: Eric Sobel
     Title: Partner
     Address: 843 King Georges Road
             Fords NJ 08863

17

**SUBCONTRACTOR**
Infinity Electric

By: _____

      Name:
      Title:
      Address:

20

**SUBCONTRACTOR**
KMC Mechanical, Inc.

By:

Name: PAMELA BRONANDER

Title: VICE PRESIDENT

Address: 62 MAIN ST *

BLOOMINGDALE NJ 07403

* new address

21

Ricoh

**SUBCONTRACTOR**
National Fireproofing

By: _____

Name: Lou Popstefanov
Title: President
Address: 139 Van Winkle Avenue, Garfield, NJ 07026

23

**SUBCONTRACTOR**
The Redline Group, Inc.

By: _____    Anthony E. Wolsko 10.7.2019
     Name:
     Title:
     Address:

## EXHIBIT A

Ricoh

| Subcontractor/Vendor | Pre-Petition Expenses | 40% of Pretition Amount | 25% Paid week of 10/15 | 75% Paid week of 10/29 | Retention Pre-Petition | 40% of Pre-Petition Retainage, Paid at Completion of Project |
|---|---|---|---|---|---|---|
| Benco Inc. | | - | - | - | | - |
| Bridge Builders Newark | 4,500.00 | 1,800.00 | 450.00 | 1,350.00 | 500.00 | 200.00 |
| Cardella Waste | 4,387.50 | 1,755.00 | 438.75 | 1,316.25 | 487.50 | 195.00 |
| Everlast Floors Inc. | 59,841.00 | 23,936.40 | 5,984.10 | 17,952.30 | 6,649.00 | 2,659.60 |
| Glass Tech Inc. | 77,007.00 | 30,802.80 | 7,700.70 | 23,102.10 | 7,700.70 | 3,080.28 |
| Industrial Maintenance, Inc. | 4,050.00 | 1,620.00 | 405.00 | 1,215.00 | 450.00 | 180.00 |
| Infinity Electric | 253,378.50 | 101,351.40 | 25,337.85 | 76,013.55 | 28,153.17 | 11,261.27 |
| KMC Mechanical, Inc. | 187,798.39 | 75,119.36 | 18,779.84 | 56,339.52 | 20,866.49 | 8,346.60 |
| National Fireproofing | 3,240.00 | 1,296.00 | 324.00 | 972.00 | 360.00 | 144.00 |
| The Redline Group, Inc | 220,700.70 | 88,280.28 | 22,070.07 | 66,210.21 | 24,522.30 | 9,808.92 |
| | 814,903.10 | 325,961.24 | 81,490.31 | 244,475.93 | 89,589.16 | 35,875.66 |

United States Bankruptcy Court
District of New Jersey

In re:                                                              Case No. 19-27439-MBK
Hollister Construction Services, LLC                                Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-3        User: admin          Page 1 of 1        Date Rcvd: Oct 17, 2019
                           Form ID: pdf903       Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Oct 19, 2019.
db            +Hollister Construction Services, LLC,   339 Jefferson Road,   Parsippany, NJ 07054-3707

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                       TOTAL: 0

          ***** BYPASSED RECIPIENTS *****
NONE.                                                                                       TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Oct 19, 2019                        Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on October 17, 2019 at the address(es) listed below:
NONE.                                                                                       TOTAL: 0