**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey  07068
(973) 622-1800
Sam Della Fera, Jr., Esq. (sdellafera@msbnj.com)
Joshua H. Raymond, Esq. (jraymond@msbnj.com)
*Attorneys for Official Committee of Unsecured*
*Creditors of Hollister Construction Services, LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date:  November 7, 2019<br>                    at 11:30 a.m. |

**CERTIFICATION OF JOSHUA H. RAYMOND, ESQ., IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' (A) OBJECTION TO DEBTOR's MOTION TO APROVE SETLEMENTS AND COMPROMISES, AND (B) CROSS-MOTION TO CONVERT DEBTOR'S CASE TO CHAPTER 7**

**JOSHUA H. RAYMOND**, **ESQ.**, of full age, hereby certifies and states:

1.     I am a Partner in the law firm of McManimon Scotland & Baumann, LLC, attorneys for The Official Committee of Unsecured Creditors (the "Committee") of Hollister Construction Services, LLC (the "Debtor").

2.     I am fully familiar with the facts set forth herein and make this Certification in support of the Committee's Cross-Motion to convert the Debtor's chapter 11 case to chapter 7 ("Cross-Motion").

3. On September 11, 2019, the Debtor filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Petition Date"), 11 U.S.C. § 101 (the "Bankruptcy Code") in this Court.

4. On September 23, 2019, the Office of the United States Trustee appointed the Committee.

5. On October 24, 2019, the Office of the United States Trustee conducted the meeting of creditors pursuant to Bankruptcy Code section 341(a) (the "341 Meeting").

6. Paul Belair, the Debtor's Chief Restructuring Officer, and Sean Camo, its Chief Financial Officer and Controller, testified on behalf of the Debtor.

7. I also attended the 341 Meeting on behalf of the Committee.

8. Mr. Belair and Mr. Camo testified that the Debtor's bankruptcy filing was the result of (i) a business model that grew too fast, (ii) the Debtor not having employees experienced enough to handle the projects, and (iii) the Debtor's inadequate cash position.

9. Neither Mr. Belair nor Mr. Camo could explain why many of the loans to the Debtor's various employees were made, or if there are documents evidencing the loan terms. However, they did testify that (a) the loan to Matthew Higgins for $387,635 was for his home renovation and (b) the loan to employee Dominick Aquilina, Vice President, for $43,000 was made less than seven months before the Petition Date.

10. According to the Schedules there is a note receivable due and owing from Mr. Johnson in the principal amount of $863,033.55 and Mr. Flanagan in the principal amount of $431,516,76 (collectively, the "Buyout Receivables").  Mr. Camo testified that these Buyout Receivables relate to company funds used by Messrs. Johnson and Flanagan to buyout a former

owner of the Debtor.  The Debtor has made no demand since the Petition Date for the repayment of these loans, and no portion of the Buyout Receivables has been repaid.

11. The Debtor is owed $872,005.51 from affiliates in whom one or more of the Debtor's principals have an ownership interest or some other relationship.  According to the Statement of Financial Affairs, in 2019 alone, i.e., within the eight months before the Petition Date, the Debtor paid these related entities $866,972.74 for non-debtor payroll, insurance, and travel and entertainment costs.  The Debtor has made no demand since the Petition Date for the repayment of these amounts due, and no portion thereof has been repaid.

12. The Debtor chose not to name the related entities (or the Debtor's principals associated therewith) in the Schedules.  But according to the testimony of Mr. Camo at the 341 Meeting, these related entities are Captive Insurance, Saxum Real Estate (of which Mr. Johnson an owner and for which Mr. Flanagan is the Director of Construction), Top Safety (owned by a relative of Christopher Johnson), Michael Graves Architecture & Design (of whom Mr. Furey is President and CEO), and Hessert.  Mr. Camo also confirmed that the Debtor's payments made to such entities was for their (not the Debtor's) payroll, healthcare costs, and overhead.

13. Also, in the year before the Petition Date, the Debtor paid $9,212,937.66 to Orion Interiors, Inc., and stated that the reason for the payment was "Trade Accounts Payable" [Docket No. 340 at p. 261].  According to Mr. Camo's testimony, Orion Interiors is owned at least in part by Brendan Murray's brother, Ryan Murray, who is also Orion's President.  The Debtor has made no demand on Orion since the Petition Date, and no portion of the amount due from Orion has been repaid.

14. On October 4, 2019, the Committee served subpoenas upon the Debtor and Paul Belair pursuant to Fed.R.Bankr.P. 2004 (the "Subpoenas"). True copies of the Subpoenas are attached hereto as Exhibit "A."

15. Pursuant to the Subpoenas, the Debtor and Mr. Belair were required to produce documents on or before October 22, 2019. To date, neither the Debtor nor Mr. Belair has produced any of the documents requested.

16. I also attended a meeting with the Debtor and the Debtor's professionals on October 30, 2019. During that meeting the Debtor advised that the gross profit from a settlement with Tipico would generate only approximately $78,000 in gross profit and would waive and release approximately $400,000 in gross avoidance actions claims.

I hereby certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: November 4, 2019                                 */s/ Joshua H. Raymond*
                                                        Joshua H. Raymond

4829-7087-6843, v. 1