**LOWENSTEIN SANDLER LLP**
Arielle Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Joseph DiPasquale, Esq. (jdipasquale@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date: November 7, 2019 at 11:30 a.m. |

**DEBTOR'S OBJECTION TO CROSS-MOTION OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**TO CONVERT DEBTOR'S CASE TO CHAPTER 7**

Hollister Construction Services, LLC ("Hollister" or "Debtor"), by and through its undersigned counsel, submits this objection to the *Cross-Motion of the Official Committee of Unsecured Creditors (the "Committee") to Convert Debtor's Bankruptcy Case to Chapter 7* filed on November 4, 2019 [Docket No. 406] (the "Cross-Motion"), and respectfully states as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

## **OBJECTION**

1.  The Cross-Motion is procedurally and substantively deficient. Accordingly, the Court should either deny the Cross-Motion without prejudice to renew, or adjourn it to a future date after the Committee has provided proper notice of the Cross-Motion.

2.  The Cross-Motion was filed this past Monday, November 4, 2019 at approximately 3:49 p.m., seeking a hearing on a motion to convert the Debtor's Chapter 11 case to a Chapter 7 case on less than three business days' notice for hearing on November 7, 2019 at 11:30 a.m.

3.  Bankruptcy Rule 2002(a)(4) requires a motion to convert a Chapter 11 to a Chapter 7 case must provide 21 days' notice to all creditors and parties-in-interest. Bankruptcy Rule 2002(i) does not allow any limitation of the notice of a motion to convert a Chapter 11 case to a Chapter 7. Accordingly, because the Committee's Cross-Motion was filed on less than three business days' notice, it is procedurally improper and cannot be heard on November 7.

4.  Further, D.N.J. LBR 9013-2(a)(2) requires that a cross-motion must be filed not later than seven days before the hearing date. In this case, the Committee has not sought an order shortening time (because one would not be permitted). Because the Cross-Motion fails to provide even the minimum notice required by D.N.J. LBR 9013-2(a)(2), it must be denied or, alternatively, adjourned to provide proper notice as required by Bankruptcy Rule 2002(a)(4).

5.  In addition, the Cross-Motion must be denied because it is an improper cross-motion. D.N.J. LBR 9013-2(a)(2) requires "[a] cross-motion must relate to the original motion." The motion pending before the Court is the Debtor's motion seeking approval of a settlement with Tipico Products Co., Inc. ("Tipico") pursuant to Bankruptcy Rule 9019. The Debtor's motion seeks approval of a single settlement agreement with one project owner, Tipico, and approximately 21 subcontractors at that project. The Committee's Cross-Motion has absolutely nothing to do with the Debtor's motion seeking approval of the Tipico settlement pursuant to Bankruptcy Rule 9019. Thus, because the Cross-Motion is improper pursuant to D.N.J. LBR 9013-2(a)(2), the Cross-Motion must be denied without prejudice.

Case 19-27439-MBK    Doc 418    Filed 11/06/19    Entered 11/06/19 10:47:38    Desc Main
Document    Page 3 of 8

6. The Debtor intends to seek discovery from the Committee in connection with the Cross-Motion. Inasmuch as the Committee filed the Cross-Motion on less than three business days' notice, the Debtor has had absolutely no opportunity to request and take discovery. Thus, to the extent the Cross-Motion is not denied, the Cross-Motion must be adjourned to provide proper notice and provide the Debtor the ability and time to take appropriate discovery.

7. For all of these reasons, the Debtor respectfully requests that the Committee's Cross-Motion be denied without prejudice, or adjourned to a future date, but should not be heard on November 7.

8. Without waiving any of the foregoing arguments, the Debtor will comment briefly on some of the substantive allegations raised by the Committee in its baseless Cross-Motion seeking to convert the Debtor's Chapter 11 case to a Chapter 7 case. While the Committee makes much ado about its serving the Debtor with a Bankruptcy Rule 2004 subpoena on October 4, 2019, the Committee neglects to advise the Court that the Debtor requested that the Committee enter into a confidentiality agreement in early October, which confidentiality agreement was not fully executed by the Committee members and the Committee's professionals until the later part of the day on Tuesday, October 29, 2019. That was in advance of a meeting scheduled between the Committee's and Debtor's professionals along with Paul Belair, the Debtor's CRO, and Sean Camo, the Debtor's vice president of finance, which meeting was held on Wednesday, October 30, 2019, at the offices of Hollister. This meeting was scheduled with Committee counsel in lieu of Mr. Belair's deposition, which was adjourned without date. Said meeting lasted close to two and a half hours. At the conclusion of that meeting, the Debtor and its professionals advised the Committee's professionals that documents would be provided on a rolling basis, but that the Debtor was actively involved in attempting to negotiate and finalize certain settlements which the Debtor's CRO, Mr. Belair, and counsel previewed for the Committee's professionals during the meeting, before a Court-imposed deadline of Thursday, October 31. The Committee's counsel advised that the meeting was productive.

-3-

9. Despite the positive meeting, with no advance notice to the Debtor or its counsel such as a phone call or email, on the afternoon of October 31, the Committee filed its *Motion to Compel Debtor and Paul Belair to Respond to and Comply with Rule 2004 Subpoenas* [Docket No. 395]. While no documents were produced to the Committee before it filed its motion seeking to compel enforcement of its subpoenas on October 31 (approximately 24 hours after the productive meeting), that is because the Committee's professionals were so advised at the October 30 meeting that the Debtor's focus was on completing settlements for filing with the Court.

10. Despite the Committee's egregious behavior, the Debtor produced numerous documents to the Committee's professionals on November 5, 2019 pursuant to the terms of the Committee's confidentiality agreement. This included a majority of documents requested by the Committee in its Rule 2004 subpoena and the documents requested at the October 30 meeting.

11. The Committee makes much noise in its Cross-Motion about potential claims against insiders, officers and related parties. The Court should note that the Committee has never, to date, demanded the Debtor pursue any such actions. Further, none of these potential causes of action are being released and are not going anywhere. All of the various claims against insiders and related parties are disclosed in the Debtor's Statements and Schedules, clearly not hidden. That is why the Committee is aware of such causes of action, because they have been advised of them by the Debtor and its professionals.

12. The Debtor advised the Court and the Committee that its primary focus at the outset of this Chapter 11 case was to attempt to enter into settlements with project owners and subcontractors in order to maximize the recovery of accounts receivable and the value to the Debtor's estate. That is exactly what the Debtor has done. Each settlement approved by the Court to date has enhanced the recovery of general unsecured creditors in several ways. In certain instances, subcontractor agreements have been assumed and assigned to the project owner, with the project owner required to pay any cure amounts due to the subcontractor or an amount which the project owner and subcontractor agree, thus ensuring that the subcontractor's

Case 19-27439-MBK    Doc 418    Filed 11/06/19    Entered 11/06/19 10:47:38    Desc Main
Document    Page 5 of 8

pre-petition claim would be paid. On go forward settlements that the Debtor is seeking approval of, unsecured creditors will benefit because they will receive the 40% distribution under the settlement on account of their pre-petition claim, a distribution larger than in many Chapter 11 cases, receive an allowed unsecured claim for the 60% difference, receive a waiver of any preference claim against them, and have the financial benefit of being employed as a subcontractor on these jobs and being paid in full for their post-petition services rendered and/or for goods and materials provided. This is a substantial benefit to unsecured creditors by increasing what unsecured creditors receive and simultaneously reducing the potential claims pool that will remain.

13. A conversion of the Debtors' bankruptcy case will have the opposite effect by forcing the rejection of all of the subcontractor agreements and agreements with project owners, thus increasing the unsecured claims pool, and at the same time decreasing the likelihood of the collection of pre-petition accounts receivable. Thus, the effect of the Committee's Cross-Motion is to increase the claims pool and reduce the value of the Debtor's assets. One must seriously question the wisdom and motives of the Committee's position.

14. It is very possible that the Committee's Cross-Motion seeking conversion is a transparent effort by the Committee Chair to benefit his own business to the detriment of all unsecured creditors. The Committee Chair, Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC (collectively, "Ironside"), has already obtained stay relief and effectively terminated its pending jobs with the Debtor. The Debtor has removed to the Bankruptcy Court its pre-petition litigation against Ironside and intends to file a counter-claim against Ironside seeking to collect a multi-million dollar receivable due to the Debtor. It is very possible that the Committee's actions are simply an effort by the Committee Chair to make a multi-million dollar lawsuit against it go away if a Chapter 7 trustee were appointed, as opposed to the Debtor, who has a much higher financial interest and knowledge of the case to prosecute it.

-5-

15. In addition, the Debtor's professionals had been continuously assured by Committee's counsel that they approve of the Debtor's efforts to enter into settlements with project owners and subcontractors. Debtor's counsel never heard anything to the contrary until the Cross-Motion was filed with the Court.

16. Last, the Cross-Motion has had a tremendous detrimental effect on the Debtor's ability to move forward with certain settlements. Shortly after the Cross-Motion was filed, the Debtor and its professionals heard from more than one project owner and a number of subcontractors that they were very concerned about moving forward with a settlement in light of the pending conversion motion. The conversion motion is jeopardizing certain potential settlements. It is as if the Committee "threw a grenade into the arena" for its own parochial purposes, but clearly not for the benefit of the Debtor's estate and all creditors.

**RESPONSE TO THE OBJECTION TO APPROVE OF THE TIPICO SETTLEMENT**

17. As represented to the Court on numerous occasions, the Debtor's settlements with project owners for the completion of certain of the Debtor's ongoing non-bonded construction projects represent the best path forward in this bankruptcy case and the best way for the value of the Debtor's assets to be maximized and the value of PNC Bank's collateral to be preserved.

18. The Debtor and its professionals have been working around the clock to reach agreements with multiple project owners and subcontractors and present those settlements to the Court. This process has been difficult at best, and made even more so by reckless filings such as the Committee's Cross-Motion to convert this case.

19. The Tipico Settlement was negotiated at arms-length with the project owner and subcontractors on the Tipico Project and represents an agreement highly beneficial to the Debtor's estate. The Tipico Project is substantially completed and there remains little to do under the Tipico Contract other than payment of certain amounts to subcontractors, collection and distribution of retainage and issuance of a certificate of occupancy.

20. While certain preferences are being waived as part of the Tipico Settlement, the Debtor, in its business judgment, evaluated those preferences and the time and expense of

pursing them and determined that the value of any valid preferences did not provide the same equivalent value to the estate as the proposed Tipico Settlement. The Tipico Settlement represents the best option to infuse value into the Debtor's estate, mitigate damages which could accrue as a result of the Debtor's failure to complete the Project, and should be approved by this Court.

21. To allow the Committee to interfere in the Tipico Settlement and irresponsibly advocate to convert the case to a Chapter 7 results in an extreme disadvantage to the Debtor and its creditors and negatively impacts the value of the Debtor's estate.

## RESERVATION OF RIGHTS

22. The Debtor reserves the right to supplement this Objection (i) at the hearing scheduled for November 7, at which the Debtor respectfully submits the Court should deny the Cross-Motion without prejudice or, alternatively, adjourn the Cross-Motion for several weeks with the direction that the Committee provide proper notice to all creditors and interested parties, and (ii) at any subsequent hearing on the Cross-Motion. The Debtor reserves all of its rights to submit additional information, evidentiary material and testimony in opposition to the Cross-Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court deny the Cross-Motion seeking to convert the Debtor's Chapter 11 bankruptcy case to a Chapter 7 case or, alternatively, adjourn it for several weeks and direct that the Committee provide adequate notice to all creditors and interested parties, and grant the Debtor such other and further relief as the Court determines just and equitable.

Dated: November 6, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Arielle Adler, Esq.
Bruce Buechler, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Joseph J. DiPasquale, Esq.
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
aadler@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
jkimble@lowenstein.com
krosen@lowenstein.com
mseymour@lowenstein.com

*Counsel to the Debtor and Debtor-in-Possession*