UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
ACTING UNITED STATES TRUSTEE, REGION 3
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail: Lauren.Bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 19-27439 (MBK) |
| Hollister Construction Services, LLC, | : | |
| | : | Honorable Michael B. Kaplan |
| Debtor. | : | |
| | : | Hearing Date: Nov. 7, 2019 at 11:30 a.m. |

**OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE DEBTOR'S MOTION FOR ENTRY OF ONE OR MORE ORDERS APPROVING VARIOUS SETTLEMENTS AND COMPROMISES BY AND AMONG THE DEBTOR, PROJECT OWNERS AND SUBCONTRACTORS PURSUANT TO FED. R. BANKR. P. 9019**

The Acting United States Trustee (the "U.S. Trustee"), by and through counsel, in furtherance of his duties under 28 U.S.C. § 586, hereby files this objection ("Objection") to the relief requested in the *Debtor's Motion for Entry of One or More Orders Approving Various Settlements and Compromises By and Among the Debtor, Project Owners and Subcontractors Pursuant to Fed. R. Bankr. P. 9019* ("Settlement Motion") (Docket No. 396), and respectfully states as follows:

1

## STANDING

1.  Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*), 33 F.2d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

## BACKGROUND

2.  On September 11, 2019 ("Petition Date"), Hollister Construction Services, LLC ("Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). *See* Docket No. 1.

3.  On October 17, 2019, the Debtor filed its Schedules and Statement of Financial Affairs ("SOFA"). *See* Docket No. 340.

4.  On October 31, 2019, the Debtor filed the Settlement Motion. *See* Docket No. 396. The Settlement Motion seeks approval of "settlements" with project owners and subcontractors that follow the same formula of: (i) allowing payment to subcontractors in the ordinary course for post-petition work and retainage; (ii) establishing a "mechanism and timetable for payment of 40% of the prepetition retainage payments owed to subcontractors"; (iii) establishing a mechanism for project owners to pay the Debtor; (iv) establishing escrow accounts

2

for these payments; (v) entering agreements for subcontractors to perform the remaining work, including the "agreement of subcontractors to take a 60% reduction on the amount of any receivable . . . due to them . . . prior to the Petition Date, and accept "in full satisfaction of its claim . . the 40% amounts provided by the relevant Settlement Agreement" – and yet allows "[e]ach subcontractor [to] retain[] the right to file a general unsecured proof of claim against the Debtor for the 60% reduction in amounts owed for prepetition goods/services[.]"; (vi) releasing all claims or causes of action the Debtor has against subcontractors to recover alleged preferential payments; (vii) granting mutual releases between the Debtor, project owners and subcontractors; and (viii) releasing claims of the project owners and subcontractors against PNC Bank.  *See id*. at pages 4-6.

5. In support of the Settlement Motion, the Debtor states: "[w]ith respect to each of the Settlements identified herein, the Debtor and Project Owner agree that the Debtor is presently in default under the Contract and that the Project Owner believes it has the right to seek to terminate the Contract.  If the Contracts were terminated, the Debtor would lose a substantial amount of contract revenue and retainage owed to it under each Contract."  *See id*. at page 7.

6. Despite the reference to multiple settlement agreements, the Debtor attaches only one settlement agreement: an agreement between the Debtor and project owner, Tipico Products Co., Inc., and twenty-one (21) subcontractors (the "Tipico Settlement Agreement") for a project located at 480 Oberlin Avenue, Lakewood, NJ (the "Tipico Project").  *See id*. at Exhibit 1.

7. The Tipico Settlement Agreement includes the following stipulation and agreement between the parties:

> Acknowledgement of Contract Amounts.  The Parties acknowledge and agree that (a) $330,519.75 is due and payable to the Debtor for work

3

performed under the Contract as of September 11, 2019 ("Pre-Petition Work"), (b) the Owner is currently holding as security under the Contract an additional *$0.00 as retainage* ("Pre-Petition Retainage")[,] which will be due to the Debtor upon completion of the Contract, as modified herein, (c) there is *approximately $0 of incomplete work* which costs will be due and payable if the Project is completed by the Debtor ("Post-Petition Work"), and (d) there will be *approximately $0 of additional retainage* held for Post-Petition Work ("Post-Petition Retainage").

*See id.* at Exhibit 1, page 2 (emphasis added).

8. One of the signatory subcontractors, The Redline Group, Inc., included the following statement below the signature line: "All work & punch list complete." *See id*. at Exhibit 1. The Redline Group, Inc., is included on the Debtor's Schedule F as a vendor with a "disputed" "amount open" of $149,260.47. *See* Docket No. 340 at page 50 of 278. The Redline Group, Inc., is also identified on the SOFA as the recipient of six (6) separate payments in the 90 days pre-petition totaling $139,188.82. *See id*. at pages 256 to 257 of 278.

9. Although the Debtor did not provide information in the Settlement Motion regarding preference exposure, by the U.S. Trustee's calculation, the total amount of potential preference claims for the all subcontractors that signed the Tipico Settlement Agreement is $1,138,675.75. *See* Docket No. 340 at page 233-259 of 278.

## **OBJECTION**

10. The Debtor's cursory Rule 9019 analysis does not satisfy the Debtor's burden of proof to show the settlement is "fair and equitable" in the "best interest of the estate." For the following reasons, the Court should deny the Debtor's request to approve the Tipico Settlement Agreement.

    **I.**    **Standard**

11. Federal Rule of Bankruptcy Procedure 9019 governs the approval of settlement

agreements. While the decision to approve a settlement "lies within the sound discretion of the Bankruptcy Court[,]" *In re Petersburg Regency LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015), the "unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006). To approve a settlement, the court must determine whether it is "fair and equitable" and in the "best interests of the estate." *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010), *citing Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S. Ct. 1157, 1163, 20 L. Ed. 2d. 1 (1968).

12. The four factors established by the Third Circuit in considering whether to approve a settlement are well-known as the *Martin* factors:

> (1) the probability of success in litigation; (2) the likely difficulties of collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of creditors.

*In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996), *citing In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa 1986).

13. The movant has the burden to show the proposed settlement is in the best interest of the estate and the debtor. *In re Roper and Twardowsky, LLC*, 559 B.R. 375, 394 (Bankr. D.N.J. 2016) (further citations omitted). The "proponent of the settlement has the burden of proving its reasonableness and courts must take into consideration 'the fairness of the settlement to the other persons, i.e., the parties who did not settle.'" *In re Biolitec, Inc.*, 528 B.R. 261, 267 (Bankr. D.N.J. 2014), *citing In re TCI 2 Holdings, LLC*, 428 B.R. 117, 136 (Bankr. D.N.J. 2010).

14. The Debtor addresses the *Martin* factors generally, without any specifics regarding the only settlement attached to the moving papers. The only information the U.S. Trustee has

5

with regard to the Tipico Settlement Agreement is the limited information in the proposed settlement agreement and the claim and preference information in the Debtor's Schedules and SOFA.

## II. Application of the *Martin* Factors

### a. Probability of Success

15. The parties acknowledge that $330,519.75 is due to the Debtor for work performed pre-petition, there is no further work to do on the Tipico Project (evidenced by the acknowledgment that there is "approximately $0 of incomplete work"), and there is no retainage being held. There are potential preference claims totaling $1,138,675.75 that the Debtor will waive.

16. Here, the Debtor did not articulate any reason to believe that it would not be successful in litigation with either the property owner or the subcontractors on the Tipico Project. The burden is on the Debtor. While the Debtor states generally that if the "Contracts" were terminated, "the Debtor would lose a substantial amount of contract revenue and retainage owed to it under each Contract[,]" the facts available do not support this contention with regard to the Tipico Project. The proposed Tipico Settlement Agreement shows that there is $330,519.75 (gross) due to the Debtor for work performed pre-petition, and that there is no further work on the Tipico project as the owner is not holding any retainage and there is "$0 of incomplete work." Accordingly, it would appear that it is more likely the Debtor would succeed in litigation for the simple recovery of an account receivable that the parties agree is due and owing.

17. As to the subcontractors, while there are often defenses to preference causes of action, the Debtor has not provided any information to support such a contention. Often,

6

preference actions can settle with a recovery to the estate without having to litigate.

### b. Difficulties of Collection

18. The Debtor has not articulated any difficulties in collection and the U.S. Trustee has no reason to believe that collection in this case would be any different that the difficulties inherent in almost any collection action.

### c. Complexity of Litigation and Expense

19. Again, other than a general statement that "future proceeding with respect to each Project could be protracted and expensive, may require the resolution of complex issues and involve substantial uncertainties and risks inherent in litigation," the Debtor failed to articulate the complexity or expense of potential litigation with the property owner or subcontractors. Here, it appears the Debtor is simply faced with a collection action against the project owner for a pre-petition account receivable in the amount of $330,519.75, and potential preference actions totaling $1,138,675.75 against subcontractors.

### d. Paramount Interest of the Creditors

20. There is absolutely no indication that the Tipico Settlement Agreement is in the paramount interest of the entire creditor body. This factor requires the Court to "consider the effect of the settlement on all parties to the proceeding – the entire creditor body – and not individual creditor interests." *In re Roper and Twardowsky, LLC*, 559 B.R. at 394, *citing In re Biolitec, Inc.*, 528 B.R. at 270 (further citations omitted).

21. The Debtor stands to receive only the gross amount of $330,519.75, while paying out 40% of the unsecured claims of the 21 subcontracts and waiving $1,138,675.75 of potential preference actions. Rather than provide "necessary cash flow," it appears this Settlement

7

Agreement will only bring in a nominal receivable to the estate that the Debtor may be entitled to anyway as there is no further work on the Tipico Project.

22. The Debtor may be able to collect the receivable without paying on the subcontractors' pre-petition claims at this stage and without waiving potential preference claims. Even if the Debtor is only able to collect a portion of the preference claims, this may be a significant asset.

23. Additionally, it appears that the subcontractors that are a party to the Tipico Settlement Agreement, in addition to receiving 40% payment of their unsecured claim and waiver of any preference exposure, will also be able to file a proof of claim for the remaining 60% of their claims. It should also be noted that the ability to file a proof of claim for the remaining 60% is inconsistent with the provision of the agreement that receipt of the 40% payment is in "full satisfaction" of a subcontractor's claim.

24. While the Debtor anticipates similar deals for other unsecured creditors, those agreements have not come to fruition and it is unclear if they ever will, or if they will be able to satisfy the *Martin* factors.

25. Further, there are unsecured creditors who will never be offered a similar deal because the projects they are involved with are either complete or are not going forward.

26. The Debtor has not provided any analysis of the potential benefit to the creditor body as a whole.

## CONCLUSION

27. The Debtor's sole argument for approval of the Tipico Agreement is that if the "Contracts were terminated, the Debtor would lose a substantial amount of contract revenue and

retainage owed to it under each Contract." The evidence is to the contrary. The parties acknowledge that there is "$0.00 as retainage," "approximately $0 of incomplete work" and there will be "approximately $0 of additional retainage." Further, at least one of the subcontractors likewise states that "[a]ll work & punch-list complete." Accordingly, the Debtor has offered the Court no reason to approve the Tipico Settlement Agreement.

28. While the U.S. Trustee is cognizant that settlements are generally favored and the Court will not substitute its judgment for that of the debtor-in-possession, the U.S. Trustee respectfully submits that in this instance, the proposed settlement falls below the lowest point in the range of reasonableness and should be denied.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the relief requested in the Settlement Motion in its entirety.

> Respectfully submitted,
> ANDREW R. VARA
> ACTING UNITED STATES TRUSTEE
> REGION 3
>
> /s/ *Lauren Bielskie*
> Lauren Bielskie
> Trial Attorney

DATED: November 6, 2019