**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| **HOLLISTER CONSTRUCTION SERVICES, LLC,**[1] | Case No. 19-27439 (MBK) |
| | Requested Hearing Date: November 14, 2019 at 10:00 a.m. |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY AN ORDER APPROVING A SETTLEMENT**
**AGREEMENT BY AND AMONG**
**THE DEBTOR, PROJECT OWNERS AND SUBCONTRACTORS**
**PURSUANT TO FED. R. BANKR. P. 9019**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby submits this motion (this "Motion") seeking the entry an (the "Proposed Order"), substantially in the form submitted herewith, approving of a Settlement Agreement[2] between the Debtor, Latitude East Owner, LLC and Latitude West Owner, LLC (collectively, "Latitude") and certain subcontractors as more particularly described herein pursuant to Fed. R. Bankr. P. 9019.  In support of this Motion, the Debtor states as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

[2] Terms not otherwise defined herein shall have the meanings afforded to them in the Settlement Agreement.

## **JURISDICTION, VENUE, AND STATUTORY PREDICATES**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3.      The Debtor consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4.      The statutory predicates for the relief requested in this Motion are sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## **BACKGROUND**

5.      On September 11, 2019 (the "Petition Date"), the above-captioned Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case").  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner.

6.      On September 23, 2019, the Office of the United States Trustee appointed a statutory committee in this Chapter 11 Case (the "Committee").

7.      Additional details regarding the Debtor's business and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Brendan Murray in Support of First Day Relief* [Docket No. 15].

## THE DEBTOR'S BUSINESS OPERATIONS

8.      The Debtor operates a substantial construction business.  In calendar year 2018, the Debtor collected approximately $292,034,763 in gross revenue.  The Debtor depends on payments from project owners upon completion of the project and at certain stages of the project.  The Debtor's receivables from those project owners are assets of the Debtor and property of its bankruptcy estate.  If the Debtor cannot finish a project, it may be subject to future obligations and additional liabilities.  Further, the Debtor is concerned that various subcontractors, materialmen and other suppliers may lien job sites or continue to prosecute their construction liens to collect on monies due for pre-petition services and/or goods supplied by filing or foreclosing on construction liens against the real property on which the Debtor does or did supervise construction and development despite the automatic stay (which may not apply in certain circumstances).  Only through ongoing operations will the Debtor be able to realize the substantial amounts due from open accounts receivable.

## THE SETTLEMENTS

9.      As this Court is aware, the Debtor's ability to continue to operate in chapter 11 hinges on its ability to negotiate global settlements with most, if not all of the project owners and project stakeholders, as well as the subcontractors on each of the Debtor's ongoing construction projects.  These settlements, if ultimately approved by the Court, will allow the Debtor to complete certain of its ongoing construction projects, and will provide the necessary cash flow and funding needed for the Debtor's continued operations and repayment of its debt to PNC Bank.

10.      In the time since the Petition Date, the Debtor and its professionals have been diligently and actively engaged in negotiations with project owners and subcontractors regarding the Debtor's ongoing construction projects (the "Projects") in an attempt to reach global settlements on certain projects.  As a result of ongoing negotiations, the Debtor has reached a settlement (a "Settlement") with Latitude (the "Project Owner") and certain subcontractors as set forth below.

-3-

11.    The Settlement relates to certain Latitude Project (defined below) where the Debtor has determined it is economically feasible to continue construction on and completion of the Latitude Project.

12.    Attached hereto as **Exhibit 1** is the Settlement Agreement between the Debtor and Latitude East Owner, LLC and Latitude West Owner, LLC, as Project Owners, related to those certain project located at 369-379 and 389-399 Interpace Parkway, Parsippany-Troy Hills, NJ (the "Latitude Project").   Exhibit A to this Settlement Agreement sets forth the pertinent financial details regarding the proposed payment of certain pre-petition amounts due to certain subcontractors on the Latitude Project.

13.    Through this Motion, the Debtor seeks approval of the above Settlement with Latitiude and the subcontractors on the Latitude Project.

14.    Pursuant to the Settlement Agreement,[3] the parties have agreed, *inter alia*, that in order to avoid damages to the Debtor and Latitude that would arise from termination of the Latitude Project contracts (each a "Contract, and collectively, the "Contracts"), subject to Bankruptcy Court approval, the Debtor shall continue to perform under each of the Contracts, as modified by each of the Settlement Agreement.   Subject to the specific terms identified in each Settlement Agreement, the Settlement between the Debtor , Latitude and certain subcontractors generally provides:

a.    The payment to subcontractors in the ordinary course of business for all post-petition work and post-petition retainage on the Latitude Project without any discount or reduction in amounts owed;

b.    The establishment of a mechanism and timetable for payment of 40% of the amounts owed to subcontractors for work performed prior to the Petition Date and the identification of such 40% amounts on Exhibit A of the Settlement Agreement;

---

[3] This Motion contains a summary of the settlement terms only.  In the event of any conflict between the terms of the Settlement Agreement and this Motion, the Settlement Agreement shall govern.

c.      The establishment of a mechanism and timetable for payment of up to 40% of the prepetition retainage payments owed to subcontractors for work performed prior to the Petition Date in accordance with the underlying Contracts and the identification of such 40% amounts on Exhibit A to the Settlement Agreement;

d.      The establishment of a mechanism for payments due by Latitude to the Debtor;

e.      All payments provided for in the Settlement Agreement will flow through an escrow account at PNC governed by a separate Escrow Agreement between the Debtor and an escrow agent;

f.      The agreement of the subcontractors to perform all remaining work on the Latitude Project on a go-forward basis;

g.      The agreement of the subcontractors to take a 60% reduction on the amount of any receivable, including retainage, due to them for the goods and/or services provided to the Latitude Project prior to the Petition Date;

h.      As a condition to the payments set forth in the Settlement Agreement, the requirement that each subcontractor release any liens filed against the Latitude Project;

i.      In exchange for the payments set for in the Settlement Agreement, the agreement of each subcontractor to waive and release the right to assert any claim against Latitude and the Latitude Project and the agreement of each subcontractor to accept in full satisfaction of its claim for goods/ services provided prior to the Petition Date, the 40% amounts provided for by the Settlement Agreement;

j.      Each subcontractor retains the right to file a general unsecured proof of claim against the Debtor for the 60% reduction in amounts owed for

prepetition goods/ services provided and/or work performed on the Latitude Project;

k.  A release and waiver by the Debtor of any and all claims or causes of action it may have against subcontractors to recover alleged preferential payments pursuant to section 547 and 550 of the Bankruptcy Code;

l.  The granting of mutual releases by and between Latitude, the Debtor, the subcontractors; and

m.  Latitude and subcontractors release and any all claims against PNC Bank.

15.   As part of the finalization of the Settlement Agreement, the Debtor communicated with PNC Bank with respect to the specific terms of the Settlement Agreement. PNC has generally signed off on the Settlement Agreement with Latitude.

## RELIEF REQUESTED

16.   By this Motion, the Debtor seeks the entry of one or more orders (i) approving the Settlement Agreement with Latitude pursuant to Bankruptcy Rule 9019 and authorizing the Debtor to continue to perform under each of the respective Contracts between the Debtor and Project Owner, as modified by each Settlement Agreement.

## BASIS FOR RELIEF

17.   Bankruptcy Rule 9019(a) provides, in pertinent part, that upon a motion, and after notice and a hearing, the Court may approve a compromise or settlement. Approval of a settlement remains in the sound discretion of the Bankruptcy Court. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986). In determining whether to approve a settlement, the Court should determine whether the proposed settlement is in the best interests of the estate. *Id; see also, In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).

18.   The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (noting that

"[c]ompromises are 'a normal part of the process of reorganization.'") (citation omitted), *reh'g denied*, 391 U.S. 909 (1968).

19.     Further, the settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Penn Central Transp.*, 596 F.2d 1102 (3d Cir. 1979); *In re Mavrode*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997).

20.     The Third Circuit, applying *TMT Trailer* in the context of a settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

21.     In determining whether to approve a settlement, the Bankruptcy Court should not substitute its judgment for that of the debtor and the parties. *See Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803. The Bankruptcy Court is not to decide the numerous questions of fact or law raised by the controversy, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Cosoffi v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608, 613 (2nd Cir.) (citations omitted), *cert denied*, 464 U.S. 822 (1983); *Mavrode*, 205 B.R. at 720. Thus, in reaching its decision regarding the approval of the proposed compromise this Court need not conclusively determine the claims, which are the subject of the compromise, nor find that the compromise constitutes the best result obtainable. *See W.T. Grant*, 699 F.2d at 613.

22.     The Debtor respectfully submits that the proposed Settlement is fair and prudent, is in the best interests of the estate, and fall within the "range of reasonableness." With respect to Latitude settlement, the Debtor and Latitude agree that the Debtor is presently in default under the Contract and that Latitude believes it has the right to seek to terminate the Contracts. If the Contracts were terminated, the Debtor would lose a substantial amount of contract revenue and retainage owed to it under each Contract. Latitude could also suffer substantial damages, including

the costs of obtaining a replacement contractor and additional delay in completion of the Latitude Project.   The Settlement Agreement will allow the Debtor to finish the Latitude Project in accordance with the terms of the Contracts, as modified by the Settlement Agreement.   Thus, the Settlement Agreement will benefit the Debtor's estate and its creditors and provide the necessary cash flow for the Debtor to continue to operate in this Chapter 11 Case.   In addition, future proceedings with to the Latitude Project could be protracted and expensive, may require the resolution of complex issues and involve substantial uncertainties and risks inherent in litigation. With these forgoing considerations in mind, the Debtor has concluded that the Settlement Agreement is (i) fair and equitable, (ii) a reasonable resolution with respect to the Latitude Project, (iii) in the best interests of the Debtor and its estate, and (iv) in the paramount interests of the Debtor's creditors.

23.      For the foregoing reasons, the Debtor submits that this Court should approve each of the Settlement Agreement with Latitude and certain subcontractors.

## WAIVER OF BANKRUPTCY RULES 6004

24.      The Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rules 6004(a), and (ii) the stay of any order under Bankruptcy Rules 6004(h), to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate and creditors.

## WAIVER OF MEMORANDUM OF LAW

25.      The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J.  LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies is set forth herein and the Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

26.      No prior request for the relief sought in this Motion with respect to these Settlement
Agreements has been made to this or any other court.

## NOTICE

27.      Notice of this Motion has been given to (i) the Office of the United States Trustee
for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attention:
Lauren E. Bielskie; (ii) counsel for PNC Bank, the Debtor's pre-petition secured lender, Duane
Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman; (iii)
counsel for the Committee, McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue,
Roseland, NJ 07068, Attention: Anthony Sodono, III, Esq., and Sam Della Ferra, Esq.; (iv) all
parties that have requested to receive notice pursuant to Bankruptcy Rule 2002; (v) counsel for
Latitude; and (vi) all subcontractors on the Latitude Project that are the subject of the Settlement
Agreement.  In light of the nature of the relief requested herein, the Debtor respectfully submits
that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter one or more orders,
in the form submitted herewith, (i) approving the Settlement Agreement with Latitude and certain
subcontractors and authorizing and directing the Debtor to perform its obligations under the
Settlement Agreement, (ii) approving the mutual releases set forth in the Settlement Agreement,
and (iii) granting the Debtor such other and further relief as the Court deems just and equitable.

Dated:  November 6, 2019                    Respectfully submitted,

                                            **LOWENSTEIN SANDLER LLP**

                                            /s/ *Kenneth A. Rosen*
                                            Kenneth A. Rosen, Esq.
                                            Bruce Buechler, Esq.
                                            Joseph J. DiPasquale, Esq.
                                            Mary E. Seymour, Esq.
                                            Jennifer B. Kimble, Esq. (admitted *pro hac vice*)

Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to the Debtor and*
*Debtor-in-Possession*