# EXHIBIT A

# AGREEMENT

This Agreement (the "Agreement") is entered into this __ day of _____, 2019 by and between Arch Insurance Company and Arch Reinsurance Company (collectively, "Surety") and _____ ("Subcontractor") (collectively, the "Parties").

**WHEREAS**, Hollister Construction Services, LLC ("Hollister") and **[name of project owner, CM or GC, as applicable]** ("Obligee") entered into an agreement dated **[date of bonded contract]** (the "Contract"), the terms and conditions of which are incorporated herein by reference as if fully set forth herein, for **[description of contract and project no.]** (the "Project"); and

**WHEREAS**, Subcontractor entered into a written agreement ("Subcontract") with Hollister dated _____, the terms and conditions of which subcontract and any fully executed change orders thereto (the "Subcontract") are incorporated by reference as if fully set forth herein, to perform work and/or supply material in connection with the Contract, with the scope of work of the Subcontract (the "Subcontract Work") being set forth in the Subcontract; and

**WHEREAS**, Surety issued a Payment Bond, Bond No. **[bond no.]** (the "Bond"), on behalf of Hollister in connection with the Contract, in favor of Obligee and, as may be applicable, any co-obligees (and together with the Obligee, the "Obligees"); and

**WHEREAS**, on September 11, 2019, Hollister filed a petition with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") for relief under Chapter 11 of the United States Bankruptcy Code; and

**WHEREAS,** Hollister, with the approval of the Bankruptcy Court, has consented to relief from the automatic stay, pursuant to 11 U.S.C. § 362, so as to allow the Obligee to declare Hollister in default of the Contract and, as necessary, terminate the Contract for default, only so as to allow the Obligee and Surety to arrange for completion of the Contract; and

**WHEREAS,** Obligee, with the approval of the Bankruptcy Court, has declared Hollister in default under the Contract and/or terminated the Contract, and demanded that Surety complete the Contract; and

**WHEREAS,** Hollister, with the approval of the Bankruptcy Court, has been authorized, pursuant to 11 U.S.C. § 365, but not directed to either assume and assign the Subcontract to Surety or its designee, or to reject the Subcontract; and

**WHEREAS,** the Surety and Hollister have been authorized by the Bankruptcy Court but not directed to have the Surety enter into new agreements with the Subcontractors; and

**WHEREAS,** with respect to a Subcontractor, for which this Agreement has been executed or shall be executed by Surety and Subcontractor, the Subcontract will be deemed rejected, pursuant to § 365 of the Code, by consent of Hollister and the Parties without further order of the Bankruptcy Court; and

**WHEREAS,** Surety wishes to have work under the Contract continue, and desires that Subcontractor continue work under the Contract and Subcontract and complete the Subcontract,

including all remaining Subcontract Work, in accordance with the terms and conditions of the Subcontract and the Contract, as modified by the Agreement; and

**WHEREAS**, Subcontractor (a) claims it is unpaid for work performed for Hollister in connection with the Subcontract and (b) has made demand for payment for labor and/or material supplied by Subcontractor to Hollister in connection with the Contract; and

**WHEREAS**, Surety is agreeable to making payment to Subcontractor in the event Subcontractor agrees that Subcontractor will resume performance under the Subcontract (including, but not limited to, performing any incomplete and/or corrective work relating to the Subcontract) in accordance with the terms of the Subcontract and for the consideration set forth in the Subcontract and this Agreement; and

**WHEREAS**, Subcontractor is willing to continue or resume performance under the Subcontract,

**NOW, THEREFORE**, for and in consideration of the foregoing and in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and intending to be legally bound hereby, the Parties hereby agree as follows:

1. All the above "Whereas" paragraphs are incorporated herein.

2. Surety and Subcontractor hereby incorporate by reference the terms and conditions of the Subcontract into this Agreement, as modified by this Agreement.

3. The Subcontractor hereby represents and warrants that the status of the Subcontract, as of the date of this Agreement, is as follows:

    (a) Original Subcontract Amount $ 0.00
    (b) Additions/Reductions to Subcontract Amount $ 0.00
    (c) Adjusted Subcontract Amount (a + b) $ 0.00
    (d) Value of Subcontract Work performed and/or material stored at jobsite through and including Subcontractor Payment Application ____ $ 0.00
    (e) Retainage to Date $ 0.00
    (f) Value of Subcontract Work performed/material stored less Retainage $ 0.00
    (g) Amount previously paid to Subcontractor $ 0.00
    (h) Net amount due Subcontractor less retainage $ 0.00
    (i) Value of Subcontract Work to be performed $ 0.00

4. Subject only to collection of the payment by Surety in the amount set forth in Paragraph 3(h), which payment shall be made by Arch within fifteen (15) business days from the date of full execution of this Agreement, Subcontractor hereby: (i) affirms its obligations under the Subcontract, and (ii) agrees that Subcontractor, in exchange for the consideration set forth in the Subcontract and this Agreement, shall fully complete the Subcontract, including any

2

4825-1071-1980.v2

incomplete work, warranty work or corrective work (the "Subcontract Work") for Surety, as a subcontractor for Surety, in accordance with the terms of the Subcontract and Contract, including compliance with any plans, specifications and other documents relating thereto. Subcontractor shall provide, at its own expenses, all labor, materials, scaffolds, tools, and equipment necessary to perform all Subcontract Work required under the Subcontract. To the extent required by the Subcontract and/or under the terms of the Contract, Subcontractor shall also provide all submittals relating to the scope of the Subcontract Work, including, but not limited to, shop drawings, as-built drawings, warranties, guarantees and O&M manuals.

5. Subject only to payment of the amount set forth in Paragraph 3(h), Subcontractor releases Surety, Debtor and Obligee(s) from any and all claims, of any type or kind, known or unknown, asserted or unasserted, which in any way arise from, relate to, or concern the Subcontract, the Contract, the Project, the Bond, and/or Subcontractor's performance under the Subcontract, which claims have accrued or arise out of or relate to events occurring prior to the date of this Agreement (including but not limited to delays), excluding only Subcontractor's claim for retainage in the amount set forth in Line 3(e) above and other reserved claims set forth in paragraph 7 below. If Subcontractor filed a mechanic's lien in connection with the Subcontract and/or Contract, Subcontractor shall provide to Surety an original Discharge of Lien simultaneously with the execution of this Agreement, which Discharge of Lien shall be filed by Surety upon Surety's issuance to Subcontractor of the payment of the amount set forth in Paragraph 3(h).

6. Surety shall pay Subcontractor the Retainage set forth in paragraph 3(e) above within 30 days of acceptance of the Project by the Obligee and Surety's receipt of the Retainage from the Obligee (subject to any backcharges).

7. Any and all claims by Subcontractor relating to the Project (the "Claims") including, but not limited to, extra work for which no change orders were issued and/or approved, are set forth in the document annexed hereto as Exhibit A. All of the Parties' rights, claims and defenses regarding the Claims are fully reserved. To the extent that a Subcontractor has been paid, or is paid, by Surety, Subcontractor unconditionally assigns to Surety all of Subcontractor's claims against Hollister relating to the Project and Subcontract and, to the extent a Subcontractor enters into an Agreement with Surety, Subcontractor shall be deemed to have assigned to Surety any and all claims, if any, against Hollister to the extent said claims have been or will be paid by the Surety pursuant to a Bond. Further, to the extent the Surety enters into a takeover or other agreement with an Obligee, the Obligee shall be deemed to have assigned to the Surety any and all claims, if any, against Hollister to the extent said claims have been or will be paid by the Surety pursuant to a Bond. Upon assignment of paid claims, the Subcontractors and Obligees shall have no recourse against Debtor for said assigned claims.

8. Subcontractor warrants and represents that (a) Subcontractor has no debts relating in any way to the Project, and (b) that all of Subcontractor's sub-subcontractors, employees, and suppliers have been paid in full for all labor and/or material provided to Subcontractor in connection with the Project (the "Debts"). In the event Subcontractor has any Debts related to the Project, Subcontractor shall identify such Debts to the Surety, in writing, prior to the execution of this Agreement. For all such Debts identified by the Subcontractor, the Subcontractor represents and warrants that all funds received by the Subcontractor from the Surety, including the payment

3

amount set forth in Paragraph 3(h), shall be utilized to satisfy any such Debts. In the event Subcontractor does not satisfy such Debts in accordance with this paragraph, Subcontractor expressly agrees and acknowledges that the Surety may satisfy the Debts directly, in whole or in part, and deduct the amount expended in satisfaction of the Debts from the Subcontract balance and/or payments due the Subcontractor, including, but not limited to, the payment amount set forth in Paragraph 3(h) and retainage set forth in Paragraph 3(e). However, nothing contained in this paragraph shall be interpreted to expand the Surety's obligation, if any, to satisfy any such Debts beyond the amount remaining under the Subcontract and/or the Surety's obligation, if any, under the Bond.

9. Surety shall pay Subcontractor the amount set forth in Paragraph 3(h) within ten (10) days of Subcontractor's execution of this Agreement and delivery of same, together with an executed IRS form W-9, to Surety.

10. Provided that Subcontractor has received payment in the amount set forth in Paragraph 3(h), Subcontractor shall resume the Subcontract Work within three (3) business days of the issuance of a Notice to Proceed by Surety or Cashin Spinelli & Ferretti, LLC ("CSF"), CSF being Surety's construction manager for the Contract and the Project, and will prosecute its work in accordance with the schedule set forth in the Subcontract, which schedule is subject to modification by Surety.

11. Payment for Subcontract Work performed by Subcontractor after the date of this Agreement, less retainage withheld under the Subcontract, shall be paid by Surety within ten (10) business days of Obligee's approval of the Subcontract Work performed, provided that Subcontractor has submitted all paperwork required for payment under the Subcontract, the Contract and/or this Agreement. Subcontractor shall submit all applications for payment to CSF in accordance with the terms of the Subcontract. Subcontractor expressly agrees and acknowledges that Subcontractor shall not be entitled to payment for Subcontract Work that is not approved by the Obligee; Subcontractor shall be entitled to payment for such Subcontract Work only after Subcontractor completes such Subcontract Work to the approval of the Obligee.

12. As a condition of payment, to the extent required by the Contract and/or Subcontract, this Agreement requires Subcontractor to submit certified payrolls and such other documents required by the Subcontract and/or the Contract. Subcontractor acknowledges and agrees that, if required by the Contractor and/or Subcontract, Subcontractor is obligated to pay, and shall pay, prevailing wages as currently in effect to those of its workers who perform the Subcontract Work under this Agreement and the Subcontractor, said wages to be in the amount required for the jurisdiction in which the work by Subcontractor is being performed.

13. Subcontractor shall provide all warranties and guarantees required by the Subcontract. Any material provided by the Subcontractor must be accompanied by the appropriate warranty/guarantee.

14. Subcontractor agrees not to perform any work that Subcontractor believes is beyond the scope of the Subcontract, unless and until such work has been authorized in writing (for purposes of this Agreement, an email shall be sufficient) by Surety or CSF. Subcontractor acknowledges and agrees that by performing such work without prior written authorization from

4

Surety or CSF, Subcontractor is doing so at Subcontractor's own risk, may not be paid for such work, and expressly waives any claims for payment of such work, including any claims of unjust enrichment.

15. Surety shall have the right, at Surety's sole discretion, to terminate this Agreement and the Subcontract upon three (3) business days written notice to Subcontractor with or without cause and/or for Surety's sole convenience. Upon termination of this Agreement and the Subcontract pursuant to this paragraph, Surety's sole obligation to Subcontractor shall be to pay Subcontractor for (a) work performed after the effective date of this Agreement and through the date of termination of this Agreement pursuant to this paragraph, and (b) for retainage as set forth in Paragraph 3(e).

16. Subcontractor shall have the right to terminate this Agreement, upon three (3) business days written notice to the Surety, only in the event of nonpayment by Surety for work performed by Subcontractor after the effective date of this Agreement, which nonpayment is not warranted by the terms of the Subcontract or this Agreement.

17. If the Surety finds, in its sole discretion, that Subcontractor is not performing work in accordance with the Subcontract, this Agreement, the Schedule, or as per the direction of the Surety of CSF, the Surety or CSF shall send Subcontractor written notice regarding the Subcontractor's lack of proper performance. If the Subcontractor does not correct the non-performance issue within three (3) calendar days, the Surety, at its sole discretion, may perform or hire another subcontractor to perform the Subcontractor's work and backcharge the Subcontractor for the work performed. The dollar amount of the backcharge shall then be deducted from the Subcontractor's remaining contract balance and/or retainage. If the amount of the backcharge is greater than the Subcontractor's remaining contract balance and/or retainage, the Subcontractor shall pay to Surety the difference.

18. Subcontractor understands, acknowledges and agrees that this Agreement and the Subcontract may be assigned by the Surety to a completion contractor (the "Completion Contractor"). Subcontractor acknowledges and agrees that the Surety has the sole right, but not the obligation, to assign this Agreement and the Subcontract to the Completion Contractor. Neither this Agreement nor the Subcontract may be assigned by the Subcontractor without the express written consent of the Surety or its assignee.

19. In the event this Agreement and the Subcontract is assigned to a Completion Contractor, Subcontractor shall look solely to the Completion Contractor for all further payments for work that is performed from and after the date of that assignment, including retainage set forth in Paragraph 3(e).

20. Subcontractor shall perform the Subcontract Work under the Subcontract and this Agreement as directed by CSF. In the event this Agreement and the Subcontract are assigned, Subcontractor shall perform the Subcontract Work as directed by the Completion Contractor. Moreover, subsequent to such assignment, references in this Agreement to the Surety and/or CSF shall be interpreted to mean the Completion Contractor.

4825-1071-1980.v2

21. Subcontractor hereby agrees to perform all future Subcontract Work at the prices set forth in the Subcontract for the remaining duration of the Contract and Subcontract.

22. Subcontractor agrees that all costs for insurance, general conditions, administrative work, permits, labor and materials are included in its Adjusted Subcontract Amount.

23. Subcontractor shall complete all paperwork and administrative items requested by Surety, CSF and/or Obligee that are required under the Contract or Subcontract and which relate to the Subcontract Work (including, but not limited to, shop drawings, as-built drawings, warranties, guarantees and O&M manuals).

24. Subcontractor shall promptly address and fix any defective work found in Subcontractor's work both before and after the date of this Agreement. Surety and CSF shall have the right to withhold moneys from future payments should the defective work not be resolved promptly by Subcontractor.

25. To the extent that any government jurisdiction, agency, or authority requires that permits be filed with it for the work done prior to or after the date of this Agreement, Subcontractor shall promptly file and obtain said permits and fulfill any other government requirements required by the government. Subcontractor shall also promptly close and sign-off these permits. Surety shall have the right to withhold moneys from future payments should Subcontractor fail to perform the aforesaid.

26. All correspondence associated with this Agreement, the Subcontract and the completion of the Subcontract Work shall be sent to CSF at the following address: Attn: Michael Spinelli, JD, AIA, Cashin Spinelli & Ferretti, LLC, 801 Motor Parkway, Hauppauge, NY 11788 or by email to mwspineli@csfllc.com.

27. Before commencing the Subcontract Work, Subcontractor shall procure and maintain, at Subcontractor's own expense, until completion and final acceptance of the Subcontract Work, insurance in the amount and kind set forth in the Subcontract. A Certificate of Insurance shall be delivered to the Surety for its approval within three (3) days of the execution of this Agreement and before starting the Work, naming Surety, CSF, Hollister and Obligee(s) (and any other persons required to be so named in the Subcontract and/or Contract) as additional insureds.

28. To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Surety, Obligee(s), CSF and Hollister, and their respective agents and employees, from and against claims damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Subcontract Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Subcontract Work itself), but only to the extent caused by the negligent acts or omissions of Subcontractor, a subcontractor to Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by Surety, Obligee(s), CSF, and/or Hollister. In claims against Surety, Obligee(s), CSF, and/or Hollister by an employee of Subcontractor, a subcontractor to Subcontractor, anyone directly or indirectly

employed by them or anyone for whose acts they may be liable, the indemnification obligation set forth herein shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for Subcontractor or a subcontractor of Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

29. Subcontractor will submit all documentation required by Obligee for Subcontractor to continue the Subcontract Work, including, but not limited to, shop drawings, as-built drawings, warranties, guarantees, and Operational and Maintenance Manuals.

30. To the extent of any payment made under this Agreement, Subcontractor assigns to Surety any and all claims of whatsoever kind or nature which Subcontractor may have against Hollister arising from or in connection with the Subcontract.

31. The Surety reserves all rights, claims and defenses against Subcontractor with respect to any defective or incomplete work performed by Subcontractor.

32. All monies received under this Agreement shall be treated as trust funds and used to pay persons who have furnished labor and/or materials at Subcontractor's request, in connection with the Project, and Subcontractor shall obtain valid releases of all claims made and liens filed by such persons.

33. Subcontractor will indemnify Surety and Obligee(s) and save Surety and Obligee(s) harmless from any claim, demand, lien or suit which may be asserted or filed by any laborer, materialman, supplier, or subcontractor of Subcontractor, who asserts a claim, demand or lien arising out of or in any manner connected with, directly, or indirectly, labor performed, materials furnished or any other work performed for Subcontractor on the Project.

34. Any disputes arising out of this Agreement or the Subcontract shall be determined in the federal or state courts which are venued in the State of New _____, which shall have exclusive jurisdiction of any such dispute. All Parties consent to the jurisdiction of such court for the purposes of adjudicating any disputes relating to this Agreement and/or the Subcontract. Any such dispute will be interpreted in accordance with the laws of the State of New _____, without any consideration given to conflict of law principles. THE PARTIES EACH IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY ACTION, SUIT OR PROCEEDING RELATING TO OR ARISING OUT OF THIS AGREEMENT OR THE SUBCONTRACT.

35. Each Party represents it has (i) read this Agreement, (ii) had the opportunity to confer with legal counsel concerning its terms, and (iii) agrees to be bound by its terms and conditions. The Parties further agree that each Party has reviewed this Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

36. Except as otherwise modified by this Agreement, the terms of the Subcontract remain in full force and effect.

37. This Agreement and the Subcontract, as may be modified by this Agreement, embody the entire Agreement by and among the Parties with respect to the subject matter hereof and, except as otherwise provided herein, supersede any and all prior agreements, understandings or representations, oral or written, with respect thereto, except that the General Indemnity Agreements executed by, among others, Hollister in favor of Surety, shall remain in full force and effect and are in no way affected, altered, modified, or amended by the terms of this Agreement.  No modification, amendment or waiver of any provision of this Agreement is effective unless the same is in writing and signed by both Surety and Subcontractor, and then such modification, amendment or waiver shall be effective only in the specific instance and for the express purpose for which it was given.

38. This Agreement may be executed in counterparts and facsimile and/or electronic signatures shall be of the same force and effect as original signatures.

IN WITNESS WHEREOF, the parties have executed this Agreement through their duly authorized representatives, each of whom personally represents and warrants that he/she has the full authority to execute this Agreement on behalf of party on whose behalf he/she executes this Agreement.

ARCH INSURANCE COMPANY and
ARCH REINSURANCE COMPANY                          **[NAME OF SUBCONTRACTOR]**

By:_____               By:_____
    Name:                                                                              Name:
    Title:                                                                                 Title:

# EXHIBIT A

# CLAIMS

9