**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and
Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date: November 15, 2019 at 9:30 a.m.<br><br>Re: Docket No. 427 |

**SUPPLEMENT AND NOTICE OF FILING OF AMENDED SETTLEMENT AGREEMENT BY AND AMONG THE DEBTOR, LATITUDE EAST OWNER, LLC, LATITUDE WEST OWNER, LLC AND CERTAIN SUBCONTRACTORS**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, in connection with its *Motion for Entry an Order Approving of a Settlement Agreement By and Among the Debtor, Latitude East Owner, LLC and Latitude West Owner, LLC and Certain Subcontractors Pursuant to Fed. R. Bankr. P. 9019* filed on November 6, 2019 (the "Motion") [Docket No. 427], states as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

37322/2
11/13/2019 205387710.1

1.      Attached as <u>Exhibit A</u> is a clean copy of the Amended Settlement Agreement by and among the Debtor, Latitude East Owner, LLC and Latitude West Owner, LLC, and the Subcontractors (the "Amended Settlement Agreement").

2.      Attached as <u>Exhibit B</u> is a blacklined copy of the Amended Settlement Agreement marked to show changes from the Settlement Agreement attached to the Motion.

3.      The Debtor's estate expects to net approximately $2.6 million from entry into and completion of the Amended Settlement Agreement for the Latitude Project.

4.      The gross dollar amount paid to the Subcontractors listed on <u>Exhibit A</u> to the Settlement Agreement within the 90-day period prior to the Petition Date is approximately $2,865,000.  This amount does not take into account any potential defenses to alleged preference claims such as new value and ordinary course of business payments.

Dated:  November 14, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

<u>/s/ Kenneth A. Rosen</u>
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to the Debtor and*
*Debtor-in-Possession*

## Exhibit A

## AMENDED SETTLEMENT AGREEMENT BY AND AMONG
## HOLLISTER CONSTRUCTION SERVICES, LLC, LATITUDE EAST OWNER, LLC
## AND LATITUDE WEST OWNER, LLC AND SUBCONTRACTORS

This Amended Settlement Agreement (the "**Agreement**") is entered into as of November 14, 2019, by and among Hollister Construction Services, LLC, ("**Hollister**" or "**Debtor**"); Latitude East Owner, LLC and Latitude West Owner, LLC (collectively "**Owners**", and each an "**Owner**"); and each of the subcontractors identified on **Exhibit A** hereto, (collectively "**Subcontractors**", and each a "**Subcontractor**") (each a "**Party**" and collectively the "**Parties**").

**WHEREAS**, on June 15, 2019, Latitude East Owner, LLC and Hollister entered into that certain Standard Form of Agreement between Owner and Contractor (AIA Document A101-2017), where the basis of payment is a stipulated sum for the construction of a glass connector to connect the Latitude East building, located at 389-399 Interpace Parkway, Parsippany-Troy Hills Township, New Jersey and the Latitude West buildings located at 369-379 Interpace Parkway, Parsippany-Troy Hills Township, New Jersey (the "**Connector Contract**"). By Agreement dated May 15, 2019, Latitude East Owner, LLC and Hollister entered into that certain Standard Form of Agreement between Owner and Contractor (AIA Document A101-2017), where the basis of payment is a stipulated sum with regard to the construction of a new courtyard with hardscape, landscape and granite swings and fountains at the Latitude complex (the "**Courtyard Contract**"). It appears that the Courtyard Contract was never properly executed. On or about January 14, 2019, Latitude West Owner, LLC and Hollister entered into a Standard Form of Agreement between Owner and Contractor (AIA Document A101-2017) where the basis of payment is a stipulated sum, concerning construction of a four level, above ground, pre-cast concrete parking garage, to be located at 369-379 Interpace Parkway, Parsippany-Troy Hills Township, New Jersey (the "**Parking Garage Contract**"), (collectively the Connector Contract, the Courtyard Contract and the Parking Garage Contract are referred to hereinafter as the "**Contracts**") (collectively the improvements under the Connector Contract, the Courtyard Contract and the Parking Garage Contract are referred to hereinafter as the "**Projects**").

**WHEREAS**, on September 11, 2019 ("**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), Case No. 19-27439 (MBK);

**WHEREAS**, prior to the Petition Date, Owners served Hollister with Notice of Termination of the Contracts terminating the Contracts based on Hollister's default of its obligations under the Contracts;

**WHEREAS**, the Subcontractors provided goods and/or services to the Project prior to the Petition Date and are owed money by Hollister as of the Petition Date in the amounts set forth on **Exhibit A** hereto; and

**WHEREAS**, PNC Bank, N.A. ("**PNC**") is the Debtor's primary secured creditor and holds liens upon and security interests in all assets of the Debtor, including all accounts receivable and all contracts of the Debtor; and

**WHEREAS**, the termination of the Contracts will result in the Debtor losing a substantial amount of contract revenue and retainage related to the Projects; and

**WHEREAS**, Owners may suffer damages attendant with the Project not being completed in a timely manner as a result of the termination of the Contracts; and

**WHEREAS**, the Parties are desirous of modifying the Contracts and finishing the Projects forthwith in accordance with the terms of the Contracts, as modified herein, and it is in the best interests of the Debtor, its estate and creditors to complete the Projects as soon as possible and with as little delay as possible.

**NOW, THEREFORE**, subject to Bankruptcy Court approval, the Parties stipulate and agree as follows:

1.      The Settlement Agreement entered into by the Parties dated November 6, 2019, is hereby replaced and superseded by this Agreement.  The November 6, 2019 Agreement is declared null and void.

2.      <u>Modification of Contracts</u>.  Upon the Order of the Bankruptcy Court approving of this Agreement (the "**Approval Order**"), the Contracts shall be deemed reinstated in their entirety as modified by this Agreement. The Approval Order shall provide that the Contracts are modified by the terms of this Agreement.

3.      <u>Acknowledgement of Contract Amounts</u>.

a.      The Parties acknowledge and agree that the following amounts would be owed to the Debtor for work performed under the Contracts as of September 11, 2019 (collectively, the "**Pre-Petition Amount Outstanding**"): (1) $626,702.84 under the Connector Contract, (2) $445,434.76 under the Courtyard Contract, and (3) $917,184.19 under the Parking Garage Contract.  The amount being held as retainage for work performed prior to the Petition Date is $630,981.29 ("Pre-Petition Retainage").

b.      Hollister asserts that the approximate cost of completing the Projects, inclusive of all amounts other than the Pre-Petition Amount Outstanding and Pre-Petition Retainage (the "**Post-Petition Amount Due**") is as follows (i) $1,715,483.12 under the Connector Contract, (ii) $1,219,295.28 under the Courtyard Contract, and (iii) $2,510,622.10 under the Parking Garage Contract, which amounts will be due and payable pursuant to the terms of the Contracts if the improvements are completed by the Debtor in accordance with the terms and provisions of the Contracts.  Of the Post-Petition Amount Due of $5,445,400.50 in total, Owners will withhold ten percent (10%) of each payment application for the work to be performed under the Contracts after the Petition Date (the "**Post-Petition Work**") under the Contracts (collectively the "**Post-Petition Retainage**"), which retainage is expected to equal $544,540.05 upon full completion of the Projects and which amounts may be due to the Debtor pursuant to the terms of the Contracts upon completion of the improvements in accordance with the terms of the Contracts, as modified herein.  The Post-Petition Retainage is part of, and expressly included in, the Post-Petition Amount Due.

4.      <u>Acknowledgement of Defaults</u>.  The Parties acknowledge and agree that (a) the Debtor defaulted in performing its obligations under the Contracts, and that Owners terminated

-3-

the Contracts as a result of the defaults of Debtor, (b) as a result of the Contracts being terminated due to Debtor's defaults, the Debtor will suffer an economic loss, and (c) Owners may suffer damages from delays in the completion of the Projects resulting from the replacement of the Debtor, including, without limitation, the costs of a replacement contractor and additional attendant delay, which costs could reduce or exhaust any remaining amounts claimed to be presently due to the Debtor under the Contracts if the Contracts were reinstated.

5.    <u>Agreed Upon Modifications to and Amendments to Contracts</u>. The Contracts are hereby modified and amended by this Agreement in the following respects:

a.    <u>Settlement and Payment of Pre-Petition Amount Outstanding</u>. The Debtor asserts that the Pre-Petition Amount Outstanding and the Pre-Petition Retainage is owed to Hollister and the Subcontractors for pre-petition work performed. The Owners assert that they are entitled to offset against the Pre-Petition Amount Outstanding from damages, costs and expenses resulting from Debtor's default for non-performance. After extensive negotiation, the Owners and the Debtor have reached agreement, pursuant to which Owners will pay into Escrow Account (defined below) the amount of One Million Six Hundred Eighty-Nine Thousand Dollars and 80/100 ($1,689,321.80) ("Pre-Petition Amount Outstanding Settlement Payment") in full and complete satisfaction of all Pre-Petition Amount Outstanding to Hollister and the Subcontractors. The Owners agree that they shall not assert any further offsets of the Pre-Petition Amount Outstanding and, in the event of the lien free completion of the Projects, the Pre-Petition Retainage.

b.    <u>Post-Petition Amounts Due</u>. Following Owners' review and approval of requisitions for Post-Petition Work performed, pursuant to the terms of the Contracts, as modified herein, Owners shall pay (i) directly to the Subcontractors, the amounts due to Subcontractors for Post-Petition Work performed by the Subcontractors the amounts for such work not to exceed the amounts set forth on the budgets attached hereto as **Exhibit A** under the column labeled "Post-Petition Expense," or an amount not to exceed $3,282,551.29 for Post-Petition Expense and $321,624.91 for Post-Petition Retainage, and (ii) Hollister the amounts due to Hollister for the Post-Petition Work as set forth in monthly invoices for a pro rata amount of the Post-Petition

Amount Due to Hollister based on percentage of completion of the Projects.  For example, the total due to Hollister after the full completion of the Projects from the Post-Petition Amount Due would be $1,618,309.16 ($4,900,860.45 less payments to Subcontractors of $3,282,551.29).  For the avoidance of doubt, no provisions in this Agreement shall be interpreted as requiring the Owners to pay to Hollister and the Subcontractors, in the aggregate, more than the stipulated sums set forth in the Contracts for the Pre-Petition Work (as modified by the Pre-Petition Settlement Payment) and the Post-Petition Work, plus the Pre-Petition Retainage and Post-Petition Retainage as set forth herein.  After the payment of the Pre-Petition Settlement Payment into the Escrow Account, Owners collectively shall not be liable under this Agreement and the Contracts, collectively, for more than the Post-Petition Amount Due, plus the Pre-Petition Retainage and Post-Petition Retainage as set forth herein.

        c.    <u>Hollister Employees</u>.  Hollister agrees to provide the services of Rick Moro and Vincent Solano, as on-site superintendent and project manager, respectively for the Projects.  These individuals shall devote such time as deemed necessary by Owners to complete the Projects.  Should either Rick Moro or Vincent Solano leave the employ of Hollister or otherwise be unavailable to perform the necessary services on the Projects, Hollister shall have five (5) calendar days to replace these employees with candidates approved by Owners, such approval not to be unreasonably withheld.  In the event that Hollister fails to replace these individuals with replacements acceptable to Owners in five (5) days of the departure of these individuals, the Contracts may be terminated by Owners,  upon written notice to Debtor and its counsel, with no opportunity to cure such default; such termination shall be "for cause" pursuant to Section 14.2.1 of the Contracts.

        d.    <u>Failure to Provide Subcontractors amounts from the Pre-Petition Settlement Payment</u>.  It shall be an event of default under the Contracts, as modified herein, if any of the Subcontractors do not receive amounts due to such Subcontractor from the Pre-Petition Settlement Payment as set forth in this Agreement.

e.    <u>Drop Dead Dates for Completion</u>.  The following shall be drop dead dates for full completion of the Projects as required pursuant to the terms and provisions of the Contracts, to be extended only with the prior written consent of Owners, which may be withheld in the sole and absolute discretion of Owners; provided, however, in lieu of any force majeure concept in the Contracts, the drop dead dates may be extended one (1) time for up to ten (10) calendar days for unavoidable circumstances beyond Hollister's control, including an act of God, tornado, hurricane, flood, earthquake, or explosion, in each case not caused by (i) the negligent act or omission of Hollister, (ii) breach of this Agreement, (iii) the Subcontractors or anyone else for whom Hollister is responsible, and (iv) Hollister's breach of a project labor or "no strike" agreement.  Hollister covenants not to seek authority from the Court to extend these "drop dead dates" without the consent of Owners, which may be withheld in the sole and absolute discretion of Owners.

i.    The improvements under the Parking Garage Contract shall be completed on or before December 31, 2019;

ii.    The improvements under the Connector Contract shall be completed on or before January 10, 2020; and

iii.    The improvements under the Courtyard Contract shall be completed on or before January 10, 2020.

f.    <u>Additional Defaults</u>. The following shall be deemed additional events of default under the Contracts, as modified by this Agreement (the "**Additional Defaults**"):

i.    the failure of the escrow agent to make any payments from the Escrow Account to the Subcontractors pursuant to the terms of this Agreement;

ii.    the failure of the Debtor to complete the Projects as required pursuant to the terms and conditions of the Contracts by the "drop dead date"; and

iii.    the default by the Debtor or PNC of any of its obligations under this Agreement.

-6-

Notice of the Additional Defaults or any other defaults under the Contracts (as modified by this Agreement) shall be provided to Hollister in writing and shall provide Hollister with a twelve (12) calendar day right of cure.  In the event that the defaults are not cured within such twelve (12) day cure period, the Contracts may be immediately terminated by Owners, which termination shall be "for cause".

        g.    <u>Liquidated Damages for Post Modification Defaults</u>.  Should Hollister default under any of the Contracts (as modified by this Agreement) and fail to cure said default within twelve (12) calendar days as set forth hereinabove, Owners shall be entitled to liquidated damages under such Contract commencing twelve (12) days after an uncured default, through completion of such Project in the amount of $5,000.00 per day (the "Liquidated Damages").  Said Liquidated Damages may be offset by Owners, without further Order of the Court, only in amounts due to Hollister exclusive of any amounts due to Subcontractors, for Post-Petition Work performed and against any entitlement of Hollister to retainages, including Pre-Petition Retainage and Post-Petition Retainage, again exclusive of amounts due to Subcontractors.

        h.    <u>No Interest</u>.  Hollister and Owners expressly agree that no payments withheld or other amounts currently unpaid by Owners are deemed to be past due and no such amounts are subject to any rate of interest, including any interest that would be required pursuant to Section 5.3 of the Contracts or the New Jersey Prompt Payment Act, N.J.S.A. 2A:30A-1, 2A:30A-2.

    6.    <u>Substitution of Subcontractors</u>.  Should Hollister be unable to convince any Subcontractors to complete their work on the Projects, Hollister may substitute subcontractors to perform such work, provided that said substitution does not delay the "drop dead dates" for completion of the Projects.  Any substitution of subcontractors shall be subject to Owners' right of reasonable approval of such proposed substituted subcontractors and waiver of any right to lien by such original subcontractor. If Hollister fails to retain, in a timely manner, a substitute subcontractor which is reasonably acceptable to Owners, then Debtor shall be deemed to be in

default under the applicable Contract, and Owner shall have the right to terminate such Contract on notice to Debtor.

7. <u>Project Escrow Account</u>. Prior to the execution of this Agreement, Debtor shall establish an escrow account with PNC ("**Escrow Account**") administered by an independent funds control agent pursuant to a separate Escrow Agreement with PNC, which agreement shall be reasonably satisfactory to the Owners. All funds deposited into the Escrow Account will be subject to PNC's existing liens on cash collateral of the Debtor, and all funds required to be paid by Owners to Debtor pursuant to the terms of this Agreement shall be deposited into the Escrow Account. For the avoidance of doubt, pursuant to Section 5(b), any payments to the Subcontractors for Post-Petition Work performed by the Subcontractors shall be paid by Owners directly to the Subcontractors and shall not be deposited in the Escrow Account.

8. <u>Mechanism for Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date ("**Pre-Petition Work**")</u>. Upon: (a) the release of all filed and asserted liens on the Project's real property and any improvements thereon and the delivery by the Subcontractors of lien waivers for all Pre-Petition Work in form and substance reasonably acceptable to Owners, including lien waivers from all of Subcontractors' contractors, subcontractors, and suppliers of any tier, and (b) five (5) business days of the entry of the Approval Order, Owners will deposit into the Escrow Account the Pre-Petition Settlement Payment. No later than 7 calendar days after the Owners deposit the Pre-Petition Settlement Payment into the Escrow Account, the escrow agent shall pay to the Subcontractors listed on **Exhibit A** from the Pre-Petition Settlement Payment the amounts set forth next to the name of each Subcontractor on **Exhibit A** under the column entitled "25% Paid". No later than 21 calendar days after the Owners deposit the Pre-Petition Settlement Payment into the Escrow Account, the escrow agent shall pay to the Subcontracts listed on Exhibit A from the Pre-Petition Settlement Payment the amounts set forth next to the name of each Subcontractor on Exhibit A under the column entitled "75% Paid". The remaining balance from the Pre-Petition Amount Outstanding Settlement Payment shall be disbursed to Hollister in accordance with this Agreement and the cash collateral order then in effect

(as the case may be, the "**Current Cash Collateral Order**") or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

9.    Mechanism for Retainage Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date and After the Petition Date.

   a.      Upon completion of the Projects and delivery to Owners of all lien waivers from all of Subcontractors' contractors, subcontractors and suppliers of any tier, the Owners shall pay to the Subcontractors listed on **Exhibit A** the amounts set forth next to the name of each Subcontractor on **Exhibit A** under the column entitled "40% of Pre-Petition Retainage, Paid at Completion of the Project", for application to the balance, if any, due to each Subcontractor on account of its prepetition claim, which amount shall equal 40% of the Pre-Petition Retainage payable to such Subcontractor.   The balance of the Pre-Petition Retainage shall be paid into the Escrow Account by Owners and paid to Hollister subject to the Current Cash Collateral Order.

   b.      Retainage of the Post-Petition Work shall be paid by Owners directly to the Subcontractors pursuant to the term and provisions set forth in the Contracts.

10.    Subcontractor Release and Unsecured Claim.  By executing this Agreement, each Subcontractor agrees to perform all work on the Project which has yet to be completed as set forth in the subcontract between Subcontractor and Debtor.  Each Subcontractor specifically agrees to a 60% discount on the amount of receivables, including retainage, due to them for goods and/or services provided on the Project prior to the Petition Date.  Upon the Subcontractors receipt of the payments required hereunder, each Subcontractor (i) waives and releases any right to assert any claim (as defined in Section 101(5) of the Bankruptcy Code) against Owners and the Project for any amounts incurred prior to the Petition Date and Pre-Petition Amounts Outstanding, (ii) agrees to accept in full and satisfaction of its claim for goods and/or services prior to the Petition Date the 40% placed in escrow as provided for above, and (iii) agrees to and shall deliver to the applicable Owner a lien waiver and lien waivers from all of Subcontractors' contractors, subcontractors, and suppliers of any tier for any of the Pre-Petition Work in form and substance reasonably acceptable

to such Owner.  Each Subcontractor will be allowed a general unsecured claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

11.    <u>Warranties</u>.  The Subcontractors agree that Owners are a third party beneficiary of all warranties and guaranties set forth in the subcontracts entered into between the Subcontractors and the Debtor, and that all such warranties and guaranties inure to the benefit of the Owners as if such warranties and guaranties were made directly to the Owners.  In no event do Owners have any obligations to the Subcontractors, other than the payments provided in this Agreement, as a result of the warranties and guaranties inuring to the Owners' benefit or otherwise.

12.    <u>Release of Preferences.</u>    Upon payment of all monies due pursuant to this Agreement, the release of all liens by Subcontractors, and the delivery of the lien waivers from all of Subcontractors' contractors, subcontractors, and suppliers of any tier, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and seek to avoid any alleged preference payments under Sections 547 and 550 of the Bankruptcy Code limited to the Projects.

13.    <u>Releases</u>.

a.    <u>Release by Owners</u>.  Upon completion of the Projects in full pursuant to the terms of the Contracts as modified by this Agreement (including completion of all punch list items and completion of Debtor's obligations to correct any construction defects) and subject to the rights of offset under this Agreement and the provisions of the immediately succeeding sentence, Owners and their parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Owner Releasors**") do hereby release and forever discharge the Debtor and its officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Debtor Released Parties**") of and from any and all known claims (as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Debtor Released Parties, arising out of

or related to the Contract or the Project.  Notwithstanding the release in the immediately preceding sentence, in no event shall Owners release, discharge or waive any claims it may have against Debtor Released Parties (i) in connection with a default by the Debtor of any obligations of the Debtor under the Contracts as modified by this Agreement from and after the date of the Approval Order, (ii) any default by Debtor of the terms and provisions of this Agreement, or (iii) if such release or waiver adversely affects Owners' ability to collect insurance proceeds under any insurance policies in which Owners have an insurable interest.  Owners retain all of its rights and remedies under the Contracts as modified by this Agreement and in equity with respect to any of the events described in clauses (i), (ii) and (iii) of the immediately preceding sentence.

   b.  <u>Release by the Debtor</u>. Upon payment of all monies due pursuant to this Agreement, the Debtor, the Debtor's Bankruptcy Estate, and their officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "**Debtor Releasors**") do hereby release and forever discharge Owners and their parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers, lenders and their respective predecessors, successors and assigns (collectively, the "**Owner Released Parties**") of and from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Debtor Releasors, or any of them, ever had or now has against any one or more of the Owner Released Parties, arising out of or related to the Contract or the Project.

   c.  <u>Release by Subcontractors</u>.  Upon payment of all monies due to each of the Subcontractors pursuant to this Agreement, each Subcontractor and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Subcontractor Releasors**") do hereby release and forever discharge Owners and the Debtor and their respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Owners and Debtor Released Parties**") of and from any and all claims

(as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Subcontractor Releasors, or any of them, ever had or now has against any one or more of the Owners and Debtor Released Parties, arising out of or related to the Contract or the Project, provided, that, in no event shall the Subcontractors be deemed to release, discharge or waive any claims against the Owners and Debtor Released Parties for the failure to make any payments for the Post-Petition Work due and payable from and after the Approval Order. Each Subcontractor agrees to defend, indemnify and hold the Owners and Debtor Released Parties harmless against any liens or claims by any supplier, materialmen, vendor, subcontractor of any tier, employee, or other claimant asserting any rights against Owners and Debtor Released Parties by virtue of separate agreement with Subcontractor.

        d.    <u>Release of PNC Bank</u>. Except as expressly set forth in this Agreement, subject only to the disbursement of funds as provided for in this Agreement, each Owner and each Subcontractor and the subcontractors' respective parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Subcontractor Releasors**") do hereby release and forever discharge PNC Bank and its respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**PNC Bank Released Parties**") of and from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owners and the Subcontractor Releasors, or any of them, ever had or now has against any of the PNC Bank Released Parties, solely arising out of or related to the Contracts or the Projects, provided, that, in no event shall PNC be released of any liability for its failure to release any money deposited in the Escrow Account as required pursuant to the terms of this Agreement, but only if PNC is the escrow agent. It is anticipated that PNC will not act as the escrow agent.

14.    <u>Releases as a Defense</u>.    Each of the Owners, Debtor and Subcontractors acknowledge and agree that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

15.    <u>No Assignment of Released Claims</u>.    Each of the Owners, Debtor and Subcontractors represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in Section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

16.    <u>Governing Law</u>.    This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

17.    <u>No Defaults or Claims Against Owners</u>.    Debtor represents and agrees that Owners are not in default under the Contracts, and upon signing this Agreement, Debtor shall have no claims against Owners as of the date hereof; provided, however, that Debtor is not waiving any future claims it may have against Owners under the Contracts as modified by this Agreement that first arise after the entry of the Approval Order.

18.    <u>Contract as Modified In Full Force and Effect</u>.    Except as modified herein, the Contract, as modified by this Agreement, shall be binding upon, and shall inure to the benefit of, the Parties hereto and remains in full force and effect.  In the event of a conflict between this Agreement and the Contracts, this Agreement shall control.

19.    Headings.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

20.    Counterparts.  This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

21.    No Oral Modification, Termination or Waiver.  This Agreement may be amended only by a written agreement executed by the Parties hereto.  No provisions of this Agreement may be waived, except by a written document executed by the Party entitled to the benefits of the provision.  No waiver of a provision will be deemed to be or will constitute a waiver of any other provision of this Agreement.

22.    Further Assurances.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

23.    Negotiations.  This Agreement shall not be binding on any party until the entry of a Final Order of the Bankruptcy Court approving this Agreement has been entered, and all Subcontractors listed on **Exhibit A** have signed this Agreement and surrendered their right to file liens against the Projects. Should either of these conditions fail to be satisfied on or before November 21, 2019, at the option of the Owners, this Agreement shall be deemed null and void and the Parties shall be restored to their positions prior to execution of this Agreement, without prejudice to any Party.

24.    Jurisdiction and Venue.  The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County.   THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

25.    Authorization. Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement.  The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

26.    Jointly Drafted.  The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.  The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

27.    Notices.  Any notice to be given under this Agreement shall be made in writing and sent by express, registered or certified mail, return receipt requested, postage prepaid, fax, or overnight commercial delivery service, addressed as set forth below:

Debtor:

Hollister Construction LLC:
399 Jefferson Road
Parsippany, NJ 07054
Attn:  Brendan Murray, President

With required copy to:

Debtor's Counsel:

Lowenstein Sandler LP
One Lowenstein Drive
Roseland, New Jersey 07068
Attn:  Bruce Buechler, Esq. and Kenneth Rosen, Esq.

Owners:

Latitude East Owner, LLC
Latitude West Owner, LLC
c/o Vision Real Estate Partners

-15-

1 Bloomfield Ave.
Mountain Lakes, New Jersey 07046
Attn:  Ross Chomik

and

Latitude East Owner, LLC
Latitude West Owner, LLC
c/o Rubenstein Partners
2929 Arch Street, 28th Floor
Philadelphia, PA 19104
Attn:  Stephan Card and Mark D. Turner

With required copy to:

Owners' Counsel:

Wasserman, Jurista & Stolz
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Attn:  Daniel M. Stolz, Esq.

Such notice shall be deemed to be delivered, given and received for all purposes as of the date delivered (or the date delivery was refused, as applicable) if delivered by an overnight commercial delivery service or by email or confirmed fax, or as of the date on which the same was deposited in a regularly maintained receptacle for the deposit of United States mail, if sent by express, registered or certified mail.  Any delivery by fax shall only be deemed effective if an additional copy of such notice is promptly sent by overnight commercial delivery service.

28.    This Agreement shall be binding upon all Parties that are signatories hereto and shall also be binding upon any Chapter 11 or Chapter 7 Trustee appointed for the Debtor.


[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____

    Chris Johnson, Head Coach
    399 Jefferson Road
    Parsippany, NJ 07054

**OWNER**

Latitude East Owner, LLC

By: _____

    Ross M. Chomik, Manager
    1 Bloomfield Avenue
    Mountain Lakes, NJ 07046

Latitude West Owner, LLC

By: _____

    Ross M. Chomik, Manager
    1 Bloomfield Avenue
    Mountain Lakes, NJ 07046

**SUBCONTRACTOR**

By: _____
        Name:
        Title:
        Address:

## EXHIBIT A

**[attached hereto]**

Latitude, Garage and Connector

| Subcontractor/Vendor | Pre-Petition Expenses | 40% of PrePetition Amount | 20% Paid | 75% Paid | Retention Pre-Petition | 40% of Pre-Petition Retainage, Paid at Completion of Project | Post Petition Expense | Post Petition Retainage |
|---|---|---|---|---|---|---|---|---|
| 24/7 Fire Protection | 16,807.50 | 6,723.00 | 1,680.75 | 5,042.25 | 1,867.50 | 747.00 | 6,274.80 | (49.80) |
| Acme - Connector | | | | | | | 36,000.00 | 4,000.00 |
| AEL | 6,750.00 | 2,700.00 | 675.00 | 2,025.00 | 750.00 | 300.00 | 1,736.75 | 742.25 |
| Aqua Design Group | 1,350.00 | 540.00 | 135.00 | 405.00 | 150.00 | 60.00 | 64,548.61 | 5,551.79 |
| Atlantic Engineering | 6,300.00 | 2,520.00 | 630.00 | 1,890.00 | 700.00 | 280.00 | 1,800.00 | 200.00 |
| C-Disco - Connector | | | | | | | 24,541.46 | 2,558.54 |
| Door Supply of NJ, Inc. | 2,747.41 | 1,098.96 | 274.74 | 824.22 | 305.27 | 122.11 | 207.75 | 23.08 |
| Dynamic Security, LLC | 8,163.09 | 3,265.24 | 816.31 | 2,448.93 | 907.01 | 362.80 | | |
| Eastern Services | 76,058.32 | 30,426.53 | 7,606.63 | 22,819.90 | 8,451.61 | 3,380.72 | 348,270.82 | 37,536.68 |
| Europa Concrete Corp. | 310,880.38 | 124,356.15 | 31,089.04 | 93,267.11 | 24,543.38 | 13,817.25 | 76,324.40 | 8,019.81 |
| Garden State Waste Management | 3,959.50 | 1,583.80 | 395.95 | 1,187.85 | 439.94 | 175.98 | 1,583.80 | 150.00 |
| Glass Flooring | - | - | - | - | - | - | 52,791.76 | 5,865.75 |
| Greco Roman Tile | 15,004.42 | 6,001.77 | 1,500.44 | 4,501.33 | 1,667.16 | 666.86 | 141,294.93 | 15,033.49 |
| High Concrete Group LLC | 1,019,510.39 | 407,804.16 | 101,951.04 | 305,853.12 | 328,000.00 | 131,200.00 | | - |
| i-Luminosity LED | 47,378.62 | 18,951.85 | 4,737.96 | 14,213.89 | 5,264.40 | 2,105.76 | 236,065.34 | 26,228.62 |
| Independent Overhead Door Co | - | - | - | - | - | - | 4,747.50 | 527.50 |
| Industrial Maintenance, Inc. | - | - | - | - | - | - | 77,760.05 | 8,639.95 |
| Infinity Electric | - | - | - | - | - | - | 18,085.32 | 1,044.68 |
| KMC Mechanical, Inc. | 21,708.00 | 8,683.20 | 2,170.80 | 6,512.40 | 2,412.00 | 964.80 | 48,631.78 | 1,571.67 |
| Lynch Contracting LLC | 86,216.90 | 34,486.76 | 8,621.69 | 25,865.07 | 10,629.66 | 4,251.86 | 83,650.50 | 9,294.50 |
| Manhattan Lights | - | - | - | - | - | - | 123,723.25 | 11,265.63 |
| May Cabinets | 55,811.01 | 22,324.40 | 5,581.10 | 16,743.30 | 6,200.11 | 2,480.04 | 7,740.65 | - |
| MDS Construction Corp. | 17,592.40 | 7,036.96 | 1,759.24 | 5,277.72 | 2,268.10 | 807.24 | 24,876.00 | 2,624.00 |
| Midway Glass & Metal Installer | 3,150.00 | 1,260.00 | 315.00 | 945.00 | 350.00 | 140.00 | 30,600.00 | 7,400.00 |
| Multi Roof Maintenance, LLC | - | - | - | - | - | - | 284,514.40 | 30,590.60 |
| Normans' Glass Company | - | - | - | - | - | - | 150,402.46 | 8,150.04 |
| Paladino Paving | 132,084.00 | 52,833.60 | 13,208.40 | 39,625.20 | 14,676.00 | 5,870.40 | 52,200.00 | 5,800.00 |
| Prestige Roofing Group LLC - Connector | | | | | | | 174,891.22 | 15,191.78 |
| Salvi Steel Fabricators LLC | 92,625.30 | 37,050.12 | 9,262.53 | 27,787.59 | 10,291.70 | 4,116.68 | 172,149.67 | 20,667.57 |
| Schaibles Mechanical | 4,266.68 | 1,706.67 | 426.67 | 1,280.00 | 474.08 | 189.63 | 61,650.00 | 6,850.00 |
| Schindler Elevator Corp. | - | - | - | - | - | - | 22,844.52 | 2,110.48 |
| Sign Engineers, Inc | 9,625.50 | 3,850.20 | 962.55 | 2,887.65 | 1,069.50 | 427.80 | | |
| Support of Excavation | 9,082.87 | 3,633.15 | 908.29 | 2,724.86 | 1,009.21 | 403.68 | | |
| The Redline Group, Inc | 42,230.51 | 16,892.20 | 4,223.05 | 12,669.15 | 4,692.27 | 1,876.91 | 167,176.02 | 16,698.20 |
| Line striping - NBO - Garage | | | | | | | 6,723.00 | 747.00 |
| Waterproofing - NBO - Garage | | | | | | | 2,520.00 | 280.00 |
| Roofing - NBO - Garage | | | | | | | 32,400.00 | 3,600.00 |
| Traffic Coating - NBO - Garage | | | | | | | 2,268.00 | 252.00 |
| Joint Sealers - NBO - Connector | | | | | | | 7,200.00 | 800.00 |
| Flooring - NBO - Garage | | | | | | | 855.00 | 95.00 |
| Painting - NBO - Garage | | | | | | | 5,130.00 | 570.00 |
| Stone Steps at Raise Lawn Area - NBO - Connector | | | | | | | 47,000.00 | 5,000.00 |
| Benches - NBO - Connector | | | | | | | 22,500.00 | 2,500.00 |
| Landscaping and Irrigation - NBO - Connector | | | | | | | 313,020.00 | 34,780.00 |
| Granite and Stone Work for Fountains - NBO - Connector | | | | | | | 26,550.00 | 2,950.00 |
| Metal Ceiling System - NBO - Connector | | | | | | | 7,200.00 | 3,070.81 |
| Metal Railings at Stair and Back Entrance - NBO - Connector | | | | | | | 52,200.00 | 4,500.00 |
| Fireproofing - NBO - Connector | | | | | | | 50,850.00 | 4,650.00 |
| Weather Strips and Gasket, Expansion Joints - NBO - Connector | | | | | | | 54,000.00 | 6,000.00 |
| Painting and Wall Covering - NBO - Connector | | | | | | | 13,621.50 | 1,513.50 |
| | 1,963,321.80 | 795,728.72 | 156,532.18 | 596,796.54 | 437,110.93 | 174,847.64 | $ 3,282,551.29 | $ 321,624.81 |

# <u>Exhibit B</u>

# AMENDED SETTLEMENT AGREEMENT BY AND AMONG
## HOLLISTER CONSTRUCTION SERVICES, LLC, LATITUDE EAST OWNER, LLC
## AND LATITUDE WEST OWNER, LLC AND SUBCONTRACTORS

This Amended Settlement Agreement (the "**Agreement**") is entered into as of November 14, 2019, by and among Hollister Construction Services, LLC, ("**Hollister**" or "**Debtor**"); Latitude East Owner, LLC and Latitude West Owner, LLC (collectively "**Owners**", and each an "**Owner**"); and each of the subcontractors identified on **Exhibit A** hereto, (collectively "**Subcontractors**", and each a "**Subcontractor**") (each a "**Party**" and collectively the "**Parties**").

**WHEREAS**, on June 15, 2019, Latitude East Owner, LLC and Hollister entered into that certain Standard Form of Agreement between Owner and Contractor (AIA Document A101-2017), where the basis of payment is a stipulated sum for the construction of a glass connector to connect the Latitude East building, located at 389-399 Interpace Parkway, Parsippany-Troy Hills Township, New Jersey and the Latitude West buildings located at 369-379 Interpace Parkway, Parsippany-Troy Hills Township, New Jersey (the "**Connector Contract**"). By Agreement dated May 15, 2019, Latitude East Owner, LLC and Hollister entered into that certain Standard Form of Agreement between Owner and Contractor (AIA Document A101-2017), where the basis of payment is a stipulated sum with regard to the construction of a new courtyard with hardscape, landscape and granite swings and fountains at the Latitude complex (the "**Courtyard Contract**"). It appears that the Courtyard Contract was never properly executed. On or about January 14, 2019, Latitude West Owner, LLC and Hollister entered into a Standard Form of Agreement between Owner and Contractor (AIA Document A101-2017) where the basis of payment is a stipulated sum, concerning construction of a four level, above ground, pre-cast concrete parking garage, to be located at 369-379 Interpace Parkway, Parsippany-Troy Hills Township, New Jersey (the "**Parking Garage Contract**"), (collectively the Connector Contract, the Courtyard Contract and the Parking Garage Contract are referred to hereinafter as the "**Contracts**") (collectively the

improvements under the Connector Contract, the Courtyard Contract and the Parking Garage Contract are referred to hereinafter as the "**Projects**").

**WHEREAS**, on September 11, 2019 ("**Petition Date**"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**"), Case No. 19-27439 (MBK);

**WHEREAS**, prior to the Petition Date, Owners served Hollister with Notice of Termination of the Contracts terminating the Contracts based on Hollister's default of its obligations under the Contracts;

**WHEREAS**, the Subcontractors provided goods and/or services to the Project prior to the Petition Date and are owed money by Hollister as of the Petition Date in the amounts set forth on **Exhibit A** hereto; and

**WHEREAS**, PNC Bank, N.A. ("**PNC**") is the Debtor's primary secured creditor and holds liens upon and security interests in all assets of the Debtor, including all accounts receivable and all contracts of the Debtor; and

**WHEREAS**, the termination of the Contracts will result in the Debtor losing a substantial amount of contract revenue and retainage related to the Projects; and

**WHEREAS**, Owners may suffer damages attendant with the Project not being completed in a timely manner as a result of the termination of the Contracts; and

**WHEREAS**, the Parties are desirous of modifying the Contracts and finishing the Projects forthwith in accordance with the terms of the Contracts, as modified herein, and it is in the best interests of the Debtor, its estate and creditors to complete the Projects as soon as possible and with as little delay as possible.

**NOW**, **THEREFORE**, subject to Bankruptcy Court approval, the Parties stipulate and agree as follows:

1.    The Settlement Agreement entered into by the Parties dated November 6, 2019, is hereby replaced and superseded by this Agreement. The November 6, 2019 Agreement is declared null and void.

2.    1. Modification of Contracts. Upon the Order of the Bankruptcy Court approving of this Agreement (the "**Approval Order**"), the Contracts shall be deemed reinstated in their entirety as modified by this Agreement. The Approval Order shall provide that the Contracts are modified by the terms of this Agreement.

3.    2. Acknowledgement of Contract Amounts.

a.    The Parties acknowledge and agree that, subject to Owners' confirming that work for which requisitions submitted by Hollister was actually performed and completed: Debtor asserts that the following amounts would be owed to the Debtor for work performed under the Contracts as of September 11, 2019 (collectively, the "**Pre-Petition Amounts Amount Outstanding**"): (1) $408,149.57 626,702.84 under the Connector Contract, (2) $290,096.03 445,434.76 under the Courtyard Contract, and (3) $1,291,076.19 917,184.19 under the Parking Garage Contract. The amount being held as retainage for work performed prior to the Petition Date is $437,119.09 630,981.29 ("Pre-Petition Retainage").

b.    Hollister asserts that the approximate cost of completing the Projects, inclusive of all amounts other than the Pre-Petition Amounts Amount Outstanding and Pre-Petition Retainage (the "**Post-Petition Amount Due**") is as follows (i) $1,847,998.37 1,715,483.12 under the Connector Contract, (ii) $1,313,481.71 1,219,295.28 under the Courtyard Contract, and (iii) 2,156,157.80 $2,510,622.10 under the Parking Garage Contract, which amounts will be due and payable pursuant to the terms of the Contracts if the improvements are completed by the Debtor in accordance with the terms and provisions of the Contracts. Of the Post-Petition Amount Due, the retainage that would be held of $5,445,400.50 in total, Owners will withhold ten percent (10%) of each payment application for the work to be performed under the Contracts after the Petition Date (the "**Post-Petition Work**") under the Contracts (collectively the "**Post-Petition Retainage**") will be approximately: 321,624.91, which, which retainage is expected to equal

$544,540.05 upon full completion of the Projects and which amounts may be due to the Debtor pursuant to the terms of the Contracts upon completion of the improvements in accordance with the terms of the Contracts, as modified herein.   The Post-Petition Retainage is part of, and expressly included in, the Post-Petition Amount Due.

     4.    3. Acknowledgement of Defaults.  The Parties acknowledge and agree that (a) the Debtor defaulted in performing its obligations under the Contracts, and that Owners terminated the Contracts as a result of the defaults of Debtor, (b) as a result of the Contracts being terminated due to Debtor's defaults, the Debtor will suffer an economic loss, and (c) Owners may suffer damages from delays in the completion of the Projects resulting from the replacement of the Debtor, including, without limitation, the costs of a replacement contractor and additional attendant delay, which costs could reduce or exhaust any remaining amounts claimed to be presently due to the Debtor under the Contracts if the Contracts were reinstated.

     5.    a. Agreed Upon Modifications to and Amendments to Contracts.  The Contracts are hereby modified and amended by this Agreement in the following respects:

     a.    b. Settlement and Payment of Pre-Petition Amount Outstanding.   The Debtor asserts that the Pre-Petition Amount Outstanding and the Pre-Petition Retainage is owed to Hollister and the Subcontractors for pre-petition work performed.  The Owners assert that they are entitled to offset against the Pre-Petition Amount Outstanding from damages, costs and expenses resulting from Debtor's default for non-performance.  After extensive negotiation, the Owners and the Debtor have reached agreement, pursuant to which Owners will pay into Escrow Account (defined below) the amount of One Million Six Hundred Eighty-Nine Thousand Dollars and 80/100 ($1,689,321.80) ("Pre-Petition Amount Outstanding Settlement Payment") in full and complete satisfaction of all Pre-Petition Amounts Amount Outstanding to Hollister and the Subcontractors.  The Owners agree that they shall not assert any further offsets of the Pre-Petition Amount Outstanding and, in the event of the lien free completion of the Projects, the Pre-Petition Retainage.

b.     c. Post-Petition Amounts Due. Following Owners' review and approval of requisitions for Post-Petition Work performed, pursuant to the terms of the Contracts, as modified herein, Owners shall pay (i) directly to the Subcontractors, the amounts due to Subcontractors for Post-Petition Work performed by the Subcontractors the amounts for such work not to exceed the amounts set forth on the budgets attached hereto as **Exhibit A** under the column labeled "Post-Petition Expense," or an amount not to exceed $3,282,551.29 for Post-Petition Expense and $321,624.91 for Post-Petition Retainage, and (ii) Hollister the amounts due to Hollister for the Post-Petition Work as set forth in the Contracts less the amounts paid by Owners to the Subcontractors for monthly invoices for a pro rata amount of the Post-Petition Work Amount Due to Hollister based on percentage of completion of the Projects.  For example, the total due to Hollister after the full completion of the Projects from the Post-Petition Amount Due would be $1,618,309.16 ($4,900,860.45 less payments to Subcontractors of $3,282,551.29).   For the avoidance of doubt, no provisions in this Agreement shall be interpreted as requiring the Owners to pay to Hollister and the Subcontractors, in the aggregate, more than the stipulated sums set forth in the Contracts for the Pre-Petition Work (as modified by the Pre-Petition Settlement Payment) and the Post-Petition Work, plus the Pre-Petition Retainage and Post-Petition Retainage as set forth herein.   After the payment of the Pre-Petition Settlement Payment into the Escrow Account, Owners collectively shall not be liable under this Agreement and the Contracts, collectively, for more than the Post-Petition Amount Due, plus the Pre-Petition Retainage and Post-Petition Retainage as set forth herein.

c.     d. Hollister Employees.  Hollister agrees to provide the services of Rick Moro and Vincent Solano, as on-site superintendent and project manager, respectively for the Projects.  These individuals shall devote such time as deemed necessary by Owners to complete the Projects.  Should either Rick Moro or Vincent Solano leave the employ of Hollister or otherwise be unavailable to perform the necessary services on the Projects, Hollister shall have five (5) calendar days to replace these employees with candidates approved by Owners, such approval not to be unreasonably withheld.  In the event that Hollister fails to replace these

-5-

individuals with replacements acceptable to Owners in five (5) days of the departure of these individuals, the Contracts may be terminated by Owners, upon written notice to Debtor and its counsel, with no opportunity to cure such default; such termination shall be "for cause" pursuant to Section 14.2.1 of the Contracts.

d. ~~e.~~ Failure to Provide Subcontractors amounts from the Pre-Petition Settlement Payment. It shall be an event of default under the Contracts, as modified herein, if any of the Subcontractors do not receive amounts due to such Subcontractor from the Pre-Petition Settlement Payment as set forth in this Agreement.

e. ~~f.~~ Drop Dead Dates for Completion. The following shall be drop dead dates for full completion of the Projects as required pursuant to the terms and provisions of the Contracts, to be extended only with the prior written consent of Owners, which may be withheld in the sole and absolute discretion of Owners; provided, however, in lieu of any force majeure concept in the Contracts, the drop dead dates may be extended one (1) time for up to ten (10) calendar days for unavoidable circumstances beyond Hollister's control, including an act of God, tornado, hurricane, flood, earthquake, or explosion, in each case not caused by (i) the negligent act or omission of Hollister, (ii) breach of this Agreement, (iii) the Subcontractors or anyone else for whom Hollister is responsible, and (iv) Hollister's breach of a project labor or "no strike" agreement. Hollister covenants not to seek authority from the Court to extend these "drop dead dates" without the consent of Owners, which may be withheld in the sole and absolute discretion of Owners.

      i.     The improvements under the Parking Garage Contract shall be completed on or before December 31, 2019;

      ii.    The improvements under the Connector Contract shall be completed on or before January 10, 2020; and

      iii.   The improvements under the Courtyard Contract shall be completed on or before January 10, 2020.

f. ~~g.~~ Additional Defaults. The following shall be deemed additional events of default under the Contracts, as modified by this Agreement (the "**Additional Defaults**"):

i. the failure of the escrow agent to make any payments from the Escrow Account to the Subcontractors pursuant to the terms of this Agreement;

ii. the failure of the Debtor to complete the Projects as required pursuant to the terms and conditions of the Contracts by the "drop dead date"; and

iii. the default by the Debtor or PNC of any of its obligations under this Agreement.

Notice of the Additional Defaults or any other defaults under the Contracts (as modified by this Agreement) shall be provided to Hollister in writing and shall provide Hollister with a twelve (12) calendar day right of cure. In the event that the defaults are not cured within such twelve (12) day cure period, the Contracts may be immediately terminated by Owners, which termination shall be "for cause".

 g. h. Liquidated Damages for Post Modification Defaults. Should Hollister default under any of the Contracts (as modified by this Agreement) and fail to cure said default within twelve (12) calendar days as set forth hereinabove, Owners shall be entitled to liquidated damages under such Contract commencing twelve (12) days after an uncured default, through completion of such Project in the amount of $5,000.00 per day (the "Liquidated Damages"). Said Liquidated Damages may be offset by Owners, without further Order of the Court, only in amounts due to Hollister exclusive of any amounts due to Subcontractors, for Post-Petition Work performed and against any entitlement of Hollister to retainages, including Pre-Petition Retainage and Post-Petition Retainage, again exclusive of amounts due to Subcontractors.

 h. i. No Interest. Hollister and Owners expressly agree that no payments withheld or other amounts currently unpaid by Owners are deemed to be past due and no such amounts are subject to any rate of interest, including any interest that would be required pursuant to Section 5.3 of the Contracts or the New Jersey Prompt Payment Act, N.J.S.A. 2A:30A-1, 2A:30A-2.

6.    4. Substitution of Subcontractors.  Should Hollister be unable to convince any Subcontractors to complete their work on the Projects, Hollister may substitute subcontractors to perform such work, provided that said substitution does not delay the "drop dead dates" for completion of the Projects.  Any substitution of subcontractors shall be subject to Owners' right of reasonable approval of such proposed substituted subcontractors and waiver of any right to lien by such original subcontractor. If Hollister fails to retain, in a timely manner, a substitute subcontractor which is reasonably acceptable to Owners, then Debtor shall be deemed to be in default under the applicable Contract, and Owner shall have the right to terminate such Contract on notice to Debtor.

7.    5. Project Escrow Account. Prior to the execution of this Agreement, Debtor shall establish an escrow account with PNC ("**Escrow Account**") administered by an independent funds control agent pursuant to a separate Escrow Agreement with PNC, which agreement shall be reasonably satisfactory to the Owners.  All funds deposited into the Escrow Account will be subject to PNC's existing liens on cash collateral of the Debtor, and all funds required to be paid by Owners to Debtor pursuant to the terms of this Agreement shall be deposited into the Escrow Account.  For the avoidance of doubt, pursuant to Section 5(b), any payments to the Subcontractors for Post-Petition Work performed by the Subcontractors shall be paid by Owners directly to the Subcontractors and shall not be deposited in the Escrow Account.

8.    6. Mechanism for Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date ("**Pre-Petition Work**").  Upon: (a) the release of all filed and asserted liens on the Project's real property and any improvements thereon and the delivery by the Subcontractors of lien waivers for all Pre-Petition Work in form and substance reasonably acceptable to Owners,  including lien waivers from all of Subcontractors' contractors, subcontractors, and suppliers of any tier, and (b) five (5) business days of the entry of the Approval Order, Owners will deposit into the Escrow Account the Pre-Petition Settlement Payment.  No later than November 15, 2019 7 calendar days after the Owners deposit the Pre-Petition Settlement Payment into the Escrow Account, the escrow agent shall pay to the Subcontractors listed on

**Exhibit A** from the Pre-Petition Settlement Payment the amounts set forth next to the name of each Subcontractor on **Exhibit A** under the column entitled "25% Paid ~~week of 11/8~~".  No later than ~~November 29, 2019~~21 calendar days after the Owners deposit the Pre-Petition Settlement Payment into the Escrow Account, the escrow agent shall pay to the Subcontracts listed on Exhibit A from the Pre-Petition Settlement Payment the amounts set forth next to the name of each Subcontractor on Exhibit A under the column entitled "75% Paid ~~week of 11/29~~".  The remaining balance from the Pre-Petition Amount Outstanding Settlement Payment shall ~~only~~ be disbursed ~~upon completion of the Projects~~to Hollister in accordance with this Agreement and the cash collateral order then in effect (as the case may be, the "**Current Cash Collateral Order**") or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

9. ~~7.~~ Mechanism for Retainage Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date and After the Petition Date.

a. Upon ~~Completion~~completion of the Projects~~,~~ and delivery to Owners of all lien waivers from all of Subcontractors' contractors, subcontractors and suppliers of any tier, the Owners shall pay to the Subcontractors listed on **Exhibit A** ~~from the Pre-Petition Settlement Payment~~ the amounts set forth next to the name of each ~~Subcontract~~Subcontractor on **Exhibit A** under the column entitled "40% of Pre-Petition Retainage, Paid at Completion of the Project", for application to the balance, if any, due to each Subcontractor on account of its prepetition claim, which amount shall equal 40% of the Pre-Petition Retainage payable to such Subcontractor.  The balance of the Pre-Petition Retainage shall be paid into the Escrow Account by Owners and paid to Hollister subject to the Current Cash Collateral Order.

b. Retainage of the Post-Petition Work shall be paid by Owners directly to the Subcontractors pursuant to the term and provisions set forth in the Contracts.

10. ~~8.~~ Subcontractor Release and Unsecured Claim.  By executing this Agreement, each Subcontractor agrees to perform all work on the Project which has yet to be completed as set forth in the subcontract between Subcontractor and Debtor.  Each Subcontractor specifically agrees to

a 60% discount on the amount of receivables, including retainage, due to them for goods and/or services provided on the Project prior to the Petition Date.  Upon the Subcontractors receipt of the payments required hereunder, each Subcontractor (i) waives and releases any right to assert any claim (as defined in Section 101(5) of the Bankruptcy Code) against Owners and the Project for any amounts incurred prior to the Petition Date and Pre-Petition Amounts Outstanding, (ii) agrees to accept in full and satisfaction of its claim for goods and/or services prior to the Petition Date the 40% placed in escrow as provided for above, and (iii) agrees to and shall deliver to the applicable Owner a lien waiver and lien waivers from all of Subcontractors' contractors, subcontractors, and suppliers of any tier for any of the Pre-Petition Work in form and substance reasonably acceptable to such Owner.  Each Subcontractor will be allowed a general unsecured claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

11.     9. Warranties.  The Subcontractors agree that Owners are a third party beneficiary of all warranties and guaranties set forth in the subcontracts entered into between the Subcontractors and the Debtor, and that all such warranties and guaranties inure to the benefit of the Owners as if such warranties and guaranties were made directly to the Owners.  In no event do Owners have any obligations to the Subcontractors, other than the payments provided in this Agreement, as a result of the warranties and guaranties inuring to the Owners' benefit or otherwise.

12.     10. Release of Preferences.  Upon payment of all monies due pursuant to this Agreement, the release of all liens by Subcontractors, and the delivery of the lien waivers, from all of Subcontractors' contractors, subcontractors, and suppliers of any tier, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and seek to avoid any alleged preference payments under Sections 547 and 550 of the Bankruptcy Code limited to the Projects.

13.     11. Releases.

a.     Release by Owners.  Upon completion of the Projects in full pursuant to the terms of the Contracts as modified by this Agreement (including completion of all punch list items and completion of Debtor's obligations to correct any construction defects) and subject to the

rights of offset under this Agreement and the provisions of the immediately succeeding sentence, Owners and their parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Owner Releasors**") do hereby release and forever discharge the Debtor and its officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Debtor Released Parties**") of and from any and all known claims (as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Debtor Released Parties, arising out of or related to the Contract or the Project.  Notwithstanding the release in the immediately preceding sentence, in no event shall Owners release, discharge or waive any claims it may have against Debtor Released Parties (i) in connection with a default by the Debtor of any obligations of the Debtor under the Contracts as modified by this Agreement from and after the date of the Approval Order, (ii) any default by Debtor of the terms and provisions of this Agreement, or (iii) if such release or waiver adversely affects Owners' ability to collect insurance proceeds under any insurance policies in which Owners have an insurable interest.  Owners retain all of its rights and remedies under the Contracts as modified by this Agreement and in equity with respect to any of the events described in clauses (i), (ii) and (iii) of the immediately preceding sentence.

b.        Release by the Debtor.  Upon payment of all monies due pursuant to this Agreement, the Debtor, the Debtor's Bankruptcy Estate, and their officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "**Debtor Releasors**") do hereby release and forever discharge Owners and their parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers, lenders and their respective predecessors, successors and assigns (collectively, the "**Owner Released Parties**") of and from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Debtor Releasors, or any of them, ever had or now

has against any one or more of the Owner Released Parties, arising out of or related to the Contract or the Project.

c.    Release by Subcontractors.  Upon payment of all monies due to each of the Subcontractors pursuant to this Agreement, each Subcontractor and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Subcontractor Releasors**") do hereby release and forever discharge Owners and the Debtor and their respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Owners and Debtor Released Parties**") of and from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Subcontractor Releasors, or any of them, ever had or now has against any one or more of the Owners and Debtor Released Parties, arising out of or related to the Contract or the Project, provided, that, in no event shall the Subcontractors be deemed to release, discharge or waive any claims against the Owners and Debtor Released Parties for the failure to make any payments for the Post-Petition Work due and payable from and after the Approval Order.  Each Subcontractor agrees to defend, indemnify and hold the Owners and Debtor Released Parties harmless against any liens or claims by any supplier, materialmen, vendor, subcontractor of any tier, employee, or other claimant asserting any rights against Owners and Debtor Released Parties by virtue of separate agreement with Subcontractor.

d.    Release of PNC Bank.  Except as expressly set forth in this Agreement, subject only to the disbursement of funds as provided for in this Agreement, each Owner and each Subcontractor and the subcontractors' respective parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**Subcontractor Releasors**") do hereby release and forever discharge PNC Bank and its respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "**PNC Bank**

-12-

**Released Parties**") of and from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owners and the Subcontractor Releasors, or any of them, ever had or now has against any of the PNC Bank Released Parties, solely arising out of or related to the Contracts or the Projects, provided, that, in no event shall PNC be released of any liability for its failure to release any money deposited in the Escrow Account as required pursuant to the terms of this Agreement, but only if PNC is the escrow agent. It is anticipated that PNC will not act as the escrow agent.

14.    12. Releases as a Defense.   Each of the Owners, Debtor and Subcontractors acknowledge and agree that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

15.    13. No Assignment of Released Claims.   Each of the Owners, Debtor and Subcontractors represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in Section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

16.    14. Governing Law.    This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

17.    15. No Defaults or Claims Against Owners.   Debtor represents and agrees that Owners are not in default under the Contracts, and upon signing this Agreement, Debtor shall have

no claims against Owners as of the date hereof; provided, however, that Debtor is not waiving any future claims it may have against Owners under the Contracts as modified by this Agreement that first arise after the entry of the Approval Order.

18.    ~~16.~~ Contract as Modified In Full Force and Effect.  Except as modified herein, the Contract, as modified by this Agreement, shall be binding upon, and shall inure to the benefit of, the Parties hereto and remains in full force and effect.  In the event of a conflict between this Agreement and the Contracts, this Agreement shall control.

19.    ~~17.~~ Headings.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

20.    ~~18.~~ Counterparts.  This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

21.    ~~19.~~ No Oral Modification, Termination or Waiver.  This Agreement may be amended only by a written agreement executed by the Parties hereto.  No provisions of this Agreement may be waived, except by a written document executed by the Party entitled to the benefits of the provision.  No waiver of a provision will be deemed to be or will constitute a waiver of any other provision of this Agreement.

22.    ~~20.~~ Further Assurances.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

23.    ~~21.~~ Negotiations.  This Agreement shall not be binding on any party until the entry of a Final Order of the Bankruptcy Court approving this Agreement has been entered, and all Subcontractors listed on **Exhibit A** have signed this Agreement and surrendered their right to file liens against the Projects. Should either of these conditions fail to be satisfied on or before November ~~8~~21, 2019, at the option of the Owners, this Agreement shall be deemed null and void

and the Parties shall be restored to their positions prior to execution of this Agreement, without prejudice to any Party.

24. 22. Jurisdiction and Venue. The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

25. 23. Authorization. Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement. The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

26. 24. Jointly Drafted. The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties. The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

27. 25. Notices. Any notice to be given under this Agreement shall be made in writing and sent by express, registered or certified mail, return receipt requested, postage prepaid, fax, or overnight commercial delivery service, addressed as set forth below:

Debtor:

Hollister Construction LLC:
399 Jefferson Road
Parsippany, NJ 07054
Attn: Brendan Murray, President

With required copy to:

Debtor's Counsel:

Lowenstein Sandler LP
One Lowenstein Drive
Roseland, New Jersey 07068
Attn: Bruce Buechler, Esq. and Kenneth Rosen, Esq.

Owners:

Latitude East Owner, LLC
Latitude West Owner, LLC
c/o Vision Real Estate Partners
1 Bloomfield Ave.
Mountain Lakes, New Jersey 07046
Attn: Ross Chomik

and

Latitude East Owner, LLC
Latitude West Owner, LLC
c/o Rubenstein Partners
2929 Arch Street, 28th Floor
Philadelphia, PA 19104
Attn: Stephan Card and Mark D. Turner

With required copy to:

Owners' Counsel:

Wasserman, Jurista & Stolz
110 Allen Road, Suite 304
Basking Ridge, New Jersey 07920
Attn: Daniel M. Stolz, Esq.

Such notice shall be deemed to be delivered, given and received for all purposes as of the
date delivered (or the date delivery was refused, as applicable) if delivered by an overnight
commercial delivery service or by email or confirmed fax, or as of the date on which the same was

deposited in a regularly maintained receptacle for the deposit of United States mail, if sent by express, registered or certified mail.  Any delivery by fax shall only be deemed effective if an additional copy of such notice is promptly sent by overnight commercial delivery service.

28.        26. This Agreement shall be binding upon all Parties that are signatories hereto and shall also be binding upon any Chapter 11 or Chapter 7 Trustee appointed for the Debtor.

[Remainder of Page Intentionally Blank]

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____
      Chris Johnson, Head Coach
      399 Jefferson Road
      Parsippany, NJ 07054

**OWNER**

Latitude East Owner, LLC

By: _____
      Ross M. Chomik, Manager
      ~~Name:~~ 1 Bloomfield Avenue
      Mountain Lakes, NJ 07046
      ~~Title:~~
      ~~Address:~~

Latitude West Owner, LLC

By: _____
      Ross M. Chomik, Manager
      ~~Name:~~ 1 Bloomfield Avenue
      Mountain Lakes, NJ 07046
      ~~Title:~~
      ~~Address:~~

**SUBCONTRACTOR**

By: _____

      Name:

      Title:

      Address:

~~**SUBCONTRACTOR**~~

~~By: _____~~

      ~~Name:~~

      ~~Title:~~

      ~~Address:~~

~~[BREAK OUT SEPARATE SIGNATURE PAGES FOR EACH SUBCONTRACTOR]~~