**McMANIMON, SCOTLAND & BAUMANN, LLC**
75 Livingston Avenue, Suite 201
Roseland, New Jersey  07068
(973) 622-1800
Sam Della Fera, Jr., Esq. (sdellafera@msbnj.com)
Joshua H. Raymond, Esq. (jraymond@msbnj.com)
*Attorneys for Official Committee of Unsecured*
*Creditors of Hollister Construction Services, LLC*

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>HOLLISTER CONSTRUCTION<br>SERVICES, LLC,<br><br>              Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date:  November 15, 2019<br>                at 9:30 a.m. |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
### RESPONSE TO THE DEBTOR'S OBJECTION,
### AS SUPPLEMENTED, TO THE COMMITTEE'S CROSS-MOTION
### TO CONVERT DEBTOR'S CASE TO CHAPTER 7

The Official Committee of Unsecured Creditors (the "Committee")[1] of Hollister

Construction Services, LLC (the "Debtor"), by and through its counsel, McManimon, Scotland

& Baumann, LLC, hereby responds to the Debtor's Objection [Docket No. 418], as

supplemented [Docket No. 497], to the Committee's cross-motion (the "Cross-Motion") for the

entry of an order converting this chapter 11 case to chapter 7.  In support thereof, the Committee

respectfully states as follows:

      1.      Like the debtors in <u>Loop Corp. v. United States Trustee</u>, 379 F. 3d 511, 513 (8th

Cir. 2004), the Debtor here "intended from very early in the case to liquidate [its business] rather

than attempt to reorganize as [a] viable entit[y]."  The Debtor is liquidating, not operating.

---

[1] Capitalized terms not defined herein have the same meaning as in the Committee's Cross-Motion.

Worse yet, during its liquidation it is consuming what little cash it has at a rate that far exceeds the revenues it has generated since the Petition Date.

2.     The relevant facts have not changed materially since the filing of the Cross-Motion, and the Debtor's financial condition has not improved.  Pursuant to the Sixth Interim Cash Collateral Order entered on November 8, 2019 [Docket No. 463], the Debtor is anticipated to generate negative cash flow of $220,000 through November 21, 2019, resulting in cash on hand of only $218,353 as of that date.

3.     It is true that, notwithstanding the Debtor's protestation that the filing of the Cross-Motion has impeded its ability to settle with project owners and subcontractors, (a) the Debtor has filed two additional motions to approve project settlements and (b) those settlements allegedly will generate $2.3 million in proceeds to the estate.  It is also true, however, that only two settlement motions have been filed, and that the portion of the proposed settlement proceeds that is not used to pay the Debtor's operating expenses and case administration costs will be used to pay PNC Bank, and only PNC Bank, and at a fraction of the bank's $15.3 million secured debt.

4.     Moreover, the Debtor continues by these settlements to convert unencumbered assets into pledged receivables that act as PNC's collateral.  Specifically, the Debtor's proposed settlement with Latitude East Owner, LLC and Latitude West Owner, LLC (the "Latitude Settlement") would release almost $2.9 million in gross preference claims, and the proposed settlement with CS Utica & Remsen, LLC (the "Remsen Settlement") would release more than $831,000 such claims.  Even assuming a modest recovery rate of 10% on gross preferences, the general unsecured creditor body is being divested of, conservatively, approximately $370,000 in value in exchange for – nothing.

2

5.      For the foregoing reasons, and others, the Committee will object to the Latitude Settlement and the Remsen Settlement at the hearing thereon.  And because only these two additional settlements have been negotiated by the Debtor since the filing of the Cross-Motion, further supporting the arguments therein, the Committee also will continue to seek the conversion of this case to chapter 7.

6.      The Bankruptcy Code compels the Court to convert or dismiss a chapter 11 case, whichever is in the best interests of creditors, for cause, which includes the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation …." 11 U.S.C. § 1112(b)(4)(A).  The Committee submits that such cause exists, and that conversion will reduce administrative costs and allow the monetization of the estate's assets to be aggressively pursued by an independent fiduciary for the benefit of all creditors, not just PNC and the Debtor's principals who have guaranteed the bank's debt.

**McMANIMON, SCOTLAND**
**& BAUMANN, LLC**
*Attorneys for Official Committee*
*of Unsecured Creditors*

Dated:  November 14, 2019                    By:____/s/ Sam Della Fera, Jr._____
                                                                   Sam Della Fera, Jr.