UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Jennifer B. Kimble, Esq.
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

Order Filed on November 18, 2019
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

HOLLISTER CONSTRUCTION SERVICES, LLC,[1]

Debtor.

Chapter 11

Case No. 19-27439 (MBK)

**ORDER GRANTING DEBTOR'S MOTION APPROVING THE SETTLEMENT
AGREEMENT BY AND AMONG THE DEBTOR, CS UTICA & REMSEN, LLC AND
SUBCONTRACTORS PURSUANT TO
FED. R. BANKR. P. 9019**

The relief set forth on the following pages, numbered two (2) through and including three

(3), is hereby **ORDERED**.

DATED: November 18, 2019

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Page: 2
Debtor: Hollister Construction Services, LLC
Case No.:  19-27439 (MBK)
Caption: *Order Granting Debtor's Motion Approving Settlement Agreement By and Among the Debtor, Latitude East Owner, LLC and Latitude West Owner, LLC and Subcontractors Pursuant to Fed. R. Bankr. P. 9019*

---

THIS MATTER having been opened to the Court upon the Motion of the above-captioned debtor-in-possession (the "Debtor") seeking the entry of an order approving a Settlement Agreement by and among the Debtor, CS Utica & Remsen, LLC and and Subcontractors Pursuant to Fed. R. Bankr. P. 9019 (the "Motion")[2]; and the Court having considered the Motion and any objections filed thereto, and the Court having conducted a hearing on the Motion, at which time the Court heard and considered all oral arguments of counsel; and good and sufficient notice of the Motion having been provided to all interested parties, and for good cause shown,

**IT IS HEREBY ORDERED** as follows:

1.      The Motion is GRANTED as set forth herein.

2.      The Settlement Agreement with CS Utica & Remsen, LLC and the Subcontractors attached hereto as **Exhibit 1** be and hereby is approved in its entirety.

3.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

4.      The Order shall be effective immediately upon its entry.

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

# EXHIBIT 1

EXECUTION VERSION

## AGREEMENT BY AND BETWEEN HOLLISTER CONSTRUCTION SERVICES, LLC, THE PROJECT OWNER AND CERTAIN SUBCONTRACTORS

This Settlement Agreement (the "Agreement") is entered into as of November 8, 2019, by and between Hollister Construction Services, LLC, as construction manager (the "Debtor");  CS Utica & Remsen, LLC as Owner ("Owner"); and each of the subcontractors identified on Exhibit A hereto (the "Subcontractors") (each a "Party," and collectively, the "Parties").

WHEREAS, Debtor and Owner are parties to certain contract documents dated as of November 3, 2016, including, without limitation, that certain Contract for General Contracting and related work AIA A103 and A201 Agreement for Construction Management Services, and all exhibits annexed thereto, and all subsequent riders, modifications, and change orders (collectively, the "Contract"),[1] relating to construction of 33 Remsen Avenue, Brooklyn, New York (the "Project"); and

WHEREAS, on September 11, 2019 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 19-27439 (MBK); and

WHEREAS, the Owner believes it has a right to terminate the Contract for cause and otherwise asserts that the Debtor has defaulted on the Contract; and

WHEREAS, the Subcontractors provided goods and/or services to the Project prior to the Petition Date and are owed money as of the Petition Date in the amounts set forth on Exhibit A hereto; and

WHEREAS, PNC Bank, N.A. ("PNC") is the Debtor's primary secured creditor and holds liens upon and security interests in all assets of the Debtor, including all accounts receivable and all contracts of the Debtor; and

WHEREAS, if the Contract was terminated, the Debtor may lose a substantial amount of contract revenue and retainage related to the Project; and

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Contract.

HCS000169

WHEREAS, the Owner may suffer damages attendant with delay and completion costs due if the Owner exercised its rights to terminate the Contract and if the Project is not completed in a timely manner; and

WHEREAS, the Parties are desirous of finishing the Project forthwith in accordance with the terms of the Contract, as modified herein, and it is in the best interests of the Debtor, its estate and creditors to complete the Project as soon as possible and with as little delay as possible,

NOW, THEREFORE, subject to Bankruptcy Court approval, the Parties stipulate and agree as follows:

1.    Acknowledgement of Contract Amounts.[2]  The Parties acknowledge and agree that: (a) $381,195.78 is due and payable to the Debtor for work performed under the Contract as of September 11, 2019, ("Pre-Petition Work"), (b) the Owner is currently holding as security under the Contract an additional $1,179,080.21 as retainage ("Pre-Petition Retainage") which will be due to the Debtor upon completion of the Contract, as modified herein, (c) there is approximately $0.00 of incomplete work which costs will be due and payable if the Project is completed by the Debtor "Post-Petition Work"), and (d) there will be approximately $0.00 of additional retainage held for Post-Petition Work ("Post-Petition retainage" ).

2.    Acknowledgement of Defaults.  The Parties acknowledge and agree that (a) the Debtor is presently in default under the Contract and that Owner has the right to seek to terminate the Contract, (b) if the Contract were terminated as a result of Debtor's alleged defaults, Debtor would suffer an economic loss, and (c) Owner will suffer damages in the event it is forced to terminate the Contract and replace the Debtor, including, without limitation, the costs of a replacement contractor and additional attendant delay, which costs could reduce or exhaust any remaining amounts claimed to be presently due to the Debtor under the Contract.

---

[2] Debtor shall enter into that certain Prime Contract Change Order #056 with Owner upon approval of this Settlement Agreement and it will be the Owner's obligation to pay Janus International Group directly for the amount owing to Janus International Group pursuant to Prime Contract Change Order #056.

HCS000169

3.      Modification of the Contract. In order to avoid the damages to the Debtor and Owner described above, and subject to Bankruptcy Court approval, the Debtor agrees to perform its obligations under the Contract as modified herein.  Approval of this Agreement by the Bankruptcy Court shall be deemed approval of the Contract as modified herein.

4.      Waiver of Defaults and Delay Claims by Owner.    Upon entry of an Order of the Bankruptcy Court approving this Agreement, Owner waives any defaults or other monetary claims for delay existing as of the date of Owner's execution of this Agreement, without prejudice to any other rights and remedies of the Owner under the Contract as modified by this Agreement which may arise from and after Owner's execution of this Agreement.

5.      Project Escrow Account. Prior to the execution of this Agreement, Debtor shall establish an escrow account with PNC ("Escrow Account") administered by an independent funds control agent pursuant to a separate Escrow Agreement with PNC. All funds deposited into the Escrow Account will be subject to PNC's existing liens on cash collateral of the Debtor, and all funds paid pursuant to this Agreement or under the Contract shall be paid through the Escrow Account.

6.      Payment to Subcontractors for Work Performed or Goods Provided After the Petition Date ("Post-Petition Work").  Post-Petition Work and Post-Petition Retainage shall be paid pursuant to the Contract in the ordinary course of business without any discount or reduction due to Debtor's bankruptcy. Notwithstanding anything to the contrary in the Contract or herein, the Debtor will continue to supervise its Subcontractors on the Project through completion of same and authorizes the Owner to pay the Subcontractors through the Escrow Account the amounts due to them for services and/or goods provided after the Petition Date as necessary to complete the Project in the ordinary course of work and upon submission by the Subcontractors of all normal and customary documentation to the Debtor and/or Owner and, if required, to obtain either a temporary or final certificate of occupancy for the Project. All such payments to the Subcontractors shall be subject to prior approval of the Debtor, which approval shall not be unreasonably withheld

or delayed. Amounts held as Post-Petition Retainage shall be held by Owner and released through the Escrow Account pursuant to the Contract in the regular course of business.

7.    <u>Mechanism for Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date ("Pre -Petition Work")</u>.  Upon: (a) the release of all filed and asserted liens on the Project's real property and any improvements thereon, and (b) five (5) business days of the entry of an Order (the "<u>Approval Order</u>") of the Bankruptcy Court approving of this Agreement, the Owner will deposit into the Escrow Account an amount representing the sum of 25% of the total amount due for the Pre-Petition Work (the "<u>Initial Payment</u>").  Within seven (7) business days from receipt of the Initial Payment, the escrow agent shall release 40% of the amount attributable to the Subcontractors from the Initial Payment in the amounts set forth in Exhibit A hereto, on account of their respective prepetition claims. The remaining balance from the Initial Payment shall only be disbursed in accordance with the cash collateral order then in effect (as the case may be, the "<u>Current Cash Collateral Order</u>") or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court. Within fifteen (15) business days of the entry of the Approval Order, the Owner will deposit into the Escrow Account an amount representing the sum of 75% of the total amount due for the Pre-Petition Work (the "<u>Additional Payment</u>").  Within seven (7) business days of funding the Additional Payment into the Escrow Account, the escrow agent shall release up to 40% of the amount attributable to the Subcontractors from the Additional Payment in the amounts set forth in Exhibit A hereto, for application to the balance, if any, due to each Subcontractor on account of its prepetition claim. Said money will be paid directly to the individual Subcontractors from the Escrow Account in the amounts set forth on Exhibit A, provided that, within seven (7) business days of completion of the Project in accordance with the terms of the Contract as modified herein, the Subcontractors will provide all required closeout documentation, including lien waivers for all work. The Subcontractors will release all filed and asserted liens on the Project's real property and any improvements thereon within five (5) business days of the entry of an Order of the Bankruptcy Court approving of the Agreement. The remaining balance from the Additional Payment shall only

Case 19-27439-MBK    Doc 534    Filed 11/18/19    Entered 11/18/19 14:21:41    Desc Main
Document    Page 8 of 43
EXECUTION VERSION

be disbursed in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

8.     <u>Mechanism for Retainage Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date</u>.  Pre-Petition Retainage shall be paid by the Owner, when due under the Contract, in such amounts held against Subcontractors set forth in Exhibit A hereto, through the Escrow Account, 40% to the Subcontractors pursuant to Exhibit A, for application to the balance, if any, due to each Subcontractor on account of its prepetition claim. The remaining balance from the Pre-Petition Retainage shall only be disbursed in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

9.     Subcontractor Release and Unsecured Claim.  By executing this Agreement, the Subcontractors agree to perform all remaining work on the Project on a go forward basis as set forth herein, and specifically agree to a 60% discount on the amount of receivable, including retainage, due to them for goods and/or services provided on the Owner's Project prior to the Petition Date.   Upon the Subcontractors receipt of the payments required hereunder, the Subcontractor waives and releases any right to assert any claim (as defined in section 101(5) of the Bankruptcy Code) against the Owner and the Project for this 60% amount, and agrees to accept in full and satisfaction of its claim for goods and/or services prior to the Petition Date the 40% placed in escrow as provided for above.  The Subcontractor will be allowed a general unsecured claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

10.     <u>Release of Preferences</u>.  Upon payment of all monies due pursuant to this Agreement and the release of all liens by Subcontractors, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and seek to avoid any alleged preference payments under sections 547 and 550 of the Bankruptcy Code relating to or arising out of the Project.

-5-

11.    <u>Payment Due to Debtor</u>.  The Owner shall pay all amounts for Pre-Petition Work due to the Debtor under this Agreement and the Contract, inclusive of retainage, into the Escrow Account through the funding of the Initial Payment and the Additional Payment as set forth in Article 7.  The Owner shall pay all amounts for Pre-Petition Retainage, into the Escrow Account in the regular course of business pursuant to the Contract.  The Owner shall pay all amounts for Post-Petition Work due to the Debtor under this Agreement and the Contract, inclusive of retainage, into the Escrow Account in the regular course of business pursuant to the Contract. The funds in the Escrow Account shall only be disbursed in accordance with Cash Collateral Orders entered by the Bankruptcy Court or a further Order of the Bankruptcy Court.

12.    <u>Releases</u>.

(a)    <u>Release by Owner</u>.  Upon payment of all monies due pursuant to this Agreement, the Owner and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "<u>Owner Releasors</u>") do hereby release and forever discharge the Debtor and its officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "<u>Debtor Released Parties</u>") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Debtor Released Parties, arising out of or related to the Contract or the Project.

(b)    <u>Release by the Debtor</u>.  Upon payment of all monies due pursuant to this Agreement, the Debtor and its officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "<u>Debtor Releasors</u>") do hereby release and forever discharge the Owner and its parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "<u>Owner Released Parties</u>") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any

-6-

nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Debtor Releasors, or any of them, ever had or now has against any one or more of the Owner Released Parties, arising out of or related to the Contract or the Project.

(c)    Release by Subcontractors.  Upon payment of all monies due pursuant to this Agreement, the Subcontractor and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Subcontractor Releasors") do hereby release and forever discharge the Owner and the Debtor and their respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Debtor Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Subcontractor Releasors, or any of them, ever had or now has against any one or more of the Owner and Debtor Released Parties, arising out of or related to the Contract or the Project.   Subcontractor agrees to indemnify and hold the Owner and Debtor Released Parties harmless against any liens or claims by any supplier, materialmen, vendor, subcontractor of any tier, employee, or other claimant asserting any rights against Owner and Debtor Released Parties by virtue of separate agreement with Subcontractor.

(d)    Release of PNC Bank.  Except as expressly set forth in this Agreement, subject only to the disbursement of funds as provided for in this Agreement, each Owner and Subcontractor and their respective parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Subcontractor Releasors") do hereby release and forever discharge PNC Bank and its respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "PNC Bank Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner and Subcontractor Releasors, or any of them,

-7-

ever had or now has against any of the PNC Bank Released Parties, arising out of or related to the Contract or the Project.

13.    <u>Releases as a Defense</u>.  Each of the Owner, Debtor and Subcontractor acknowledge and agree that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which of such releases.

14.    <u>No Assignment of Released Claims</u>.  Each of the Owner, Debtor and Subcontractor represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

15.    <u>Governing Law</u>.  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

16.    <u>Contract as Modified In Full Force and Effect</u>.  Except as modified herein, the Contract, as modified by this Agreement, shall be binding upon, and shall inure to the benefit of, the Parties hereto and remains in full force and effect.

17.    <u>Headings</u>.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

18.    <u>Counterparts</u>.  This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

19.    <u>No Oral Modification, Termination or Waiver</u>.  This Agreement cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

EXECUTION VERSION

20.    <u>Further Assurances</u>.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

21.    <u>Jurisdiction and Venue</u>.  The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County.    THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

22.    <u>Authorization</u>.  Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement.  The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

23.    <u>Jointly Drafted</u>.  The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties. The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

IN WITNESS WHEREOF. the Parties hereto have executed, or caused this Agreement to

be executed by their duly authorized representatives. as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____

    Brendan Murray. President
    399 Jefferson Road
    Parsippany. NJ 07054

**OWNER**
CS Utica & Remsen, LLC

By: _____

    Name:
    Title:
    Address:

**SUBCONTRACTOR**
Able Rolling Steel Door, Inc.

By: _____

Name: *Chris Hoehn*
Title: *VP*
Address: *9 Romanelli Ave.*
*S. Hackensack   NJ 07606*

**SUBCONTRACTOR**
Acro Contracting Corp

By: _____

Name: Brian newman   10-8-2019.

Title: President

Address: PO Box 92
Eastchester, NY 10709.

**SUBCONTRACTOR**
Agra Masonry

By: _____

    Name:  Maryann Furman
    Title:   President
    Address: 2626 East 14th Street #101A
             Brooklyn, NY 11235

**SUBCONTRACTOR**
Allstate Electrical

By: _____

Name: Jason Ronchi

Title: President

Address: 10 Railroad Ave
Ridgefield Park NJ 07660

**SUBCONTRACTOR**
All State Sprinkler Corp.

By: _____

Name: _____

Title: CEO

Address: 1869 White Plains Rd

Bronx, NY 10462

**SUBCONTRACTOR**
Ambient Flooring

By: _Thomas Stapleton_

Name: Tom STAPLETON
Title: PARTNER
Address: 1116 EDGEWATER AVE
RIDGEFIELD
NJ  07657

**SUBCONTRACTOR**
Aqua Plumbing and Heating

By: _____

Name: Lawrence Kaufman
Title: President
Address: 3824 Delouth Ave
Bronx, NY, 10473

**SUBCONTRACTOR**
Bay Restoration Corp.

By: _____

Name: HECTOR BANABOS

Title: CEO

Address: 32-47 62ND STREET
WOODSIDE, NY 11377

**SUBCONTRACTOR**
Benco, Inc.

By: _____

Name: Karen Rysinia

Title: CEO

Address: 10 Madison Rd, Unit E Fairfield NJ 07004

**SUBCONTRACTOR**
C&S Fencing, Inc.

By: _Graziella Locanore_

Name: Graziella Locantore

Title: Treasurer /Secretary

Address: 75-77 Midland Ave.
Elmwood Park, NJ 07407

**SUBCONTRACTOR**
Consolidated Scaffold Corp

By: _____

Name: Tom Bowes
Title:  Vice President
Address:  3969 Merritt Avenue
          Bronx NY 10466

**SUBCONTRACTOR**
Direct Door Industries, LTD

By: _____
    Name:  Susan Direct
    Title:  President
    Address:  79 Gazza Blvd
               Farmingdale, NY. 11735

**SUBCONTRACTOR**

Eastern Cutting Corp

By:

Name: Louis Neos

Title: President

Address: 2281 light St.

Bronx, NY 10466

**SUBCONTRACTOR**
Fort Hill Industrials Inc.

By:

Name:    Anthony Uliano
Title:    President
Address: 980 Route 112 - Suite 3
         Coram, NY 11727

**SUBCONTRACTOR**
Future Coatings, Inc.

By: _____

Name: Ralp Ferrant

Title: _____

Address: 463 77th St, Brooklyn, NY 11205

**SUBCONTRACTOR**
Glass Systems Tech

By: _____

    Name:

    Title:

    Address:

Mark Sokoloff

VICE PRESIDENT/PARTNER

Glass Systems Tech, LLC
465 "A" Veit Road
Huntingdon Valley, PA 19006
215-942-4527

**SUBCONTRACTOR**
i-Luminosity LED

By: _____

    Name: MURRAY JHIGWAY
    Title: President
    Address: 254 36TH ST BOX 51
    Brooklyn NY 11232

OK To:
email To: Tina Girardo

    TGirardo a HollisTercs. Com

**SUBCONTRACTOR**
Infinity Painting, Co., Inc.

By

Name: _Frank Vmi_
Title: _Pres.dent_
Address: _1978 Richmond Terrace_
_Staten Island, NY 10302_

Signature Pages to the Settlement Agreement By and Between Hollister Construction Services,
LLC, The Project Owner and Certain Contractors relating to the construction of 33 Ramsen
Avenue, Brooklyn, NY

**SUBCONTRACTOR**
Janus International Group, LLC

By: _____

     Name:   Scott M. Sannes
     Title:    CFO
     Address: 135 Janus International Blvd
              Temple, GA 30179

**SUBCONTRACTOR**

Madison & East Mechanical Co.

By: _____

Name: Michael DeRiter

Title: President

Address: 60 Comacra Drive
Farmingdale, NY 11735.

**SUBCONTRACTOR**
Mainline Construction

By:

Name: Joseph Brazil
Title: President
Address:

1047 Delaware Ave
Island Park, NY 11558

**SUBCONTRACTOR**
Major General Construction

By: _____

Name: Jesus V Mejia
Title: President /OWER
Address: 147. 09 88th Ave
         Jamaica NY 11435

**SUBCONTRACTOR**
Maspeth Roofing & Contracting

By:

    Name: JOHN SCHELONE
    Title: PROSIDENT
    Address: 10/8/19

**SUBCONTRACTOR**
Nova Concrete Contractors

By: _Candid Gonçalve_

    Name: CANDIDO GONZALVES
    Title: President
    Address: 39 Barretts Ave.
             Holtsville NY 11742

**SUBCONTRACTOR**
Orion Interiors Inc.

By: _____

Name: _Ryan Whitney_

Title: _President_

Address:
600 US Highway 206

Raritan, NJ 08869

**SUBCONTRACTOR**
SGC Construction Corp.

By: _____

    Name: VINCENZO COSTANZA

    Title: PRES

    Address: 40-02 BELL BLVD

              BAYSIDE NY 11361

**SUBCONTRACTOR**
Suave Cleaning

By: _____
     Name: VICTOR  PARTEY
     Title: OWNER
     Address: 3062 BROADWAY , NY, NY, 10027

**SUBCONTRACTOR**
Ultimate Access/Solutions

By: _____
    Name:    CURTIS HUDSON
    Title:    President
    Address:  1200 West Creek Village Dr.
            Unit #E6
            Elkton MD 21921

# EXHIBIT A

Remsen

| Subcontractor/Vendor | Pre-Petition Expenses | 40% of Pretition Amount | 25% Paid | 75% Paid | Retention Pre-Petition | 40% of Pre-Petition Retainage, Paid at Completion of Project |
|---|---|---|---|---|---|---|
| Able Rolling Steel Door, Inc. | - | $ - | $ - | $ - | $ 4,387.09 | $ 1,754.84 |
| Acro Contracting Corp | 41,400.00 | $ 16,560.00 | $ 4,140.00 | $ 12,420.00 | $ 14,747.00 | $ 5,898.80 |
| Agra Masonry | - | $ - | $ - | $ - | $ 32,654.22 | $ 13,061.69 |
| All State Sprinkler Corp. | 9,990.00 | $ 3,996.00 | $ 999.00 | $ 2,997.00 | $ 35,481.00 | $ 14,192.40 |
| Allstate Electrical | 179,596.84 | $ 71,838.73 | $ 17,959.68 | $ 53,879.05 | $ 19,955.20 | $ 7,982.08 |
| Ambient Flooring | 7,695.00 | $ 3,078.00 | $ 769.50 | $ 2,308.50 | $ 855.00 | $ 342.00 |
| Aqua Plumbing and Heating | 2,170.44 | $ 868.18 | $ 217.04 | $ 651.13 | $ 21,761.25 | $ 8,704.50 |
| ASSA ABLOY Entrance Systems | 6,399.00 | $ 2,559.60 | $ 639.90 | $ 1,919.70 | $ 711.00 | $ 284.40 |
| Bay Restoration Corp. | 23,265.00 | $ 9,306.00 | $ 2,326.50 | $ 6,979.50 | $ 11,485.00 | $ 4,594.00 |
| Benco Inc. | 1,197.00 | $ 478.80 | $ 119.70 | $ 359.10 | $ 133.00 | $ 53.20 |
| C&S Fencing, Inc. | 35,709.30 | $ 14,283.72 | $ 3,570.93 | $ 10,712.79 | $ 3,967.70 | $ 1,587.08 |
| Cardella Waste | - | $ - | $ - | $ - | $ - | $ - |
| Consolidated Scaffold Corp | - | $ - | $ - | $ - | $ 3,462.23 | $ 1,384.89 |
| Director Door Industries, LTD | 20,944.80 | $ 8,377.92 | $ 2,094.48 | $ 6,283.44 | $ 3,767.69 | $ 1,507.08 |
| Durante Rentals | - | $ - | $ - | $ - | $ - | $ - |
| Eastern Cutting Corp. | 17,100.00 | $ 6,840.00 | $ 1,710.00 | $ 5,130.00 | $ 1,900.00 | $ 760.00 |
| FortHill Industries Inc | - | $ - | $ - | $ - | $ 18,250.00 | $ 7,300.00 |
| Future Coatings Inc | 13,887.00 | $ 5,554.80 | $ 1,388.70 | $ 4,166.10 | $ 14,781.60 | $ 5,912.64 |
| Glass Systems Tech | 16,650.00 | $ 6,660.00 | $ 1,665.00 | $ 4,995.00 | $ 9,434.00 | $ 3,773.60 |
| i-Luminosity LED | 10,179.00 | $ 4,071.60 | $ 1,017.90 | $ 3,053.70 | $ 8,700.00 | $ 3,480.00 |
| Infinity Painting Co., Inc. | 33,840.00 | $ 13,536.00 | $ 3,384.00 | $ 10,152.00 | $ 15,435.00 | $ 6,174.00 |
| Janus International Group, LLC | 266,427.98 | $ 106,571.19 | $ 26,642.80 | $ 79,928.39 | $ 195,503.11 | $ 78,201.24 |
| Madison & East Mechanical Corp | 1,358.67 | $ 543.47 | $ 135.87 | $ 407.60 | $ 44,443.01 | $ 17,777.21 |
| Mainline Construction | 29,864.81 | $ 11,945.92 | $ 2,986.48 | $ 8,959.44 | $ 10,135.19 | $ 4,054.08 |
| Major General Construction | 37,800.36 | $ 15,120.14 | $ 3,780.04 | $ 11,340.11 | $ 7,200.04 | $ 2,880.02 |
| Maspeth Roofing & Contracting | 16,844.12 | $ 6,737.65 | $ 1,684.41 | $ 5,053.24 | $ 12,246.57 | $ 4,898.63 |
| Nova Concrete Contractors | - | $ - | $ - | $ - | $ 372,156.10 | $ 148,862.44 |
| Orion Interiors, Inc. | 2,816.01 | $ 1,126.40 | $ 281.60 | $ 844.80 | $ 312.89 | $ 125.16 |
| Schnell Contracting Systems | - | $ - | $ - | $ - | $ - | $ - |
| SGC Construction Corp. | 68,400.00 | $ 27,360.00 | $ 6,840.00 | $ 20,520.00 | $ 14,200.00 | $ 5,680.00 |
| Suave Cleaning | 24,003.00 | $ 9,601.20 | $ 2,400.30 | $ 7,200.90 | $ 2,667.00 | $ 1,066.80 |
| Ultimate Access Solutions | 50,094.00 | $ 20,037.60 | $ 5,009.40 | $ 15,028.20 | $ 14,000.00 | $ 5,600.00 |
| | | $ - | $ - | $ - | | $ - |
| | $ 917,632.33 | $ 367,052.93 | $ 91,763.23 | $ 275,289.70 | $ 894,731.90 | $ 357,892.76 |