**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC**,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Requested Hearing Date: December19, 2019 at 10:00 a.m. |

**DEBTOR'S MOTION FOR ENTRY OF ONE OR MORE ORDERS APPROVING
VARIOUS SETTLEMENTS AND COMPROMISES BY AND AMONG
THE DEBTOR, PROJECT OWNERS AND SUBCONTRACTORS
PURSUANT TO FED. R. BANKR. P. 9019 AND GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby submits this motion (this "Motion") seeking the entry of one or more orders (the "Proposed Orders"), substantially in the form submitted herewith, each approving a Settlement Agreement[2] between the Debtor and certain Project Owners and subcontractors as more

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

[2] Terms not otherwise defined herein shall have the meanings afforded to them in the Settlement Agreements. By this Motion, the Debtor does not seek to assume or reject any executory contracts or unexpired leases pursuant to section 365 of the Bankruptcy Code.

particularly described herein pursuant to Fed. R. Bankr. P. 9019 and granting related relief. In support of this Motion, the Debtor states as follows:

### JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The Debtor consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4. The statutory predicates for the relief requested in this Motion are sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

5. On September 11, 2019 (the "Petition Date"), the above-captioned Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case"). The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

6. On September 23, 2019, the Office of the United States Trustee appointed an official committee of unsecured creditors in this Chapter 11 Case (the "Committee").

7. Additional details regarding the Debtor's business and the facts and circumstances leading up to the filing of the Chapter 11 Case and supporting the relief requested herein are set forth in the *Declaration of Brendan Murray in Support of First Day Relief* [Docket No. 15].

**THE DEBTOR'S BUSINESS OPERATIONS**

8. The Debtor operates a substantial construction business. In calendar year 2018, the Debtor collected approximately $292,034,763 in gross revenue. The Debtor depends on payments from project owners upon completion of the project and at certain stages of the project. The Debtor's receivables from those project owners are assets of the Debtor and property of its bankruptcy estate. If the Debtor cannot finish a project, it may be subject to future obligations and additional liabilities. Further, the Debtor is concerned that various subcontractors, materialmen and other suppliers may lien job sites or continue to prosecute their construction liens to collect on monies due for pre-petition services and/or goods supplied by filing or foreclosing on construction liens against the real property on which the Debtor does or did supervise construction and development despite the automatic stay (which may not apply in certain circumstances). Only through ongoing operations will the Debtor be able to realize the substantial amounts due from open accounts receivable.

**THE SETTLEMENTS**

9. As this Court is aware, the Debtor's ability to continue to operate in chapter 11 hinges on its ability to negotiate global settlements with most, if not all of the project owners and project stakeholders, as well as the subcontractors, on each of the Debtor's ongoing construction projects. These settlements, if ultimately approved by the Court, will allow the Debtor to complete certain of its ongoing construction projects, and will provide the necessary cash flow and funding needed for the Debtor's continued operations and repayment of its secured debt to PNC Bank.

10. Since the Petition Date, the Debtor and its professionals have been diligently and actively engaged in negotiations with project owners and subcontractors regarding the Debtor's ongoing construction projects (the "Projects") in an attempt to reach global settlements on certain projects. As a result of ongoing negotiations, the Debtors have reached a settlement (each a "Settlement," and collectively, the "Settlements") with each of the identified project owners (each, a "Project Owner") and subcontractors and entered into settlement agreements (each a "Settlement Agreement," and collectively, the "Settlement Agreements"), as set forth below.

11. The Settlements relate to certain Projects where the Debtor has determined it is economically feasible to continue construction on and completion of the Project or enter into a settlement to collect monies due to it.

12. Attached hereto as **Exhibit A** is the Settlement Agreement between the Debtor, Umdasch Real Estate USA, Ltd. ("Umdasch/DOKA") as Project Owner, and Red Roc Materials, LLC ("Red Roc"), related to that certain project located at Wallington, New Jersey (the "DOKA Project"). The Debtor, Umdasch/DOKA and Red Roc (the sole subcontractor on the DOKA Project) have reached an agreement that provides for the completion of the DOKA Project. The Debtor's estate expects to net approximately $153,937 from entry into and completion of the Settlement Agreement on the DOKA Project. No payments were made to Red Roc, the sole subcontractor listed on Exhibit A to the DOKA Settlement Agreement, within the 90-day period prior to the Petition Date. This settlement contemplates releases between the Debtor and Umdasch and a waiver of preference actions against Red Roc arising out of or related to the DOKA Project.

13. Attached hereto as **Exhibit B** is the Settlement Agreement between the Debtor and Saxum Real Estate Companies LLC ("Saxum"). Two of the Debtor's equity members, Chris Johnson and Kieran Flanagan, own membership units in Saxum. Johnson owns 4.89% and Flanagan owns 2.01% of the membership units in Saxum. The Debtor and Saxum are party to a Loan (as defined in the Saxum Settlement Agreement). Saxum currently owes the Debtor $660,692.31 under the Loan. The Debtor and SAF 40 Beechwood, LLC ("40 Beechwood"), a Saxum affiliate, are parties to a Construction Contract related to the development of real property know as 40 Beechwood Road, Summit, New Jersey (the "Beechwood Project"). 40 Beechwood has asserted the Debtor has defaulted under the Construction Contract for the Beechwood Project. The Debtor currently owes 40 Beechwood $227,727.09 pursuant to the terms of the Construction Contract on account of job savings costs related to the Beechwood Project. Saxum has the right to offset under the Loan documents. Thus, Saxum will pay 40 Beechwood $227,727.09 and the Debtor $432,965.22, for a total of $660,692.31. The Debtor and Saxum will exchange releases, including preference claims against Saxum arising out of or related to the Loan. Within the one-

year period prior to the Petition Date, the Debtor made one payment to Saxum in the amount of $500,000 on July 1, 2019. This amount is included in the amount due from Saxum to the Debtor under the Loan. The Saxum Settlement Agreement is contingent upon Court approval of the Debtor's settlement with 40 Beechwood, which is described below.

14. Attached hereto as **Exhibit C** is the Settlement Agreement between the Debtor, 40 Beechwood and certain subcontractors on the Beechwood Project. The Debtor's estate expects to net approximately $32,492 from entry into and completion of the Settlement Agreement with 40 Beechwood. The gross dollar amount paid to the Subcontractors listed on Exhibit A to the 40 Beechwood Settlement Agreement within the 90-day period prior to the Petition Date is approximately $395,837. This amount does not take into account any potential defenses to alleged preference claims such as new value and ordinary course of business payments. This settlement contemplates releases between the Debtor and 40 Beechwood and a waiver of preference actions against the Subcontractors listed on Exhibit A to the 40 Beechwood Settlement Agreement arising out of or related to the Beechwood Project.

15. Attached hereto as **Exhibit D** is the Settlement Agreement between the Debtor, Energy Capital Partners Management, LP ("ECP"), and certain subcontractors. The Debtor and ECP are parties to a construction contract relating to tenant fit-up and construction of space at the 40 Beechwood Project where ECP will be a tenant. The Debtor's estate expects to net approximately $1,650 from entry into and completion of the Settlement Agreement with ECP. The gross dollar amount paid to the Subcontractors listed on Exhibit A to the ECP Settlement Agreement within the 90-day period prior to the Petition Date is approximately $610,086. This amount does not take into account any potential defenses to alleged preference claims such as new value and ordinary course of business payments. This settlement will allow pre-petition liens to be paid and removed from the property. This settlement contemplates releases between the Debtor and ECP and a waiver of preference actions against the Subcontractors listed on Exhibit A to the ECP Settlement Agreement arising out of or related to the Beechwood Project.

16. Through this Motion, the Debtor seeks approval of the above Settlements with the Project Owners and the subcontractors and vendors on each of the respective projects, and collection of monies due from Saxum.

17. Pursuant to the Settlement Agreements,[3] the Parties have agreed, *inter alia*, that in order to avoid damages to the Debtor and the Project Owners that would arise from termination of the underlying Project contracts (each a "Contract, and collectively, the "Contracts"), subject to Bankruptcy Court approval, the Debtor shall continue to perform under each of the Contracts, as modified by each of the Settlement Agreements. Subject to the specific terms identified in each Settlement Agreement (but excluding the Saxum Settlement Agreement), the Settlements between the Debtor and each Project Owner generally also provide for:

    a.    The payment to subcontractors in the ordinary course of business for all post-petition work and post-petition retainage on each Project without any discount or reduction in amounts owed;

    b.    The establishment of a mechanism and timetable for payment of 40% of the amounts owed to subcontractors for work performed prior to the Petition Date and the identification of such 40% amounts on Exhibit A of each respective Settlement Agreement;

    c.    The establishment of a mechanism and timetable for payment of up to 40% of the prepetition retainage payments owed to subcontractors for work performed prior to the Petition Date in accordance with the underlying Contracts and the identification of such 40% amounts on Exhibit A of each respective Settlement Agreement;

    d.    The establishment of a mechanism for payments due by Project Owners to the Debtor;

---

[3] This Motion contains a summary of the settlement terms only. In the event of any conflict between the terms of the Settlement Agreements and this Motion, the specific Settlement Agreements shall govern.

e.  All payments provided for in each respective Settlement Agreement will flow through an escrow account at PNC governed by a separate Escrow Agreement between the Debtor and an escrow agent;

f.  The agreement of the subcontractors to perform all remaining work on the Project on a go-forward basis;

g.  The agreement of the subcontractors to take a 60% reduction on the amount of any receivable, including retainage, due to them for the goods and/or services provided to the Project prior to the Petition Date;

h.  As a condition to the payments set forth in each respective Settlement Agreement, the requirement that each subcontractor release any liens filed against the Project;

i.  In exchange for the payments set for in each respective Settlement Agreement, the agreement of each subcontractor to waive and release the right to assert any claim against the Project Owner and the Project and the agreement of each subcontractor to accept in full satisfaction of its claim for goods/ services provided prior to the Petition Date, the 40% amounts provided for by the relevant Settlement Agreement;

j.  Each subcontractor retains the right to file a general unsecured proof of claim against the Debtor for the 60% reduction in amounts owed for prepetition goods/ services provided and/or work performed on the Project;

k.  A release and waiver by the Debtor of any and all claims or causes of action it may have against subcontractors to recover alleged preferential payments pursuant to section 547 and 550 of the Bankruptcy Code related to the Project;

l.  The granting of mutual releases by and between the Project Owner, the Debtor, the subcontractors; and

  m.  The Project Owner and subcontractors release of any all claims against PNC Bank.

  18. As part of the finalization of each Settlement Agreement, the Debtor communicated with PNC Bank with respect to the specific terms of each Settlement. PNC has generally signed off on each of the Settlements discussed herein.

## RELIEF REQUESTED

  19. By this Motion, the Debtor seeks the entry of one or more orders approving the Settlement Agreements pursuant to Bankruptcy Rule 9019 and authorizing the Debtor to continue to perform under each of the respective Contracts between the Debtor and Project Owners, as modified by each Settlement Agreement, but only to the extent required by the Settlement Agreements, and granting related relief.

## BASIS FOR RELIEF

  20. Bankruptcy Rule 9019(a) provides, in pertinent part, that upon a motion, and after notice and a hearing, the Court may approve a compromise or settlement. Approval of a settlement remains in the sound discretion of the Bankruptcy Court. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986). In determining whether to approve a settlement, the Court should determine whether the proposed settlement is in the best interests of the estate. *Id; see also, In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).

  21. The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (noting that "[c]ompromises are 'a normal part of the process of reorganization.'") (citation omitted), *reh'g denied*, 391 U.S. 909 (1968).

22. Further, the settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *See In re Penn Central Transp.*, 596 F.2d 1102 (3d Cir. 1979); *In re Mavrode*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997).

23. The Third Circuit, applying *TMT Trailer* in the context of a settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

24. In determining whether to approve a settlement, the Bankruptcy Court should not substitute its judgment for that of the debtor and the parties. *See Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803. The Bankruptcy Court is not to decide the numerous questions of fact or law raised by the controversy, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608, 613 (2nd Cir.) (citations omitted), *cert denied*, 464 U.S. 822 (1983); *Mavrode*, 205 B.R. at 720. Thus, in reaching its decision regarding the approval of the proposed compromise this Court need not conclusively determine the claims, which are the subject of the compromise, nor find that the compromise constitutes the best result obtainable. *See W.T. Grant*, 699 F.2d at 613.

25. The Debtor respectfully submits that the proposed Settlements are fair and prudent, is in the best interests of the estate, and fall within the "range of reasonableness." With respect to each of the Settlements identified herein, the Debtor and Project Owner agree that the Debtor is presently in default under the Contract and that the Project Owner believes it has the right to seek to terminate the Contract. If the Contracts were terminated, the Debtor would lose a substantial amount of contract revenue and retainage owed to it under each Contract. Each of the Project Owners could also suffer substantial damages, including the costs of obtaining a replacement contractor and additional delay in completion of the Project. The Settlement Agreements will

allow the Debtor to finish each of the Projects in accordance with the terms of the Contracts, as modified by the Settlement Agreements and provide for payment to certain subcontractors on account of their pre-petition claims. Thus, the Settlement Agreements will benefit the Debtor's estate and its creditors and provide the necessary cash flow for the Debtor to continue to operate in this Chapter 11 Case. In addition, future proceedings with respect to each Project could be protracted and expensive, may require the resolution of complex issues and involve substantial uncertainties and risks inherent in litigation. With these forgoing considerations in mind, the Debtor has concluded that the Settlement Agreements are (i) fair and equitable, (ii) a reasonable resolution with respect to each of the respective Projects, (iii) in the best interests of the Debtor and its estate, and (iv) in the paramount interests of the Debtor's creditors.

26. For the foregoing reasons, the Debtor submits that this Court should approve each of the respective Settlement Agreements.

## WAIVER OF BANKRUPTCY RULE 6004

27. The Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rules 6004(a), and (ii) the stay of any order under Bankruptcy Rule 6004(h), to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate and creditors.

## WAIVER OF MEMORANDUM OF LAW

28. The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies is set forth herein and the Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

29. No prior request for the relief sought in this Motion with respect to these Settlement Agreements has been made to this or any other court.

## NOTICE

30. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attention: Lauren E. Bielskie; (ii) counsel for PNC Bank, the Debtor's pre-petition secured lender, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman; (iii) counsel for the Committee, McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, Roseland, NJ 07068, Attention: Anthony Sodono, III, Esq., and Sam Della Ferra, Esq.; (iv) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002; (v) each Project Owner of a Project that is the subject of a Settlement Agreement; and (vi) all subcontractors on each of the Projects that is the subject of a Settlement Agreement. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter one or more orders, in the form submitted herewith, (i) approving the Settlement Agreements and authorizing and directing the Debtor to perform its obligations under the Settlement Agreements, (ii) approving the releases set forth in the Settlement Agreements, and (iii) granting the Debtor such other and further relief as the Court deems just and equitable.

Dated: December 11, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.

Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to the Debtor and
Debtor-in-Possession*