**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC**,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>**Hearing Date: January 9, 2020 at 10:00 a.m. (ET)**<br>**Obj. Deadline: January 2, 2020 at 4:00 p.m. (ET)** |

**DEBTOR'S MOTION FOR ENTRY OF (A) AN ORDER EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF; AND (B) AN ORDER EXTENDING THE DEADLINE TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY PURSUANT TO SECTION 365(d)(4) OF THE BANKRUPTCY CODE, AND GRANTING RELATED RELIEF**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its

undersigned counsel, submits this motion (the "Motion") for the entry of orders, substantially in

the forms submitted herewith: (a)(1) extending the period during which the Debtor has the

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by 90 days, from January 9, 2020 through and including April 8, 2020; (2) extending the period during which the Debtor has the exclusive right to solicit votes thereon (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") by approximately 90 days, from March 9, 2020 through and including June 8, 2020,[2] without prejudice to the Debtor's right to seek further extensions of the Exclusive Periods; and (3) granting related relief; and (b)(1) extending the Debtor's deadline to assume or reject unexpired leases of nonresidential real property (collectively, the "Unexpired Leases")[3] pursuant to section 365(d)(4) of the Bankruptcy Code (defined below) by 90 days, from January 9, 2020 through and including the earlier of (i) April 8, 2020 and (ii) the confirmation date of any chapter 11 plan of the Debtor, without prejudice to the Debtor's right to seek additional extensions of the period within which the Debtor may assume or reject the Unexpired Leases; and (2) granting related relief.   In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[2] The 90th day after March 9, 2020 falls on a Sunday, June 7, 2020.

[3] The Unexpired Leases and the respective counterparties are set forth in **Exhibit A** attached hereto.  To the extent the Court has entered an Order authorizing the Debtor to reject any Unexpired Lease, the Debtor seeks an extension of the period to assume or reject that Unexpired Lease only until the date the Unexpired Lease is deemed rejected under the applicable Order.

3.      The Debtor consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4.      The statutory predicates for the relief requested herein are sections 365(d)(4) and 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.      General Background**

5.      On September 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case").  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner.

6.      On September 23, 2019, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in this Chapter 11 Case (the "Committee").

7.      Additional details regarding the Debtor's business and the facts and circumstances leading up to the filing of the Chapter 11 Case and supporting the relief requested herein are set forth in the *Declaration of Brendan Murray in Support of First Day Relief* [Docket No. 15].

**B.      The Debtor's Progress in the Chapter 11 Case**

8.      The Debtor has made significant progress in this Chapter 11 Case in the approximately four months since the Petition Date.  As this Court is aware, the Debtor's ability to continue to operate in chapter 11 hinges on its ability to negotiate global settlements with most, if not all, of the project owners and project stakeholders, as well as the subcontractors, on the

Debtor's ongoing construction projects. Those settlements, if ultimately approved by the Court, will allow the Debtor to complete certain of its ongoing construction projects, provide necessary cash flow and funding for the Debtor's continued operations and repayment of its debt to its pre-petition secured lender, PNC Bank, N.A. ("PNC Bank"), and maximize the value of the Debtor's assets for all stakeholders. The Court has already approved a number of these settlements. *See, e.g., Order Granting Debtor's Motion Approving the Settlement Agreement By and Among the Debtor, CS Utica & Remsen, LLC and Subcontractors Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 534]; *Order Granting Debtor's Motion Approving of Amended Settlement Agreement By and Among the Debtor, Latitude East Owner, LLC and Latitude West Owner, LLC and Subcontractors Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 522]; *Order Approving Settlement and Compromise by and Among the Debtor, Tipico Products Co., Inc. and Various Subcontractors Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 486]. Other motions seeking approval of go-forward settlements are pending as of the date of filing of this Motion. *See Debtor's Motion for Entry of One or More Orders Approving Various Settlements and Compromises By and Among the Debtor, Project Owners, and Subcontractors Pursuant to Fed. R. Bankr. P. 9019 and Granting Related Relief* [Docket No. 649], hearing scheduled for December 19, 2019; *Debtor's Motion for Entry of One or More Orders Approving Various Settlements and Compromises By and Among the Debtor, Project Owners and Subcontractors Pursuant to Fed. R. Bankr. P. 9019 and Granting Related Relief* [Docket No. 631], hearing scheduled for December 19, 2019.

9.    In addition to negotiating settlements related to go-forward construction projects, the Debtor and its professionals have been diligently and actively engaged in discussions with project owners, subcontractors and other project stakeholders to resolve disputes regarding certain

other construction projects where the Debtor has determined it will not complete the project and

is working to collect outstanding accounts receivable due to it.

10.    Accordingly, in addition to obtaining approvals of the settlements noted in

paragraph 8 above, the Debtor has, among other things:

(a)    Filed and obtained Court approval of two omnibus motions seeking authorization to reject various executory contracts and unexpired leases of personal property and non-residential real property that the Debtor has determined, in an exercise of its business judgment, are not necessary for the Debtor's continued operations;

(b)    Filed and obtained Court approval of settlement agreements rejecting project contracts that are not favorable to the Debtor. *See Debtor's Motion for Entry of an Order Approving Agreement for Sale of Equity and Settlement Agreement By and Among the Debtor, Just Below 70MLK, LLC and 306 MLK Blvd. Urban Renewal, LLC, to Reject Certain Agreements and Granting Related Relief* [Docket No. 635], hearing scheduled December 19, 2019; *Order Granting Debtor's Motion to Approve of a Settlement Agreement By and Between the Debtor and SBLP Princeton, LLC Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 558]; *Order Granting Debtor's Motion to Approve of a Settlement Agreement By and Among the Debtor, Just Greens, LLC d/b/a Aerofarms, and KSS Architects, LLP Pursuant to Fed. R. Bankr. P. 9019* [Docket No. 557]; *Order Approving a Settlement and Compromise By and Among the Debtor and Waypoint Hackensack Urban Renewal Owner LLC Pursuant to Fed. R. Bankr. P. 9010 and Authorizing the Debtor to Assume and Assign and Reject Certain Executor Contracts* [Docket No. 324];

(c)    Negotiated and entered into a joint stipulation with Arch Insurance Company and Arch Reinsurance Company (collectively, "Arch") establishing procedures for the Debtor's transition of certain bonded projects to Arch, which the Court subsequently approved. *See* Docket No. 524;

(d)    Removed a state court action filed by a project owner against the Debtor and other third parties to this Court; and

(e)    Commenced more than two dozen adversary proceedings seeking to avoid and recover preferential transfers made to certain subcontractors.

11.     The Debtor has also negotiated, defended against and resolved numerous motions filed by project parties in interest seeking various forms of relief with respect to the Debtor's open construction projects.

12.     In addition to addressing matters related to the Debtor's construction projects pending as of the Petition Date, the Debtor has been focused on a smooth transition into the chapter 11 process.  During these first approximately 90 days of this Chapter 11 Case, the Debtor has devoted significant effort to operational issues such as obtaining authority to use cash collateral.  Additionally, the Debtor has spent a significant amount of time compiling and amending the voluminous schedules and statements and complying with the weekly and other periodic reporting requirements under the Debtor's cash collateral and related orders of this Court and as required by the U.S. Trustee.  The Debtor has been and continues to work with the Committee and the U.S. Trustee to address and resolve issues as they arise during the Chapter 11 Case.

13.     After focusing its efforts on these significant and time-sensitive matters, the Debtor hopes to be in a position to file a plan of liquidation within the next few months.  However, the Debtor's Exclusive Filing Period is currently scheduled to expire on January 9, 2020 by operation of section 1121(d) of the Bankruptcy Code.  The Debtor believes that a 90-day extension of the Exclusive Periods as requested in this Motion is necessary in order to allow it to prepare and pursue a consensual plan process for the benefit of all stakeholders.

14.     For the same reasons, the Debtor requires additional time to fully analyze and address each of the Unexpired Leases and accordingly seeks a 90-day extension of its current deadline to assume or reject the Unexpired Leases, which is January 9, 2020 (*i.e.*, 120 days after the Petition Date).  Absent the requested relief, the Debtor would be forced to make premature

decisions regarding the assumption or rejection of the Unexpired Leases, which may have a detrimental impact on the Debtor's businesses and reorganization efforts.

## **RELIEF REQUESTED**

15.     By this Motion, the Debtor seeks entry of two orders substantially in the forms submitted herewith.  First, the Debtor seeks entry of an order (a) extending the Debtor's Exclusive Filing Period by 90 days, from January 9, 2020 through and including April 8, 2020, and the Debtor's Exclusive Solicitation Period by approximately 90 days, from March 9, 2020 through and including June 8, 2020, without prejudice to the Debtor's right to seek further extensions of the Exclusive Periods, and (b) granting related relief.  This is the Debtor's first request for an extension of the Exclusive Periods.

16.     Second, the Debtor seeks entry of an order, pursuant to section 365(d)(4) of the Bankruptcy Code, granting the Debtor a 90-day extension of the time to assume or reject the Unexpired Leases from January 9, 2020 through and including the earlier of (i) April 8, 2020 and (ii) the confirmation date of any chapter 11 plan of the Debtor, without prejudice to the Debtor's right to seek additional extensions of the period within which the Debtor may assume or reject the Unexpired Leases.  This is the Debtor's first request for such relief.

## **BASIS FOR RELIEF**

### A.     **Extension of the Exclusive Periods**

17.     Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to propose and file a chapter 11 plan during the first 120 days of a chapter 11 case.  Section 1121(c)(3) of the Bankruptcy Code extends exclusivity for an additional 60 days (to an initial maximum of 180 days from commencement of a case) to solicit and obtain acceptances of that plan.  The purpose of the exclusivity period is "to promote an environment in which the debtor's

business may be rehabilitated and a consensual plan may be negotiated." *In re Burns and Roe Enters., Inc.*, Civil Action Nos. 05–2529 (KSH), 05–4125(KSH), 2005 WL 6289213, at \*4 (D.N.J. Nov. 2, 2005) (citations omitted).

18.     The Court, however, may extend a debtor's exclusivity periods "for cause" under section 1121(d)(1) of the Bankruptcy Code.  Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section."  11 U.S.C. § 1121(d).

19.     Although the term "cause" is not defined by the Bankruptcy Code, it should be viewed flexibly in this context "in order to allow the debtor to reach an agreement."  H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1997); *see also In re Public Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("legislative intent . . . [is] to promote maximum flexibility").  It is imperative that a debtor be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate information concerning the ramifications of any proposed plan for disclosure to creditors.  *See, e.g., In re Texaco, Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

20.     Courts in various jurisdictions, including in the Third Circuit, have held that the decision to extend a debtor's exclusivity periods should be based on the totality of the circumstances and is within the sound discretion of the bankruptcy court.  *See, e.g., Burns and Roe Enters.*, 2005 WL 6289213 at \*3; *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Express One Int'l. Inc.,* 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).  Factors courts consider when deciding whether a debtor has had adequate opportunity to draft, negotiate, and

propose a chapter 11 plan and, thus, whether cause exists to extend a debtor's exclusivity periods,

include:

    (a)    the size and complexity of the case;

    (b)    the existence of good faith progress;

    (c)    the necessity of sufficient time to negotiate and prepare adequate information;

    (d)    whether creditors are prejudiced by the extension;

    (e)    whether the debtor is paying its debts as they become due;

    (f)    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    (g)    whether the debtor has made progress negotiating with creditors;

    (h)    the length of time a case had been pending;

    (i)    whether the debtor is seeking an extension to pressure creditors; and

    (j)    whether or not unresolved contingencies exist.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 835.

21.    Because each case is unique, not all of these factors are relevant in each case and courts will only consider those factors that are relevant in the case at hand. *See, e.g., Express One*, 194 B.R. at 100-01 (identifying only four of the factors as relevant to its analysis as to whether cause existed to extend the exclusivity periods); *see also Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on only two of the factors in deciding to extend the exclusivity periods).

22.    The Debtor submits that sufficient "cause" exists to extend the Exclusive Periods under section 1121(d) of the Bankruptcy Code because the relevant aforementioned factors weigh

in favor of such an extension. The Debtor has made significant, good-faith progress toward achieving its restructuring goals in this Chapter 11 Case, which is particularly complex given the numerous construction projects pending as of the Petition Date and the myriad parties in interest across those projects. The Debtor has, among other things: (i) successfully moved for, and obtained, various forms of "first day" relief that enables the Debtor to continue operating its business without disruption; (ii) prepared and filed its Schedules of Assets and Liabilities and Statements of Financial Affairs, and certain amendments thereto; (iii) negotiated and obtained approval of a new claims bar date in this Chapter 11 Case to facilitate the timely assertion, review and reconciliation of claims against its estate; (iv) obtained Court approval of numerous settlements permitting the Debtor to continue working on certain construction projects; and (v) obtained authority to reject certain contracts and leases that are not necessary for the Debtor's restructuring efforts, while continuing to negotiate the terms of other contracts and leases related to pending construction projects and the operation of the Debtor's business generally.

23. Critically, the fact that the Debtor has been able to negotiate consensual resolutions with the various parties in interest on many of its open construction projects, and continues to push for consensual resolutions on its remaining projects, will facilitate the formulation of a consensual chapter 11 plan of liquidation for the benefit of all stakeholders. Therefore, the Debtor's prospects for filing a confirmable plan are certainly reasonable.

24. Creditors will not be prejudiced by an extension of the Exclusive Periods, nor is the proposed extension intended to pressure creditors. Rather, an extension of the Exclusive Periods will benefit creditors as the Debtor is seeking such extension in order to afford sufficient time to thoroughly negotiate, draft, and file a confirmable chapter 11 plan of liquidation. Thus, extending

the Exclusive Periods will afford the Debtor a meaningful opportunity to proceed with the plan

process for the benefit of all stakeholders and creditors.

25.    Numerous courts within this District and Circuit have granted similar requests for

extensions of the exclusivity periods under section 1121 of the Bankruptcy Code.  *See, e.g., In re*

*Mountain Creek Resort, Inc.*, No. 17-19899 (SLM) (Bankr. D.N.J. Sept. 6, 2017) (granting initial

71-day extension of exclusivity periods without prejudice to seek additional extensions); *In re*

*Cinram Grp., Inc.*, No. 17-15258 (VFP) (Bankr. D.N.J. July 27, 2017) (granting initial 90-day

extension of exclusivity periods without prejudice to seek additional extensions); *In re In re EOGH*

*Liquidation, Inc.*, No. 15-31232 (VFP) (Bankr. D.N.J. Mar. 7, 2016) (granting 61-day extension

of exclusivity periods); *In re G-I Holdings Inc.,* No. 01-30135 (RG) (Bankr. D.N.J. June 8, 2001)

(granting an initial extension of the exclusivity periods of approximately seven months); *In re*

*Molycorp, Inc.*, No. 15-11357 (CSS) (Bankr. D. Del. Jan. 14, 2016) (granting an initial extension

of the exclusivity periods of approximately 160 days); *In re Samson Res. Corp.*, No. 15-11934

(CSS) (Bankr. D. Del. Jan. 5, 2016) (granting an initial extension of the exclusivity periods of

approximately six months); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D.

Del. Sept. 16, 2014) (granting an initial extension of the exclusivity periods of 180 days).[4]

26.    For the foregoing reasons, an objective analysis of the relevant factors discussed

above demonstrates that the Debtor seeks to facilitate a successful conclusion to this Chapter 11

Case and that "cause" exists for extending the Exclusive Periods.  Accordingly, the Debtor

respectfully submits that the Exclusive Periods should be extended as requested herein.

---

[4] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion.  Copies of these orders are available upon e-mail request of Debtor's counsel by contacting Arielle B. Adler, Esq., at aadler@lowenstein.com.

### B.    Extension of the Period to Assume or Reject Unexpired Leases

27.    Section 365(d)(4) of the Bankruptcy Code provides:

> (A)  Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
>
>> (i) the date that is 120 days after the date of the order for relief; or
>>
>> (ii) the date of the entry of an order confirming a plan.
>
> (B)    (i) The court may extend the period determined under subparagraph (A), prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause.
>
>    (ii) If the court grants an extension under clause (i), the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

11 U.S.C. § 365(d)(4)(A), (B).  Thus, upon a showing of cause, a court has the discretion to grant an extension of 90 days after the conclusion of the initial 120 days allotted to debtors to assume or reject non-residential real property leases.

28.    Courts have considered the particular needs of the debtor in considering whether to grant an extension.  *See, e.g., In re Channel Home Ctrs., Inc.*, 989 F.2d 682, 689 (3d Cir. 1993) ("[N]othing prevents a bankruptcy court from granting an extension because a particular debtor needs additional time to determine whether the assumption or rejection of particular leases is called for by the plan of reorganization that it is attempting to develop."); *see also In re GST Telecom Inc.*, No. 00-1982-GMS, 2001 U.S. Dist. LEXIS 8817, at *9 (D. Del. June 8, 2001) (stating that "equity dictates that courts can grant debtors additional time in which to decide whether to assume or reject a particular lease").  The purpose of this additional time is to allow the debtor an

opportunity to carefully evaluate all of the leases so that decisions can be made to maximize the value of the estate.

29.    A court can grant an extension under section 365(d)(4)(B) for cause shown.  While the Bankruptcy Code does not define what constitutes "cause" for the approval of an extension, courts have articulated certain factors that indicate whether there is "cause" for the approval of an extension.  These factors include:

  i.    whether the debtor is paying for the use of the property;

  ii.   whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

  iii.  whether the lease is the debtor's primary asset;

  iv.   whether the debtor has had sufficient time to formulate a plan of reorganization; and

  v.    the complexity of the case facing the debtor and the number of leases the debtor must evaluate.

*See In re Burger Boys, Inc.*, 94 F.3d 755, 760–61 (2d Cir. 1996); *see also In re Poseidon Pool & Spa Recreational, Inc.,* 377 B.R. 52, 61 (E.D.N.Y. 2007); *In re Wedtech Corp.*, 72 B.R. 464, 471-72 (Bankr. S.D.N.Y. 1987).

30.    Applying these factors to the circumstances of this Chapter 11 Case leads to the conclusion that the relief requested should be granted.  The relief requested in this Motion is appropriate and in the best interest of the Debtor, its estate and its creditors.  First, the Debtor has timely paid and intends to continue to timely pay post-petition rent for the use of its leased premises as and when such rental obligations come due post-petition under the Unexpired Leases to the extent required by section 365(d)(3) of the Bankruptcy Code.  Thus, the proposed 90-day extension will not prejudice applicable landlords.  *See In re Bon Ton Rest. and Pastry Shop, Inc.*, 52 B.R.

850, 854-55 (Bankr. N.D. Ill. 1985) (concluding that a lessor who received continuing monthly rent payments was not prejudiced by an extension of the section 365(d)(4) deadline).

31.     Further, the Unexpired Leases are among the Debtor's primary assets, as the Debtor coordinates and manages the work on its various construction projects out of offices leased pursuant to the Unexpired Leases.  Each Unexpired Lease therefore constitutes a critical asset of the Debtor's business as the Debtor remains in the process of assessing its restructuring options and reaching determinations with respect to each of its open construction projects and its continued operations.  Accordingly, the Debtor's ability to maximize value for its estate and creditors could be jeopardized if the Unexpired Leases are statutorily rejected by operation of the deadline imposed by section 365(d)(4)(A) of the Bankruptcy Code.

32.     Finally, the Debtor has been actively analyzing, negotiating, and determining whether to assume or reject contractual obligations, including the Unexpired Leases, since the beginning of this Chapter 11 Case as part of deciding whether to pursue continued work on each of its open construction projects.  Moreover, as set forth above, the Debtor has participated in extensive negotiations with PNC, Arch and the Committee regarding various project-related, operational and case administration matters in this case.

33.     The Debtor expects that the numerous, critical consensual resolutions it has worked hard to reach to date in this Chapter 11 Case will facilitate the formulation and filing of a consensual and confirmable plan.  However, the Debtor requires additional time to continue negotiations with the myriad parties in interest in this complicated Chapter 11 case and, ultimately, make determinations as to whether to assume or reject the Unexpired Leases.

34.     Courts within this District and Circuit frequently grant debtors additional time to assume or reject unexpired nonresidential leases pursuant to section 365(d)(4) of the Bankruptcy

Code, particularly in complex matters such as this Chapter 11 Case. *See, e.g., In re Mountain Creek Resort, Inc.*, Case No. 17-19899 (SLM) (Bankr. D.N.J. Sept. 6, 2017) [Docket No. 274]; *In re Vestis Retail Grp., LLC*, Case No. 16-10971 (LSS) (Bankr. D. Del. June 6, 2016) [Docket No. 447]; *In re Newbury Common Assocs., LLC*, Case No. 15-12507 (LSS) (Bankr. D. Del. May 17, 2016) [Docket No. 738]; *In re Pacific Sunwear of Cal., Inc.,* Case No. 16-10882 (LSS) (Bankr. D. Del. May 16, 2016) [Docket No. 354].[5]  Accordingly, the Debtor submits that the extension sought herein is reasonable and in the best interest of the Debtor's estate.

## WAIVER OF BANKRUPTCY RULES 6004 AND 6006

35.    The Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rules 6004(a) and 6006(c), and (ii) the stay of any order under Bankruptcy Rules 6004(h) and 6006(d), and any other Rule, to the extent they are applicable, because the relief requested herein is necessary to avoid irreparable harm to the Debtor, its estate and creditors.

## WAIVER OF MEMORANDUM OF LAW

36.    Because the legal basis upon which the Debtor relies is incorporated herein and the Motion does not raise any novel issues of law, the Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3).

## NO PRIOR REQUEST

37.    No prior request for the relief sought herein has been made by the Debtor to this or any other court.

---

[5] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion.  Copies of these orders are available upon e-mail request of Debtor's counsel by contacting Arielle B. Adler, Esq., at aadler@lowenstein.com.

## NOTICE

38.    Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attention: Lauren E. Bielskie, Esq.; (ii) counsel for PNC Bank, the Debtor's pre-petition secured lender, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman, Esq.; (iii) counsel for the Committee, McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, Roseland, NJ 07068, Attention: Anthony Sodono, III, Esq., and Sam Della Fera, Esq.; (iv) each of the counterparties to the Debtor's Unexpired Leases; and (v) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.

39.    In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

*[remainder of page intentionally left blank]*

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that this Court: (i) enter the two orders, substantially in the forms submitted herewith, granting the relief requested herein; and (ii) grant the Debtor such other and further relief as the Court deems just and proper.

Dated:  December 16, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to the Debtor and Debtor-in-Possession*

## EXHIBIT A

**Schedule of Unexpired Leases For Which Time to Reject is Sought**

| Name and Mailing Address of Landlord | Location of Property |
|---|---|
| | |
| CS 134 W. 29th Street LLC<br>1350 Broadway, Suite 1010<br>New York, NY 10018 | 134 West 29th Street, New York, NY 10001[6] |
| | |
| Mane Real Estate, LLC<br>c/o Prism Capital Partners, LLC,<br>200 Broadacres Drive, Bloomfield,<br>New Jersey 07003 | 339 Jefferson Road, Parsippany, New Jersey 07054 |
| | |

---

[6] On December 12, 2019, the Court entered an *Order Granting Second Omnibus Motion Authorizing the Debtor to Reject the Rejected Contracts and Leases* [Docket No. 642], which authorized the Debtor to reject this Unexpired Lease effective December 31, 2019.  The Debtor does not seek to extend the December 31, 2019 date.