**Caption in compliance with D.N.J. LBR 9004-1(b)**
Norgaard, O'Boyle & Hannon
184 Grand Avenue
Englewood, NJ  07631
(201) 871-1333
Attorneys for Imperial Floors, LLC
*By:  John O'Boyle, Esq. (JO - 6337)*
   joboyle@norgaardfirm.com
   *Brian G. Hannon (BH - 3645)*
   bhannon@norgaardfirm.com

|  |  |
|---|---|
| In re: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY TRENTON VICINAGE |
| HOLLISTER CONSTRUCTION SERVICES, LLC, | Case No. 19-27439 MBK |
| Debtor(s). | Chapter 11 |
| | Hearing Date:  December 19, 2019 |

**OPPOSITION OF IMPERIAL FLOORING, INC. TO DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT WITH ACCORDIA HARRISON URBAN RENEWAL, LLC**

Imperial Floors, LLC ("Imperial"), through its counsel Norgaard, O'Boyle & Hannon, submits the following Opposition to the Debtor's Motion for Approval of its Settlement with Accordia Harrison Urban Renewal, LLC

1. Imperial filed a proof of claim in this case in the amount of $381,012.69 (*Claim No. 40*); this amount includes $223,887.24 due it on account of its prepetition work on the Accordia Harrison Urban Renewal Project (the "HUB Project"), plus $66,153.63 retainage for the project. The Debtor maintains that only $201,491.32 is due Imperial on account of its prepetition work on the HUB Project (*Docket No. 649-2, Page 50*).

2. Imperial is also named as a defendant in a preference complaint filed by the Debtor on November 7, 2019 (*Adv. Pro. No. 19-02250*).  Through that complaint, the Debtor seeks to avoid

an alleged payment to Imperial in the amount of $263,505.14.

## THE DEBTOR HAS NOT SOLICITED SUBCONTRACTORS' AGREEMENTS TO THE PROPOSAL

3. At the outset, Imperial submits that the debtor's motion should be denied because it does not have the subcontractors' agreements to the "Settlement Agreement" it proposes, and has not provided the affected subcontractors with sufficient notice of its motion.

4. On December 13, 2019, the Debtor filed its motion on shortened time – only 6 days prior to the hearing date. Attached to its motion is a form of a document it entitles "Settlement Agreement By and Between Hollister Construction Services, LLC, the Project Owner and Certain Subcontractors." The document does not include the signatures of any subcontractor.

5. At no time has the Debtor or any other party requested Imperial to agree to or sign the document attached to the Debtor's motion. Indeed, no representative of Imperial saw the document until late on December 13, when the undersigned received notice via ECF. In late October and early November, 2019, the Debtor had been seeking Imperial's agreement to a settlement proposal that included markedly different terms for repayment of the prepetition amounts due Imperial. Imperial returned to the Debtor its marked-up draft of that proposal. Imperial received no response from the Debtor or any other party.

6. As the form of the agreement proffered by the Debtor is not signed by any subcontractor, and as Imperial has not agreed to it (and did not even see it prior to December 13) the Court must conclude that the affected subcontractors have not agreed to settle the matter or compromise their rights in connection with the HUB project. The absence of the subcontractors' assent mandates this court's denial of the Debtor's motion. For a trustee or a debtor-in-possession to seek court approval of a settlement or compromise, at a minimum it should have all counterparties'

agreements to the proposed settlement or compromise. Rule 9019 does not permit a Chapter 11 Debtor to ask the court to pre-approve a proposal so it might later choose to solicit the creditors' assent.

**THE PROPOSAL DOES NOT PROVIDE FOR PAYMENT OF 40% OF THE AMOUNTS OWED TO SUBCONTRACTORS FOR PREPETITION WORK**

7. In its motion, the Debtor states that it intends to pay 40% of the amounts owed to subcontractors on the HUB Project on account of their prepetition work (*Docket No. 649, par. 15.b.*). But nowhere in the text of the proposed Settlement Agreement does the debtor state that it will pay the subcontractors 40% of the prepetition amounts due them on the project. Indeed, the text of the proposed Settlement Agreement indicates that the Debtor intends to pay much less than 40%.

8. On the schedule attached to the proposed settlement agreement, the Debtor indicates that $4,073,477.41 is due and owing to 32 subcontractors on account of their prepetition work on the HUB Project (and that the rights in the retainage fund on account of prepetition work performed by these 32, plus 2 more subcontractors, totals $3,133.529.24).

9. Assuming that the $4,073,477.41 figure posited by the Debtor is correct, a settlement requiring it to pay 40% of the prepetition amounts due and owing will require it to pay the subcontractors the total of $4,073,477.41 x .40 = $1,629,390.96.

10. At paragraph 1 of the proposed Settlement Agreement, the Debtor states that the HUB Project Owner owes the Debtor $1,662,439.56 for "Pre-Petition Work" (*Docket 649-2, Page 3*). Paragraph 7 of the proposed agreement provides that the project owner will make an "Initial Payment" to an escrow account equal to 25% of the amount it owes the Debtor for Pre-Petition Work (*Docket No. 649-2, pages 5 & 6*). Thus the contemplated Initial Payment is $1,662,439.56 x .25 = $415,609.89.

3

11. The proposed agreement then provides that within 7 days of receipt of the Initial Payment, the escrow agent "shall release 40% of the amount attributable to the Subcontractors from the Initial Payment in the amounts set forth in Exhibit A hereto, on account of their respective prepetition claims" (*Docket No. 649-2, page 6*). But the agreement offers no definition of "the amount attributable to the Subcontractors from the Initial Payment." Because the debtor calculates that 40% of the total amount due the subcontractors for prepetition work equals $1,629,390.96, and because the amount of the Project Owner's Initial Payment will be only $415,609.89, it is clear that this provision does not require the Debtor or the escrow agent to pay the subcontractors 40% of the amounts due them for their prepetition work.

12. Logically, "40% of the amount attributable to the subcontractors from the Initial Payment" cannot exceed 40% of the amount of the Initial Payment. Thus, the first traunch of payments that the Escrow Agent will be required to distribute to the 32 subcontractors can be no greater than $415,609.89 x .40 = $166,243.96.

13. Within 15 days of the approval of the proposed settlement, the agreement will require the project owner to make the "Additional Payment" to the escrow account in the amount of "50% of the remaining 75% of the amount due for Pre-Petition Work." (*Docket No. 649-2, page 6*) (this "Additional Payment" can more simply be described as 37.5% of the $1,662,439.56 total amount owed the Debtor by the project owner for Pre-Petition Work). The Additional Payment comes to $623,414.84:

```
  $1,662,439.56  = total amount due for Pre-Petition Work
− $   415,609.89  = 25 % Initial Payment
  $1,246,829.67  = 75% of the amount due for Pre-Petition Work

  $1,246,829.67 x .50 = $623,414.84 = 50% of the 75% of the amount due for
                                      for Pre-Petition Work still due after Initial
                                      Payment
```

14. The proposed agreement then provides that within 5 days of the date on which the project owner makes the "Additional Payment," the Escrow Agent will release "50% of the amount of the Additional Payment attributable to the Subcontractors from the Additional Payment in the amounts set forth on Exhibit A hereto" (*Docket No. 649-2, page 6*)  Again, the "amount of the Additional Payment attributable to the Subcontractors from the Additional Payment" is not defined, but logically it cannot exceed 50% of the total Additional Payment. As the Additional Payment is only $623,414.84, the amount that the Escrow Agent will release to the subcontractors cannot be greater than $311,707.42, which equals half of the Additional Payment.

15. Finally, the proposed agreement requires to project owner to make a third payment to the escrow agent within five days of completion of the project, again equal to "50% of the remaining 75% amount due for the Pre-Petition Work." Presumably, this means that the project owner will pay the final $623,414.84 still due for the Pre-Petition Work. Within 7 days of completion of the project, the agreement contemplates that the Escrow Agent will make the "Final Payment" to the subcontractors, again equal to "50% of the balance of the Additional Payment that is attributable to Subcontractors, for payment to the Subcontractors in the amounts set forth in Exhibit A hereto" (*Docket No. 649-2, pages 6 & 7*).

16. As discussed above, the phrase "50% of the balance of the Additional Payment that is attributable to Subcontractors" is not defined. But assuming that the reference to "50% of the balance of the Additional Payment" was intended to mean 50% of the balance of the project owner's final payment of $623,414.84, this phrase will limit the Escrow Agent from distributing to subcontractors more than 50% of that amount, which equals $311,707.42.

17. So despite the Debtor's suggestion that the agreement will require it to pay the 32 affected subcontractors $1,629,390.96, or 40% of the amounts owed to them for their prepetition

5

work, the text of the proposed agreement limits their recovery to $789,658.80, which is less than 20% of prepetition amounts due the subcontractors:

| | |
|---|---|
| Initial Payment | $166,243.96 |
| Interim Payment | $311,707.42 |
| Final Payment | $311,707.42 |
| TOTAL | $789,658.80 |

18. In its motion, the Debtor represents that the settlement will enable the subcontractors to recover 40% of the amounts owed to them for their prepetition work. The text of the proposed agreement contradicts this, providing for a much smaller distribution. Thus, even if the subcontractors had signed the proposed agreement, the Court could not approve it under Rule 9019. Accordingly, the Debtor's motion must be denied.

**THE PROPOSED AGREEMENT DOES NOT STATE THE FULL AMOUNTS DUE SUBCONTRACTORS FOR PREPETITION WORK ON THE HUB PROJECT**

19. As set forth in paragraph 1, the amount due Imperial for its prepetition work on the HUB project is $223,887.24, plus retainage. The schedule attached to the proposed settlement agreement lists the prepetition amount due Imperial as only $201,491.32 (*Docket No. 649-2, Page 50*). So even if the proposed agreement provided for a 40% distribution on account of subcontractors' prepetition work, it appears that the agreement would result in a payment of less than 40% to Imperial. The schedule may include an underestimate of the amounts due other subcontractors as well.

20. As the proposed agreement does not permit distributions to subcontractors in amounts greater than the amounts set forth on the schedule, regardless of whether the amounts due the subcontractors exceeds the Debtor's estimates, the Debtor misleads the subcontractors when it states that they will receive 40% of the amount due them for prepetition work. For this reason, the court should deny the Debtor's motion for approval of the proposed settlement.

## THE PROPOSED AGREEMENT MAY NOT PROVIDE SUBCONTRACTORS WITH RELEASES OF THE ESTATE'S PREFERENCE CLAIMS

21. In its motion, the Debtor states that the proposed agreement will provide the subcontractors with releases of any preference claims that the estate may have against them. (*Docket No. 649, page 6, par. k*). But the proposed agreement indicates that the subcontractors' receipt of this consideration is far from certain. At paragraph 10, the proposed agreement provides:

> Release of Preferences. Upon payment of all monies due pursuant to this agreement and the release of all liens by Subcontractors, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and seek to avoid any alleged preference payments under section 547 and 550 of the Bankruptcy Code relating to or arising out of this Project.

22. This paragraph conditions Imperial's right to a release of preference liability upon the performance of Debtor and other third parties. Under this paragraph, a release may be withheld if the owner or escrow agent fails to pay "all monies due" pursuant to the agreement, or if any subcontractor refuses to release a lien. Further, the possibility of that such events will occur depends largely on the Debtor's completion of its duties on the project. If the Debtor fails to complete the project, the project owner will likely refuse to pay "all monies due." The Debtor's own default will be grounds for it to withhold valuable consideration from the subcontractors.

23. Permitting the Debtor to withhold preference releases until the project is undisputedly completed is particularly burdensome for Imperial, as Imperial will be required to litigate the pending preference action while working to finish the project.

24. This Court cannot approve of a settlement that will permit the Debtor to renege on its promise to release of the subcontractors from preference liability. The Debtor's motion for approval of the settlement must be denied.

WHEREFORE, Imperial respectfully requests this Court to deny the Debtor's Motion for

Approval of its Settlement with Accordia Harrison Urban Renewal, LLC.

I certify that the foregoing statements are true. I am aware that if the foregoing statements are willfully false, I am subject to punishment.

Dated:  12/18/19                                             ___/s/ Brian G. Hannon_____
                                                                              Brian G. Hannon, Esq.
                                                                              Norgaard, O'Boyle & Hannon