**LOWENSTEIN SANDLER LLP**
Arielle Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| HOLLISTER CONSTRUCTION SERVICES, LLC,[1] | Case No. 19-27439 (MBK) |
| Debtor. | Hearing Date: January 2, 2020 at 10:00 a.m. |

**DEBTOR'S REPLY TO THE OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE FIRST AND FINAL FEE APPLICATION OF THE PARKLAND GROUP, INC. AS FINANCIAL ADVISOR TO THE DEBTOR**

The above-captioned debtor and debtor-in-possession (the "Debtor"), submits this Reply to the *Objection of the Official Committee of Unsecured Creditors (the "Committee") to the First and Final Fee Application of The Parkland Group, Inc. ("Parkland") as Financial Advisor to the Debtor for the Period of September 11, 2019 Through October 24, 2019* [Docket No. 643], and respectfully states as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

## REPLY

1. The Debtor was authorized to retain The Parkland Group, Inc. ("Parkland") as its financial advisor to the Debtor in this Chapter 11 Case, effective as of the Petition Date, by Order entered on October 21, 2019 [Docket No. 351].

2. Subsequently the Debtor determined it no longer needed the services of Parkland. Accordingly, Parkland filed its First and Final Fee Application for compensation and reimbursement of expenses [Docket No. 505]. Parkland seeks $11,353.46 in compensation for services rendered and $2,200.38 for reimbursement of expenses, for a total of $13,573.84. Parkland is still holding a portion of its pre-petition retainer, which retainer exceeds the amount Parkland is seeking payment for.

3. The Debtor selected Parkland to serve as its financial advisor because it has a wealth of experience in providing bankruptcy crisis management, consulting and special advisory services and corporate turnaround services. Parkland has an excellent reputation for the services it has rendered in bankruptcy cases.

4. Parkland, through Larry Goddard, devoted time and effort to working with the Debtor's employees, analyzing and developing cash flow projections and assisting the Debtor with respect to its efforts to prepare for the Debtor's chapter 11 filing. As a result of the work performed on behalf of the Debtor, Parkland acquired knowledge of the Debtor's business operations, financial affairs, debt structure, restructuring efforts and other related matters. Accordingly, Parkland developed relevant experience and expertise regarding the Debtor that helped facilitate effective and efficient services in this Chapter 11 Case.

5. When the Debtor's bankruptcy case was filed:

    a. None of the Debtor's management nor Paul Belair, its proposed CRO, had any experience with the bankruptcy process.

    b. The Debtor contemplated that a turnaround and plan of reorganization was a possible option available.

    c. Parkland did not anticipate that the Debtor, shortly after the Petition Date, would determine its services were no longer required.

6. As a result, the Parkland was retained to provide experience and resources to the Debtor to supplement the Debtor's lack of experience in the bankruptcy process, bankruptcy cash flow projections, the appropriate reporting necessary in a bankruptcy case and to develop a plan of reorganization. The work contemplated for Parkland was planned to be complementary to that planned for the CRO and was specifically planned to be non-duplicative. Parkland's experience, in contrast to the Debtor's and CRO's lack of such experience, positioned Parkland to provide very necessary expertise to assist the Debtor in commencing the bankruptcy case.

7. When it became apparent to the Debtor that a turnaround and plan of reorganization was unlikely to happen, the Debtor made an immediate decision to terminate Parkland's services and Parkland spent no more time providing services to the Debtor other than a few hours related to the preparation of invoices and its First and Final Fee Application and Parkland returned of most of its pre-petition retainer.

8. The time Parkland did spend prior to its termination was essential for it to get up to speed to fulfill the role which the Debtor intended for Parkland, as described above. The Debtor received significant benefit from the knowledge and experience Parkland imparted to the Debtor's management and CRO – which helped them continue their roles after the Parkland's termination. The 2.4 hours spent by Parkland on reviewing docket entries gave it significant knowledge about

the bankruptcy case which facilitated the advice and education Parkland provided to Debtor's management and the CRO. The amount of the time Parkland (all services were rendered by Larry Goddard) spent travelling to court, at court and at the Debtor's offices was devoted to educating the management team and the proposed CRO on the bankruptcy process and the appropriate reporting requirements.

9. In light of the value of the advice and education Parkland provided to Debtor's management and the CRO, Parkland's requested payment of fees of $11,353.46 and expenses of $2,220.38 are reasonable and were necessary to facilitate the Debtor's entry into, and management of, the early days of the bankruptcy process. The Debtor and Parkland submit that:

a. The services were actually provided;

b. The services were necessary to assist the Debtor in commencing the early stages of its bankruptcy case;

c. The services were beneficial to the estate because they positioned the Debtor's management and CRO with the knowledge to continue the case without having to incur further costs from Parkland's services;

d. The services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problems, issues, or tasks addressed;

e. The billing rates charged by Parkland are significantly lower than that charged by other comparably skilled practitioners in other bankruptcy cases;

f. Larry Goddard, Parkland's CEO, is a Certified Turnaround Professional and has experience in scores of similar bankruptcy and other cases, including construction companies, over a 25 year period; and

      g.    No services provided by Parkland were duplicative of services provided by any other professionals.

    10.    With regard, to the $390.01 of expenses incurred by Parkland pre-petition, Parkland had a pre-petition retainer to cover these expenses but did not have all the documents necessary to invoice the Debtor prior to the Petition Date. The unused portion of pre-petition retainer to cover these expenses was rolled over into the post-petition retainer, which has been partially returned to the Debtor.

**WHEREFORE**, the Debtor respectfully request that the Court (i) overrule the Committee's Objection, (ii) grant Parkland's First and Final Fee Application as requested, and (iii) grant the Debtor such other and further relief as the Court deems just and proper.

Dated: December 24, 2019

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Bruce Buechler*
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com
*Counsel to the Debtor and Debtor-in-Possession*