RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962-1981
(973) 538-0800

*Counsel to Newark Warehouse Urban Renewal, LLC and*
*Newark Warehouse Redevelopment Company, LLC*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Hon. Michael B. Kaplan, U.S.B.J. |
| Hollister Construction Services, LLC, | Case No.  19-27439 (MBK) |
| Debtor. | Chapter 11 |

**OMNIBUS REPLY OF NEWARK WAREHOUSE URBAN RENEWAL, LLC AND NEWARK WAREHOUSE REDEVELOPMENT COMPANY, LLC TO OPPOSITIONS OF (I) APPLE CORING & SAWING, LLC, (II) CONTROL SERVICES, LLC, (III) DEHN BROS. FIRE PROTECTION, INC. AND (IV) ALLGLASS SYSTEMS, LLC TO THE NWR ENTITIES' MOTION FOR ENTRY OF AN ORDER DETERMINING THAT CERTAIN PARTIES HAVE VIOLATED THE AUTOMATIC STAY AND FOR OTHER RELIEF**

Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC (together, the "NWR Entities"), by and through their undersigned counsel, hereby submit this reply (the "Reply") to the objections filed by (i) Apple Coring & Sawing, LLC ("Apple") [Docket No. 745] (the "Apple Objection"), (ii) Control Services, LLC ("Control") [Docket No. 755] (the "Control Opposition"), (iii) Dehn Bros. Fire Protection, Inc. ("Dehn Bros.") [Docket No. 756] (the "Dehn Bros Objection") and (iv) Allglass Systems, LLC ("Allglass") [Docket No. 759] (the "Allglass Objection") to the NWR Entities' Motion for an Order Determining that Certain Parties Have Violated the Automatic Stay, that Certain Asserted

Liens Filed Post-Petition Are Void *Ab Initio*, Confirming the Applicability of the Automatic Stay to the Pending Construction Lien Litigations and for Related Relief [Docket No. 740] (the "NWR Motion").[1]  In support of the Reply, the NWR Entities respectfully submit as follows:

## REPLY TO ARGUMENTS RAISED IN OBJECTIONS

### A. Joinders in Debtor's Objection to this Court's entered Order Shortening Time [Docket No. 742]

1.      As an initial matter, Apple states in the Apple Objection that it joins the Debtor's January 6, 2020 letter objection [Docket No. 743] (the "Debtor's OST Objection") to the NWR Entities' Application for an Order Shortening Time For Notice of a Hearing on the NWR Motion [Docket No. 741], which the Court granted.  See Docket No. 742.  However, Apple does not cite any new reason or rationale for delaying the hearing on the NWR Motion.  In fact, Apple has clearly received notice of the NWR Motion and has clearly had the opportunity to respond to the NWR Motion, thereby rendering Apple's joinder in the Debtor's OST Objection baseless.

2.      Similarly, Control and Allglass join the Debtor's OST Objection but fail to include any further reasons for denial, although Allglass' counsel indicates he has a scheduling conflict.  The NWR Entities submit that, similar to Apple, Control and Allglass have clearly received notice of the NWR Motion and have had an opportunity to respond, as evidenced by their objections.  As a result, their joinders are likewise baseless.

### B. The Bankruptcy Court is the Proper Court to Interpret its September 23, 2019 Order Enforcing the Automatic Stay

3.      On September 23, 2019, the Court entered an Order (I) Restating and Enforcing the Automatic Stay, Anti-Discrimination Provisions, and *Ipso facto* Protections of the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the NWR Motion.

Bankruptcy Code, (II) Approving the Form and Manner of Notice Related Thereto, and (III)

Granting Related Relief (the "Automatic Stay Order").  See Docket No. 140.

4.      The Automatic Stay Order provides, in relevant part:

Subject to sections 105(a) and 362(a) of the Bankruptcy Code, and subject to . . . the right of any party in interest to seek relief from the automatic stay in accordance with Bankruptcy Code section 362(d) on notice to all interested parties, all persons (including individuals, partnerships, corporations, limited liability companies and other entities and all those acting on their behalf) . . . are hereby stayed, restrained and enjoined from:

(a)      commencing or continuing (including the issuance or employment of process) any judicial, administrative, or other action or proceeding against the Debtor that was or could have been commenced before the commencement of the Debtor's chapter 11 case or recovering a claim against the Debtor that arose before the commencement of the Debtor's chapter 11 case, including any efforts to file, continue litigation, enforce and/or collect on construction or mechanics liens from third-party real property owners on construction projects for services performed for or on behalf of the Debtor;

*      *      *

(c)      taking any action to obtain possession of property of the Debtor's estate, wherever located or to exercise control over property of the Debtor's estate or interfere in any way with the conduct by the Debtor of its business, including, without limitation, . . . including any efforts to file, continue litigation, enforce and/or collect on construction or mechanics liens from third-party real property owners on construction projects for services performed for or on behalf of the Debtor;

(d)      taking any action to . . . enforce any lien against the property of the Debtor's estate;

(e)      taking any action to . . . enforce against property of the Debtor any lien to the extent that such lien secures a claim that arose prior to the commencement of the Debtor's chapter 11 case;

(f)      taking any action to collect, assess, or recover a claim against the Debtor that arose prior to the commencement of the Debtor's chapter 11 case;

\* \* \*

> 6.    In accordance with the Bankruptcy Code, the Bankruptcy Rules and applicable law, upon request of a party in interest, and after notice and a hearing, this Court may grant relief from the restraints imposed herein in the event that it is necessary, appropriate, and warranted to terminate, annul, modify or condition the injunctive relief herein.

See Automatic Stay Order, Docket No. 140, at ¶¶ 3, 6.

5.    The Automatic Stay Order also specifically and unambiguously provides that "the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation, enforcement and/or interpretation of [the] Order." See Docket No. 742 at ¶ 15.  The Automatic Stay Order further provides that violations of the Order "as determined by this Court on proper application or motion, will be addressed by the assessment of any and all remedies provided under title 11 of the U.S. Code." Id. at ¶ 13.   As a result, it is unquestionable that the proper forum for any and all determinations concerning the enforceability and interpretation of the Automatic Stay Order is this Court, and this Court only.

6.    The Court issued the Automatic Stay Order in response to the Debtor's request to have the Court enforce the automatic stay provisions of the Bankruptcy Code and the Third Circuit Court of Appeals' decision in In re Linear Electric Co., Inc., 852 F.3d 313, 321-23 (3d Cir. 2017), wherein the Third Circuit held that the automatic stay applies to a contractor, subcontractor, materialman or similar party from filing or prosecuting their construction lien claim against non-debtor real property under New Jersey law for pre-petition services rendered and/or goods supplied on a project where the general contractor has commenced a bankruptcy case, because the enforcement efforts could interfere with a debtor's efforts to collect its accounts receivable from the non-debtor real property owner.   In Linear Electric, the Third Circuit found that where the lien claim payment process allows a subcontractor to collect its

recovery by subtracting from a debtor/general contractor's accounts receivable that are due for the value of the materials or services provided under the subcontracts, such an attempt to collect against the debtor's accounts receivable violates the automatic stay because the accounts receivable are property of the debtor's estate.  Id.  Thus, subcontractor's actions must be restricted in order to protect the debtor's estate.  Id. ("For better or for worse, the automatic stay requires [the subcontractors] wait as the [general contractor's] bankruptcy case proceeds and receive whatever they will receive under bankruptcy law without resort to other mechanisms to claim greater payment.").

7.      The discussion of what is restrained by the automatic stay in the Automatic Stay Order is unquestionably very broad.  See Automatic Stay Order at ¶ 3.  Despite the breath of the restraints imposed by the Automatic Stay Order, in violation of the Automatic Stay Order, Apple instead recklessly continued to seek to enforce its alleged pre-petition construction lien claim against the Building and/or the construction lien bond issued by Arch Insurance Co. ("Arch"), and continued to seek to enforce its claims against the NWR Entities in State Court.

8.      Additionally, rather than seek relief from this Court from the restraints imposed by the Automatic Stay Order, Apple instead improperly chose to collaterally attack this Court's Automatic Stay Order by filing a motion with the State Court requesting a determination from the State Court that the automatic stay did not apply to Apple's enforcement efforts. Specifically, Apple filed a motion for partial summary judgment in the State Court action, which is styled Apple Coring & Sawing, LLC v. Control Services, LLC, et al., ESX-L-004707-18, pending in the Superior Court of New Jersey, Law Division, Essex County (the "Apple State Court Action").  As a result of this motion practice initiated by Apple Coring, the State Court in

the Apple State Court Action issued a Memorandum Opinion dated October 25, 2019 (a copy of which is attached as Exhibit A to the Apple Objection), in which the State Court "held that the Bankruptcy Code's automatic stay provision does not apply to claims against non-debtor Arch Insurance Company in the Apple State Court Action." See Apple Objection at p. 1.  As a result, Apple now asserts that, through the NWR Motion, the NWR Entities are "asking this Court to nullify the state court's order regarding the scope of the automatic stay." See Docket No. 745 at p. 2.

9.    Apple's attempt to have the State Court in the Apple State Court Action decide the scope of the Automatic Stay Order in the first instance was improper and was directly at odds with the specific language of the Automatic Stay Order, which required "any party in interest to seek relief from the automatic stay . . . on notice to all interested parties." See Automatic Stay Order at ¶ 3.

10.   Additionally, it is unclear as to whether the State Court in the Apple State Court Action was even aware of either this Court's Automatic Stay Order or the Third Circuit's Linear Electric decision, as neither was addressed or even discussed in the State Court's Memorandum Opinion.

11.   This Court, not the State Court, is obviously the proper court to interpret and determine the scope of its own orders.  As a result, any determination by the State Court in the Apple State Court Action regarding the automatic stay constituted an unauthorized infringement of this Court's power to enforce its own orders and this Court's jurisdiction to enforce the automatic stay.  See, e.g., In re Gruntz, 202 F.3d 1074, 1082 (9th Cir. 2000); In In re Mid-City Parking, Inc., 332 B.R. 798, 804-05 (Bankr. N.D. Ill. 2005) ("the bankruptcy court from which the automatic stay originated nonetheless has the final say . . . collateral challenges

to a state court's automatic-stay determination are not forbidden by the Rooker–Feldman doctrine, because the bankruptcy court is viewed as enforcing its own injunction pursuant to the Supremacy Clause rather than conducting unauthorized appellate review of a state court order."); In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005) (affirming the bankruptcy court's determination that the bankruptcy court was "well suited to provide the best interpretation of its own order."). See also In re Benalcazar, 283 B.R. 514, 525-26 (Bankr. N.D. Ill. 2002) ("[S]tate court judgments entered in violation of an automatic stay in bankruptcy are void *ab initio* and subject to collateral attack, even if the state court has (erroneously) determined that the automatic stay does not apply to the proceeding in which the order is entered.").

12.    Further, courts hold that the bankruptcy court is the proper court to determine the applicability or modification of the automatic stay.  See In re Highway Truck Drivers & Helpers Local Union No. 107, 888 F.2d 293, 299 n.8 (3d Cir. 1989) (noting that if a state court proceeds without the consent of the bankruptcy court when the automatic stay is in effect, such proceedings would be in excess of the state court's authority and subject to collateral attack); In re Conference of African Union First Colored Methodist Protestant Church, 184 B.R. 207, 216 (Bankr. D. Del. 1995) ("If an aggrieved party believes that the state court determination [regarding the applicability of the stay] is wrong, it can seek relief in the bankruptcy court where the stay order emanated."); In re Weisberg, 218 B.R. 740, 752 (Bankr. E.D. Pa. 1998) ("[T]he law of this Circuit squarely places the determination of whether the automatic stay applies to a certain action in the sole domain of the debtor's bankruptcy court.").  See also In re Reed, 370 B.R. 414, 416 (Bankr. N.D. Ga. 2006) ("[T]he stay acts as a means of asserting the exclusive jurisdiction of the bankruptcy court, which extends over the debtor and all of the debtor's property or estate."); In re Gandy, 327 B.R. 796, 802 (Bankr. S.D. Tex. 2005) ("[S]tate courts

lack the authority to terminate the stay when it in fact does apply [and] an erroneous determination of the applicability of the automatic stay would be voidable.").

13.     For these reasons, given the fact that Apple has failed to seek relief from this Court by properly filing a motion for relief from the automatic stay, see Automatic Stay Order at ¶ 3, Apple's efforts to sidestep this Court's directives cannot be countenanced, and Apple's arguments to the contrary must be overruled.

**C.  Apple's Continuation of Certain of its Claims in the Apple State Court Action May Negatively Impact the Debtor's Estate and Should Not Be Permitted**

14.     In the Apple Objection, Apple states that it "is not currently prosecuting any claims against [the NWR Entities] in the Apple State Court Action or elsewhere," while readily admitting that "claims against [NWUR] itself do appear to fall within the scope of the Court's order regarding the automatic stay."  See Apple Objection at p. 2.  Nonetheless, Apple claims that "non-lien claims and claims against parties other than the Debtor and [the NWR Entities] – such as Apple's claims in the Apple State Court Action against Arch and Control – are not subject to the automatic stay."  Id.

15.     While Apple entirely ignores the importance of Linear Electric, it is critical for the Court to consider that decision's impact in connection with Count Three of Apple's Complaint,[2] which seeks, among other things, a judgment fixing the amount of Apple's construction lien and directing that such sum be paid to Apple.  See Apple Complaint at ¶ 32(a).

16.     While Apple argues that proceeding against Arch, a non-debtor, will have no impact on either the Debtor or the NWR Entities, this may not be true.  Instead, Apple's efforts to obtain a valid construction lien claim, even against Arch, remain a real threat to the diminution of the statutory "lien fund," thereby affecting property of the Debtor's estate.

---

[2] A copy of the Apple Complaint is attached hereto as Exhibit "A."

Further, to the extent Arch is found liable and must pay on the construction lien bond, its claims against the estate for reimbursement, contribution or indemnification will become liquidated, thereby affecting the estate.  Further, in this event, Arch may have a subrogation claim against the NWR Entities which could also impact the statutory "lien fund."  See generally In re Alcon Demolition, Inc., 204 B.R. 440 (Bankr. D.N.J. 1997) (surety may have subrogation claim as a result of payment on bond).

17.     For these reasons, Apple's arguments, as they pertain to Arch, should be overruled.

**D.  Other Relief Requested by Apple and/or Control**

18.     Both Apple and Control request that any order granting the NWR Motion carve out claims between Apple and Control in the Apple State Court Action.

19.     The NWR Entities do not oppose either Apple's or Control's requests to allow them to proceed on Counts One, Two, Four, Five, Six, Seven and Eight of the Apple Complaint, to the extent they do not involved NWR Entities, and will agree to modify the proposed order submitted in support of the NWR Motion accordingly.

**E.  The Dehn Bros. Objection**

20.     In the Dehn Bros. Objection, Dehn Bros., which unquestionably violated the automatic stay and the Court's Automatic Stay Order by filing a construction lien claim against the Building on or about December 11, 2019, avers that it had the right to do so simply because Bruce Buechler, Esq. at Lowenstein Sandler LLP advised Dehn Bros. that it could do so.[3]

---

[3] Dehn Bros. construction lien claim is patently defective in any event because, among other things, Dehn Bros. last performed work on the Building in May 2019, well more than 90 days before the Petition Date. See Exhibit B.

21.     Not only is Dehn Bros. wrong, but its objection further demonstrates the Debtor's punitive nature and mismanagement of the estate in that it seeks to penalize the NWR Entities simply because they have not settled with the Debtor.  At the same time, the Debtor sought to hold stay violators in contempt relating to projects where the owners had settled with the Debtor.  This behavior by the Debtor should not be condoned.

**F.  <u>The Allglass Objection</u>**

22.     In the Allglass Objection, Allglass, which filed a construction lien claim after the Petition Date in violation of the automatic stay and the Court's Automatic Stay Order, asserts that it had the right to do so because the NWR Entities obtained relief from the automatic stay to terminate their contract with the Debtor.  Allglass asserts that the Debtor has not requested that Allglass remove its post-petition construction lien claim.

23.     However, the Debtor's attempt to collect an alleged account receivable from the NWR Entities is property of the estate, and the Third Circuit's <u>Linear Electric</u> decision unquestionable says that where a subcontractor or material provider files a construction lien claim on a post-petition basis that could impact the Debtor's ability to collect on an account receivable, the automatic stay prevents the construction lien claim from being filed.

24.     For these reasons, the Allglass Objection must also be overruled.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the NWR Entities respectfully request

that the Court grant the NWR Motion, together with such other and further relief as is just and

equitable.

Dated: January 8, 2020
Morristown, New Jersey

RIKER DANZIG SCHERER HYLAND
& PERRETTI LLP


By: _/s/    *Joseph L. Schwartz*_____
         Joseph L. Schwartz

Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962-1981
(973) 538-0800

*Counsel to Newark Warehouse Urban Renewal,
LLC and Newark Warehouse Redevelopment
Company, LLC*

5103808v5

# EXHIBIT A

ESX-L-004707-18   08/21/2018 11:47:41 AM   Pg 1 of 14 Trans ID: LCV20181450940

BART J. KLEIN (ID # 016921979)
Law Office of Bart J. Klein
2066 Millburn Avenue, Suite 101
Maplewood, New Jersey 07040
(973) 763-6060
Attorneys for Plaintiff Apple Coring & Sawing, LLC

| | |
|---|---|
| APPLE CORING & SAWING, LLC, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION - ESSEX COUNTY |
| | DOCKET NO. ESX L-004707-18 |
| v. | |
| CONTROL SERVICES, LLC, HOLLISTER CONSTRUCTION SERVICES, LLC, NEWARK WAREHOUSE URBAN RENEWAL, LLC, and ABC CORPS. 1-20, said names being fictitious, and ARCH INSURANCE COMPANY | CIVIL ACTION |
| Defendants. | **AMENDED COMPLAINT** |

APPLE CORING & SAWING, LLC, by way of Amended Complaint against

Defendants, alleges and states:

<u>INTRODUCTORY ALLEGATIONS</u>

1.   Plaintiff Apple Coring & Sawing, LLC ("Apple") is a New Jersey limited

liability company with a place of business at 350 Market Street, Kenilworth, NJ 07033.

Apple is in the business of concrete cutting and sawing modification, including openings

for windows.

2.   NWK Warehouse Redeveloper Co., LLC ("the Owner") is, upon information

and belief, a New Jersey limited liability company with a mailing address at 100

Washington Street, Newark, NJ 07102, and is the owner of real property located at 98-

126 Edison Place, Newark, New Jersey, otherwise known as Block 159.01, Lot 11 and Block 159.01, Lot 11 and Qual T01, on the Tax Map of the City of Newark, County of Essex, State of New Jersey ("the Property").

3.    Defendant Newark Warehouse Urban Renewal, LLC ("the Tenant") is, upon information and belief, with an address at 100 Washington Street, Newark, New Jersey 07102, and a Tenant at the Property.

4.    Defendant Control Services, LLC ("Control") is, upon information and belief, a New Jersey limited liability company with an address at 84 Harbor Drive, Jersey City, New Jersey 07305.

5.    Defendant Hollister Construction Services, LLC ("Hollister") is, upon information and belief, a New Jersey limited liability company with an address at 339 Jefferson Road, Parsippany, New Jersey 07054.

6.    Defendant ABC Corps. 1-20, said names being fictitious, are New Jersey individuals and businesses which upon information and belief have been or will be identified as lien encumbrancers with respect to the Property or which have filed a construction lien with respect to the Property and are named as defendants due to its/their assertion of an interest in the Property.

7.    Defendant Arch Insurance Company ("Arch") is, upon information and belief, a Missouri corporation with its principal administrative office at Harborside 3, 210 Hudson Street, Suite 300, Jersey City, N.J. 07311.

<u>**COUNT ONE**</u>
**(Breach of Contract)**

8.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs, and incorporates same herein by reference as if set forth at length.

9.   The Property is being redeveloped into a mixed use commercial building by the Tenant ("the Project").

10. Pursuant to a contract with Control, a subcontractor of Hollister, the general contractor on the Project, Apple was hired as a subcontractor to cut and saw openings for windows and provide related services.

11. Apple provided Control with a quote, dated August 24, 2017, which was signed by Control on August 25, 2017 ("the Contract"). The Contract sets forth Apple's scope of work and on page 3 sets forth a $2,950.00 per day, per crew rate.

12. Apple billed at the rate set forth in the Contract for ten (10) days and issued invoices for the same.

13. On or about September 15, 2017, Control executed another quote from Apple, constituting a change order of the Contract, which increased the per day, per crew rate to $3,650.00 ("Change Order #1").

14. In accordance with the Contract and Change Order #1, Apple performed work and issued invoices in the total amount of $709,855.00.

15. Control failed to keep up with the payments due to Apple pursuant to Change Order #1. As a result, the general contractor, Hollister, made certain payments for Apple's work directly to Apple.

16. Apple was thereafter asked to provide Control with a per window price for single, double and triple windows for work on the Project.

17. Apple provided the requested per window pricing, as set forth in a quote dated January 9, 2018, which was signed by Control. The pricing set forth in the January 9, 2018 quote, $16,425.00 per triple window, $12,318.00 per double window, and $5,475.00

3

per single window, was nonetheless accepted again via text message by Control (the January 9, 2018 quote is referred to as Change Order #2).

18. Apple proceeded with its work based upon Control's acceptance of the per window pricing, and invoiced Control in conformance with the same. The total amount of the invoices performed in accordance with Change Order #2, and calculated based upon the per window pricing, is $301,894.00.

19. The total amount of work performed and invoiced by Apple at the Project pursuant to its contract and change orders with Control is $1,011,749.00.

20. After application of all payments and credits, the amount Control owes Apple pursuant to the Contract and all change orders is $471,082.80.

21. Consistent with the Contract, Apple has demanded payment for the work it completed at the Project, but Control has failed to pay the same or any part thereof.

WHEREFORE, the Plaintiff demands judgment against Defendant Control Services, LLC, as follows:

a. For compensatory damages;

b. For punitive damages;

c. For interest and costs of suit;

d. For attorneys' fees; and

e. For any and all such other relief as the Court deems just and equitable.

## COUNT TWO
### (Unjust Enrichment)

22. Plaintiff repeats and realleges the preceding allegations as if set forth at length herein.

23. Plaintiff, upon the request of Control, the Tenant and Hollister, has delivered goods and services in connection with the requirements of Claremont, the reasonable value of which is at least $1,011,749.00

24. Control, the Tenant and Hollister have accepted and received the said goods and services and after application of all payments have been unjustly enriched in the sum of $471,082.80.

WHEREFORE, the Plaintiff demands judgment against Defendant Control Services, LLC and Newark Warehouse Urban Renewal, LLC and Hollister Construction Services, LLC, as follows:

a. For compensatory damages;

b. For punitive damages;

c. For interest and costs of suit;

d. For attorneys' fees; and

e. For any and all such other relief as the Court deems just and equitable.

## COUNT THREE
### (Construction Lien)

25. Plaintiff repeats and realleges the preceding allegations as if set forth at length herein.

26. On June 13, 2018, Apple filed a Construction Lien in the Office of the Clerk of Essex County, in the sum of $471,082.80, which notice was duly recorded and filed in the Book of Construction Lien Notices.  The Construction Lien covered the parcels known as 98-126 Edison Place, Newark, New Jersey, otherwise known as Block 159.01, Lot 11 and Block 159.01, Lot 11 and Qual T01, on the Tax Map of the City of Newark,

5

County of Essex, State of New Jersey (referred to above and hereafter as "the Property"). The leasehold interest of the Tenant in the Property remains subject to the Construction Lien.

27. The Construction Lien was timely filed in proper form, and constitutes an otherwise valid and enforceable lien and encumbrance upon the leasehold interest in the building and land comprising said Property in accordance with the provisions of N.J.S.A. 2A:44A-1 et seq.

28. This action has been commenced within one year from the date when the last services and materials were furnished, and all other statutory prerequisites necessary to prove a lien have been satisfied.

29. The services and goods supplied for the benefit of Control and the Tenant by Plaintiff were for the improvement of the leasehold interest in the Property, which was and is owned of record by the Owner, Newark Warehouse Redeveloper, LLC, and of which the Tenant is a tenant.

30. Plaintiff has demanded that Control and the Tenant pay to it the sum of $471,082.80, representing the balance due the Plaintiff pursuant to its written contract with Control pertaining to the Property, but Control and the Tenant have refused or neglected to pay the same or any part thereof.

31. Defendants ABC Corps. 1-20 and John Does 1-20 are lien encumbrancers as to the Property or have filed Construction Liens as to the Property or which otherwise have an interest in the Property.

32. Defendants Hollister and Arch have issued a bond discharging Apple's Construction Lien, which, upon information and belief, was recorded on August 20, 2018 at Book 11, Page 356 of the Book of Construction Lien Claims.

WHEREFORE, Plaintiff Apple Coring & Sawing, LLC demands judgment:

(a) Fixing the amount due on its Construction Lien, and directing that such sum be paid to Plaintiff;

(b) Declaring that the judgment is a lien upon the leasehold interest in the premises above described, or a valid judgment on the lien bond;

(c) Declaring whether such lien is prior to the liens of the parties having an interest in the lands and premises subject to the Construction Lien, and prior to the liens of the other lien claimants, if any;

(d) Directing that the lands and premises subject to such liens be sold to satisfy the amount due to the plaintiff;

(e) Enjoining all Defendants from any equity of redemption in the premises; and

(f) For costs, attorneys fees and such other relief as the Court deems just and equitable.

## COUNT FOUR
### (Prompt Payment Act)

33. Plaintiff repeats and realleges the preceding allegations as if set forth at length herein.

34. The "Prompt Payment Act", codified under N.J.S.A. 2A:30A-1 *et. seq.* ("the Act") prohibits the withholding of payments on a construction contract such as the contract between Control and Plaintiff at issue here, unless a written statement of the

7

amount withheld and the reason for withholding payment is provided to the contractor under the contractor within the time limits specified in the Prompt Payment Act.

35. Control failed and refused to make payment to Plaintiff under their contract in conformance with <u>N.J.S.A.</u> 2A:30A-2(a)-(c) in violation of the Prompt Payment Act.

36. Pursuant to <u>N.J.S.A.</u> 2A:30A-2(f), attorney's fees and interest are due to Plaintiff from Control for Control's violation of the Prompt Payment Act, and continue to accrue.

WHEREFORE, the Plaintiff demands judgment against Defendant Control Services, LLC and Hollister Construction Services, LLC, as follows:

a. For compensatory damages;

b. For punitive damages;

c. For interest and costs of suit;

d. For attorneys' fees; and

e. For any and all such other relief as the Court deems just and equitable.

## COUNT FIVE
### (Breach of the Covenant of Good Faith and Fair Dealing)

37. Plaintiff repeats and realleges the preceding allegations as if set forth at length herein.

38. There is implied in every contract a covenant of good faith and fair dealing.

39. In carrying out their contract with Plaintiff, as alleged aforesaid, Control violated and breached of the implied covenant in their contract that they would deal fairly and in good faith with Plaintiff.

40. As a result of Control's breaches of good faith and refusal to conduct themselves fairly in carrying out the terms of their contract with Plaintiff, Plaintiff has suffered damages.

WHEREFORE, the Plaintiff demands judgment against Defendant Control Services, LLC as follows:

    a. For compensatory damages;

    b. For punitive damages;

    c. For interest and costs of suit;

    d. For attorneys' fees; and

    e. For any and all such other relief as the Court deems just and equitable.

## COUNT SIX
### (Promissory Estoppel)

41. Plaintiff repeats and realleges the preceding allegations as if set forth at length herein.

42. In the course of cutting and sawing openings for windows and providing related services to the Project, Control and Hollister promised Apple that they would pay Apple for its work.

43. Control and Hollister made these promises with the expectation that Apple would rely thereon, specifically by continuing to complete work at the Project.

44. Each and every time that Control and/or Hollister or its/their agents promised to make payment for services completed at the Project, that promise was made with the intention that Apple would rely thereon.

45. Apple reasonably relied upon Control and Hollister's promises by completing work at the Project for which it was not paid.

46. Apple was damaged as a result of its reliance because Apple remains unpaid for work valued at $471,082.80.

WHEREFORE, the **Plaintiff** demands judgment against Defendant Control Services, LLC and Hollister Construction Services, LLC as follows:

a. For compensatory damages;

b. For punitive damages;

c. For interest and costs of suit;

d. For attorneys' fees; and

e. For any and all such other relief as the Court deems just and equitable.

**COUNT SEVEN**
**(Negligent Misrepresentation)**

47. Plaintiff repeats and realleges all of the preceding paragraphs and incorporates the same by reference as if set forth in full herein.

48. During the course of Apple's work at the Project, Control and Hollister repeatedly conveyed to Apple, both explicitly and implicitly, that they would make payments to Apple for work completed at the Project, including for the growing balance under the Contract and change orders.

49. Control and Hollister were, at the very least, negligent in making these promises because Control and Hollister were aware they lacked the funds in relation to the Project to make the promised payments, and had no intention of making the promised payments using its/their own funds unrelated to the Project.

50. Apple justifiably relied upon the misrepresentations and omissions of Control and Hollister, and was damaged as a result, by continuing to complete work at the Project, for which Apple has not been paid.

10

WHEREFORE, the Plaintiff demands judgment against Defendant Control Services, LLC and Hollister Construction Services, LLC as follows:

a. For compensatory damages;

b. For punitive damages;

c. For interest and costs of suit;

d. For attorneys' fees; and

e. For any and all such other relief as the Court deems just and equitable.

## COUNT EIGHT
### (Quantum Meruit)

51. Plaintiff repeats and realleges the preceding allegations as if set forth at length herein.

52. Apple completed work at the Project in good faith.

53. Control and Hollister accepted Apple's work and promised to pay Apple for the work if Apple continued on with the Project despite accumulating unpaid invoices.

54. Apple had an expectation that it would be paid based upon the Contract and change orders, as well as Control and Hollister's repeated promises to make payment.

55. The reasonable value of the work for which Apple has not been paid is $471,082.80, and Apple has been damaged in the amount.

WHEREFORE, the Plaintiff demands judgment against Defendant Control Services, LLC and Hollister Construction Services, LLC as follows:

a. For compensatory damages;

b. For punitive damages;

11

c. For interest and costs of suit;

d. For attorneys' fees; and

e. For any and all such other relief as the Court deems just and equitable.

## COUNT NINE
### (Equitable Estoppel)

56. Plaintiff repeats and realleges the preceding allegations as if set forth at length herein.

57. Control and Hollister implicitly and explicitly told, and conveyed to Apple through its their conduct, that they would make payments to Apple for work completed at the Project pursuant to the Contract and the change orders.

58. Control and Hollister's behavior induced Apple to rely upon Control and Hollister's words and conduct by continuing to complete work at the Project.

59. As a result of, and in reliance on, Control and Hollister's words and conduct, Apple was damaged because it completed work for which it has not been paid, and for which it has had to pay for labor, when the work would not have otherwise been completed.

WHEREFORE, the Plaintiff demands judgment against Defendant Control Services, LLC and Hollister Construction Services, LLC as follows:

a. For compensatory damages;

b. For punitive damages;

c. For interest and costs of suit;

d. For attorneys' fees; and

12

e. For any and all such other relief as the Court deems just and equitable.

LAW OFFICE OF BART J. KLEIN
Attorneys for Plaintiff

Dated: August 21, 2018

Bart J. Klein


## CERTIFICATION OF COMPLIANCE WITH R. 1:38-7(c)

I certify the Confidential Personal Identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

LAW OFFICE OF BART J. KLEIN
Attorneys for Plaintiff

Dated: August 21, 2018

Bart J. Klein


## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Bart J. Klein is hereby designated as trial counsel for Plaintiff.

LAW OFFICE OF BART J. KLEIN
Attorneys for Plaintiff

Dated: August 21, 2018

Bart J. Klein


## R.4:5-1 CERTIFICATION

1. Pursuant to R.4:5-1, the undersigned hereby certifies that the matter in controversy is not the subject of any other action pending in any Court or arbitration proceeding and no other Court action or arbitration proceeding is currently contemplated.

2. To the best of my knowledge, there are no other parties who should be joined in this action at this time.

13

ESX-L-004787-18  08/21/2018 11:47:41 AM  Pg 14 of 14 Trans ID: LCV20181450940

I certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements are willfully false, I am subject to punishment.

LAW OFFICE OF BART J. KLEIN
Attorneys for Plaintiff

Dated:  August 21, 2018

Bart J. Klein

# EXHIBIT B

**RIKER
DANZIG
SCHERER
HYLAND
PERRETTI** LLP

A T T O R N E Y S   A T   L A W

**Nicholas Racioppi, Jr.**
Partner

<u>Direct:</u>
t: 973.451.8492
f: 973.451.8608
nracioppi@riker.com

Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981

January 2, 2020

**Via Federal Express & E-Mail**

M. Murphy Durkin, Esq.
Durkin & Durkin LLC
1120 Bloomfield Avenue
P.O. Box 1289
West Caldwell, NJ 07007-9452
mdurkin@durkinlawfirm.com

Re:    Dehn Bros. Fire Protection, Inc. Construction Lien Claim
       **Demand for Discharge of Forfeited Lien**
       **Pursuant to N.J.S.A. 2A:44A-30**

Dear Mr. Durkin:

This letter is in follow up to that certain correspondence to you from Joseph L. Schwartz, Esq. of Riker Danzig Scherer Hyland Perretti LLP dated December 23, 2019. Formal demand is hereby made upon your client, Dehn Bros. Fire Protection, Inc. ("Claimant") for the immediate discharge of the Construction Lien Claim (the "Lien") filed by Claimant on or about December 11, 2019 against Newark Warehouse Redevelopment Company, LLC ("Redevelopment"), Newark Warehouse Urban Renewal LLC ("Renewal"; Redevelopment and Renewal collectively referred to as "NW Entities") and the real property known as Block 159.01, Lot 11 of the Tax Map for the City of Newark (the "Property") owned by Redevelopment. A copy of the Lien is enclosed for your reference.

The claims set forth in the Lien arise in connection with Claimant's written contract with Hollister Construction Services ("Hollister") for work performed at the Property. In the Lien, Claimant falsely asserts that the date of the provision of the last work, services, material or equipment for which payment is claimed is September 19, 2019, when in fact the date of the provision of the last work, services, material or equipment in connection with Claimant's contract with Hollister was in or about May 2019. On

Mr. Durkin
January 2, 2020
Page 2

information and belief, the work or services performed or the material or equipment furnished between May 2019 and September 19, 2019 were provided to a tenant at the Property and do not relate to Claimant's written contract with Hollister.

In accordance with the terms and provisions of N.J.S.A. 2A:44A-6, the lien claim must be lodged for record within 90 days following the date the last work, services, material or equipment was provided for which payment is claimed. As Claimant last performed work, services, material or equipment in connection with Claimant's written contract with Hollister in May 2019, the December 11, 2019 filing of the Lien was untimely and improper, and the Lien and its underlying lien claims have been forfeited.

In addition, the Lien filed against Redevelopment is "without basis", as Redevelopment was not a party to the contract with Hollister under which the claims set forth in the Lien arose. Hollister and Renewal, as ground tenant of the Property, entered into that a contract and Claimant is a sub-contractor thereunder. As the party who contracted with Hollister is a tenant, pursuant to N.J.S.A. 2A:44A-3(e), the lien claim shall attach to the leasehold estate of the tenant who contracts for improvement of the real property, and not to the fee interest of the owner (except in limited circumstances not present in this matter). Accordingly, the Lien and its underlying lien claims as against Redevelopment are "without basis" and are forfeited pursuant to the provisions of N.J.S.A. 2A:44A-15.

Discharge of a forfeited lien is a statutory requirement. Please be advised that, pursuant to N.J.S.A. 2A:44A-15 and N.J.S.A. 2A:44A-30, Claimant is required to discharge the Lien within 7 days following this demand, and if Claimant fails to discharge the Lien within 7 days of your receipt of this notice, Claimant shall be liable to each of the NW Entities for any and all of their respective court costs, legal expenses and damages incurred in defending or discharging the Lien.

Each of the NW Entities expressly reserves all of its rights and remedies in this matter, whether at law or in equity.

Please be guided accordingly.

Nicholas Racioppi, Jr.

cc:        Newark Warehouse Redevelopment Company, LLC
           Newark Warehouse Urban Renewal LLC