**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC**,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date: January 16, 2020, at 1:00 p.m.<br><br>Re: Docket No. 631 |

**NOTICE OF FILING OF REVISED AMENDED SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTOR AND SAXUM REAL ESTATE COMPANIES LLC**

1. The above-captioned debtor and debtor-in-possession (the "Debtor") filed a motion (the "Motion") seeking the *Entry of One or More Orders Approving Various Settlements and Compromises By and Among the Debtor, Project Owners and Subcontractors Pursuant to Fed. R. Bankr. P. 9019 and Granting Related Relief* on December 11. 2019 [Docket No. 631].

2. Attached hereto as Exhibit A is a clean and blacklined copy of the Amended Settlement Agreement with Saxum Real Estate Companies LLC ("Saxum"), which replaces Exhibit B to the Motion. The net amount of cash to be received by the Debtor from the proposed amended settlement with Saxum has increased by $78,964.40 to $511,929.62.

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

-2-

Dated:  January 10, 2020

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Arielle B. Adler, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
aadler@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
jkimble@lowenstein.com
krosen@lowenstein.com
mseymour@lowenstein.com

*Counsel to the Debtor and Debtor-in-Possession*

# Exhibit A

**AMENDED SETTLEMENT AGREEMENT BETWEEN HOLLISTER CONSTRUCTION SERVICES, LLC AND SAXUM REAL ESTATE COMPANIES LLC**

This Amended Settlement Agreement (the "Agreement") is entered into as of January 9, 2020, by and between Hollister Construction Services, LLC ("Debtor"), on the one hand, and Saxum Real Estate Companies LLC ("Saxum"), on the other hand.  Debtor and Saxum each may be referred to herein as a "Party," and collectively may be referred to herein as the "Parties."

WHEREAS, Debtor and Saxum are parties to that certain Revolving Line of Credit Agreement dated September 5, 2016 (the "Credit Agreement") and a Credit Line Note dated September 5, 2016, as modified by that certain First Note Modification Agreement (Allonge) dated January 1, 2018, that certain Second Note Modification Agreement (Allonge) dated January 1, 2019, and that certain Note Modification Agreement (Allonge) dated September, 2019 (as modified, the "Note" and, together with the Credit Agreement, the "Loan"), pursuant to which Saxum borrowed from the Debtor up to $900,000.00 on a revolving basis; and

WHEREAS, Saxum currently owes Debtor $739,656.71 under the terms of the Loan; and

WHEREAS, Debtor and SAF 40 Beechwood, LLC ("40 Beechwood"), a Saxum affiliate, are parties to that certain AIA Contract Between Owner and Construction Manager as Constructor, AIA Document A133 and that certain AIA Construction Contract, AIA Document A201 (collectively, the "Construction Contract") related to the development of real property known as 40 Beechwood Road, Summit, New Jersey (the "Project"); and

WHEREAS, 40 Beechwood asserts that Debtor has defaulted on the Construction Contract; and

WHEREAS, 40 Beechwood is an affiliate of Saxum and is the owner of the Project; and

37322/2
01/10/2020 **205699796**.1

WHEREAS, Debtor currently owes 40 Beechwood $227,727.09 pursuant to the terms of the Construction Contract on account of job cost savings related to the Project (the "Job Cost Savings"); and

WHEREAS, on September 11, 2019 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 19-27439 (MBK); and

WHEREAS, in connection with the Debtor's bankruptcy case, the Parties desire to settle all issues related to their respective claims and to avoid the time, expense and uncertainty of future claims-related litigation.

NOW, THEREFORE, subject to Bankruptcy Court approval and certain other contingencies set forth below, the Parties stipulate and agree as follows:

1. <u>Acknowledgement of Contract Amounts and Setoff Rights</u>.  The Parties acknowledge and agree that (a) $739,656.71 is currently due and owing from Saxum to the Debtor under the terms of the Loan, and (b) $227,727.09 is due and payable from the Debtor to 40 Beechwood under the Construction Contract.  Saxum has the right to offset the amount it is paying to 40 Beechwood pursuant to Section 18 of the Credit Agreement.

2. <u>Settlement</u> Payments.  Within ten (10) business days of the later to occur of (i) execution of this Agreement by all Parties, (ii) approval of the Agreement by the Bankruptcy Court, and (iii) satisfaction of all contingencies set forth in this Agreement, in full satisfaction of all financial obligations of Saxum and the Debtor under the Loan, Saxum shall make the following payments: (a) Saxum shall pay to 40 Beechwood the Job Cost Savings in the amount of $227,727.09, which amount shall be credited against the balance due on the Loan, and (b) Saxum

shall pay to the Debtor's bankruptcy estate $511,929.62 (collectively, the referenced payments shall be referred to herein as the "Settlement Amounts").

3. Contingencies. This Agreement and the settlement memorialized hereby are contingent upon: (i) approval of this Agreement by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019; and (ii) approval by the Bankruptcy Court of the concurrent settlement between the Debtor and 40 Beechwood. In the event the Debtor is unable to obtain Bankruptcy Court approval of the two settlements, as set forth above, nothing (including the Recitals) contained in this Agreement, any motion, or certification filed with the Court seeking approval of this Agreement, or any correspondence or other communications related to the negotiations, drafting, or approval of this Agreement, shall be argued or deemed to be an admission against any Party's interest in any litigation by and between the Parties, and the Parties shall be automatically returned to their respective positions *status quo ante*.

4. Release of Avoidance Claims. Upon payment of the Settlement Amounts, Debtor and its estate hereby waive and release any claims and causes of action they have or may have against Saxum pursuant to sections 547, 548 and/or 550 of the Bankruptcy Code.

5. Releases.

(a) Release by Saxum. Upon payment of the Settlement Amounts, Saxum and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (collectively, the "Saxum Releasors") do hereby release and forever discharge the Debtor and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (solely in their

3

capacities as owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns of the Debtor and not in their individual capacities or in any other capacity) (collectively, the "Debtor Releasees") of and from all manner of action and actions, cause and causes of action, suits, grievances, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, extents, executions, claims (as defined in section 101(5) of the Bankruptcy Code) and demands whatsoever in law or in equity, of any nature whatsoever, which the Saxum Releasors ever had, now have, or which the Saxum Releasors hereafter can, shall, or may have against the Debtor Releasees from the beginning of the world to the day of these presents, WHETHER THE FOREGOING WERE KNOWN OR UNKNOWN, ASSERTED OR NOT ASSERTED, ANTICIPATED OR UNANTICIPATED, FIXED OR CONTINGENT. Notwithstanding the foregoing, nothing herein shall be deemed to release the Debtor from liability for any breach of this Agreement.

(b)  Release by the Debtor. Upon payment of the Settlement Amounts, the Debtor and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (collectively, the "Debtor Releasors") do hereby release and forever discharge Saxum and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (solely in their capacities as owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns of

Saxum and not in their individual capacities or in any other capacity) (collectively, the "Saxum Releasees") of and from all manner of action and actions, cause and causes of action, suits, grievances, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, extents, executions, claims (as defined in section 101(5) of the Bankruptcy Code) and demands whatsoever in law or in equity, of any nature whatsoever, which the Debtor Releasors ever had, now have, or which the Debtor Releasors hereafter can, shall, or may have against the Saxum Releasees from the beginning of the world to the day of these presents, WHETHER THE FOREGOING WERE KNOWN OR UNKNOWN, ASSERTED OR NOT ASSERTED, ANTICIPATED OR UNANTICIPATED, FIXED OR CONTINGENT. Notwithstanding the foregoing, nothing herein shall be deemed to release Saxum from liability for any breach of this Agreement.

6. Releases as a Defense. Each of the Parties acknowledges and agrees that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

7. No Assignment of Released Claims. Each of the Parties represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

8. No Admission. The Parties acknowledge and agree that this Agreement is entered into for the purpose of avoiding the expense, delay, and uncertainty of litigation regarding their

5

respective claims under the Loan and the Construction Contract, and that nothing contained herein shall constitute, be introduced, treated, deemed, or otherwise interpreted or construed as:

    (a)    an admission, waiver, evidence, or concession by any of the Parties hereto of any liability or wrongdoing; or

    (b)    evidence in any judicial or arbitration proceeding between the Parties, except to enforce or defend the terms of this Agreement or in defense of any claim released in whole or in part by this Agreement.

9.    Governing Law.  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein in which case such federal law shall govern.

10.    Headings.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

11.    Counterparts.  This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

12.    No Oral Modification, Termination or Waiver.  This Agreement cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

13.    Further Assurances.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

14.    Successors and Assigns.  This Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns.

15. <u>Confidentiality of Settlement Communications</u>. The Parties agree that all settlement communications between the Parties are and shall remain confidential.

16. <u>Jurisdiction and Venue</u>. The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

17. <u>Corporate Authority</u>. Each Party represents and warrants to the other Party that the execution and delivery by the Party, and the performance by the Party of its obligations under this Agreement, are within the Party's lawful powers, have been duly authorized by all necessary action, and will not contravene any constitutional document or other instrument or agreement binding on the Party, or any law, regulation, judgment, order, or administrative action binding on the Party.

18. <u>Authorization</u>. Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement. The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

19.  Jointly Drafted. The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.

20.  Entire Agreement. This Agreement contains the entire agreement between the Parties as respects its subject matter. All discussions and agreements previously entertained between the Parties concerning the subject matter of the Agreement are merged into this Agreement. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provision shall not be affected hereby. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing, signed by all Parties hereunder.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____
    Chris Johnson, Head Coach
    399 Jefferson Road
    Parsippany, NJ 07054


**SAXUM REAL ESTATE COMPANIES LLC**

By: _____
    Name:
    Title:
    Address:

8

Case 19-27439-MBK    Doc 778    Filed 01/10/20    Entered 01/10/20 09:52:18    Desc Main
Document    Page 12 of 20

19.  **Jointly Drafted.** The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.

20.  **Entire Agreement.** This Agreement contains the entire agreement between the Parties as respects its subject matter. All discussions and agreements previously entertained between the Parties concerning the subject matter of the Agreement are merged into this Agreement. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provision shall not be affected hereby. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing, signed by all Parties hereunder.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____
Chris Johnson, Head Coach
399 Jefferson Road
Parsippany, NJ 07054

**SAXUM REAL ESTATE COMPANIES LLC**

By: _____
Name: Anthony Rinaldi
Title: Managing Member
Address: 354 Springfield Ave
Summit, NJ 07901

8

## AMENDED SETTLEMENT AGREEMENT BETWEEN HOLLISTER CONSTRUCTION SERVICES, LLC AND SAXUM REAL ESTATE COMPANIES LLC

This Amended Settlement Agreement (the "Agreement") is entered into as of January 9, 2020, by and between Hollister Construction Services, LLC ("Debtor"), on the one hand, and Saxum Real Estate Companies LLC ("Saxum"), on the other hand. Debtor and Saxum each may be referred to herein as a "Party," and collectively may be referred to herein as the "Parties."

WHEREAS, Debtor and Saxum are parties to that certain Revolving Line of Credit Agreement dated September 5, 2016 (the "Credit Agreement") and a Credit Line Note dated September 5, 2016, as modified by that certain First Note Modification Agreement (Allonge) dated January 1, 2018, that certain Second Note Modification Agreement (Allonge) dated January 1, 2019, and that certain Note Modification Agreement (Allonge) dated September, 2019 (as modified, the "Note" and, together with the Credit Agreement, the "Loan"), pursuant to which Saxum borrowed from the Debtor up to $900,000.00 on a revolving basis; and

WHEREAS, Saxum currently owes Debtor $739,656.71 under the terms of the Loan; and

WHEREAS, Debtor and SAF 40 Beechwood, LLC ("40 Beechwood"), a Saxum affiliate, are parties to that certain AIA Contract Between Owner and Construction Manager as Constructor, AIA Document A133 and that certain AIA Construction Contract, AIA Document A201 (collectively, the "Construction Contract") related to the development of real property known as 40 Beechwood Road, Summit, New Jersey (the "Project"); and

WHEREAS, 40 Beechwood asserts that Debtor has defaulted on the Construction Contract; and

WHEREAS, 40 Beechwood is an affiliate of Saxum and is the owner of the Project; and

WHEREAS, Debtor currently owes 40 Beechwood $227,727.09 pursuant to the terms of the Construction Contract on account of job cost savings related to the Project (the "Job Cost Savings"); and

WHEREAS, on September 11, 2019 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 19-27439 (MBK); and

WHEREAS, in connection with the Debtor's bankruptcy case, the Parties desire to settle all issues related to their respective claims and to avoid the time, expense and uncertainty of future claims-related litigation.

NOW, THEREFORE, subject to Bankruptcy Court approval and certain other contingencies set forth below, the Parties stipulate and agree as follows:

1. Acknowledgement of Contract Amounts and Setoff Rights. The Parties acknowledge and agree that (a) $739,656.71 is currently due and owing from Saxum to the Debtor under the terms of the Loan, and (b) $227,727.09 is due and payable from the Debtor to 40 Beechwood under the Construction Contract. Saxum has the right to offset the amount it is paying to 40 Beechwood pursuant to Section 18 of the Credit Agreement.

2. Settlement Payments. Within ten (10) business days of the later to occur of (i) execution of this Agreement by all Parties, (ii) approval of the Agreement by the Bankruptcy Court, and (iii) satisfaction of all contingencies set forth in this Agreement, in full satisfaction of all financial obligations of Saxum and the Debtor under the Loan, Saxum shall make the following payments: (a) Saxum shall pay to 40 Beechwood the Job Cost Savings in the amount of $227,727.09, which amount shall be credited against the balance due on the Loan, and (b) Saxum

shall pay to the Debtor's bankruptcy estate $511,929.62 (collectively, the referenced payments shall be referred to herein as the "Settlement Amounts").

3. <u>Contingencies</u>. This Agreement and the settlement memorialized hereby are contingent upon: (i) approval of this Agreement by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019; and (ii) approval by the Bankruptcy Court of the concurrent settlement between the Debtor and 40 Beechwood. In the event the Debtor is unable to obtain Bankruptcy Court approval of the two settlements, as set forth above, nothing (including the Recitals) contained in this Agreement, any motion, or certification filed with the Court seeking approval of this Agreement, or any correspondence or other communications related to the negotiations, drafting, or approval of this Agreement, shall be argued or deemed to be an admission against any Party's interest in any litigation by and between the Parties, and the Parties shall be automatically returned to their respective positions *status quo ante*.

4. <u>Release of Avoidance Claims</u>. Upon payment of the Settlement Amounts, Debtor and its estate hereby waive and release any claims and causes of action they have or may have against Saxum pursuant to sections 547, 548 and/or 550 of the Bankruptcy Code.

5. <u>Releases</u>.

(a) <u>Release by Saxum</u>. Upon payment of the Settlement Amounts, Saxum and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (collectively, the "Saxum Releasors") do hereby release and forever discharge the Debtor and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (solely in their

capacities as owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns of the Debtor and not in their individual capacities or in any other capacity) (collectively, the "Debtor Releasees") of and from all manner of action and actions, cause and causes of action, suits, grievances, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, extents, executions, claims (as defined in section 101(5) of the Bankruptcy Code) and demands whatsoever in law or in equity, of any nature whatsoever, which the Saxum Releasors ever had, now have, or which the Saxum Releasors hereafter can, shall, or may have against the Debtor Releasees from the beginning of the world to the day of these presents, WHETHER THE FOREGOING WERE KNOWN OR UNKNOWN, ASSERTED OR NOT ASSERTED, ANTICIPATED OR UNANTICIPATED, FIXED OR CONTINGENT. Notwithstanding the foregoing, nothing herein shall be deemed to release the Debtor from liability for any breach of this Agreement.

(b)  Release by the Debtor. Upon payment of the Settlement Amounts, the Debtor and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (collectively, the "Debtor Releasors") do hereby release and forever discharge Saxum and its past, present and future owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns (solely in their capacities as owners, principals, partners, shareholders, directors, employees, managers, officers, members, affiliates, representatives, attorneys, trustees, agents, predecessors and successors in interest and assigns of

Saxum and not in their individual capacities or in any other capacity) (collectively, the "Saxum Releasees") of and from all manner of action and actions, cause and causes of action, suits, grievances, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, extents, executions, claims (as defined in section 101(5) of the Bankruptcy Code) and demands whatsoever in law or in equity, of any nature whatsoever, which the Debtor Releasors ever had, now have, or which the Debtor Releasors hereafter can, shall, or may have against the Saxum Releasees from the beginning of the world to the day of these presents, WHETHER THE FOREGOING WERE KNOWN OR UNKNOWN, ASSERTED OR NOT ASSERTED, ANTICIPATED OR UNANTICIPATED, FIXED OR CONTINGENT. Notwithstanding the foregoing, nothing herein shall be deemed to release Saxum from liability for any breach of this Agreement.

6. <u>Releases as a Defense</u>. Each of the Parties acknowledges and agrees that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

7. <u>No Assignment of Released Claims</u>. Each of the Parties represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

8. <u>No Admission</u>. The Parties acknowledge and agree that this Agreement is entered into for the purpose of avoiding the expense, delay, and uncertainty of litigation regarding their

5

respective claims under the Loan and the Construction Contract, and that nothing contained herein shall constitute, be introduced, treated, deemed, or otherwise interpreted or construed as:

    (a)    an admission, waiver, evidence, or concession by any of the Parties hereto of any liability or wrongdoing; or

    (b)    evidence in any judicial or arbitration proceeding between the Parties, except to enforce or defend the terms of this Agreement or in defense of any claim released in whole or in part by this Agreement.

9.    Governing Law. This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein in which case such federal law shall govern.

10.    Headings. The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

11.    Counterparts. This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

12.    No Oral Modification, Termination or Waiver. This Agreement cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

13.    Further Assurances. The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

14.    Successors and Assigns. This Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns.

15. <u>Confidentiality of Settlement Communications</u>. The Parties agree that all settlement communications between the Parties are and shall remain confidential.

16. <u>Jurisdiction and Venue</u>. The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

17. <u>Corporate Authority</u>. Each Party represents and warrants to the other Party that the execution and delivery by the Party, and the performance by the Party of its obligations under this Agreement, are within the Party's lawful powers, have been duly authorized by all necessary action, and will not contravene any constitutional document or other instrument or agreement binding on the Party, or any law, regulation, judgment, order, or administrative action binding on the Party.

18. <u>Authorization</u>. Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement. The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

19. <u>Jointly Drafted</u>. The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.

20. <u>Entire Agreement</u>. This Agreement contains the entire agreement between the Parties as respects its subject matter. All discussions and agreements previously entertained between the Parties concerning the subject matter of the Agreement are merged into this Agreement. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provision shall not be affected hereby. This Agreement may not be modified or amended, nor any of its provisions waived, except by an instrument in writing, signed by all Parties hereunder.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____
    Chris Johnson, Head Coach
    399 Jefferson Road
    Parsippany, NJ 07054


**SAXUM REAL ESTATE COMPANIES LLC**

By: _____
    Name:
    Title:
    Address: