**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| **HOLLISTER CONSTRUCTION SERVICES, LLC,**[1] | Case No. 19-27439 (MBK) |
| | Requested Hearing Date: January 23, 2020 at 10:00 a.m. |
| Debtor. | |

**DEBTOR'S MOTION FOR ENTRY AN ORDER APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG THE DEBTOR, KNOPF LEASING COMPANY, L.P., AND CERTAIN SUBCONTRACTORS PURSUANT TO FED. R. BANKR. P. 9019**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby submits this motion (this "Motion") seeking the entry of one or more proposed orders (the "Proposed Order"), substantially in the form submitted herewith, approving the Settlement Agreement[2] between the Debtor, Knopf Leasing Company, L.P. ("Knopf Leasing") and certain subcontractors as more particularly described herein pursuant to Fed. R. Bankr. P. 9019. In support of this Motion, the Debtor states as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).
[2] Terms not otherwise defined herein shall have the meanings afforded to them in the Settlement Agreement.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.        Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3.        The Debtor consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4.        The statutory predicates for the relief requested in this Motion are sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5.        On September 11, 2019 (the "Petition Date"), the above-captioned Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case").  The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner.

6.        On September 23, 2019, the Office of the United States Trustee appointed a statutory committee in this Chapter 11 Case (the "Committee").

7.        Additional details regarding the Debtor's business and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Brendan Murray in Support of First Day Relief* [Docket No. 15].

## THE DEBTOR'S BUSINESS OPERATIONS

8.      The Debtor operates a substantial construction business.  In calendar year 2018, the Debtor collected approximately $292,034,763 in gross revenue.  The Debtor depends on payments from project owners upon completion of the project and at certain stages of the project.  The Debtor's receivables from those project owners are assets of the Debtor and property of its bankruptcy estate.  If the Debtor cannot finish a project, it may be subject to future obligations and additional liabilities.  Further, the Debtor is concerned that various subcontractors, materialmen and other suppliers may lien job sites or continue to prosecute their construction liens to collect on monies due for pre-petition services and/or goods supplied by filing or foreclosing on construction liens against the real property on which the Debtor does or did supervise construction and development despite the automatic stay (which may not apply in certain circumstances).  Only through ongoing operations will the Debtor be able to realize the substantial amounts due from open accounts receivable.

## THE SETTLEMENTS

9.      As this Court is aware, the Debtor's ability to continue to operate in chapter 11 hinges on its ability to negotiate global settlements with most, if not all of the project owners and project stakeholders, as well as the subcontractors on each of the Debtor's ongoing construction projects.  These settlements, if ultimately approved by the Court, will allow the Debtor to complete certain of its ongoing construction projects, and will provide the necessary cash flow and funding needed for the Debtor's continued operations and repayment of its debt to PNC Bank.

10.      In the time since the Petition Date, the Debtor and its professionals have been diligently and actively engaged in negotiations with project owners and subcontractors regarding the Debtor's ongoing construction projects in an attempt to reach global settlements on certain projects.  As a result of ongoing negotiations, the Debtor has reached a settlement (the "Settlement") with Knopf Leasing (the "Project Owner") and certain subcontractors as set forth below.

11.    Attached hereto as **Exhibit 1** is the Settlement Agreement between the Debtor and Knopf Leasing, relating to that certain project located at 110 York Street, Brooklyn, New York (the "Project"). **Exhibit A** to this Settlement Agreement sets forth the pertinent financial details regarding the proposed payment of certain pre-petition amounts due to certain subcontractors on the Project. The Debtor has determined it is economically feasible to continue construction on to completion of the Project. The Debtor's estate will net approximately $213,678 as a result of entering into the Settlement with the Project Owner.

12.    Through this Motion, the Debtor seeks approval of the above Settlement with Knopf Leasing and the related subcontractors on the Project.

13.    Pursuant to the Settlement Agreement,[3] the parties have agreed, *inter alia*, that in order to avoid damages to the Debtor and Project Owner that would arise from termination of the Contract, subject to Bankruptcy Court approval, the Debtor shall continue to perform under the Contract, as modified by the Settlement Agreement. Subject to the specific terms identified in the Settlement Agreement, the Settlement between the Debtor, Project Owner, and certain subcontractors generally provides:

 a.    The payment to subcontractors in the ordinary course of business for all post-petition work and post-petition retainage on the Project without any discount or reduction in amounts owed;

 b.    The establishment of a mechanism and timetable for payment of 40% of the amounts owed to subcontractors for work performed prior to the Petition Date and the identification of such 40% amounts on **Exhibit A** of the Settlement Agreement;

 c.    The establishment of a mechanism and timetable for payment of up to 40% of the prepetition retainage payments owed to subcontractors for work

---

[3] This Motion contains a summary of the settlement terms only. In the event of any conflict between the terms of the Settlement Agreement and this Motion, the Settlement Agreement shall govern.

performed prior to the Petition Date in accordance with the underlying Contracts and the identification of such 40% amounts on **Exhibit A** to the Settlement Agreement;

d. The establishment of a mechanism for payments due by the Project Owner to the Debtor;

e. All payments provided for in the Settlement Agreement will flow through an escrow account at PNC governed by a separate Escrow Agreement between the Debtor and an escrow agent;

f. The agreement of the subcontractors to perform all remaining work, if any, on the Project on a go-forward basis;

g. The agreement of the subcontractors to take a 60% reduction on the amount of any receivable, including retainage, due to them for the goods and/or services provided to the Project prior to the Petition Date;

h. As a condition to the payments set forth in the Settlement Agreement, it is required that each subcontractor release any liens filed against the Project;

i. In exchange for the payments set for in the Settlement Agreement, the agreement of each subcontractor to waive and release the right to assert any claim against the Project Owner and the Project and the agreement of each subcontractor to accept in full satisfaction of its claim for goods/services provided prior to the Petition Date, the 40% amounts provided for by the Settlement Agreement;

j. Each subcontractor retains the right to file a general unsecured proof of claim against the Debtor for the 60% reduction in amounts owed for prepetition goods/services provided and/or work performed on the Project;

k. A release and waiver by the Debtor of any and all claims or causes of action it may have against subcontractors to recover alleged preferential payments pursuant to section 547 and 550 of the Bankruptcy Code relating to or

arising out of the Project.  The Debtor paid a total of $63,912 to creditors relating to the Project within the 90-day period before the Petition Date;

l.      The granting of mutual releases by and between the Project Owner, the Debtor, the subcontractors arising out of or related to the Contract or Project; and

m.      Project Owner and the subcontractors release and any all claims against PNC Bank.

14.      As part of the finalization of the Settlement Agreement, the Debtor communicated with PNC Bank with respect to the specific terms of the Settlement Agreement.  PNC has signed off on the Settlement Agreement with the Project Owner.

## RELIEF REQUESTED

15.      By this Motion, the Debtor seeks the entry of an order (i) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019 and (ii) authorizing the Debtor to continue to perform under the Contract between the Debtor and Project Owner, as modified by the Settlement Agreement.

## BASIS FOR RELIEF

16.      Bankruptcy Rule 9019(a) provides, in pertinent part, that upon a motion, and after notice and a hearing, the Court may approve a compromise or settlement.  Approval of a settlement remains in the sound discretion of the Bankruptcy Court.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).  In determining whether to approve a settlement, the Court should determine whether the proposed settlement is in the best interests of the estate.  *Id; see also, In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).

17.      The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (noting that

"[c]ompromises are 'a normal part of the process of reorganization.'") (citation omitted), *reh'g denied*, 391 U.S. 909 (1968).

18.     Further, the settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged.  *See In re Penn Central Transp.*, 596 F.2d 1102 (3d Cir. 1979); *In re Mavrode*, 205 B.R. 716, 719 (Bankr. D.N.J. 1997).

19.     The Third Circuit, applying *TMT Trailer* in the context of a settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

20.     In determining whether to approve a settlement, the Bankruptcy Court should not substitute its judgment for that of the debtor and the parties.  *See Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803.  The Bankruptcy Court is not to decide the numerous questions of fact or law raised by the controversy, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *Cosoffi v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608, 613 (2nd Cir.) (citations omitted), *cert denied*, 464 U.S. 822 (1983); *Mavrode*, 205 B.R. at 720.  Thus, in reaching its decision regarding the approval of the proposed compromise this Court need not conclusively determine the claims, which are the subject of the compromise, nor find that the compromise constitutes the best result obtainable.  *See W.T. Grant*, 699 F.2d at 613.

21.     The Debtor respectfully submits that the proposed Settlement is fair and prudent, is in the best interests of the estate, and falls within the "range of reasonableness." With respect to Settlement, the Debtor and Project Owner agree that the Debtor is presently in default under the Contract and that the Project Owner believes it has the right to seek to terminate the Contract.  If the Contract was terminated, the Debtor would lose the remaining amount of contract revenue and retainage owed to it under the Contract.  The Project Owner could also suffer substantial damages,

including the costs of obtaining a replacement contractor and additional delay in completion of the Project. The Settlement Agreement will allow the Debtor to finish the Project in accordance with the terms of the Contract, as modified by the Settlement Agreement. Thus, the Settlement Agreement will benefit the Debtor's estate and its creditors and provide the necessary cash flow for the Debtor to continue to operate in this Chapter 11 Case. As previously indicated, the Debtor's estate will net approximately $213,678 as a result of the Settlement. In addition, future proceedings with the Project could be protracted and expensive, may require the resolution of complex issues and involve substantial uncertainties and risks inherent in litigation. With these forgoing considerations in mind, the Debtor has concluded that the Settlement Agreement is (i) fair and equitable, (ii) a reasonable resolution with respect to the Project, (iii) in the best interests of the Debtor and its estate, and (iv) in the paramount interests of the Debtor's creditors.

22.    For the foregoing reasons, the Debtor submits that this Court should approve the Settlement Agreement with the Project Owner and certain subcontractors.

## WAIVER OF BANKRUPTCY RULES 6004 AND 6006

23.    The Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rules 6004(a) and 6006(c), and (ii) the stay of any order under Bankruptcy Rules 6004(h) and 6006(d), to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate and creditors.

## WAIVER OF MEMORANDUM OF LAW

24.    The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies is set forth herein and the Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

25.    No prior request for the relief sought in this Motion with respect to the Settlement Agreement has been made to this or any other court.

## **NOTICE**

26.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attention: Lauren E. Bielskie; (ii) counsel for PNC Bank, the Debtor's pre-petition secured lender, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman; (iii) counsel for the Committee, McManimon, Scotland & Baumann, LLC, 75 Livingston Avenue, Roseland, NJ 07068, Attention: Anthony Sodono, III, Esq., and Sam Della Fera, Esq.; (iv) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002; (v) Project Owner Knopf Leasing Company, L.P., and (vi) all subcontractors on the Projects that are the subject of the Settlement Agreement.  In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

## **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court enter the proposed order in the form submitted herewith, (i) approving the Settlement Agreement with the Project Owner and certain subcontractors and authorizing and directing the Debtor to perform its obligations under the Settlement Agreement; (ii) approving the mutual releases set forth in the Settlement Agreement, and (iii) granting the Debtor such other and further relief as the Court deems just and equitable.

Dated:  January 15, 2020                    Respectfully submitted,

                                             **LOWENSTEIN SANDLER LLP**

                                             /s/ *Kenneth A. Rosen*
                                             Kenneth A. Rosen, Esq.
                                             Bruce Buechler, Esq.
                                             Joseph J. DiPasquale, Esq.
                                             Mary E. Seymour, Esq.
                                             Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
                                             Arielle B. Adler, Esq.
                                             One Lowenstein Drive
                                             Roseland, New Jersey 07068

(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to the Debtor and
Debtor-in-Possession*

## Exhibit 1
## Knopf Leasing Company, L.P. Settlement Agreement

## SETTLEMENT AGREEMENT BY AND BETWEEN HOLLISTER CONSTRUCTION SERVICES, LLC, THE PROJECT OWNER AND CERTAIN SUBCONTRACTORS

This Settlement Agreement (the "Agreement") is entered into as of January 13, 2020, by and between Hollister Construction Services, LLC, as construction manager (the "Debtor"); Knopf Leasing Company, L.P. as Owner ("Owner"); and each of the subcontractors identified on Exhibit A hereto (the "Subcontractors")(each a "Party," and collectively, the "Parties").

WHEREAS, Debtor and Owner are parties to certain contract documents dated as of February 27, 2017, including, without limitation, that certain AIA A103 and A201 Agreement for Construction Management Services, and all exhibits annexed thereto, and all subsequent riders, modifications, and change orders (collectively, the "Contract"),[1] relating to construction of Delta Storage, 110 York Street, Brooklyn, NY 11201 (the "Project"); and

WHEREAS, on September 11, 2019 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 19-27439 (MBK); and

WHEREAS, the Owner believes it has a right to terminate the Contract for cause and otherwise asserts that the Debtor has defaulted on the Contract; and

WHEREAS,   the Subcontractors provided goods and/or services to the Project prior to the Petition Date and are owed money as of the Petition Date in the amounts set forth on Exhibit A hereto; and

WHEREAS, PNC Bank, N.A. ("PNC") is the Debtor's primary secured creditor and holds liens upon and security interests in all assets of the Debtor, including all accounts receivable and all contracts of the Debtor; and

---

[1]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Contract.

WHEREAS, if the Contract was terminated, the Debtor may lose a substantial amount of contract revenue and retainage related to the Project; and

WHEREAS, the Owner may suffer damages attendant with delay and completion costs due if the Owner exercised its rights to terminate the Contract and if the Project is not completed in a timely manner; and

WHEREAS, the Parties are desirous of finishing the Project forthwith in accordance with the terms of the Contract, as modified herein, and it is in the best interests of the Debtor, its estate and creditors to complete the Project as soon as possible and with as little delay as possible,

NOW, THEREFORE, subject to Bankruptcy Court approval, the Parties stipulate and agree as follows:

1.    Acknowledgement of Contract Amounts.    The Parties acknowledge and agree that: (a) $148,416.11  is due and payable to the Debtor for work performed under the Contract as of September 11, 2019, ("Pre-Petition Work"), (b) the Owner is currently holding as security under the Contract an additional $199,733.01 as retainage ("Pre-Petition Retainage") which will be due to the Debtor upon completion of the Contract, as modified herein, (c) there is approximately $0.00 of incomplete work which costs will be due and payable if the Project is completed by the Debtor ("Post-Petition Work"), and (d) there will be approximately $0.00 of additional retainage held for Post-Petition Work ("Post-Petition Retainage"). The Debtor represents that all of its subcontractors on the Project are listed on Exhibit hereto.

2.    Acknowledgement of Defaults.    The Parties acknowledge and agree that (a) the Debtor is presently in default under the Contract and that Owner has the right to seek to terminate the Contract, (b) if the Contract were terminated as a result of Debtor's alleged defaults, the Debtor would suffer an economic loss, and (c) Owner will suffer damages in the event it is forced to terminate the Contract and replace the Debtor, including, without limitation, the costs of

2

a replacement contractor and additional attendant delay, which costs could reduce or exhaust any remaining amounts claimed to be presently due to the Debtor under the Contract.

3.      Modification of the Contract. In order to avoid the damages to the Debtor and Owner described above, and subject to Bankruptcy Court approval, the Debtor agrees to perform its obligations under the Contract as modified herein.   Approval of this Agreement by the Bankruptcy Court shall be deemed approval of the Contract as modified herein.

4.      Waiver of Defaults and Delay Claims by Owner.     Upon entry of an Order of the Bankruptcy Court approving this Agreement, Owner waives any defaults or other monetary claims for delay existing as of the date of Owner's execution of this Agreement, without prejudice to any other rights and remedies of the Owner under the Contract as modified by this Agreement which may arise from and after Owner's execution of this Agreement.

5.      Project Escrow Account. Prior to the execution of this Agreement, Debtor shall establish an escrow account with PNC ("Escrow Account") administered by an independent funds control agent pursuant to a separate Escrow Agreement with PNC. All funds deposited into the Escrow Account shall remain Owner's property until such time as the conditions for the Owner's release have been satisfied. After the release by Owner per paragraph 12 below, the Debtor's interest in such funds will be subject to PNC's existing liens on cash collateral of the Debtor, and all funds paid pursuant to this Agreement or under the Contract shall be paid through the Escrow Account.

6.      Payment to Subcontractors for Work Performed or Goods Provided After the Petition Date ("Post-Petition Work"). Post-Petition Work and Post-Petition Retainage shall be paid pursuant to the Contract in the ordinary course of business without any discount or reduction due to Debtor's bankruptcy. Notwithstanding anything to the contrary in the Contract or herein, the Debtor will continue to supervise its Subcontractors on the Project through completion of same

and authorizes the Owner to pay the Subcontractors through the Escrow Account the amounts due to them for services and/or goods provided after the Petition Date as necessary to complete the Project in the ordinary course of work and upon submission by the Subcontractors of all normal and customary documentation to the Debtor and/or Owner and, if required, to obtain either a temporary or final certificate of occupancy for the Project. All such payments to the Subcontractors shall be subject to prior approval of the Debtor, which approval shall not be unreasonably withheld or delayed.  Amounts held as Post-Petition Retainage shall be held by Owner and released through the Escrow Account pursuant to the Contract in the regular course of business.

7.    Mechanism for Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date ("Pre-Petition Work").  Upon: (a) the release of all filed and asserted liens on the Project's real property and any improvements thereon, and (b) five (5) business days of the entry of an Order (the "Approval Order") of the Bankruptcy Court approving of this Agreement, the Owner will deposit into the Escrow Account an amount representing the sum of 25% of the total amount due for the Pre-Petition Work (the "Initial Payment").  Within seven (7) business days from receipt of the Initial Payment, the escrow agent shall release 40% of the amount attributable to the Subcontractors from the Initial Payment in the amounts set forth in Exhibit A hereto, on account of their respective prepetition claims.  The Debtor's interest in the remaining balance after the release by Owner per paragraph 12 from the Initial Payment shall only be disbursed in accordance with the cash collateral order then in effect (as the case may be, the "Current Cash Collateral Order") or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.  Within fifteen (15) business days of the entry of the Approval Order, the Owner will deposit into the Escrow Account an amount representing the sum of 75% of the total amount due for the Pre-Petition Work set forth on Exhibit A hereto (the "Additional Payment").  Within seven (7) business

days of completion of the Project and the Subcontractors providing all required closeout documentation, the escrow agent shall release the remaining 75% of the Pre-Petition Work per Exhibit A. Said money will be paid directly to the individual Subcontractors from the Escrow Account in the amounts set forth on Exhibit A, provided the individual Subcontractors have submitted to owner all normal and customary documentation, signoffs, and, if required, a Final Certificate of Occupancy for the Project. The Subcontractors will release all filed and asserted liens on the Project's real property and any improvements thereon within five (5) business days of the entry of an Order of the Bankruptcy Court approving of the Agreement. The Debtor's interest in the remaining balance from the Additional Payment shall only be disbursed after the release provided by Owner under paragraph 12 in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

8.      Mechanism for Retainage Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date.  Pre-Petition Retainage shall be paid by the Owner, when due under the Contract, in such amounts held against Subcontractors set forth in Exhibit A hereto, through the Escrow Account, 40% to the Subcontractors pursuant to Exhibit A, for application to the balance, if any, due to each Subcontractor on account of its prepetition claim. The Debtor's interest in remaining balance from the Pre-Petition Retainage shall only be disbursed in accordance after the release provided by Owner under Paragraph 12 with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

9.      Subcontractor Release and Unsecured Claim.  By executing this Agreement, the Subcontractors agree to perform all remaining work on the Project on a go forward basis as set forth herein, and specifically agree to a 60% discount on the amount of receivable, including

5

retainage, due to them for goods and/or services provided on the Owner's Project prior to the Petition Date. Upon payment of all monies due pursuant to this Agreement, each Subcontractor waives and releases any right to assert any claim (as defined in section 101(5) of the Bankruptcy Code) against the Owner and the Project for this 60% amount, and agrees to accept in full and satisfaction of its claim for goods and/or services prior to the Petition Date the 40% placed in escrow as provided for above. The Subcontractor will be allowed a general unsecured claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

10.  <u>Release of Preferences.</u>  Upon payment of all monies due pursuant to this Agreement and the release of all liens by Subcontractors, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and seek to avoid any alleged preference payments under sections 547 and 550 of the Bankruptcy Code, relating to or arising out of the Project

11.  <u>Payment Due to Debtor.</u>  The Owner shall pay all amounts for Pre-Petition Work due to the Debtor under this Agreement and the Contract, inclusive of retainage, into the Escrow Account through the funding of the Initial Payment and the Additional Payment as set forth in Article 7. The Owner shall pay all amounts for Pre-Petition Retainage, into the Escrow Account in the regular course of business pursuant to the Contract. The Debtor's interest in the remaining funds after the release by Owner per Paragraph 12in the Escrow Account shall only be disbursed in accordance with Cash Collateral Orders entered by the Bankruptcy Court or a further Order of the Bankruptcy Court.

12.  <u>Releases</u>.

(a)  <u>Release by Owner</u>.  Upon payment of all monies due pursuant to this Agreement, the Owner and its parents, subsidiaries, divisions and affiliates, and the officers,

directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner Releasors") do hereby release and forever discharge the Debtor and its officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Debtor Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Debtor Released Parties, arising out of or related to the Contract or the Project.

(b)    Release by the Debtor. Upon payment of all monies due pursuant to this Agreement, the Debtor and its officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "Debtor Releasors") do hereby release and forever discharge the Owner and its parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "Owner Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Debtor Releasors, or any of them, ever had or now has against any one or more of the Owner Released Parties, arising out of or related to the Contract or the Project.

(c).    Release by Subcontractors.  Upon payment of all monies due pursuant to this Agreement, the Subcontractors and their parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Subcontractor Releasors") do hereby release and forever discharge the Owner and Debtor and their respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (, the "Owner and Debtor Released

Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Subcontractor Releasors, or any of them, ever had or now has against any one or more of the Owner and Debtor Released Parties, arising out of or related to the Contract or the Project.  Subcontractor agrees to indemnify and hold the Owner and Debtor Released Parties harmless against any liens or claims by any supplier, materialmen, vendor, subcontractor of any tier, employee, or other claimant asserting any rights against Owner and Debtor Released Parties by virtue of separate agreement with Subcontractor.

(d)  Release of PNC Bank.  Except as expressly set forth in this Agreement, subject only to the disbursement of funds as provided for in this Agreement, each Owner and Subcontractor and their respective parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Subcontractor Releasors") do hereby release and forever discharge PNC Bank and its respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "PNC Bank Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner and Subcontractor Releasors, or any of them, ever had or now has against any of the PNC Bank Released Parties, arising out of or related to the Contract or the Project.

13.    Releases as a Defense.  Each of the Owner, Debtor and Subcontractor acknowledge and agree that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and

(ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

14.    No Assignment of Released Claims.  Each of the Owner, Debtor and Subcontractor represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

15.    Governing Law.  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

16.    Contract as Modified In Full Force and Effect.  Except as modified herein, the Contract, as modified by this Agreement, shall be binding upon, and shall inure to the benefit of, the Parties hereto and remains in full force and effect.

17.    Headings.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

18.    Counterparts.  This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

19.    No Oral Modification, Termination or Waiver.  This Agreement cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

20.    Further Assurances.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the

provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

21.     Jurisdiction and Venue. The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

22.     Authorization. Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement. The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

23.     Jointly Drafted. The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties. The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____

10

CHRIS JOHNSON  Head Coach
~~Brendan Murray, President~~
399 Jefferson Road
Parsippany, NJ 07054

**OWNER**
Knopf Leasing Company, L.P.

By:

Name: VINCENT DiDOMENICO
Title: PARTNER

**SUBCONTRACTOR**
Acro Contracting Corp

By: _____

Name: BRian   Newman       10-8-2019
Title: President
Address: PO Box 92
Eastchester, NY 10709.

**SUBCONTRACTOR**

Ambient Flooring

By: _Thomas Stapleton_

Name: Tom STAPLETON

Title: PARTNER

Address: 1116 EDGEWATER AVE

RIDGEFIELD

NJ 07657

**SUBCONTRACTOR**
Ascape Landscaping and Construction

By: _____

Name: Stuart Charting
Title: president
Address: 634 Route 303
        Blauvelt, NY 10983

**SUBCONTRACTOR**

Danch Floors

*Glenn Centi*

By: _____

Name: Glenn Centi
Title: Owner
Address: 9 Boyd Lane Randolph NJ 07869

**SUBCONTRACTOR**
Five Borough NYC LLC

By: _____
    Name: Gary Valenti
    Title: Owner
    Address: 553 Lincoln Ave
                          SI NY 10306

SUBCONTRACTOR
Future Coatings Inc.

By: _____

Name: Karl Terrano

Title: VP

Address: 4637 77th St, Brooklyn, N.Y. 11209

SUBCONTRACTOR
Glass Systems Tech

By: _____

Name:
Title:
Address:

Mark Sokoloff

Vice President/Partner

Glass Systems Tech, LLC
465 "A" Veit Road
Huntingdon Valley, PA 19006
215-942-4527

**SUBCONTRACTOR**
Glowscape Generay VY-Coat

By: _____ *ira chaimovits* _____

    Name:
    Title:
    Address:

**SUBCONTRACTOR**
Infinity Painting, Co., Inc.

By: 

Name: Frank Naw
Title: President
Address: 1975 Richmond Terrace
Staten Island, NY 10302

Signature Pages to the Settlement Agreement By and Between Hollister Construction Services,
LLC, The Project Owner and Certain Contractors relating to the construction of Delta Storage, 110
York Street, Brooklyn, NY 11201

**SUBCONTRACTOR**

Janus International Group, LLC

By: _____

      Name:   Scott M Sannes

      Title:    CFO

      Address:  135 Janus International Blvd

                 Temple   GA   30179

**SUBCONTRACTOR**
Mainline Construction

By:

Name: Joseph Brazil
Title: President
Address: 1047 Delaware Avenue
Island Park, NY 11558

**SUBCONTRACTOR**
Major General Construction

By: _____

Name: Jason V Hejra

Title: President /OWER

Address: 147 09 88ᵗʰ Ave

Jamaica NY 11435

**SUBCONTRACTOR**

Maspeth Roofing & Contracting

By:

Name: JOHN SCHELONE

Title: President

Address: 10/8/19

**SUBCONTRACTOR**
NYCOM Electric

By: _____

Name: Haralambos Karas
Title: President
Address: 36-09 20ᵗʰ Avenue  Astoria NY 11105

**SUBCONTRACTOR**
Pentinco Group NYC Inc.

By: _____

  Name: George Georgilis
  Title: President
  Address:
  244-53 90 Avenue
  Bellerose, NY 11426

**SUBCONTRACTOR**
Reliance Mechanical Services

By:

Name: Jonathan Haraclo
Title: Vice President
Address:
95 Hoffman Lane Ste F
Islandia, NV 11749

**SUBCONTRACTOR**
SGC Construction Corp.

By: _____

Name: VINCHNZO COSTANZA

Title: PRES

Address: 40-02 BELL BLVD

BAYSIDE NY 11361

**SUBCONTRACTOR**
The Carey Group

By: _Michael Carey_

    Name:

    Title:

    Address:

**SUBCONTRACTOR**
Ultimate Access Solutions

By: _____

Name:
Title:
Address:

CURTIS HUDSON
President
1200 West Creek Village Dr.
Unit #E6
Elkton MD 21921

SUBCONTRACTOR
Zaim Contractor Corp

By: _____

Name: Asir MiMi Dinoski
Title: owner
Address: 3u John St, SI, NY 10302

**Scanned with CamScanner**

Exhibit A

Delta Bushwick

| Subcontractor/Vendor | Pre-Petition Expenses | 40% of Pretition Amount | 25% Paid | 75% Paid | Retention Pre-Petition | 40% of Pre-Petition Retainage |
|---|---|---|---|---|---|---|
| Acro Contracting Corp | $ 20,655.00 | $ 8,262.00 | $ 2,065.50 | $ 6,196.50 | $ 4,245.00 | $ 1,698.00 |
| Ambient Flooring | $ - | $ - | $ - | $ - | $ 438.00 | $ 175.20 |
| Ascape Landscaping & Constr. | $ - | $ - | $ - | $ - | $ 1,072.00 | $ 428.80 |
| Bedrock Plumbing & Heating | $ 12,363.93 | $ 4,945.57 | $ 1,236.39 | $ 3,709.18 | $ 10,853.50 | $ 4,341.40 |
| Danch Floors | $ 6,660.00 | $ 2,664.00 | $ 666.00 | $ 1,998.00 | $ 740.00 | $ 296.00 |
| Five Borough NYC LLC | $ 7,537.50 | $ 3,015.00 | $ 753.75 | $ 2,261.25 | $ 6,917.49 | $ 2,767.00 |
| Future Coatings Inc | $ 5,130.00 | $ 2,052.00 | $ 513.00 | $ 1,539.00 | $ 2,470.00 | $ 988.00 |
| Glass Systems Tech | $ - | $ - | $ - | $ - | $ 3,076.00 | $ 1,230.40 |
| Glowscape General VY-Coat | $ - | $ - | $ - | $ - | $ 843.00 | $ 337.20 |
| Infinity Painting Co., Inc. | $ 3,915.00 | $ 1,566.00 | $ 391.50 | $ 1,174.50 | $ 4,115.00 | $ 1,646.00 |
| Janus International Group, LLC | $ 85,632.94 | $ 34,253.18 | $ 8,563.29 | $ 25,689.88 | $ 18,335.40 | $ 7,334.16 |
| Mainline Construction | $ (5,375.17) | $ (2,150.07) | $ (537.52) | $ (1,612.55) | $ 5,375.17 | $ 2,150.07 |
| Major General Construction | $ 3,420.00 | $ 1,368.00 | $ 342.00 | $ 1,026.00 | $ 380.00 | $ 152.00 |
| Maspeth Roofing & Contracting | $ 3,150.00 | $ 1,260.00 | $ 315.00 | $ 945.00 | $ 7,890.10 | $ 3,156.04 |
| NYCOM Electric | $ 12,872.77 | $ 5,149.11 | $ 1,287.28 | $ 3,861.83 | $ 22,689.74 | $ 9,075.90 |
| Pentinco Group NYC Inc. | $ - | $ - | $ - | $ - | $ 2,900.00 | $ 1,160.00 |
| Reliance Mechanical Services | $ (3,240.00) | $ (1,296.00) | $ (324.00) | $ (972.00) | $ 18,365.00 | $ 7,346.00 |
| SGC Construction Corp. | $ - | $ - | $ - | $ - | $ 18,250.00 | $ 7,300.00 |
| The Carey Group | $ 4,500.00 | $ 1,800.00 | $ 450.00 | $ 1,350.00 | $ 500.00 | $ 200.00 |
| Ultimate Access Solutions | $ 5,850.00 | $ 2,340.00 | $ 585.00 | $ 1,755.00 | $ 17,500.00 | $ 7,000.00 |
| Zaim Contractor Corp. | $ - | $ - | $ - | $ - | $ 1,150.00 | $ 460.00 |
| | | $ - | $ - | $ - | | $ - |
| | | $ - | $ - | $ - | | $ - |
| | $ 163,071.97 | $ 65,228.79 | $ 16,307.20 | $ 48,921.59 | $ 148,105.40 | $ 59,242.16 |