**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC**,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date: January 23, 2020 at 10:00 a.m. (ET)<br><br>Objection Deadline: January 22, 2020 at 12:00 noon (ET) (by consent) |

**DEBTOR'S OBJECTION TO HERC RENTALS, INC.'S AMENDED APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to *Herc Rentals, Inc.'s Amended Application for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* [Docket No. 607] (the "Amended Application").[2]  In support of this Objection, the Debtor respectfully represents as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Amended Application.

37322/3
01/22/2020 205718422.6

## BACKGROUND

1. On September 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case"). The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

2. On September 23, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in this Chapter 11 Case.

3. Additional details regarding the Debtor's business and the facts and circumstances surrounding the filing of this Chapter 11 Case is set forth in the *Declaration of Brendan Murray in Support of First Day Relief* (the "First Day Declaration") [Docket No. 15].

4. On November 8, 2019, Arch Insurance Company and Arch Reinsurance Company (collectively, "Arch") and the Debtor filed a *Joint Motion of Debtor, Arch Insurance Company and Arch Reinsurance Company for Entry of an Order Approving the Stipulation By and Among the Parties Pursuant to Fed. R. Bankr. P. 9019* (the "Joint Motion") [Docket No. 466]. By the Joint Motion, the Debtor and Arch sought approval of a stipulation setting forth a procedure for the orderly transition of certain bonded construction contracts from the Debtor to Arch or its designee for completion (the "Bonded Project Stipulation").

5. On November 15, 2019, the Court entered an *Order, Pursuant to 11 U.S.C. §§ 105, 362, 363, and 365 Approving Stipulation Authorizing the Parties to Declare the Debtor in Default of Certain Bonded Construction Contracts; to Reject or Terminate or Assume and Assign Those Contracts; and for Related Relief* [Docket No. 524]. Accordingly, Arch took over the bonded projects pursuant to the Bonded Project Stipulation.

6.    On December 5, 2019, Herc Rentals, Inc. ("Herc") filed the Amended Application seeking allowance of $179,326.20 in alleged unpaid post-petition equipment rental charges as an administrative expense claim entitled to priority payment pursuant to 11 U.S.C. § 503(b)(1)(A).[3]

7.    The Amended Application consists of a mere five paragraphs and very few facts. Herc asserts that it rented unspecified equipment to the Debtor for several unspecified projects before and after the Petition Date. *See* Amended Application, ¶¶ 1-2. Herc does not name the projects, but refers to numerous rental agreements attached in Exhibit A to the Amended Application. The documents in Exhibit A refer to eleven projects: the HUB, Harrison; Jerome Ave. & Minerva Pl., Bronx; 2865 Creston Ave., Bronx; 435 Main St., Hackensack; Plainfield Country Club, Edison; 2880 Jerome Ave, Bronx; Latitude, 369 Interpace Pkwy, Parsippany; Fairleigh Dickinson University, Teaneck; Rutgers, Newark; 147 Bloomfield Ave., Montclair; and Florham Prk Supportive Housing, Florham Park. *See id.*, Ex. A.

8.    Herc alleges that $179,326.20 in post-petition rental charges remains unpaid, and refers to Exhibit B to the Amended Application for "[a] copy of the supporting invoices." *Id.*, ¶ 3. Exhibit B does not include any invoices, but consists of a two-page chart entitled "Open Invoices" with the following column headers: "Inv Number", "Inv Date", "Original Amount", "Adjustments", "Payments", and "Current Balance". *See id.*, Ex. B. Nowhere does the chart indicate project names or project reference numbers by which the alleged amounts could be connected to the rental agreements in Exhibit A or any of the Debtor's projects.

9.    Herc's sole factual allegation that bears on the relief requested is that "the use of the rental equipment was for the benefit of Hollister to maintain its work on the projects and protect the project site." *Id.*, ¶ 4. Herc provides no details about what equipment was used in connection with which project or why such equipment was necessary to preserve the Debtor's estate.

---

[3] On November 20, 2019, Herc filed its original *Application For Allowance and Payment of Administrative Expenses Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* seeking allowance of $134,607.73 in alleged unpaid post-petition equipment rental charges as an administrative expense entitled to priority payment pursuant to 11 U.S.C. § 503(b)(1)(A). [Docket No. 546, ¶ 5].

10. In an attempt to evaluate Herc's claims notwithstanding the paucity of information in the Amended Application, the Debtor's counsel requested additional information from Herc's counsel regarding the alleged amounts due by project. After numerous communications, it appears that Herc seeks an administrative expense claim for alleged unpaid post-petition rent related to the following fifteen (not eleven, as reflected by the rental agreements in Exhibit A to the Amended Application) bonded and non-bonded projects:

a. Bonded projects:

   i. Rutgers: $17,402.37

   ii. Atlantic Ave.: $103.94

   iii. Kings Hwy (Hebrew Language Academy): $12,089.69

   iv. Plainfield CC (Plainfield Country Club): $3,543.84

   v. 2880 Jerome (Bedford Green): $2,624.24

   vi. 2865 Creston (Bedford Green): $12,974.53

   vii. Jerome/Minerva (Bedford Green): $33,253.39

b. Non-bonded projects:

   i. Columbia St (640 Columbia Street, Red Hook): $7,516.72

   ii. Bloomfield Ave. ("Vestry"): $2,120.14

   iii. Main St. ("345 Main St."): $4,625.07

   iv. Florham Park ("Florham Park Supportive Housing"): $1,584.23

   v. Jefferson: $1,624.79[4]

   vi. FDU: $8,054.65

   vii. HUB: $56,318.27

   viii. Interpace (Latitude): $10,624.38

---

[4] As discussed below, in response to the Debtor's further requests for information, Herc has confirmed there are actually no open invoices on the Jefferson project.

11. Notably, four of the fifteen projects in the preceding paragraph are not mentioned anywhere in the Amended Application or the exhibits thereto.

## THE DEBTOR'S OBJECTION

12. Section 503(b) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--(1)(A) the actual, necessary costs and expenses of preserving the estate. . . ." 11 U.S.C. § 503(b)(1)(A).

13. The burden of proving entitlement to an administrative expense claim is on the party asserting the priority, and the measure of proof is preponderance of the evidence. *See In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 315 (3d Cir. 2011); *In re Buffets of Bensalem, LLC*, No. 08-34568, 2010 WL 4922536, at *2 (Bankr. D.N.J. Nov. 23, 2010). "[I]in order to qualify for administrative priority, an expense 'must arise from a [post-petition] transaction with the debtor-in-possession' and the expense 'must be beneficial to the debtor-in-possession in the operation of the business.'" *Marcal Paper Mills*, 650 F.3d at 314–15 (quoting *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532–33 (3d Cir. 1999) (edits in original)); *Buffets of Bensalem*, 2010 WL 4922536 at *2. Courts narrowly construe allowances for administrative expenses. *Buffets of Bensalem*, 2010 WL 4922536 at *2. Pursuant to the terms of Section 503(b)(1)(A), the expense must also be actual and necessary. 11 U.S.C. § 503(b)(1)(A); *Marcal Paper Mills*, 650 F.3d at 315 (finding that the relevant inquiry was whether the amount owed was a post-petition expense provided in exchange for a service that was actual and necessary for the continued operation of the debtor-in-possession).

14. These requirements balance two important goals: by giving priority to those claims that help keep the debtor-in-possession functioning, Section 503 advances the estate's interest in survival above all other financial goals; by limiting priority to those claims that are actual and necessary, the Bankruptcy Code prevents the estate from being consumed by administrative expenses and preserves the estate for the benefit of creditors. *Marcal Paper Mills*, 650 F.3d 311 at 315.

15. Courts interpreting Section 503 of the Bankruptcy Code have consistently held that, for a claim to be an administrative claim, it is not enough for the claimant to show that payment becomes due after the date the petition was filed if the transaction was entered into prepetition. *See In re Bayly Corp.*, 163 F.3d 1205, 1208-09 (10th Cir. 1998) (citing numerous examples of claims that accrue pre-petition but do not become payable until after the petition date, and are nevertheless considered pre-petition claims); *In re Jartran, Inc.*, 732 F.2d 584, 587–88 (7th Cir. 1984) (rejecting claimant's argument that its claim was an administrative claim because, although the debtor enjoyed the benefit of the services provided by the claimant after the petition was filed, it was the debtor's prepetition act that induced the claimant's post-petition performance).

16. Simply put, Herc has failed to carry its burden of proving any entitlement to an administrative claim here. As an initial matter, the Amended Application is woefully deficient and devoid of facts with which the Court could evaluate whether any of the alleged unpaid post-petition rent was in fact the actual and necessary costs and expenses of preserving the Debtor's estate. Indeed, it is unclear whether, and if so, how, Herc's sole relevant factual allegation—that that the use of the rental equipment allowed Hollister to maintain its work on and protect the projects, *see* Amended Application, ¶ 4—applies to any of the eleven projects referenced in Exhibit A to the Amended Application and the additional four projects Herc subsequently identified.

17. In addition, a review of the Open Invoices listed in Exhibit B to the Amended Application shows that 25 invoices appear to be dated on September 12, 2019, the day after the Petition Date. The three invoices that the Debtor received from Herc upon request after the filing of the Amended Application reflect that Herc's invoices are issued *at the end* of a rental period. Therefore, at least 25 invoices for which Herc seeks an administrative expense claim exclusively cover a *pre-petition rental period* and are not entitled to administrative priority status. It is likely that more of the invoices listed on Exhibit B similarly relate to pre-petition rental periods for which an administrative expense claim is inappropriate.

18. With respect to the seven bonded projects in paragraph 10.a., above, any post-petition rental of Herc's equipment benefited *Arch* pursuant to the Bonded Project Stipulation, not

-6-

the Debtor. Even if the Court found that the continued rental of Herc's equipment under pre-petition rental agreements for use on the bonded projects were post-petition transactions with the Debtor, which the Debtor does not concede, those expenses were not beneficial to the Debtor in the operation of its business post-petition. Therefore, such expenses could not be deemed actual and necessary costs and expenses of preserving the Debtor's estate. Moreover, the Debtor understands that Arch has been working with Herc to reconcile and address the amounts at issue on these bonded projects and that Arch will pay the pre- and post-petition reconciled amounts on the bonded projects. Accordingly, Herc is not entitled to an administrative expense priority claim against the Debtor for post-petition rent related to these bonded projects.

19. Next, the alleged post-petition amounts in paragraph 10.b., above, that relate to the FDU, HUB and Interpace (Latitude) projects are being addressed in an anticipated settlement agreement between the Debtor and Herc that will resolve the pending *Motion of Herc Rentals, Inc. for Entry of an Order (1) Lifting the Automatic Stay Pursuant to 11 U.S.C. § 362 and (2) Permitting Herc Rentals, Inc. to Remove its Property From Various Projects* [Docket No. 368], currently scheduled for hearing on January 23, 2020, and the Debtor's limited objection thereto [Docket No. 503]. Accordingly, Herc is not entitled to administrative expense priority claim for post-petition rent related to these projects and the Debtor objects to Herc's request for such relief.

20. Finally, Herc fails to carry its burden to prove its entitlement to an administrative expense claim with respect to the remaining non-bonded projects listed in paragraph 10.b., above. Importantly, the Debtor has not performed any post-petition work on Columbia St.,[5] 345 Main St.,[6] or Florham Park Supportive Housing.[7] Therefore, Herc cannot show on the record before this

---

[5] On October 11, 2019, the Court entered a *Stipulation and Order Regarding Termination of General Contractor Agreement for 640 Columbia Street Project* [Docket No. 300, at ¶ 1] in which the Debtor and the Columbia St. project owner agreed that the contract between them was properly terminated.

[6] Although the Court recently approved a settlement between the Debtor and the 345 Main St. project owner, *see Order Granting Debtor's Motion to Approve a Settlement Agreement By and Between Hollister Construction Services, LLC, 345 Main Street JV, LLC and Certain Subcontractors* [Docket No. 750], the work on this project, including any that may have utilized Herc's equipment, was completed before the Petition Date.

[7] The Debtor and the owner of the Florham Park Supportive Housing project had not executed a contract for work on this project as of the Petition Date.

-7-

Court that any alleged post-petition rent of its equipment related to any of these projects benefits the Debtor's estate in the operation of its business. Likewise, Herc cannot show that the expense was provided in exchange for a service that was actual and necessary for the continued operation of the Debtor.

21. Next, Herc fails to show that it is entitled to an administrative expense priority claim for post-petition rent related to the Vestry project. By a *Stipulation and Consent Order Pursuant to 11 U.S.C. §§ 105, 362, and 365 Authorizing Rejection of Debtor's Contract with 147 Bloomfield Ave JV, LLC and Granting Relief From Automatic Stay* [Docket No. 638], the owner of the Vestry project and the Debtor agreed to reject the Vestry project contract effective as of the Petition Date. *See id.* at 3. Accordingly, in addition to Herc's failure to show any benefit to the Debtor's estate, any post-petition rental of Herc's equipment related to the Vestry project could not be said to be a post-petition expense provided in exchange for a service that was actual and necessary for the continued operation of the Debtor.

22. Finally, in response to further requests from the Debtor for information on the Jefferson project, Herc confirmed shortly before this Objection was filed that there are, in fact, no open invoices on this project. Therefore, Herc is not entitled to any administrative expense claim related to the Jefferson project.

23. For the foregoing reasons, Herc has failed to carry its burden of proof and has not established that it is entitled to any administrative expense claims on the current record before the Court.[8]

**RESERVATION OF RIGHTS**

24. The Debtor reserves and preserves all of its rights to supplement, modify and amend this Objection and to raise other or further arguments with respect to the Amended Application either before or at the hearing.

---

[8] Given Herc's admission that there are no open invoices for post-petition rentals related to the Jefferson project, the Debtor has significant concerns that there are similar discrepancies with Herc's asserted claims on all of the other projects identified herein. Accordingly, Herc should be required to produce backup documentation/invoices for all amounts allegedly due and owing on all other projects before Herc's Motion can be granted.

## **CONCLUSION**

**WHEREFORE**, the Debtor respectfully requests that the Court (i) sustain the Objection, (ii) deny the Amended Application, and (iii) grant such other and further relief as the Court deems just and proper.

Dated:  January 22, 2020

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to the Debtor and Debtor-in-Possession*