RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962-1981
(973) 538-0800

*Counsel to Newark Warehouse Urban Renewal, LLC and*
*Newark Warehouse Redevelopment Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>Hollister Construction Services, LLC,<br><br>Debtor. | Hon. Michael B. Kaplan, U.S.B.J.<br><br>Case No.  19-27439 (MBK)<br><br>Chapter 11 |

**SUPPLEMENTAL OMNIBUS REPLY OF NEWARK WAREHOUSE URBAN RENEWAL, LLC AND NEWARK WAREHOUSE REDEVELOPMENT COMPANY, LLC IN FURTHER RESPONSE TO OPPOSITIONS OF (I) APPLE CORING & SAWING, LLC, (II) CONTROL SERVICES, LLC, (III) DROBACH EQUIPMENT RENTAL, CO., (IV) CITY CONTRACTING, INC., (V) ALLGLASS SYSTEMS, LLC AND (VI) DEHN BROS. FIRE PROTECTION, INC. TO THE NWR ENTITIES' MOTION FOR ENTRY OF AN ORDER DETERMINING THAT CERTAIN PARTIES HAVE VIOLATED THE AUTOMATIC STAY AND FOR OTHER  RELIEF**

Newark Warehouse Urban Renewal, LLC ("NWUR") and Newark Warehouse Redevelopment Company, LLC ("NWRC") (together, the "NWR Entities"), by and through their undersigned counsel, hereby submit this supplemental reply (the "Supplemental Reply") in response to the objections filed by: (i) Apple Coring & Sawing, LLC ("Apple") [Docket No. 807] (the "Apple Supplemental Objection"), (ii) Control Services, LLC ("Control") [Docket No. 813] (the "Control Supplemental Objection"), (iii) Drobach Equipment Rental Co. ("Drobach") [Docket No. 783] (the "Drobach Objection"), (iv) City Contracting, Inc. ("City") [Docket No.

815] (the "City Objection"), (v) Allglass Systems, LLC ("Allglass") [Docket No. 817] (the "Allglass Supplemental Objection") and (vi) Dehn Bros. Fire Protection, Inc. (the "Dehn Bros.") [Docket No. 818] (the "Dehn Bros. Supplemental Objection") (collectively the "Objectors") to the NWR Entities' Motion for an Order Determining that Certain Parties Have Violated the Automatic Stay, that Certain Asserted Liens Filed Post-Petition Are Void *Ab Initio*, Confirming the Applicability of the Automatic Stay to the Pending Construction Lien Litigations and for Related Relief [Docket No. 740] (the "NWR Motion").[1] In support of the Supplemental Reply, the NWR Entities respectfully submit as follows:

**BACKGROUND**

On September 23, 2019, in response to the Debtor's first day request to have the Court enforce both the automatic stay provisions of the Bankruptcy Code and the Third Circuit Court of Appeals' decision in In re Linear Electric Co., Inc., 852 F.3d (3d Cir. 2017), the Court entered an Order (I) Restating and Enforcing the Automatic Stay, Anti-Discrimination Provisions, and *Ipso facto* Protections of the Bankruptcy Code, (II) Approving the Form and Manner of Notice Related Thereto, and (III) Granting Related Relief [Docket No. 140] (the "Automatic Stay Order"). The Automatic Stay Order expressly and unambiguously provides, among other things, that all parties are stayed and enjoined from "commencing or continuing" or "taking any action" "to file, continue litigation, enforce and/or collect on construction or mechanics liens from third-party real property owners on construction projects for services performed for or on behalf of the Debtor." See Docket No. 140 at ¶ 3. The Automatic Stay Order also unambiguously requires all parties seeking any form of relief from the Automatic Stay Order to file the "proper application or motion" with the Court. See id. at ¶ 13. Finally, the Automatic Stay Order also specifically

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the NWR Motion.

2

and unambiguously provides that "the Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation, enforcement and/or interpretation of [the] Order." See id. at ¶ 15.

Despite the Court's entry of the Automatic Stay Order, and in violation of the express terms of the Automatic Stay Order, various of the Debtor's subcontractors, materialmen and/or suppliers improperly filed post-petition construction liens and/or improperly continued to prosecute state court actions to enforce pre-petition constructions liens related to the Debtor's various projects located in the State of New Jersey. As a result, on December 20, 2019, the Debtor filed a motion, on shortened time, seeking an order from the Court: (i) determining that certain parties violated the automatic stay of section 362(a) of the Bankruptcy Code, (ii) that those asserted construction liens filed by those parties were void *ab initio* and should be released or discharged, and (iii) granting related relief to the Debtor, including the recovery of attorneys' fees and costs [Docket No. 692] (the "Debtor's Motion"). On January 2, 2020, the Court entered an order granting the Debtor's Motion, which, among other things, determined that the post-petition construction liens that were the subject of the Debtor's Motion were void *ab initio* and directing those lien claimants to immediately take steps to discharge the liens [Docket No. 730]. Unfortunately, the Debtor's Motion did not address improper actions taken by the Debtor's subcontractors, materialmen or suppliers pertaining to the NWR Entities' Building.

On January 6, 2020, the NWR Entities filed the NWR Motion.[2] On that same day, the Court entered an Order Granting the NWR Entities' Application to Shorten Time and scheduled

---

[2] The NWR Entities originally filed a limited objection to the Debtor's Motion requesting that the Debtor's Motion should only be granted if the NWR Entities were granted similar relief. See Docket No. 723. However, at the January 2, 2020 hearing on the Debtor's Motion, the Court directed the NWR Entities to file their own motion for the relief requested by way of the NWR objection.

a hearing on the NWR Motion for January 9, 2020 [Docket No. 742] (the "Order Shortening Time").

Between the entry of the Order Shortening Time and the January 9, 2020 hearing on the NWR Motion (the "Initial Hearing"), several parties filed responses and/or objections to the NWR Motion. In response, the NWR Entities filed an omnibus reply (the "First Omnibus Reply") to the objections filed by: (i) Apple [Docket No. 745] (the "Apple Initial Objection"), (ii) Control [Docket No. 755] (the "Control Initial Objection"), (iii) Dehn Bros. [Docket No. 756] (the "Dehn Bros. Initial Objection") and (iv) Allglass [Docket No. 759] (the "Allglass Initial Objection").[3] See Docket No 761. On the date of the Initial Hearing, the Court adjourned the hearing on the NWR Motion to January 23, 2020 to allow all affected parties-in-interest to file responses to the NWR Motion.

Since the Initial Hearing, Apple, Control, Drobach, City, Allglass and Dehn Bros. have filed objections to the NWR Motion. Notably, the Debtor has not filed an objection to the NWR Motion.

For the reasons contained herein, the NWR Entities submit that the objections filed by each of the Objectors have no basis and should be overruled.

## REPLY TO ARGUMENTS RAISED IN OBJECTIONS

### A. The Apple Supplemental Objection [Docket No. 807]

1. Importantly, Apple recently levied on Control's account and obtained an order allowing it to recover the balance that it is owed from Control, which results in Apple being paid in full. As a result, Apple should not be pursuing any further claims in the Apple State Court Action (defined herein).

---

[3] Rather than repeat all of the points raised in the First Omnibus Reply, the NWR Entities instead incorporate by reference all of the points contained therein.

2. Nonetheless, to the extent Apple has not yet received payment in full, in the Apple Supplemental Objection, Apple essentially restates and repeats the arguments that it previously submitted in the Apple Initial Objection. Generally, Apple argues that its pre-petition construction lien was later bonded by Arch Insurance Co. ("Arch"), a nondebtor, and therefore Apple's enforcement of its construction lien against the Arch bond does not violate the automatic stay. For the reasons previously set forth by the NWR Entities in the First Omnibus Objection, the NWR Entities submit that Apple has disregarded the precedent set forth in Linear Electric, and that any attempt by Apple to seek relief against Arch will negatively impact the Debtor's estate.

3. Apple further argues that Linear Electric is limited only to situations where construction liens are filed on a post-petition basis. Apple is incorrect.

4. A more accurate reading is one that acknowledges the Third Circuit's rationale in Linear Electric, where the Third Circuit held that:

> under New Jersey law, the value of the liens depended on the amount that the contractor owed to the suppliers under their contracts and on the value of the contractor's accounts receivable. The District Court then affirmed the Bankruptcy Court's conclusion that the accounts receivable were part of the bankruptcy estate because they complied with the definition of property of the estate under 11 U.S.C. § 541 and because the ability of a supplier to create a construction lien depended on the existence of the bankrupt contractor's accounts receivable. For that reason, the Bankruptcy Court held that the automatic stay prevented filing the liens. The District Court affirmed. We agree and will also affirm.

Id. at 316.

5. The same rationale applies here. Any relief granted in the Apple State Court Action, either against Arch or against the NWR Entities, would reduce the Debtor's asserted account receivable against the NWR Entities and would impair the statutory lien fund.

6. In support of its position, Apple also cites the State Court's Memorandum Opinion dated October 25, 2019 (the "State Court Opinion") (a copy of which was attached as Exhibit A to the Apple Initial Objection) and entered in Apple's state court action, styled Apple Coring and Sawing, LLC v. Control Services, LLC, et al., ESX-L-4707-18 (the "Apple State Court Action"). The State Court in the Apple State Court Action held that "the Bankruptcy Code's automatic stay provision does not apply to claims against non-debtor Arch Insurance Company in the Apple State Court Action." See Apple Initial Objection at p. 1. Apple further argues that state courts have concurrent jurisdiction to determine the applicability and scope of the automatic stay, thereby purportedly rendering the State Court Opinion binding.

7. Apple, however, continues to ignore the fact that prior to the State Court's issuance of the State Court Opinion, this Court entered the Automatic Stay Order, which already established the scope of the automatic stay, and specifically determined that all subcontractors construction lien actions – including Apple's – were stayed. Accordingly, whatever concurrent jurisdiction the State Court originally may have had to determine the scope of the automatic stay is entirely irrelevant to the binding effect of the Automatic Stay Order, as determined by this Court, and Apple's efforts to have the State Court in the Apple State Court Action interpret this Court's Automatic Stay Order was entirely improper. This is particularly true given the fact that (i) this Court's Automatic Stay Order directed parties to file the "proper application or motion" with this Court should an interpretation of the Automatic Stay Order be required, and (ii) this Court expressly retained jurisdiction to "hear and determine all matters arising from or relating to the implementation, enforcement and/or interpretation of "the Automatic Stay Order. See Docket No. 140 at ¶¶ 13, 15 (emphasis added).

8. Accordingly, Apple's Initial Objection and Apple's Supplemental Objection should be overruled.

### B. The Control Supplemental Objection [Docket No. 813]

9. Control, like Apple, cites to the State Court Opinion and asserts that that opinion purportedly prevents this Court from granting the relief requested in the NWR Motion, either through the Rooker-Feldman doctrine or otherwise. Control further argues generally that its asserted claims for quantum meruit and unjust enrichment against the NWR Entities in the Apple State Court Action do not affect the Debtor's estate. Finally, Control argues that notions of principles of equity and fairness dictate that the Court should deny the NWR Motion. Control is wrong.

10. Additionally, and very importantly, a global settlement with Control is very close to being finalized.

#### (i) Control's Argument Regarding the State Court Opinion

11. For the very same reasons that Apple's arguments respecting the State Court Opinion lack merit, Control's arguments cannot be sustained. The issue before the Court is not a matter of concurrent jurisdiction, but rather an improper effort to collaterally attack this Court's Automatic Stay Order. Further, contrary to Control's assertions, given this Court's Automatic Stay Order, the NWR Entities had no obligation to appeal the order with respect to the State Court Opinion. See Control Supplemental Objection, Docket No. 813 at 3. The Court should not countenance any efforts to collaterally attack its Automatic Stay Order, particularly when the Court expressly directed parties to file the "proper application or motion" with this Court should an interpretation of the Automatic Stay Order be required, and expressly retained

jurisdiction to determine "all matters" relating to the "enforcement and/or interpretation" of the Automatic Stay Order.  See Docket No. 140 ¶¶ 13, 15.

### (ii)     Rooker-Feldman Doctrine

12.     With respect to Control's arguments that the relief sought in the NWR Motion is barred by the Rooker-Feldman doctrine, ironically, it is Control who is attempting to collaterally attack this Court's Automatic Stay Order.  In any event, the Rooker-Feldman doctrine is wholly inapplicable.

13.     The Supreme Court of the United States has explained the fundamental basis of the Rooker-Feldman doctrine:

> This Court is vested, under 28 U.S.C. § 1257, with jurisdiction over appeals from final state-court judgments. We have held that this grant of jurisdiction is exclusive: "Review of such judgments may be had *only* in this Court." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)(emphasis added); see also Atlantic Coast Line R. Co. v. Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Accordingly, under what has come to be known as the Rooker–Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments**.**

Lance v. Dennis, 546 U.S. 459, 463 (2006) [emphasis in original].  Thus, at its threshold, the Rooker-Feldman doctrine applies to limit the jurisdiction of a federal court only where a final judgment has been rendered in a state court.  Since the State Court Opinion is not a final judgment, the Rooker-Feldman doctrine is not implicated here.

14.     Further, it is well settled that the Rooker–Feldman doctrine is a "narrow doctrine" that "applies only in limited circumstances."  Lance v. Dennis, 546 U.S. at 464-66 (internal citations omitted).

15. In Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159 (3d Cir. 2010), the Third Circuit determined that there are four (4) requirements that must be met when determining whether the Rooker-Feldman doctrine applies: (1) the federal plaintiff lost in state court; (2) the federal plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the federal plaintiff is inviting the district court to review and reject the state judgments. Id. at 166 (internal citations omitted).

16. First, importantly, here, the State Court Opinion was not issued until after this Court entered the Automatic Stay Order, thereby rendering the Rooker-Feldman doctrine inapplicable.

17. Additionally, to determine whether the federal plaintiff is complaining of injuries caused by state court judgments, the Third Circuit found that "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." Id. at 167.

18. Here, the NWR Entities are not complaining about injuries caused by a state court judgement. Instead, the NWR Entities simply request that this Court to enforce its own order, particularly where the failure to do so will negatively affect the Debtor's estate.

19. Further, here, the NWR Entities are not asking this Court to review or overturn the State Court Opinion. See id. at 166 (citing GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir.1993) (finding even where an independent claim in federal court denies a legal conclusion reached by the state court, the Rooker-Feldman doctrine does not bar the federal

court from exercising jurisdiction over the claim). Instead, again, the NWR Entities simply request this Court to enforce its own Automatic Stay Order.

20. For these reasons, the Rooker-Feldman doctrine is wholly inapplicable.

### (iii) Linear Electric

21. Additionally, in support of its position, Control relies upon inapplicable case law such as Maritime Electric Company, Inc. v. United Jersey Bank, 959 F.2d 1194 (3d Cir. 1991) to support its contention that the automatic stay does not extend to nondebtor co-defendants. However, unlike here, Maritime Electric involved nondebtor co-defendants that were litigating conversion claims between them. In contrast, and exactly as in Linear Electric, here the claims being prosecuted in the Apple State Court Action, whether for lien, unjust enrichment or quantum meruit, will have a direct impact on the Debtor's estate because the subcontractor plaintiffs seek to apply some portion of the Debtor's alleged account receivable from the NWR Entities toward the satisfaction of those subcontractor plaintiffs' claims. In particular, if the NWR Entities were found liable to Control and were order to pay Control, there would be a reduction in any account receivable owed to the Debtor, which is unquestionably property of the Debtor's estate. As a result, Control's attempt to collect against the NWR Entities, whether for unjust enrichment, quantum meruit or otherwise, will affect property of the estate, thereby violating the automatic stay. See Linear Elec., 852 F.3d at 321-23.

### (iv) Fairness and Equity

22. In further support of its position, Control argues that principles of equity and fairness dictate that the relief requested in the NWR Motion be denied. Nonetheless, as the NWR Entities have continuously cautioned, any continued enforcement action against the NWR Entities could reduce the statutory lien fund and impair the Debtor's ability to collect any

potential account receivable against the NWR Entities. Just as with any other creditor whose action is subject to the automatic stay, the subcontractors here are not deprived of their remedy; they are merely required to pause in their assertion of it, until then primary goal of fairly administering the Debtor's estate for the benefit of all creditors is accomplished.

23. For all of these reasons, Control's arguments lack merit and should be overruled.

### C. The Drobach Objection [Docket No. 783]

24. First, the global settlement with Control, once finalized, will result in Drobach being paid.

25. In any event, like Apple, Drobach argues that its continued prosecution of its pre-petition state court action, styled <u>Drobach Equipment Rental Co. v. Control Services, LLC et al.</u>, UNN-L-297-19 (the "<u>Drobach State Court Action</u>"), to, among other things, enforce its pre-petition construction lien does not violate either the automatic stay or the Automatic Stay Order, because Control, along with the NWR Entities and Arch, are all nondebtor co-defendants, and therefore the Drobach State Court Action purportedly will not affect the Debtor's estate. <u>See</u> Docket No. 783 at 2-3. In the Drobach State Court Action, Drobach sought relief against Control for breach of contract, against the Debtor and NWRC for unjust enrichment and against Arch to enforce a surety bond obtained by the NWR Entities and issued by Arch. <u>See</u> Drobach State Court Complaint, Docket No. 783-1. In essence, Drobach's arguments are very similar to those advanced by Apple in the Apple Initial Objection, which the NWR Entities address both here and in the First Omnibus Reply.

26. In summary, in moving forward with the Drobach State Court Action, Drobach ignores this Court's Automatic Stay Order, as well as the Third Circuit's <u>Linear Electric</u>

11

decision. As was discussed in the First Omnibus Reply, the Third Circuit in <u>Linear Electric</u> held that where the lien claim payment process allows a subcontractor to collect its recovery by subtracting from a debtor/general contractor's accounts receivable that are due for the value of the materials or services provided under the subcontracts, such an attempt to collect against the debtor's accounts receivable violates the automatic stay because the accounts receivable are property of the debtor's estate. <u>In re Linear Electric Co., Inc.</u>, 852 F.3d 313, 321-23 (3d Cir. 2017).

27. Here, Drobach's continued prosecution of its claims against the NWR Entities or against Arch in the Drobach State Court Action, whether lien, unjust enrichment or otherwise, may negatively affect the Debtor's ability to collect any potential accounts receivable that the Debtor asserts against the NWR Entities, and may also potentially reduce the statutory lien fund available under New Jersey state law to pay the Debtor.

28. Further, as was discussed in detail in the First Omnibus Reply, to the extent Arch is found liable and must pay on its construction lien bond, contrary to Apple's arguments, Arch's claims against the estate for reimbursement, contribution or indemnification will become liquidated, thereby further affecting the estate. In this event, Arch may also have a subrogation claim against the NWR Entities, which could also impact both the statutory lien fund and the Debtor's ability to collect an alleged account receivable from the NWR Entities.

29. For these reasons, and for the reasons set forth in the First Omnibus Reply, the NWR Entities request that the Court overrule the Drobach Objection.

**D. The City Objection [Docket No. 815]**

30. City makes the novel argument that because the NWR Entities filed a motion early in this bankruptcy case seeking a determination that the GMP Contract had been

12

terminated prior to the Petition Date and therefore was not property of the estate, the NWR Entities are now purportedly estopped from seeking to enforce the automatic stay with respect to the prosecution of construction lien foreclosure claims that clearly violate this Court's Automatic Stay Order. See City Objection, Docket No. 815 at 2. Not surprisingly, City fails to cite any legal authority to support its patently frivolous argument.

31. While the Court ultimately granted the NWR Entities relief from the automatic stay to terminate the GMP Contract, the Debtor's attempt to collect an alleged account receivable from the NWR Entities is unquestionably property of the estate, thereby making it apparent that City's argument is baseless.

32. City also asserts that, because the NWR Entities are pursuing claims against the Debtor that originated in state court and were later removed and referred to this Court, the NWR Entities will not be prejudiced by the continued prosecution of construction liens. See City's Objection, Doc. No. 815 at 2-3. However, in advancing this argument, City disregards the importance of the holding in Linear Electric, as any continued prosecution of construction liens prior to the determination of the Debtor's rights, if any, to the statutory lien fund and to any account receivable from the NWR Entities would negatively impact the Debtor's estate.

33. Lastly, City argues that the NWR Motion seeks to vacate the Court's November 22, 2019 Order modifying the automatic stay to permit City to commence its state court action against the Debtor, NWRC and Control (the "City Stay Relief Order"). See City's Objection, Doc. No. 815 at 3 and City State Court Complaint, Doc. No. 815-2. City asserts that the NWR Entities had ample opportunity to object to City's application for stay relief, but failed to do so. See City's Objection, Doc. No. 815 at 3. City further argues that the City Stay Relief

Order was properly entered because the NWR Entities are nondebtors and therefore are not entitled to the protections of the automatic stay. Id. at 3-4.

34. Although the NWR Entities did not object to City's initial request for stay relief, the current issues were not properly framed before the Court. Specifically, as detailed in Linear Electric, the continued prosecution of a subcontractor's construction lien and related claims, as asserted in City's state court action, threaten to significantly and detrimentally impact the Debtor's alleged account receivable against the NWR Entities and the Debtor's right in the statutory lien fund. These issues were not raised and addressed before the Court when it entered the City Stay Relief Order. In any event, the Court has the authority to reinstate the automatic stay where a party's actions will negatively affect the Debtor's estate.

35. For these reasons, the NWR Entities submit that City's Objection should also be overruled.

### E. The Allglass Supplemental Objection [Doc. No. 817]

36. In the Allglass Supplemental Objection, Allglass attempts to distinguish the facts of the present case from those in Linear Electric by repeating the same arguments it raised in the Allglass Initial Objection. See Allglass Supplemental Objection, Doc. No. 817 at 1-2. Allglass' attempts fail.

37. Specifically, Allglass argues, without any legal support, that because the NWR Entities obtained relief from the automatic stay in order to terminate the GMP Contract, granting the NWR Entities relief through the NWR Motion would not protect any interest of the bankruptcy estate. See id. at 2. To the contrary, as discussed at length above, prohibiting continued prosecution of construction liens will prevent diminution of the statutory lien fund and/or the ability of the Debtor to collect on an account receivable allegedly owed to it.

38. Accordingly, the Allglass Initial Objection and the Allglass Supplemental Objection should also be overruled.

### F. The Dehn Bros. Supplemental Objection [Doc. No. 818]

39. In the Dehn Bros. Supplemental Objection, Dehn Bros. joins the opposition filed by Allglass and City and reincorporates the arguments raised in the Dehn Bros. Initial Objection, wherein Dehn Bros. contends that the Debtor's counsel had approved Dehn Bros.' improper filing of a post-petition construction lien. See Dehn Bros.' Supplemental Objection, Doc. No. 818.

40. For the reasons set forth above and in the First Omnibus Objection, the Dehn Bros.' Initial Objection and the Dehn Bros.' Supplemental Objection should be overruled.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, the NWR Entities respectfully request that the Court grant the NWR Motion, together with such other and further relief as is just and equitable.

Dated: January 22, 2020
Morristown, New Jersey

                                            RIKER DANZIG SCHERER HYLAND
                                            & PERRETTI LLP

                                            By: /s/ *Joseph L. Schwartz*
                                                  Joseph L. Schwartz

                                            Joseph L. Schwartz, Esq. (JS-5525)
                                            Tara J. Schellhorn, Esq. (TS-8155)
                                            Headquarters Plaza
                                            One Speedwell Avenue
                                            Morristown, New Jersey  07962-1981
                                            (973) 538-0800

                                            *Counsel to Newark Warehouse Urban Renewal,*
                                            *LLC and Newark Warehouse Redevelopment*
                                            *Company, LLC*

5106343v5