

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1

Order Filed on January 27, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Jennifer B. Kimble, Esq.
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

In re:

HOLLISTER CONSTRUCTION SERVICES, LLC,[1]

Debtor.

Chapter 11

Case No. 19-27439 (MBK)

## ORDER GRANTING DEBTOR'S MOTION APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG THE DEBTOR, KNOPF LEASING COMPANY, L.P. AND SUBCONTRACTORS PURSUANT TO FED. R. BANKR. P. 9019

The relief set forth on the following pages, numbered two (2) through and including three (3), is hereby **ORDERED**.

**DATED: January 27, 2020**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

37322/2
01/23/2020 205564467.1

Page: 2
Debtor: Hollister Construction Services, LLC
Case No.:  19-27439 (MBK)
Caption:  *Order Granting Debtor's Motion to Approve of a Settlement Agreement By and Among
The Debtor, Knopf Leasing Company, L.P. and Subcontractors*

---

**THIS MATTER** having been opened to the Court upon the Motion of the above-captioned debtor-in-possession (the "Debtor") seeking the entry of an order approving the Settlement Agreement by and among the Debtor and Knopf Leasing Company, L.P. with respect to that project known as Delta Storage, 110 York Street, Brooklyn, NY 11201 (the "Project") and certain subcontractors (the "Settlement Agreement"), pursuant to Fed. R. Bankr. P. 9019 (the "Motion")[2]; and the Court having considered the Motion and any objections filed thereto, and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Motion is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors; and the Court having conducted a hearing on the Motion, at which time the Court heard and considered all oral argument of counsel; and good and sufficient notice of the Motion having been provided to all interested parties, and for good cause shown,

**IT IS HEREBY ORDERED** as follows:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Settlement Agreement attached hereto as **Exhibit 1** is hereby approved in its entirety.

3.      Notice of the Motion as provided is hereby deemed good and sufficient notice and no further notice is required.

---

[2] Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Settlement Agreement.

Page:      3
Debtors:   Hollister Construction Services, LLC
Case No.:  19-27439 (MBK)
Caption: *Order Granting Debtor's Motion to Approve of a Settlement Agreement By and Between Hollister Construction Services, LLC, Knopf Leasing Company, L.P. and Certain Subcontractors*

---

4.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order and the Settlement Agreement.

5.      The Order shall be effective immediately upon its entry and the stay imposed by Bankruptcy Rule 6004(h) and/or 6006(d) or any other Rule are hereby waived.

6.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

7.      The Court shall retain exclusive jurisdiction to hear and decide any and all disputes or issues related to or arising from the implementation, interpretation or enforcement of this Order.

<u>Exhibit 1</u>
## Knopf Leasing Company, L.P. Settlement Agreement

## SETTLEMENT AGREEMENT BY AND BETWEEN HOLLISTER CONSTRUCTION SERVICES, LLC, THE PROJECT OWNER AND CERTAIN SUBCONTRACTORS

This Settlement Agreement (the "Agreement") is entered into as of January 13, 2020, by and between Hollister Construction Services, LLC, as construction manager (the "Debtor"); Knopf Leasing Company, L.P. as Owner ("Owner"); and each of the subcontractors identified on Exhibit A hereto (the "Subcontractors")(each a "Party," and collectively, the "Parties").

WHEREAS, Debtor and Owner are parties to certain contract documents dated as of February 27, 2017, including, without limitation, that certain AIA A103 and A201 Agreement for Construction Management Services, and all exhibits annexed thereto, and all subsequent riders, modifications, and change orders (collectively, the "Contract"),[1] relating to construction of Delta Storage, 110 York Street, Brooklyn, NY 11201 (the "Project"); and

WHEREAS, on September 11, 2019 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 19-27439 (MBK); and

WHEREAS, the Owner believes it has a right to terminate the Contract for cause and otherwise asserts that the Debtor has defaulted on the Contract; and

WHEREAS,   the Subcontractors provided goods and/or services to the Project prior to the Petition Date and are owed money as of the Petition Date in the amounts set forth on Exhibit A hereto; and

WHEREAS, PNC Bank, N.A. ("PNC") is the Debtor's primary secured creditor and holds liens upon and security interests in all assets of the Debtor, including all accounts receivable and all contracts of the Debtor; and

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Contract.

WHEREAS, if the Contract was terminated, the Debtor may lose a substantial amount of contract revenue and retainage related to the Project; and

WHEREAS, the Owner may suffer damages attendant with delay and completion costs due if the Owner exercised its rights to terminate the Contract and if the Project is not completed in a timely manner; and

WHEREAS, the Parties are desirous of finishing the Project forthwith in accordance with the terms of the Contract, as modified herein, and it is in the best interests of the Debtor, its estate and creditors to complete the Project as soon as possible and with as little delay as possible,

NOW, THEREFORE, subject to Bankruptcy Court approval, the Parties stipulate and agree as follows:

1.    Acknowledgement of Contract Amounts.    The Parties acknowledge and agree that: (a) $148,416.11 is due and payable to the Debtor for work performed under the Contract as of September 11, 2019, ("Pre-Petition Work"), (b) the Owner is currently holding as security under the Contract an additional $199,733.01 as retainage ("Pre-Petition Retainage") which will be due to the Debtor upon completion of the Contract, as modified herein, (c) there is approximately $0.00 of incomplete work which costs will be due and payable if the Project is completed by the Debtor ("Post-Petition Work"), and (d) there will be approximately $0.00 of additional retainage held for Post-Petition Work ("Post-Petition Retainage"). The Debtor represents that all of its subcontractors on the Project are listed on Exhibit hereto.

2.    Acknowledgement of Defaults.    The Parties acknowledge and agree that (a) the Debtor is presently in default under the Contract and that Owner has the right to seek to terminate the Contract, (b) if the Contract were terminated as a result of Debtor's alleged defaults, the Debtor would suffer an economic loss, and (c) Owner will suffer damages in the event it is forced to terminate the Contract and replace the Debtor, including, without limitation, the costs of

2

a replacement contractor and additional attendant delay, which costs could reduce or exhaust any remaining amounts claimed to be presently due to the Debtor under the Contract.

3.      Modification of the Contract. In order to avoid the damages to the Debtor and Owner described above, and subject to Bankruptcy Court approval, the Debtor agrees to perform its obligations under the Contract as modified herein.  Approval of this Agreement by the Bankruptcy Court shall be deemed approval of the Contract as modified herein.

4.      Waiver of Defaults and Delay Claims by Owner.     Upon entry of an Order of the Bankruptcy Court approving this Agreement, Owner waives any defaults or other monetary claims for delay existing as of the date of Owner's execution of this Agreement, without prejudice to any other rights and remedies of the Owner under the Contract as modified by this Agreement which may arise from and after Owner's execution of this Agreement.

5.      Project Escrow Account. Prior to the execution of this Agreement, Debtor shall establish an escrow account with PNC ("Escrow Account") administered by an independent funds control agent pursuant to a separate Escrow Agreement with PNC. All funds deposited into the Escrow Account shall remain Owner's property until such time as the conditions for the Owner's release have been satisfied. After the release by Owner per paragraph 12 below, the Debtor's interest in such funds will be subject to PNC's existing liens on cash collateral of the Debtor, and all funds paid pursuant to this Agreement or under the Contract shall be paid through the Escrow Account.

6.      Payment to Subcontractors for Work Performed or Goods Provided After the Petition Date ("Post-Petition Work"). Post-Petition Work and Post-Petition Retainage shall be paid pursuant to the Contract in the ordinary course of business without any discount or reduction due to Debtor's bankruptcy. Notwithstanding anything to the contrary in the Contract or herein, the Debtor will continue to supervise its Subcontractors on the Project through completion of same

3

and authorizes the Owner to pay the Subcontractors through the Escrow Account the amounts due to them for services and/or goods provided after the Petition Date as necessary to complete the Project in the ordinary course of work and upon submission by the Subcontractors of all normal and customary documentation to the Debtor and/or Owner and, if required, to obtain either a temporary or final certificate of occupancy for the Project. All such payments to the Subcontractors shall be subject to prior approval of the Debtor, which approval shall not be unreasonably withheld or delayed. Amounts held as Post-Petition Retainage shall be held by Owner and released through the Escrow Account pursuant to the Contract in the regular course of business.

7.    <u>Mechanism for Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date ("Pre-Petition Work")</u>. Upon: (a) the release of all filed and asserted liens on the Project's real property and any improvements thereon, and (b) five (5) business days of the entry of an Order (the "Approval Order") of the Bankruptcy Court approving of this Agreement, the Owner will deposit into the Escrow Account an amount representing the sum of 25% of the total amount due for the Pre-Petition Work (the "<u>Initial Payment</u>"). Within seven (7) business days from receipt of the Initial Payment, the escrow agent shall release 40% of the amount attributable to the Subcontractors from the Initial Payment in the amounts set forth in Exhibit A hereto, on account of their respective prepetition claims. The Debtor's interest in the remaining balance after the release by Owner per paragraph 12 from the Initial Payment shall only be disbursed in accordance with the cash collateral order then in effect (as the case may be, the "<u>Current Cash Collateral Order</u>") or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court. Within fifteen (15) business days of the entry of the Approval Order, the Owner will deposit into the Escrow Account an amount representing the sum of 75% of the total amount due for the Pre-Petition Work set forth on Exhibit A hereto (the "<u>Additional Payment</u>"). Within seven (7) business

4

days of completion of the Project and the Subcontractors providing all required closeout documentation, the escrow agent shall release the remaining 75% of the Pre-Petition Work per Exhibit A. Said money will be paid directly to the individual Subcontractors from the Escrow Account in the amounts set forth on Exhibit A, provided the individual Subcontractors have submitted to owner all normal and customary documentation, signoffs, and, if required, a Final Certificate of Occupancy for the Project. The Subcontractors will release all filed and asserted liens on the Project's real property and any improvements thereon within five (5) business days of the entry of an Order of the Bankruptcy Court approving of the Agreement. The Debtor's interest in the remaining balance from the Additional Payment shall only be disbursed after the release provided by Owner under paragraph 12 in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

8. <u>Mechanism for Retainage Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date.</u> Pre-Petition Retainage shall be paid by the Owner, when due under the Contract, in such amounts held against Subcontractors set forth in Exhibit A hereto, through the Escrow Account, 40% to the Subcontractors pursuant to Exhibit A, for application to the balance, if any, due to each Subcontractor on account of its prepetition claim. The Debtor's interest in remaining balance from the Pre-Petition Retainage shall only be disbursed in accordance after the release provided by Owner under Paragraph 12 with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

9. <u>Subcontractor Release and Unsecured Claim.</u> By executing this Agreement, the Subcontractors agree to perform all remaining work on the Project on a go forward basis as set forth herein, and specifically agree to a 60% discount on the amount of receivable, including

5

retainage, due to them for goods and/or services provided on the Owner's Project prior to the Petition Date. Upon payment of all monies due pursuant to this Agreement, each Subcontractor waives and releases any right to assert any claim (as defined in section 101(5) of the Bankruptcy Code) against the Owner and the Project for this 60% amount, and agrees to accept in full and satisfaction of its claim for goods and/or services prior to the Petition Date the 40% placed in escrow as provided for above. The Subcontractor will be allowed a general unsecured claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

10.    Release of Preferences. Upon payment of all monies due pursuant to this Agreement and the release of all liens by Subcontractors, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and seek to avoid any alleged preference payments under sections 547 and 550 of the Bankruptcy Code, relating to or arising out of the Project

11.    Payment Due to Debtor. The Owner shall pay all amounts for Pre-Petition Work due to the Debtor under this Agreement and the Contract, inclusive of retainage, into the Escrow Account through the funding of the Initial Payment and the Additional Payment as set forth in Article 7. The Owner shall pay all amounts for Pre-Petition Retainage, into the Escrow Account in the regular course of business pursuant to the Contract. The Debtor's interest in the remaining funds after the release by Owner per Paragraph 12in the Escrow Account shall only be disbursed in accordance with Cash Collateral Orders entered by the Bankruptcy Court or a further Order of the Bankruptcy Court.

12.    Releases.

(a)    Release by Owner. Upon payment of all monies due pursuant to this Agreement, the Owner and its parents, subsidiaries, divisions and affiliates, and the officers,

directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner Releasors") do hereby release and forever discharge the Debtor and its officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Debtor Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Debtor Released Parties, arising out of or related to the Contract or the Project.

(b)    Release by the Debtor. Upon payment of all monies due pursuant to this Agreement, the Debtor and its officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "Debtor Releasors") do hereby release and forever discharge the Owner and its parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "Owner Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Debtor Releasors, or any of them, ever had or now has against any one or more of the Owner Released Parties, arising out of or related to the Contract or the Project.

(c).    Release by Subcontractors. Upon payment of all monies due pursuant to this Agreement, the Subcontractors and their parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Subcontractor Releasors") do hereby release and forever discharge the Owner and Debtor and their respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (, the "Owner and Debtor Released

7

Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Subcontractor Releasors, or any of them, ever had or now has against any one or more of the Owner and Debtor Released Parties, arising out of or related to the Contract or the Project. Subcontractor agrees to indemnify and hold the Owner and Debtor Released Parties harmless against any liens or claims by any supplier, materialmen, vendor, subcontractor of any tier, employee, or other claimant asserting any rights against Owner and Debtor Released Parties by virtue of separate agreement with Subcontractor.

(d) Release of PNC Bank. Except as expressly set forth in this Agreement, subject only to the disbursement of funds as provided for in this Agreement, each Owner and Subcontractor and their respective parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Subcontractor Releasors") do hereby release and forever discharge PNC Bank and its respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "PNC Bank Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner and Subcontractor Releasors, or any of them, ever had or now has against any of the PNC Bank Released Parties, arising out of or related to the Contract or the Project.

13.    Releases as a Defense. Each of the Owner, Debtor and Subcontractor acknowledge and agree that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and

8

(ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

14.    <u>No Assignment of Released Claims</u>.  Each of the Owner, Debtor and Subcontractor represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

15.    <u>Governing Law</u>.  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

16.    <u>Contract as Modified In Full Force and Effect</u>.  Except as modified herein, the Contract, as modified by this Agreement, shall be binding upon, and shall inure to the benefit of, the Parties hereto and remains in full force and effect.

17.    <u>Headings</u>.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

18.    <u>Counterparts</u>.  This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

19.    <u>No Oral Modification, Termination or Waiver</u>.  This Agreement cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

20.    <u>Further Assurances</u>.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the

provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

21.    <u>Jurisdiction and Venue</u>. The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County.  THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

22.    <u>Authorization</u>. Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement.  The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

23.    <u>Jointly Drafted</u>. The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.  The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____

10

CHRIS JOHNSON Head Coach
~~Brendan Murray, President~~
399 Jefferson Road
Parsippany, NJ 07054


**OWNER**
Knopf Leasing Company, L.P.

By: _____

    Name: _____

    Title: _____

**SUBCONTRACTOR**
Acro Contracting Corp

By: _____

Name: Brian Newman        10-8-2019

Title: President

Address: PO Box 92

Eastchester, NY 10709.

SUBCONTRACTOR
Ambient Flooring

By: _Thomas Stapleton_

Name: Tom STAPLETON
Title: PARTNER
Address: 1116 EDGEWATER AVE
RIDGEFIELD
NJ 07657

**SUBCONTRACTOR**

Ascape Landscaping and Construction

By: _____

Name: Stuart Chaiton

Title: president

Address: 634 Route 303
Blauvelt, NY 10913

**SUBCONTRACTOR**

Danch Floors

By: _____

Name: Glenn Centi
Title: Owner
Address: 9 Boyd Lane Randolph NJ 07869

**SUBCONTRACTOR**
Five Borough NYC LLC

By: _____
    Name: GARY Valenti
    Title: Owner
    Address: 553 Lincoln Ave
             SIdny 10306

SUBCONTRACTOR
Future Coatings Inc.

By: _____

Name: Karl Brannan

Title: VP

Address: 463 77ᵗʰ St, Brooklyn, N.Y. 11209

SUBCONTRACTOR
Glass Systems Tech

By: _Mark Sokoloff_

Name: Mark Sokoloff
Title: VICE PRESIDENT/PARTNER
Address:

Glass Systems Tech, LLC
465 "A" Veit Road
Huntingdon Valley, PA 19006
215-942-4527

**SUBCONTRACTOR**

Glowscape Generay VY-Coat

By: _ira chaimovits_

        Name:

        Title:

        Address:

**SUBCONTRACTOR**

Infinity Painting, Co., Inc.

By

Name: *Frank Nan*

Title: *President*

Address: *1978 Richmond Terrace*
*Staten Island, NY 10302*

Signature Pages to the Settlement Agreement By and Between Hollister Construction Services, LLC, The Project Owner and Certain Contractors relating to the construction of Delta Storage, 110 York Street, Brooklyn, NY 11201

**SUBCONTRACTOR**
Janus International Group, LLC

By: _____

      Name:    Scott M Sannes

      Title:     CFO

      Address:  135 Janus International Blvd

                Temple   GA   30179

**SUBCONTRACTOR**
Mainline Construction

By: _____

Name: Joseph Brazil
Title: President
Address: 1047 Delaware Avenue
Island Park, NY 11558

**SUBCONTRACTOR**
Major General Construction

By: _____

Name: _____

Title: _____

Address: _____

SUBCONTRACTOR
Maspeth Roofing & Contracting

By:

    Name:  JOHN SCHELONE

    Title:  PRESIDENT

    Address:  10/8/19

**SUBCONTRACTOR**
NYCOM Electric

By: _____

Name: Haralambos Karas
Title: President
Address: 36-09 20th Avenue  Astoria NY 11105

**SUBCONTRACTOR**
Pentinco Group NYC Inc.

By: _____
    Name: George Georgitis
    Title: President
    Address:
      244-53 90 Avenue
      Bellerose, NY 11426

**SUBCONTRACTOR**
Reliance Mechanical Services

By: _____

Name: Jonathan Ataraclo

Title: *Vice President*

Address: 95 Hoffman Lane Ste F

Islandia, NV 11749

**SUBCONTRACTOR**
SGC Construction Corp.

By: _____

    Name: VINCENZO COSTANZA
    Title: PRES
    Address: 40-02 BELL BLVD
            BAYSIDE NY 11361

SUBCONTRACTOR
The Carey Group

By: _Michael Carey_

Name:
Title:
Address:

**SUBCONTRACTOR**
Ultimate Access Solutions

By: _____

Name:
Title:
Address:

CURTIS HUDSON
President
1200 West Creek Village Dr.
Unit # E6
Elkton MD 21921

SUBCONTRACTOR
Zaim Contractor Corp

By: _____

Name: Asir Mimi Dinovski

Title: owner

Address: 312 John St, SI, NY 10302

Scanned with CamScanner

Exhibit A

Delta Bushwick

| Subcontractor/Vendor | Pre-Petition Expenses | 40% of Petition Amount | 25% Paid | 75% Paid | Retention Pre-Petition | 40% of Pre-Petition Retainage |
|---|---|---|---|---|---|---|
| Acro Contracting Corp | $ 20,655.00 | $ 8,262.00 | $ 2,065.50 | $ 6,196.50 | $ 4,245.00 | $ 1,698.00 |
| Ambient Flooring | $ - | $ - | $ - | $ - | $ 438.00 | $ 175.20 |
| Ascape Landscaping & Constr. | $ - | $ - | $ - | $ - | $ 1,072.00 | $ 428.80 |
| Bedrock Plumbing & Heating | $ 12,363.93 | $ 4,945.57 | $ 1,236.39 | $ 3,709.18 | $ 10,853.50 | $ 4,341.40 |
| Danch Floors | $ 6,660.00 | $ 2,664.00 | $ 666.00 | $ 1,998.00 | $ 740.00 | $ 296.00 |
| Five Borough NYC LLC | $ 7,537.50 | $ 3,015.00 | $ 753.75 | $ 2,261.25 | $ 6,917.49 | $ 2,767.00 |
| Future Coatings Inc | $ 5,130.00 | $ 2,052.00 | $ 513.00 | $ 1,539.00 | $ 2,470.00 | $ 988.00 |
| Glass Systems Tech | $ - | $ - | $ - | $ - | $ 3,076.00 | $ 1,230.40 |
| Glowscape General VY-Coat | $ - | $ - | $ - | $ - | $ 843.00 | $ 337.20 |
| Infinity Painting Co., Inc. | $ 3,915.00 | $ 1,566.00 | $ 391.50 | $ 1,174.50 | $ 4,115.00 | $ 1,646.00 |
| Janus International Group, LLC | $ 85,632.94 | $ 34,253.18 | $ 8,563.29 | $ 25,689.88 | $ 18,335.40 | $ 7,334.16 |
| Mainline Construction | $ (5,375.17) | $ (2,150.07) | $ (537.52) | $ (1,612.55) | $ 5,375.17 | $ 2,150.07 |
| Major General Construction | $ 3,420.00 | $ 1,368.00 | $ 342.00 | $ 1,026.00 | $ 380.00 | $ 152.00 |
| Maspeth Roofing & Contracting | $ 3,150.00 | $ 1,260.00 | $ 315.00 | $ 945.00 | $ 7,890.10 | $ 3,156.04 |
| NYCOM Electric | $ 12,872.77 | $ 5,149.11 | $ 1,287.28 | $ 3,861.83 | $ 22,689.74 | $ 9,075.90 |
| Pentinco Group NYC Inc. | $ - | $ - | $ - | $ - | $ 2,900.00 | $ 1,160.00 |
| Reliance Mechanical Services | $ (3,240.00) | $ (1,296.00) | $ (324.00) | $ (972.00) | $ 18,365.00 | $ 7,346.00 |
| SGC Construction Corp. | $ - | $ - | $ - | $ - | $ 18,250.00 | $ 7,300.00 |
| The Carey Group | $ 4,500.00 | $ 1,800.00 | $ 450.00 | $ 1,350.00 | $ 500.00 | $ 200.00 |
| Ultimate Access Solutions | $ 5,850.00 | $ 2,340.00 | $ 585.00 | $ 1,755.00 | $ 17,500.00 | $ 7,000.00 |
| Zaim Contractor Corp. | $ - | $ - | $ - | $ - | $ 1,150.00 | $ 460.00 |
| | | | | | | $ - |
| | $ 163,071.97 | $ 65,228.79 | $ 16,307.20 | $ 48,921.59 | $ 148,105.40 | $ 59,242.16 |