

440 Sylvan Avenue, Suite 220 | Englewood Cliffs, New Jersey 07632
Phone: 201.568.2064 | Fax: 201.608.7191 | www.mrossllc.com

February 6, 2020

**VIA ECF**
Honorable Michael B. Kaplan
United States Bankruptcy Judge
District of New Jersey
404 East State Street
Trenton, New Jersey 08608
Courtroom No. 8

                In re: Hollister Construction Services, LLC
                Case No.: 19-27439 (MBK)

Dear Judge Kaplan:

As you are aware, this firm represents Control Services, LLC ("Control") in this bankruptcy proceeding, as well as in a consolidated case entitled *Apple Coring and Sawing, LLC v. Control Services, LLC*, et al., Docket No.: ESX-L-4707-18 and ESX-L-246-19, (the "Control Litigation"), which the movants Newark Warehouse Urban Renewal LLC ("NWUR") and Newark Warehouse Redevelopment Company, LLC ("NWRC") (collectively "NWR Entities") describe as one of the Construction Lien Litigations that they seek to have stayed.

Please accept this reply letter brief in further support to our opposition to the NWR Entities' motion to enforce the stay pursuant to §362 (a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") ("Motion"). For the reasons set forth more fully *infra*, the Motion should be denied with respect to staying the Control Litigation, as the enforceability of the State Court ruling bars the requested relief herein and the claims in the Control Litigation as they

relate to the NWR Entities do not implicate the assets of the debtor or the enforceability of the §362(a) of the Bankruptcy Code.

### Preliminary Statement

The NWR Entities attempt to argue that the automatic stay of Section § 362(a) of the Bankruptcy Code (the "Automatic Stay") and the Court's Order of September 20, 2019 (the "Order") prohibit Control's claims against the NWR Entities for unjust enrichment and quantum meruit from proceeding. However, the NWR Entities, non-debtors, cannot cite to any persuasive authority to support the position that these claims, against solvent, non-debtors, should not be permitted to proceed, or, that the claims concern a portion of the debtor's property. Accordingly, their motion should be denied.

### Control's Claims Are Not Lien Claims

There is no factual or legal basis to stay Control's pending non-lien claims against solvent, third-party, non-debtors. First, the Order only applies to Lien Claims. The claims that Control is pursuing, against the NWR Entities, non-debtors, are not lien claims, and do not impact the debtor's property. Second, <u>Linear Electric</u>, <u>infra</u>., the only authority relied upon by the NWR Entities, pertains only to lien claims (and specifically, post-petition lien claims). Here, Control's direct claims against the NWR Entities are pre-petition claims that are not lien claims. Moreover, these claims would not be paid out of the lien fund, would not affect the lien fund and are wholly unrelated to the lien fund. Rather, these claims, if they result in a judgment against the NRW Entities, would be paid from the NWR Entities directly.

The *only* authority cited to by the NWR Entities for the proposition that Control's claims must be stayed is <u>In Re Linear Electric Company, Inc.</u>, 852 F.3d 313 (3d Cir. 2017), and nothing in <u>Linear Electric</u> warrants extending the stay to Control's non-lien claims against non-debtors. In

Linear Electric, the Court addressed whether lien claims could be said to touch on the property of the bankruptcy estate, and thus subject to the Automatic Stay. There, two subcontractors, who had not been paid by the contractor they sold materials to, or by the project owners, filed lien claims *after* the contractor filed for relief under Chapter 11 of the Bankruptcy Code. The Third Circuit ultimately held that those *post*-petition lien claims violated the automatic stay based *specifically* on the nature of the lien claim payment process, noting that "the lien claim payment process allows Cooper and Samson [the unpaid subcontractors] to collect their recovery by subtracting it from Linear Electric's accounts receivable which are due for the value of the materials provided under the contracts. Thus, Cooper and Samson's lien was against Linear Electric's property." Id. at 320-321. Notably, here, where Control's claims are not lien claims, they are not operating under a particular process where their recovery from the NWR Entities would be automatically subtracted from the debtor's accounts receivable. Control is asserting direct claims against non-debtors and any judgment obtained against those non-debtors will be satisfied, if at all, by those non-debtor defendants, without affecting any property of the debtor.

The Third Circuit went on to explain that it is specifically "the lien claim payment process [that] makes clear that Cooper and Samson's liens were against Linear Electric's property- specifically, its accounts receivable." It further explained that under New Jersey law, assuming Linear Electric did not file its own lien claims alongside the subcontractors, the subcontractors would be fully paid, from the lien fund, and the amount that Linear Electric was owed by the project owners would be reduced accordingly, i.e., Linear Electric's account receivable from the owner would be reduced. Id. at 321. Here, the direct claims by Control against the NWR Entities would not result in a direct or automatic reduction of an account receivable belonging to the debtor, because they are independent and direct claims against the NWR Entities. Thus, because the nature

3

of Control's claims is not such that they are part of a payment process whereby a receivable or a particular fund is automatically reduced in the event that such claims are satisfied, Linear Electric is inapposite, and does not support extension of the Automatic Stay to Control's non-lien claims against non-debtors. Notably, it appears that Linear Electric has been cited by other courts only three times, and never to extend its reasoning on staying lien claims to non-lien claims or, to advance the proposition that payments for non-lien claims somehow impact the debtor's receivables.

In any event, even if Control's claims were lien claims, which they are not, Courts have nevertheless recognized that New Jersey's Construction Lien Law offers protections for both contractors and subcontractors on the one hand, and property owners on the other, but that the protections for property owners are not necessarily elevated over the protections for subcontractors. In AEG Holdings, LLC v. Tri-Gem's Builders, Inc., 347 N.J.Super. 511, 515 (App. Div. 2002), the Court addressed the prospect of a property owner having to pay a subcontractor lien claimant when it has already paid the general contractor and stated "[t]hat may not be fair to L & N [the property owner], but leaving an innocent subcontractor without *any* payment is too high a price for correcting the inequity placed upon the property owner." (emphasis in original). Thus, it is recognized that under New Jersey's Construction Lien Law, there may be situations where owners who have benefited from work done on their behalf may be inconvenienced and have to pay to make subcontractors whole. Here, we are not even dealing with a lien claim, so there is even less justification for the property owner being able to avoid liability. Indeed, the Construction Lien Law is intended to provide contractors and subcontractors with a *stronger* remedy than an ordinary lawsuit which would result in an unsecured judgment. Here, Control is prevented from utilizing that remedy vis a vis the debtor, due to the Automatic

Stay, but it should not be deprived of the lesser remedy of an ordinary lawsuit against non-debtor parties who have received the full benefit of Control's work, but not paid for it.

## No Unusual Circumstances Are Present
## Which Warrant Extension of the Automatic Stay to Non-Debtors

As this Court is aware, ordinarily, only the debtor enjoys the protection of the Automatic Stay and it may not be invoked by non-debtor entities. See e.g., McCartney v. Integra Nat'l Bank N., 106 F.3d 506, 509-510 (3d Cir.1997). See also, Teachers Ins. & Annuity Ass'n v. Butler, et al., 803 F.2d 61 (2d Cir.1986)("[i]t is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants. It is only in 'unusual circumstances' that courts *may* extend the stay to non-debtor third parties.")(internal citations omitted). The Third Circuit has recognized that "unusual circumstances" exist in two situations: "(1) where there is such identity between the debtor and the third-party defendant that the debtor may be the real party defendant and a that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor, and (2) where stay protection is essential to the debtor's efforts of reorganization." In Re Union Trust Philadelphia, LLC 460 B.R. 644 (2011). See also In Re Uni-Marts, LLC, 404 B.R. 767, 781 (D.Del. 2009), citing to Gray v. Hirsch, 230 B.R. 239, 243 (S.D.N.Y. 1999)("[t]he broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization…[t]he question is whether the action against the non-debtor is sufficiently likely to have a material effect upon reorganization efforts…" (internal citations omitted).

In the instant matter, no such unusual circumstances are present with respect to Control's non-lien claims and indeed, the NWR Entities have failed to identify such unusual circumstances. There is no reasonable standard under which it might be said that Control's claims against the NWR entities might materially and negatively impact the debtor's estate. Or, put another way, that

5

a judgment against NWR Entities would in actuality be a finding against the debtor as explained by the Third Circuit in In Re Union Trust Philadelphia, LLC. Control's claims against the NWR Entities seek, at most, less than $1.3 million dollars.[1] A review of the debtor's initial Bankruptcy Petition indicates that it has between $100,000,001 and $500 million in estimated assets, and between $100,000,001 and $500 million in estimated liabilities, and that there are between 200 and 999 estimated creditors. Assuming *arguendo* that the NWR Entities might in turn have a right of contribution from the debtor's estate (a theory that has not been advanced by the NWR Entities and remains unsupported) in the event that Control were to prevail on its non-lien claims against the NWR Entities in state court, it is impossible that such claim for contribution would materially affect the debtor's estate.

Moreover, that possibility is far too remote for this Court to say that Control's action against the NWR Entities will negatively and materially impact the debtor's reorganization. At the most, such effect will be somewhere between negligible and non-existent. The Court's statements in Gray v. Hirsch, 230 B.R. 239, 243-244 (S.D.N.Y. 1999) are instructive. There, the Court noted first, that "[l]imited or theoretical risk" is insufficient to justify extending the stay to non-debtors, and second, that "in the absence of evidence which demonstrates any impact upon the debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant." Here, the NWR Entities have failed to put forth evidence demonstrating that Control's pursuit of its claims against them will have a material and negative affect on the debtor's estate. Rather, they have simply made an unsupported assertion in an attempt to benefit from protections that they should not be afforded.

---

[1] Control would likely settle for considerably less.

6

The NWR Entities have failed to show that Control's non-lien claims should they prevail, will have any effect on the debtor's reorganization whatsoever. Rather, the NWR Entities make only the barest conclusory assertion that "the NRW entities simply request that this Court to enforce its own order, particularly where the failure to do so will negatively affect the Debtor's estate." ECF Doc. No. 844, ¶ 18. Nothing more is offered to demonstrate how the debtor's estate will be negatively affected by non-lien claims against a solvent non-debtor or how, in the event that Control ultimately prevails on its claims, payments by the NWR Entities would impact the debtor's property, its reorganization and ultimate payments to creditors. Moreover, as set forth above, the appliable standard is not simply whether the impact might be negative, but whether it will also be *material*. As no such material impact has been advance, Control should be permitted to proceed with its non-lien claims and accordingly, the NWR Entities' application should be denied.

## Control's Claims Are Direct Claims Against the Owners

Control's claims, for unjust enrichment and quantum meruit, are direct claims against the NWR Entities. These are quasi-contract claims, as there was no contract between Control, a subcontractor, and the NWR Entities, the owners of the property to which Control provided improvements. Quantum meruit is a form of quasi-contractual recovery "imposed by the law for the purpose of bringing about justice without reference to the intention of the parties," and it is imposed "when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust." New York-Connecticut Development Corp. v. Blinds-To-Go, 449 N.J.Super. 542, 556 (App.Div. 2017). Similarly, a claim for unjust enrichment lies where a party has received a benefit, "and retention of that benefit without payment therefore would be unjust." Associates Commercial Corp. v. Wallia, 211 N.J.Super. 231, 243 (App.Div. 1986).

7

Control's claims are wholly appropriate under the circumstances and seek recovery directly from the project's owners, who benefited from and will continue to benefit from Control's work, without payment.  Control's claims *do not* seek recovery from the assets of the debtor.  That the NWR Entities might eventually seek to recoup funds from the debtor in the event that the NWR Entities are found to be liable to Control is inconsequential to the application of the Automatic Stay on behalf of the NWR Entities, and is purely speculative.  The NWR entities do not cite to any authority which stands for the proposition that direct claims against non-debtors, who might in turn ultimately seek contribution from the debtor, are subject to the automatic stay.  Moreover, the NWR Entities do not cite to any contractual provision for indemnification or contribution.  In the event that Control might obtain judgments against the NWR Entities in state Court, and the NWR Entities were to in turn seek contribution from the debtor (if possible), the NWR Entities would simply have a potential post-petition claim against the debtor like many other frustrated creditors.  If payment were to be made by the NWR Entities to Control, to satisfy a judgment obtained in state court, such payment would *not* come from or reduce the lien fund.  It would not impact other creditors in the bankruptcy, nor would it impact the lien claimants whose monies are to come from the lien fund or other sureties.  Nor would it come from any asset of the debtor, or any receivable that the debtor may assert against the NWR Entities.  Indeed, Control's quasi-contract claims do not relate to any receivable due from the NWR entities to the debtor, now or later.

Even if the NWR Entities were to ultimately assert claims for contribution or indemnification against the debtor, such claims would be no different than those of any other unsecured creditor and would not impact the debtor's estate. The NWR Entities might claim that allowing the Control action to continue in state court might place them in the unfortunate position

8

of being liable to Control while (temporarily) not being able to pursue an action against the debtor. This however, makes them no different than any other party inconvenienced or hurt by the bankruptcy of the debtor. Indeed, Control itself has been found liable to one of its subcontractors (in the sum of $474,187.58[2]) who also filed a valid construction lien, but who cannot simultaneously pursue the lien claim against the debtor that would make it whole. This unfortunate circumstance however, does not support application of the Automatic Stay to a non-debtor in connection with a claim that does not touch on the debtor's property. Nor does it support providing the NWR Entities with remedies that they are not entitled.

### The Viability of Control's State Court Claims is Not an Issue For this Court

The only issue before this Court is whether the Automatic Stay applies to Control's non-lien claims against solvent third-party non-debtors. To the extent that the NWR Entities might have defenses against Control's state court claims, including defenses arising out of the relationship between the NWR Entities and the debtor, the NWR Entities should assert those defenses in state court, where they can be fully adjudicated on their merits. They should not, no matter how robust they may appear, serve as a basis for unwarranted Automatic Stay protection. Notably, the NWR Entities, represented by counsel since the inception of the case, have never moved to dismiss Control's claims, a remedy that they most certainly had available. The merits of the claims should be determined in the state court proceeding, itself.

### Conclusion

For all the foregoing reasons, the motion of the NWR Entities should be denied with respect to Control's non-lien claims against solvent, non-debtors in state court.

---

[2] Control recently filed a motion to amend the state court complaint to add a claim of contribution and indemnification against Arch, for Control's payment of monies to Apple, which ought to have been the obligation of Arch.

Dated: February 6, 2020

        Respectfully Submitted,

        M. ROSS & ASSOCIATES, LLC
        *Attorneys for Control Services, LLC*

        By: _/s/ Michele L. Ross_
        Michele L. Ross, Esq.