RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Tod S. Chasin, Esq.(TC-0122)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962-1981
(973) 538-0800

*Counsel to Newark Warehouse Urban Renewal, LLC and*
*Newark Warehouse Redevelopment Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,<br><br>Debtor. | Hon. Michael B. Kaplan, U.S.B.J.<br><br>Case No.  19-27439 (MBK)<br><br>Chapter 11 |

**SECOND SUPPLEMENTAL OMNIBUS REPLY OF NEWARK WAREHOUSE URBAN RENEWAL, LLC AND NEWARK WAREHOUSE REDEVELOPMENT COMPANY, LLC IN FURTHER RESPONSE TO OPPOSITIONS OF (I) APPLE CORING & SAWING, LLC, (II) CONTROL SERVICES, LLC, (III) DROBACH EQUIPMENT RENTAL, CO., (IV) CITY CONTRACTING, INC., (V) ALLGLASS SYSTEMS, LLC AND (VI) DEHN BROS. FIRE PROTECTION, INC. TO THE NWR ENTITIES' MOTION FOR ENTRY OF AN ORDER DETERMINING THAT CERTAIN PARTIES HAVE VIOLATED THE AUTOMATIC STAY AND FOR OTHER  RELIEF AND TO THE ISSUES RAISED AT THE JANUARY 23, 2020 HEARING REGARDING SAME**

Newark Warehouse Urban Renewal, LLC ("NWUR") and Newark Warehouse Redevelopment Company, LLC ("NWRC") (together, the "NWR Entities"), by and through their undersigned counsel, hereby submit this second supplemental reply (the "Second Supplemental Reply") in response to the Court's request for supplemental briefing at the January 23, 2020 hearing and in further response to the objections filed by: (i) Apple Coring & Sawing, LLC ("Apple") [Docket No. 807] (the "Apple Supplemental Objection"), (ii) Control Services, LLC

("Control") [Docket No. 813] (the "Control Supplemental Objection"), (iii) Drobach Equipment Rental Co. ("Drobach") [Docket No. 783] (the "Drobach Objection"), (iv) City Contracting, Inc. ("City") [Docket No. 815] (the "City Objection"), (v) Allglass Systems, LLC ("Allglass") [Docket No. 817] (the "Allglass Supplemental Objection") and (vi) Dehn Bros. Fire Protection, Inc. (the "Dehn Bros.") [Docket No. 818] (the "Dehn Bros. Supplemental Objection") (collectively the "Objectors") to the NWR Entities' Motion for an Order Determining that Certain Parties Have Violated the Automatic Stay, that Certain Asserted Liens Filed Post-Petition Are Void *Ab Initio*, Confirming the Applicability of the Automatic Stay to the Pending Construction Lien Litigations and for Related Relief [Docket No. 740] (the "NWR Motion") and to the issues raised by the Court and the parties at the January 23, 2020 hearing on the NWR Motion.[1] In support of the Second Supplemental Reply, the NWR Entities respectfully submit as follows:

## BACKGROUND[2]

As the Court is well aware, the Automatic Stay Order that the Court entered at the inception of this case has given rise to significant motion practice. Recently, on January 23, 2020, the Court conducted a hearing on the NWR Motion (the "Second Hearing"), at which time the Court identified and/or the parties discussed a number of issues related to the relief requested by the NWR Entities in the NWR Motion: (i) whether the filing by third parties of post-petition construction liens against the Building are subject to the automatic stay; (ii) whether the enforcement by third parties of pre-petition construction liens filed against the Building on a post-petition basis is subject to the automatic stay; (iii) whether the NWR Entities' termination of

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the NWR Motion.

[2] For a further recitation of the facts and procedural history related to the NWR Motion, the NWR Entities refer the Court to the NWR Motion, the First Omnibus Reply [Docket No. 783] and the Initial Supplemental Reply [Docket No. 844], which are incorporated herein by reference.

their GMP Contract with the Debtor bars the NWR Entities from seeking to enforce the automatic stay with respect to construction lien foreclosure claims against the Building; (iv) whether claims by third parties against the NWR Entities for unjust enrichment or quantum meruit affect the Debtor's estate and are violative of the automatic stay; and (v) whether third parties' enforcement of their alleged lien claims against a bond affects the Debtor's estate and is violative of the automatic stay. Ultimately, after hearing oral argument, the Court reserved decision and advised the interested parties that they would have an additional fourteen (14) days to supplement their submissions to address the foregoing issues.

In response to the Court's invitation for parties to supplement their submissions, the NWR Entities state the following:

## NEW JERSEY CONSTRUCTION LIEN LAW

1. The New Jersey Construction Lien Law was adopted and codified in 1993, and amended in 2010. N.J.S.A. 2A:44A-1 to 2A:44A-38 ("NJ Construction Lien Law"). The Construction Lien Law serves two purposes: (1) to ensure that contractors, subcontractors and suppliers are paid for the work, services and material, or equipment they provide pursuant to a written contract; and (2) to ensure the rights of property owners who have met their financial obligations are protected by preventing them from having to make double payment for work and material. See Craft v. Stevenson Lumber Yard, Inc., 179 N.J. 56, 68 (2004).

2. Pursuant to the NJ Construction Lien Law, any contractor, subcontractor or supplier that provides work, services, material or equipment pursuant to a contract shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price. See N.J.S.A. 2A:44A-3. This lien shall attach to the interest of the owner in real property associated with the

3

contract from and after the time of filing of the construction lien claim. See N.J.S.A. 2A:44A-10.

3. The amount of a lien claim by a subcontractor or supplier is limited to the lesser of the unpaid portion of the original contract between owner and the general contractor or the unpaid portion of the claimant's contract, prior to the owner's receipt of the lien claim. See N.J.S.A. 2A:44A-9; see also AEG Holdings, L.L.C. v. Tri-Gem's Builders, Inc., 347 N.J. Super. 511, 513 (App. Div. 2002).

4. The NJ Construction Lien Law defines the "lien fund" as "the pool of money from which one or more lien claims may be paid." N.J.S.A. 2A:44A-2. "The amount of the lien fund shall not exceed the maximum amount for which an owner can be liable" under the Construction Lien Law. Id. Critically, in the case of a first tier or second tier lien claimant, "the lien fund shall not exceed . . . **the earned amount of the contract between the owner and the contractor** minus any payments made prior to service of a copy of the lien claim." N.J.S.A. 2A:44A-9(b)(1) (emphasis supplied). Consistent with its dual policies of promoting payment to contractors and subcontractors, while protecting owners from liability for double payments or for work not properly performed, the NJ Construction Lien Law expressly provides:

> For purposes of a lien fund calculation, the "earned amount of the contract" is the contract price unless the party obligated to perform has not completed the performance in which case the "earned amount of the contract" is the value, as determined in accordance with the contract, of the work performed and services, material or equipment provided.

N.J.S.A. 2A:44A-9(e). To the same effect, the NJ Construction Lien Law statute reiterates that "no lien fund exists, if, at the time of service of a copy of the lien claim, the owner or community association has fully paid the contractor for the work performed or for services, material or equipment provided." N.J.S.A. 2A:44A-9(d).

4

5. Importantly, upon receipt of notice of a construction lien claim, the owner of the property is authorized to withhold and deduct the amount claimed from the unpaid portion of the contract that is or becomes due and payable to the contractor or subcontractor, or both. See N.J.S.A. 2A:44A-12. Furthermore, "any" payment made by the owner constitutes a payment made on account of the contract price of the contract between the owner and the general contractor. Id.

6. As a result, the issues of lien fund and accounts receivable due under a construction contract are distinct yet related. Payments made by an owner after receiving notice of a lien claim do not reduce the lien fund, but serve to reduce the amount due under the construction contract. See generally N.J.S.A. 2A:44A-9. Thus, the NJ Construction Lien Law places the general contractor (here, the Debtor) in competition with its subcontractors that have filed construction lien claims to receive payment of the limited pool of monies for which the owner of a construction project (here, the NWR Entities) may be held liable under its agreement with the general contractor.

## REPLY TO ARGUMENTS RAISED AT THE SECOND HEARING

### A. Post-Petition Construction Liens are Subject to Automatic Stay

7. For the reasons set forth by the NWR Entities in the First Omnibus Reply and Initial Supplemental Reply, as well as at the Initial Hearing and the Second Hearing, the NWR Entities submit that the filing by third parties of post-petition construction liens are subject to the automatic stay and must be enjoined until a proper assessment of the Debtor's rights and liabilities under the GMP Contract and its Amendment to Construction Management Agreement, dated January 26, 2019 ("GMP Amendment") can be made. See generally In re Linear Electric Co., Inc., 852 F.3d (3d Cir. 2017).

### B. Enforcement by Third Parties of Pre-Petition Construction Liens are Subject to the Automatic Stay

8. For the reasons discussed in the First Omnibus Reply, and in the Initial Supplemental Reply, as well as in the Third Circuit Court of Appeals' decision in <u>Linear Electric</u>, the NWR Entities also submit that the enforcement by third parties of pre-petition construction liens on a post-petition basis is barred by the automatic stay, as that enforcement may further diminish the Debtor's estate.

9. In <u>Linear Electric</u>, the Third Circuit specifically stated that "supporting our conclusion [that the filing of mechanic's liens post-petition violated the automatic stay] are numerous cases from other courts that have considered enforcement (rather than creation or perfection) of mechanic's liens in similar factual circumstances.  In all of these cases, courts have either held or assumed that the liens are against the bankruptcy estate's property interests.  We agree:  The liens here were against Linear Electric's interests in property." <u>Linear Electric</u>, 852 F.3d at 322 and fn. 49.

10. Based upon this logic, to the extent the NWR Entities are determined to be liable to any of the Debtor's subcontractors or material providers, that would serve to reduce any liability that the NWR Entities may have to the Debtor under the GMP Contract.  For this reason, allowing subcontractors or material providers to enforce their construction lien claims certainly could affect property of the estate.

11. In <u>Linear Electric</u>, the Third Circuit specifically cited <u>In re Richardson Builders, Inc.</u>, 123 B.R. 736, 741 (Bankr. W.D. Va. 1990).  In <u>Richardson Builders</u>, the bankruptcy court highlighted the inherent competition between the general contractor and the lienor/subcontractors for payment from the limited lien fund, in language that is directly on point here:

>   Because the subcontractor's claims against the property are limited to the amount by which the owner is indebted to the general contractor, **the amount the owner owes the general will always be an issue in the subcontractor's action**. If the general contractor would be bound by the amount found owing in the subcontactor's suit, then the contractor would be a necessary party in whose absence the litigation ought not to proceed. If the general contractor will not be bound, then the owner of the property may be harmed if the trustee, or someone else acting on behalf of the general contractor, brings a subsequent action for unpaid contract amounts. In such a case, the owner would be subject to a risk of incurring additional and/or inconsistent obligations.

Richardson Builders, 123 B.R. at 740 (emphasis supplied).

12. Likewise, here, the provisions of the NJ Construction Lien Law expressly dictate that the amount, if any, owed by the NWR Entities to the Debtor under the GMP Contract and GMP Amendment will be at issue in each and every construction lien enforcement action prosecuted by any subcontractor or material provider of the Debtor. Moreover, given the fact that the GMP Agreement and the GMP Amendment specifically and unambiguously call for a "guaranteed maximum price," any liability of NWR Entities to any subcontractor, adjudicated in any court, would automatically reduce the Debtor's alleged account receivable owed by the NWR Entities.[3] Of course, that is precisely the sort of "race to the courthouse" that the Bankruptcy Code in general, and the automatic stay in particular, is designed to avoid. Richardson Builders, 123 B.R. at 740.

13. Finally, in this case, the NWR Entities allege that the Debtor was in material breach of the GMP Contract and GMP Amendment well before the NWR Entities terminated those agreements. As a matter of New Jersey contract law, the NWR Entities submit that as of the time of the Debtor's breach, the NWR Entities owed no further performance under the

---

[3] This may be true despite the fact that the Debtor, a necessary party, would not even be participating in the state law construction lien enforcement proceeding. See In re 360 Networks (USA), Inc., 282 B.R. 756, 764 (Bankr. S.D.N.Y. 2001) (debtor likely a necessary party to any construction lien enforcement proceeding).

7

agreements. This point is critical because under the NJ Construction Lien Law, the amount of a construction lien claim by a subcontractor or material provider is limited to the lesser of the unpaid portion of the original contract between owner and the general contractor or the unpaid portion of the claimant's contract, prior to the owner's receipt of the construction lien claim. See N.J.S.A. 2A:44A-9. As detailed above, if it is determined that the NWR Entities did not owe anything to the Debtor at the time the subcontractors or material providers filed their respective construction liens, then there is no lien fund, and therefore there cannot be a construction lien claim as a matter of law. N.J.S.A. 2A:44A-9(d, e). Consequently, to allow these issues to be litigated in multiple, separate state court actions, possibly to inconsistent results, would be directly at odds with the policy of centralized and orderly administration of the Debtor's estate and affairs, which the Bankruptcy Code in general and the automatic stay in particular are designed to promote.

### C. The NWR Entities' Termination of the GMP Contract Does Not Bar the NWR Entities from Seeking to Enforce the Automatic Stay

14. Certain of the Objectors have also contended that the NWR Entities are purportedly estopped from seeking to enforce the automatic stay with respect to the prosecution of construction lien foreclosure claims as a result of the NWR Entities' termination of the GMP Contract. However, as was set forth in the Initial Supplemental Reply, and elaborated at both the Initial Hearing and Second Hearing, the GMP Contract and GMP Amendment, on the one hand, and the Debtor's alleged accounts receivable due from the NWR Entities under those agreements, on the other hand, which is clearly property of the estate, are separate and distinct. The NWR Entities' termination of those agreements, which this Court declared to be effective as of the Petition Date, does not in any way bar the Debtor's attempt to collect an alleged account receivable from the NWR Entities. To the contrary, and as set forth above, as the Third Circuit

expressly determined in Linear Electric, an alleged account receivable is property of the estate, and any impairment or reduction of that alleged account receivable would reduce amounts allegedly due to the estate based on the alleged unpaid portion of the GMP Contract. For these reasons, any post-petition prosecution by third parties of construction lien actions acts "to obtain property of the estate or from the estate or to exercise control over property of the estate," and as such is stayed pursuant to Section 362(a)(3) of the Bankruptcy Code.

**D. Recovery Against the NWR Entities for Unjust Enrichment or Quantum Meruit Claims Would Negatively Impact the Debtor's Estate**

15. At the Second Hearing, the Court specifically questioned whether claims against the NWR Entities for unjust enrichment or quantum meruit negatively impact the Debtor's estate. Generally, the NWR Entities submit that, to the extent the NWR Entities (and/or Arch) are potentially held liable for such claims, it would reduce any account receivable owed to the Debtor. See N.J.S.A. 2A:44A-9, 12. As was discussed in the First Omnibus Reply, the Third Circuit in Linear Electric held that where the lien claim payment process allows a subcontractor to collect its recovery by subtracting from a debtor/general contractor's accounts receivable that are due for the value of the materials or services provided under the subcontracts, such an attempt to collect against the debtor's accounts receivable violates the automatic stay because the accounts receivable are property of the debtor's estate. Linear Electric, 852 F.3d at 321-23. Here, pursuant to N.J.S.A. 2A:44A-12, should any of the Objectors obtain relief against the NWR Entities, as a result of unjust enrichment, quantum merit or otherwise, the NWR Entities would be entitled to deduct the awarded amount from the contract price, i.e., the account receivable purportedly owed to the Debtor.

16. Moreover, as discussed, given the fact that the GMP Contract is a "guaranteed maximum price" contract, any funds paid by the NWR Entities to subcontractors or

material providers would automatically reduce the NWR Entities' liability, if any, to the Debtor without the need to assert any claim against the Debtor for reimbursement, indemnity, or recoupment.

17. Finally, even putting aside the fact that the GMP Contract is a "guaranteed maximum price" contract, the Debtor's alleged account receivable would be reduced by any recovery on an unjust enrichment claim[4] because payments made to any subcontractor or material provider on such a claim would reduce any amounts allegedly owed to the Debtor under the GMP Contract. See N.J.S.A. 2A:44A-9, 12.

### E. Third Parties' Enforcement of a Construction Lien Against a Bond Affects the Debtor's Estate

18. Finally, at the Second Hearing, the Court expressly questioned whether third parties' enforcement of their alleged construction lien claims against a bond affects the Debtor's estate and therefore would be subject to the automatic stay. When a construction lien is bonded, the construction lien is released and discharged from the claim as against real property and no execution shall issue against the improvements and land of the owner. See N.J.S.A. 2A:44A-32. However, the surety may then possess a right of "equitable subrogation" to compensate it for any payment it may make under its bond. Under equitable subrogation, "a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to reimbursed." Travelers Cas. & Sur. Co. of Am. v. Colonial Sch. Dist., 18167, 2001 WL 287482, at *4 (Del. Ch. Mar. 16, 2001) (citing Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137 (1962).). "Moreover, the right of the contractor's surety to be subrogated with respect to

---

[4] Unjust enrichment/quantum meruit claims by subcontractors or materialmen against the NWUR Entities are deficient as a matter of law, in any event, since none of those plaintiffs had any reasonable basis to expect payment **from the NWR Entities.** See e.g., Ash Maple, LLC v. Jeral Constr. Co., Inc., 2019 WL 2495678 (App. Div. 06/17/19); Insulation Contracting and Supply v. Kravco, Inc., 209 N.J. Super. 367, 376-77 (App. Div. 1986).

unpaid funds is usually regarded as superior to the claims of general creditors, the contractor or his receiver or trustee, the assignee of funds due under the contract, and various other persons." Id. at *5. Accordingly, Arch, as surety, could potentially allege superior rights to recover from the NWR Entities any amounts it pays on account of an Objector's alleged construction lien. For the same reasons described above, any such relief granted to Arch would affect the amount owed by the NWR Entities to the Debtor, and therefore the subcontractors' claims against Arch on its bonds cannot be allowed to proceed.

19. For these reasons, and for the reasons set forth in the First Omnibus Reply and Initial Supplemental Reply, the NWR Entities submit that any attempt to enforce a construction lien claim against a bond would affect the Debtor's estate and should therefore be barred by the automatic stay.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the NWR Entities respectfully request that the Court grant the NWR Motion, together with such other and further relief as is just and equitable.

Dated: February 6, 2020
Morristown, New Jersey

                                           RIKER DANZIG SCHERER HYLAND
                                           & PERRETTI LLP

                                           By: /s/ *Joseph L. Schwartz*
                                                  Joseph L. Schwartz

                                           Joseph L. Schwartz, Esq. (JS-5525)
                                           Tod S. Chasin, Esq. (TC-0122)
                                           Tara J. Schellhorn, Esq. (TS-8155)
                                           Headquarters Plaza
                                           One Speedwell Avenue
                                           Morristown, New Jersey 07962-1981
                                           (973) 538-0800

*Counsel to Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC*

5107783v4