RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (JS-5525)
Tod S. Chasin, Esq. (TC-0122)
Tara J. Schellhorn, Esq. (TS-8155)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962-1981
(973) 538-0800

*Counsel to Newark Warehouse Urban Renewal, LLC and*
*Newark Warehouse Redevelopment Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,<br><br>                                           Debtor. | Hon. Michael B. Kaplan, U.S.B.J.<br><br>Case No.  19-27439 (MBK)<br><br>Chapter 11 |

**OBJECTION OF NEWARK WAREHOUSE URBAN RENEWAL, LLC AND NEWARK WAREHOUSE REDEVELOPMENT COMPANY, LLC TO MOTION OF MIXONSITE USA, INC. TO MODIFY STAY TO PERMIT PROSECUTION OF CONSTRUCTION LIEN CLAIM FORECLOSURE ACTION**

Newark Warehouse Urban Renewal, LLC ("NWUR") and Newark Warehouse Redevelopment Company, LLC ("NWRC") (together, the "NWR Entities"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the Motion of MixOnSite USA, Inc. ("MixOnSite") for an Order Modifying the Automatic Stay to Permit the Prosecution of a Previously-Filed Construction Lien Claim Foreclosure Action [Docket No. 848] (the "MixOnSite Motion").  In support of the Objection, the NWR Entities respectfully submit as follows:

**PRELIMINARY STATEMENT**

Approximately one month ago, the NWR Entities filed a Motion for an Order Determining that Certain Parties Have Violated the Automatic Stay, that Certain Asserted Liens Filed Post-Petition Are Void *Ab Initio*, Confirming the Applicability of the Automatic Stay to the Pending Construction Lien Litigations and for Related Relief [Docket No. 740] (the "NWR Motion"),[1] which seeks, among other things, to reconfirm and enforce the automatic stay with respect to, *inter alia*, various state court construction lien actions related to the Project, as was previously ordered by this Court.  The NWR Motion has been fully briefed and argued, with the Court having reserved decision.  MixOnSite did not respond to the NWR Motion.  Instead, MixOnSite now files its own motion seeking relief from the automatic stay in order to continue its state court construction lien litigation related to the Project.

As an initial matter, the NWR Entities submit that the Court should either deny or not render a decision on the MixOnSite Motion until it first decides the NWR Motion, which raises overlapping, if not identical, issues as the MixOnSite Motion.  Further, and most importantly, despite MixOnSite's contentions, "cause" does not exist under to 11 U.S.C. § 362(d) to allow MixOnSite to continue to pursue its claims in the MixOnSite State Court Action, because those claims threaten to materially prejudice the Debtor's estate.  In particular, MixOnSite's enforcement of its alleged construction lien and other claims directly impacts and threatens to materially prejudice the Debtor's asserted account receivable under its GMP Contract and GMP Amendment with the NWR Entities, which alleged account receivable is the subject of a pending adversary proceeding.  As a result, the orderly administration of the Debtor's estate dictates that the Debtor's alleged account receivable be determined prior to any state court determination on

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the NWR Motion.

construction lien and related issues. For these reasons, and for those set forth herein, the MixOnSite Motion must be denied.

## BACKGROUND

### A. The Bankruptcy Case and Automatic Stay Order.

1. On September 11, 2019 (the "Petition Date"), the Debtor filed the above-captioned bankruptcy case (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of New Jersey (the "Court").

2. On September 23, 2019, in response to the Debtor's first day request to have the Court enforce both the automatic stay provisions of the Bankruptcy Code and the Third Circuit Court of Appeals' decision in In re Linear Electric Co., Inc., 852 F.3d (3d Cir. 2017), the Court entered an Order (I) Restating and Enforcing the Automatic Stay, Anti-Discrimination Provisions, and *Ipso facto* Protections of the Bankruptcy Code, (II) Approving the Form and Manner of Notice Related Thereto, and (III) Granting Related Relief [Docket No. 140] (the "Automatic Stay Order"). The Automatic Stay Order expressly and unambiguously provides, among other things, that all parties are stayed and enjoined from "commencing or continuing" or "taking any action . . . to file, continue litigation, enforce and/or collect on construction or mechanics liens from third-party real property owners on construction projects for services performed for or on behalf of the Debtor." See Docket No. 140 at ¶ 3.

### B. The MixOnSite State Court Action.

3. Prior to the Petition Date, on or about January 23, 2018, the Debtor entered into a subcontract with MixOnSite (the "Subcontract"), which apparently was later amended, for MixOnSite's performing of certain concrete work on a project owned by the NWR Entities (the

"Project") located at 110 Edison Place, Newark, New Jersey 07102 (the "Property). See State Court Complaint, Docket No. 848-1 at ¶¶ 9-13, 16.

4. MixOnSite alleges that it completed all of the work required under the amended Subcontract, but that the Debtor paid only a portion of the amount due and owing to MixOnSite. As a result, on or about February 25, 2019, MixOnSite filed a construction lien claim against the Property. See Docket No. 848-1 at 17.

5. Thereafter, on or about July 3, 2019, MixOnSite initiated a state court action in the Superior Court of New Jersey, in Essex County (the "State Court"), styled *MixOnSite USA, Inc. v. Newark Warehouse Redeveloper Company, LLC, et al.*, Docket No. ESX-L-4884-19 (the "MixOnSite State Court Action"), through which MixOnSite sought, among other things, (i) to enforce its alleged construction lien against the Debtor, the NWR Entities and Edison Properties, LLC ("Edison");[2] (ii) relief against the Debtor for breach of contract; (iii) *quantum meruit* relief against the Debtor, the NWR Entities and Edison for the value of materials and services provided on the Project; (iv) relief against the Debtor, the NWR Entities and Edison for unjust enrichment; and (v) relief against the Debtor for violating the New Jersey Prompt Payment Act. See id. at 3-16.

6. In response to the Automatic Stay Order, on October 25, 2019, the State Court entered an order staying MixOnSite's State Court Action. See Docket No. 848-2.

**C. Motion Practice Related to the Automatic Stay Order.**

7. As the Court will recall, despite the entry of the Automatic Stay Order, various of the Debtor's subcontractors, materialmen and/or suppliers improperly filed post-petition construction liens and/or improperly continued to prosecute state court actions to enforce pre-

---

[2] Edison and the NWR Entities are affiliated entities.

petition constructions liens related to the Debtor's various projects located in the State of New Jersey.

8. As a result, on December 20, 2019, the Debtor filed a motion, on shortened time, seeking an order from the Court: (i) determining that certain parties violated the automatic stay of section 362(a) of the Bankruptcy Code, (ii) that those asserted construction liens filed by those parties were void *ab initio* and should be released or discharged, and (iii) granting related relief to the Debtor, including the recovery of attorneys' fees and costs [Docket No. 692] (the "Debtor's Motion"). On January 2, 2020, the Court entered an Order granting the Debtor's Motion [Docket No. 730]. However, the Debtor's Motion did not address improper actions taken by the Debtor's subcontractors, materialmen or suppliers pertaining to the NWR Entities' Property.

9. On January 6, 2020, the NWR Entities filed the NWR Motion, which seeks, among other things, to reconfirm and to enforce the automatic stay with respect to, among other things, various state court construction lien actions related to the Project, as previously ordered by this Court.[3]

10. Prior to the originally-scheduled date, i.e. January 9, 2020, for the hearing on the NWR Motion (the "Initial Hearing"), several parties filed responses and/or objections to the NWR Motion. In response, the NWR Entities filed an omnibus reply [Docket No. 761] (the "First Omnibus Reply") to those objections. On the date of the Initial Hearing, the Court adjourned the hearing on the NWR Motion to January 23, 2020 to allow all affected parties-in-interest to file responses to the NWR Motion.

---

[3] The NWR Entities originally filed a limited objection to the Debtor's Motion requesting that the Debtor's Motion should only be granted if the NWR Entities were granted similar relief. See Docket No. 723. However, at the January 2, 2020 hearing on the Debtor's Motion, the Court directed the NWR Entities to file their own motion for the relief requested by way of the NWR objection.

11.     Between the Initial Hearing and the January 23, 2020 hearing on the NWR Motion (the "Second Hearing"), several parties filed objections to the NWR Motion, to which the NWR Entities thereafter filed a Supplemental Omnibus Reply [Docket No. 844] (the "Initial Supplemental Reply").  At the Second Hearing, the Court raised a number of concerns, including: (i) whether third parties' enforcement of pre-petition construction liens on a post-petition basis against bonds is subject to the automatic stay; and (ii) whether third parties' claims against the NWR Entities for unjust enrichment or quantum meruit affect the Debtor's estate. Ultimately, after hearing oral argument, the Court reserved decision and provided interested parties additional time to supplement their submissions to the Court and address the issues discussed at the Second Hearing.  On February 6, 2020, the NWR Entities submitted their Second Supplemental Omnibus Reply [Docket No. 913] (the "Second Supplemental Reply") to the Court, which further addresses issues discussed at the Second Hearing.  City Contracting, Inc. and Control Services, LLC also submitted further responses [Docket Nos. 908 and 911].

12.     MixOnSite did not file any responses to the NWR Motion.

13.     As of the filing of the Objection, the Court has not yet rendered a decision on the NWR Motion.

### D.     The MixOnSite Motion.

14.     Having not opposed the NWR Motion, on January 23, 2020 MixOnSite instead filed the MixOnSite Motion, wherein MixOnSite seeks relief from the automatic stay to pursue its construction lien and related claims against the NWR Entities and Edison.  See Docket No. 848.  In the MixOnSite Motion, MixOnSite asserts that it is entitled to relief from the automatic stay because its construction lien claims and other claims are purportedly unrelated to the Debtor's bankruptcy case and supposedly will in no way impact the Debtor's estate.

15. On January 24, 2020, the Court entered an Order Granting MixOnSite's Application to Shorten Time and scheduled a hearing on the MixOnSite Motion for February 13, 2020. [Docket No. 854.]

## OBJECTION

### A. "Cause" Does Not Exist to Grant Relief from the Automatic Stay.

16. MixOnSite asserts that "cause" exists to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) because it seeks to pursue its construction lien rights and other claims against non-debtor entities, which MixOnSite contends will not affect the estate. See MixOnSite Motion, Docket No. 848 at ¶¶ 26-31.

17. The automatic stay is one of the most fundamental protections afforded by the Bankruptcy Code. See Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protc., 474 U.S. 494, 503 (1986). It prevents the continuation of any proceeding against the debtor or against "property of the estate," which is defined broadly to include all legal or equitable interests of the debtor in the property as of the commencement of the case. See 11 U.S.C. §§ 362(a) and 541; In re Atlantic Bus. & Cmty. Corp., 901 F.2d 325, 327 (3d Cir.1990).

18. Section 362(d)(1) provides:

> (d) On the request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d)(1).

19. "Cause" under § 362(d)(1) is a broad and flexible concept that must be determined on a case-by-case basis. See In re Porter, 371 B.R. 739, 744 (Bankr. E.D. Pa. 2007);

In re Henry, 173 B.R. 878, 882 (Bankr. D.N.J. 1993); In re St. Clair, No. 08-27884 MBK, 2011 WL 6888369, at *2 (Bankr. D.N.J. Dec. 29, 2011) (Kaplan, J.). Bankruptcy courts in this district use a three-pronged balancing test to determine whether "cause" exists to grant relief from the automatic stay:

> i. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> ii. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and
>
> iii. Whether the creditor has a probability of prevailing on the merits.

In re Tribune Co., 418 B.R. 116, 126 (Bankr. D. Del. 2009).

20. For the reasons discussed below, the NWR Entities submit that "cause" pursuant to 11 U.S.C. § 362(d)(1) does not exist to grant MixOnSite relief from the automatic stay.

**1. Continued Prosecution of MixOnSite's Construction Lien and Other Claims Against the NWR Entities and/or Edison Will Prejudice the Debtor and its Estate.**

21. Like other construction lien holders, MixOnSite argues that, because the claims it seeks to pursue are against non-debtor third parties, and not against the Debtor, the continued prosecution of such claims purportedly will not impact the Debtor and its estate. See MixOnSite Motion, Docket No. 848 at ¶¶ 23-25.

22. Contrary to MixOnSite's contentions, the Third Circuit in Linear Electric held that:

> under New Jersey law, the value of the liens depended on the amount that the contractor owed to the suppliers under their contracts and on the value of the contractor's accounts receivable. The District Court then affirmed the Bankruptcy Court's conclusion that the accounts receivable were part of the bankruptcy estate because they complied with the definition of property of the

estate under 11 U.S.C. § 541 and because the ability of a supplier to create a construction lien depended on the existence of the bankrupt contractor's accounts receivable. For that reason, the Bankruptcy Court held that the automatic stay prevented filing the liens. The District Court affirmed. We agree and will also affirm.

852 F.3d. at 316.

23. Additionally, in Linear Electric, the Third Circuit specifically stated that "supporting our conclusion [that the filing of mechanic's liens post-petition violated the automatic stay] are numerous cases from other courts that have considered enforcement (rather than creation or perfection) or mechanic's liens in similar factual circumstances. In all of these cases, courts have either held or assumed that the liens are against the bankruptcy estate's property interests. We agree: The liens here were against Linear Electric's interests in property." Id. at 322 and fn. 49.

24. Further, in Linear Electric, the Third Circuit specifically cited In re Richardson Builders, Inc., 123 B.R. 736, 741 (Bankr. W.D. Va. 1990). In Richardson Builders, the bankruptcy court highlighted the inherent competition between the general contractor and the lienor/subcontractors for payment from the limited lien fund, in language that is directly on point here:

> Because the subcontractor's claims against the property are limited to the amount by which the owner is indebted to the general contractor, **the amount the owner owes the general will always be an issue in the subcontractor's action.** If the general contractor would be bound by the amount found owing in the subcontractor's suit, then the contractor would be a necessary party in whose absence the litigation ought not to proceed. If the general contractor will not be bound, then the owner of the property may be harmed if the trustee, or someone else acting on behalf of the general contractor, brings a subsequent action for unpaid contract amounts. In such a case, the owner would be subject to a risk of incurring additional and/or inconsistent obligations.

Richardson Builders, 123 B.R. at 740 (emphasis supplied).

25. In <u>Richardson Builders</u>, the bankruptcy court also discussed policy reasons to support the imposition of the automatic stay to subcontractor enforcement actions when the general contractor filed for bankruptcy: "If the amount that the general contractor is indebted to the subcontractors is greater than the amount that the owner owes the general contractor, failure to stay subcontractor actions will cause a race to the courthouse." <u>Richardson Builders</u>, 123 B.R. at 740.

26. Accordingly, for the reasons discussed in the First Supplemental Reply and the Second Supplemental Reply, any relief granted to MixOnSite against the NWR Entities or Edison in the MixOnSite State Court Action, whether in connection with a construction lien claim or for unjust enrichment or *quantum meruit,* would negatively impact the Debtor's estate. In particular, if the NWR Entities or Edison are found liable to MixOnSite and are ordered to pay MixOnSite, this would, in turn, reduce any account receivable owed to the Debtor. Such a result would unquestionably prejudice the Debtor's estate. <u>See</u> N.J.S.A. 2A:44A-12.

27. The provisions of the NJ Construction Lien Law expressly dictate that the amount, if any, owed by the NWR Entities to the Debtor under the GMP Contract and GMP Amendment will be at issue in each and every construction lien enforcement action prosecuted by any subcontractor or material provider of the Debtor. Moreover, given the fact that the GMP Agreement and the GMP Amendment specifically and unambiguously call for a "guaranteed maximum price," any liability of NWR Entities to any subcontractor, adjudicated in any court, would reduce the Debtor's alleged account receivable owed by the NWR Entities.

28. Currently, it is unknown what the indebtedness of the Debtor to its subcontractors or the indebtedness of the NWR Entities to the Debtor (if any) may be. Consequently, if the Court allows these issues to be litigated in multiple, separate state court actions, possibly to

inconsistent results, this would be directly at odds with the policy of centralized and orderly administration of the Debtor's estate and affairs, which the Bankruptcy Code in general and the automatic stay in particular are designed to promote.

### 2. **MixOnSite Will Not Suffer Any Hardship Because Its Lien Rights are Protected.**

29. The second factor courts consider when determining whether "cause" exists to lift the automatic stay is whether the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship to the debtor. Tribune Co., 418 B.R. at 126.

30. MixOnSite argues that it should be granted relief from the automatic stay so that it can protect its lien rights and possibly consolidate them with other construction lien foreclosure actions in the interest of judicial efficiency. See MixOnSite Motion, Docket No. 848 at ¶ 23. Not surprisingly, MixOnSite has not identified any harm that would be imposed should the Court deny the MixOnSite Motion. This is because there would be no harm to MixOnSite.

31. In support of its position, MixOnSite relies upon In re 360 Networks (USA), Inc., 282 B.R. 756 (Bankr. S.D.N.Y. 2001) for the proposition that courts have modified the automatic stay to allow creditors to proceed with the enforcement of their construction lien claims against the debtor or third parties in interest. See MixOnSite Motion, Docket No. 848 at ¶ 27. However, MixOnSite misconstrues the court's holding in 360 Networks and, as a result, its reliance on that decision is misplaced.

32. Where a state law requires a construction lien claimant to perfect its interest (by filing a state court complaint) within a specific time period, section 546(b) of the Bankruptcy Code allows claimants who filed their construction liens prepetition to perfect their interest by giving notice within the time period proscribed by the state law. See 11 U.S.C. § 546(b). Because the court in 360 Networks found section 546(b) only protected the construction lien

claimants' rights against the debtor lessor of the property and not against the third party owners, the bankruptcy court granted relief from the automatic stay to allow the construction lien holder to preserve its rights by filing its state court actions against the debtor and third party owners within the 90- and 120-day windows prescribed pursuant to Oregon and California state law. See 360 Networks, 282 B.R. at 764-65. The court further held that once the construction lienholder filed its state court actions, thereby preserving its rights, the actions would thereafter remain stayed. Id. at 765.

33. Relying upon the foregoing, MixOnSite suggests that the bankruptcy court in 360 Networks retained the protections of the automatic stay only as to any further action against the debtor, but did not extend that protection to other third parties in interest. See MixOnSite Motion, Docket No. 848 at ¶ 27.

34. MixOnSite's reading is incorrect. The 360 Networks court expressly held:

> [The] [movant] is granted limited relief from the automatic stay, pursuant to § 362(d)(1) of the Bankruptcy Code, **solely** in order to file one or more actions in State court in order to continue and/or enforce its alleged liens against one or more of the Debtors as well as one or more third parties, and to cause process to be served on all defendants named in such suit(s), including the Debtors, **but absent further order of this Court, neither [the] [construction lien] [holder] nor any other party to such suit(s) may proceed further, and the automatic stay of § 362(a) of the Bankruptcy Code remains in full force and effect as to any such further action.**

360 Networks, 282 B.R. at 765 (emphasis added).

35. Here, MixOnSite filed its construction lien claim and the MixOnSite State Court Action prior to the Petition Date. As a result, at the time of the Debtor's filing of this bankruptcy case, MixOnSite already preserved its rights against the Debtor, the NWR Entities and Edison.

36. Furthermore, the 360 Networks court acknowledged that section 546(b) allowed construction lien holders to preserve their rights without burdening the debtors with the expense of litigation on motions for relief from the automatic stay. Id. at 763. It also acknowledged that other courts could find that the debtor is a necessary party to any construction lien enforcement proceedings. Id. at 764. It would have been inconsistent for the bankruptcy court to attempt to further the purpose of section 546(b) by granting limited relief from the automatic stay, only to then permit the continuation of multiple proceedings where the debtor could potentially be a necessary party.

37. Additionally, given the fact that MixOnSite would suffer no harm by the continuation of the automatic stay, the balance of hardships heavily favor the estate over MixOnSite. In re Aleris Int'l, Inc., 456 B.R. 35, 48 (Bankr. D. Del. 2011).

38. Accordingly, the NWR Entities submit that MixOnSite's alleged construction lien rights are fully protected and that it is both in the best interest of all parties and in the interest of judicial efficiency to further stay any continued prosecution of MixOnSite's construction lien and/or related claims.

### 3. MixOnSite is Unlikely to Prevail on the Merits.

39. The final factor courts consider when determining whether "cause" exists to grant relief from the automatic stay is whether the creditor has a probability of prevailing on the merits. In re Tribune Co., 418 B.R. at 126.

40. MixOnSite asserts that its claims are undisputed and thus, relief from the automatic stay should be granted. The NWR Entities disagree and submit that they have full defenses, including, most pertinently here, that as of the time the MixOnSite filed its construction lien, the NWR Entities did not owe the Debtor any further payments under the GMP

Contract and the GMP Amendment, and therefore no "lien fund" exists for the benefit of subcontractors or material providers such as MixOnSite as a matter of law.

41. For these reasons, and for the reasons set forth in the First Omnibus Reply, the Initial Supplemental Reply and the Second Supplemental Reply, the NWR Entities submit that the continued prosecution of MixOnSite's construction lien or related claims against the NWR Entities or Edison would prejudice the Debtor's estate. Accordingly, "cause" does not exist to modify the automatic stay to permit MixOnSite to prosecute the MixOnSite State Court Action.

**B.   MixOnSite's Reliance on Other Stay Relief Motions in the Case is Misplaced.**

42. MixOnSite also suggests that since other creditors have obtained relief from the automatic stay to pursue foreclosure actions related to the Project, MixOnSite should be also granted the same relief. See MixOnSite Motion, Docket No. 848 at ¶ 22. Notably, MixOnSite appears to assert that three different parties have received relief from the automatic stay related to the Project. See Motion, Docket No. 848 at ¶ 22 (citing City Contracting, Inc.'s Motion to Modify Stay to Permit Commencement and Prosecution of Construction Lien Claim Foreclosure Actions [Docket No. 209] ("City's Stay Relief Motion"), MDS Construction's Joinder to City's Stay Relief Motion [Docket No. 353] and Herc Rentals, Inc.'s Joinder to City's Stay Relief Motion [Docket No. 388]). However, as of the filing of this Objection, only City Contracting, Inc. has been granted relief from the automatic stay. See City Stay Relief Order, Docket No. 565.

43. As previously discussed by the NWR Entities in the Initial Supplemental Reply, although the NWR Entities did not object to City's Stay Relief Motion, the current issues were not properly framed before the Court. Specifically, as detailed in Linear Electric, the continued prosecution of a subcontractor's pre-petition construction lien and related claims, for unjust

14

enrichment and *quantum meruit*, such as asserted in MixOnSite's State Court Action, threaten to significantly and detrimentally impact the Debtor's alleged account receivable against the NWR Entities, thereby negatively affecting the estate.

### C. The MixOnSite Motion Should be Denied Pending a Ruling on the NWR Motion.

44. For whatever reason, MixOnSite failed to respond to the NWR Motion, despite having ample opportunity to do so. As the Court is well aware, the NWR Motion has been the subject of multiple hearings and extensive briefing. As of the date of the filing of this Objection, the Court has not yet rendered a decision on the NWR Motion.

45. Instead, weeks after the NWR Entities filed the NWR Motion, MixOnSite filed the MixOnSite Motion. Many of the issues raised in the MixOnSite Motion are overlapping, if not identical, to those presented in connection with the NWR Motion. As a result, the NWR Entities submit, at a minimum, that the Court should either deny the MixOnSite Motion outright (because no "cause" exists to grant relief from the automatic stay) or order that the stay shall continue in effect pending the conclusion of the hearing on the MixOnSite Motion, based on "compelling circumstances," in accordance with 11 U.S.C. § 362(e)(1).

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the NWR Entities respectfully request that the Court deny the MixOnSite Motion, and grant the NWR Entities such other and further relief as the Court deems just and equitable.

Dated: February 10, 2020
Morristown, New Jersey

        RIKER DANZIG SCHERER HYLAND
        & PERRETTI LLP

        By: /s/ *Joseph L. Schwartz*
           Joseph L. Schwartz

        Joseph L. Schwartz, Esq. (JS-5525)
        Tod S. Chasin, Esq. (TC-0122)
        Tara J. Schellhorn, Esq. (TS-8155)
        Headquarters Plaza
        One Speedwell Avenue
        Morristown, New Jersey 07962-1981
        (973) 538-0800

        *Counsel to Newark Warehouse Urban Renewal,*
        *LLC and Newark Warehouse Redevelopment*
        *Company, LLC*

5110560v4