**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to Defendant, Counterclaimant, and Third-Party Plaintiff*
*Hollister Construction Services, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC,[1]<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK) |
| In re:<br><br>NEWARK WAREHOUSE URBAN RENEWAL, LLC and NEWARK WAREHOUSE REDEVELOPMENT COMPANY, LLC,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC, CHRISTOPHER JOHNSON, KIERAN FLANAGAN, BRENDAN MURRAY, JOHN DOES 1-100, JANE DOES 1-100, and XYZ CORPORATIONS 1-100,<br><br>　　　　　　　Defendants. | Adv. Pro. No. 19-02222 (MBK)<br><br><br><br><br><br>Hearing Date: March 5, 2020 at 10:00 a.m. (ET)<br><br>Objection Deadline: February 27, 2020 at 4:00 p.m. (ET) |

---

[1] The debtor in this Chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

HOLLISTER CONSTRUCTION SERVICES, LLC,

                     Counterclaimant,

v.

NEWARK WAREHOUSE URBAN RENEWAL, LLC and NEWARK WAREHOUSE REDEVELOPMENT COMPANY, LLC,

                     Counterclaim Defendants.

HOLLISTER CONSTRUCTION SERVICES, LLC,

                     Third-Party Plaintiff,

v.

EDISON CONSTRUCTION MANAGEMENT, LLC and PASQUALE SURIANO,

                     Third-Party Defendants.

**DEBTOR'S OPPOSITION TO THE NWR ENTITIES' MOTION
FOR AN ORDER REMANDING STATE COURT ACTION
TO THE SUPERIOR COURT OF NEW JERSEY OR, IN THE
ALTERNATIVE, ABSTAINING FROM EXERCISING JURISDICTION
OVER THE STATE COURT ACTION**

Hollister Construction Services, LLC ("Hollister" or "Debtor"), a defendant, counterclaimant, and third-party plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding"), by and through its undersigned counsel, submits this opposition (the "Opposition") to the *Motion of Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC* (together, the "NWR Entities") *for an Order Remanding State Court Action to the Superior Court of New Jersey or, in the Alternative, Abstaining from*

*Exercising Jurisdiction over the State Court Action* (the "Remand Motion").[2]  In support of its

Opposition, Hollister respectfully states as follows:

## PRELIMINARY STATEMENT[3]

The NWR Entities seek to remand this Adversary Proceeding, which the Debtor properly removed to this Court, asserting that the claims therein are simply "garden variety" state law claims that are, at best, "related to" the Debtor's Chapter 11 Case.  At the same time, in the main bankruptcy proceeding, the NWR Entities filed a Proof of Claim that is based on the very same facts underlying the the NWR Entities' Claims in the Complaint.  Moreover, the NWR Entities repeatedly invoke this Court's jurisdiction and ask the Court to use its equitable powers to rule in the NWR Entities' favor on issues arising from the same facts at issue in the Adversary Proceeding.  As they have done before in this Chapter 11 Case, the NWR Entities seek to have their proverbial cake and eat it too.  Simply put, remand of and/or abstention from exercising jurisdiction over the Adversary Proceeding is inappropriate.  First, the Adversary Proceeding is core and mandatory abstention does not apply.  Furthermore, due to the substantive issues of bankruptcy law in the Adversary Proceeding and the significant impact that resolution of the claims therein will have on the administration of the Chapter 11 Case, permissive abstention and equitable remand are not warranted.  Accordingly, this Court can and should exercise jurisdiction over this Adversary Proceeding and the claims therein, and the Remand Motion must be denied.

---

[2] Case No. 19-27439 (the "Main Case"), Docket No. 1; Adv. Pro. No. 19-02222 ("Adv. Pro."), Docket No. 5.  All citations to the docket refer to the Main Case unless otherwise indicated.
[3] Capitalized terms not otherwise defined in this Section shall have the meaning ascribed to them in this Opposition.

## RELEVANT BACKGROUND

### a. *The Project Contract*

1.      On or about April 20, 2017, Newark Warehouse Urban Renewal, LLC and Hollister entered into an *Agreement for Construction Management Services and Guaranteed Maximum Price* (together with all amendments, the "Project Contract") for construction management services on a project involving the renovation of a building located at 110 Edison Place, Newark, New Jersey (the "Ironside Project").

2.      On September 5, 2019, the NWR Entities filed a complaint (the "Complaint") against Hollister and certain of its members in the Superior Court of New Jersey, Law Division, Essex County (the "State Court"), captioned as *Newark Warehouse Urban Renewal, LLC et al. v. Hollister Construction Services, LLC et al.,* Docket No. ESX-L-006514-19 (the "State Court Action"). In the Complaint, the NWR Entities asserted various causes of action against Hollister arising out of the Ironside Project, including breach of contract, negligence, fraud, breach of the *New Jersey Consumer Fraud Act*, N.J.S.A. 56:8-2, breach of the implied covenant of good faith and fair dealing, and intentional and negligent misrepresentation (the "Claims").

### b. *The Chapter 11 Case*

3.      On September 11, 2019 (the "Petition Date"), less than one week after the NWR Entities commenced the State Court Action, Hollister filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Court"), Case No. 19-27439 (MBK) (the "Chapter 11 Case").[4]

---

[4] Main Case, Docket No. 1.

4.      Hollister continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner.

5.      On September 23, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in the Chapter 11 Case.[5]

### c.  *Removal of the State Court Action and Hollister's Answer, Counterclaim, and Third-Party Complaint*

6.      On October 9, 2019, Hollister filed a *Notice of Removal* in the United States District Court for the District of New Jersey (the "District Court"), removing the State Court Action to the District Court.[6]

7.      On October 24, 2019, the District Court referred the State Court Action to this Court, which initiated this Adversary Proceeding.[7]

8.      On October 29, 2019, Hollister filed an answer (the "Answer") generally denying, and asserting affirmative defenses to, the NWR Entities' allegations and Claims in the Complaint.[8] Hollister also asserted various counterclaims (the "Counterclaims") against the NWR Entities.[9] Contemporaneously therewith, Hollister filed a third-party complaint (the "Third-Party Complaint") against the NWR Entities' affiliate, Edison Construction Management, LLC ("Edison") and Pasquale Suriano ("Suriano"), Edison's Executive Vice President of Engineering and Construction.[10]

9.      By way of the Counterclaims and Third-Party Complaint, Hollister alleges and asserts, *inter alia*, that:

---

[5] Docket No. 156.
[6] *See* Case No. 19-cv-18829-CCC-MF, Docket No. 1.
[7] *See id.*, Docket No. 6; Adv. Pro., Docket No. 1.
[8] *See* Adv. Pro., Docket No. 3.
[9] *See id.*
[10] *See id.*

i.    the NWR Entities breached the Project Contract and owe Hollister in excess of $16 million related thereto;

ii.    the NWR Entities breached a related "fit out" contract (the "Fit Out Contract") dated on or about September 7, 2018 and owe Hollister in excess of $722,000 related thereto;

iii.    Edison breached a related street extension contract (the "Street Extension Contract") and owes Hollister in excess of $280,000 related thereto;

iv.    Edison and the NWR Entities violated the *New Jersey Prompt Payment Act*, N.J.S.A. 2A:30A-1, *et seq.*, by failing and refusing to pay Hollister under the terms of the respective Project Contract, Fit Out Contract, and Street Extension Contract;

v.    Edison and Suriano interfered with Hollister's performance of work relating to the Project Contract and Fit Out Contract, thereby causing Hollister to incur damages;

vi.    the amounts owed and outstanding by the NWR Entities under the Project Contract and Fit Out Contract (the "Contract Balance Amounts") are property of Hollister's bankruptcy estate pursuant to section 541(a)(1) of the Bankruptcy Code;

vii.    the Contract Balance Amounts should be immediately turned over to Hollister pursuant to section 542 of the Bankruptcy Code; and

viii.    the NWR Entities' Proof of Claim (defined herein) against Hollister should be disallowed pursuant to section 502(d) of the Bankruptcy Code unless the Contract Balance Amounts are paid in full to Hollister.

### d. *The NWR Entities' Remand Motion and Proof of Claim*

10.    On November 8, 2019, the NWR Entities filed the Remand Motion requesting that the Court remand the Adversary Proceeding to the State Court pursuant to 28 U.S.C. § 1452(b) on equitable grounds or, in the alternative, abstain from hearing the Adversary Proceeding pursuant to either 28 U.S.C. §§ 1334(c)(1) or (c)(2). In support of the Remand Motion, the NWR Entities argue that the Counterclaim is not a core proceeding because it asserts state common law and

statutory causes of action that exist outside of the Chapter 11 Case and does not invoke any

substantive right created by bankruptcy law.

11.    On November 15, 2019, the NWR Entities filed a proof of claim in the amount of

$12,425,822.00 for damages arising from the Debtor's alleged breach of the Project Contract.[11]  In

addition to alleging various ways the Debtor failed to comply with the terms of the Project

Contract, the Proof of Claim Addendum alleged that:

> [D]uring the course of the work, the Debtor, through its principals,
> repeatedly made false representations and false promises to the
> NWR Entities by, among other things, assuring the NWR Entities
> that the Debtor was taking all necessary steps to meet all deadlines
> required under the GMP Contract and that the Debtor had already
> bonded or would bond all constructions liens against the Building,
> which statements were not true and which caused additional damage
> to the NWR Entities.

Proof of Claim Addendum at 2.

12.    The NWR Entities specifically alleged that "[t]o the extent the Debtor asserts any

claims against the Claimant, the Claimant asserts a right of setoff and/or recoupment."[12]  Notably,

Suriano signed the Proof of Claim as a representative of Edison Properties, the NWR Entities'

authorized agent.[13]

13.    The NWR Entities also included a purported reservation of rights in the Proof of

Claim Addendum.[14]

---

[11] Claim No. 266 (the "Proof of Claim"), *Addendum to Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC's Proof of Claim* (the "Addendum"), ¶ 8.

[12] Proof of Claim, at 2.

[13] *Id.* at 3.  In addition to serving as the Executive Vice President of Engineering and Construction of third-party defendant Edison, the Proof of Claim reflects that Suriano is the Executive Vice President of Engineering and Construction of Edison Properties. *See id.*  The NWR Entities are affiliates of Edison Properties.  Docket No. 170-1, ¶ 1 n.1.  On information and belief, third-party defendant Edison is also an affiliate of Edison Properties.  Edison Properties is not presently a party to this Adversary Proceeding.

[14] This "Reservation" provides, in pertinent part:

> No statement contained in the Proof of Claim or Addendum is intended to be, nor may be construed as, a
> waiver, directly or indirectly, of the NWR Entities' procedural or substantive rights, claims, remedies, or
> defenses including as such may arise, without limitation, under the Bankruptcy Code, Bankruptcy Rules, state
> law, federal law, or any documents. To the contrary, all such rights, claims, remedies, or defenses are expressly
> reserved.

Proof of Claim Addendum at 3.

**e.  *The NWR Entities' Motions Seeking Bankruptcy Court Intervention in the Debtor's Bankruptcy Case***

14.    Throughout this Chapter 11 Case, the NWR Entities have not only subjected themselves to the Court's jurisdiction by filing various motions, pleadings and the Proof of Claim, but affirmatively asked the Court to exercise its equitable powers in the NWR Entities' favor concerning the very same facts at issue in the Adversary Proceeding and the Proof of Claim.

15.    On September 26, 2019, barely two weeks after the Petition Date, the NWR Entities filed a motion for entry of an order confirming that the Project Contract is not property of the estate and that the automatic stay is inapplicable to the termination of the Project Contract or, in the alternative, granting the NWR Entities relief from the automatic stay (the "NWR Stay Relief Motion").[15]  In support of the NWR Stay Relief Motion, the NWR Entities asked the Court to determine that the NWR Entities' alleged pre-petition termination of the Project Contract was valid pursuant to the provisions of the Project Contract.[16]  The NWR Stay Relief Motion relied on a certification executed by Suriano for the facts therein.[17]

16.    On October 11, 2019, the Court entered an Order on the NWR Stay Relief Motion that, *inter alia*: (i) granted the NWR Entities relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code to terminate the Project Contract; (ii) deemed the Project Contract terminated as of October 11, 2019;[18] and (iii) reserved and preserved all other rights and remedies of the NWR Entities and Hollister.[19]

---

[15] Docket No. 170.
[16] *See id.* at 11-18.
[17] Docket No. 170-1.
[18] The NWR Entities have incorrectly alleged in numerous pleadings that the October 11, 2019 Order deemed the Project Contract terminated as of October 8, 2019.  *See, e.g.,* Remand Motion, ¶ 42; NWR Stay Violation Motion (defined herein), ¶ 15; Proof of Claim Addendum, ¶ 7 n.2.
[19] Docket No. 303.

17.    On January 6, 2020, the NWR Entities filed another motion (the "<u>NWR Stay Violation Motion</u>") for entry of an order determining, among other things, that certain Ironside Project subcontractors and material providers violated and continue to violate the automatic stay by filing post-petition construction liens against the Ironside Project or continuing to prosecute pre-petition construction lien litigations against the NWR Entities post-petition.[20]  As part of the NWR Stay Violation Motion, the NWR Entities alleged that the Debtor had some obligation to assist the NWR Entities in opposing the actions of the Ironside Project subcontractors and material providers and took issue with the fact that the Debtor—recognizing no such obligation to expend its limited resources to assist one alleged creditor of the estate in its disputes against other creditors—declined to do so.[21]  The NWR Stay Violation Motion remains pending as of the filing of this Opposition.

## LEGAL ANALYSIS AND ARGUMENT

### a.  *The Adversary Proceeding is a Core Proceeding*

18.    Bankruptcy jurisdiction extends to four types of proceedings: (i) cases under the Bankruptcy Code; (ii) proceedings arising under the Bankruptcy Code; (iii) proceedings arising in a bankruptcy case; and (iv) proceedings related to a bankruptcy case.  *See In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008); *In re Broad St. Media LLC*, Case No. 16–26615 (JNP), Adv. Pro No. 17–1450 (JNP), 2017 WL 5624879, at *4 (Bankr. D.N.J. Nov. 20, 2017) (Poslusny, J.).  The first three categories are "core" proceedings in which the bankruptcy court has the power to hear, decide, and enter final orders and judgments.  *Exide Techs.*, 544 F.3d at 205 (citing 28 U.S.C. § 157(b)(1)).  The fourth category, "related to" proceedings, are "non-core" proceedings, which the bankruptcy court can hear, but in which it can only submit proposed findings of fact and

---

[20] *See* Docket No. 740.
[21] *See id.*, ¶¶ 18, 25.

conclusions of law to the district court and not issue final orders. *Exide Techs.*, 544 F.3d at 205;

*Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999).

19.     Section 157(b)(2) of Title 28 of the United States Code ("Title 28") sets forth the

following non-exhaustive list of core proceedings:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of
the estate, and estimation of claims or interests for the purposes of confirming a plan
under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent
or unliquidated personal injury tort or wrongful death claims against the estate for
purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F)  proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I)  determinations as to the dischargeability of particular debts;

(J)  objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L)  confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought
by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment
of the debtor-creditor or the equity security holder relationship, except personal injury
tort or wrongful death claims; and

(P)  recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

20.    Within the Third Circuit, courts apply the two-part test adopted in *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999), to determine whether a proceeding is core. *In re John A. Rocco Co., Inc.*, Case No. 10–18799 (NLW), Adv. No. 12–01277 (NLW), 2015 WL 1727474, at *3 (Bankr. D.N.J. Apr. 13, 2015) (Winfield, J.).   Under the *Halper* test, a court <u>*first*</u> looks to whether the proceeding is listed among the non-exhaustive list of core proceedings described in section 157(b)(2) of Title 28. *See Exide Techs.*, 544 F.3d at 206; *John A. Rocco*, 2015 WL 1727474 at *3 (citing *Halper*, 164 F.3d at 836).   <u>*Second*</u>, the court must determine whether the claim (i) invokes a substantive right provided under the Bankruptcy Code, or (ii) if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *See Exide Techs.*, 544 F.3d at 206; *John A. Rocco*, 2015 WL 1727474 at *3 (citing *Halper*, 164 F.3d at 836).

21.    Each cause of action must be analyzed claim by claim and each alone must satisfy this test in order to be considered a core proceeding. *See Exide Techs.,* 544 F.3d at 206; *Halper,* 164 F.3d at 836–37.   If the claim does not invoke a substantive right provided by the Bankruptcy Code or could arise outside the context of a bankruptcy case, it is a non-core proceeding and, absent consent of the parties, the bankruptcy court's authority is limited to submitting proposed findings of fact and conclusions of law to the district court. *John A. Rocco Co.,* 2015 WL 1727474 at *3 (citing  28 U.S.C. § 157(c)(1)).

22.    Here, the <u>*first*</u> prong of the *Halper* test is satisfied.  Resolution of the Adversary Proceeding, including each of the Claims, Counterclaims, and the claims asserted in the Third-Party Complaint, necessarily implicates several provisions of section 157(b)(2) of Title 28.  As an initial matter, the proceeding clearly concerns the administration of the estate, *see* § 157(b)(2)(A), and the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship, *see* § 157(b)(2)(O), because determination of amounts due by the NWR Entities, Edison, and

Suriano to the bankruptcy estate will directly affect the Debtor's ability to formulate and successfully confirm a plan of reorganization, as well as any distributions to creditors of the estate.

23.    Moreover, the NWR Entities filed a Proof of Claim that is *based entirely on the same facts they asserted in the Complaint*.[22]  The NWR Entities included in the Proof of Claim a reservation of their right to setoff and/or recoupment to the extent the Debtor asserted any claims against the NWR Entities.[23]  The Debtor has asserted claims against the NWR Entities through the Counterclaims.  Accordingly, the Adversary Proceeding plainly also concerns the allowance or disallowance of claims against the estate, *see* § 157(b)(2)(B), and counterclaims by the estate against the persons filing claims against the estate, *see* § 157(b)(2)(C).

24.    The *second* prong of *Halper* is also satisfied because resolution of the Adversary Proceeding, including each of the underlying Claims, Counterclaims, and Third-Party Complaint claims, necessarily invokes substantive rights provided by the Bankruptcy Code.  It is axiomatic that filing a proof of claim triggers the claims allowance process under 11 U.S.C. § 501, *et seq.*, which, by its very nature, is a core proceeding that can arise only in a bankruptcy case.  *Exide Techs.*, 544 F.3d at 214; *Broad St. Media*, 2017 WL 5624879 at *6.  The NWR Entities' invocation of the claims resolution process by filing the Proof of Claim will be discussed in detail below.

25.    In addition, resolution of the Adversary Proceeding requires a determination by the Court as to whether and to what extent the Contract Balance Amounts are property of Hollister's bankruptcy estate under section 541 of the Bankruptcy Code.  The NWR Entities asserted a right of setoff and/or recoupment in the Proof of Claim.  Hollister alleges that any amounts found to be

---

[22] *See, generally,* Proof of Claim and Addendum.  As will be discussed in detail below, the fact that the NWR Entities filed the Proof of Claim is itself an independent basis for this Court to exercise jurisdiction over the Adversary Proceeding and to find that it is a core proceeding.
[23] *See* Proof of Claim at 2.

property of the estate are subject to turnover under section 542 of the Bankruptcy Code,[24] and that any claim of the NWR Entities should disallowed pursuant to section 502 of the Bankruptcy Code until those amounts are turned over.  Accordingly, the second factor in the *Halper* test is satisfied here.

26.    Because the Adversary Proceeding satisfies the *Halper* test, resolution of the Claims, Counterclaims, and the Third-Party Complaint are core proceedings and the Court has subject matter jurisdiction to adjudicate and enter final judgment in this Adversary Proceeding.

### b.    *The NWR Entities Have Consented to the Bankruptcy Court's Jurisdiction*

27.    There is yet another basis to find that the Adversary Proceeding is a core proceeding:  the NWR Entities have willingly and repeatedly subjected themselves to this Court's jurisdiction, both by filing the Proof of Claim with the same factual basis as the Adversary Proceeding and by asking this Court to exercise its equitable power and jurisdiction to decide issues arising from the same facts underlying the Adversary Proceeding, the Proof of Claim, the NWR Stay Relief Motion and the NWR Stay Violation Motion.

28.    First, by making a conscious decision to seek affirmative relief from this Court by filing the Proof of Claim, the NWR Entities implicated the claims allowance process and could impact the distribution of assets of the estate.  By filing a claim against a bankruptcy estate, the creditor triggers the process of allowance and disallowance of claims, thereby subjecting itself to the bankruptcy court's equitable power.  *Langenkamp v. C.A. Culp*,  498 U.S. 42, 44 (1990);

---

[24] To support their argument that the Counterclaim is not a core proceeding, the NWR Entities cite to cases for the proposition that pleading a turnover claim under section 542 of the Bankruptcy Code does not make a non-core proceeding a core proceeding.  Contrary to the NWR Entities' suggestion that the Debtor is simply bootstrapping its claims against the NWR Entities to bankruptcy causes of action, the Debtor is not arguing that the Counterclaim is core simply because it includes claims under section 541 and section 542 of the Bankruptcy Code.  Instead, as set forth in detail herein, the Adversary Proceeding is a core proceeding because it satisfies the *Halper* test and because the NWR Entities have consented to this Court's jurisdiction over the issues in the Adversary Proceeding by, among other things, filing the Proof of Claim and seeking affirmative relief in the NWR Stay Relief Motion and the NWR Stay Violation Motion.

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58–59 (1989) (finding that because the defendants did not file claims against the estate, the trustee's fraudulent conveyance action did not arise "as part of the process of allowance and disallowance of claims"); *Travellers Int'l AG v. Robinson*, 982 F.2d 96, 98 (3d Cir. 1992) ("by submitting a proof of claim to the debtor's estate, Travellers effectively waived its right to a jury trial and submitted itself to the equitable jurisdiction of the bankruptcy court."). The equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim. *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1249 (3d Cir. 1994); *Travellers Int'l AG*, 982 F.2d at 100.

29.     Whether a pre-petition state law claim constitutes either a core or non-core proceeding depends upon (i) whether the creditor filed a proof of claim with the bankruptcy court, and (ii) the relationship between the state action and proof of claim. *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 642 (D. Del. 2011). Even a pre-petition state law claim "may transform into a core proceeding if the creditor files a proof of claim with the bankruptcy court." *Id.* at 643; *see In re Meyertech Corp.*, 831 F.2d 410, 417–19 (3d Cir. 1987) (finding that, where a creditor filed a proof of claim based on a state law cause of action that accrued against the debtor pre-petition, litigation of the merits is a core proceeding); *In re Simpson*, No. 14-16173 (JNP), 2015 WL 6124004, at *4 (Bankr. D.N.J. Oct. 16, 2015) (Poslusny, J.) (finding that the adversary proceeding was a core proceeding where the plaintiff's complaint was essentially a counterclaim against the defendants' proof of claim and the proof of claim raised the same issues as in the state court action); *In re Phico Grp., Inc.*, 304 B.R. 170, 173 (Bankr. M.D. Pa. 2003) (concluding that the filing of a proof of claim based on the creditor's cause of action against the debtor transformed a non-core proceeding into a core proceeding). When the potential recovery to the claimant is contingent upon a successful resolution of the state law action, the filing of a proof of claim transforms the

state action into a core proceeding. *Kurz*, 464 B.R. at 643. In other words, by invoking the

jurisdiction of the bankruptcy court with respect to a state law action with the same factual basis

as the proof of claim, the state law claim is transformed into a core proceeding. *Id.* (citing

*Meyertech*, 831 F.2d at 417–18).

30.    Here, the outcome of the Adversary Proceeding directly affects the allowance or

disallowance of the Proof of Claim, as the allegations underlying the NWR Entities' Claims form

the very basis of the Proof of Claim. The NWR Entities asserted a right of setoff and/or

recoupment in the Proof of Claim to the extent the Debtor asserted any claims against the NWR

Entities, which the Debtor did in the Counterclaim. Thus, the NWR Entities' recovery on their

Proof of Claim is contingent on the resolution of the Adversary Proceeding in the NWR Entities'

favor. Accordingly, by filing the Proof of Claim, the NWR Entities have subjected themselves to

the Bankruptcy Court's equitable power and transformed the Adversary Proceeding into a core

proceeding.

31.    Second, the NWR Entities have affirmatively asked this Court to exercise its

equitable powers over issues arising from the same facts underlying the Adversary Proceeding and

the Proof of Claim by filing the NWR Stay Relief Motion and the NWR Stay Violation Motion in

the Chapter 11 Case.

32.    The NWR Entities' allegations and actions in the Chapter 11 Case belie any

argument that the Claims, Counterclaims, and Third-Party Complaint claims should not be heard

by this Court because they are "garden variety" state law claims only tangentially related to the

Chapter 11 Case. Indeed, the NWR Entities have already asked this Court to rule on very closely

related issues in the main bankruptcy case. For example, in the NWR Stay Relief Motion, the

NWR Entities asked the Court to interpret the provisions of the Project Contract and to rule that

the NWR Entities' alleged pre-petition termination of the Project Contract was valid. Likewise,

through the pending NWR Stay Violation Motion and their numerous omnibus replies, the NWR

Entities ask this Court to consider, among other things, the establishment of the Ironside Project

lien fund under the New Jersey Construction Lien Law and the relationship between the lien fund

and the Debtor's accounts receivable from the NWR Entities under the Project Contract; whether

and how claims against the NWR Entities for unjust enrichment or quantum meruit impact the

Debtor's estate; and whether and how the enforcement of a construction lien against a lien

discharge bond affects the Debtor's estate.[25] The very crux of the NWR Entities' argument in the

NWR Stay Violation Motion is that the Debtor's account receivable from the NWR Entities is

---

[25] *See, e.g.,* NWR Stay Violation Motion, ¶ 40 ("By proceeding with the Construction Lien Litigations, the lien claimants and the presiding state courts are threatening the imminent diminution of lien funds in which the Debtor claims an interest, in multiple inconsistent proceedings where the Debtor is not present to defend that claimed interest."); *Omnibus Reply of Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC to Oppositions of (I) Apple Coring & Sawing, LLC, (II) Control Services, LLC, (III) Dehn Bros. Fire Protection, Inc., and (IV) Allglass Systems, LLC to the NWR Entities' Motion for Entry of an Order Determining That Certain Parties Have Violated the Automatic Stay and for Other Relief*, Docket No. 761, ¶ 16 ("Apple's efforts to obtain a valid construction lien claim, even against Arch [the Debtor's surety], remain a real threat to the diminution of the statutory 'lien fund,' thereby affecting property of the Debtor's estate. Further, to the extent Arch is found liable and must pay on the construction lien bond, its claims against the estate for reimbursement, contribution or indemnification will become liquidated, thereby affecting the estate. Further, in this event, Arch may have a subrogation claim against the NWR Entities which could also impact the statutory 'lien fund.'"); *Supplemental Omnibus Reply of Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC to Oppositions of (I) Apple Coring & Sawing, LLC, (II) Control Services, LLC, (III) Drobach Equipment Rental, Co., (IV) City Contracting, Inc., (v) Allglass Systems, LLC and (VI) Dehn Bros. Fire Protection, Inc. to the NWR Entities' Motion for Entry of an Order Determining That Certain Parties Have Violated the Automatic Stay and for Other Relief* (the "NWR Supplemental Omnibus Reply in Support of Stay Violation Motion"), Docket No. 844, ¶ 21 ("In contrast, and exactly as in Linear Electric, here the claims being prosecuted in the Apple State Court Action, whether for lien, unjust enrichment or quantum meruit, will have a direct impact on the Debtor's estate because the subcontractor plaintiffs seek to apply some portion of the Debtor's alleged account receivable from the NWR Entities toward the satisfaction of those subcontractor plaintiffs' claims."); *id.*, ¶ 32 ("City also asserts that, because the NWR Entities are pursuing claims against the Debtor that originated in state court and were later removed and referred to this Court, the NWR Entities will not be prejudiced by the continued prosecution of construction liens. . . . However, in advancing this argument, City disregards the importance of the holding in Linear Electric, as any continued prosecution of construction liens prior to the determination of the Debtor's rights, if any, to the statutory lien fund and to any account receivable from the NWR Entities would negatively impact the Debtor's estate.") (citations omitted); *Second Supplemental Omnibus Reply of Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC to Oppositions of (I) Apple Coring & Sawing, LLC, (II) Control Services, LLC, (III) Drobach Equipment Rental, Co., (IV) City Contracting, Inc., (V) Allglass Systems, LLC and (VI) Dehn Bros. Fire Protection, Inc. to the NWR Entities' Motion for Entry of an Order Determining That Certain Parties Have Violated the Automatic Stay and for Other Relief* ("NWR Second Supplemental Omnibus Reply in Support of Stay Violation Motion"), ¶ 13 ("[I]f it is determined that the NWR Entities did not owe anything to the Debtor at the time the subcontractors or material providers filed their respective construction liens, then there is no lien fund, and therefore there cannot be a construction lien claim as a matter of law. . . . Consequently, to allow these issues to be litigated in multiple, separate state court actions, possibly to inconsistent results, would be directly at odds with the policy of centralized and orderly administration of the Debtor's estate and affairs, which the Bankruptcy Code in general and the automatic stay in particular are designed to promote.").

property of the estate.[26]   Thus, the NWR Entities have already asked this Court to analyze New

Jersey contract, construction, and tort law and to find that those state law issues have a significant

effect on the Debtor's estate and this Chapter 11 Case.  The NWR Entities should be judicially and

equitably estopped from taking an inconsistent position in the Remand Motion.

33.     Based on the foregoing, it would be improper to remand the Adversary Proceeding

to the State Court while the NWR Entities continue to seek this Court's intervention in the Chapter

11 Case on the same issues by various procedural and substantive motions and forms of relief, and

through the Proof of Claim.  Thus, the Remand Motion should be denied.

### c.   *Mandatory Abstention is Inappropriate Here*

34.     Mandatory abstention derives from section 1334(c)(2) of Title 28, which provides

that:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under [the
> Bankruptcy Code] but not arising under [the Bankruptcy Code] or
> arising in a case under [the Bankruptcy Code], with respect to which
> an action could not have been commenced in a court of the United
> States absent jurisdiction under this section, the district court shall
> abstain from hearing such proceeding if an action is commenced,
> and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2).

35.     The Third Circuit has stated that under this provision, "Congress sought to give

effect to the preferences of litigants who prefer a state forum, when state court adjudication *would*

*not unduly interfere* with the administration of the bankruptcy estate."  *In re G-I Holdings, Inc.*,

580 B.R. 388, 421 (Bankr. D.N.J. 2018) (Gambardella, J.) (quoting *Stoe v. Flaherty*, 436 F.3d 209,

---

[26] *See* NWUR Omnibus Reply in Support of Stay Violation Motion, ¶ 23; NWR Supplemental Omnibus Reply in Support of Stay
Violation Motion, ¶ 31 ("While the Court ultimately granted the NWR Entities relief from the automatic stay to terminate the GMP
Contract, the Debtor's attempt to collect an alleged account receivable from the NWR Entities is *unquestionably property of the
estate. . . .*") (emphasis added).

214 n.1 (3d Cir. 2006)) (emphasis added).  Thus, mandatory abstention is appropriate *only when*

*each* of the following prerequisites is satisfied:

> (1)  the proceeding is based on a state law claim or cause of action;
>
> (2)  the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11;
>
> (3)  federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case;
>
> (4)  an action "is commenced" in a state forum of appropriate jurisdiction; and
>
> (5)  the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Exide Techs.*, 544 F.3d at 218 n.14; *Stoe*, 436 F.3d at 213.  In addition, a timely motion for

abstention must be made by a party in the proceeding.  *See G-I Holdings*, 580 B.R. at 421; *In re*

*Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 121 (Bankr. D.N.J. 2003) (Steckroth, J.).

36.    For the reasons already described, the Adversary Proceeding and each of the

Claims, Counterclaims, and Third-Party Complaint are core proceedings under the *Halper* test and

Third Circuit case law.   Accordingly, mandatory abstention is impermissible under the plain

language of section 1334(c)(2) of Title 28 and the conjunctive test set forth by the Third Circuit in

*Exide Technologies* and *Stoe v. Flaherty*.   Moreover, based on the interrelation of the Claims,

Counterclaims, and Third-Party Complaint with the NWR Entities' motions and the NWR Entities'

Proof of Claim filed in the Chapter 11 Case, it is evident that adjudication of the Adversary

Proceeding by the State Court would unduly interfere with the administration of Hollister's

bankruptcy estate.

37.    Accordingly, mandatory abstention is inappropriate here and the Remand Motion

should be denied.

### d. *Permissive Abstention and Equitable Remand Are Not Warranted*

38.     Even if the Court were to find that the Adversary Proceeding is not core, permissive

abstention and equitable remand are not warranted.

39.     The doctrine of permissive abstention, under section 1334(c)(1) of Title 28,

provides that:

> Except with respect to a case under chapter 15 of [the Bankruptcy
> Code], nothing in this section prevents a district court in the interest
> of justice, or in the interest of comity with State courts or respect for
> State law, from abstaining from hearing a particular proceeding
> arising under [the Bankruptcy Code] or arising in or related to a case
> under [the Bankruptcy Code].

28 U.S.C. § 1334(c)(1).

40.     Under the permissive abstention doctrine, bankruptcy courts "have broad discretion

to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the

interest of comity with State courts or respect for State law."  *G-I Holdings*, 580 B.R. at 422

(internal quotations omitted).  The decision to exercise permissive abstention is committed to the

sound discretion of the court.  *Id.*

41.     The doctrine of equitable remand is found under section 1452(b) of Title 28 and

provides in relevant part that "[t]he court to which such claim or cause of action is removed may

remand such claim or cause of action on any equitable ground."  28 U.S.C. § 1452(b).  "Equitable

ground" is not defined in section 1452(b), but the Third Circuit has explained that "equitable"

"signals that which is reasonable, fair, or appropriate."  *In re Seven Fields Dev. Corp.*, 505 F.3d

237, 245 (3d Cir. 2007) (internal quotations omitted).

42.     The equitable considerations relevant to the appropriateness of permissive

abstention and equitable remand "are essentially identical, and, therefore, a court's analysis is

substantially the same for both types of relief."  *Mid-Atlantic*, 304 B.R. at 126 (internal quotations

omitted).  The determination by a court of whether to discretionarily abstain and remand a matter

is necessarily fact driven.  *G-I Holdings*, 580 B.R. at 422; *Mid-Atlantic*, 304 B.R. at 126.

43.    The Third Circuit has not established a test for permissive abstention and equitable

remand.  However, courts in the Third Circuit routinely analyze the applicability of these doctrines

under a set of seven factors:[27]

      i.    the effect on the efficient administration of the bankruptcy estate;

     ii.    the extent to which issues of state law predominate;

    iii.    the difficulty or unsettled nature of the applicable state law;

    iv.    comity;

     v.    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

    vi.    the existence of the right to a jury trial; and

   vii.    prejudice to the involuntarily removed defendants.

*See, e.g., Shalom Torah Ctrs. V. Phila. Indem. Ins. Cos.*, Civil Action No. 10–6766 (FLW), 2011

WL 1322295, at *4 (D.N.J. Mar. 31, 2011); *G-I Holdings*, 580 B.R. at 422-23; *Mid-Atlantic*, 304

B.R. at 126; *Jazz Photo Corp. ex rel. Moore v. Dreier LLP*, No. Civ.A. 05–5198–DRD, 2005 WL

3542468, at *7-8 (D.N.J. Dec. 23, 2005).

44.    Not all factors necessarily need to be considered, and courts should apply the

factors flexibly, for their relevance and importance will vary with the particular circumstances of

the case.  *Shalom Torah*, 2011 WL 1322295 at *4; *G-I Holdings*, 580 B.R. at 422.  No one factor

---

[27] Some courts have relied on a twelve-part test.  *See, e.g., In re Vanhook*, 468 B.R. 694, 701 (Bankr. D.N.J. 2012) (Wizmur, J.).  Courts have recognized, however, that the two sets of factors are substantially similar.  *See Shalom Torah Ctrs.*, 2011 WL 1322295 at *4; *G-I Holdings*, 580 B.R. at 422.

is necessarily determinative. *Shalom Torah*, 2011 WL 1322295 at *4; *G-I Holdings*, 580 B.R. at 422.

45.    Here, the application of these factors weighs heavily in favor of the Court's retention of jurisdiction over the Adversary Proceeding.

46.    First, Hollister's ability to effectuate its various settlements with certain project owners and subcontractors, formulate a plan, pay creditors, and conclude its Chapter 11 Case depends in large part on the expeditious resolution of the Adversary Proceeding.  Indeed, resolving project disputes like this one with the NWR Entities related to the Ironside Project—whether through a project-wide settlement that allows the Debtor to complete an ongoing construction project or a settlement that resolves outstanding claims between the Debtor and the project owner without the Debtor having any further obligations under the project contract—has been at the very core of the Debtor's strategy from the commencement of the Chapter 11 Case.

47.    This dispute involves a determination of the amount of the NWR Entities' claim and the Contract Balance Amounts owed to Hollister.  To require Hollister to litigate the Adversary Proceeding in the State Court while this Court adjudicates interconnected, if not the very same, issues in the NWR Entities' Stay Violation Motion—and eventually, the Proof of Claim—would be an inefficient use of judicial and estate resources.  Conversely, by retaining jurisdiction over the Adversary Proceeding, the Court avoids the possibility of two courts rendering inconsistent judgments.  The NWR Entities themselves caution against such an outcome in support of the NWR Stay Violation Motion, asserting that:

> [I]f it is determined that the NWR Entities did not owe anything to
> the Debtor at the time the subcontractors or material providers filed
> their respective construction liens, then there is no lien fund, and
> therefore there cannot be a construction lien claim as a matter of
> law. . . .   Consequently, *to allow these issues to be litigated in
> multiple, separate state court actions, possibly to inconsistent*

> *results, would be directly at odds with the policy of centralized and orderly administration of the Debtor's estate and affairs, which the Bankruptcy Code in general and the automatic stay in particular are designed to promote.*[28]

48.    The NWR Entities voluntarily filed the Proof of Claim in this Court seeking relief they sought in the State Court Action and this Adversary Proceeding.  The NWR Entities have unequivocally submitted to this Court's jurisdiction to resolve these matters.  Thus, not only is permissive abstention not appropriate, but the NWR Entities should be judicially and equitably estopped from now taking an inconsistent position.  For these reasons, the effect on the efficient administration of the bankruptcy estate weighs heavily against remand.

49.    Keeping these common issues in the same venue, *i.e.*, this Court, will permit Hollister to remain focused on resolving the Adversary Proceeding and the issues with the NWR Entities and the Ironside Project as part of its bankruptcy strategy, including formulating of a plan, expeditiously resolving claims disputes, and concluding the Chapter 11 Case.  Therefore, this factor strongly favors the Court's retention of jurisdiction over the Adversary Proceeding.

50.    Second, although state law issues may predominate, the Adversary Proceeding cannot be resolved independently from the substantive bankruptcy rights and the bankruptcy-specific issues also raised and pled therein.  At its core, this dispute involves a determination of the amount of the NWR Entities' Claims and the Contract Balance Amounts owed to Hollister, the latter of which is an important and significant asset of the Debtor's estate.  As already mentioned, the NWR Entities' Proof of Claim is based on the same facts set forth in the Adversary Proceeding. Therefore, this factor also strongly favors the Court's retention of jurisdiction over the Adversary Proceeding.

---

[28] NWR Second Supplemental Omnibus Reply in Support of Stay Violation Motion, ¶ (emphasis added); *see also* NWR Stay Violation Motion, ¶ 40 ("By proceeding with the Construction Lien Litigations, the lien claimants and the presiding state courts are threatening the imminent diminution of lien funds in which the Debtor claims an interest, *in multiple inconsistent proceedings* where the Debtor is not present to defend that claimed interest.") (emphasis added).

51.     Third, the causes of action asserted in the Adversary Proceeding do not present

difficult or unsettled issues of state law such that this factor would weigh in favor of remand.

Indeed, federal courts in New Jersey, including bankruptcy courts, routinely consider the kinds of

state law claims at issue in the Adversary Proceeding.  *See, e.g., In re Purington*, Case No. 11–

11617/JHW, Adv. No. 11–1757, 2012 WL 1945510, at *13 (Bankr. D.N.J. May 30, 2012)

(Wizmur, J.) (analyzing various elements of a cause of action under the New Jersey Consumer

Fraud Act ("NJCFA") in ruling on a nondischargeability complaint), *appeal denied*, No. CIV.A.

12-4135, 2013 WL 3442893, at *3 (D.N.J. July 9, 2013); *In re Tarragon Corp.*, Case No. 09–

10555 (DHS), Adv. No. 09–01465 (DHS), 2012 WL 71597, at *7-*9 (Bankr. D.N.J. Jan. 10, 2012)

(Steckroth, J.) (reviewing pleading requirements for NJCFA claims in the context of a motion to

dismiss); *In re Salvatore,* Case No. 10–16449/JHW, Adv. No. 10–01679, 2011 WL 2115816, at

*1 (Bankr. D.N.J. May 26, 2011) (Wizmur, J.) (granting plaintiff judgment for damages against

debtor-defendant pursuant to the NJCFA, but denying plaintiff's request for nondischargeability

under section 523(a) of the Bankruptcy Code); *Refine Tech., LLC v. MCC Dev., Inc.*, Civ. No. 17-

5548, 2018 WL 3159874, at *5 (D.N.J. Feb. 21, 2018) (granting defendant's motion to dismiss

because plaintiff's complaint failed to set forth a plausible New Jersey Prompt Payment Act

("NJPPA") claim); *Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, Civil No. 14–3281

(RBK/AMD), 2015 WL 1346240, at *5 (D.N.J. March 25, 2015) (awarding plaintiff attorney's

fees and costs under the NJPPA for defendant's breach of contract); *see also In re Dixon-Ford*,

Case No. 09–32052 (DHS), Adv. No. 10–01772 (DHS), 2011 WL 6749083, at *6-*7 (Bankr.

D.N.J. Dec. 21, 2011) (Steckroth, J.) (observing that the NJCFA "has been extensively explored

. . . such that its interpretation and application is well-settled.").

52.     Crucially, to the extent the underlying claims between the Debtor and the NWR Entities related to the Ironside Project do involve difficult or unsettled issues of state law, it is the NWR Entities who have asked this Court to adjudicate them in the NWR Stay Relief Motion, the NWR Stay Violation Motion and their Proof of Claim.  Therefore, this factor favors this Court's retention of jurisdiction over the Adversary Proceeding and mandates denial of the Remand Motion.

53.     Fourth, comity overwhelmingly favors this Court's retention of jurisdiction over the Adversary Proceeding.  Hollister initiated this Chapter 11 Case barely a week after the NWR Entities filed the Complaint in the State Court on September 5, 2019.  Just one month later, on October 9, 2019 and before the State Court issued any rulings or orders in the State Court Action,[29] the Debtor removed the Adversary Proceeding to the District Court.  In fact, the only pleading filed in the State Court Action is the Complaint—no answer or other pleading has been filed in the State Court Action.

54.     The District Court referred the Adversary Proceeding to this Court on October 24, 2019.  The Adversary Proceeding has been pending before the Bankruptcy Court for more than four months.  Importantly, and as already described, the NWR Entities themselves have brought issues concerning the Debtor, the Ironside Project, and the subcontractors and suppliers involved in the Ironside Project before this Court numerous times during the pendency of the Chapter 11 Case.  Thus, comity weighs heavily in favor of this Court's retention of jurisdiction over the Adversary Proceeding, as it is this Court and not the State Court that is already familiar with the parties and the issues.

---

[29] *See* State Court Action Docket.

55.     Fifth, for the reasons already discussed, it is abundantly clear that this Adversary Proceeding, including all Claims, Counterclaims, and the Third-Party Complaint, is directly and materially related to the Chapter 11 Case.  Therefore, the degree of relatedness of the Adversary Proceeding to the Chapter 11 Case strongly weighs against remand.

56.     The sixth factor also weighs against remand.  The Complaint included a jury demand and the NWR Entities do not consent to a jury trial before this Court.  However, it is clear that a creditor who submits a proof of claim against the bankruptcy estate has no right to a jury trial on issues raised in defense of such a claim.  *Billing*, 22 F.3d at 1250 (citing *Langenkamp*, 498 U.S. at 45).  Moreover, where a creditor has filed a claim, even though the claim is couched in protective language and is contingent, that creditor has submitted to the bankruptcy court's equitable jurisdiction and waived any Seventh Amendment right to a jury trial.  *Travellers Int'l AG*, 982 F.2d at 100.  Therefore, the NWR Entities' inclusion of a reservation of rights in the Proof of Claim Addendum does not undo the waiver of any right to a jury trial on the issues in the Proof of Claim and this Adversary Proceeding.  Accordingly, this factor also weighs in favor of this Court's retention of jurisdiction over the Adversary Proceeding.

57.     Finally, because the State Court Action had only been pending for a month before the Debtor removed it to the District Court, and because the NWR Entities, Edison and Suriano have been actively involved in the Debtor's Chapter 11 Case, the NWR Entities, Edison and Suriano will not be prejudiced by this Court's retention of jurisdiction over the Adversary Proceeding.  Additionally, the NWR Entities neglect to mention the individual defendant members of the Debtor, who continue to dedicate their time and efforts to the administration of this Chapter 11 Case and the Debtor's eventual exit from bankruptcy.  The individual defendants would not be prejudiced by this Court's retention of jurisdiction over this Adversary Proceeding.

58.     For the foregoing reasons, equitable remand and permissive abstention are inappropriate here and this Court should retain jurisdiction over the Adversary Proceeding.

## CONCLUSION

59.     This Adversary Proceeding, including all Claims, Counterclaims, and the Third Party-Complaint, is a proceeding which is core in nature and satisfies the requirements of the *Halper* test.  Thus, mandatory abstention is impermissible.  In addition, the Adversary Proceeding involves substantive issues of bankruptcy law.  Moreover, the significant impact the resolution of the Adversary Proceeding will have on Hollister's administration of the Chapter 11 Case, including plan formulation, payment of creditors, and exit from bankruptcy, all weigh heavily in favor of this Court retaining jurisdiction over the Adversary Proceeding.  Indeed, the NWR Entities' own actions in this Chapter 11 Case prove the interconnectedness of the claims in this Adversary Proceeding, the Proof of Claim, and the issues the NWR Entities have asked this Court to decide in the Chapter 11 Case.  The NWR Entities cannot argue in the main bankruptcy proceeding that the state law issues relating to the Ironside Project adversely affect the Debtor's estate when it benefits the NWR Entities, and then argue that the Adversary Proceeding *concerning the same facts* is only tangentially related such that this Court should not get involved.  Therefore, permissive abstention and equitable remand are not warranted.

60.     For the foregoing reasons, the NWR Entities' Remand Motion must be denied.


*[remainder of page intentionally left blank]*

Dated:  February 27, 2020

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (pro hac vice)
Arielle B. Adler, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to Defendant, Counterclaimant, and Third-Party Plaintiff Hollister Construction Services, LLC*