UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

Order Filed on February 26, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey

**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Jennifer B. Kimble, Esq.
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| HOLLISTER CONSTRUCTION SERVICES, LLC,[1] | Case No. 19-27439 (MBK) |
| Debtor. | |

### THIRD ORDER GRANTING IN PART DEBTOR'S MOTION FOR ENTRY OF ONE OR MORE ORDERS APPROVING VARIOUS SETTLEMENTS AND COMPROMISES BY AND AMONG THE DEBTOR, FAIRLEIGH DICKINSON UNIVERSITY AS PROJECT OWNER, AND CERTAIN SUBCONTRACTORS ON GO-FORWARD PROJECTS PURSUANT TO FED. R. BANKR. P. 9019

The relief set forth on the following pages, numbered two (2) through and including three (3), is

hereby **ORDERED**.

**DATED: February 26, 2020**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Page: 2
Debtor: Hollister Construction Services, LLC
Case No.:  19-27439 (MBK)
Caption: *Second Order Granting In Part Debtor's Motion For Entry of One or More Orders
Approving Various Settlements and Compromises By and Among the Debtor, Fairleigh
Dickinson University as Project Owner and Certain Contractors on Go-Forward Projects
Pursuant to Fed. R. Bankr. P. 9019*

---

**THIS MATTER** having been opened to the Court upon the Motion of the above-captioned debtor-in-possession (the "Debtor") seeking the entry of one or more orders approving various settlements and compromises by and among the Debtor, Fairleigh Dickinson University ("FDU") as project owner and certain subcontractors on Go-Forward Projects; termination and rejection of certain other projects between the Debtor and FDU; and the settlement and payment of outstanding accounts receivable due to the Debtor from FDU pursuant to Fed. R. Bankr. P. 9019 (the "Motion")[2]; and the Court having considered the Motion and any objections filed thereto, and the Court having jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Motion determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors; and the Court having conducted a hearing on the Motion, at which time the Court heard and considered all oral argument of counsel and directed the Debtor to file signature pages and fully executed settlement agreements on the docket for each Go-Forward Project; and the Debtor having filed a Notice of Filing of Executed Settlement Agreement By and Among the Debtor, Fairleigh Dickinson University as Project Owner, and Certain Subcontractors on Go-Forward Project on February 20, 2020 [Docket No. 945](the "Notice"); and good and sufficient notice of the Motion having been provided to all interested parties, and for good cause shown,

---

[2] Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.

Page:        3
Debtors:    Hollister Construction Services, LLC
Case No.:   19-27439 (MBK)
Caption: *Second Order Granting In Part Debtor's Motion For Entry of One or More Orders Approving Various Settlements and Compromises By and Among the Debtor, Fairleigh Dickinson University as Project Owner and Certain Contractors on Go-Forward Projects Pursuant to Fed. R. Bankr. P. 9019*

---

**IT IS HEREBY ORDERED** as follows:

1.      The Motion is **GRANTED** in part as set forth herein.

2.      The Settlement Agreement for the Park Avenue Project attached to the Notice (and attached to the Motion as Exhibit H), is hereby approved.

3.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order and to effectuate the Settlement Agreement for the Park Avenue Project as identified on the Notice.

4.      Notwithstanding anything to the contrary in the Motion or the Settlement Agreement for the Park Avenue Project, the Debtor shall pay Latz, Inc. the amount of $36,261 in addition to the amount set forth on Exhibit H to the Motion for the Park Avenue Project. Latz, Inc. shall receive the total amount of $92,500 under the Settlement Agreement for the Park Avenue Project in satisfaction and release of its pre-petition lien claim.

5.      This Order shall be effective immediately upon its entry and the stay imposed by Bankruptcy Rule 6004(h) and/or 6006(b) or any other Rule are hereby waived.

6.      The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

7.      The Court shall retain exclusive jurisdiction to hear and decide any and all disputes or issues related to or arising from the implementation, interpretation or enforcement of this Order.

**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and*
*Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| **HOLLISTER CONSTRUCTION SERVICES, LLC,**[1] | Case No. 19-27439 (MBK) |
| | Re: Docket No. 735 |
| Debtor. | |

**NOTICE OF FILING OF EXECUTED SETTLEMENT AGREEMENT BY AND AMONG THE DEBTOR, FAIRLEIGH DICKINSON UNIVERSITY AS PROJECT OWNER, AND CERTAIN SUBCONTRACTORS ON GO-FORWARD PROJECT**

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, submits the attached document in connection with its *Motion for Entry Of One or More Orders Approving (i) Various Settlements and Compromises by and Among the Debtor, Fairleigh Dickinson University as Project Owner, and Certain Subcontractors on Go-Forward Projects Pursuant to Fed. R. Bankr. P. 9019, (ii) Termination of Certain Projects by and*

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

37322/3
02/14/2020 205904348.1

between the Debtor and Fairleigh Dickinson University and Rejection of all Executory Contracts and Unexpired Leases Related to Terminate Projects; and (iii) Settlement and Payment of Outstanding Accounts Receivable Due to the Debtor filed on January 3, 2019 (the "FDU Settlement Motion") [Docket No. 735][2]:

1.      Attached is a copy of the execution version of the Settlement Agreement executed by the Debtor and FDU (which was attached to the FDU Settlement Motion as Exhibit K).

2.      Attached as Exhibit A are the signature pages for each of the subcontractors on the Park Avenue Project (which was attached to the FDU Settlement Motion as Exhibit H).

3.      This filing supplements the FDU Settlement Motion and confirms that the Settlement Agreement is fully executed with respect to the foregoing Park Avenue Project. Accordingly, and as set forth on the record at the January 9, 2020 hearing on the FDU Settlement Motion, the Debtor will submit a proposed order seeking approval of the FDU Settlement Motion with respect to the Park Avenue Project.

4.      With this filing, the Debtor has now filed fully executed settlement agreements and signature pages for each of the Go-Forward Projects that were set forth in the FDU Settlement Motion.

Dated:  February 14, 2020                    Respectfully submitted,

                                             **LOWENSTEIN SANDLER LLP**

                                             /s/ Kenneth A. Rosen
                                             Kenneth A. Rosen, Esq.
                                             Bruce Buechler, Esq.
                                             Joseph J. DiPasquale, Esq.
                                             Mary E. Seymour, Esq.
                                             Jennifer B. Kimble, Esq. (admitted pro hac vice)
                                             Arielle B. Adler, Esq.
                                             One Lowenstein Drive
                                             Roseland, New Jersey 07068
                                             (973) 597-2500 (Telephone)

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the FDU Settlement Motion.

(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
jdipasquale@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com
aadler@lowenstein.com

*Counsel to the Debtor and Debtor-in-Possession*

Execution Version

## SETTLEMENT AGREEMENT BY AND BETWEEN HOLLISTER CONSTRUCTION SERVICES, LLC, FAIRLEIGH DICKINSON UNIVERSITY AND CERTAIN SUBCONTRACTORS

This Settlement Agreement (the "Agreement") is entered into as of December 24, 2019, by and between Hollister Construction Services, LLC, as project manager (the "Debtor"); Fairleigh Dickinson University, as Owner ("Owner"); and each of the subcontractors identified on Exhibits A through H hereto (the "Subcontractors")(each a "Party," and collectively, the "Parties").

WHEREAS, Debtor and Owner are parties to certain contract documents dated as of August 1, 2014 and amended June 26, 2017 and May 14, 2019, including, without limitation, a Construction Contract Agreement, and all exhibits annexed thereto, and all subsequent riders, amendments, modifications, and change orders (collectively, the "Contracts"),[1] whereby Hollister agreed to provide project management services, including staffing, preconstruction and construction services, to Owner relating to various construction and renovation projects located on the Fairleigh Dickinson University Florham and Metropolitan campuses (collectively, the "Projects" and each a "Project"); and

WHEREAS, on September 11, 2019 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 19-27439 (MBK); and

WHEREAS, Owner believes it has a right to terminate the Contracts for cause and otherwise asserts that the Debtor has defaulted on the Contracts; and

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Contracts.

37322/3
01/03/2020 205529580.8

WHEREAS, the Subcontractors provided goods and/or services to the Debtor in connection with the Projects prior to the Petition Date and are owed money as of the Petition Date in the amounts set forth on Exhibits A through H hereto; and

WHEREAS, two Subcontractors, Latz, Inc. and Sparwick Contracting, Inc. filed pre-petition liens against Owner's property in the amount of $140,308.78 and $305,732.91, respectively; and

WHEREAS, two Subcontractors, Bay Crane Service of New Jersey Inc. and Cardella Trucking Co., Inc., filed post-petition liens against Owner's property in the amount of $84,060 and $3,845.40, respectively; and

WHEREAS, PNC Bank, N.A. ("PNC") is the Debtor's primary secured creditor and asserts liens upon and security interests in all assets of the Debtor, including all accounts receivable and all contracts of the Debtor; and

WHEREAS, if the Contracts were terminated, the Debtor may lose a substantial amount of contract revenue and retainage related to the Projects; and

WHEREAS, Owner may suffer damages attendant with delay and completion costs due if Owner exercised its rights to terminate the Contracts and if the Projects are not completed in a timely manner; and

WHEREAS, the Parties are desirous of finishing the Projects identified on Exhibits A through H (the "Go-Forward Projects") forthwith in accordance with the terms of the Contracts, as modified herein, and it is in the best interests of the Debtor, its estate and creditors to complete the Go-Forward Projects as soon as possible and with as little delay as possible; and

WHEREAS, the Debtor and the Owner have also agreed to terminate certain other Projects as set forth on Exhibit I hereto (collectively, the "Terminated Projects"), with Debtor to reject any and all contracts and unexpired leases that relate to the Terminated Projects, with rejection

-2-    2

effective as of the Petition Date and Owner to pay all accounts receivable due on the Terminated Projects as set forth on Exhibit J in accordance with this Agreement; and

WHEREAS, the Debtor and the Owner have also agreed on the amount of outstanding accounts receivable owed to the Debtor on projects that have been completed as set forth on Exhibit J hereto (collectively, the "Terminated/Completed Projects A/R"), with Owner to pay the Terminated/Completed Projects A/R in accordance with this Agreement;

NOW, THEREFORE, subject to Bankruptcy Court approval, the Parties stipulate and agree as follows:

1.    Effective Date. This Agreement shall become effective as of the date an Order is entered by the Bankruptcy Court approving the Agreement.

2.    Acknowledgement of Contract Amounts.    The Parties acknowledge and agree that: (a) $939,118.31 is due and payable to the Debtor for work performed under the Contracts as of September 11, 2019 ("Pre-Petition Work"), (b) the Owner is currently holding as security under the Contracts an additional $222,770.36 as retainage ("Pre-Petition Retainage") which will be due to the Debtor upon completion of the Go-Forward Projects and Contracts, as modified herein, and delivery to Owner of all lien waivers from all Subcontractors, (c) there is $853,909.46 of incomplete work which costs will be due and payable if the Go-Forward Projects are completed by the Debtor ("Post-Petition Work"), and (d) there will be $0 of additional retainage held for Post-Petition Work ("Post-Petition Retainage").

3.    Acknowledgement of Defaults. The Parties acknowledge and agree that (a) Owner asserts that the Debtor is presently in default under the Contracts and that Owner has the right to seek to terminate the Contracts, (b) if the Contracts were terminated as a result of Debtor's alleged defaults, the Debtor would suffer an economic loss, and (c) Owner will suffer additional damages in the event it is forced to terminate the Contracts and replace the Debtor, including, without

limitation, the costs of a replacement contractor and additional attendant delay, which costs could reduce or exhaust any remaining amounts claimed to be presently due to the Debtor under the Contracts.

    4.    <u>Modification of the Contracts</u>.  In order to avoid the damages to the Debtor and Owner described above, and subject to Bankruptcy Court approval, the Debtor agrees to perform its obligations under the Contracts as modified herein on the Go-Forward Projects.  Approval of this Agreement by the Bankruptcy Court shall be deemed approval of the Contracts as modified herein[2].  The Parties agree that the Go-Forward Projects shall be restarted as soon as reasonably practicable after approval of this Agreement by the Bankruptcy Court.  The Parties agree that the Go-Forward Projects shall be completed, including all necessary final certificates of occupancy, no later than forty-five (45) days from the date of remobilization (the "<u>Go-Forward Project End Date</u>").  Unless otherwise agreed by Owner, the remobilization date shall occur no later than ten (10) business days following approval of this Agreement by the Bankruptcy Court.

    5.    <u>Waiver of Defaults and Delay Claims by Owner.</u>    Upon entry of an Order of the Bankruptcy Court approving this Agreement, Owner waives any defaults or other monetary claims for delay existing as of the date of Owner's execution of this Agreement, without prejudice to any other rights and remedies of the Owner under the Contracts for the Go-Forward Projects as modified by this Agreement which may arise from and after Owner's execution of this Agreement.

    6.    <u>Default</u>.  Notice of any default under this Agreement or the Contracts for the Go-Forward Projects shall be provided to the Debtor and its counsel of record in writing and shall provide for a fifteen (15) business day right of cure. Notwithstanding anything to the contrary herein, in the event that a properly noticed default is not cured within such fifteen (15) business

---

[2] Approval of the Contracts for the Go-Forward Projects is not the assumption of those Contracts under Section 365 of the Bankruptcy Code.

day cure period or except as otherwise agreed to between the Parties, Owner may exercise its rights under this Agreement and the specific Go-Forward Project, including without limitation, issuing a notice of termination of the specific Contract for the Go-Forward Project at issue. Conversion of the Debtor's bankruptcy case to one under Chapter 7 shall be considered an event of default.

7.    <u>Project Escrow Account</u>. Prior to the execution of this Agreement, the Debtor shall establish an escrow account with PNC ("<u>Escrow Account</u>") administered by an independent funds control agent pursuant to a separate Escrow Agreement with PNC. Owner shall not be responsible for any fees and/or costs associated with the establishment and administration of the Escrow Account. All funds deposited into the Escrow Account will be subject to PNC's existing liens on cash collateral of the Debtor, except as set forth in the Escrow Agreement and/or the Current Cash Collateral Order (as that term is defined herein), and all funds paid pursuant to this Agreement or under the Contracts shall be paid through the Escrow Account.

8.    <u>Payment to Subcontractors for Work Performed or Goods Provided After the Petition Date ("Post-Petition Work")</u>. Post-Petition Work and Post-Petition Retainage shall be paid pursuant to the Contracts in the ordinary course of business without any discount or reduction due to Debtor's bankruptcy. Notwithstanding anything to the contrary in the Contracts or herein, the Debtor will continue to supervise its Subcontractors on the Go-Forward Projects through completion of same and perform all other work required under the Contracts for the Go-Forward Projects. The Debtor authorizes Owner to pay the Subcontractors through the Escrow Account the amounts due to them for services and/or goods provided after the Petition Date as necessary to complete the Go-Forward Projects in the ordinary course of work and upon submission by the Subcontractors of all normal and customary documentation to the Debtor and/or Owner. The Debtor shall obtain either a temporary or final certificate of occupancy for each of the Go-Forward Projects only as required under the Contracts for the Go-Forward Projects. All such payments to

the Subcontractors shall be subject to prior approval of the Debtor, which approval shall not be unreasonably withheld or delayed.  Amounts held as Post-Petition Retainage shall be held by Owner and released through the Escrow Account pursuant to the Contracts for the Go-Forward Projects in the regular course of business.  Should the Debtor be unable to compel any Subcontractors to timely perform and complete their work on the Go-Forward Projects, the Debtor may substitute subcontractors to perform such work, provided that said substitution does not delay the Go-Forward Project Completion Date and are consistent with the terms of the existing Contracts for Go-Forward Projects with respect to replacement of subcontractors.

9.      Mechanism for Payment to Participating Subcontractors for Work Performed or Goods Provided Before the Petition Date ("Pre-Petition Work").  On a Go-Forward Project by Project basis, upon: (a) execution of this Agreement by all of a Go-Forward Project's Subcontractors that are participating in the settlement (the "Participating Subcontractors"), which condition may be jointly waived by the written consent of Owner and the Debtor; (b) the release of all filed and asserted liens on the Owner's real property and any improvements thereon; and (c) five (5) business days after the entry of an Order (the "Approval Order") of the Bankruptcy Court approving of this Agreement, Owner will deposit into the Escrow Account an amount representing the sum of 25% of the total amount due for the Pre-Petition Work as set forth in paragraph 2(a) herein (the "Initial Payment") and shall make additional payments directly to certain critical subcontractors, which additional payments are in addition to and shall not affect any payments due and owing from Owner to the Debtor.  Within seven (7) business days from receipt of the Initial Payment, the escrow agent shall release 40% of the amount attributable to the Participating Subcontractors on the Go-Forward Projects from the Initial Payment in the amounts set forth on each of Exhibits A through H hereto, on account of their respective prepetition claims.  The remaining balance from the Initial Payment shall only be disbursed in accordance with the cash

collateral order then in effect (as the case may be, the "Current Cash Collateral Order") or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.  Within fifteen (15) business days of the entry of the Approval Order, Owner will deposit into the Escrow Account an amount representing the sum of 75% of the total amount due for the Pre-Petition Work as set forth in paragraph 2(a) (the "Additional Payment").  Within seven (7) business days of completion of any given Go-Forward Project and the Participating Subcontractors on that given Go-Forward Project providing all required closeout documentation, the escrow agent shall release up to 40% of the amount attributable to the Participating Subcontractors for that Go-Forward Project from the Additional Payment in the amounts set forth in Exhibits A through H hereto, for application to the balance, if any, due to each Participating Subcontractor on account of its prepetition claim.  Said money will be paid directly to the individual Participating Subcontractors from the Escrow Account in the amounts set forth on Exhibits A through H.  The Participating Subcontractors will release all filed and asserted liens on Owner's real property and any improvements thereon within five (5) business days of the entry of the Approval Order.  The remaining balance from the Additional Payment shall only be disbursed in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

   10.   Mechanism for Retainage Payment to Subcontractors for Work Performed or Goods Provided Before the Petition Date.  On a Go-Forward Project by Project basis, Pre-Petition Retainage shall be paid by the Owner, when due under the Contracts, in such amounts held against Subcontractors as set forth in paragraph 2(b) above[3]. The Debtor shall pay through the Escrow

_____

[3] Owner and Debtor agree that Pre-Petition Retainage and Post-Petition Retainage on the
    Pedestrian Bridge Project will be paid to Participating Subcontractors on that Project

Account, 40% to the Subcontractors pursuant to Exhibits A through H, for application to the balance, if any, due to each Subcontractor on account of its prepetition claim. The remaining balance from the Pre-Petition Retainage shall only be disbursed in accordance with the Current Cash Collateral Order or, if no Current Cash Collateral Order is then in effect, upon entry of a final order relating to disposition of such balance by of the Bankruptcy Court.

11.    Subcontractor Release and Unsecured Claim.   By executing this Agreement, the Subcontractors agree to perform all remaining work on the Go-Forward Projects on a go forward basis as set forth herein, and specifically agree to a 60% discount on the amount of receivable, including retainage, due to them for goods and/or services provided on Owner's Go-Forward Projects prior to the Petition Date.  Upon the Subcontractor's receipt of the payments required hereunder, the Subcontractor waives and releases any right to assert any claim (as defined in section 101(5) of the Bankruptcy Code) against Owner and the Go-Forward Projects for this 60% amount, and agrees to accept in full and final satisfaction of its claim for goods and/or services prior to the Petition Date the 40% placed in escrow as provided for above.  For the avoidance of doubt, the Subcontractor will be allowed a general unsecured claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount.

12.    Release of Preferences.   Upon payment of all monies due pursuant to this Agreement and the release of all liens by Subcontractors, the Debtor and its estate hereby waives and releases any cause of action it has or may have against the Subcontractors to commence and

---

upon completion of a Participating Subcontractor's completion of work on the Pedestrian Bridge Project, submission of all required documentation by Participating Subcontractor to Owner and Debtor,  acceptance of such documentation by Owner and Debtor, and approval by Owner for release of Pre-Petition Retainage and Post-Petition Retainage for the Pedestrian Bridge Project from the Escrow Account.

seek to avoid any alleged preference payments under sections 547 and 550 of the Bankruptcy Code arising out of or related to the Projects.

13.    <u>Payment Due to Debtor</u>.  Owner shall pay all amounts for Pre-Petition Work due to the Debtor under this Agreement and the Contracts, inclusive of retainage, into the Escrow Account through the funding of the Initial Payment and the Additional Payment as set forth in Article 8.   Owner shall pay all amounts for Pre-Petition Retainage, into the Escrow Account in the regular course of business pursuant to the Contracts as set forth in Article 9.  Owner shall pay all amounts for Post-Petition Work due to the Debtor under this Agreement and the Contracts, inclusive of retainage, into the Escrow Account in the regular course of business pursuant to the Contracts in accordance with Article 7.  These funds in the Escrow Account shall only be disbursed in accordance with Cash Collateral Orders entered by the Bankruptcy Court or a further Order of the Bankruptcy Court.  In addition to the foregoing payments, Owner shall pay all amounts due to the Debtor for the Terminated/Completed Project A/R as set forth on Exhibit J hereto within fifteen (15) days of entry of the Approval Order.

14.    <u>Interest</u>.  The Parties expressly agree that no payments withheld or other amounts currently unpaid by Owner are deemed to be past due and no such amounts are subject to any rate of interest, including any interest that would be required pursuant to the Contracts or the New Jersey Prompt Payment Act, N.J.S.A. 2A:30A-1, 2A:30A-2.

15.    <u>Releases</u>.

(a)    <u>Release by Owner</u>.  Upon payment of all monies due pursuant to this Agreement, the Owner and its parent, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "<u>Owner Releasors</u>") do hereby release and forever discharge the Debtor and its officers, directors, partners, members, and managers and their respective predecessors,

successors and assigns (collectively, the "Debtor Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Debtor Released Parties, arising out of or related to the Contracts or the Projects.

(b)    Release by the Debtor. Upon payment of all monies due pursuant to this Agreement, the Debtor and its officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "Debtor Releasors") do hereby release and forever discharge Owner and its parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "Owner Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Debtor Releasors, or any of them, ever had or now has against any one or more of the Owner Released Parties arising out of or related to the Contracts or the Projects.

(c).    Release by Subcontractors. Upon receipt of payment of all monies due pursuant to this Agreement, each Subcontractor and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Subcontractor Releasors") do hereby release and forever discharge Owner and the Debtor and their respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Debtor Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the

Subcontractor Releasors, or any of them, ever had or now has against any one or more of the Owner and Debtor Released Parties, arising out of or related to the Contracts or the Projects. Subcontractor agrees to indemnify and hold the Owner and Debtor Released Parties harmless against any liens or claims by any supplier, materialmen, vendor, subcontractor of any tier, employee, or other claimant asserting any rights against Owner and Debtor Released Parties by virtue of separate agreement with Subcontractor. For the avoidance of doubt, the Subcontractor will be allowed a general unsecured claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor and its estate for the 60% amount. The Subcontractors agree that Owner is a third party beneficiary of all warranties and guaranties set forth in the Subcontracts entered into between the Subcontractors and the Debtor and that all such warranties and guaranties inure to the benefit of Owner as if such warranties and guaranties were made directly to Owner. In no event does Owner have any obligations to the Subcontractors other than the payments provided in this Agreement, including without limitation, as a result of the warranties and guaranties inuring to the Owner's benefit or otherwise.

(d) Release of PNC Bank. Except as expressly set forth in this Agreement, subject only to the disbursement of funds as provided for in this Agreement, each Owner and Subcontractor and their respective parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner and Subcontractor Releasors") do hereby release and forever discharge PNC Bank and its respective officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "PNC Bank Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner and Subcontractor Releasors, or any of them,

ever had or now has against any of the PNC Bank Released Parties, arising out of or related to the Contracts or the Projects.

16.    <u>Releases as a Defense</u>.  Each of the Owner, Debtor and Subcontractor acknowledge and agree that (i) the releases set forth in this Agreement may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

17.    <u>No Assignment of Released Claims</u>.  Each of the Owner, Debtor and Subcontractor represents and warrants that as of the date of this Agreement, it has not assigned, transferred or sold (or purported to assign, transfer or sell) all or any portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

18.    <u>Governing Law</u>.   This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

19.    <u>Contracts as Modified In Full Force and Effect</u>.  Except as modified herein, the Contracts, as modified by this Agreement, shall be binding upon, and shall inure to the benefit of, the Parties hereto and remains in full force and effect.

20.    <u>Headings</u>.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Agreement.

21.     Counterparts.  This Agreement may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument. Any of the signatures to this Agreement may be delivered by facsimile or electronically mailing a portable data format ("pdf") copy, and such facsimile or electronically mailed pdf copy signature shall be fully binding on the person or party tendering the facsimile or pdf signature.

22.     No Oral Modification, Termination or Waiver.  This Agreement cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

23.     Further Assurances.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the provisions and purposes of this Agreement without the need for further Order of the Bankruptcy Court.

24.     Jurisdiction and Venue.  The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County.  THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AGREEMENT.

25.     Authorization.  Each Party signing this Agreement hereby covenants and warrants that he/she is fully authorized to sign the Agreement on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Agreement. The Parties to this Agreement acknowledge that they have read all of the terms of this Agreement, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of

their choice) regarding the terms of this Agreement, and enter into this Agreement voluntarily and without duress.

26.    <u>Jointly Drafted</u>.  The Parties to this Agreement acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties.  The terms of this Agreement shall be deemed to have been jointly negotiated and drafted by the Parties.

27.    <u>Severability</u>.  The provision of this Agreement shall be deemed severable and if any portion shall be held invalid, illegal or unenforceable for any reason, the remainder of this Agreement shall be effective and binding on the Parties.

28.    <u>Binding Effect</u>.  This Agreement shall be binding upon all Parties that are signatories hereto and shall also be binding upon any Chapter 11 or Chapter 7 Trustee appointed for the Debtor.

29.    <u>Terminated and/or Completed Projects</u>.    The Debtor and Owner agree that all contracts and unexpired leases that relate to each of the Terminated Projects listed on Exhibit I hereto shall be rejected effective as of the Petition Date. Any counterparty to a rejected contract or unexpired lease connected with a Terminated Project must file a proof of claim for any rejection damages on or before the bar date of January 20, 2020.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**

By: _____
   Chris Johnson
   399 Jefferson Road
   Parsippany, NJ 07054

-14-                14

**OWNER**

Fairleigh Dickinson University

By: _Richard Frisk_

    Name: _Richard Frisk_

    Title: _VP for Facilities + Auxiliary Services_

    Address: _1000 River Rd., Teaneck, NJ 07666_

**SUBCONTRACTOR**

By: _____

    Name:

    Title:

    Address:

-16-                    16

# EXHIBIT A

Park Ave

| Subcontractor/Vendor | Pre-Petition Expenses | 40% of Petition Amount | 25% Paid | 75% Paid | Retention Pre-Petition | 40% of Pre-Petition Retainage, Paid at Completion of Project |
|---|---|---|---|---|---|---|
| Good Brothers | 7,212.12 | 2,884.85 | 721.21 | 2,163.64 | | - |
| KB Electric | 2,600.01 | 1,040.00 | 260.00 | 780.00 | | - |
| LAN Associates | 7,768.25 | 3,107.30 | 776.83 | 2,330.48 | | - |
| Latz Inc | 140,349.00 | 56,139.60 | 14,034.90 | 42,104.70 | | - |
| Samph Contracting | 19,757.74 | 7,903.10 | 1,975.77 | 5,927.32 | | - |
| Davey Tree Expert | 20,418.00 | 8,167.20 | 2,041.80 | 6,125.40 | | - |
| Imperial Painting | 15,328.15 | 6,131.26 | 1,532.82 | 4,598.45 | | - |
| STMR Inc | 56,210.00 | 22,484.00 | 5,621.00 | 16,863.00 | | - |
| | | - | - | - | | - |
| | 269,643.27 | 107,857.31 | 26,964.33 | 80,892.98 | | - |

Latz Inc's Aug. 2019 invoices are subject to audit by Hollister Construction Services LLC and Fairleigh
Dickinson University after Latz Inc. submits backup receipts for material purchases.  No payment will
be made to the benefit of Latz Inc. until backup receipts have been provided and audited  FDU has
been requesting this backup since Sept. 2019.

Case 19-27439-MBK    Doc 962    Filed 02/28/20    Entered 02/29/20 00:33:23    Desc Main
Case 19-27439-MBK    Doc 943    Filed 02/20/20    Entered 02/20/20 00:33:23    Desc Main
Imaged Certificate of Notice    Page 24 of 32
Document    Page 2 of 24 of 32

**SUBCONTRACTOR**
Good Brothers

By: _____

Name: Jeffrey Siboradzki

Title: President

Address: 648 South Ave. Garwood, N.J.  07027

16

**SUBCONTRACTOR**

KB Electrical Service Co. Inc.

By: _____

     Name:   Bernard Schnoor

     Title:     President

     Address:  152 Park Ave

              Park Ridge, NJ  07656

16

SUBCONTRACTOR
LAN Associates

By: _____

Name:
Title:
Address:

**LAN** ASSOCIATES
Engineering - Planning - Architecture - Surveying, Inc.
445 Godwin Avenue   Midland Park, N.J. 07432
(201) 447-6400   FAX (201) 447-1233

17

**SUBCONTRACTOR**
Latz Inc.

By: _Olvry_ (Pres)
     Name:   Glen Lotz
     Title:    Pres
     Address:  65 Piermont rd

              Tenafly , N.J.

              07670

18

**SUBCONTRACTOR**

By: _____

Name: Samph Contracting LLC
Title: Owner
Address: 4750 Blue Church RD
Coopersburg Pa 18036

-16-                16

Case 19-27439-MBK    Doc 837    Filed 02/21/20    Entered 02/21/20 13:24:04    Desc Main
Document    Page 26 of 28

SUBCONTRACTOR
Davey Tree Expert

By: _____

Name: EDWARD ZIMMERMANN

Title: BRANCH MANAGER

Address: 1500 N. MANTUA ST.
KENT, OH 44240

(LOCAL ADDRESS
285 MADISON AVE
MADISON, NJ 07940)

SUBCONTRACTOR
Imperial Painting

By: _____

Name:    Bill Dagiantis
Title:     President
Address: 109 Ashland Avenue, West Orange, NJ 07052

21

SUBCONTRACTOR

By: _____

    Name: _STMR_ _Inc._

    Title: _President_

    Address: _92 Morrissee Ave._

                 _Wallington, NJ 07057_

United States Bankruptcy Court
District of New Jersey

In re:                                                            Case No. 19-27439-MBK
Hollister Construction Services, LLC                              Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-3          User: admin          Page 1 of 1          Date Rcvd: Feb 26, 2020
                             Form ID: pdf903       Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Feb 28, 2020.
db              +Hollister Construction Services, LLC,   339 Jefferson Road,   Parsippany, NJ 07054-3707

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                    TOTAL: 0

         ***** BYPASSED RECIPIENTS *****
NONE.                                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Feb 28, 2020                          Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on February 26, 2020 at the address(es) listed below:
NONE.                                                                                    TOTAL: 0