FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

IN RE: HOLLISTER CONSTRUCTION SERVICES, LLC,
                    Debtor.

Case No. 19-27439 (MBK)

Chapter 11

Hearing Date:  1/23/2019

Judge:   Michael B. Kaplan

**Joseph L. Schwartz, Esq.**
**Tara J. Schellhorn, Esq.**
Riker Danzig Scherer Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Ave.
Morristown, NJ 07962
*Counsel for Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC*

**Allen J. Barkin, Esq.**
Schwartz Barkin & Mitchell
1110 Springfield Rd.
PO Box 1339
Union, NJ 07083
*Counsel for Drobach Equipment Rental Co.*

**Bart J. Klein, Esq.**
Law Office of Bart J. Klein
2066 Millburn Ave
Suite 101
Maplewood, NJ 07040
*Counsel for Apple Coring & Sawing, LLC*

**Michele L. Ross, Esq.**
M. Ross & Associates, LLC
440 Sylvan Ave
Suite 220
Englewood Cliffs, NJ 07632
*Counsel for Control Services, LLC*

**Jeffrey J. Rea, Esq.**
Rea & Associates, LLC
11 Broadway
Second Floor
Clark, NJ 07066
*Counsel for City Contracting, Inc.*

**M. Murphy Durkin, Esq.**
Durkin & Durkin, LLC
1120 Bloomfield Ave.
PO Box 1289
West Caldwell, NJ 07007
*Counsel for Dehn Bros. Fire Protection, Inc.*

**Christopher P. Coval, Esq.**
Fenningham, Dempster & Coval, LLP
Five Neshaminy Interplex
Suite 315
Trevose, PA 19053
*Counsel for Allglass Systems, LLC*

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART NEWARK WAREHOUS URBAN RENEWAL, LLC AND NEWARK WAREHOUSE REDEVELOPMENT COMPANY, LLC'S MOTION FOR ENTRY OF AN ORDER DETERMINING THAT CERTAIN PARTIES HAVE VIOLATED THE AUTOMATIC STAY**

This matter comes before the Court on a Motion (ECF No. 740) filed by Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC (collectively, "NWR") seeking an Order determining: (1) that certain parties have violated the automatic stay under 11 U.S.C. § 362(a); (2) that certain asserted liens filed post-petition are void *ab initio*; and (3) that the automatic stay applies to ongoing state litigation involving enforcement of certain construction liens.  The motion was heard on shortened time on January 9, 2020, but was adjourned to January 23, 2020 to afford interested parties an opportunity to file written responses.  Indeed, several non-debtor parties filed oppositions to the motion.  NWR submitted an Omnibus Supplemental Reply (ECF No. 844) on January 22, 2020.  At the hearing on January 23, 2020, the parties engaged in oral argument.  Ultimately, the Court reserved its decision and permitted the parties to submit simultaneous briefing in response to the issues raised during the hearing within fourteen (14) days.

The Court has reviewed the parties' submissions—including the post-hearing briefs—and has considered fully the arguments. This Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated

2

July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy

court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G), (K) and

(O).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.  For the reasons set

forth below, NWR's Motion (ECF No. 740) is GRANTED IN PART and DENIED IN PART.  The

following constitutes the Court's findings of fact and conclusions of law as required by FED. R.

BANKR. P. 7052.[1]

## I.    Background

The factual background and procedural history of this matter are well known to the parties

and will not be repeated in detail here.  In relevant part, NWR owns a former warehouse building

located at 110 Edison Place in Newark, New Jersey 07102 (the "Building").  On or about April

20, 2017, NWR entered into an Agreement for Construction Management Services and Guaranteed

Maximum Price (the "GMP Contract") with the Debtor, Hollister Construction Services, LLC

("Debtor").  The Debtor was named Construction Manager and was to provide certain construction

management services for a large-scale project (the "Project") involving the renovation of the

Building.  In order to complete the Project, several subcontractors, material-providers, and other

service companies were enlisted, including Drobach Equipment Rental Co. ("Drobach"), Apple

Coring & Sawing, LLC ("Apple"), Control Services, LLC ("Control"), City Contracting, Inc.

("CCI"), Dehn Bros. Fire Protection, Inc. ("Dehn Bros."), and Allglass Systems, LLC ("Allglass")

(collectively, the "Subcontractors").   As the Project progressed, several subcontractors filed

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such.
Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

construction liens and NWR "bonded the liens" by filing a surety bond issued by Arch Insurance

Company and Arch Reinsurance Company ("Arch").

NWR alleges that, beginning on or about October 2017, the Debtor defaulted under the

terms of the GMP Contract, resulting in, among other things, significant cost overruns and

substantial delays.  Ultimately, NWR concluded that the Debtor was incapable of completing the

Project and NWR took steps to terminate the GMP Contract.  On September 5, 2019, NWR filed

a complaint ("NWR's Complaint") against the Debtor and its principals in Superior Court in New

Jersey seeking relief premised on various New Jersey state law causes of action. *See Newark

Warehouse Urban Renewal, LLC et al. v. Hollister Construction Services LLC, et al.*, Docket No.

ESX-L-006514-19.  Additionally, several subcontractors and material-providers commenced state

court litigations against the Debtor and NWR for issues related to the Project (collectively, the

"State Court Actions").

On September 11, 2019, the Debtor filed a voluntary chapter 11 petition for relief in the

Bankruptcy Court for the District of New Jersey.  As part of the first day relief sought in the

bankruptcy case, the Debtor filed a motion for entry of an Order restating and enforcing the

automatic stay (ECF No. 13).  In its motion, the Debtor cited concerns about the application of

"the automatic stay to contractor, subcontractor, materialman or similar parties['] attempt to file

or prosecute their construction or mechanics lien for pre-petition services rendered and/or goods

supplied barred under New Jersey state law." *Id.* at ¶ 20.  On September 20, 2019, this Court

entered an Order restating and enforcing the automatic stay, directing that, among other things,

"all persons . . . are hereby stayed, restrained and enjoined from: (a) commencing or continuing .

4

. . any judicial, administrative, or other action or proceeding against the Debtor . . . including any efforts to file, continue litigation, enforce and/or collect on construction or mechanics liens from third-party real property owners construction projects for services performed for or on behalf of the Debtor[.]" *First Order Enforcing the Automatic Stay*, ECF No. 140.

NWR then filed a motion (ECF No. 170) seeking relief from the automatic stay and, specifically, a declaration confirming that the GMP Contract is not property of the estate.  In an Order dated October 8, 2019 (ECF No. 303), the Court granted NWR's motion, giving NWR relief from the automatic stay and deeming the GMP Contract terminated as of that date.  The Court further determined that NWR could assert any and all of their non-monetary post-termination rights as set forth in the GMP Contract.  As a result, NWR proceeded with its state law claims against the Debtor and removed the action to the District Court.  The NWR Complaint is pending before this Court under Adversary Proceeding No. 19-02222.

As the bankruptcy progressed, various subcontractors, materialmen and/or suppliers filed construction liens on the Debtor's projects to collect on monies due for prepetition services and/or materials.  On December 20, 2019, the Debtor filed a motion (ECF No. 692) seeking a determination that certain parties had violated the automatic stay, declaring the constriction liens void *ab initio* and unenforceable, and awarding attorneys' fees and related relief.  NWR filed an objection and asserted that the Debtor's motion was narrowly tailored to only those lien-holders with whom Debtor had reached settlements with certain impacted project owners.  NWR contended that the motion improperly ignored other improper post-petition construction liens and enforcement actions, including the State Court Actions, and NWR sought to expand the relief

requested in the Debtor's motion.  The motion was heard on shortened time on January 2, 2020.

Following oral argument, the Court granted the Debtor's motion—although the Court reserved on

the issue of attorneys' fees (ECF No. 730)—and indicated that NWR could file its own motion to

request the relief sought in its objection.

Consistent with the Court's direction, NWR filed the instant motion (ECF No. 740).  NWR

points out that, since the filing of the bankruptcy, several subcontractors and material-providers

have filed post-petition construction liens against the Building at issue.  NWR seeks a declaration

that the automatic stay applies as to the subcontractors and material-providers, and that these

parties have violated the automatic stay by filing post-petition construction liens and/or by

pursuing claims against NWR in the State Court Actions.  In support of its motion, NWR relies

primarily on the Third Circuit's opinion in *In re Linear Elec. Co., Inc.*, 852 F.3d 313 (3d Cir.

2017).

Several entities oppose NWR's motion, including Drobach, Apple, Control, CCI, Dehn

Bros, and Allglass (collectively, the "Subcontractors").  Notably, neither the Debtor nor the

bonding company, Arch, have taken positions with respect to the motion.  For the reasons set forth

below, the Court determines that the filing of post-petition construction liens and enforcement of

pre-petition construction liens violate the automatic stay.  However, to the extent that the State

Court Actions seek relief separate and apart from the construction liens (such as state law claims

for quantum meruit or unjust enrichment), those actions do not directly affect assets of the

bankruptcy estate and are permissible under 11 U.S.C. § 362(a).

## II.    Applicable Law

### A.    Bankruptcy Law

A debtor in need of relief may file a voluntary bankruptcy petition, which commences a bankruptcy case. 11 U.S.C. § 301.  "The commencement of a [bankruptcy] case . . . creates [a bankruptcy] estate" that generally consists of all of the property of the debtor. 11 U.S.C. § 541; *accord Law v. Siegel*, 571 U.S. 415, 417, 134 S. Ct. 1188, 1192, 188 L. Ed. 2d 146 (2014). Additionally, the filing of a bankruptcy petition automatically triggers a stay as of the petition date against "any act to create, perfect, or enforce any lien against property of the estate." 11. U.S.C. § 362(a)(4).  While scope of the automatic stay is broad, the clear language of the statute dictates that it stays only proceedings against the debtor or against property of the estate. 11 U.S.C. § 362; *see also Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992).

### B.    New Jersey Construction Lien Law ("NJCLL")

Under New Jersey law, "[a]ny contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price . . . ." N.J. STAT. ANN. § 2A:44A-3(a).  "The lien shall attach to the interest of the owner or unit owner of the real property development . . . ." *Id.*  The lien itself is "limited to the amount that [the owner] agreed in writing to pay, less payments made by or on behalf of that person in good faith prior to the filing of the lien." N.J. STAT. ANN. § 2A:44A-3(f).

7

In general, an owner discharges a lien by paying into a lien fund, from which claimants recover what they are owed. *See In re Linear Elec. Co., Inc.*, 852 F.3d at 316.  Upon receipt of a lien claim, the New Jersey Construction Lien Law authorizes a property owner "to withhold and deduct the amount claimed from the unpaid part of the contract price that is or thereafter may be due and payable to the contractor or subcontractor, or both." N.J. STAT. ANN. § 2A:44A-12.

## III.    Discussion

At the outset, the Court must point out the irony in the procedural posture of this motion and the requested relief.  Here, the protections of the automatic stay under § 362 are not sought by the Debtor or the bonding company which has contracted to satisfy the Debtor's obligations. Rather, the relief is requested by a third-party project owner presently engaged in litigation with the Debtor over accounts receivable.  Nevertheless, § 362 prohibits any act to create or perfect a lien on the Debtor's property.  Therefore, if, as NWR alleges, actions taken by the Subcontractors affect the Debtor's accounts receivable due under the construction contract, then the automatic stay is implicated, and the third-party project owner has sought proper relief.

At issue in this case are three separate classes of actions which NWR asserts violate the automatic stay: (1) the filing of post-petition construction liens; (2) enforcement of pre-petition construction liens; and (3) pursuit of direct state law claims against NWR or Arch (on the bond) in pending or future state court actions.

8

### A. Construction Liens Filed Post-Petition

NWR asserts that the filing of post-petition construction liens is violative of the automatic

stay and must be enjoined until a proper assessment of the Debtor's rights and liabilities under the

GMP Contract can be undertaken.   Indeed, the Third Circuit's decision in *Linear Electric* is

dispositive of this issue. *See In re Linear Elec. Co., Inc.*, 852 F.2d 313.   As discussed in *Linear*

and other cases applying the New Jersey Construction Lien Law ("NJCLL"), when a subcontractor

files a construction lien, the amount of that lien is limited to the lesser of the "amount unpaid by

the owner to its prime contractor as of the time [the] lien is filed" or the "balance owed by the

contractor to the liening subcontractor." *Sil-Kemp Concrete, Inc. v. Conte & Ricci Const. Co.,* No.

A-4324-03T3, 2005 WL 3742261, at *10 (N.J. Super. Ct. App. Div. Feb. 8, 2006) (quoting 41

ROBERT S. PECKAR, NEW JERSEY PRACTICE, CONSTRUCTION LAW, § 12.58 (1998)).   Stated another

way, the amount of a subcontractor lienholder's claim—and the fund from which that claim may

be paid—is limited to "the amount the [general contractor] owes to the [subcontractor] lienholder

under their contract and to the **accounts receivable** the owners of the third-party properties owe

to the [general contractor] under their contract." *Cooper Elec. Supply Co. v. Linear Elec. Co.*, No.

15-06429, 2016 WL 781770, at *2 (D.N.J. Feb. 29, 2016), *aff'd sub nom. In re Linear Elec. Co.,*

*Inc.*, 852 F.3d 313 (3d Cir. 2017) (emphasis added).

Upon the filing of a lien claim, the NJCLL authorizes the property owner "to withhold and

deduct the amount claimed from the unpaid part of the contract price that is or thereafter may be

due and payable to the contractor or subcontractor, or both." N.J. STAT. ANN. § 2A:44A-12.   Thus,

the filing of a construction lien by a subcontractor is an act to collect a portion of the accounts

receivable owed by a third-party property owner to a general contractor. *Linear Elec. Co.*, 2016 WL 781770, at *2; *see also In re Linear Elec. Co., Inc.*, 852 F.3d at 320-22 (filing of a construction lien by a subcontractor is an act to create or perfect a lien against a general contractor's accounts receivable). When a general contractor files for bankruptcy, its accounts receivable becomes property of the bankruptcy estate. *Id.* Accordingly, where, as here, the general contractor has filed for bankruptcy, a construction lien filed post-petition constitutes an act against property of the estate and is violative of the automatic stay. *In re Linear Elec. Co., Inc.*, 852 F.2d at 322.

### B. Construction Liens Filed Pre-Petition

As to the construction liens that were filed before Debtor filed its petition for bankruptcy, NWR asserts that those liens are also subject to the automatic stay. NWR again relies on the Third Circuit's holding in *Linear Electric* in support of this position. CCI[2], however, argues that "the *Linear Electric* ruling does not mandate that construction lien foreclosure actions be stayed while these bankruptcy proceedings are pending, provided that the lien claims were, in fact, filed prior to [Debtor's] petition for bankruptcy." *CCI's Post-Hearing Submission* at 2, ECF No. 908. CCI points out that the subcontractors in *Linear Electric* filed their construction liens *after* the general contractor had filed for bankruptcy protection; whereas in this case, CCI filed its construction lien claim *before* the filing of the bankruptcy petition.

Indeed, the Court notes that *Linear Electric* is factually distinguishable from the instant case in terms of when the subcontractors' construction liens were filed—pre-or-post-petition. Nevertheless, the analysis remains the same. As previously explained, the lien fund is initially

---

[2] It appears that the other objecting parties either do not share CCI's position that prosecution of the pre-petition filed liens is prohibited, or abandoned the argument in their written submissions and during oral argument.

calculated based on "the amount the [general contractor] owes to the [subcontractor] lienholder under their contract and [on] the **accounts receivable** the owners of the third-party properties owe to the [general contractor] under their contract." *Cooper Elec. Supply Co. v. Linear Elec. Co.*, 2016 WL 781770, at *2; *see also* N.J. STAT. ANN. § 2A:44A-9.   Although CCI argues that *Linear Electric* "did not consider the difference between the manner in which a pre-petition statutory lien fund is calculated . . . as opposed to a post petition determination," CCI does not suggest an alternate method for calculation. *CCI's Post Hearing Submission* at 3, ECF No. 908.  Notably, the New Jersey Construction Lien Law makes no such distinction and its prescribed method for calculation is clear. *See* N.J. STAT. ANN. § 2A:44A-9.

Additionally, pursuant to the statute and the lien claim payment process, any payment to a subcontractor resulting from an action to enforce or foreclose on a construction lien would reduce the amount that the third-party property owners owe to the general contractor. N.J. STAT. ANN. § 2A:44A-12 ("Any such payment made by the owner . . . shall constitute a payment made on account of the contract price of the contract with the contractor or subcontractor, or both, against whose account the lien is filed.").  In other words, payment of a subcontractors' lien claim reduces the general contractor's accounts receivable, which is part of the bankruptcy estate.  Accordingly, any action to enforce or foreclose on a construction lien contravenes the automatic stay.

CCI further contends that the lien fund "is not dependent upon a general contractor's actual accounts receivable for a particular project as a result of monies a project owner may ultimately be entitled to contractually deduct from the general contractor's unpaid contract balance . . . ."

*CCI's Post-Hearing Submission* at 3-4, ECF No. 908[3]. While this argument has merit with respect to CCI's other claims (discussed *infra*), it carries no weight with respect to CCI's contention that enforcement of its pre-petition construction lien does not violate the automatic stay. Specifically, CCI cites to case law which holds that "in a dispute between a project owner and a blameless supplier or contractor, the latter's rights typically prevail." *Id.* at 4 (citing *AEG Holdings, L.L.C. v. Tri-Gem's Builders, Inc.*, 347 N.J. Super. 511, 790 A.2d 954 (App. Div. 2002)). Indeed, the case law suggests that when a property owner incurs additional charges or has rights to compensation, he or she may not reduce the lien fund to the detriment of a subcontractor lienholder. *See, e.g.*, *Labov Mech., Inc. v. E. Coast Power, L.L.C.*, 377 N.J. Super. 240, 872 A.2d 142 (App. Div. 2005) (holding that project owner could not reduce construction lien fund by contractual liquidated damages against general contractor); *AEG Holdings*, 3347 N.J. Super. 511 (holding that property owner may not reduce lien fund although owner had to pay additional sums to others to finish the job); *Legge Indus. v. Joseph Kushner Hebrew Acad./JKHA*, 333 N.J. Super. 537, 558, 756 A.2d 608, 620 (App. Div. 2000) (holding that a property owner's maximum liability is not reduced by payments made to the contractor that were not earned and due before the subcontractor's lien was filed).

However, nothing in the relevant case law alters the statutorily mandated construction lien payment process. As discussed, a subcontractor's enforcement of its own construction lien claim

---

[3] The Court notes that in its submission CCI repeatedly refers to Section 10 and subsections therein as the section of the NJCLL which creates the lien fund. However, the accurate section is Section 9, titled "Amount of lien claim allowed; lien fund; fund computation." N.J. STAT. ANN. § 2A:44A-9. Section 10 addresses "Time attachment occurs; bona fide purchasers; priority in relation to other interested parties" and does not contain any subsections. N.J. STAT. ANN. § 2A:44A-10.

affects a general contractor's accounts receivable and where—as here—that general contractor has filed a petition for bankruptcy, enforcement of the subcontractor's construction lien infringes upon the automatic stay. *See* N.J. STAT. ANN. § 2A:44A-12.  This holding is consistent with case law and with the statutory purpose underlying the automatic stay. *See In re Linear Elec. Co., Inc.*, 852 F.3d at 323 ("[I]f [the subcontractors] were allowed to receive full repayment via New Jersey's Construction Lien Law, they would be fully repaid, and [the debtor] would receive less as a result. Thus, there would be less total money to go into the plan of repayment, and other creditors of [the debtor] would suffer. [The subcontractors] would be effectively circumventing the bankruptcy case in order to unfairly advantage themselves at the expense of other creditors. For better or for worse, the automatic stay requires that [the subcontractors] wait as [the debtor's] bankruptcy case proceeds and receive whatever they will receive under bankruptcy law without resort to other mechanisms to claim greater payments.").[4]

### C.  Non-Lien Claims

As set forth above, the Court determines that any act to recover under the lien fund is restrained by the automatic stay.  However, the Subcontractors are pursuing state law claims that are separate and apart from their construction lien claims under the NJCLL; namely, their asserted claims for quantum meruit and unjust enrichment against NWR, as well as claims against the bond issued by Arch.  Accordingly, in deciding the remainder of this motion, the Court must construe New Jersey state law and the Third Circuit's decision in *Linear Electric* to determine: (1) whether

---

[4] The Court notes, however, the holding in *Linear Electric* does not preclude a court, upon a proper showing of cause under 11 U.S.C. § 362(d)(1), from granting a pre-petition lienholder relief from the automatic stay to pursue collection efforts.

the automatic stay bans direct subcontractor claims for quantum meruit or unjust enrichment against a third-party project owner; and (2) whether the automatic stay prevents a subcontractor from bringing an action against the bond issued by the bonding company.

### 1. Quantum Meruit and Unjust Enrichment Claims Against Third-Party Property Owner

In support of their position, the Subcontractors[5] contend that the state law claims for quantum meruit or unjust enrichment are direct, non-lien claims against a non-debtor and do not implicate the NJCLL or affect estate property.  The Subcontractors further assert that any judgment obtained as the result of these direct, non-lien claims can be pursued and satisfied by a non-debtor third-party without violating the automatic stay.  This Court agrees.

In its submissions, NWR again cites to *Linear Electric* and contends that *any* claim against it by the subcontractors—whether for lien enforcement, unjust enrichment or quantum meruit—would have a direct impact on the Debtor's estate. *See, e.g.*, *NWR's Supplemental Omnibus Reply* at 10, ECF No. 844; *NWR's Post-Hearing Submission* at 9, ECF No. 913 ("[T]o the extent the NWR Entities (and/or Arch) are potentially held liable for [the state law] claims, it would reduce any account receivable owed to the Debtor.").  As discussed below, the Court disagrees and determines that NWR seeks an impermissible extension of the Third Circuit's holding in *Linear Electric.*

---

[5] The Court notes that not all entities included in the "Subcontractors" definition have explicitly taken this position. For clarity and ease of reference, the Court will continue to use the term "Subcontractors" in addressing this argument.

Initially, the Court notes that no provision of the NJCLL, or the case law interpreting it, precludes the Subcontractors from seeking alternative remedies against the Debtor or NWR through other means—such as through claims for unjust enrichment or quantum meruit. *See* N.J. STAT. ANN. § 2A:44A-3(h) ("Nothing in this act shall be construed to limit the right of any claimant from pursuing any other remedy provided by law."); *see also, e.g.*, *Kvaerner Process, Inc. v. Barham-McBride Joint Venture*, 368 N.J. Super 190, 845 A.2d 692 (App. Div. 2004) (observing simultaneous pending actions—one in state court regarding the construction lien and the other in federal court on contract and quantum meruit claims).

Further, the Subcontractors' claims for quantum meruit and unjust enrichment are not dependent on, and do not affect, the lien fund.  If the circumstances of this case were such that, at the time the first subcontractor filed a lien claim, NWR had fully paid the Debtor the contract price, then pursuant to the statute no lien fund would exist, N.J. STAT. ANN. § 2A:44A-9(d), yet the quantum meruit and unjust enrichment claims would still be available remedies to the extent the Subcontractor claims remained unsatisfied.  The plain language of the statue instructs that the lien fund is calculated based on what remains unpaid *as of the filing of the construction lien*. N.J. STAT. ANN. § 2A:44A-9(b) (emphasis added).  Therefore, NWR's potential future obligation to the Subcontractors, premised on alternative theories of liability, does not alter calculation of the lien fund.

In support of its position, NWR explains that the lien claim payment process of the NJCLL "allows a subcontractor to collect its recovery by subtracting from a debtor/general contractor's accounts receivable." *NWR's Post-Hearing Submission* at 9, ECF No. 913.  To the extent the

"recovery" referenced in that statement is "recovery for construction lien claims paid to a subcontractor," this Court agrees. *See* N.J. STAT. ANN. §2A:44-12. However, NWR then jumps to the conclusion that if it were required to pay a subcontractor as the result of an unjust enrichment or quantum meruit claim, it would likewise be "**entitled** to deduct the awarded amount" from the accounts receivable owed to the debtor contractor. *NWR's Post-Hearing Submission* at 9, ECF No. 913 (emphasis added). There is no basis—in case law or in the statute—for such a leap.

In the NJCLL context, a subcontractor seeks recovery from a lien fund which, pursuant to the statute, authorizes a property owner to reduce the accounts receivable owed to the general contractor. In the quantum meruit/unjust enrichment context, a subcontractor seeks recovery on independent claims directly from the property owner under state law, which, in and of itself, does not authorize or entitle a property owner to reduce the lien fund or the accounts receivable owed to the general contractor. *See, e.g.*, *Labov Mech., Inc. v. E. Coast Power, L.L.C.*, 377 N.J. Super. 240, 872 A.2d 142 (App. Div. 2005) (determining that a project owner could not reduce construction lien fund by contractual liquidated damages against the general contractor). Rather, the property owner may seek indemnification, offset, or reimbursement from the general contractor for any amounts it is ordered to pay to the subcontractor as a result of the state court judgment. However, such recourse is not an automatic right, and does not create a lien or interest against the general contractor's accounts receivable, or any other estate property, sufficient to constitute a stay violation. Instead, the property owner simply holds a claim against the debtor general contractor or an independent setoff right for which stay relief would be required to effectuate.

NWR asserts that under the GMP Contract, "any funds" it pays to the Subcontractors "would automatically reduce [NWR's] liability, if any, to the Debtor without the need to assert any claim against the Debtor for reimbursement, indemnity or recoupment." *NWR's Post-Hearing Submission* at 9-10, ECF No. 913.  Accepting this assertion as true for purposes of this Opinion[6], the Court notes that NWR was awarded stay relief to pursue its claims against the Debtor with respect to the accounts receivable in the adversary proceeding.  Thus, to the extent NWR seeks to enforce its rights under the GMP Contract and further reduce the accounts receivable, it has already been granted permission to do so and there can be no stay violation.  To the extent NWR implies that the GMP Contract entitles NWR to reduce automatically the lien fund on account of payments to the Subcontractors, the Court disagrees. *See, e.g.*, *Labov Mech., Inc. v. E. Coast Power, L.L.C.*, 377 N.J. Super. 240, 872 A.2d 142 (App. Div. 2005) (determining that a project owner could not reduce construction lien fund by contractual liquidated damages against the general contractor).

The Court also rejects NWR's assertion that the Subcontractors' recovery against NWR for quantum meruit or unjust enrichment "would negatively impact the Debtor's estate." *Id.* at 9. While there *ultimately* may be a negative impact to the Debtor's estate, the Court determines that it is NWR's recovery—not the Subcontractors' pursuit of independent claims—which causes the impact.  The Subcontractors will pursue and obtain their recovery, if any, from NWR.  The Debtor and estate property remain unaffected until NWR seeks to enforce its own rights against the Debtor; thus, the Subcontractors' State Court Actions are not violative of the automatic stay.  In short, this Court is unwilling to extend the holding in *Linear Electric* beyond the context of the

---

[6] The Court was unable to locate a copy of the GMP Contract.

NJCLL to hold that any action which could ultimately impact a debtor's estate is a violation of the automatic stay. *Cf. Matter of Yobe Elec., Inc.*, 30 B.R. 114, 119 (Bankr. W.D. Pa. 1983), *aff'd sub nom. In re Yobe Elec., Inc.*, 728 F.2d 207 (3d Cir. 1984) ("While the Court realizes that the Owner's withholding of funds may have a deleterious effect upon Debtor's efforts to reorganize, it cannot deprive the Subcontractor of its clear right under state law, as protected by § 546(b) of the Bankruptcy Code.") (cited with approval in *In re Linear Elec. Co., Inc.*, 852 F.3d at 321).

Finally, the Court addresses the equity argument raised by NWR.  Specifically, NWR contends that the Subcontractors, like any other creditor, should be subject to the automatic stay to achieve the goal of fairly administering the Debtor's estate for the benefit of all creditors. *See, e.g.*, *NWR's Supplemental Omnibus Reply* at 11, ECF No. 844.  Indeed, the Third Circuit touched on this issue in *Linear Electric*.  However, *Linear Electric* addresses solely the issue of subcontractors attempting to enforce their construction lien claims under the NJCLL.  In such a situation, payments made result in "less total money to go into the plan of repayment" such that the subcontractors would "unfairly advantage themselves at the expense of other creditors." *Linear Electric*. 852 F.3d at 323.  Here, the Court is presented with subcontractors who are pursuing claims against a non-debtor that do not implicate the NJCLL and, as explained, any award on those claims will not reduce the total money going into the plan of repayment.  The Subcontractors' actions, by themselves, against NWR for quantum meruit or unjust enrichment do not deplete the bankruptcy estate at the expense of other creditors.  At most, the bankruptcy estate might face additional claims from NWR seeking reimbursement for any payments resulting from the unjust enrichment or quantum meruit claims.  The Court acknowledges that these unique circumstances

could result in the Subcontractors collecting fully the amount that is owed to them from NWR, while NWR's potential claim may be paid on a pro rata basis through the bankruptcy.  Although this seems inequitable, the Court notes that in the NJCLL context, where both the property owner and subcontractor are innocent parties, it is the subcontractor whose rights should prevail at the expense of the property owner. *See, e.g.*, *AEG Holdings, L.L.C. v. Tri-Gem's Builders, Inc.*, 347 N.J. Super. at 514–15.  The Court finds the rationale behind that holding persuasive and equally applicable in the present circumstances.

### 2.  Claims against Bonding Company

Pursuant to N.J. STAT. ANN. § 2A:44A-31, "[w]hen a lien claim is filed against any improvement and land under this act, the owner . . . may execute and file with the proper county clerk a bond in favor of the lien claimant, with a surety company . . . . ."  In this case, after the Subcontractors filed construction liens, NWR "bonded the liens" by filing a surety bond issued by Arch.  NWR asserts that the Subcontractors' actions against Arch likewise negatively impact the bankruptcy estate and violate the automatic stay.  Here, the Court agrees with NWR.

As set forth above, any act to *foreclose* on the construction lien would affect the lien fund and Debtor's accounts receivable.  With regard to potential claims against Arch, however, the Subcontractors do not seek to foreclose on the liens, but to collect on the bond which Arch has issued.  In this respect, the lien fund remains unaffected.  Nevertheless, as analyzed below, to the extent Arch pays the Subcontractors on these bonds, Arch is then subrogated to the rights of all the parties and the bankruptcy estate is necessarily impacted. *See, e.g.*, *Leeward Constr., Inc. v.*

*United States Fid. & Guar. Co.*, No. 2:04-CV-1860, 2006 WL 8458687, at \*19 (E.D. Pa. Jan. 30, 2006) (collecting cases).

In *In re Modular Structures, Inc.*, the Third Circuit explained the relationships a surety has in a construction context with a contractor, a project owner, and the subcontractors/suppliers:

> The surety on a construction surety bond guarantees to the owner that the contractor will finish the job. If the contractor defaults, the surety performs the work, mitigates loss by its performance, and pays the subcontractors and suppliers. In performing this function, the surety "stands in the shoes" of other parties to the construction project through use of the equitable doctrine of subrogation:
>
> > [T]he surety in cases like this undertakes duties which entitle it to step into three sets of shoes. When, on default of the contractor, it pays all the bills of the job to date and completes the job, **it stands in the shoes of the contractor insofar as there are receivables due it**; in the shoes of laborers and materialmen who have been paid by the surety—who may have had liens; and not least, in the shoes of the government [owner], for whom the job was completed.
> >
> > *National Shawmut Bank of Boston v. New Amsterdam Casualty Co.,* 411 F.2d 843, 847–49 (1st Cir. 1969).

*In re Modular Structures, Inc.*, 27 F.3d 72, 74 n.1 (3d Cir. 1994) (emphasis added).

Where a surety performs or pays a subcontractor to perform pursuant to a bond, the "surety has an 'equitable lien' against the identifiable proceeds of the underlying contract." *In re Alcon Demolition, Inc.*, 204 B.R. 440, 447 (Bankr. D.N.J. 1997) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137, 83 S. Ct. 232, 235, 9 L. Ed. 2d 190 (1962)).  In this case, Arch did not make any pre-petition payments to the Subcontractors on the bonds; therefore, it had no pre-petition rights in the Debtor's accounts receivable.  If the Subcontractors were to now collect on any bonds issued, Arch would become entitled to an equitable lien on the Debtor's accounts receivable. *See In re Alcon Demonlition, Inc.*, 204 B.R. at 447 ("Accordingly, [the surety] has an equitable lien on

any funds ultimately determined to be due from [the owner] to [the contractor] to the extent of its satisfaction of [the contractor's] obligations to materialmen and laborers."). Given that accounts receivable are property of the bankruptcy estate, the post-petition creation of a lien on the Debtor's accounts receivable would be violative of the automatic stay. *See, e.g.*, *In re Durr Mech. Constr., Inc.*, 604 B.R. 131 (Bankr. S.D.N.Y. 2019) (extending automatic stay in debtor-general contractor's chapter 11 case to non-debtor insurers in connection with subcontractor's state court action against insurers to recover on payment bond); *In re Wegner Farms Co.*, 49 B.R. 440, 443 n.2 ("Even in these circumstances, it could be argued that Debtor had a legal or equitable interest in payments made pursuant to the bonding agreement because these funds are satisfying claims against the estate and will ultimately result in a claim against the estate by the surety."); *cf. Pearlman,* 371 U.S. at 132 (holding that because surety paid subcontractors *before* debtor-contractor was adjudicated a bankrupt, surety was subrogate prior to bankruptcy and accounts receivable initially owed to debtor-contractor were not property of the bankruptcy estate); *accord In re Kronemyer*, 405 B.R. 915 (B.A.P. 9th Cir. 2009) (discussing appropriateness of granting relief from automatic stay to permit litigation in state court against surety of debtor).[7]

---

[7] The Court recognizes and declines to follow the decisions of several out-of-circuit courts that have addressed the automatic stay as it relates to actions in state court to recover against a surety on a bond. *See, e.g.*, *Matter of Lockard*, 884 F.2d 1171, 1178 (9th Cir. 1989) (refusing to extend automatic stay to enjoin claims against a contractor-debtor's surety); *In re Capitol-York Const. Corp.*, 43 B.R. 52, 56 (Bankr. S.D.N.Y. 1984) (collecting cases addressing actions to recover under a Miller Act bond, which is an alternative remedy to the mechanics' liens ordinarily available on private construction projects for federal public works projects) ("A subcontractor's action against a general contractor's surety to recover under a Miller Act bond which was posted to protect materialmen for public works projects does not implicate Code § 362 because the bond is not property of the debtor's estate."); *see also, e.g.*, *Empire Enterprises JKB, Inc. v. Union City Contractors, Inc.*, 660 F. Supp. 2d 492 (W.D.N.Y. 2009) (holding that in the case of a public works project and a Miller Act bond, the automatic stay did not apply to claims against the debtor's sureties). This Court is neither bound by these out-of-circuit decisions, nor does this Court find their reasoning persuasive relative to the facts of this case. The Court, instead, is guided by the case law cited in the body of this Opinion, discussed *supra. See, e.g.*, *In re Durr Mech. Constr., Inc.*, 604 B.R. 131 (holding that insurer's liability under payment bond was wholly derivative of debtor's liability for its alleged breach of subcontract, debtor

Surely, if *Linear Electric* prohibits post-petition lien filings because such would reduce a debtor's accounts receivable, then a bonding company's subrogation rights to assume entitlement to the receivable certainly falls within *Linear Electric's* ambit and proscriptions. Accordingly, the Subcontractors in this case may not proceed against the bond issued by Arch unless and until they are granted relief from the automatic stay.

IV.     **Conclusion**

For the reasons set forth above, the Court determines that any party who files a post-petition lien, or who attempts to enforce a pre-petition lien, or who attempts to collect on a bonded claim violates the stay. However, to the extent the Subcontractors seek state law remedies against a non-debtor property owner that do not affect the bankruptcy estate—such as quantum meruit or unjust enrichment claims—there is no stay violation. The Court will enter a form of Order consistent with this Opinion.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: March 13, 2020

---

had an absolute obligation to indemnify insurer for its losses, and the indemnification obligation was secured by debtor's assets, such that continuation of the state court litigation against insurer would have an immediate, adverse economic impact on the estate and its unsecured creditors).

22

United States Bankruptcy Court
District of New Jersey

In re:                                                                  Case No. 19-27439-MBK
Hollister Construction Services, LLC                                     Chapter 11
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-3          User: admin              Page 1 of 1         Date Rcvd: Mar 13, 2020
                             Form ID: pdf903           Total Noticed: 1

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Mar 15, 2020.
db             +Hollister Construction Services, LLC,    339 Jefferson Road,    Parsippany, NJ 07054-3707

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
NONE.                                                                                      TOTAL: 0

        ***** BYPASSED RECIPIENTS *****
NONE.                                                                                      TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner
shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social
Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required
by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 15, 2020                       Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING


The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on March 13, 2020 at the address(es) listed below:
NONE.                                                                                      TOTAL: 0