**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AND NO ONE MAY SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OF LIQUIDATION UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION. THIS DISCLOSURE STATEMENT IS SUBJECT TO FURTHER MODIFICATION PRIOR TO BANKRUPTCY COURT APPROVAL.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Jennifer B. Kimble, Esq.
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
*Counsel to the Debtor and Debtor-in-Possession*

In re:

**HOLLISTER CONSTRUCTION SERVICES, LLC,**[1]

Debtor.

Case No. 19-27439 (MBK)

Chapter 11

Judge: Hon. Michael B. Kaplan

<u>**DEBTOR'S DISCLOSURE STATEMENT FOR PLAN OF LIQUIDATION**</u>

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

37322/3

06/18/2020 206470059.5

**PLEASE REVIEW THIS DOCUMENT FOR IMPORTANT INFORMATION REGARDING:**

- **Description of the Debtor**

- **Classification and Treatment of Claims and Interests**

- **Distribution to Holder of Pre-Petition Secured Lender Claims**

- **Distribution to Holders of Priority Claims**

- **Distribution to Holder of Arch Claims**

- **Distribution to Holders of General Unsecured Claims**

- **Distribution to Holders of Interests**

- **Implementation and Execution of the Plan**

- **Treatment of Contracts and Leases and Procedures to Assert and Resolve Rejection Claims**

**IMPORTANT DATES:**

- **Date to Determine Record Holders of Claims and Interests – [July 23 , 2020]**

- **Deadline to Submit Ballots – [August 27 , 2020 at 4:00 p.m. (prevailing Eastern Time)]**

- **Deadline to Object to Disclosure Statement and/or Solicitation Procedures – [July 16, 2020 at 4:00 p.m. (prevailing Eastern Time) ]**

- **Deadline to Object to Confirmation – [ August 27, 2020 at 4:00 p.m. (prevailing Eastern Time) ]**

- **Hearing on Plan Confirmation – [ September 3, 2020 at 10:00 a.m. (prevailing Eastern Time) ]**

**YOU ARE RECEIVING THIS DISCLOSURE STATEMENT, THE PLAN, AND THE BALLOT (COLLECTIVELY, THE "SOLICITATION PACKAGE") BECAUSE YOU HAVE THE RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.   PLEASE REVIEW THIS DISCLOSURE STATEMENT AND THE PLAN AND COMPLETE AND RETURN THE BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS CONTAINED HEREIN AND IN THE BALLOT.**

**A COPY OF THIS DISCLOSURE STATEMENT AND THE PLAN CAN BE FOUND AT HTTPS://CASES.PRIMECLERK.COM/HCS/.**

1. **INTRODUCTION**

1.1. **Purpose of the Disclosure Statement**.

Notice of this Disclosure Statement is being provided by Debtor Hollister Construction Services, LLC to, among others, the Office of the United States Trustee, the New Jersey Taxing Authorities, the New York Taxing Authorities, and, subject to the Solicitation Procedures Order (defined below), all Holders of Claims in the Voting Classes pursuant to section 1125(b) of the Bankruptcy Code for the purpose of soliciting acceptances of the Plan. Pursuant to the Solicitation Procedures Motion (defined below) Filed on June 18, 2020, the Debtor seeks to pursue and obtain approval of its Disclosure Statement and the Plan. The Plan has been Filed with the Bankruptcy Court and the summaries of the Plan contained herein shall not be relied upon for any purpose other than to make a judgment with respect to, and determine how to vote on, the Plan. A copy of the Plan is attached hereto as **Exhibit A**. **All capitalized terms used within this Disclosure Statement that are not defined herein have the meanings set forth in the Plan.**

**A hearing to approve the Disclosure Statement and the Solicitation Procedures Motion will be held by the Bankruptcy Court on July 23, 2020 at 10:00 a.m. (prevailing Eastern Time), to determine if the Disclosure Statement contains "adequate information" under Bankruptcy Code section 1125. The deadline to object to the Disclosure Statement and the Solicitation Procedures Motion is [July 16, 2020 at 4:00 p.m. (prevailing Eastern Time)] and the deadline to object to Plan Confirmation is [August 27, 2020 at 4:00 p.m. (prevailing Eastern Time).]**

PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTOR'S BOOKS AND RECORDS AND PLEADINGS FILED BY THE DEBTOR WITH THE BANKRUPTCY COURT. STATEMENTS MADE IN THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. ALTHOUGH THE DEBTOR HAS ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THE DEBTOR IS UNABLE TO REPRESENT OR WARRANT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE 3016 AND NOT NECESSARILY IN COMPLIANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11.

NO REPRESENTATION CONCERNING THE DEBTOR OR THE VALUE OF THE DEBTOR'S ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR IS NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT

MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.

YOU ARE STRONGLY URGED TO CONSULT WITH YOUR FINANCIAL, LEGAL AND TAX ADVISORS TO UNDERSTAND FULLY THE PLAN AND DISCLOSURE STATEMENT. THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS GIVEN AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT DOES NOT, UNDER ANY CIRCUMSTANCE, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE SUCH DATE. THIS DISCLOSURE STATEMENT IS INTENDED, AMONG OTHER THINGS, TO SUMMARIZE THE PLAN AND MUST BE READ IN CONJUNCTION WITH THE PLAN AND ITS EXHIBITS, IF ANY. IF ANY CONFLICTS EXIST BETWEEN THE PLAN AND DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

IF A HOLDER OF A CLAIM WISHES TO CHALLENGE THE ALLOWANCE OR DISALLOWANCE OF A CLAIM FOR VOTING PURPOSES UNDER THE TABULATION RULES SET FORTH IN THE SOLICITATION PROCEDURES ORDER, SUCH ENTITY MUST FILE A MOTION, PURSUANT TO BANKRUPTCY RULE 3018(A), FOR AN ORDER TEMPORARILY ALLOWING SUCH CLAIM IN A DIFFERENT AMOUNT OR CLASSIFICATION FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN AND SERVE SUCH MOTION ON THE UNDERSIGNED COUNSEL TO THE DEBTOR, COUNSEL TO THE PRE-PETITION SECURED LENDER, AND COUNSEL TO THE CREDITORS' COMMITTEE SO THAT IT IS RECEIVED NO LATER THAN **4:00 P.M., PREVAILING EASTERN TIME, ON [August 10, 2020].** THE DEBTOR AND OTHER PARTIES IN INTEREST SHALL HAVE UNTIL **4:00 P.M., PREVAILING EASTERN TIME, ON [August 20, 2020]** TO FILE AND SERVE ANY RESPONSES TO SUCH MOTIONS. UNLESS THE BANKRUPTCY COURT ORDERS OTHERWISE, SUCH CLAIM WILL NOT BE COUNTED FOR VOTING PURPOSES IN EXCESS OF THE AMOUNT DETERMINED IN ACCORDANCE WITH THE TABULATION RULES.

**1.2.** **Definitions of Terms Utilized in the Plan**: Unless the context otherwise requires or a term is defined within the Plan itself, the following terms shall have the respective meanings set forth below, except as expressly provided otherwise.

**1.2.1. Administrative Expense Claim**: Any cost or expense of administration of the Case allowed pursuant to Bankruptcy Code section 503(b), arising, accruing or otherwise due and payable at any time during the period from the Petition Date through and including the date on which the Confirmation Order becomes a Final Order, excluding Professional Fee Claims.

**1.2.2. Administrative Expense Claim Bar Date**: 4:00 p.m. (prevailing Eastern Time) on the date that is twenty-one (21) days after the Effective Date, the deadline by which all claims seeking allowance of Administrative Expense Claims must be filed with the Court, with a copy to the Debtor, the Liquidation Trustee and the Claims Agent in accordance with Section 7.5 of the Plan, or if not filed by such deadline, any such Administrative Expense Claims shall be Disallowed and not entitled to any distribution.

-4-

**1.2.3.** **Allowed**:  A Claim or Interest will be "Allowed" if:  (a) (i) such Claim or Interest is identified in the Schedules and not listed therein as disputed (whether in amount, priority or otherwise), contingent or unliquidated as to amount, and (ii) with respect to such Claim or Interest, no proof of claim or interest, as applicable, has been Filed, or (b) with respect to such Claim or Interest, a proof of claim or interest, as applicable, has been timely Filed, in the amount and of the classification asserted in such proof of claim or interest, as applicable; but in the case of either (a) or (b), only if (x) such Claim or Interest has not already been satisfied, (y) no objection to the allowance of such Claim or Interest has been Filed by the Claims Objection Deadline (as defined in the Plan), or, (z) such Claim or Interest has otherwise been allowed by the Plan, a Final Order or pursuant to an Allowed Claims Notice. The following types of Claims or Interests shall not be "Allowed": (i) untimely Filed Claims or, with respect to administrative expenses, requests for payment made after the Administrative Expense Claim Bar Date, as applicable, (ii) interest on the principal amount of the Allowed Claim from and after the Petition Date, or (iii) any punitive damages.  For the avoidance of doubt, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed by the applicable bar date established pursuant to the Bar Date Order, is not considered Allowed and shall be deemed expunged and not entitled to receive any recovery from the Debtor's estate and/or the Liquidation Trust Assets (as applicable) without further action by the Debtor or Liquidation Trustee and without further notice to any party or action, approval, or order of the Bankruptcy Court.

**1.2.4.** **Allowed Claims Notice**:  Any notice filed with the Bankruptcy Court by the Debtor (in consultation with the Creditors' Committee through the Effective Date) or Liquidation Trustee (after the Effective Date) identifying one or more Claims as Allowed.

**1.2.5.** **Arch**:  Arch Insurance Company, Arch Reinsurance Company and any present or future subsidiary or affiliate of Arch Insurance Company (collectively, "Arch" or "Surety").

**1.2.6.** **Arch Claim**:  General Unsecured Claim of Arch.

**1.2.7.** **Arch Stipulation**: *Stipulation Pursuant to 11 U.S.C. §§ 105, 362, 363 and 365, Granting Relief and Authorizing Relief from the Automatic Stay To Declare the Debtor in Default of Certain Construction Contracts; To Terminate and Assign Those Contracts; and For Related Relief* entered on November 15, 2019 [Docket No. 524].

**1.2.8.** **Assets**:  Any and all right, title, and interest of the Debtor in and to property of whatever type or nature, real or personal, tangible or intangible, including, without limitation, any real estate, building, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in progress, accounts, chattel paper, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action and any general intangibles.

**1.2.9.** **Avoidance Actions**:  Any and all actions, proceedings, accounts, controversies, agreements, promises, claims, and rights of the Debtor and its estate to avoid or recover a transfer of property of the Debtor's estate or an interest in the Debtor in property, including, without limitation, actions arising under Bankruptcy Code sections 506, 510, 541,

542, 544, 545, 547, 548, 549, 550, 551 and 553 and any other applicable federal, state or common law, including fraudulent transfers or conveyances, whether or not litigation has been commenced with respect to such actions, proceedings, accounts, controversies, agreements, promises, claims and rights as of the Effective Date, but excluding (a) any Avoidance Actions previously waived by the Debtor pursuant to any Final Order; and (b) any Avoidance Actions against the Pre-Petition Secured Lender, Arch and the Insiders.

**1.2.10.** **Ballots**:  The ballots accompanying the Disclosure Statement upon which certain Holders of Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan.

**1.2.11.** **Balloting Agent**:  Prime Clerk LLC.

**1.2.12.** **Bankruptcy Code**:  Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as in effect on the Petition Date and as thereafter amended, if such amendments are made applicable to the Case.

**1.2.13.** **Bankruptcy Court**:  The United States Bankruptcy Court for the District of New Jersey, or in the event such court ceases to exercise jurisdiction over the Case, such court or adjunct thereof that exercises jurisdiction over the Case in lieu of the United States Bankruptcy Court for the District of New Jersey.

**1.2.14.** **Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure pursuant to Title 28 of the United States Code, 28 U.S.C. §§ 2075, as they have been or may hereafter be amended.

**1.2.15.** **Bar Date**:  January 20, 2020, the date established in the Bar Date Order for filing proofs of claim against the Debtor.

**1.2.16.** **Bar Date Order**:  *The Order Extending the Clams Bar Date From November 20, 2019 to January 20, 2020 and Compelling Prime Clerk LLC to Re-Notice the Notice of Chapter 11 Bankruptcy Case* [Docket No.621]. Pursuant thereto, the Bar Date was fixed as January 20, 2020.

**1.2.17.** **Business Day**:  Any day except a Saturday, Sunday or any day on which commercial banks in the State of New Jersey are authorized or required by applicable law to close.

**1.2.18.** **Case:**  The chapter 11 case initiated by the Debtor's Filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  The Case is being administered in the Bankruptcy Court as Bankruptcy Case No. 19-27439 (MBK).

**1.2.19.** **Cash**:  Legal tender of the United States of America and equivalents thereof.

**1.2.20.** **Cash Collateral Motion**:  "Cash Collateral Motion" shall have the meaning ascribed to such term in Section 2.3 of this Disclosure Statement.

-6-

**1.2.21. Cash Management Motion**: "Cash Management Motion" shall have the meaning ascribed to such term in Section 2.3 of this Disclosure Statement.

**1.2.22. Causes of Action**:  Any and all claims, causes of action (including Avoidance Actions), objections to claims or interests, demands, actions, suits, obligations, liabilities, cross-claims, counter-claims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counter-claim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring at any time prior to the Effective Date.

**1.2.23. Chapter 7**: Chapter 7 of the Bankruptcy Code.

**1.2.24. Claim**:  A "claim" as defined in Bankruptcy Code section 101(5), against the Debtor whether or not asserted or allowed.

**1.2.25. Claims Agent**: Prime Clerk LLC.

**1.2.26. Claims Register**:  The official register of Claims maintained by the Claims Agent.

**1.2.27. Claims Objection Deadline**:  "Claims Objection Deadline" shall have the meaning ascribed to such term in Section 2.12 of the Plan.

**1.2.28. Class**:  A category of Claims or Interests established and designated pursuant to the Plan.

**1.2.29. Class 1 Claim**:  A Claim classified in Class 1.

**1.2.30. Class 2 Claim**:  A Claim classified in Class 2.

**1.2.31. Class 3 Claim**:  A Claim classified in Class 3.

**1.2.32. Class 4 Claim**:  A Claim classified in Class 4.

**1.2.33. Class 5 Interest** An Interest classified in Class 5.

**1.2.34. Code:** Title 11 of the United States Code, 11 U.S.C. sections 101-1330 as may from time to time be amended**.**

**1.2.35. Collateral:** Any property or interest in property of the Debtor or its Estate subject to a Lien to secure a Claim to the extent such Lien is not subject to avoidance under the Bankruptcy Code or such avoidance has been settlement by the Plan, nor otherwise invalid under the Bankruptcy Code or applicable state law.

**1.2.36. <u>Confirmation</u>**:   Entry by the Bankruptcy Court of the Confirmation Order.

**1.2.37. <u>Confirmation Date</u>**:  The date upon which the Confirmation Order is entered on the docket by the Bankruptcy Court.

**1.2.38. <u>Confirmation Hearing</u>**:  Collectively, the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing or hearings may be adjourned or continued from time to time.

**1.2.39. <u>Confirmation Order</u>**:  The Order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**1.2.40. <u>Creditor</u>**:  A Holder of a Claim.

**1.2.41. <u>Creditors' Committee or Committee</u>**:   The official committee of unsecured creditors of the Debtor appointed by the United States Trustee in the Case pursuant to Bankruptcy Code section 1102, as its composition may be changed from time to time by addition, resignation or removal of its members [Docket No. 156].

**1.2.42. <u>Debtor</u>**:  Hollister Construction Services, LLC.

**1.2.43. <u>Disallowed</u>**:   A Claim or Interest or any portion thereof that is not Allowed.

**1.2.44. <u>Disclosure Statement</u>**:  This "*Disclosure Statement for Debtor's Plan of Liquidation*," dated June 18,2020, as amended, modified, or supplemented.

**1.2.45. <u>Disclosure Statement Order</u>**:  "Disclosure Statement Order" shall have the meaning ascribed to such term in Section 1.1 of this Disclosure Statement.

**1.2.46. <u>Disputed Claim</u>**:  Any Claim, or a portion thereof:  (i) proof of which has been timely Filed to which an objection to the allowance thereof has been Filed by the Claims Objection Deadline (as defined in the Plan), and such objection has not been either (a) determined by a Final Order, or (b) settled by the parties under a settlement approved by Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019; (ii) which has not been otherwise Allowed; or (iii) which is identified in the Schedules as contingent, unliquidated and/or disputed and as to which in the case of a timely Filed proof of claim, an objection to such proof of claim has been filed but has not yet been resolved by a Final Order.

**1.2.47. <u>Effective Date</u>**:  "Effective Date" shall have the meaning ascribed to such term in Section 2.1 of the Plan.

**1.2.48.  <u>Estate</u>**:  The bankruptcy estate of the Debtor created by virtue of Bankruptcy Code section 541 upon the commencement of the Case.

**1.2.49. <u>Exculpated Party or Parties</u>**:  Each of the Debtor, the Creditors' Committee, the members of the Creditors' Committee (in such capacity), the Liquidation Trustee

(in such capacity), the Pre-Petition Secured Lender (in such capacity), Arch, and Prime Clerk LLC (in its capacity as Claims Agent, Noticing Agent and Balloting Agent), including any and all of the foregoing such parties' Related Persons.

**1.2.50.    File, Filed or Filing**:  File, filed or filing with the Bankruptcy Court or its authorized designee in the Case (including with respect to proofs of claim, the Claims Agent).

**1.2.51.    Final Decree**:  The Order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Case.

**1.2.52.    Final Cash Management Order**:  "Final Cash Management Order" shall have the meaning ascribed to such term in Section 2.3.1 of this Disclosure Statement.

**1.2.53.    Final Order**:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

**1.2.54.    First Day Hearing**:  The initial hearing held in this Case which occurred on September 16, 2019.

**1.2.55.    First Day Motions**:  "First Day Motions" shall have the meaning ascribed to such term in Section 2.3 of this Disclosure Statement.

**1.2.56.    General Unsecured Claim**:  Any Claim against the Debtor which is not a Pre-Petition Secured Lender Claim, an Arch Claim, an Administrative Expense Claim, a Priority Claim, a Professional Fee Claim, or an Interest. For the avoidance of doubt, General Unsecured Claims include, but are not limited to, Claims of trade vendors, landlords, lessors and others that did business with the Debtor before the Petition Date on an unsecured basis.

**1.2.57.    Go-Forward Project Settlements**:  Those certain settlements entered into between the Debtor, project owners and one or more subcontractors and which were approved by the Court.  The Go-Forward Project Settlements are settlements that the Debtor determined were economically feasible to complete and provided a mechanism for certain of the Projects to be completed by the Debtor during the Case, payment of certain prepetition Claims of subcontractors and included preference waivers.  For the avoidance of doubt, none of the Go-Forward Project Settlements were on Bonded Projects.

**1.2.58. Holder**:  The Person that is the owner of record of a Claim or Interest, as applicable.

**1.2.59. Impaired**:  "Impaired" is as defined in Bankruptcy Code section 1124.

**1.2.60. Initial Distribution**:  "Initial Distribution" shall have the meaning ascribed to such term in Section 2.2(a) of the Plan.

**1.2.61. Insider:**  The holders of membership interests in the Debtor as follows: (i) Christopher Johnson; (ii) Kieran Flanagan; (iii) Brendan Murray; (iv) Joseph Furey; and (v) Matthew Higgins and each of their respective spouses and Related Persons.

**1.2.62. Interest**:  Either (i) the legal, equitable, contractual or other rights of any Person with respect to the limited liability company interests or any other equity interest in the Debtor, including any capital investment, stock option (including right to exercise a stock option grant), warrant, or other interest in or right to convert into such equity interest, or (ii) the legal, equitable, contractual or other right of any Person to acquire or receive any of the foregoing.

**1.2.63. Lease**:  "Lease" shall have the meaning ascribed to such term in Section 2.7 of this Disclosure Statement.

**1.2.64. Liquidation Trust**:  The trust established pursuant to the Liquidation Trust Agreement among the Debtor, Liquidation Trustee, dated as of the Effective Date, for the benefit of (i) the Holders of Allowed General Unsecured Claims that were not allowed as of the Effective Date or did not receive distributions on or about the Effective Date, or (ii) other General Unsecured Claims not Allowed as of the Effective Date.

**1.2.65. Liquidation Trust Documents**:  The Liquidation Trust Agreement, and any additional documents, that will create, establish and govern the Liquidation Trust substantially in the form attached to the Plan as Schedule B.

**1.2.66. Liquidation Trust Assets**:  (i) the Causes of Action, and (ii) all other Assets, including any and all Cash of the Debtor and the Debtor's Estate as of the Effective Date, but specifically excluding any Cause of Action or Claim released pursuant to the terms of the Plan, the Plan Confirmation Order, the Final Cash Collateral Order, a Go-Forward Project Settlement or any other Final Order of the Bankruptcy Court.

**1.2.67. Liquidation Trust Advisors**: Any firm(s) or individual(s) retained by the Liquidation Trustee to serve as the Liquidation Trustee's legal counsel or provide other professional services in connection with the performance of the Liquidation Trustee's duties and responsibilities under the Plan and the Liquidation Trust Agreement. For the avoidance of doubt, the Liquidation Trust Advisors can include any firm(s) or individual(s) retained by the Debtor and/or Creditors' Committee during the Chapter 11 Case.

**1.2.68. Liquidation Trust Committee**: The committee selected by the Creditors' Committee and established on the Effective Date consisting of at least [ TBD].

**1.2.69.** __Liquidation Trust Operating Expenses__:   The overhead and other operational expenses of the Liquidation Trust including, but not limited to, (i) reasonable compensation for the Liquidation Trustee in accordance with the Liquidation Trust Documents, (ii) costs and expenses incurred by the Liquidation Trustee in administering the Liquidation Trust, (iii) statutory fees that may become payable after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidation Trust Advisors.

**1.2.70.** __Liquidation Trustee__:   [TBD], who will serve as the trustee of the Liquidation Trust as determined by the Debtor in consultation with the Creditor's Committee.

**1.2.71.** __Litigation Rights__:  "Litigation Rights" shall have the meaning ascribed to such term in Section 5.2 of the Plan.

**1.2.72.** __Local Rules__:  The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey, as amended from time to time.

**1.2.73.** __Noticing Agent__: Prime Clerk LLC.

**1.2.74.** __Noticing Agent Website__: *https://cases.primeclerk.com/hcs*

**1.2.75.** __Order__:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Case or the docket of any other court of competent jurisdiction.

**1.2.76.** __Other Priority Claim__:   A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Expense Claim, Professional Fee Claim, and a Priority Tax Claim.

**1.2.77.** __Person__:  An individual, limited liability company, corporation, partnership, association, trust or unincorporated organization, joint venture or other person or a government or any agency or political subdivision thereof.

**1.2.78.** __Petition Date__:  September 11, 2019.

**1.2.79.** __Plan__:  The Debtor's Plan of Liquidation, dated as of [June 18, 2020], as the same may thereafter be amended, modified or supplemented.

**1.2.80.** __Plan Settlement__: "Plan Settlement" shall have the meaning ascribed to such term in Section 2.14 of the Plan.

**1.2.81.** __PNC__:  PNC Bank, National Association, in its capacity as the Debtor's Pre-Petition Secured Lender.

**1.2.82.** __PNC Credit Documents__: The PNC Line of Credit Loan Documents and the PNC Term Loan Documents**.**

**1.2.83. PNC Line of Credit Loan Documents:** The Line of Credit in the maximum principal amount of $15,000,000.00, as evidenced by a certain (i) Amended and Restated Committed Line of Credit Note dated December 30, 2015, as subsequently amended, supplemented, modified or restated between the Debtor and PNC, (ii) related Borrowing Base Rider dated November 13, 2014 between the Debtor and PNC and (iii) Security Agreement dated November 13, 2014 executed and delivered by the Debtor in favor of PNC.

**1.2.84. PNC Term Loan Documents:** The Term Note dated September 26, 2018 in the original principal amount of $1,600,000.00, together with all other documents related to and/or evidencing the PNC Term Loan, as amended, supplemented, modified and/or restated.

**1.2.85. Prepetition Secured Lender**: PNC Bank, National Association, in its capacity as the prepetition secured lender under the PNC Line of Credit Loan Documents and the PNC Term Loan Documents.

**1.2.86. Prepetition Secured Lender Claim**: The Allowed Claim held by the Prepetition Secured Lender in the amount of [$ TBD] that will be deemed an Allowed Pre-Petition Secured Lender Claim and the Class 1 Claim.

**1.2.87. Priority Tax Claim**: A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**1.2.88. Pro Rata**: The proportion that (a) the Allowed principal amount of a Claim in a particular Class bears to (b) the aggregate amount of all Allowed Claims in such Class.

**1.2.89. Professional**: Any professional employed by the Debtor or Creditors' Committee in the Case pursuant to Bankruptcy Code sections 327, 328 or 1103 or any professional or other Person seeking compensation or reimbursement of expenses in connection with the Cases pursuant to Bankruptcy Code section 503(b)(4).

**1.2.90. Professional Fee Claim**: A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred during the period from the Petition Date through the Effective Date.

**1.2.91. Professional Fee Claim Bar Date**: The date that is sixty (60) days after the Effective Date.

**1.2.92. Professional Fee Claims Estimate**: The estimated amount of compensation to be paid to each Professional.

**1.2.93. Professional Fee Escrow**: [$ TBD ], to be funded by the Debtor and held, maintained, and distributed by [TBD] pursuant to Section 7.2 of the Plan.

**1.2.94. Projects:** Those certain construction projects managed by the Debtor, some of which are "**Bonded Projects**" and some of which are non-bonded projects.

**1.2.95. Record Date**: The Record Date shall be [ July 23 , 2020].

**1.2.96. Record Holder**:  The Holder of an Interest or Claim as of the Record Date.

**1.2.97. Records**:  "Records" shall have the meaning ascribed to such term in Section 3.7.4 of this Disclosure Statement.

**1.2.98. Rejection Claim**:  "Rejection Claim" shall have the meaning ascribed to such term in Section 3.2 of the Plan.

**1.2.99. Related Persons**:  With respect to any Person, such Person's current and former officers, directors, principals, partners, members, managers, shareholders, attorneys, accountants, financial advisors, investment bankers, and their respective successors and assigns.

**1.2.100. Released Party**:  (a) the Debtor, its Estate and all Related Persons; (b) the Pre-Petition Secured Lender and all Related Persons; (c) Arch and all Related Persons; (d) Insiders and all Related Persons; and (e) the Creditors' Committee, its members (solely in their capacity as Creditors' Committee members) and all Related Persons (solely in their capacity as Creditors' Committee members), including Insiders and their respective spouses.

**1.2.101. Releasing Party**:  (a) the Debtor, its Estate and all Related Persons; (b) the Pre-Petition Secured Lender and all Related Persons, (c) Arch and all Related Persons, (d) the Creditors' Committee, its members (solely in their capacity as Creditors' Committee members) and all Related Persons (solely in their capacity as Creditors' Committee members) and (d) Insiders and all Related Persons.

**1.2.102. Reserve**:  "Reserve" shall have the meaning ascribed to such term in Section 2.2(b) of the Plan.

**1.2.103. Scheduled Claim**:  Any Claim set forth on the Schedules.

**1.2.104. Schedules**:  The Schedules of Assets and Liabilities Filed by the Debtor, as such Schedules may be amended from time to in accordance with Bankruptcy Rule 1009.

**1.2.105. Solicitation Procedures Hearing**:  The hearing held by the Bankruptcy Court, scheduled to take place on [July 23, 2020,] on the Solicitation Procedures Motion, as such hearing may be continued from time to time.

**1.2.106. Solicitation Procedures Motion**:  The Debtor's motion seeking, among other things: (i) Court approval of the adequacy of the disclosures set forth in the Disclosure Statement, (ii) to establish procedures for solicitation and tabulation of votes to accept or reject the Plan, (iii) Court approval of the forms of ballot and solicitation materials, and (iv) to schedule a hearing to consider confirmation of the Plan and setting the deadline for objections thereto. The Solicitation Procedures Motion was filed on June 18, 2020.

**1.2.107. Solicitation Procedures Order**:  The Order, entered by the Court on [_____  __, 2020], approving the Solicitation Procedures Motion [Docket No. ____].

**1.2.108. <u>Unclaimed Distribution:</u>**  A distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

**1.2.109. <u>Unclaimed Distribution Deadline:</u>**  Three (3) months from the date the Debtor or Liquidation Trustee, as the case may be, makes a distribution.

**1.2.110. <u>Unimpaired</u>**: With respect to a Class of Claims or Interests, any Class that is unimpaired within the meaning of Bankruptcy Code section 1124.

**1.2.111. <u>United States Trustee</u>**: The Office of the United States Trustee for the District of New Jersey.

**1.2.112. <u>Voting Class</u>**: A Class that is Impaired and entitled to vote on the Plan.

## 2.    <u>THE DEBTOR</u>.

### 2.1.    <u>Description of Debtor and Its Business</u>.

**2.1.1.** Hollister is a New Jersey Limited Liability Company. Based in New Jersey, the Debtor is a regional general commercial construction services firm that provides construction management services, *i.e.*, professional management services for construction projects.  As of the Petition Date, the Debtor had offices in New Jersey and New York and construction Project locations across New Jersey and New York.  With a team of more than ninety (90) construction professionals, Hollister utilized the latest in technology and employed best practices in project management to deliver results for its clients. The Company's principals have over fifty (50) years of experience serving as construction managers, design builders and general contractors for a broad spectrum of clients.  The Company's range of construction services established it as one of the region's leading service providers with the versatility to accommodate construction projects of any size.

**2.1.2.** The Debtor does not perform construction work itself, but instead partners with subcontractors through the pre-construction, construction, and post-construction phases of a construction project to accomplish the goals established by the Projects' owners and the Project owner's professionals. Hollister's areas of expertise include construction projects for the corporate, education, healthcare, industrial, retail and residential industries.  Hollister leverages technology such as cloud-based construction software, applications to integrate data across programs, and drone technology to allow clients and project partners to collaborate conveniently and in real time.

**2.1.3.** The Debtor employed and oversaw the work of vendors, contractors, subcontractors and materialmen (together, "<u>Subcontractors</u>") on the Projects.  Typically, the Project owners compensate the Debtor pursuant to progress payment orders for the work performed on their Projects.  In turn, the Debtor pays the Subcontractors for the goods and/or services they provided for the particular Project.

**2.1.4.** Project Owner payments and receivables are the Debtor's sole source of operating revenue. For the fiscal year ending December 31, 2018, the Company collected approximately $292,034,763 in gross revenue.

**2.1.5.** As of the Petition Date, the Debtor employed approximately ninety-four (94) employees ("Employees"), none of whom were subject to a collective bargaining agreement.  Of these Employees, approximately ninety-two (92) were salaried and two (2) were hourly.

**2.1.6.** As of the Petition Date, the Debtor had approximately $75 million (including retainage) in open accounts receivable. As of the Petition Date, approximately 45 Projects were in various stages of completion.

## 2.2.    Debtor's Capital Structure

### 2.2.1. Senior Secured Debt with PNC

### 2.2.2. Prepetition Line of Credit

**2.2.3.** Prior to the Petition Date, PNC extended a line of credit in the maximum principal amount of $15,000,000 under the PNC Line of Credit Loan Documents.  The Line of Credit is evidenced by a note (the "PNC Line of Credit Note") and related (i) Borrowing Base Rider and (ii) Security Agreement, each dated as of November 13, 2014.  As of the Petition Date, the Debtor owes approximately $14,000,000 on the PNC Line of Credit Note.

### 2.2.4. Prepetition Term Loan Note

(a)    In addition, PNC made a term loan to the Debtor in the original principal amount of $1,600,000, plus accrued interest, fees and other costs pursuant to a term note (the "PNC Term Loan Note") dated September 26, 2018.  The PNC Term Loan Note is secured by the PNC Term Loan Documents. As of the Petition Date, the Debtor owes approximately $1,300,000 on the PNC Term Loan Note.

**2.2.5.** To secure the prepetition obligations owed under the PNC Credit Documents, the Debtor granted the PNC as the Prepetition Secured Lender, a first priority security interest in, and liens on, substantially all the Debtor's assets.

**2.2.6.** Since the Petition Date, PNC, as the Pre-Petition Secured Lender, has worked with the Debtor to reach consensual orders for the continued use of PNC's cash collateral in accordance with various cash collateral budgets.  Since the Petition Date, PNC has also supported and approved of the Debtor's Go-Forward Project Settlements with various Project Owners and Subcontractors on those Projects that the Debtor determined were economically feasible to complete. PNC has also been an active participant in global settlement discussions for a Plan Settlement, including participating in numerous settlement conferences with the Debtor, the Creditors' Committee and Arch with the Bankruptcy Court. PNC and the Debtor continue to engage in settlement discussions with the goal of reaching a final settlement.

## 2.3.    Arch as Surety and Status of Surety Bonds.

**2.3.1.** Prior to the Petition Date, Arch executed certain performance and payment bonds, as well as other surety bonds (collectively, the "Bonds") on behalf of the Debtor as principal, for the benefit of various contractors, owners and other parties (each an "Obligee" and collectively the "Obligees"), in connection with various construction contracts (each individually referred to as a "Contract" and, collectively, referred to as the "Contracts") including the Bonds bearing bond numbers and for certain Obligees of and for fourteen (14) of the Debtor's ongoing Bonded Projects which Bonds relate to certain of the construction Contracts which the Debtor was performing under as of the Petition Date.

**2.3.2.** Subsequent to the Petition Date, Arch contended that the progress payments, retainage, change order and claim proceeds that were outstanding and/or which may be earned and come due in the future with respect to the Bonded Projects (collectively, "Bonded Project Proceeds"), when paid by Project Owners constitute trust funds for the benefits of laborers, subcontractors, suppliers and materialmen of the Bonded Projects pursuant to applicable state statutes. Arch further contended that such Bonded Project Proceeds are subject to the interests of Arch as the Surety under (i) the trust provisions of certain Indemnity Agreements; (ii) where applicable, state statutes; and (iii) common law principles of subrogation to the extent the Surety has made or may make payment under the Bonds (the "Trust Fund Beneficiaries").

**2.3.3.** In order to induce the Surety to execute the Bonds on behalf of the Debtor, the Debtor, as well as certain individuals (collectively, the "Indemnitors"), entered into General Indemnity Agreements with the Surety. On or about December 6, 2010 and September 1, 2016, the Debtor and certain of the Insiders and/or Interest Holders executed General Indemnity Agreements in favor of the Surety pursuant to which the Debtor agreed to assign, transfer and set over to the Surety certain collateral including, but not limited to, all right, title and interest of the Debtor in the Bonded Project Contracts.

**2.3.4.** For purposes of the Debtor's use of cash collateral, Arch sought to have the Debtor segregate Bonded Project Proceeds from the proceeds and financing for non-bonded projects (the "Non-Bonded Projects") in order to comply with certain statutory and common law obligations such that when Bonded Project Proceeds are paid by Project Owners to the Debtor or its assigns that such Bonded Project Proceeds constitute trust funds and shall be applied exclusively to satisfy Bond obligations and claims of Trust Fund Beneficiaries. In order to facilitate segregation of Bonded Project Proceeds, approximately [18] post-petition bank accounts were opened at PNC – one or more for each Bonded Project (the "**Bonded Project Accounts**"). The Bonded Project Accounts are held in the name of Hollister, however the Debtor has no financial or beneficial interest in the Bonded Project Accounts and the Bonded Project Accounts are controlled by Matson, Driscoll & Damico, LLP, as an agent of Arch.

**2.3.5.** Prior to and following the Petition Date, certain of the Obligees made claims or will make claims upon the Surety under the Bonds for the completion of the Bonded Project Contracts. After the Petition Date, the Debtor and Arch worked to evaluate the Bonded Project Contracts to determine whether the Debtor could continue to perform pursuant to the Bonded Project Contracts on the timeline required by the Bonded Project Contracts. As a result of multiple meetings over the course of multiple months, the Debtor and Arch determined that the Debtor did not have the liquidity or financial wherewithal necessary to enable it to continue

to perform under the Bonded Project Contracts. As a result, the Debtor and Arch agreed to implement a procedure to provide for the orderly transition of the Bonded Project Contracts to Arch as Surety or its designee for completion and prevent further disruption to the ongoing performance of the Bonded Project Contracts.  In order to effectuate a smooth and orderly transition, the Debtor and Arch entered into the Arch Stipulation, which provided among other things, for the automatic stay to be lifted to allow the Debtor to transfer its interest under the Bonded Project Contracts to Arch; to allow Arch to negotiate with Obligees on Bonded Projects for the completion of the Bonded Projects; and for Obligees to agree that with respect to any claim covered by a Bond and paid by the Surety, the Obligee releases such claim as against the Debtor.  Since obtaining Court approval of the Arch Stipulation, Arch has worked directly with Obligees and Subcontractors on Bonded Projects to complete the Bonded Projects with assistance and cooperation from the Debtor and certain of the Debtor's employees.

### 2.3.6.  Equity Interests.

      (a)     The Debtor has 5 members that hold Interests in the Debtor. As of the Petition Date, the Interest Holders and the percentage held are: (i) Christopher Johnson (56.72%); (ii) Kieran Flanagan (23.28%); (iii) Brendan Murray (10%); (iv) Joseph Furey (5%); and (v) Matthew Higgins (5%).

      (b)     Pursuant to certain Guaranty and Suretyship Agreements executed on November 13, 2014, and September 26, 2018, respectively (as amended, modified or otherwise supplemented), certain of the Debtor's obligations are guaranteed by certain of the Debtor's Interest Holders.

**Events Leading to the Filing of the Case**

      **2.3.7.** Pre-petition, the Debtor's business had been a fundamentally strong one, providing significant value to its Project Owners' construction Projects.  However, in the months prior to the Petition Date, the Debtor began facing a series of discrete challenges that combined to impair the Debtor's operating cash flow and its short-term liquidity.  Specifically, recent and rapid expansion of the Debtor's client base, combined with the Company's underestimation of the costs to complete certain of the Projects, resulted in the Company not being able to fully service all of its Project Owners' Projects.  Likewise, Hollister was not able to ensure that certain of its Subcontractors were paid according to the agreed-upon schedule.  Certain Subcontractors subsequently stopped performing on their contracts with Hollister.  Accordingly, certain Project Owners ceased making remittance or progress payments to the Debtor on Projects that were pending or substantially completed, but not yet paid in full.  As Project Owner payments are the Debtor's sole source of operating revenue, non-payment led to Hollister experiencing significant operational cash flow and liquidity issues.

On Friday, September 6, 2019, the Debtor laid off forty-six (46) of its Employees.

**2.3.8.** In addition, a number of Subcontractors filed construction/mechanics liens against the real property on which the Debtor supervised project construction and development to secure the Subcontractors' asserted claims for services performed and/or goods supplied.

**2.3.9.** The Debtor filed its Case to preserve and maximize the value of its Estate for the benefit of all its stakeholders by providing the Debtor the time, breathing room, and resources necessary to analyze its existing Projects and to negotiate with the Project Owners, Subcontractors, vendors, materialmen, real property owners and Arch to complete the Debtor's Projects and maximize their value.

**2.4.** **Debtor's First Day Motions**.  On the Petition Date, the Debtor filed various motions (collectively, the "**First Day Motions**") requesting first day relief, including authority to: (i) retain and appoint Prime Clerk LLC as the Claims and Noticing Agent [Docket No. 6]; (ii) continue using its existing cash management system, including maintenance of bank accounts and existing business forms and checks (the "**Cash Management Motion**") [Docket No. 11]; (iii) pay prepetition employee obligations [Docket No. 8]; (iv) prohibit utility providers from altering, refusing or discontinuing service to the Debtor [Docket No. 10]; (v) use the cash collateral of the Prepetition Secured Lender on an interim basis (the "**Cash Collateral Motion**") [Docket No. 14]; and (vi) enforcing the automatic stay as against Subcontractors and Project Owners [Docket No. 13].  Certain of these First Day Motions are discussed in further detail below.

**2.4.1. Debtor's Cash Management Motion**. The Bankruptcy Court entered an Interim Order [Docket No. 93] and an Amended Interim Order [Docket No. 95] on September 17, 2019, approving the Cash Management Motion and authorizing the Debtor on an interim basis to use its existing cash management system.  On September 13, 2019, Arch Insurance Company and Arch Reinsurance Company filed an *Objection to Debtor's Cash Management Motion* [Docket No. 44].  The Debtor, the Creditors' Committee, Arch, and the Pre-Petition Lender proposed revisions to the interim Cash Management order, and, on October 9, 2019, the Bankruptcy Court entered a final Order ("**Final Cash Management Order**") [Docket No. 282] approving the revised Cash Management Motion and authorizing the Debtor on a final basis to use its existing cash management system.

**2.4.2. Debtor's Cash Collateral Motion**. PNC, as the Prepetition Secured Lender, consented to the Debtor's use of its cash collateral in accordance with the cash collateral budgets in exchange for certain adequate protection as set forth in the Cash Collateral Motion. This adequate protection included providing weekly reporting to PNC, granting of the Adequate Protection Liens (as defined in the Cash Collateral Motion), subject to the Carve Out (as defined in and in accordance with the orders approving the Cash Collateral Motion); certain stipulations by the Debtor as to the nature, extent and validity of PNC's liens against the Debtor's assets; granting of a super-priority administrative expense claim and the payment of post-petition interest in accordance with the PNC Credit Documents.  Subsequent to approval of the Cash

Collateral Motion at the First Day Hearing, the Debtor and PNC have subsequently entered into sixteen interim orders further extending the use of PNC's cash collateral.

2.5.    **Construction Project Go-Forward Settlements**.  One of the Debtor's principal goals when filing the Case was to complete those pending construction Projects that the Debtor determined were financially feasible to complete.  Accordingly, on September 30, 2019, the Debtor Filed its first motion to approve a settlement seeking authority to enter into a settlement agreement with a Project Owner and the Subcontractors who worked on that Project (the "**Settlement Motion**") pursuant to the settlement protocol that was originally discussed with the Court and explained to Project Owners and Subcontractors at a status conference held immediately after the First Day Hearing.  The first Settlement Motion was approved by the Court on October 10, 2020 [Docket No. 291].

2.6.    Since the filing of the first Settlement Motion, the Debtor has obtained Court approval of Go-Forward Project Settlements on numerous other Projects.  In addition, the Debtor has obtained Court approval of settlements related to Projects where the Debtor and the Project Owner agreed to terminate the Project as well as settlements with Project Owners and others resolving disputes over outstanding accounts receivable.  To date, the Court has approved the following settlements:  Waypoint Hackensack Urban Renewal Owner LLC on October 15, 2019 [Docket No. 324];  Tipico Products Co. and various subcontractors on November 12, 2019 [Docket No. 486]; Latitude East Owner, LLC and Latitude West Order, LLC and subcontractors on November 15, 2019 [Docket No. 522];  CS Utica & Remsen, LLC and Subcontractors on November 18, 2019 [Docket No. 534];  Richoh USA and subcontractors on November 20, 2020 [Docket No. 550];  Just Greens, LLC d/b/a Aerofarms and KSS Architects, LLP on November 21, 2019 [Docket No. 557];  SBLP Princeton, LLC on November 21, 2019 [Docket 558]; Just Below 70 MLK, LLC and 306 MLK Blvd. Urban Renewal, LLC on December 19, 1919 [Docket 687]; Umdasch Real Estate USA, Ltd. and subcontractors on December 20, 2019 [Docket No. 691], Mercedes-Benz USA, LLC and Mid-Atlantic Mechanical, Inc. on January 4, 2020 [Docket No. 739], 345 Main Street JV, LLC and certain subcontractors on January 7, 2020 [Docket 750]; Newkirk Realty Urban Renewal LLC on January 10, 2020 [Docket No. 777];  Energy Capital Partners Management, LP on January 17, 2020 [Docket No. 824];  Fairleigh Dickinson University and certain subcontractors on January 17, 2020 [Docket No. 820], January 27, 2020 [Docket 863] and February 26, 2020 [Docket No. 956]; Knopf Leasing Company and subcontractors on January 27, 2020 [Docket No. 862];  SAF 40 Beechwood, LLC and certain subcontractors on January 29, 2020 [Docket No. 875];  Saxum Real Estate Companies, LLC on January 29, 2020 [Docket 876];  Sunstone Hotels Morristown, LLC and Viking Demolition, Inc. on January 29, 2020 [Docket No. 877];  147 Bloomfield Ave JV, LLC on February 3, 2020 [Docket No. 895]; Accordia Harrison Urban Renewal, LLC and subcontractors on February 5, 2020 [Docket No. 899]; CTC Academy and certain subcontractors on March 12, 2020 [Docket No. 1006]; Interlink Transport Technologies Inc. (d/b/a MSC Technology (North America) Inc.) on April 4, 2020 [Docket No. 1066];  Lifetown and certain subcontractors on April 17, 2020 [Docket No. 1093]; Veterans Road SPE LLC and certain subcontractors on April 22, 2020 [Docket No. 1100]; and Wagner College on April 24, 2020 [Docket No. 1112].

Through the negotiation and Court approval of the various Go-Forward Project Settlements noted above, the Debtor has resolved various claims in the total gross amount of [ $  TBD  ] and

payments to general unsecured creditors who are parties to the Go-Forward Project Settlements are estimated to be in excess of [$ TBD ].

## 2.7. **Potential Additional Settlements and Wind-Down of Operations**

As of the filing of this Disclosure Statement, the Debtor is actively negotiating with Project Owners and Subcontractors to reach settlements on several remaining Projects. The Debtor anticipates that upon reaching final settlements, it will submit the settlements to the Bankruptcy Court for approval.

Prior to the hearing to approve confirmation of the Plan, the Debtor intends to file a motion seeking approval of a Key Employee Retention Program which has been discussed with PNC Bank and has been included in various cash collateral budgets.

## 2.8. **Creditors' Committee Motion To Convert Case**

On November 4, 2019, the Creditors' Committee filed a Cross-Motion to Convert the Debtor's Case to Chapter 7 (the "Conversion Motion") in response to the Debtor's filing of a motion to approve various settlements. In addition to objecting to the Debtor's proposed settlements, the Conversion Motion also alleged that the Debtor failed to respond to subpoenas issued by the Creditors' Committee seeking documents and depositions of certain members of Debtor's management.

The Debtor opposed the Conversion Motion, noting that the Debtor's counsel, Debtor's Chief Restructuring Officer and CFO had met with the Creditors' Committee professionals to address the Committee's requests for information. The Debtor also agreed to provide additional information in future settlement motions regarding the economics of proposed Go-Forward Project Settlements, including the gross dollar amounts of potential preference claims that would be waived as part of those settlements.

By order dated November 22, 2019, the Court denied the Conversion Motion without prejudice [Docket no. 564]. Pursuant to the terms of the order, the Creditors' Committee was authorized to renew the Conversion Motion on two days' notice to all interested parties.

On March 2, 2020, the Creditors' Committee relisted the Conversion Motion for a hearing on the grounds, *inter alia*, that the Debtor has no ability to confirm a Chapter 11 plan. As the Conversion Motion was renewed while the Debtor was engaged in settlement discussions with PNC and the Creditors' Committee regarding a global settlement of open issues in the case, the Court reserved a decision on the Conversion Motion while the parties continue negotiations over a global settlement.

**3.**     **SUMMARY OF THE PLAN**.

**3.1.**   **Purpose of the Plan**.  The Debtor proposed the Plan, over the alternative of converting the Debtor's chapter 11 bankruptcy case to Chapter 7, because the Debtor believes that: (i) the Plan ensures a timely resolution of the Case, including the administration of the Debtor's Remaining Assets, and (ii) the Plan avoids unnecessary costs to the Debtor's Estate which would accrue should the Case be converted to Chapter 7.

Additionally, the Plan implements the Plan Settlement between and among the Debtor, Creditors' Committee, the Prepetition Secured Lender, Arch and the Insiders.  Details regarding the Plan Settlement are described in Section 2.13 of the Plan and will be implemented throughout the Plan.  Distributions to be made to Holders of Allowed (i) Pre-Petition Secured Lender Clams; (ii) Arch Claim, and (iii) General Unsecured Claims pursuant to the Plan will be made on account of and in consideration of, among other things, the Plan Settlement.  Without the Plan Settlement: (i) numerous unlitigated issues would have existed and remained outstanding between and among the Debtor, Creditors' Committee, Pre-Petition Secured Lender, Arch and the Insiders, including regarding the nature and extent of the Claims of the Pre-Petition Secured Lender, Arch, and the Insiders; and (ii) the Creditors' Committee may have been forced to litigate, among other things, alleged claims against the Insiders.   Entry of the Confirmation order shall confirm (a) the Bankruptcy Court's approval, as of the Effective Date, of the Plan and all components of the Plan Settlement, and (b) the Bankruptcy Court's finding that the Plan Settlement is (x) in the best interest of the Debtor, its Estate and the Holders of Claims, (y) the exercise of the Debtor's sound business judgment, and (z) is fair, equitable and reasonable under the circumstances.

On the Effective Date, the Liquidation Trust shall be formed to carry out all actions and perform all duties set forth in the Plan and the Liquidation Trust Documents.  On the Effective Date, the Debtor will distribute the Liquidation Trust Assets to the Liquidation Trust and as soon as reasonably practicable after the Effective Date, the Liquidation Trust will distribute Cash to Holders of Allowed Claims as of the Effective Date, subject to any required Reserves, in accordance with the Plan.  The Liquidation Trust will also distribute payments to Holders of Claims that are Allowed after the Effective Date.  The Liquidation Trust may also pursue Causes of Action, if any, the proceeds of which will be distributed in accordance with the Plan.

The following chart sets forth the Classes of Claims and Interest under the Plan, the proposed treatment offered to each class and their estimated recoveries:

| Class | Type | Treatment | Estimated Recovery of Class (%) |
|-------|------|-----------|---------------------------------|
| 1. | Pre-Petition Secured Lender Claims – PNC | The Pre-Petition Secured Lender has agreed that its Pre-Petition Secured Lender Claim shall receive payment in Cash on the Effective Date | [TBD]% |

| | Bank<br>Impaired, Entitled<br>to Vote | (i) in the amount of [$  TBD   ] outstanding under the PNC Line of Credit Note, plus outstanding interest thereon as provided for in the PNC Line of Credit Loan Documents on the Effective Date, and (ii) the amount of [$  TBD  ] outstanding under the PNC Term Loan Note, plus outstanding interest thereon as provided for in the PNC Term Loan Documents.  The Pre-Petition Secured Lender agrees that it has waived and will not be paid any other amounts that may be due under the PNC Line of Credit Loan Documents or the PNC Term Loan Documents on account of its Pre-Petition Secured Lender Claim, including, but not limited to any fees or other expenses provided for under any of the PNC Credit Documents or in any Cash Collateral Orders.  Within 21 days of receipt of payment on the Pre-Petition Secured Lender Claim, PNC will file all documents necessary to release its liens on the assets of the Debtor. The Pre-Petition Secured Lender Claim set forth above shall be an Allowed Claim under this Plan. | |
| 2. | Priority Claims<br>Unimpaired,<br>Deemed to Accept<br><br>Not Entitled to<br>Vote | Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment of its Allowed Priority Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Claim, each such Holder thereof shall receive payment in full, in cash through two equal payments over a one (1) year period, with the first payment on the sixth month anniversary of the Effective Date and the second payment on the one-year anniversary of the Effective Date, unless the Holder agrees to different treatment. | 100% |
| 3. | Arch Claim<br>Impaired, Entitled<br>to Vote | Arch has agreed that it shall receive Cash in the amount of [$  TBD  ], on the Effective Date for its Prepetition Claim. Arch agrees that it has waived and will not be paid any other amounts that may be due under any Bonds, Pre-Petition Indemnity Agreements or any other documents supporting Arch's Claim and that the Cash payment shall be in full and final satisfaction, settlement, release, and discharge of and in exchange for the Arch Claim. | [TBD%] |
| 4. | General Unsecured | Except to the extent that a Holder of a General | [TBD%] |

| | Claims Impaired, Entitled to Vote | Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim thereof will be treated as follows:<br>o  Each Holder of an Allowed General Unsecured Claim will receive its *pro rata* share of the Cash to be distributed by the Debtor or the Liquidation Trust.<br>o  All payments from the Debtor or the Liquidation Trust to Holders of Allowed General Unsecured Claims will be paid after payment of (or the establishment of one or more Reserve(s) for) all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Claims and other Allowed Claims in accordance with the treatment afforded to Classes 1, 2, and 3. | |
| 5. | Interests Impaired, Deemed to Reject<br><br>Not Entitled to Vote | Holders of Interests in the Debtor will retain no ownership interests in the Debtor under the Plan, receive no distribution on account thereof, and such Interests shall be cancelled effective as of the Effective Date. | 0.00% |

**3.2.**    **Classification and Treatment of Claims and Interests under the Plan**.  All Allowed Claims and Interests, except Allowed Administrative Expense Claims, are placed in the Classes, and shall receive the treatment, set forth in Article I of the Plan. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims have not been classified.  A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

**3.3.**    **Solicitation Procedures Motion**.  The Solicitation Procedures Motion has been Filed concurrently with this Disclosure Statement.  By the Solicitation Procedures Motion, the Debtor requests relief in the form of (a) approval of this Disclosure Statement; (b) the scheduling of a hearing to consider confirmation of the Plan; and (c) the establishment of procedures regarding the solicitation and tabulation of votes to approve or reject the Plan. The procedures include those used to determine Holders of Allowed Claims, the distribution of the Solicitation Packages, the manner in which ballots may be submitted and tabulated, and important deadlines. The Bankruptcy Court will consider the Solicitation Procedures Motion at the Disclosure Statement Hearing.

**3.4.**      **Approval of the Disclosure Statement and Confirmation of the Plan**.

**3.4.1.** **Requirements**.  The requirements for Confirmation of the Plan are set forth in Bankruptcy Code section 1129.  The requirements for the Disclosure Statement are set forth in Bankruptcy Code section 1125.

**3.4.2.** **Confirmation Hearing**.  To confirm the Plan, the Bankruptcy Court must hold the Confirmation Hearing to determine whether the Plan meets the requirements of Bankruptcy Code section 1129.  The Bankruptcy Court has set [ **_____**    , **2020 at 10:00 a.m. (prevailing Eastern Time)**, for the Confirmation Hearing.]

**3.4.3.** **Deadline to Object to Confirmation of the Plan**.  **Any party in interest may object to the Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection.  The Bankruptcy Court has set [ _____       , 2020 at 4:00 p.m. (prevailing Eastern Time),] as the deadline for filing and serving objections to the Confirmation of the Plan**.  Objections to Confirmation must be electronically Filed with the Bankruptcy Court and served on counsel to the Debtor, the U.S. Trustee, counsel to the Creditors' Committee, and counsel to the Pre-Petition Secured Lender.

**3.4.4.** **Effect of Confirmation**.  Confirmation serves to make the Plan binding upon the Debtor, all Creditors, Interest Holders and other parties-in-interest, regardless of whether they cast a Ballot to accept or reject the Plan.

**3.5.**      **Voting on the Plan**.

**3.5.1.** **Impaired Claims or Interests**.  Pursuant to Bankruptcy Code section 1126, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a payment or distribution under the Plan may vote on the Plan.  Pursuant to Bankruptcy Code section 1124, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Interests in such Class.  The Holders of Claims not Impaired by the Plan (Class 2 –Priority Claims) are deemed to accept the Plan and do not have the right to vote on the Plan.  The Holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Plan (Class 5 – Interests) are deemed to reject the Plan and do not have the right to vote.

**3.5.2.** **Eligibility to Vote on the Plan**.  Unless otherwise ordered by the Bankruptcy Court, only Record Holders of Class 1 Claims, Class 3 Claims and Class 4 Claims may vote on the Plan, or Holders of Claims that have been temporarily Allowed for voting purposes under Bankruptcy Rule 3018(a).  If you are entitled to vote to accept or reject the Plan, a Ballot has been enclosed for the purpose of voting.  The Court has set [       , 2020] as the Voting Record Date for the determination of the holders of Claims entitled to vote to accept or reject the Plan and the amount of such Claims.

**3.5.3.** **Voting Procedure and Ballot Deadline**.  To ensure that your vote is counted you must (i) complete the Ballot, (ii) indicate your decision either to accept or reject the Plan in the Ballot, and (iii) sign and return the Ballot to the address set forth on the Ballot. **BALLOTS SENT BY FACSIMILE TRANSMISSION OR ELECTRONIC MAIL ARE**

**NOT ALLOWED AND WILL NOT BE COUNTED, UNLESS THE BALLOT IS CAST VIA THE BALLOTING AGENT'S E-BALLOT PROCEDURES.**

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by the Balloting Agent on or before [ **_____ , 2020, at 4:00 p.m. (prevailing Eastern Time)**]. In addition to the description of the solicitation procedures set forth in Section 3.3, please refer to the Solicitation Procedures Order posted on the Noticing Agent Website for further voting procedures and rules.

Holders of Claims and Interests that receive a Ballot and are entitled to vote on the Plan shall have the option to consent to release certain third parties in accordance with Section 6.2(b) of the Plan. The Ballot and its instructions explain the process for Holders to release such claims. Accordingly, when completing the Ballot, you should carefully review the Ballot, its instructions and Section 6.2(b) of the Plan before deciding to consent to such releases.

Any Ballot that is timely received, executed, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan.

The following Ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected by the class in which such Holder holds a Claim or Interest:

(a)     any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

(b)     any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan will not be counted;

(c)     any Ballot cast for a Claim designated or determined as unliquidated, contingent, or disputed or as zero or unknown in amount and for which no 3018(a) Motion has been Filed by the 3018(a) Motion Deadline will not be counted;

(d)     any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of this Plan or that indicates both acceptance and rejection of this Plan will not be counted;

(e)     any Ballot received by the Balloting Agent after the Voting Deadline will not be counted, unless the Debtor agrees in writing to an extension of such deadline;

(f)     any Ballot not bearing an original signature will not be counted; and

(g)     any Ballot received by the Balloting Agent by facsimile, e-mail or other electronic communication will not be counted unless cast in accordance with the Balloting Agent's E-ballot procedures.

**3.6.**    **Acceptance of the Plan**.  As a Creditor, your acceptance of the Plan is important. In order for the Plan to be confirmed, each Impaired Class of Claims must vote to accept the Plan (by a majority in number and two-thirds in dollar amount of the Claims voting in a particular Class), or the Plan must qualify for cramdown of any non-accepting Class of Claims pursuant to Bankruptcy Code section 1129(b).  In any case, at least one impaired Class of Claims, excluding the votes of insiders, must actually vote to accept the Plan pursuant to Bankruptcy Code section 1126(c).  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT THE BALLOT ATTACHED TO THE NOTICE IN ACCORDANCE WITH THE ENCLOSED INSTRUCTIONS.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

**3.7.**    **Implementation and Execution of the Plan**.

**3.7.1.  Effective Date**.  As set forth in Article II of the Plan, the Plan shall become effective on the date which is the first Business Day on which each condition set forth in Article IV of the Plan has been satisfied or waived as set forth therein.  Upon the occurrence of the Effective Date, the Debtor will File and post on the Noticing Agent Website a notice of confirmation and occurrence of the Effective Date.  You will not receive further notice of the occurrence of the Effective Date and should monitor the Noticing Agent Website for such notice.

**3.7.2.  Summary of Means of Implementation and Execution of the Plan**. Article II of the Plan sets forth the means by which the Plan shall be implemented and executed, the dissolution of the Debtor, the resignation of the Debtor's directors and officers, and objections to and allowance of Claims.

**3.7.3.  Liquidation Trust**.  The Liquidation Trust will be formed on the Effective Date.  The purpose of the Liquidation Trust will be to make distributions to Holders of Claims and to pursue Causes of Action for the benefit of the Estate and its creditors. The Liquidation Trust will receive the Liquidation Trust Assets in accordance with Section 2.2 of the Plan.  The Liquidation Trust Assets will be used to operate the Liquidation Trust, and additional operating expenses of the Liquidation Trust shall be in paid in accordance with the Liquidation Trust Documents.   The duties and powers of the Liquidation Trustee shall be set forth in the Liquidation Trust Documents, and include, but not be limited to: (a) exercising all power and authority that may be necessary to implement this Plan and enforce all provisions thereof, commence and prosecute all proceedings that may be commenced and take all actions that may be taken by any officer, director or shareholder of the Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including consummating the Plan, (b) maintaining any books and records of the Liquidation Trust, including any books and records of the Debtor transferred to the Liquidation Trust, (c) incur and pay reasonable and necessary expenses in connection with the implementation of the Plan due after the Effective Date, and (d) collect and liquidate all assets of the Debtor transferred to the

Liquidation Trust and, to the extent necessary, further facilitate the wind down of the Debtor's affairs.

      **3.7.4. Abandonment, Disposal and/or Destruction of the Records**.  As set forth in Section 2.9 of the Plan, the Debtor has identified certain documents, books and records (collectively, the "**Records**") that are outdated, burdensome, and/or of inconsequential value to the Debtor's estate and are not necessary or relevant to: (i) the Debtor's (through the Effective Date) or Liquidation Trustee's (after the Effective Date) performance of their respective duties and obligations; (ii) any pending or threatened litigation; (iii) the filing of any tax returns; (iv) the resolution of Claims Filed against the Debtor; or (v) any potential Causes of Action (including but not limited to Avoidance Actions and/or objections to Claims or Interests) that the Debtor through the Effective Date) and/or Liquidation Trustee (after the Effective Date) may pursue.  To complete the Debtor's wind-down and to avoid the incurrence of unnecessary storage costs and facilitate the consolidation and preservation of any pertinent documents, books and records, the Liquidation Trustee shall be authorized to abandon, destroy and/or dispose of all originals and/or copies of documents and business records pursuant to Bankruptcy Code section 554 ten (10) calendar days after the filing of a notice of abandonment on the Court docket and service of the notice of abandonment on all parties on the Bankruptcy Rule 2002 service list maintained in this Case.

      **3.8.    Executory Contracts and Unexpired Leases**.  As stated in Article III of the Plan, the Debtor believes that all executory contracts and unexpired leases of the Debtor were previously assumed and assigned, or rejected, during the Case.  Accordingly, Article III of the Plan, which is included out of an abundance of caution, (i) provides that all executory contracts and unexpired leases of the Debtor which are not assumed and assigned, or rejected, prior to the Confirmation Date, if any, shall be deemed rejected as of the Confirmation Date, and (ii) sets forth procedures for asserting and resolving Rejection Claims, if any, that are filed by the Rejection Claim Deadline.

      **3.9.    Conditions Precedent to Confirmation and Consummation of the Plan**.  Article IV of the Plan sets forth the conditions that must occur prior to both Confirmation of the Plan and the occurrence of the Effective Date.  Article IV also describes the Debtor's ability to waive such conditions, as well as the effect of non-occurrence of the conditions to the Effective Date, including the vacatur of the Confirmation Order.  If the Confirmation Order is vacated pursuant to Section 4.3 of the Plan, (i) the Plan shall be null and void in all respects, and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor or (b) prejudice in any manner the rights of the Debtor or any other party in interest.

      **3.10.   Miscellaneous Provisions**.  Article V of the Plan contains several miscellaneous provisions, including: (i) the right to pursue Avoidance Actions, if any; (ii) the retention of jurisdiction by the Bankruptcy Court over certain matters following the Confirmation Date; (iii) the Liquidation Trustee's payment of statutory fees pursuant to 28 U.S.C. § 1930; (iv) the dissolution of the Creditors' Committee; and (v) the termination of Prime Clerk LLC in its capacity as claims, noticing and balloting agent.

**ADDITIONALLY, PLEASE NOTE THAT SECTIONS 6.1 THROUGH 6.3 OF THE PLAN GOVERN THE EXCULPATION, LIMITATION OF LIABILITY AND RELEASE OF CERTAIN PARTIES.    PLEASE REVIEW THESE PROVISIONS CAREFULLY.**

     **3.11.**    <u>Final Fee Hearing and Final Decree</u>.

       **3.11.1.    <u>The Professional Fee Claim Bar Date and the Final Fee Hearing</u>**. Article VII of the Plan describes the Professional Fee Claim Bar Date and the Final Fee Hearing. The Debtor will File and post on the Noticing Agent Website a notice of the Professional Fee Claim Bar Date and the Final Fee Hearing.  You will not receive further notice of the Professional Fee Claim Bar Date, the Professional Fee Claims or the Final Fee Hearing and should monitor the Noticing Agent Website for such notice.  The Professional Fee Claim Bar Date and the Final Fee Hearing Time can also be obtained by contacting counsel for the Debtor.

       **3.11.2.    <u>Entry of the Final Decree and Closing of the Cases</u>**.  As set forth in Article VII of the Plan, subsequent to the Effective Date, the Final Fee Hearing and the fulfillment of the standards for the closing of the Case, the Liquidation Trustee shall File a proposed form of order under certification of counsel (the "**Final Decree Certification**") requesting the entry of a Final Decree pursuant to Bankruptcy Code section 350(a).  Such Final Decree shall close the Case.  At that time, the Liquidation Trustee will state that (i) the Estate has been fully administered and all distribution have been or will be made, (ii) all motions, contested matters and adversary proceedings have been resolved, and (iii) all U.S. Trustee fees will have been paid.

     Bankruptcy Code section 350(a) provides that a case shall be closed "[a]fter an estate is fully administered and the court has discharged the trustee."  11 U.S.C. § 350(a). Likewise, Bankruptcy Rule 3022 provides that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court ... shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.  Based upon the foregoing, the Bankruptcy Court's entry of the Final Decree is appropriate and necessary subsequent to the Effective Date upon submission of the Final Decree Certification.

     **4.**    <u>**FEASIBILITY**</u>.

     **4.1.**    <u>**Financial Feasibility Analysis**</u>.

       **4.1.1. <u>Bankruptcy Code Standard</u>**.    The Bankruptcy Code requires that, in order to confirm a plan, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor(s) unless contemplated by the plan.  11 U.S.C. § 1129(a)(11).

       **4.1.2. <u>No Need for Further Reorganization of Debtor</u>**.  Because the Debtor is winding down its business operations, and because the Plan provides for the liquidation and distribution of all of the Debtor's Assets and the dissolution of the Debtor, confirmation of the Plan will not be followed by further reorganization of the Debtor.

     **5.**    <u>**BEST INTERESTS OF CREDITORS AND ALTERNATIVES TO PLAN**</u>.

**5.1.**    **Chapter 7 Liquidation**.

     **5.1.1.**   **Bankruptcy Code Standard.**  Notwithstanding acceptance of a plan by a voting impaired class, if an impaired class does not vote unanimously to accept the plan, the bankruptcy court must determine that the plan provides to each member of such impaired class a recovery, on account of each member's claim or interest, that has a value, as of the effective date, at least equal to the recovery that such class member would receive if the debtor was liquidated under Chapter 7. 11 U.S.C. § 1129(a)(7). This inquiry is often referred to as the "best interests of creditors test."

     In a typical Chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of the secured creditors' claims, administrative expenses are next to receive payment. Unsecured creditors are paid from any remaining sales proceeds, according to their respective priorities. Unsecured creditors with the same priority share Pro Rata. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid in full.

     **5.1.2.**   **Plan is in the Best Interests of Creditors**.

     The Plan satisfies the "best interests of creditors" test because the recoveries expected to be available to Holders of Allowed Claims under the Plan will be greater than the recoveries expected to be available in a Chapter 7 liquidation. For example, if a Chapter 7 trustee were to be appointed in this Case, he or she likely would require considerable time and incur substantial fees and expenses, including a fee for the Trustee in an amount of up to 3% of the value of all property distributed in the Chapter 7 case and the fees of the Trustee's professionals in analyzing the Debtor's Case and Assets. However, in this Case, because substantially all of the Debtor's Assets already have been liquidated through the completion of the Debtor's "go-forward" projects, the settlements with project owners and subcontractors, as well as the settlements with Arch, PNC and the Insiders, the conversion of this Case to Chapter 7 would bring no material benefit to the Creditors, while imposing additional and unnecessary expenses and delays on the Debtor's Estate—thereby negatively affecting the Creditors' recoveries. Liquidation of the Debtor's Assets pursuant to this Plan thus will provide for a greater (and more rapid) recovery by the Debtor's Creditors and is therefore in their best interests. A liquidation analysis evidencing the Plan's satisfaction of the best interests test is attached hereto as **Schedule 1**.

     Pursuant to the Plan Settlement, (i) the Prepetition Secured Lender has agreed to waive [$ TBD] of its Claim and fix its claim at [$ TBD], and (ii) Arch has agreed to fix its claim at [$ TBD]. None of these recoveries and overall benefits to the Debtor's Creditors would be available in a Chapter 7 liquidation scenario.

     **5.2.**   **Continuation of the Bankruptcy Case**. The Debtor is not a going concern and thus there is no benefit to remaining in Chapter 11.

     **5.3.**   **Alternative Plan(s)**. The Debtor does not believe that there are any alternative plans. The Debtor believes that the Plan, as described herein, enables Holders of Claims to

realize the greatest possible value under the circumstances, and that, compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

## 6.   **RISK FACTORS**.

Holders of Claims who are entitled to vote on the Plan should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement and the Plan, before deciding whether to vote to accept or reject the Plan.

### 6.1.   **Certain Bankruptcy Considerations**.

Even if an Impaired Class entitled to vote votes to accept the Plan, and the requirements for "cramdown" are met for any Impaired Class that fails to vote to accept or is deemed to reject the Plan, the Bankruptcy Court may exercise substantial discretion and may choose not to confirm the Plan. Bankruptcy Code section 1129 requires, among other things, that the value of distributions to dissenting holders of Claims or Interests may not be less than the value such Holders would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. Although the Debtor believes that the Plan will meet such requirement, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 6.2.   **Claims Estimation**.

There can be no assurance that the estimated amount of Claims set forth in the Plan is correct, and the actual Allowed amounts of Claims may differ from the estimates. Any value given as to the Claims against and the Assets of the Debtor reflects an estimation of such value.

## 7.   **TAX CONSEQUENCES OF THE PLAN**.

THE DEBTOR HAS NOT REQUESTED A RULING FROM THE IRS OR AN OPINION OF COUNSEL WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. THUS, NO ASSURANCE CAN BE GIVEN AS TO THE TAX CONSEQUENCES OF THE PLAN. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

## 8.   **CONCLUSION**.

It is important that you exercise your right to vote on the Plan. It is the Debtor's belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against and Interests in the Debtor.

IN WITNESS WHEREOF, the undersigned has executed this Disclosure Statement this 19th day of June, 2020.

**HOLLISTER CONSTRUCTION
SERVICES, LLC**

By: */s/ Chris Johnson*
Name: Chris Johnson
Title:   Head Coach

37322/3

06/18/2020 206470059.5

# SCHEDULE 1

## LIQUIDATION ANALYSIS

## [TO BE PROVIDED]

2

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**LOWENSTEIN SANDLER LLP**

Arielle B. Adler, Esq.
Bruce Buechler, Esq.
Joseph J. DiPasquale, Esq.
Jennifer B. Kimble, Esq.
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC,**[1]<br><br>Debtor. | Case No. 19-27439 (MBK)<br><br>Chapter 11<br><br>Judge: Hon. Michael B. Kaplan |

## DEBTOR'S PLAN OF LIQUIDATION

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

37322/3

06/18/2020 206289112.5

## PRELIMINARY STATEMENT

Hollister Construction Services, LLC ("**Hollister**" or the "**Debtor**") respectfully proposes to the creditors of the Debtor and other parties in interest this Chapter 11 plan of orderly liquidation (as may be further amended, modified or supplemented, the "**Plan**"), which is proposed pursuant to the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. section 101, *et seq*., as amended (the "**Code**" or "**Bankruptcy Code**").

Holders of Claims and Interests may refer to the *Disclosure Statement for Debtor's Plan of Liquidation*, dated June 18, 2020 (as amended, modified or supplemented, the "**Disclosure Statement**"), for a discussion of the Debtor's history, business, assets, operations, and historical financial information. The Disclosure Statement also includes a summary and description of the Plan. The Debtor is the proponent of the Plan within the meaning of 11 U.S.C. section 1129.

## Article I

### TREATMENT AND CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and distribution, pursuant to this Plan and pursuant to Bankruptcy Code sections 1122 and 1123(a)(1). Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in section 1.2 of the Disclosure Statement.

| Class | Type | Status Under Plan and Voting | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%)[2] |
|---|---|---|---|---|---|
| 1. | Pre-Petition Secured Lender Claims – PNC Bank | Impaired, Entitled to Vote | The Pre-Petition Secured Lender has agreed that its Pre-Petition Secured Lender Claim shall receive payment in Cash on the Effective Date (i) in the amount of [$ TBD ] outstanding under the PNC Line of Credit Note, plus outstanding interest thereon as provided for in the PNC Line of Credit | [$ TBD  M] for principal and unpaid interest as of the Effective Date plus [TBD ] (as defined in the | [TBD %] |

---

[2]   The estimated recovery percentages reflect the amount of Claims that the Debtor believes will be Allowed Claims. Final numbers may differ materially depending on the actual amount of Allowed Claims.

| | | | Loan Documents on the Effective Date, and (ii) the amount of [$ TBD ] outstanding under the PNC Term Loan Note, plus outstanding interest thereon as provided for in the PNC Term Loan Documents. The Pre-Petition Secured Lender agrees that it has waived and will not be paid any other amounts that may be due under the PNC Line of Credit Loan Documents or the PNC Term Loan Documents on account of its Pre-Petition Secured Lender Claim, including, but not limited to any fees or other expenses provided for under any of the PNC Credit Documents or in any Cash Collateral Orders. Within 21 days of receipt of payment on the Pre-Petition Secured Lender Claim, PNC will file all documents necessary to release its liens on the assets of the Debtor. The Pre-Petition Secured Lender Claim set forth above shall be an Allowed Claim under this Plan. | Prepetition PNC Credit Documents) | |
|---|---|---|---|---|---|
| 2. | Priority Claims | Unimpaired, Deemed to Accept

Not Entitled to Vote | Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment of its Allowed Priority Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Claim, each such Holder thereof shall receive payment in full, in cash through two equal payments over a one (1) year period, with the first payment on the sixth month anniversary of the Effective Date and the second payment on the one-year anniversary of the Effective Date, unless the Holder agrees to different treatment. | [$ TBD ] | 100% |
| 3. | Arch Claim | Impaired, Entitled to Vote | Arch has agreed that it shall receive Cash in the amount of [$ TBD ], on the Effective Date for its Prepetition Claim. Arch agrees that it has waived and will not be paid any other amounts that may be due under any Bonds, Pre-Petition Indemnity Agreements or any | [$ TBD ] | [TBD %] |

| | | | other documents supporting Arch's Claim and that the Cash payment shall be in full and final satisfaction, settlement, release, and discharge of and in exchange for the Arch Claim. | | |
|---|---|---|---|---|---|
| 4. | General Unsecured Claims | Impaired, Entitled to Vote | Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim thereof will be treated as follows:<br>  o  Each Holder of an Allowed General Unsecured Claim will receive its *pro rata* share of the Cash to be distributed by the Debtor or the Liquidation Trust.<br>  o  All payments from the Debtor or the Liquidation Trust to Holders of Allowed General Unsecured Claims will be paid after payment of (or the establishment of one or more Reserve(s) for) all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Claims and other Allowed Claims in accordance with the treatment afforded to Classes 1, 2, and 3. | [$ TBD   ] | [TBD % ] |
| 5. | Interests | Impaired, Deemed to Reject<br><br>Not Entitled to Vote | Holders of Interests in the Debtor will retain no ownership interests in the Debtor under the Plan, receive no distribution on account thereof, and such Interests shall be cancelled effective as of the Effective Date. | n/a | 0.00% |

## 1.1.  <u>Treatment of Classes</u>

## A) <u>Class 1 – Pre-Petition Secured Lender Claims</u>

   &#42;  *Classification*:  Class 1 consists of the Claim of the Pre-Petition Secured Lender.

∗   *Treatment*:   The Pre-Petition Secured Lender has agreed that its Pre-Petition
Secured Lender Claim shall receive payment in Cash on the Effective Date (i) in the
amount of [$TBD] outstanding under the PNC Line of Credit Note plus outstanding
interest thereon as provided for in the PNC Line of Credit Loan Documents on the
Effective Date, and (ii) the amount of [$TBD ] outstanding under the PNC Term
Loan Note plus outstanding interest thereon as provided for in the PNC Term Loan
Documents. The Pre-Petition Secured Lender agrees that it has waived and will not
be paid any other amounts that may be due under the PNC Line of Credit Loan
Documents or the PNC Term Loan Documents on account of its Pre-Petition
Secured Lender Claim, including, but not limited to, any fees, expenses provided for
in any of the PNC Loan Documents or in any Cash Collateral orders. The Pre-
Petition Secured Lender Claim set forth above shall be an Allowed Claim under this
Plan.

∗   *Voting*:  Class 1 is Impaired under the Plan.  The Prepetition Secured Lender is
entitled to vote to accept or reject the Plan.

**B)  Class 2 - Priority Claims**

∗   *Classification*:  Class 2 consists of all Allowed Priority Claims.

∗   *Treatment*:  Except to the extent that a Holder of an Allowed Priority Claim agrees
to a less favorable treatment of its Allowed Priority Claim, in full and final
satisfaction, settlement, release, and discharge of and in exchange for each Allowed
Priority Claim, each such Holder thereof shall receive payment in full, in cash over
a one (1) year period, with the first payment on the sixth month anniversary of the
Effective Date and the second payment on the one-year anniversary of the Effective
Date, unless the Holder agrees to different treatment.

∗   *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Priority Claims
are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of
the Bankruptcy Code.  Therefore, such Holders in Class 3 are not entitled to vote to
accept or reject the Plan.

**C)  Class 3 – Arch Pre-Petition Claim**

∗   *Classification*:  Class 3 consists of the Claim of Arch.

∗   *Treatment*:  Arch has agreed that it shall receive Cash in the amount of [$ TBD ], on
the Effective Date for its Prepetition Claim. Arch agrees that it has waived and will
not be paid any other amounts that may be due under any Bonds, Pre-Petition
Indemnity Agreements or any other documents supporting Arch's Claim and that
the Cash payment shall be in full and final satisfaction, settlement, release, and
discharge of and in exchange for the Arch Claim.

∗   *Voting*:  Class 3 is Impaired under the Plan.  Arch is entitled to vote to accept or
reject the Plan.

**D) Class 4 – General Unsecured Claims**

* *Classification*:  Class 4 consists of the Allowed General Unsecured Claims that are not Allowed Priority Claims.

* *Treatment*:  Except to the extent that a Holder of a General Unsecured Claim agrees to a less favorable treatment of its Allowed General Unsecured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim will be treated as follows:

  o Each Holder of an Allowed General Unsecured Claim will receive its *pro rata* share of the Cash to be distributed by the Debtor or the Liquidation Trust.

  o All payments from the Debtor or the Liquidation Trust to Holders of Allowed General Unsecured Claims in this Class 4 will be paid after payment of (or the establishment of a sufficient Reserve for) all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Claims and other Allowed Claims in accordance with the treatment afforded to Classes 1, 2, 3 and Administrative and Priority Claims.

  o For the avoidance of doubt, and notwithstanding any Filed Proof(s) of Claim to the contrary, the Prepetition Secured Lender and Arch do not have an Allowed General Unsecured Claim.

* *Voting*:  Class 4 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

**E) Class 5 – Interests**

* *Classification:*  Class 5 consists of all Interests in the Debtor.

* *Treatment:*   On the Effective Date, all Interests or other equity interests in the Debtor shall be cancelled without receiving any distribution on account of any such Interests.

* *Voting:*  Class 5 is Impaired under the Plan.  Holders of Interests or other equity interests are conclusively presumed to have rejected the Plan pursuant to section 1126(d) of the Bankruptcy Code and, therefore, the Holders of Interests or other equity interests are not entitled to vote to accept or reject the Plan.

**1.2.    Allowed Administrative Claims**.   Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment with respect to such Holder, each Holder of an Allowed Administrative Claim, shall be paid in full in Cash on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date, or (b)

on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

**1.3.    Special Provision Governing Claims**.  Nothing under this Plan shall affect the Debtor's (through the Effective Date) or the Liquidation Trustee's (after the Effective Date) rights and defenses in respect of any Claim that was not previously otherwise settled or compromised under the Plan, including all legal and equitable rights and defenses, including setoff or recoupment against such Claims.

**1.4.    Confirmation Pursuant to Bankruptcy Code Section 1129(b)**.  In the event that one of the Classes that is entitled to vote on the Plan votes to reject the Plan, the Debtor shall request that the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b).

**1.5.    Cancellation of Claims and Interests**.  Except as otherwise set forth in this Plan, and except for purposes of evidencing a right to the distribution, on the Effective Date, all agreements and other documents evidencing the Claims or rights of any Creditor against the Debtor, including all notes, guarantees, mortgages, and all Interests, shall be cancelled.

## Article II

### IMPLEMENTATION AND EXECUTION OF THE PLAN

**2.1.    Effective Date**.  The Plan shall become effective on the date that is the first Business Day on which each condition set forth in Article IV of the Plan has been satisfied or waived as set forth therein (the "**Effective Date**").

**2.2.    Implementation of the Plan**.

(a) The Plan will be implemented through: (i) the formation of the Liquidation Trust on the Effective Date which, as set forth below, shall carry out all actions and perform all duties set forth in the Plan and the Liquidation Trust Documents; (ii) the Liquidation Trust's distribution as soon as reasonably practicable after the Effective Date ("**Initial Distribution**") to Holders of Claims that are Allowed as of the Effective Date in accordance with the Plan (subject to any Reserve(s)); (iii) the Debtor's distribution of the Liquidation Trust Assets to the Liquidation Trust; and (iv) the Liquidation Trustee's distribution to Holders of Allowed Claims that have not been Allowed or paid by the Initial Distribution, in accordance with the Plan. Disallowed Claims and Interests (including Claims that were not timely filed by the applicable bar dates set forth in the Bar Date Order) will not receive any distribution.

(b) On or prior to the Effective Date (or as soon as reasonably practicable after the Effective Date), and after making all distributions required to be made on the Effective Date under the Plan, the Liquidation Trustee shall be authorized, but not directed, to maintain one or more reserves (each, a "**Reserve**", collectively, the "**Reserves**") for Disputed Claims in each Class of Claims and Unclassified Claims, which Reserve(s) shall be administered by the Liquidation Trustee on and after the Effective Date.  To the extent that Reserves are established and maintained for the benefit of any holder of a Disputed Claim, such Reserves shall include

an amount of Cash, equal to the distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the amount of the Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim, or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidation Trustee.  In addition, the Liquidation Trustee shall establish and maintain a Reserve in the amount of any Claim, including an Allowed Claim, for which the Liquidation Trustee is authorized under the Plan to withhold distributions and is withholding such distributions.

(c) The Debtor (through the Effective Date) or Liquidation Trustee (after the Effective Date) may, but shall not be obligated to, physically segregate and maintain separate accounts or sub-accounts for the Reserves. Reserves may be merely bookkeeping entries or accounting methodologies which may be revised from time to time, to enable the Debtor (through the Effective Date) or Liquidation Trustee (after the Effective Date) to determine reserves and amounts to be distributed in accordance with the Plan.

**2.3.** **Distribution to Holders of Allowed General Unsecured Claims**. Each Record Holder of an Allowed General Unsecured Claim shall be treated as set forth in Article I. Distributions to the Record Holders of Allowed General Unsecured Claims shall be (a) made in accordance with the terms and provisions of the Plan and Liquidation Trust Documents, and (b) delivered (i) at the address set forth on the proof of claim timely Filed by such Holder, (ii) at the address set forth in any written notices of address change Filed by such Holder, (iii) at the addresses reflected in the Schedules if a proof of claim has been Filed without any written notice of address or address change, or (iv) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records; *provided*, *however*, that no distributions shall be made to the Record Holders of Allowed General Unsecured Claims until the earlier to occur of the Effective Date or a Final Order authorizing such distributions.

**2.4.** **No Distribution Pending Allowance**.  Notwithstanding any other provision of this Plan or the Liquidation Trust Documents, no distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan or the Liquidation Trust Documents.

**2.5.** **Fractional Dollars; De Minimis Distributions; Unclaimed Distributions**. Notwithstanding any other provision of the Plan to the contrary, for distributions to Holders other than Holders with Allowed Claims in Class 3, (a) the Debtor and/or Liquidation Trustee shall not be required to make distributions or payments of fractions of dollars, and whenever any distribution of a fraction of a dollar under the Plan would otherwise be required, the actual distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Debtor and/or Liquidation Trustee shall have no duty to make a distribution on account of any Allowed Claim (i) if the aggregate amount of all distributions

authorized to be made on such date is less than $30,000, in which case such distributions shall be deferred at the discretion of the Debtor through the Effective Date (in consultation with the Creditors' Committee) and/or Liquidation Trustee following the Effective Date, (ii) if the amount to be distributed to a Holder on the particular distribution date is less than $100.00, unless such distribution constitutes the final distribution to such Holder, or (iii) if the amount of the final distribution to such Holder is $50.00 or less, in which case no distribution will be made to that Holder and such distribution shall revert to the Liquidation Trust for distribution on account of other Allowed Claims.

After the Initial and other interim Distributions have been made in accordance with the terms of the Plan and the Liquidation Trust Documents, if the amount of remaining Cash is less than $30,000, the Liquidation Trustee, after consultation with the Liquidation Trust Committee, may donate such amount to a charity approved by the Liquidation Trust Committee.

Any Cash or other property to be distributed under this Plan that is an Unclaimed Distribution shall revert to the Liquidation Trustee if it is not claimed by the Unclaimed Distribution Deadline. If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, the distribution made to such Holder shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Liquidation Trust for distribution on account of other Allowed Claims.

**2.6.**   **No Post-Petition Interest**.  Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code and the Holder of the Allowed Claim in Class 1.

**2.7.**   **Dissolution of the Debtor**.  On the Effective Date or as soon thereafter as is reasonably practicable, the affairs of the Debtor may be wound up and the Debtor will be deemed dissolved without the need for any further action or approval or filings with the secretary of state or other governmental official or authorities in the Debtor's state of formation; *provided*, *however*, that the entry of the Final Decree in this Case shall effect such dissolution of the Debtor.  After the Effective Date, the Debtor, along with its attorneys, accountants and other agents as applicable, may (i) prosecute final applications for payment of fees and reimbursement of expenses of Professionals, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, including in connection with the Final Fee Hearing, and (ii) participate in any appeals of the Confirmation Order and/or motions seeking reconsideration thereof through the date such appeals and/or motions are finally decided, settled, withdrawn or otherwise resolved.

**2.8.**   **Officers and Directors**.  On the Effective Date, Paul Belair of 10X CEO Coaching, who is currently the Chief Restructuring Officer of the Debtor, Bernard Katz of BAK Advisors, who currently serves as the Independent Manager of the Debtor,

Christopher Johnson, the Head Coach of the Debtor, and all other officers and members of the Debtor shall be deemed to have resigned as officers and/or managers or directors of the Debtor.  The Liquidation Trustee can retain any of these individuals to perform services for the Liquidation Trustee.

**2.9.**    **Records**.    The Debtor has identified certain Records that are outdated, burdensome, and/or of inconsequential value to the Debtor's estate and are not necessary or relevant to: (i) the Debtor's (through the Effective Date) or Liquidation Trustee's (after the Effective Date) performance of their respective duties and obligations; (ii) any pending or threatened litigation; (iii) the filing of any tax returns; (iv) the resolution of Claims Filed against the Debtor; or (v) any potential Causes of Action (including but not limited to Avoidance Actions and/or objections to Claims or Interests) that the Debtor (through the Effective Date) and/or Liquidation Trustee (after the Effective Date) may pursue.    To complete the Debtor's wind-down and to avoid the incurrence of unnecessary storage costs and facilitate the consolidation and preservation of any pertinent documents, books and records, after the Effective Date the Liquidation Trustee, is authorized to abandon, destroy and/or dispose of all originals and/or copies of documents and business records pursuant to Bankruptcy Code section 554 ten (10) days after the filing of a notice of abandonment on the Court docket and service of the notice of abandonment on all parties on the Rule 2002 service list maintained in this Case.[3]

**2.10.**    **Effectuating Documents**.    The officers and directors of the Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such other actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

**2.11.**    **Objections to Claims**.    Except as provided herein and in section 3.2 of the Plan, the deadline to File objections to Claims shall be 120 days after the Effective Date or such later date that may be set by the Bankruptcy Court upon a motion of the Liquidation Trustee (which motion may be approved without a hearing and without notice to any party) (the "**Claims Objection Deadline**"), and any Claim that is not the subject of a timely Filed objection as of the Claims Objection Deadline shall be an Allowed Claim in the amount set forth on the proof of claim Filed by the Holder of such Claim.  If a Disputed Claim becomes Allowed, in full or in part, such Claim shall be treated, to the extent Allowed, in accordance with the treatment of its Class.

**2.12.**    **Objections and Settlements of Claims and Claims Allowance**.    The Debtor (in consultation with the Creditors' Committee) through the Effective Date, or Liquidation Trustee  after the Effective Date, as applicable, shall have the authority to: (1) file objections to Claims, settle, compromise, withdraw, or litigate to judgment objections to

---

[3] The Liquidation Trustee shall not be required to comply with applicable local, state and federal statutes, rules and ordinances except to the extent that compliance is necessary to ensure the government's interest in public health and safety.  *See generally Midlantic Nat'l Bank v. New Jersey Dept of Envtl. Protection*, 474 U.S. 494 (1986). Additionally, any action by any local, state or federal agency, department or governmental authority or any other entity to prevent, interfere with, or otherwise hinder the Liquidation Trustee's abandonment, disposal and/or destruction of the Records shall be enjoined.

any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, liquidate, allow, or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; (3) administer and adjust the Claims Register and/or direct the Claims Agent to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; and (4) file one or more Allowed Claims Notices with respect to non-contingent, liquidated Proofs of Claim that are not Allowed either prior to or following the Effective Date and as to which the Debtor (in consultation with the Creditors' Committee) or Liquidation Trustee, as applicable, have determined not to file any objection.

**2.13.** **Plan Settlement in Connection With the Plan**. Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions and other benefits provided under the Plan, the Plan constitutes a request for the Bankruptcy Court to authorize and approve, among other things, a comprehensive settlement agreement (the "**Plan Settlement**") as implemented herein between and among the Debtor, the Creditors' Committee, the Pre-Petition Secured Lender, Arch and the Insiders. Distributions to be made to Holders of Allowed (i) Pre-Petition Secured Lender Claims, (ii) Arch Claims, (iii) Priority Claims, and (iv) General Unsecured Claims pursuant to the Plan shall be made on account of and in consideration of, among other things, the Plan Settlement. Without the Plan Settlement: (i) numerous disputes would have existed and remained outstanding between and among the Debtor, Creditors' Committee, Pre-Petition Secured Lender, Arch and the Insiders, including regarding the nature and extent of the Claims of the Pre-Petition Secured Lender, Arch, and the Insiders; and (ii) the Creditors' Committee and the Debtor may have also been forced to litigate, among other issues, asserted Claims against Insiders. Under the Plan Settlement, among other things, the Pre-Petition Lender agrees to waive any entitlement or assertion of any Secured Claim or any other asserted General Unsecured Claim above [$ TBD]; Arch agreed to waive any entitlement or assertion of any General Unsecured Claim above [$ TBD]; and [ TBD ADDITIONAL TERMS OF PLAN SETTLEMENT]. Entry of the Confirmation Order shall confirm (a) the Bankruptcy Court's approval, as of the Effective Date, of the Plan and all components of the Plan Settlement, and (b) the Bankruptcy Court's finding that the Plan Settlement is (x) in the best interest of the Debtor, its Estate and the Holders of Claims, (y) the exercise of the Debtor's sound business judgment, and (z) is fair, equitable and reasonable under the circumstances.

**2.14.** **Release of Liens**. Except as otherwise provided in this Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Estate shall be deemed fully released and discharged without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code or other applicable law.

**2.15.** **Exemption from Certain Taxes and Fees**. Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument or transfer from the Debtor to the Liquidation Trust, or to any other Person pursuant to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax,

mortgage tax, stamp tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.

**2.16.** **Debtor's Privileges**.  Upon and effective after the Effective Date, all privileges of the Debtor relating to the Liquidation Trust Assets (which include the Causes of Action) shall be deemed transferred, assigned, and delivered to the Liquidation Trust, without waiver or release, and shall vest with the Liquidation Trust.  The Liquidation Trustee shall hold and be the beneficiary of all such privileges and entitled to assert such privileges.  No such privilege shall be waived by disclosures to the Liquidation Trustee of the Debtor's documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtor.  The Debtor's privileges relating to the Liquidation Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement.  Nothing contained herein or in the Confirmation Order, nor any professional's compliance herewith and therewith, shall constitute a breach of any privileges of the Debtor.

**2.17.** **Provisions Regarding the Liquidation Trust, Liquidation Trustee and Liquidation Trust Committee.**[4]

a)  Appointment of Liquidation Trustee.  The Debtor has selected, in consultation with the Creditors' Committee, [ TBD  ] to serve as Liquidation Trustee.  The entry of the Confirmation Order shall ratify the selection of the Liquidation Trustee.  The Liquidation Trust Documents, substantially in the form attached hereto as **Schedule B**, is hereby incorporated by reference in its entirety and made an integral part of this Plan.

b)  Creation of the Liquidation Trust; Term.  On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Documents for the purpose of, among other things, (i) investigating and, if appropriate, pursuing Causes of Action, (ii) administering, monetizing and/or liquidating the Liquidation Trust Assets, (iii) resolving all Disputed Claims, and (iv) making all distributions from the Liquidation Trust as provided for in the Plan, Disclosure Statement and the Liquidation Trust Documents.

c)  Vesting and Transfer of Assets to the Liquidation Trust.  Pursuant to section 1141(b) of the Bankruptcy Code, the Liquidation Trust Assets shall vest in the Liquidation Trust free and clear of all Claims, Liens charges or other encumbrances; provided, however, the Liquidation Trustee may abandon or otherwise not accept any Liquidation Trust Assets that the Liquidation Trustee believes, in good faith, to have no value to, or will be unduly burdensome to, the

---

[4]  Capitalized terms not otherwise defined herein shall be given the meanings ascribed to them in the Liquidation Trust Documents.

Liquidation Trust.  Any Liquidation Trust Assets that the Liquidation Trustee so abandons or otherwise does not accept shall not be Liquidation Trust Assets.

d) <u>General Powers of the Liquidation Trustee</u>.  The rights and powers of the Liquidation Trustee are specified in the Liquidation Trust Documents.   Except as expressly set forth in this Plan or the Disclosure Statement, and in the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Liquidation Trust, shall have absolute discretion to pursue or not to pursue any Causes of Action transferred to the Liquidation Trust or arising in favor of the Liquidation Trust, including, without limitation, taking any action with respect to Disputed Claims, appeals, counterclaims, and defenses of, or with respect to, such Disputed Claims and/or other Causes of Action.

After the Effective Date, prosecution and settlement of all Causes of Action (including Avoidance Actions) arising before or after the Petition Date shall be the sole responsibility of the Liquidation Trust pursuant to this Plan and the Confirmation Order.  The Liquidation Trustee may pursue such Causes of Action (including Avoidance Actions), as appropriate, in accordance with the best interests of the Liquidation Trust Beneficiaries.  After the Effective Date, the Liquidation Trust shall have exclusive rights, powers, and interests of the Estate to pursue, settle, or abandon such Causes of Action (including Avoidance Actions) as the sole representative of the Estate pursuant to section 1123(b)(3) of the Bankruptcy Code.  Notwithstanding the occurrence of the Effective Date, all Causes of Action (including Avoidance Actions) that are not expressly released or waived under this Plan are reserved and preserved and vest in the Liquidation Trust in accordance with this Plan.  No Person or entity may rely on the absence of a specific reference in this Plan, or any other supplemental documents to any Cause of Action (including Avoidance Actions) against it as any indication that the Debtor and/or Liquidation Trustee will not pursue any and all available Causes of Action against any such Person or entity.  The Liquidation Trustee expressly reserves all Causes of Action (including Avoidance Actions), except for any Causes of Action against any Person or entity that are expressly released, waived or exculpated under this Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action (including Avoidance Actions) upon, after, or as a consequence of confirmation or consummation of this Plan.  Unless any Causes of Action (including Avoidance Actions) against any Person or entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court Order, the Debtor or the Liquidation Trustee, as applicable, expressly reserves all Causes of Action for later adjudication.

Attached as Exhibit A is a non-exclusive list of Causes of Action (including Avoidance Actions) retained pursuant to the Plan: (a) all Causes of Action (including Avoidance Actions) not otherwise released, and (b) all Causes of Action against any of and/or defenses to Claims asserted by the Debtor's current or former employees, agents, officers, directors, members, managers or not otherwise released herein.

e) <u>Certain Liquidation Trust Tax Matters</u>.  The Liquidation Trust shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Debtor and/or Liquidation Trust due after the Effective Date.  The Liquidation Trust shall

comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Liquidation Trust shall be subject to any such withholding and reporting requirements. The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a distribution from the Liquidation Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidation Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Liquidation Trust shall, pending the implementation of such arrangements, be treated as an Unclaimed Distribution to be held by the Liquidation Trustee, as the case may be, until such time as the Liquidation Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

f) <u>Liquidation Trust Committee</u>.   On or before the Effective Date, the Creditors' Committee shall appoint the Liquidation Trust Committee to oversee the implementation of the Plan.

g) <u>Substitution of Liquidation Trust for the Debtor</u>.   After the Effective Date, the Liquidation Trust shall be deemed to be substituted as the party in lieu of the Debtor in all pending matters including but not limited to (i) motions, contested matters and adversary proceeding pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Liquidation Trustee to file motions or substitutions of parties and counsel.

## Article III
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

3.1.   **Background**.  The Debtor believes that all executory contracts and unexpired leases of the Debtor were assumed and assigned, or rejected, during the pendency of the Case.  Article III of the Plan is included out of an abundance of caution.

3.2.   **Executory Contracts and Unexpired Leases**.  All executory contracts and unexpired leases of the Debtor which have not previously been assumed and assigned, or rejected, prior to the Confirmation Date shall be deemed rejected as of the Confirmation Date.  Any Creditor asserting a Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease deemed rejected pursuant to this Plan is required to file a proof of claim substantially in the form of Official Form 410 with the Claims Agent ("**Rejection Claim**") at its address set forth below in section 7.5, and

serve it upon Debtor's counsel and the Liquidation Trustee by overnight mail by no later than 30 days after the Confirmation Date (the "**Rejection Claim Deadline**").

**3.3.** **Rejection Claims**.  Any Rejection Claim not filed pursuant to section 3.2 of the Plan shall be forever disallowed and barred.  If one or more Rejection Claims are filed pursuant to section 3.2 of the Plan, notwithstanding section 2.11 of the Plan, the Debtor or the Liquidation Trustee may File one or more objections to any such Rejection Claims, and shall serve any objection upon the claimant, the claimant's counsel, if any, and Debtor's counsel or the Liquidation Trustee, as applicable, by overnight mail no later than sixty (60) days after the Rejection Claim Deadline.  Any response by the claimant to any such objection shall be Filed and served by overnight mail upon Debtor's counsel and the Liquidation Trustee no later than 15 days thereafter.  If any such objection is timely Filed and cannot be resolved consensually by the parties, a hearing shall be held by the Bankruptcy Court as soon as is reasonably practicable. If a Rejection Claim is determined to be Allowed, the date of such determination shall be deemed to be the Record Date and the Holder of the Claim on the date of such determination shall be deemed to be the Record Holder of such Claim.  If a Rejection Claim becomes Allowed, in full or in part, such Claim shall be an Allowed General Unsecured Claim to the extent that such Claim becomes Allowed and the Record Holder of such Claim shall receive the treatment set forth in section 2.3 of the Plan.

**Article IV**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

**4.1.** **Condition to Confirmation**.  Unless waived pursuant to section 4.3 of the Plan, the Bankruptcy Court's entry of the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, in consultation with the Committee and PNC, shall be the condition precedent to the Confirmation of the Plan.

**4.2.** **Conditions to the Effective Date**.  The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or waived pursuant to section 4.3 of the Plan: (i) the Confirmation Order, in form and substance reasonably satisfactory to the Debtor, in consultation with the with the Committee and PNC, shall have been entered by the Bankruptcy Court, (ii) the Confirmation Order shall have become a Final Order, and (iii) the Liquidation Trust shall have been created.

**4.3.** **Waiver of Conditions to Confirmation or the Effective Date**.  The conditions set forth in sections 4.1 and 4.2 of the Plan may be waived in whole or part in writing by the Debtor, with the consent of the Committee and PNC, at any time without further Order of the Bankruptcy Court.

## Article V
## MISCELLANEOUS PROVISIONS

**5.1.    Binding Effect of the Plan**.  The provisions of the Plan shall be binding upon all parties to the Plan and inure to the benefit of the Debtor, the Debtor's Estate, and its predecessors, successors, assigns, advisors, attorneys, agents, officers and directors of either.  The terms of the Plan shall be enforceable against the Debtor, its Creditors, Interest Holders and all parties-in-interest, and their respective successors and assigns.

**5.2.    Causes of Action**.  Through the Effective Date, the Debtor shall have the sole and exclusive right, standing and authority to prosecute, compromise, settle and/or otherwise deal with the Debtor's Causes of Action, in its sole discretion, with any such compromise or settlement subject to Bankruptcy Court approval (collectively, the "**Litigation Rights**").  The Litigation Rights shall be assigned from the Debtor to the Liquidation Trust on the Effective Date and such assignment shall occur and be consummated without any further documentation or Order of the Bankruptcy Court.  In the event that the Debtor or the Liquidation Trustee elects to prosecute any Causes of Action, any recovery, net of reasonable legal fees, costs and expenses used in connection with the investigation, prosecution, or settlement of the Causes of Action), from litigation, compromise or settlement shall be distributed by the Liquidation Trustee to Holders of Allowed Claims in accordance with the Plan.

**5.3.    Retention of Jurisdiction**.  Following the Effective Date, the Bankruptcy Court shall retain jurisdiction to the fullest extent permitted by law over the provisions of this Plan, including Disputed Claims, Rejection Claims, and Professional Fee Claims, over all disputes and litigation (including litigation concerning Causes of Action) which may be pending on the Confirmation Date or brought by the Liquidation Trustee after the Effective Date, and over any controversies that may arise hereafter which would affect the Debtor's and/or Liquidation Trustee's ability to carry out the Plan, until all such disputes and litigation shall be concluded and the Plan shall be fully consummated.

**5.4.    Governing Law**.  Except as mandated by the Bankruptcy Code or Bankruptcy Rules, as applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New Jersey without regard to conflicts of law.

**5.5.    Headings**.  The headings of articles, paragraphs, and subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

**5.6.    Time**.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, then the time for the next occurrence or happening of said event shall be extended to the next day which is a Business Day.

**5.7.    Severability**.   Should any provision of this Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or affect

the enforceability and operative effect of any and all of the other provisions of the Plan provided that the intent of the Plan can still be effectuated.

**5.8.    Revocation**.  The Debtor reserves the right to revoke and withdraw the Plan prior to the entry of a Confirmation Order.  If the Debtor revokes or withdraws the Plan, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

**5.9.    Precedence**.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence.  In the event of any inconsistency between any provision of the Liquidation Trust Documents and any provision of the Plan or Disclosure Statement, the Liquidation Trust Documents shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

**5.10.    Statutory Fees**.  The Debtor shall pay all fees payable pursuant to 28 U.S.C. § 1930 due through the Effective Date.  From and after the Effective Date, the Liquidating Trust will have the obligation to pay all such US Trustee fees.

**5.11.    Dissolution of the Creditors' Committee**.  On the Effective Date, the Creditors' Committee shall be dissolved automatically and its members, professionals, and agents shall be deemed released of any continuing duties, responsibilities and obligations in connection with the Case, the Plan and its implementation, except with respect to (i) prosecuting applications for payment of fees and reimbursement of expenses of Professionals, or Creditors' Committee members, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, including in connection with the Final Fee Hearing, or (ii) any appeals of the Confirmation Order and/or motions seeking reconsideration thereof through the date such appeals and/or motions are finally decided, settled, withdrawn or otherwise resolved.   On the Effective Date, the retention and employment of the Creditors' Committee's attorneys, accountants and other agents shall terminate, except with respect to:  (i) prosecuting applications for payment of fees and reimbursement of expenses of Professionals, or Creditors' Committee members, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, including in connection with the Final Fee Hearing, or (ii) any appeals of the Confirmation Order and/or motions seeking reconsideration thereof through the date such appeals and/or motions are finally decided, settled, withdrawn or otherwise resolved.

**5.12.    Claims Agent**.  Prime Clerk, LLC, in its capacity as claims, noticing and balloting agent, shall be relieved of such duties on the date of the entry of the Final

Decree or upon such earlier date as set forth in a written notice provided to it by the Liquidation Trustee.

**5.13.** **No Duty to Update Disclosures**.    The Debtor has no duty to update the information contained in this Plan or in the Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless required to do so pursuant to an Order of the Bankruptcy Court.  Delivery of this Plan and the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

## Article VI
## RELEASES, DISCHARGE, INJUNCTION AND EXCULPATION

**6.1.** **Exculpation and Limitation of Liability**.    EFFECTIVE AS OF THE EFFECTIVE DATE, THE EXCULPATED PARTIES SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR AN INTEREST, THE DEBTOR, OR ANY OTHER PARTY-IN-INTEREST, OR ANY OF THEIR RESPECTIVE RELATED PERSONS, FOR ANY PREPETITION OR POSTPETITION ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CASE, THE FORMULATION, NEGOTIATION, OR IMPLEMENTATION OF THE DISCLOSURE STATEMENT OR THE PLAN, THE SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE THE RESULT OF WILLFUL MISCONDUCT, GROSS NEGLIGENCE, FRAUD OR CRIMINAL ACTS; PROVIDED, HOWEVER, THAT (I) THE FOREGOING IS NOT INTENDED TO LIMIT OR OTHERWISE IMPACT ANY DEFENSE OF QUALIFIED IMMUNITY THAT MAY BE AVAILABLE UNDER APPLICABLE LAW; (II) EACH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING HIS, HER OR ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, THE PLAN; AND (III) THE FOREGOING EXCULPATION SHALL NOT BE DEEMED TO, RELEASE, AFFECT, OR LIMIT ANY OF THE RIGHTS AND OBLIGATIONS OF THE EXCULPATED PARTIES FROM, OR EXCULPATE THE EXCULPATED PARTIES WITH RESPECT TO, ANY OF THE EXCULPATED PARTIES' OBLIGATIONS OR COVENANTS ARISING PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

**6.2.** **Releases and Related Matters**.

  **(a) Releases by Debtor**. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING: (1) THE SETTLEMENT, RELEASE AND COMPROMISE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID PURSUANT HERETO;

AND (2) THE SERVICES OF THE DEBTOR'S PRESENT AND FORMER OFFICERS, DIRECTORS, MANAGERS AND ADVISORS IN FACILITATING THE EXPEDIENT IMPLEMENTATION OF THE TRANSACTIONS, DISTRIBUTIONS AND LIQUIDATION CONTEMPLATED HEREBY, THE DEBTOR, AND ANY PERSON OR ENTITY SEEKING TO EXERCISE THE RIGHTS OF THE DEBTOR'S ESTATE, INCLUDING, WITHOUT LIMITATION, ANY SUCCESSOR TO THE DEBTOR OR ANY ESTATE REPRESENTATIVE APPOINTED OR SELECTED PURSUANT TO SECTION 1123(B)(3) OF THE BANKRUPTCY CODE (INCLUDING THE LIQUIDATION TRUSTEE), SHALL BE DEEMED TO FOREVER RELEASE, WAIVE, AND DISCHARGE EACH OF THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, RIGHTS, CAUSES OF ACTION, RIGHTS OF SETOFF AND LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR) IN CONNECTION WITH OR IN ANY WAY RELATING TO THE DEBTOR, THE CONDUCT OF THE DEBTOR'S BUSINESSES, THE CASE, THE DISCLOSURE STATEMENT OR THE PLAN (OTHER THAN THE RIGHTS OF THE DEBTOR, THE LIQUIDATION TRUSTEE OR A CREDITOR HOLDING AN ALLOWED CLAIM TO ENFORCE THE OBLIGATIONS UNDER THE CONFIRMATION ORDER AND THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED THEREUNDER) WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE THROUGH THE EFFECTIVE DATE.

**(b)  Releases by Holders of Claims and Interests of Debtor**. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR WHO: (1) EITHER VOTE TO ACCEPT THE PLAN OR ARE PRESUMED TO HAVE VOTED FOR THE PLAN UNDER SECTION 1126(F) OF THE BANKRUPTCY CODE, (2) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN BUT ABSTAIN FROM VOTING, AND (3) IF SUCH HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, DO NOT MARK THEIR BALLOTS TO INDICATE THEIR REFUSAL TO GRANT THE RELEASES PROVIDED IN THIS SUB-PARAGRAPH, SHALL BE DEEMED TO FOREVER RELEASE, WAIVE, AND DISCHARGE EACH OF THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER IN CONNECTION WITH OR IN ANY WAY RELATING TO THE DEBTOR, THE CONDUCT OF THE DEBTOR'S BUSINESSES, THE CASE, THE DISCLOSURE STATEMENT OR THE PLAN (OTHER THAN THE RIGHTS OF THE DEBTOR, OR A CREDITOR HOLDING AN ALLOWED CLAIM TO ENFORCE THE OBLIGATIONS UNDER THE CONFIRMATION ORDER AND THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED THEREUNDER), WHETHER LIQUIDATED OR

UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATION OF FEDERAL OR STATE SECURITIES LAW OR OTHERWISE, THAT ARE BASED IN WHOLE OR PART ON ANY ACT, OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE.

(c) **Plan Settlement**. AS NOTED ABOVE, ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, OF THE PLAN SETTLEMENT, INCLUDING THE FOREGOING RELEASE BY THE DEBTOR, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN SETTLEMENT AND HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE FOREGOING RELEASE BY THE DEBTOR IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND INTERESTS RELEASED BY THE FOREGOING RELEASE BY THE DEBTOR; (3) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE DEBTOR OR THE LIQUIDATION TRUSTEE ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE FOREGOING RELEASE BY THE DEBTOR.

**6.3.     Injunction Related to Releases and Exculpations**.  **Except as provided in the Plan or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or Interest or any other Cause of Action, obligation, suit, judgment, damages, debt, right, remedy or liability of any nature whatsoever, relating to the Debtor or any of its respective assets, property and Estate, or Exculpated Parties that is released or exculpated pursuant to Sections 6.1 or 6.2 of the Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions (whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such released Claims or Interests or other Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest):  (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person discharged, released, or exculpated under Sections 6.1 or 6.2 of the Plan;**

**and (e) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.**

## Article VII
### FINAL FEE HEARING AND FINAL DECREE

**7.1.   The Professional Fee Claim Bar Date**.  Any and all applications for the final allowance of Professional Fee Claims shall be Filed and served upon counsel to the Debtor, counsel to the Creditors' Committee, the United States Trustee, and all Persons on the Debtor's Bankruptcy Rule 2002 service list on or before the Professional Fee Claim Bar Date.

**7.2.   Professional Fee Escrow**. If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable after the Confirmation Date and by no later than the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow.  The Debtor shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate.  Funds held in the Professional Fee Escrow shall not be considered property of the Debtor's Estate or property of the Liquidation Trust, but shall revert to the Liquidation Trust only after all Professional Fee Claims allowed by the Bankruptcy Court have been irrevocably paid in full.  The Professional Fee Escrow shall be held in trust for Professionals retained by the Creditors' Committee and the Debtor and for no other parties until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full. Professional Fees owing to the applicable Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; provided, that obligations with respect to Professional Fee Claims shall not be limited nor deemed limited to the balance of funds held in the Professional Fee Escrow.  No liens, claims, or interests shall encumber the Professional Fee Escrow in any way.

**7.3.   Final Fee Hearing**.  A hearing on final allowance of Professional Fee Claims (the "**Final Fee Hearing**") shall be held as soon as practicable after the Professional Fee Claim Bar Date.  The Debtor's counsel shall File a notice of the Final Fee Hearing.  Such notice shall be posted on the Noticing Agent Website, and served upon counsel for the Creditors' Committee, all Professionals, the United States Trustee and all parties on the Debtor's Bankruptcy Rule 2002 service list.

**7.4.   Final Decree**.  Subsequent to the Effective Date, the distributions and the Final Fee Hearing, the Liquidation Trustee shall File a certification of counsel requesting the entry of the Final Decree.

**7.5.   Administrative Expense Claim Bar Date**.   The bar date or last date for the filing by any Person of any motion or application for allowance of an Administrative Expense Claim, *exclusive of* Professional Fee Claims (which are addressed separately above), that has accrued between the Petition Date and the Effective Date of the Plan and

that remains unpaid shall be 4:00 p.m. (prevailing eastern time) on the date that is twenty-one (21) days after the Effective Date (the "**Administrative Expense Claim Bar Date**").  Any such Administrative Expense Claims must be filed with the Bankruptcy Court with a copy served on the Debtor's counsel and the Claims Agent by regular mail, overnight courier or hand delivery to Claims Agent at the following address: Hollister Construction Services Claims Agent, c/o Prime Clerk, LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, so as to be received by the Administrative Expense Claims Bar Date. **The failure of any Person to timely file and serve such an Administrative Expense Claim by the Administrative Claim Bar Date shall not be paid.**

## Article VIII
## REQUEST FOR CONFIRMATION

**8.1.**    **Request for Confirmation**.  The Debtor requested confirmation of this Plan in accordance with section 1129(a) and/or section 1129(b) of the Bankruptcy Code.

IN WITNESS WHEREOF, the Debtor has executed this Plan this 19th day o f June, 2020.

**Hollister Construction Services, LLC**

By:      _/s/ Chris Johnson_
         Chris Johnson, Head
         Coach

# **SCHEDULE A**

## **LIST OF AVOIDANCE ACTIONS**

## **[TO BE PROVIDED]**

## **SCHEDULE B**

**FORM OF LIQUIDATION TRUST AGREEMENT**

**(TO BE PROVIDED)**