**LOWENSTEIN SANDLER LLP**
Arielle B. Adler, Esq. (aadler@lowenstein.com)
Joseph J. DiPasquale, Esq. (jdipasquale@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **HOLLISTER CONSTRUCTION SERVICES, LLC,** | **Case No. 19-27439 (MBK)** |
| **Debtor.** | **Hon. Michael B. Kaplan** |

**HOLLISTER CONSTRUCTION SERVICES, LLC,**

**Plaintiff,**

v.

**ARCH INSURANCE COMPANY AND ARCH
REINSURANCE COMPANY, 24/7 SECURITY
AGENCY, LLC, 360 FIRE PREVENTION, LLC,
ADVANCED SCAFFOLD SERVICES MID-
ATLANTIC LLC,  ALESSANDRA MISC METAL
WORKS, INC, BEL-CON CONSTRUCTION
SERVICES, INC., BRIDGE BUILDERS NEWARK
LLC, CUTTING EDGE GLASS, INC., EAST
COAST ELEVATOR LLC, ELEVATION1 INC.,
FERRY CARPET INC., FM CONSTRUCTION
GROUP, LLC, JOHNNY ON THE SPOT, INC.,
MASER CONSULTING P.A., MAVERICK
BUILDING SERVICES, INC., MDS
CONSTRUCTION CORP., MIXONSITE USA, INC,
NATIONAL FIREPROOFING & INSULATION
CO., INC., NORDIC CONTRACTING INC.,
PATRIOT SAWCUTTING INC., POWER FAST
INC., RENT-A-FENCE INC., SOMERSET WOOD
PRODUCTS CO., STARLITE ELECTRIC LLC,
STROBER-WRIGHT ROOFING INC., SUBURBAN
PROPANE GAS CORPORATION, TRI-STATE
FOLDING PARTITIONS, TRU-FIT FRAME AND
DOOR CORP, CITY CONTRACTING, INC.,
GRAYBAR ELECTRIC COMPANY, INC., LESLIE
KATCHEN STEEL CONSTRUCTION, INC., ACE
WIRE, ADVANTAGE BUILDING SUPPLY
CORPORATION, ALLGLASS SYSTEMS, LLC,
ATLANTIC CONCRETE, BOST CONCRETE &
CONSTRUCTION, LLC, C RESTORATION INC.,
CARDELLA TRUCKING CO., INC., DEHN BROS.
FIRE PROTECTION, INC., ENVIRONMENTAL
DEVICES, INC., GALLANT & WEIN
CORPORATION, HADDAD PLUMBING &
HEATING INC., HERC RENTALS, INC., MARJAM
SUPPLY CO, INC., MERCURY PAINT
CORPORATION, SUNBELT RENTALS, INC.,
SUNNY BROOK PRESSED CONCRETE, SURF
FIRE & SECURITY, INC., UNITED RENTALS
INC., AND U.S. ELECTRICAL SERVICES, INC.,**

**Defendants.**

**Adv. Pro. No.**

## VERIFIED ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT AND FOR RELATED RELIEF

Plaintiff Hollister Construction Services, LLC ("Hollister" or the "Debtor"),[1] by and through its undersigned counsel, submits this verified adversary complaint (the "Complaint") against defendants Arch Insurance Company and Arch Reinsurance Company (collectively, "Arch"), 24/7 Security Agency, LLC; 360 Fire Prevention, LLC; Advanced Scaffold Services Mid-Atlantic LLC; Alessandra Misc Metalworks, Inc; Bel-Con Construction Services, Inc.; Bridge Builders Newark LLC; Cutting Edge Glass, Inc.; East Coast Elevator, LLC; Elevation1 Inc.; Ferry Carpet Inc.; FM Construction Group, LLC ("FM Construction"); Johnny On The Spot, Inc.; Maser Consulting P.A.; Maverick Building Services, Inc.; MDS Construction Corp. ("MDS Construction"); MixOnSite USA, Inc ("MixOnSite"); National Fireproofing & Insulation Co., Inc.; Nordic Contracting Inc.; Patriot Sawcutting, Inc.; Power Fast Inc.;  Rent-A-Fence Inc.; Somerset Wood Products, Co.; Starlite Electric LLC; Strober-Wright Roofing Inc.; Suburban Propane Gas Corporation; Tri-State Folding Partitions; Tru-Fit Frame and Door Corp.; City Contracting, Inc.; Graybar Electric Company, Inc.; Leslie Katchen Steel Construction, Inc.; Ace Wire; Advantage Building Supply Corporation; Allglass Systems, LLC; Atlantic Concrete; Bost Concrete & Construction, LLC; C Restoration Inc.; Cardella Trucking Co., Inc.; Dehn Bros. Fire Protection, Inc.; Environmental Devices, Inc.; Gallant & Wein Corporation; Haddad Plumbing & Heating Inc.; Herc Rentals, Inc.; Marjam Supply Co., Inc.; Mercury Paint Corporation; Sunbelt Rentals, Inc.; Sunny Brook Pressed Concrete; Surf Fire & Security, Inc.; United Rentals Inc.; and U.S. Electrical Services, Inc. (each, a "Defendant", and collectively, the "Defendants"), and alleges as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

## <u>NATURE OF THE ACTION</u>[2]

1.     The Debtor requests a declaratory judgment and other relief arising out of the Debtor's business relationships with certain entities related to certain construction projects described herein.  Specifically, the Debtor seeks entry of a judgment against the Defendants: (a) declaring that all valid and perfected construction liens asserted against the Ironside Property (defined herein), the Columbia Street Extension (defined herein), and/or the 3rd Floor Office Fit Out (defined herein) shall be transferred to and shall attach to the Escrowed Settlement Proceeds (defined herein); (b) declaring that the Lien Discharge Bonds (defined herein) shall be transferred and attach to, and be paid solely from, the Escrowed Settlement Proceeds; (c) directing the Lien Claimants (defined herein) to prove the validity and extent of their alleged liens against the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out, or on property of the estate related to the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out; (d) determining that the Lien Claimants do not have valid and perfected liens on the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out, or on property of the estate related to the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out; (e) determining and declaring that any alleged lien that was not duly perfected as of the Petition Date (defined herein) or which is voidable under applicable law be declared null and void and/or avoided; (f) imposing a channeling injunction directing that, to the extent any of the Quantum Meruit Claimants (defined herein) are entitled to a recovery on any of their claims, such recovery shall be solely against the Escrowed Settlement Proceeds; (g) declaring that the Quantum Meruit Claimants' claims are disallowed in their

---

[2] Capitalized terms used but not defined in this section shall have the meanings ascribed to said terms below.

entirety and expunged; (h) entering an Order to Show Cause in the form attached hereto; and (i)

granting the Debtor such other and further relief as the Court deems just and equitable.

## JURISDICTION, VENUE AND STATUTORY PREDICATES

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the *Standing*

*Order of Reference to the Bankruptcy Court Under Title 11* dated as of September 18, 2012

(Simandle, C.J.).

3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

4.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

5.      The statutory predicates for the relief requested in this Complaint are 11 U.S.C.

§§ 105(a), 502(d), 506(d), 544, 550 and 541, and Rules 3007 and 7001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

6.      The Debtor agrees to the entry of a final order or judgment in this adversary

proceeding if it is determined that the Court, absent consent of the parties, cannot enter a final

order or judgment consistent with Article III of the United States Constitution.

## BACKGROUND

7.      On September 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition

for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the District of New Jersey, Case No. 19-27439 (MBK) (the

"Chapter 11 Case").

8.      The Debtor continues to operate its business as a debtor-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

9.      No party has requested the appointment of a trustee or examiner.

10.     On September 23, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in this Chapter 11 Case.

## **RELEVANT FACTS**

**A.     The Debtor**

11.     The Debtor is a New Jersey limited liability company.  Based in New Jersey, the Debtor is a regional general construction firm that provides construction management services, *i.e.*, professional management services for construction projects.  The Debtor's principal office is located in Parsippany, New Jersey and the Debtor has project locations across New Jersey and New York.

12.     Additional details regarding the Debtor's business and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Brendan Murray in Support of First Day Relief*, which is incorporated herein by reference.[3]

**B.     The Projects**

13.     On or about April 20, 2017, Newark Warehouse Urban Renewal, LLC and Hollister entered into an *Agreement for Construction Management Services and Guaranteed Maximum Price* (together with all amendments, the "Ironside Project Contract") for construction management services on a project involving the renovation of a building located at 110 Edison Place, Newark, New Jersey (the "Ironside Project").

14.     Newark Warehouse Urban Renewal, LLC leases the building located at the Ironside Project to Newark Warehouse Redevelopment Company, LLC (together with Newark Warehouse Urban Renewal, LLC, the "NWR Entities).

---

[3] Case No. 19-27439 (the "Main Case"), Docket No. 15.  All citations to the docket refer to the Main Case unless otherwise indicated.

15.     On or about September 18, 2017, Edison Construction Management, LLC ("Edison"), as agent of Mulberry Parking Properties, LLC, and Hollister entered into a *General Contractor Construction Contract* (together with all amendments, the "Columbia Street Extension Contract") for the construction of a project involving the realignment and extension of Columbia Street from Lafayette Street to Edison Place in Newark, New Jersey (the "Columbia Street Extension").

16.     The NWR Entities are affiliates of Edison.

17.     On or about September 7, 2018, Newark Warehouse Urban Renewal, LLC and Hollister entered into an *General Contractor Construction Contract* (together with all amendments, the "3rd Floor Office Fit Out Contract") for the construction of a project inside the building located at 110 Edison Place, Newark, New Jersey (the "3rd Floor Office Fit Out").

C.      **The NWR Entities' Adversary Proceeding**

18.     On September 5, 2019, the NWR Entities filed a complaint (the "NWR Complaint") against Hollister and certain of its members in the Superior Court of New Jersey, Law Division, Essex County (the "State Court") , captioned *Newark Warehouse Urban Renewal, LLC et al. v. Hollister Construction Services, LLC et al.,* Docket No. ESX-L-006514-19 (the "State Court Action").  In the NWR Complaint, the NWR Entities asserted various causes of action against Hollister arising out of the Ironside Project, including breach of contract, negligence, fraud, breach of the *New Jersey Consumer Fraud Act*, N.J.S.A. 56:8-2, breach of the implied covenant of good faith and fair dealing, and intentional and negligent misrepresentation.

19.     On October 9, 2019, Hollister filed a *Notice of Removal* in the United States District Court for the District of New Jersey (the "District Court"), thereby removing the State Court Action to the District Court.[4]

20.     On October 24, 2019, the District Court referred the State Court Action to this Court thereby, commencing the "NWR Adversary Proceeding".[5]

21.     On November 8, 2019, the NWR Entities filed a motion seeking to remand the NWR Adversary Proceeding to the State Court or, in the alternative, to have this Court obtain from exercising jurisdiction over the State Court Action ( the "Remand Motion").  The Remand Motion has been adjourned a number of times and remains pending before this Court.

22.     On October 29, 2019, Hollister filed an Answer generally denying, and asserting affirmative defenses to, the NWR Entities' allegations and claims in the NWR Complaint.[6] Hollister also asserted various Counterclaims against the NWR Entities.[7]  Contemporaneously therewith, Hollister filed a Third-Party Complaint against Edison and Pasquale Suriano ("Suriano"), Edison's Executive Vice President of Engineering and Construction.[8]

23.     By way of the Counterclaims and Third-Party Complaint, Hollister alleges and asserts, *inter alia*, that:

    a.  the NWR Entities breached the Ironside Project Contract and owe Hollister in excess of $16 million related thereto;

    b.  the NWR Entities breached the 3rd Floor Office Fit Out Contract and owe Hollister in excess of $722,000 related thereto;

    c.  Edison breached the Columbia Street Extension Contract and owes Hollister in excess of $280,000 related thereto;

---

[4] *See* Case No. 19-cv-18829-CCC-MF, Docket No. 1.
[5] *See id.*, Docket No. 6; Adv. Pro. No. 19-02222 ("Adv. Pro."), Docket No. 1.
[6] *See* Adv. Pro., Docket No. 3.
[7] *See id.*
[8] *See id.*

d.  Edison and the NWR Entities violated the *New Jersey Prompt
    Payment Act*, N.J.S.A. 2A:30A-1, *et seq.*, by failing and refusing to
    pay Hollister under the terms of the respective Ironside Project
    Contract, the 3rd Floor Office Fit Out Contract, and Columbia
    Street Extension Contract;

e.  Edison and Suriano interfered with Hollister's performance of
    work relating to the Ironside Project Contract and the 3rd Floor
    Office Fit Out Contract, thereby causing Hollister to incur
    damages;

f.  the amounts owed and outstanding by the NWR Entities under the
    Ironside Project Contract and the 3rd Floor Office Fit Out Contract
    (the "Contract Balance Amounts") are property of Hollister's
    bankruptcy estate pursuant to section 541(a)(1) of the Bankruptcy
    Code;

g.  the Contract Balance Amounts should be immediately turned over
    to Hollister pursuant to section 542 of the Bankruptcy Code; and

h.  the NWR Entities' Proof of Claim (defined herein) against
    Hollister should be disallowed pursuant to section 502(d) of the
    Bankruptcy Code unless the Contract Balance Amounts are paid in
    full to Hollister.

24.   The NWR Entities and third party defendants have advised the Debtor that they
deny the allegations in the Counterclaims and the Third Party Complaint.

**D.  The NWR Entities' Proof of Claim**

25.   On November 15, 2019, the NWR Entities filed a proof of claim in the Chapter 11
Case in the amount of $12,425,822.00 for damages arising from the Debtor's alleged breach of
the Ironside Project Contract.[9]

---

[9] Claim No. 266 (the "Proof of Claim").

### E.  The Defendants

#### i. Arch

26.    Upon information and belief, Arch Insurance Company is a Missouri corporation with a business address located at 1601 Cherry Street, 3 Parkway, Suite 1500, Philadelphia, PA 19102.

27.    Upon information and belief, Arch Reinsurance Company is a Delaware corporation with a business address located at 1601 Cherry Street, 3 Parkway, Suite 1500, Philadelphia, PA 19102.

#### ii. The Lien Claimants[10]

28.    Upon information and belief, City Contracting, Inc. is a New Jersey corporation with a business address located at 62 Bog & Valley Lane, Lincoln Park, NJ 07035.

29.    Upon information and belief, Graybar Electric Company is a New Jersey corporation with a business address located at 3 Nami Lane, Unit 4, Hamilton, NJ 08619 .

30.    Upon information and belief, Leslie Katchen Steel Construction, Inc. is a New Jersey corporation with a business address located at 300 Buckelew Ave, Suite 109, Jamesburg, NJ 08831.

31.    Upon information and belief, MixOnSite is an Illinois corporation with a business address located at 1501 Abbott Court, Buffalo Grove, IL 60089.

32.    Upon information and belief, Ace Wire & Cable is a New Jersey corporation with a business address located at 33 Engelhard Ave., Avenel, NJ 07001.

33.    Upon information and belief, Advantage Building Supply Corporation is a New Jersey corporation with a business address located at 923 Market Street, Paterson, NJ 07513.

---

[10] The Debtor defines this group of Defendants as the "Lien Claimants" for convenience only.  The Debtor expressly reserves and preserves its rights to object to any alleged or asserted claim of any Lien Claimant on any basis, including the nature, extent and validity of any alleged lien.

34.    Upon information and belief, Allglass Systems, LLC is a Pennsylvania corporation with a business address located at 34B Noeland Avenue, Penndel, PA 19047.

35.    Upon information and belief, Atlantic Concrete is a New Jersey corporation with a business address located at 107 Kamm Avenue, South River, NJ 08882.

36.    Upon information and belief, Bost Concrete & Construction, LLC is a New Jersey corporation with a business address located at 251 Prospect Drive, Brick, NJ 08724.

37.    Upon information and belief, C Restoration Inc. is a New Jersey corporation with a business address located at 790 Bloomfield Ave Unit D1, Clifton, NJ 07012.

38.    Upon information and belief, Cardella Trucking Co. is a New Jersey corporation with a business address located at 2400 Tonnelle Ave, North Bergen, NJ 07047.

39.    Upon information and belief, Dehn Bros. Fire Protection, Inc. is a New Jersey corporation with a business address located at 5 Theta Drive, Unit E, Vernon, NJ 07462.

40.    Upon information and belief, Environmental Devices, Inc. is a New Jersey corporation with a business address located at 15 Mt. Prospect Ave, Clifton, NJ 07013.

41.    Upon information and belief, FM Construction Group, LLC is a New Jersey corporation with a business address located at 100 Dr. Martin Luther King Jr. Blvd., East Orange, NJ 07017.

42.    Upon information and belief, Gallant & Wein Corporation is a New York corporation with a business address located at 11-20 43rd Road, Long Island City, NY 11101.

43.    Upon information and belief, Haddad Plumbing & Heating, Inc. is a New Jersey corporation with a business address located at 1223 Broad Street, Newark, NJ 07114.

44.    Upon information and belief, Herc Rentals, Inc. is a Delaware corporation with a business address located at 41-85 Doremus Avenue, Newark, NJ 07105.

45.     Upon information and belief, Marjam Supply Co., Inc. is a New York corporation with a business address located at 885 Conklin Street, Farmingdale, NY 11735.

46.     Upon information and belief, MDS Construction Corp. is a New Jersey corporation with a business address located at 102B US Route 46 East, Saddle Brook, NJ 07663.

47.     Upon information and belief, Mercury Paint Corporation is a New York corporation with a business address located at 4808 Farragut Road, Brooklyn, NY 11203.

48.     Upon information and belief, Sunbelt Rentals, Inc. is a  New Jersey corporation with a business address located at P.O. Box 409211, Atlanta, GA 30384-9211.

49.     Upon information and belief, Sunny Brook Pressed Concrete Co., Inc. is an Ohio corporation with a business address located at 3585 Sunnybrook Road, Kent, OH 44240.

50.     Upon information and belief, Surf Fire & Security, Inc. is a New Jersey corporation with a business address located at 1433 Highway 34, Suite C3, Wall, NJ 07727.

51.     Upon information and belief, United Rentals, Inc. is a New Jersey corporation with a business address located at 2400 Hamilton Boulevard, South Plainfield, NJ 7080.

52.     Upon information and belief, U.S. Electrical Services, Inc. is a Connecticut corporation with a business address located at 701 Middle Street, Middletown, CT 06457.

53.     Upon information and belief, each of City Contracting, Inc., Graybar Electric Company, Inc., Leslie Katchen Steel Construction, Inc., MixOnSite, Ace Wire, Advantage Building Supply Corporation, Allglass Systems, LLC, Atlantic Concrete, Bost Concrete & Construction, LLC, C Restoration Inc., Cardella Trucking Co., Inc., Dehn Bros. Fire Protection, Inc., Environmental Devices, Inc., FM Construction, Gallant & Wein Corporation, Haddad Plumbing & Heating Inc., Herc Rentals, Inc., Marjam Supply Co., Inc., MDS Construction, Mercury Paint Corporation, Sunbelt Rentals, Inc., Sunny Brook Pressed Concrete; Surf Fire &

Security, Inc., United Rentals Inc., and U.S. Electrical Services, Inc. assert one or more construction liens under N.J.S.A. § 2A:44A-1 *et seq.* (the "New Jersey Construction Lien Law") against the Ironside Project, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out for work, services, material or equipment provided.

54.    Upon information and belief, Arch issued bonds discharging certain of the valid and perfected construction liens filed against the Ironside Project, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out (the "Lien Discharge Bonds").

### i. The Quantum Meruit Claimants[11]

55.    Upon information and belief, 24/7 Security Agency, LLC is a New Jersey corporation with a business address located at 2 Gregory Lane, East Hanover, NJ 07936.

56.    Upon information and belief, 360 Fire Prevention, LLC is a New Jersey corporation with a business address located at 40 Edison Avenue, Suite B, Oakland, NJ 07436.

57.    Upon information and belief, Advanced Scaffold Services Mid-Atlantic LLC is a Delaware and New Jersey corporation with a business address located at 650 Route 46 West, Clifton, NJ 07013.

58.    Upon information and belief, Alessandra Misc Metalworks is aNew Jersey corporation with a business address located at 75B Mill Street, Newton, NJ 07860.

59.    Upon information and belief, Bel-Con Construction Services, Inc. is a New Jersey corporation with a business address located at 26 Wallace Street, Belleville, NJ 07109.

---

[11] The Debtor defines this group of Defendants, along with any Lien Claimants who have or may assert claims based on unjust enrichment or quantum meruit, as the "Quantum Meruit Claimants" for convenience only.  The Debtor expressly reserves and preserves its rights to object to any alleged or asserted claim of any Quantum Meruit Claimant on any basis.

60.     Upon information and belief, Bridge Builders Newark LLC is a New Jersey corporation with a business address located at 111 Glenwood Avenue Suite 315, East Orange, NJ 07017.

61.     Upon information and belief, Cutting Edge Glass Inc. is a New Jersey corporation with a business address located at 14 Eastmans Road, Parsippany, NJ 07054.

62.     Upon information and belief, East Coast Elevator, LLC is a New Jersey corporation with a business address located at PO Box 80, Three Bridges, NJ 08887.

63.     Upon information and belief, Elevation1 Inc. is a Delaware corporation with a business address located at 245 Treetop Crescent, Port Chester, NY 10573.

64.     Upon information and belief, Ferry Carpet, Inc. is a New Jersey corporation with a business address located at 195 Lafayette Street,  Newark, NJ 07105.

65.     Upon information and belief, Johnny On The Spot, Inc. is a New Jersey corporation with a business address located at 3168 Bordentown Ave, Old Bridge, NJ, 08857.

66.     Upon information and belief, Maser Consulting P.A. is a New Jersey corporation with a business address located at 777 Chestnut Ridge Road, Suite 202, Chestnut Ridge, NY 10977.

67.     Upon information and belief, Maverick Building Services, Inc. is a New Jersey corporation with a business address located at 22 Chestnut St., Rutherford, NJ 07070.

68.     Upon information and belief, National Fireproofing & Insulation LLC is a New Jersey corporation with a business address located at 139 Van Winkle Ave, Garfield, NJ 07026.

69.     Upon information and belief, Nordic Contracting Inc. is a New Jersey corporation with a business address located at 11 Howard Blvd, Ledgewood, NJ 07852.

70.     Upon information and belief, Patriot Sawcutting Inc. is a New Jersey corporation with a business address located at 103 South Van Brunt Street,  Englewood, NJ 07631.

71.     Upon information and belief, Power Fast Inc. is a New Jersey corporation with a business address located at 63 Dell Glen Avenue, Lodi, NJ 07644.

72.     Upon information and belief, Rent-A-Fence Inc. is a New Jersey corporation with a business address located at 1033 Route 1 South, Avenel, NJ 07001.

73.     Upon information and belief, Somerset Wood Products Co. is a New Jersey corporation with a business address located at 1 Johnson Dr., Ratitan, New Jersey, 08869.

74.     Upon information and belief, Starlite Electric LLC is a New Jersey corporation with a business address located at 260 Main Street Suite #1, Keansburg, NJ 07734.

75.     Upon information and belief, Strober-Wright Roofing Inc. is a New Jersey corporation with a business address located at 1483 Route 179, Lambertville, NJ 08530.

76.     Upon information and belief, Suburban Propane Gas Corporation is a New Jersey corporation with a business address located at at 915 Delancy Street, Newark, NJ 07105.

77.     Upon information and belief, Tri-State Folding Partitions is a New Jersey corporation with a business address located at 608 Chestnut Ridge Rd, Chestnut Ridge, NY 10977.

78.     Upon information and belief, Tru-Fit Frame and Door Corp is a New Jersey corporation with a business address located at 1650 Suckle Highway, Pennsuaken, NJ 08110.

79.     Each of 24/7 Security Agency, LLC, 360 Fire Prevention, LLC, Advanced Scaffold Services Mid-Atlantic LLC, Alessandra Misc Metalworks, Inc, Bel-Con Construction Services, Inc., Bridge Builders Newark LLC, Cutting Edge Glass, Inc., East Coast Elevator, LLC; Elevation1 Inc., Ferry Carpet Inc., FM Construction, Johnny On The Spot, Inc., Maser

Consulting P.A., Maverick Building Services, Inc., MDS Construction, MixOnSite, National Fireproofing & Insulation Co., Inc., Nordic Contracting Inc., Patriot Sawcutting, Inc., Power Fast Inc., Rent-A-Fence Inc., Somerset Wood Products, Co., Starlite Electric LLC, Strober-Wright Roofing Inc., Suburban Propane Gas Corporation, Tri-State Folding Partitions, Tru-Fit Frame and Door Corp. assert one or more claims against the Debtor arising from work, services, material or equipment provided on the Ironside Project, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out that is or are not supported by an alleged construction lien under the New Jersey Construction Lien Law.

80.    The Debtor reserves the right to amend this Complaint to include further information about the Defendants' respective claims that may become known to the Debtor at any time during this adversary proceeding, through formal discovery or otherwise, and for the amendments to relate back to the date of the filing of this Complaint.

### iii. The Defendants' Relationship to the Dispute Between the Debtor and the NWR Entities

81.    As noted above, upon information and belief, the Lien Claimants each assert one or more construction liens under the New Jersey Construction Lien Law against the Ironside Project, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out for work, services, material or equipment provided.

82.    Upon information and belief, Arch issued the Lien Discharge Bonds related to the Ironside Project, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out.

83.    The Ironside Project and the 3rd Floor Office Fit Out are owned by the NWR Entities or their affiliates.  The Columbia Street Extension is owned "or controlled" by the NWR Entities or their affiliates.

84.    Upon information and belief, certain Quantum Meruit Claimants have asserted unjust enrichment, quantum meruit, and other claims against the NWR Entities and/or their affiliates related  to the Ironside Project, the Columbia Street Extension and the 3rd Floor Office Fit Out.

85.    Importantly, the NWR Entities have taken the position in the Chapter 11 Case that they can automatically reduce any amounts determined to be owed to the Debtor by the amount of any judgment awarded or liability found against the NWR Entities in favor of a subcontractor under any theory.[12]

**F.  The Proposed Settlement**

86.    After months of negotiations, the Debtor and the NWR Entities have reached a settlement (the "Proposed Settlement").

87.    Among the terms of the Proposed Settlement are:

    a.  The NWR Entities shall pay the Debtor $2.1 million, which consists of (A) $1.6 million paid into an escrow account (the "Escrowed Settlement Proceeds"); and (B) $500,000 as specific consideration for the Debtor's delivery of certain close-out documents related to the Columbia Street Extension to the NWR Entities;

---

[12] *See, e.g., Second Supplemental Omnibus Reply of Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company, LLC to Oppositions of (I) Apple Coring & Sawing, LLC, (II) Control Services, LLC, (III) Drobach Equipment Rental, Co., (IV) City Contracting, Inc., (V) Allglass Systems, LLC and (VI) Dehn Bros. Fire Protection, Inc. to the NWR Entities' Motion for Entry of an Order Determining That Certain Parties Have Violated the Automatic Stay and for Other Relief* , Docket No. 913, ¶ 2 ("[S]hould any of the Objectors obtain relief against the NWR Entities, as a result of unjust enrichment, quantum merit or otherwise, the NWR Entities would be entitled to deduct the awarded amount from the contract price, i.e., the account receivable purportedly owed to the Debtor"); *see also id.*, ¶ 12 ("[G]iven the fact that the [Ironside Project Contract] specifically and unambiguously call[s] for a 'guaranteed maximum price,' any liability of NWR Entities to any subcontractor, adjudicated in any court, would automatically reduce the Debtor's alleged account receivable owed by the NWR Entities."). Based on the Court's rulings in the *Memorandum Opinion Granting in Part and Denying in Part Newark Warehouse Urban Renewal, LLC and Newark Warehouse Redevelopment Company LLC's Motion for Entry of an Order Determining That Certain Parties Have Violated the Automatic Stay*, Docket No. 1010, the effect of successful subcontractor suits against the NWR Entities is either automatic reduction of the Debtor's accounts receivable (in the case of lien claims and lien discharge bond claims) or the creation and potential enforcement of additional claims of the NWR Entities against the Debtor (in the case of quantum meruit/unjust enrichment claims). *See id.* at 16, 20.

b. The Debtor, the Debtor's estate, and the Debtor's members, on the one hand, and the NWR Entities and their affiliates, including but not limited to any third party defendants in the Third Party Complaint, on the other hand, shall provide each other with broad mutual general releases.  These releases will include all the individuals involved in the in the Adversary Proceeding.

c. The Lien Claimants' liens are to be removed from the Ironside Project, the Columbia Street Extension, and the 3rd Floor Office Fit Out, as well as any bonds related thereto, and shall be transferred to and shall attach to the Escrowed Settlement Proceeds;

d. The Debtor and the NWR Entities request that the Court issue a channeling injunction directing that any and all claims held by the Quantum Meruit Claimants shall be directed to the Escrowed Settlement Proceeds for any recovery on their claims; and

e. As a condition of any distribution on account of their claims against the Ironside Project, the Columbia Street Extension and/or the 3rd Floor Office Fit Out from the Escrowed Settlement Proceeds, each Defendant shall provide the Debtor, the NWR Entities and their respective affiliates with a general release.

88.    The circumstances of the dispute between the NWR Entities and the Debtor are unusual due to the sheer number of potential third-party claims against the Ironside Project, the Columbia Street Extension and the 3rd Floor Office Fit Out, the collective magnitude of those claims, the size of the claims between the Debtor and the NWR Entities, and impact of those claims on the Debtor's Chapter 11 Case.

89.    If the Proposed Settlement is not consummated, the Debtor and its estate are exposed to the NWR Entities's claim in excess of $12 million.

90.    Moreover, the Debtor will have to incur enormous litigation expenses, in addition to amounts already incurred, to defend against the NWR Entitites' claims in the NWR Complaint, prosecute the Debtor's Counterclaims and Third-Party Complaint against the NWR Entities and their affiliates, and to disallow, expunge, or otherwise reduce the alleged amount of the NWR Entities's claim.

91.    Furthermore, the Debtor may have to defend against any attempts by the NWR Entities to reduce—automatically or otherwise—the accounts receivable owed to the Debtor by the amount of any judgments awarded against the NWR Entities in favor of a subcontractor.

## COUNT I

### Against Lien Claimants For Valid and Perfected Liens to Attach to the Escrowed Settlement Proceeds Under 11 U.S.C. § 105(a)

92.    The Debtor repeats and realleges the allegations set forth above as if fully set forth herein.

93.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue any order that is "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

94.    The Debtor seeks a declaratory judgment transferring and attaching any valid and perfected construction lien that were asserted by the Lien Claimants to the Escrowed Settlement Proceeds.

95.    The Debtor will suffer irreparable harm if any valid and perfected liens asserted by the Lien Claimants are not transferred and attached to the Escrowed Settlement Proceeds.

96.    Denying the request to transfer and attach any valid and perfected liens asserted by the Lien Claimants to the Escrowed Settlement Proceeds would result in the loss of the Debtor's opportunity for a global resolution of the myriad issues between the Debtor and the NWR Entities.

97.    Transferring and attaching any valid and perfected liens asserted by the Lien Claimants to the Escrowed Settlement Proceeds under 11 U.S.C. § 105(a) as contemplated in the Proposed Settlement is necessary to give effect to the Proposed Settlement and the releases between the Debtor and the NWR Entities pursuant thereto.

98.     Without the protection of this relief, the NWR Entities may, notwithstanding the releases and payment of the Escrowed Settlement Proceeds, be unfairly subject to claims against the Ironside Property, the Columbia Street Extension, the 3rd Floor Office Fit Out, or against the NWR Entities themselves.  Further, without these protections, the NWR Entities will not pay the settlement funds to the estate.

99.     The transfer and attachment of any valid and perfected liens asserted by the Lien Claimants to the Escrowed Settlement Proceeds is a necessary prerequisite for the NWR Entities' agreement to the terms and conditions of the Proposed Settlement, and the NWR Entities will not consummate the Proposed Settlement in the absence of this relief from this Court.

100.    Conversely, the Lien Claimants will not suffer irreparable harm if the relief requested herein is granted.  Indeed, the Lien Claimants will benefit from participating in the proposed claims resolution protocol, as they could realize a prompt recovery on their valid and perfected liens without waiting months or possibly years for their claims to be established by litigation or the traditional claims resolution process.

101.    Indeed, the relief will assist the Debtor in its efforts to formulate a consensual and feasible chapter 11 plan of liquidation for the benefit of all stakeholders, by, among other things, preserving valuable and limited assets of the Debtor's estate for the estate and for the Lien Claimants.

102.    Money damages are not sufficient to protect against the potential loss of the Debtor's ability to resolve the myriad issues between the Debtor and the NWR Entities, which would significantly and directly impact the Chapter 11 Case, or to create a source of recovery for the estate and the Lien Claimants, who could otherwise recover significantly less—or nothing at all—on account of their claims.

103.    The public interest is served by transferring and attaching any valid and perfected liens of the Lien Claimants to the Escrowed Settlement Proceeds, allowing a settlement to be approved, and hopefully to allow a plan to be confirmed in this Chapter 11 Case.

104.    The Court, by transferring and attaching any valid and perfected liens of the Lien Claimants to the Escrowed Settlement Proceeds, will preserve for the Lien Claimants an avenue for recovery on their claims.  By directing the Lien Claimants to pursue their asserted liens on the Ironside Project, the Columbia Street Extension and the 3rd Floor Office Fit Out against the Escrowed Settlement Proceeds only, each Lien Claimant has a fair and equitable opportunity for recovery on its valid and perfected lien claims as among its similarly-situated creditors.

## COUNT II

**Against Arch For the Lien Discharge Bonds to Attach to the Escrowed Settlement Proceeds Under 11 U.S.C. § 105(a)**

105.    The Debtor repeats and realleges the allegations set forth above as if fully set forth herein.

106.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue any order that is "necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

107.    The Debtor seeks a declaratory judgment transferring and attaching the Lien Discharge Bonds to the Escrowed Settlement Proceeds.

108.    The Debtor will suffer irreparable harm if the Lien Discharge Bonds are not transferred and attached to the Escrowed Settlement Proceeds.

109.    Denying the request to transfer and attach the Lien Discharge Bonds to the Escrowed Settlement Proceeds would result in the loss of the Debtor's opportunity for a global resolution of the myriad issues between the Debtor and the NWR Entities.

110.    Transferring and attaching the Lien Discharge Bonds to the Escrowed Settlement Proceeds under 11 U.S.C. § 105(a) as contemplated in the Proposed Settlement is necessary to give effect to the Proposed Settlement and the releases between the Debtor and the NWR Entities pursuant thereto.

111.    Without the protection of this relief, the NWR Entities may, notwithstanding the releases and payment of the Escrowed Settlement Proceeds, be unfairly subject to claims against the Ironside Property, the Columbia Street Extension, the 3rd Floor Office Fit Out, or against the NWR Entities themselves.  Further, without these protections, the NWR Entities will not pay the settlement funds to the estate.

112.    The transfer and attachment of the Lien Discharge Bonds to the Escrowed Settlement Proceeds is a necessary prerequisite for the NWR Entities' agreement to the terms and conditions of the Proposed Settlement, and the NWR Entities will not consummate the Proposed Settlement in the absence of this relief from this Court.

113.    Conversely, the Arch will not suffer irreparable harm if the relief requested herein is granted.  Indeed, Arch will benefit from participating in the proposed claims resolution protocol, as it could realize a prompt recovery on the Lien Discharge Bonds without waiting months or possibly years for their claims to be established by litigation or the traditional claims resolution process.

114.    Indeed, the relief will assist the Debtor in its efforts to formulate a consensual and feasible chapter 11 plan of liquidation for the benefit of all stakeholders, by, among other things, preserving valuable and limited assets of the Debtor's estate for the estate and for Arch.

115.    Money damages are not sufficient to protect against the potential loss of the Debtor's ability to resolve the myriad issues between the Debtor and the NWR Entities, which

would significantly and directly impact the Chapter 11 Case, or to create a source of recovery for the estate and Arch, who could otherwise recover significantly less on account of the Lien Discharge Bonds.

116.    The public interest is served by transferring and attaching the Lien Discharge Bonds to the Escrowed Settlement Proceeds, allowing a settlement to be approved, and hopefully to allow a plan to be confirmed in this Chapter 11 Case.

117.    The Court, by transferring and attaching the Lien Discharge Bonds to the Escrowed Settlement Proceeds, will preserve for Arch an avenue for recovery on the Lien Discharge Bonds as part of a global resolution of the disputes related to the the Ironside Project, the Columbia Street Extension, and the 3rd Floor Office Fit Out.

## COUNT III

### Objection to Nature, Extent and Validity of Alleged Liens of Lien Claimants Pursuant to 11 U.S.C. §§ 506(d), 544 and 550

118.    The Debtor repeats and realleges the allegations set forth above as if fully set forth herein.

119.    Upon information and belief, the Lien Claimants have asserted that they hold perfected construction liens against the Ironside Project, the Columbia Street Extension, the 3rd Floor Office Fit Out, and/or property of the estate related to the Ironside Project, the Columbia Street Extension, the 3rd Floor Office Fit Out.

120.    The Lien Claimants have failed to produce adequate evidence to establish that their alleged liens against the Ironside Project, the Columbia Street Extension, the 3rd Floor Office Fit Out, and/or property of the estate related to the Ironside Project, the Columbia Street Extension, the 3rd Floor Office Fit Out are perfected in accordance with applicable law.

121.     The Lien Claimants' respective asserted liens related to the Ironside Project, the Columbia Street Extension, and the 3rd Floor Office Fit Out, which are subject to complex construction lien law issues, are substantively and/or procedurally deficient under the New Jersey Construction Lien Law.

122.     Accordingly, the Debtor seeks a determination as to the nature, extent and validity of Lien Claimants' alleged liens related to the Ironside Project, the Columbia Street Extension, and the 3rd Floor Office Fit Out.

## COUNT IV

**Channeling Injunction Against Quantum Meruit Claimants Under 11 U.S.C. § 105(a)**

123.     The Debtor repeats and realleges the allegations set forth above as if fully set forth herein.

124.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue any order that is "necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

125.     The Debtor seeks a channeling injunction directing that to the extent any of the Quantum Meruit Claimants are entitled to a recovery on any of their claims, such recovery shall be solely from the Escrowed Settlement Proceeds.

126.     The Debtor will suffer irreparable harm if the channeling injunction does not issue.

127.     Specifically, denying the request for a channeling injunction would result in the loss of the Debtor's opportunity for a global resolution of the myriad issues between the Debtor and the NWR Entities.

128.    Issuing the channeling injunction under 11 U.S.C. § 105(a) as contemplated in the Proposed Settlement is necessary to give effect to the Proposed Settlement and the releases between the Debtor and the NWR Entities.

129.    Without the protection of the channeling injunction, the NWR Entities may, notwithstanding the releases and payment of the Escrowed Settlement Proceeds, be unfairly subject to claims against the Ironside Property, the Columbia Street Extension, the 3rd Floor Office Fit Out, or the NWR Entities directly.  Further, without the issuance of a channeling injunction, the NWR Entities will not pay the settlement funds to the estate.

130.    The channeling injunction is a necessary prerequisite for the NWR Entities' agreement to the terms and conditions of the Proposed Settlement, and the NWR Entities will not consummate the Proposed Settlement in the absence of such an injunction from this Court.

131.    Conversely, the Quantum Meruit Claimants will not suffer irreparable harm if the relief requested herein is granted.  Indeed, the Quantum Meruit Claimants will benefit from participating in the proposed claims resolution protocol, as they could realize a prompt recovery on their good claims without waiting months or possibly years for their claims to be established by litigation or the traditional claims resolution process.

132.    Indeed, the relief fosters the Debtor's efforts to formulate of a consensual and feasible chapter 11 plan of liquidation for the benefit of all stakeholders by preserving valuable and limited assets of the Debtor's estate for the estate and for the Quantum Meruit Claimants.

133.    Money damages are not sufficient to protect against the potential loss of the Debtor's ability to resolve the myriad issues between the Debtor and the NWR Entities, which would significantly and directly impact the Chapter 11 Case, and create a source of recovery for

the estate and the Quantum Meruit Claimants, who might otherwise recover nothing on account of their claims.

134.    The public interest is served by the issuance of a channeling injunction, allowing a settlement to be approved, and hopefully to allow a plan to be confirmed in this Chapter 11 Case.

135.    The Court, by imposing the channeling injunction, preserves for the Quantum Meruit Claimants an avenue for recovery on their claims.  By directing the Quantum Meruit Claimants to pursue their claims related to the Ironside Project, the Columbia Street Extension and the 3rd Floor Office Fit Out from the Escrowed Settlement Proceeds, each Quantum Meruit Claimant has a fair and equitable opportunity for recovery on its valid claims as among its similarly-situated creditors.

## COUNT V

**Disallowance of Claims of Quantum Meruit Claimants Under 11 U.S.C. § 502**

136.    The Debtor repeats and realleges the foregoing allegations as if set forth at length herein.

137.    Upon information and belief, the Quantum Meruit Claimants' filed proofs of claim lack sufficient information or documentation to establish the *prima facie* validity of the claims and are not supported by or consistent with the Debtor's books and records.

138.    If these claims are not disallowed and expunged, the Quantum Meruit Claimants could receive recoveries to which they are not entitled, to the detriment of other stakeholders.

139.    Disallowance and expungement of such claims is necessary to prevent any inappropriate distribution of estate funds and to facilitate the administration of the claims allowance process.

140.    Pursuant to 11 U.S.C. § 502(d), the Quantum Meruit Claimants' claims against the Debtor and its estate and/or any property of the estate related to the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out must be disallowed in their entirety and expunged.

**WHEREFORE**, the Debtor requests that this Court enter a judgment in favor of the Debtor and against the Defendants:

(a)    Declaring that any valid and perfected liens against the Ironside Property, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out shall be transferred and attach to, and be paid solely from, the Escrowed Settlement Proceeds;

(b)    Declaring that the Lien Discharge Bonds shall be transferred and attach to, and be paid solely from, the Escrowed Settlement Proceeds;

(c)    Directing the Lien Claimants to prove the validity and extent of their alleged liens against the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out, or on property of the estate related to the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out;

(d)    Determining that the Lien Claimants do not have valid and perfected liens on the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out, or on property of the estate related to the Ironside Property, the Columbia Street Extension and/or the 3rd Floor Office Fit Out;

(e)    Directing that any alleged lien that was not duly perfected as of the Petition Date or which is voidable under applicable law be declared null and void and/or avoided;

(f)     Imposing a channeling injunction directing that to the extent any of the Quantum Meruit Claimants are entitled to a recovery on any of their claims, such recovery shall be solely from the Escrowed Settlement Proceeds.

(g)     Declaring in the alternative that the Quantum Meruit Claimants' claims are disallowed in their entirety and expunged;

(h)     Entering an Order to Show Cause in the form attached hereto; and

(i)     Granting the Debtor such other and further relief as the Court deems just and equitable.

Dated:  July 6, 2020                    **LOWENSTEIN SANDLER LLP**

                                        <u>*/s/ Kenneth A. Rosen*</u>
                                        Kenneth A. Rosen, Esq.
                                        Joseph J. DiPasquale, Esq.
                                        Arielle B. Adler, Esq.
                                        One Lowenstein Drive
                                        Roseland, New Jersey 07068
                                        (973) 597-2500 (Telephone)
                                        (973) 597-2400 (Facsimile)
                                        krosen@lowenstein.com
                                        jdipasquale@lowenstein.com
                                        aadler@lowenstein.com

                                        *Counsel to the Debtor and Debtor-in-Possession*

## <u>VERIFICATION</u>

I, Michael Ochs, of full age, certify:

I am in-house counsel for Hollister Construction Services, LLC. I have read the Complaint and certify that the factual allegations contained in the Complaint are true to the best of my knowledge and belief.

I certify that the foregoing statements made by me are true. I am aware that if any are willfully false, I am subject to punishment.

_____
Michael Ochs

Dated: July 6, 2020