**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

FILED
JEANNE A. NAUGHTON, CLERK

JUL 1 6 2020

U.S. BANKRUPTCY COURT
TRENTON, NJ
BY _____ DEPUTY

Gregg A. Ilardi, Esq.
The Law Offices of Greg A. Ilardi LLC
174 Delawanna Avenue
Clifton, NJ 07014
Phone: 973-507-7822 – Fax: 973-883-8816
gilardi@ilardilaw.com
Attorney for Creditor, Latz, Inc.

| | |
|---|---|
| HOLLISTER CONSTRUCTION SERVICES, LLC,<br><br>*Debtor in Possession* | Chapter 11<br>Case #19-27439<br><br>Notice of Motion to Modify Automatic<br>Stay of Proceedings<br><br>Judge: Michael B. Kaplan |

**Notice of Motion to Modify Automatic Stay of Proceedings**

Gregg A. Ilardi, Esq. attorney for Latz Inc., Creditor in Possession in the above captioned

proceeding, Hollister Construction Services, LLC has filed a Motion to Modify the automatic

stay of all proceedings relating to the above-captioned Debtor pursuant to 11 U.S.C. 362(d).

**Your Rights May Be Affected. You should read these papers carefully and discuss**

**them with your attorney, if you have one, in this bankruptcy case. (If you do not have an**

**attorney, you may wish to consult one).**

If you do not want the Court to grant this Motion, of if you want the Court to consider your

reviews, you or your attorney must file with the Clerk at the address listed below, a written

response explaining your position no later than seven (7) days prior to the hearing date.

Hearing Date: July 30, 2020

Hearing Time: 10:00 a.m.

<u>Hearing Location:</u>        Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, NJ 08608
Phone: 609-858-9333

<u>Courtroom No.</u>          8

If you mail your response to the Clerk for filing, you must mail it early enough so the

Court will receive it on or before seven (7) days prior to the hearing date.

You must also mail your response to:

**Mary E. Seymour, Esq.**
**Lowenstein, Sandler, LLP**
**1 Lowenstein Drive**
**Roseland, NJ 07068**
**mseymour@lowenstein.com**
**Attorney for Debtor in Possession, Hollister Construction Services, LLC**

If you or your attorney do not take the steps outlined above, the Court may decide that

you do not oppose the relief sought in the Motion and may enter an Order granting that relief.

_____
Gregg A. Ilardi, Esq.
Law Offices of Gregg A. Ilardi LLC
Attorneys for Creditor
Latz Inc.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

FILED

JEANNE A. NAUGHTON, CLERK

**JUL 16 2020**

U.S. BANKRUPTCY COURT
TRENTON, NJ

BY _____ DEPUTY

Gregg A. Ilardi, Esq.
The Law Offices of Gregg A. Ilardi LLC
174 Delawanna Avenue
Clifton, NJ 07014
Phone: 973-507-7822 – Fax: 973-883-8816
gilardi@ilardilaw.com
Attorney for Creditor, Latz, Inc.

| | |
|---|---|
| HOLLISTER CONSTRUCTION SERVICES, LLC, <br><br> *Debtor in Possession* | Chapter 11 <br> Case #19-27439 <br><br> Certification of Gregg A. Ilardi, Esq. |

Gregg A. Ilardi, Esq., of full age, hereby certifies as follows:

1.      Creditor, Latz Inc., ("Latz"), is a New Jersey corporation registered to do business in the State of New Jersey. Latz is headquartered at 65 Piermont Road, Tenafly, New Jersey.

2.      Upon information and belief, Meridia Transit Plaza Urban Renewal Dover, LLC ("Meridia") is a New Jersey Limited Liability Company that maintains its principal place of business at 201 South Wood Avenue, Linden, New Jersey.

3.      Meridia is the fee simple owner of the property located at 1 West Dickerson Street, Dover, New Jersey, designated as Block 1216, Lot 3; Block 1217, Lot 3.01; Block 1217, Lot 9; Block 1217, Lot 20 on the Tax Map of the Township of Dover (the "Property"). The Property is located in Morris County, New Jersey.

1

4.      Meridia engaged a general contractor, Hollister Construction Services, LLC, ("Hollister") a New Jersey limited liability company that maintains its principal place of business at 339 Jefferson Road, Parsippany, New Jersey to develop the Property. Meridia and Hollister executed a written agreement wherein Hollister agreed to perform certain work and services in furtherance of a construction project on the property. (the "Project").

5.      On or about August 24, 2017, Latz and Hollister executed a written subcontract (the "Subcontract"), wherein Latz agreed to perform certain work in connection with the Project. (See Exhibit A).

6.      At all relevant times, Latz fully and faithfully performed its obligations in connection with the Project under the Subcontract.

7.      Latz, in reliance upon Hollister's promise to be bound, ordered materials and commenced performance of the work required under the Contract.

8.      Despite Latz's successful and professional work on the Project, on or about September 16, 2018, Latz was terminated "without cause" by Defendant Meridia. Hollister was also terminated by Meridia "without cause".

9.      As of its last day of work, Latz was owed, and continues to be owed, the sum of $1,046,460.23 for labor, material, work and services provided in connection with the Project and pursuant to the Subcontract.

10.     It is undisputed that Latz is due at least the sum of $1,046,460.23 for labor, material, work and services provided to complete the Project.

11.     Hollister has agreed that this amount was properly billed and the work billed for was completed by Latz, in connection with the Project and pursuant to the Subcontract.

2

12.    Latz is also owed substantial sums for the demobilization of its work on the Project, for the lost opportunity to complete its work on the Project and for the damages sustained by the billable time lost by Latz.

13.    The date of the provision of the last work, services, material or equipment for which Latz claims payment is September 6, 2018.

14.    On or about September 17, 2018, within ninety days from its last date of work, Latz caused the filing of a Construction Lien with the Morris County Clerk in the principal sum of $1,046,460.23, against the interests of Meridia (the "Lien Claim").

15.    Latz duly and timely served the Lien Claim as required by the Construction Lien Law, N.J.S.A. 2A:44A-1, et seq.

16.    The Morris County Clerk recorded the Lien Claim as of September 17, 2018 in Book 23417, Page 1896, and assigned the Lien Claim instruction number 2018052907. (A true copy of the recorded Lien Claim is annexed hereto as Exhibit B).

17.    All statutory and/or contractual conditions precedent to Latz's claim herein have been satisfied.

18.    On or about October 10, 2018, Hollister filed a Complaint in Superior Court, Morris County, against Defendant Meridia seeking payment for amounts owed to Hollister, and its subcontractors, for work completed on the Project. This matter was filed under Docket Number MRS-L-653-19 (the "Initial Litigation").

3

19.     On January 8, 2019, Meridia caused to be filed, via the United States Surety Company (USSC), a Discharge of Mechanic's Lien Bond, bearing bond number 100423143 ("Bond"). To date, no money has been paid to Latz, despite the presence of the Bond.

20.     Latz filed a Cross-Claim against USSC in the Initial Litigation seeking $1,046,460.23.

21.     By Order of the Honorable William J. McGovern dated July 31, 2019, the Initial Litigation was stayed, pending the conclusion of the arbitration titled Hollister Construction Services, LLC v. Meridia Transit Plaza Urban Renewal Dover, LLC, and bearing AAA Case No.: 01-19-0000-7675 ("the AAA Arbitration"). This arbitration was required under the Contract between Hollister and Meridia.

22.     In the AAA Arbitration, Hollister stipulated that Latz is due the sum of $1,046.460.23, as set forth in the Construction Lien Claim Latz recorded with the Morris County Clerk, in book 23417, page 1896.

23.     Pursuant to that stipulation, however, the amount due to Latz was subject to reduction only if the arbitrator specifically found that one or more specious counterclaims alleged by Defendant Meridia were proven.

24.     On September 11, 2019, Hollister filed a Petition for bankruptcy protection under Chapter 11, Title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey, Case No. 19-27439 (MBI) ("the Bankruptcy Action").

25.     Hollister's counsel in the Bankruptcy Action initially agreed to allow the AAA Arbitration to proceed solely against Defendant Meridia and Defendant USSC. A discovery schedule was agreed upon, and some initial discovery was exchanged.

4

26.    Thereafter, in January 2020, Hollister's counsel in the Bankruptcy action reversed itself and, despite its previous position, refused to agree to sign a Consent Order in the Bankruptcy Action allowing the AAA Arbitration to proceed.

27.    Despite the requirement to resolve the amount owed to Latz by posting a bond, neither Meridia nor USSC has made payment, nor offered any amount to resolve the dispute with Latz.

28.    The AAA Arbitration and the Initial Litigation have both been stayed pending the outcome of the Bankruptcy Action.

29.    Meridia, as the fee simple owner of the Property, has benefited from the services and materials performed and furnished by Latz to improve the Property in accordance with the Subcontract.

30.    Despite Latz's proper performance under the Subcontract, there remains due and owing from Meridia and Hollister to Latz, the balance of not less than $1,046,460.23 for work performed on the Project and pursuant to the Subcontract.

31.    This lien was bonded by USSC on or about January 8, 2019. Despite this bonding, no contact has been made to resolve the amount owed to Latz.

32.    There are no just set-offs or credits to Hollister against the sum currently due and owing.

33.    This amount has been demanded by Latz, and Meridia has, without justification or excuse, refused and continues to refuse to tender monies rightfully due.

5

34.    Under these circumstances, Meridia's  acceptance and retention of such benefit without payment of the fair market value for materials furnished and services rendered would be unjust and inequitable.

35.    Latz now makes an application for cause to this court for a modification of the stay of all proceedings to permit it to proceed with its claims against Meridia as a non-debtor with respect to the above-captioned proceeding.

I certify under the penalty of perjury that the above is true and accurate and that the documents annexed to the Certification are true and accurate copies of those contained in my casefile.

_____
Gregg A. Ilardi, Esq.

DATED:  July 13, 2020

6

# Exhibit A

HOLLISTER
CONSTRUCTION
SERVICES

Building Sound Relationships Structures

**Contract**
## SC-16258-001

Hollister Construction Services
339 Jefferson Road
Parsippany, New Jersey 07054
Phone: (201) 393-7500
Fax: (201) 393-8907

Project: 16-258 - Meridia Transit Plaza Dover
South Warren Street & Dickerson Street
Dover, New Jersey 07801
Phone: 201-393-7500
Fax: 201-393-8907

## Sitework Package

| | | | |
|---|---|---|---|
| DATE CREATED: | 07/27/2017 | | |
| CONTRACT COMPANY: | Latz Inc<br>65 Piermont Road<br>Tenafly, New Jersey 07670<br>Phone: (201) 871-9255 | CREATED BY: | Wesley Walwyn (Hollister Construction Services)<br>339 Jefferson Road<br>Parsippany, New Jersey 07054 |
| CONTRACT STATUS: | Out For Signature | EXECUTED: | No |
| START DATE: | 08/15/ 2017 | ESTIMATED COMPLETION DATE: | 11/01/ 2017 |
| SIGNED CONTRACT RECEIVED DATE: | | ACTUAL COMPLETION DATE: | |
| DEFAULT RETAINAGE: | 10.0% | | |

DESCRIPTION:

This Subcontractor shall furnish all necessary labor, material and equipment required to complete all work in accordance with the Project Drawings, Specifications and as noted herein.

ATTACHMENTS:

Hollister - Meridia - Unit Pricing Revised 6.29.2017.pdf   Hollister - Meridia - Additional Unit Pricing 7.7.2017.pdf

| # | COST CODE | DESCRIPTION | TYPE | AMOUNT |
|---|---|---|---|---|
| 1 | 02-02-001 - Sitework - 01 | Shop Drawings and Submittals | SUBCONTRACT | $ 15,000.00 |
| 2 | 02-02-001 - Sitework - 01 | Site Demolition | SUBCONTRACT | $ 150,000.00 |
| 3 | 02-02-001 - Sitework - 01 | Site Excavation | SUBCONTRACT | $ 280,000.00 |
| 4 | 02-02-001 - Sitework - 01 | Building Excavation | SUBCONTRACT | $ 620,000.00 |
| 5 | 02-02-001 - Sitework - 01 | Asphalt Paving | SUBCONTRACT | $ 60,000.00 |
| 6 | 02-02-001 - Sitework - 01 | Curbs | SUBCONTRACT | $ 41,720.00 |
| 7 | 02-02-001 - Sitework - 01 | Sidewalks, ramps, pads and aprons | SUBCONTRACT | $ 115,280.00 |
| 8 | 02-02-001 - Sitework - 01 | Sanitary Sewer System | SUBCONTRACT | $ 40,000.00 |
| 9 | 02-02-001 - Sitework - 01 | Storm Sewer System Drainage | SUBCONTRACT | $ 75,000.00 |
| 10 | 02-02-001 - Sitework - 01 | F/I new Domestic water service 5' from building | SUBCONTRACT | $ 40,000.00 |
| 11 | 02-02-001 - Sitework - 01 | Alternate No.2 Provide water main relocation | SUBCONTRACT | $ 235,000.00 |
| | | | Grand Total: | $ 1,672,000.00 |

## ARTICLE I SCOPE OF WORK

HOLLISTER
CONSTRUCTION
SERVICES
Building Sound Relationships. Structures

Contract
SC-16258-001

The Subcontractor shall furnish all of the materials, tools, methods, labor, equipment, plant, services, transportation, power, fuel, water, supervision, field and office engineering, drawings, permits and such other items and facilities of every kind required to perform the following work (the "Scope of Work") set forth in this Article I as follows:

### Inclusions
### ARTICLE I SCOPE OF WORK

### Sitework
This written scope of work is provided to identify and clarify the major items of work, but it is not intended to list every item required to complete this work.  Therefore, this scope of work shall include, but is in no way limited to, the following:

This contract shall include pricing based on drawings and specifications:

### 1.0 Site Demolition

1. Provide all required clearing and grubbing of the site
2. Remove and dispose of all individual trees and root systems marked for removal
3. Remove and dispose of all asphalt pavement throughout the site as required
4. Remove and dispose of all fencing where indicated
5. Remove and dispose of all concrete walks with saw cuts of existing to the next joint where indicated
6. Remove and dispose of all concrete curb with saw cuts of existing where indicated
7. Remove and dispose of inlets where indicated
8. Remove and dispose of manholes where indicated
9. Remove and dispose of existing light poles where indicated
10. Remove and dispose of existing railroad tie wall where indicated
11. Remove and dispose of masonry wall and associated foundation and footings and sawcut at property line where indicated and as specified. Remaining portion of the wall to be protected and supported during construction
12. Remove and dispose of existing bollards where indicated
13. Remove and salvage public parking kiosk where indicated
14. Remove and salvage FedEx box where indicated
15. Cut, cap, and remove existing water main where indicated and as specified. Work to be done prior to sitework as specified.
16. Cut and remove existing fire hydrant and associated water service where indicated
17. Cut, cap, and remove existing sewer main where indicated
18. Cut, cap, and remove existing gas service piping where indicated
19. Remove of all impacted utilities shall be coordinated with utility companies
20. All utility relocations for adjacent properties shall be coordinated with property owner and completed prior to disconnects
21. Provide all traffic control as required for demolition. Include all fees from local police departments.
22. Include protection of all surrounding retaining walls, fencing, water mains, hydrants, storm sewers, meters, buildings, structures, and roadways during demolition.
23. Survey existing concrete sidewalks for damage prior to commencement and protect the sidewalks from damage performance of work
24. Subcontractor must maintain streets and sidewalks adjacent to site in clean condition. This Subcontractor shall ensure that pedestrians and vehicular traffic are isolated from the work area. This Subcontractor shall provide and assume all costs associated with lane, road and sidewalk closures, permitting, police, pedestrian and traffic control, including all traffic protection, barriers, signage, flagmen and / or police and permitting necessary for the entire scope of work, as required to conduct their operations and receive deliveries.
25. Includes all mobilization and demobilization charges.
26. Includes all site demolition. Including but not limited to railroad tracks / ties, site concrete and misc. debris piles.

### 2.0 Soil Erosion Control

1. Furnish, install, and maintain all required silt fence
2. Furnish, install, and maintain required stabilized construction entrance. The tracking pad shall be maintained in a condition, which will prevent tracking of sediment onto public rights-of-way or streets
3. Furnish, install, and maintain all required inlet filters



Contract
SC-16258-001

4. Include periodically cleaning of erosion measures as mandated by the city
5. Furnish, install and maintain all Soil Erosion Control. Includes all monitoring, inspections, documentation, certifications etc....as required by plans, specifications, local authorities having jurisdiction and State requirements.

## 3.0 Earthwork

1. Strip existing topsoil to onsite stockpile location
2. Provide all required onsite cut to fills
3. Provide all required rough grading of the site
4. Provide fine grading and rolling, specified compaction at building pad
5. Provide all compaction and rolling at asphalt paving areas
6. Provide all compaction at concrete pads, ramps, stairs, sidewalks, and aprons
7. Provide fine grading at landscape areas
8. Provide fine grading at asphalt pavement areas
9. Re-spread cleaned topsoil from onsite stockpile to the planting beds
10. Export and dispose of excess topsoil
11. Import and place any required clean topsoil to meet depths shown on plans.

## 4.0 Building Excavation

1. Provide mass excavation and export of all material for the installation of the basement to a subsurface level as specified
2. Provide and install all osha excavation stepping and shoring as required per OSHA standards and regulations
3. Where structures are to be built on fill shall be stripped to such depth as necessary to remove turf, roots, organic matter and other objectionable materials
4. Furnish and install a complete site work package, inclusive of all earthwork, import/export (clean only), utilities, site concrete, paving striping and signage per plans and specifications.
5. Furnish and install all onsite paving, sub base, striping and signage and concrete wheel stops including within garage areas per plans and specification and local authority having jurisdiction
6. Coordinate with SOE subcontractor sequence of excavation and depth of excavation
7. Provide suitable lay-down area for both SOE for staging their equipment and installing their systems

## 5.0 Asphalt Pavement

1. Mill and resurface existing asphalt pavement at West Dickerson Street to limit of disturbance as indicated
2. Sawcut, remove, and dispose of existing roadway pavement and patch as specified where indicated along new curbing
3. Provide all traffic control during roadway paving. Include all fees from local police departments.
4. Asphalt index is locked in
5. Furnish and install all base and top coat paving associated with offsite NJDOT per plans and specifications and local authority having jurisdiction
6. Furnish and install all onsite paving, sub base, striping and signage and concrete wheel stops including within garage areas per plans and specification and local authority having jurisdiction
7. The contractor shall arrange his/her paving to provide hot joints wherever possible. Where it is necessary to leave a cold joint, the edge will be squared vertically and horizontally and compacted
8. Milling of the old asphalt roadway at hard surfaced driveways may be necessary to accommodate a smooth transition with the new pavement
9. Roll existing sub grade materials to achieve maximum density
10. Roll surface coarse to achieve a true and firm finish matching existing grade
11. Make sure all areas are leveled
12. Submittal after Award: Provide prime coat, tack coat, asphalt paving mix, and new base material

## 6.0 Curbing

1. Furnish and install cast in place depressed and concrete curbing at all areas indicated within the site. Work includes sealants, coatings, and neoprene fillers at all joint types as indicated.



HOLLISTER
CONSTRUCTION
SERVICES

Building Sound Relationships Structures

Contract
SC-16258-001

2. Furnish and install standard and sloped granite curbs where indicated on the site. Work includes sealants, coatings, and neoprene fillers at all joint types as indicated.

## 7.0 Sidewalks, Pads and Aprons

1. Furnish and install cast-in-place concrete sidewalks, stairs, ramps, and driveway aprons throughout the site as indicated. Includes compacted stone base, welded wire mesh, and expansion joint filler as required.
2. Furnish and install paver sidewalks and crosswalks as indicated. Includes compacted stone base.
3. Work of this scope includes all ADA aprons and tapered walkway ramps as indicated.
4. Provide and install all truncated dome warning surface at concrete walkway aprons and curb ramps under the scope of this work.
5. Furnish and install cast-in-place concrete utility pads where indicated. Includes compacted stone base and welded wire mesh as required.

## 8.0 Pavers

1. Furnish and install paver plaza with associated subbase where indicated where indicated and as specified
2. Paver shall be laid on compacted bedding sand and shall be placed so that units are not in direct contact with each other
3. All brick paver patterns shall confirm to the contract drawings. Prior to installation or proceeding with said work subcontractor shall provide a mockup for Owner and Architect's approval.
4. This work is to be inclusive proposed speed table and subbase

## 9.0 Finish

1. The completed pavement surface shall satisfy the following criteria prior to acceptance:
2. The complete pavement surface shall be constructed in accordance with design profiles and shall drain freely;
3. The pavers shall not be cracked, damaged or distorted;
4. The surface texture shall be uniform and be free from abrasion or wear and the color of the pavement shall be uniform and any color variations in batches of pavers shall be eliminated by batch mixing to produce a uniform color grade

## 10.0 Striping, Signage, and Specialties

1. Furnish and install all proposed striping at parking lot, road, and crosswalks where indicated, as specified, and as required.
2. Furnish and install required regulatory signage with u-channel sign posts. Sign posts in paved areas shall be set in 12" diameter concrete footing.

## 11.0 Water Distribution

1. Provide all trenching and excavation to facilitate the installation of all domestic and fire water service piping under the scope of this work.
2. Furnish and install new domestic water service to 5' outside of building.
3. Cut, cap, and modify existing domestic water service where indicated and as specified
4. Furnish and install 6" DIP fire water service to 5' outside of building.
5. Furnish and install new fire hydrants with all associated accessories where indicted and as specified
6. Furnish and install all gate valves, boxes, blocks, etc. as required and where indicated
7. Furnish and install stone bedding.
8. Furnish and install select back fill with select material.
9. Export all trench spoils to offsite disposal.
10. Furnish and install required wet taps.
11. Furnish and install required thrust blocks.
12. Provide required testing.
13. Furnish proper utility crossing installations as required and specified
14. Provide all traffic control during water connections in the street. Include all fees from local police departments.
15. Provide test pits as required to locate existing utilities prior to installation of new services



Contract
SC-16258-001

16. Furnish and supply underground fire main per codes and regulations code with local entity having jurisdiction. Not limited to conforming to NFPA 13, and NJDOT, ANSI, ASME standards.
17. Temp water service – permit, set up, maintain, man and dismantle.
18. Onsite water mains and feeds to buildings etc....
19. Furnish and install Fire hydrants
20. Wet tap, backflow, meters and all that is called for on plans and specifications concerning water service.

## 12.0 Storm Sewer System Drainage

1. Furnish and install all 8" & 12" PVC SDR-35 drainage piping in accordance with the plans and specifications where indicated with connection to existing manhole and proposed invert
2. Furnish and install all 12" & 15" RCP roof drainage piping in accordance with the plans and specifications where indicated with connection to existing manhole or inlet and proposed inverts
3. Furnish and install all required cleanouts.
4. Provide connection to existing city system as required
5. Furnish and install all new inlets where indicated and as specified
6. Furnish and replace existing inlets with where indicated
7. Furnish and install doghouse manhole with all associated accessories where indicated and as specified
8. Furnish and install all storm structure casting, ladders, and specialties.
9. Furnish and install stone bedding.
10. Furnish and install select backfill with select material.
11. Export all trench spoils to offsite disposal.
12. Provide all traffic control during storm system installations at the street. Include all fees from local police departments.

## 13.0 Sanitary Sewer System

1. Furnish and install 8" SDR-35 PVC sanitary sewer piping to 5' outside of building.
2. Furnish and install all required cleanouts.
3. Provide connection to existing city sanitary sewer.
4. Furnish and install stone bedding.
5. Furnish and install select back fill with select material.
6. Export all trench spoils to offsite disposal.
7. Furnish proper utility crossing installations as required and specified
8. Provide all traffic control during sanitary connections in the street. Include all fees from local police departments.
9. Provide test pits as required to locate existing utilities prior to installation of new services
10. All pipe bedding per plans and specifications, utility requirements and local authority having jurisdiction
11. Complete site sanitary system
12. Manholes, structures, cleanouts, gaskets, boots, tie-ins, castings, etc... Any associated concrete work
13. Acknowledge and includes all notes on plans and requirements per specifications
14. Permitting, testing, inspections, sign offs, etc.....

## 14.0 Utilities

1. Provide all trenching, excavation, and back fill to facilitate the installation of all electrical site lighting conduit, electrical service conduit, telecommunication conduit, and associated structures furnished and installed by the electrical contractor.
2. Furnish and install cast in place site pole bases as required.
3. Provide all trenching, excavation, and back fill to facilitate the installation of all gas piping
4. Wherever excavation for a foundation extends below the water table or where
5. specifically indicated on the plans, a 12-inch layer (unless otherwise noted) of crushed stone or gravel shall be spread and compacted in the excavation bottom prior to placing the foundation.
6. An adequate dewatering system shall be provided at all structure excavations and elsewhere as directed by the ENGINEER. The system shall be capable of removing any water that accumulates in the excavation and maintaining the excavation in a dry condition while construction is in progress
7. Debris encountered in trench excavation for water and other pipelines shall be removed for the overall width of the trench.



Contract
SC-16258-001

8.  Trenches shall be kept free of water during pipe installation. Water shall be removed from trenches and disposed of by the CONTRACTOR to the satisfaction of the ENGINEER
9.  Furnish and install all site electric excavation and back fill including but not limited to telephone and cable conduit, primary and secondary electric conduit, security and access control conduits, site lighting conduits and pole bases, etc.... as per plans and specifications, local utility company and local authority having jurisdiction

## 15.0 Site Specialties

1.  Provide and install bicycle racks where indicated and as specified
2.  Provide and install trash receptacles where indicated and as specified
3.  Provide and install benches where indicated and as specified
4.  Provide and install planters where indicated and as specified
5.  Provide and install concrete parking wheel stops where indicated and as specified
6.  Provide and install bollards where indicated and as specified
7.  Provide and install 4'x4' cast iron tree grates with associated accessories where indicated and as specified

## General Notes

1.  This Subcontractor shall be responsible for the clean-up of all debris resulting from this scope of work. All debris and rubbish shall be placed in dumpsters, provided by others. All work areas shall be kept clean on a daily basis. All excess material shall be removed from the jobsite by this Subcontractor upon completion of the work. If it is determined that any Subcontractor is not complying with these clean-up requirements, Hollister Construction Services shall complete this work and back-charge all costs to the Subcontractor.
2.  This subcontractor shall supply all equipment as necessary to complete their scope of work inclusive of all cranes, lulls, scaffold, etc.
3.  This Subcontractor shall supply construction dumpsters and construction fencing at the discretion of the Construction Manager.
4.  This Subcontractor shall comply with all OSHA rules and regulations, in addition to the Hollister Construction Services safety plan requirements. This Subcontractor shall provide MSDS forms for materials when applicable, attend weekly safety meetings on-site, and employ competent personnel on site as required for the operation of all tools and equipment.
5.  This Subcontractor shall provide a one year guarantee on all work performed from the date of final completion and acceptance of the work.
6.  This Subcontractor shall agree to execute and use the standard Hollister Construction Services Subcontract Agreement, Application for Payment Form and Waiver of Lien forms. These forms are available for inspection upon request.
7.  This Subcontractor shall provide a Certificate of Insurance and maintain coverage throughout the duration of the work in accordance with the requirements of the Project Owner and Hollister Construction Services.

## ARTICLE II SCHEDULE

The Work to be performed under this Project Agreement shall conform to the following schedule, except as such schedule may be extended in writing by the Construction Manager, time being of the essence (on or before the following dates):

Start of Work: Mid - Late August
Completion of Work: 5 months of start date

## ARTICLE III SUBCONTRACT SUM

(3.1) The Contractor shall pay the Subcontractor in the current funds for performance of the Subcontract the Subcontract Sum of    ($1,437,000.00), subject to additions and deductions as provided in the Subcontract Documents.



Contract
SC-16258-001

{3.2} The Subcontract Sum is based upon the following alternates, if any, which are describe in the Subcontract Doucuments and have been accepted by the Owner and Contractor: Alternate Price No. 2: Provide allowance for water main relocation as per plans W1.0 and W2.0. Total Amount of Alternate No.2 **($235,000.00 )**

{3.3} Total amount of which sum includes all applicable Federal, State, and local taxes and fees.
**Total Contract Sum including Alternate (the "Contract Sum")$1,672,000.00.**

{3.4} Unit prices: See attached rate sheet for additional breakdown:

| ID# | Description | Unit of Measure | Price |
|---|---|---|---|
| 1 | Trash disposal - disposal | ton | $ 110.00 |
| 2 | Provide 3/4" clean stone (delivered) | ton | $ 32.00 |
| 3 | Provide mason sand (delivered) | ton | $ 40.00 |
| 4 | Provide pipe sand (delivered) | ton | $ 38.00 |
| 5 | Select back fill (delivered) | ton | $ 30.00 |
| 6 | R.C.P (delivered) | ton | $ 22.00 |
| 7 | 48,000 lb excavator w/6,500 lb hydraulic hammer | hr | $ 300.00 |
| 8 | 45,000 Lb bulldozer (D-6) | hr | $ 175.00 |
| 9 | Portable generator 10 kw including fuel | hr | $ 125.00 |
| 10 | Tri-axle truck with operator | hr | $ 110.00 |
| 11 | Asphalt disposal (disposal) | ton | $ 62.00 |
| 12 | 30 yd refuse box (5 ton) overage not to exceed $85.00 per ton | per | $ 750.00 |
| 13 | 20 yd refuse box (4 ton) overage not to exceed $85.00 per ton | per | $ 650.00 |
| 14 | Concrete disposal (disposal) | ton | $ 32.00 |
| 15 | Onsite screening/processing of debris mixed with soil | ton | $ 27.00 |
| 16 | Buried debris disposal (disposal) | ton | $ 38.00 |
| 17 | Mix debris disposal (concrete / asphalt/ trash/ wood )-(disposal) | ton | $ 150.00 |
| 18 | Rock excavation (disposal) | ton | $ 120.00 |
| 19 | Road plate rental 8'x 10' (per plate) | day | $ 100.00 |
| 20 | Dewatering - 3'pump | hr | $ 45.00 |
| 21 | Maintenance Crew - 3 men crew(landscape, trash clean-up, site maintenance) & tools | hr | $ 180.00 |
| 22 | Rock disposal | ton | $ 30.00 |

Contaminated Soil

| 1 | Waste classification will dictate the cost and location of the appropriate disposal facility | ton | $25 - $125 |
|---|---|---|---|
| 2 | Trucking rate ID depending on distance to disposal facility | ton | $ 10 - 30 |

Printed On: 08/23/2017 01:49 PM

HOLLISTER
CONSTRUCTION
SERVICES

Building Sound Relationships Structures

Contract
SC-16258-001

| 3 | Testing Average soil Analysis test | | hr | $ | 2,000-2,500 |
|---|---|---|---|---|---|
| 4 | Note: (1) test required for every 5,000 cyds of material disposed of: | | | | |
| | | | | | |

### ARTICLE IV Project Agreement

{4.1} This Project Agreement is subject to all terms and conditions of that certain Master Subcontract General Conditions Agreement dated 07/31/17 between Subcontractor and Construction Manager (the "Master Agreement") and together the Project Agreement and Master Agreement shall collectively be referred to as the "Subcontract". The signer agrees that he has read and understands all of the terms and conditions of this Project Agreement Capitalized terms not otherwise defined in this Project Agreement shall have the meaning set forth in the Master Agreement This Project Agreement and the Master Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which collectively shall constitute one and the same instrument representing the Agreement between the Construction Manager and Subcontractor hereto, and it shall not be necessary for the proof of this Agreement that any Party produce or account for more than one such counterpart. Any facsimile or signature by electronic mail of any Party or person on the signature pages hereto, or the signature pages of any other agreement or document contemplated hereby, received by any other person or Party shall constitute an original signature for all purposes. In the event of a conflict between this Project Agreement, the Master Agreement, or any of the other Contract Documents, the Project Agreement shall take precedence and control to the extent of such conflict The "Contract Documents" consist of this Project Agreement, the Master Agreement, the contract between the Owner and the Construction Manager (hereinafter the "Prime Contract"), all Exhibits attached hereto and enumerated herein, changes and addenda to this Project Agreement that supersedes all prior negotiations, representations or agreements, either written or oral; Conditions of the Subcontract, if any, , Plans, Specifications, Changes and Addenda to the Plans and Specifications, Change Orders made to this Project Agreement, and all such Contract Documents shall be attached hereto as Exhibit "A". The Subcontractor, by signing this Project Agreement, acknowledges that all of the above-referenced Contract Documents are part of this Project Agreement.

### Exclusions

- #### EXCLUSIONS

1. Building permit fees.
2. Furnishing of trash dumpster
3. Soils Testing
4. Winter Conditions

It is expressly understood that the Subcontractor assumes all obligations of the Construction Manager under the applicable Contract Documents as defined below, in relation to the Scope of Work, including but not limited to provisions concerning time of performance and shall execute all obligations under the Scope of Work so as not to delay completion of the project that relates to the Scope of Work. In no event shall the Subcontractor be entitled to greater rights, or remedies, then the Construction Manager actually secures from the Owner.

### ARTICLE II  SCHEDULE

The Work to be performed under this Project Agreement shall conform to the following schedule, except as such schedule may be extended in writing by the Construction Manager, time being of the essence (on or before the following dates):

Start of Work: 8/15/2017
Completion of Work: 11/1/2017

### ARTICLE III  THE CONTRACT SUM

Construction Manager will pay the Subcontractor for the performance of this Project Agreement, subject to additions and deductions as provided for herein, the sum of $1,672,000.00 (the "Contract Sum"), which sum includes all applicable Federal, State, and local taxes and fees. The Subcontractor is responsible for supplying Construction Manager with all documents as required in this Project Agreement (hereinafter the "Subcontractor Documents").

HOLLISTER
CONSTRUCTION
SERVICES

Building Sound Relationships Structures

Contract
SC-16258-001

This Project Agreement is subject to all terms and conditions of that certain Master Subcontract General Conditions Agreement dated 7/27/2017 between Subcontractor and Construction Manager (the "Master Agreement") and together the Project Agreement and Master Agreement shall collectively be referred to as the "Subcontract".    The signer agrees that he has read and understands all of the terms and conditions of this Project Agreement.  Capitalized terms not otherwise defined in this Project Agreement shall have the meaning set forth in the Master Agreement.  This Project Agreement and the Master Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which collectively shall constitute one and the same instrument representing the Agreement between the Construction Manager and Subcontractor hereto, and it shall not be necessary for the proof of this Agreement that any Party produce or account for more than one such counterpart.  Any facsimile or signature by electronic mail of any Party or person on the signature pages hereto, or the signature pages of any other agreement or document contemplated hereby, received by any other person or Party shall constitute an original signature for all purposes. In the event of a conflict between this Project Agreement, the Master Agreement, or any of the other Contract Documents, the Project Agreement shall take precedence and control to the extent of such conflict. The "Contract Documents" consist of this Project Agreement, the Master Agreement, the contract between the Owner and the Construction Manager (hereinafter the "Prime Contract"), all Exhibits attached hereto and enumerated herein, changes and addenda to this Project Agreement that supersedes all prior negotiations, representations or agreements, either written or oral; Conditions of the Subcontract, if any, , Plans, Specifications, Changes and Addenda to the Plans and Specifications, Change Orders made to this Project Agreement, and all such Contract Documents shall be attached hereto as Exhibit "A". The Subcontractor, by signing this Project Agreement, acknowledges that all of the above-referenced Contract Documents are part of this Project Agreement.

HOLLISTER
CONSTRUCTION
SERVICES

Building Sound Relationships Structures

Contract
SC-16258-001

DRAWINGS LIST:

Hollister Construction Services
339 Jefferson Road
Parsippany, New Jersey 07054

Latz Inc
65 Piermont Road
Tenafly, New Jersey 07670

_____        _____
SIGNATURE                          DATE

_____        _____
SIGNATURE                          DATE

# Exhibit B

Morris County Recording Cover Sheet

Honorable Ann F. Grossi, Esq.

Morris County Clerk

Official Use Only - Realty Transfer Fee

Official Use Only - Barcode

| Date of Document: | Type of Document: |
|---|---|
| 9/6/18 | Construction Lien |

| First Party Name: | Second Party Name: |
|---|---|
| Leetz Inc Glen Lata | Meridia Transit Plaza Urban Renewal Dwen LLC |

Additional Parties:

| THE FOLLOWING SECTION IS REQUIRED FOR DEEDS ONLY | |
|---|---|
| Block: | Lot: |

Municipality:

Consideration:

Mailing Address of Grantee:

| THE FOLLOWING SECTION IS FOR ORIGINAL MORTGAGE BOOK & PAGE INFORMATION FOR AN ASSIGNMENT, RELEASE, OR SATISFACTION OF A MORTGAGE OR AN AGREEMENT RESPECTING A MORTGAGE | |
|---|---|
| Original Book | Original Page |

MORRIS COUNTY RECORDING COVER SHEET
Please do not detach this page from the original document as it contains important recording information and is part of the permanent record.

WARNING: Information contained on this Recording Cover Sheet may conflict with the information within the original document and in no event will be recorded and retained.

1

*Construction Services*

**65 Piermont Road**
**Tenafly, New Jersey 07670**
Tel (201) 871-9255  Fax (201) 871-9331

*General Contractors*

CONSTRUCTION LIEN CLAIM

TO THE CLERK, COUNTY OF MORRIS:

In accordance with the "Construction Lien Law," P.L.1993, c.318 (C.2A:44A-1 et al.), notice is hereby given that:

1.     On **September 6, 2018**, I, Glen Latz, as an officer of the claimant known as Latz Inc., located at 65 Piermont Road, Tenafly, New Jersey, 07670, claim a construction lien against the real property of **Meridia Transit Plaza Urban Renewal Dover LLC**, in that certain tract or parcel of land and premises described as **Meridia Transit Plaza at Dover**, Dover, NJ 07801, Block 1216 Lot 3; Block 1217 Lot 3.01; Block 1217 Lot 9; Block 1217 Lot 20, on the tax map of the (municipality) of **Dover**, County of **Morris**, State of New Jersey, in the amount of $1,046,460.23, as calculated below for the value of the work, services, material or equipment provided.  The lien is claimed against the interest of the owner in accordance with section 3 of P.L.1993, c.318 (C.2A:44A-3).

2.     In accordance with a written contract for improvement of the above property, dated **August 15, 2017** with the property owner, named or known as **Meridia Transit Plaza Urban Renewal Dover LLC**, located at **201 South Wood Ave, Linden, NJ 07036** this claimant performed the following work or provided the following services, material or equipment:

a.     SITE WORK & NEW CONSTRUCTION OF APARTMENT COMPLEX

3.     The date of the provision of the last work, services, material or equipment for which payment is claimed is September 6, 2018.

4.     The amount due for work, services, material or equipment delivery provided by claimant in connection with the improvement of the real property, and upon which this lien claim is based, is calculated as follows:

A.     Initial Contract Price: $ __1,672,000__
B.     Executed Amendments to Contract Price/Change Orders: $ _798,618.75_
C.     Total Contract Price (A + B) = $ _2,470,618.75_
D.     If Contract Not Completed, Value Determined in Accordance with the Contract of Work Completed or Services, Material, Equipment Provided: _2,333,618.75_
E.     Total from C or D (whichever is applicable): $ _2,333,618.75_
F.     Agreed upon Credits: $ _0_
G.     Amount Paid to Date: $ _1,287,158.52_
TOTAL LIEN CLAIM AMOUNT  E - [F + G] = $ _1,046,460.23_

CLAIMANT'S REPRESENTATION AND VERIFICATION

Claimant represents and verifies under oath that:

1.      I have authority to file this claim.

2.      The claimant is entitled to the amount claimed at the date of lodging for record of the claim, pursuant to claimant's contract described above.

3.      The work, services, material or equipment for which this lien claim is filed was provided exclusively in connection with the improvement of the real property which is the subject of this claim.

4.      This claim form has been lodged for record with the County Clerk where the property is located within 90 or, if residential construction, 120 days from the last date upon which the work, services, material or equipment for which payment is claimed was provided.

5.      This claim form has been completed in its entirety to the best of my ability and I understand that if I do not complete this form in its entirety, the form may be deemed invalid by a court of law.

6.      This claim form will be served as required by statute upon the owner or community association, and upon the contractor or subcontractor against whom this claim has been asserted, if any.

7.      The foregoing statements made by me in this claim form are true, to the best of my knowledge. I am aware that if any of the foregoing statements made by me in this claim form are willfully false, this construction lien claim will be void and that I will be liable for damages to the owner or any other person injured as a consequence of the filing of this lien claim.

Name of Claimant: Latz Inc.
Signed: Glen Latz, C.O.O. _____

(Type or Print Name and Title)


STATE OF NEW JERSEY

COUNTY OF BERGEN              ss:


I certify that on ____Sept 6____, 2018, ____Glen Latz____ personally came before me and stated to my satisfaction that this person:

A.   Was the maker of this instrument; and
B.   Was authorized to and did execute this instrument as ____Pres.____ of Latz Inc., the entity named in this instrument;
C.   Executed this instrument as the act of the entity.


_____

(Print name and title below signature)

JACKIR AHMED
Notary Public – State of New Jersey
My Commission Expires Mar 27, 2023

NOTICE TO OWNER OF REAL PROPERTY

The owner's real estate may be subject to sale to satisfy the amount asserted by this claim. However, the owner's real estate cannot be sold until the facts and issues which form the basis of this claim are decided in a legal proceeding before a court of law.  The lien claimant is required by law to commence suit to enforce this claim.

The claimant filing this lien claim shall forfeit all rights to enforce the lien claim and shall be required to discharge the lien claim of record, if the claimant fails to bring an action in the Superior Court, in the county in which the real property is situated, to establish the lien claim:

1.     Within one year of the date of the last provision of work, services, material or equipment, payment for which the lien claim was filed; or

2.     Within 30 days following receipt of written notice, by personal service or certified mail, return receipt requested, from the owner or community association, contractor, or subcontractor against whom a lien claim is filed, as appropriate, requiring the claimant to commence an action to establish the lien claim.

You will be given proper notice of the proceeding and an opportunity to challenge this claim and set forth your position. If, after the owner (and/or contractor or subcontractor) has had the opportunity to challenge this lien claim, the court of law enters a judgment against any of you and in favor of the claimant filing this lien claim, and thereafter judgment is not paid, the owner's real estate may then be sold to satisfy the judgment. A judgment against a community association for a claim of work, services, material or equipment pursuant to a contract with that community association cannot be enforced by a sale of real estate.

The owner may choose to avoid subjecting the real estate to sale by the owner (or contractor) by either:

1. paying the claimant and obtaining a discharge of lien claim from the claimant, by which the owner will lose the right to challenge this lien claim in a legal proceeding before a court of law; or

2. causing the lien claim to be discharged by filing a surety bond or making a deposit of funds as provided for in section 31 of P.L.1993, c.318 (C.2A:44A-31), by which the owner will retain the right to challenge this lien claim in a legal proceeding before a court of law.

L.1993, c.318, s.8; amended 2010, c.119, s.5.

Please record & return to
Lidz Inc
65 Piermont Rd
Tenafly, NJ 07670

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

Gregg A. Ilardi, Esq.
The Law Offices of Greg A. Ilardi LLC
174 Delawanna Avenue
Clifton, NJ 07014
Phone: 973-507-7822 – Fax: 973-883-8816
gilardi@ilardilaw.com
Attorney for Creditor, Latz, Inc.

| | |
|---|---|
| HOLLISTER CONSTRUCTION SERVICES, LLC,<br><br>*Debtor in Possession* | Chapter 11<br>Case #19-27439<br>Judge: Michael B. Kaplan |

### Order Granting Modification of Automatic Stay of Proceedings

The Relief set forth on page numbered two (2) is hereby ***Ordered.***

The Court, having reviewed the Movant Latz Inc.'s Motion to Modify the Automatic Stay of Proceedings, as well as any related responses or objections, it is hereby on this _____ day of _____, 2020,

**ORDERED that:**

1.     The Automatic Stay in accordance with 11 U.S.C. 362(a) in the above-captioned matter, and reflected in the Order of this Court dated, September 20, 2019, is hereby modified to permit Movant, Latz Inc., to pursue any and all claims against Non-Debtor entity, Meridia Transit Plaza Urban Renewal Dover, LLC and United States Surety Company in any State or Federal Court of appropriate jurisdiction and that the 362 stay shall not be construed by any Court as a bar to such claims.

_____

Honorable Michael B. Kaplan
United States Bankruptcy Court
District of New Jersey

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

FILED
JEANNE A. NAUGHTON, CLERK

JUL 16 2020

U.S. BANKRUPTCY COURT
TRENTON, NJ
BY _____ DEPUTY

Gregg A. Ilardi, Esq.
The Law Offices of Greg A. Ilardi LLC
174 Delawanna Avenue
Clifton, NJ 07014
Phone: 973-507-7822 – Fax: 973-883-8816
gilardi@ilardilaw.com
Attorney for Creditor, Latz, Inc.

|  |  |
|---|---|
| HOLLISTER CONSTRUCTION SERVICES, LLC, <br><br> *Debtor in Possession* | Chapter 11 <br> Case #19-27439 <br> Judge: Michael B. Kaplan |

## CERTIFICATION IN PROOF OF SERVICE

1.      I, Gregg A. Ilardi, Esq., being of full age, do hereby certify and say:  I represent Creditor Latz Inc. in the above-captioned matter.

2.      On July 8, 2020, I sent via regular mail, a copy of the Notice of Motion to Modify Automatic Stay of Proceedings, Certification of Counsel, Statement as to Why No Brief is Necessary, and Proposed Form of Order to:

| | |
|---|---|
| Mary E. Seymour, Esq. <br> Lowenstein Sandler LLP <br> 1 Lowenstein Drive <br> Roseland, NJ  07068 <br> Attorney for Debtor in Possession, <br> *Hollister Construction Services, LLC* | Michael Cifelli, Esq. <br> Hardin, Kundla, McKeon & Poletto <br> 673 Morris Avenue <br> Springfield, NJ 07081 <br> Attorney for <br> *Meridia Transit Plaza Urban* <br> *Renewal Dover LLC and* <br> *United States Surety Company* |

3.      I further certify that on June 25, 2020, I forwarded to the Clerk's Office of the United States Bankruptcy Court for the District of New Jersey, the documents listed in Paragraph 2 of this Certification.

4.      I further certify that on July 8, 2020, I forwarded via regular mail, a courtesy copy

of the documents listed in Paragraph 2 of this Certification to the Chambers of Judge Michael B.

Kaplan sitting in the United States Bankruptcy Court, located at Clarkson S. Fisher U.S.

Courthouse, 402 East State Street, Trenton, New Jersey 08608.

I certify under penalty of perjury that the foregoing statements are true.

Gregg A. Ilardi, Esq.
Law Office of Gregg A. Ilardi, LLC
Attorney for Creditor
Latz Inc.

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

Gregg A. Ilardi, Esq.
The Law Offices of Greg A. Ilardi LLC
174 Delawanna Avenue
Clifton, NJ 07014
Phone: 973-507-7822 – Fax: 973-883-8816
gilardi@ilardilaw.com
Attorney for Creditor, Latz, Inc.

|  |  |
|---|---|
| HOLLISTER CONSTRUCTION SERVICES, LLC, <br><br> *Debtor in Possession* | Chapter 11 <br> Case #19-27439 <br> Judge: Michael B. Kaplan |

### Order Granting Modification of Automatic Stay of Proceedings

The Relief set forth on page numbered two (2) is hereby ***Ordered.***

The Court, having reviewed the Movant Latz Inc.'s Motion to Modify the Automatic Stay of Proceedings, as well as any related responses or objections, it is hereby on this _____ day of _____, 2020,

**ORDERED that:**

1.    The Automatic Stay in accordance with 11 U.S.C. 362(a) in the above-captioned matter, and reflected in the Order of this Court dated, September 20, 2019, is hereby modified to permit Movant, Latz Inc., to pursue any and all claims against Non-Debtor entity, Meridia Transit Plaza Urban Renewal Dover, LLC and United States Surety Company in any State or Federal Court of appropriate jurisdiction and that the 362 stay shall not be construed by any Court as a bar to such claims.

_____

Honorable Michael B. Kaplan
United States Bankruptcy Court
District of New Jersey