**LOWENSTEIN SANDLER LLP**
Bruce Buechler, Esq. (bbuechler@lowenstein.com)
Jennifer B. Kimble, Esq. (jkimble@lowenstein.com)
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| **HOLLISTER CONSTRUCTION SERVICES, LLC**,[1] | Case No. 19-27439 (MBK) |
| | Hearing Date: August 13, 2020 at 10:00 a.m. (ET) |
| Debtor. | |

### DEBTOR'S OBJECTION TO MOTION OF HERC RENTALS, INC. TO ENFORCE THE SETTLEMENT AGREEMENT BETWEEN HERC RENTALS, INC. AND HOLLISTER CONSTRUCTION SERVICES, LLC

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the *Motion of Herc Rentals, Inc. To Enforce the Settlement Agreement Between Herc Rentals, Inc. and Hollister Construction Services, LLC* [Docket No. 1276] (the "Motion").[2] In support of this Objection, the Debtor respectfully represents as follows:

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

## BACKGROUND

1. On September 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned chapter 11 case (the "Chapter 11 Case"). The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner.

2. On September 23, 2019, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in this Chapter 11 Case.

3. Additional details regarding the Debtor's business and the facts and circumstances surrounding the filing of this Chapter 11 Case is set forth in the *Declaration of Brendan Murray in Support of First Day Relief* (the "First Day Declaration") [Docket No. 15].

4. The Debtor notes the following pleadings that relate to the Motion and the relief sought by Herc and incorporates each of them by reference herein and makes them a part of the record:

    a. *Motion of Herc Rentals, Inc. For Entry of an Order (1) Lifting the Automatic Stay Pursuant to 11 U.S.C. § 362 and (2) Permitting Herc Rentals, Inc. to Remove Its Property From Various Projects* (the "Lift Stay Motion")[Docket no. 368].

    b. *Debtor's Limited Objection to Motion of Herc Rentals, Inc. For Entry of an Order (1) Lifting the Automatic Stay Pursuant to 11 U.S.C. § 362 and (2) Permitting Herc Rentals, Inc. to Remove Its Property From Various Projects* ("Debtor's Lift Stay Objection")[Docket no. 503].

    c. *Limited Objection and Reservation of Rights by Arch Insurance Company and Arch Reinsurance Company to Motion of Herc Rentals, Inc. For Entry of an Order (1) Lifting the Automatic Stay Pursuant to 11 U.S.C. § 362 and (2) Permitting Herc Rentals, Inc. to Remove Its Property From Various Projects* ("Arch Lift Stay Objection")[Docket no. 462].

  d. *Joint Motion of Debtor, Arch Insurance Company and Arch Reinsurance Company for Entry of an Order Approving the Stipulation By and Among the Parties Pursuant to Fed. R. Bankr. P. 9019* (the "Joint Motion") [Docket No. 466]. By the Joint Motion, the Debtor and Arch sought approval of a stipulation setting forth a procedure for the orderly transition of certain bonded construction contracts from the Debtor to Arch or its designee for completion (the "Bonded Project Stipulation").

  e. *Order Pursuant to 11 U.S.C. §§ 105, 362, 363, and 365 Approving Stipulation Authorizing the Parties to Declare the Debtor in Default of Certain Bonded Construction Contracts; to Reject or Terminate or Assume and Assign Those Contracts; and for Related Relief* [Docket No. 524]. By this Order, Arch took over the bonded projects pursuant to the Bonded Project Stipulation, including certain projects where rental equipment is the subject of the Lift Stay Motion.

  f. *Herc Rentals, Inc. Application for Allowance and Payment of Administrative Expenses Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* ("Herc Application") [Docket No. 546]. Herc sought allowance of $134,607.73 in alleged unpaid post-petition equipment rental charges as an administrative expense entitled to priority payment pursuant to 11 U.S.C. § 503(b)(1)(A). The Application related to the same equipment and construction projects at issue in the Lift Stay Motion [Docket No. 546, ¶ 5].

  g. *Application for Allowance and Payment of Administrative Expenses Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* ("Herc Amended Application") [Docket No. 607]. By the Herc Amended Application, Herc sought allowance of $179,326.20 in alleged unpaid post-petition equipment rental charges as an administrative expense claim entitled to priority payment pursuant to 11 U.S.C. §

503(b)(1)(A).  The Amended Application relates to the same equipment that is at issue in the Lift Stay Motion and the Herc Application.

## OBJECTION

5.     The Debtor objects to the Motion as there is no valid and enforceable June 2020 Settlement Agreement (as defined in the Motion) between the Debtor and Herc Rentals, Inc. ("Herc") for this Court to enforce against the Debtor or to hold the Debtor in breach of.  Despite Herc's revisionist history of the Debtor's extensive efforts over the past nine months to reach a settlement with Herc and resolve the remaining open issues related to *Motion of Herc Rentals, Inc. For Entry of an Order (1) Lifting the Automatic Stay Pursuant to 11 U.S.C. § 362 and (2) Permitting Herc Rentals, Inc. to Remove Its Property From Various Projects* (the "Lift Stay Motion")[Docket no. 368], there was no November 2019 Settlement Agreement (as defined in the Motion) or a June 2020 Settlement Agreement.

6.     More troubling, the Motion completely ignores and omits the critical fact that supports the Debtor's position that there was no June 2020 Settlement Agreement – this Court's statements and recommendations to Herc and the Debtor during a June 24, 2020 settlement conference (the "Settlement Conference").  The Motion fails to disclose that the Settlement Conference even took place, despite the fact that Herc was the party that requested the conference with the Court.  Presumably, Herc chooses to ignore the Settlement Conference now because Herc did not like the Court's recommendations for a settlement between the parties.

7.     During the Settlement Conference, which Herc requested, the Debtor provided the Court with a status report on the parties' negotiations and shared the terms of the Debtor's latest settlement proposal that had been sent to Herc's counsel on June 23, 2020.  Herc's counsel made clear that Herc had not yet reviewed that settlement proposal and that Herc was seeking payment of prepetition amounts due to it as part of any settlement.  Consistent with prior discussions between the parties, the Debtor's proposal of June 23, 2020 did not include payment of any prepetition invoices, which was one open issue that prompted Herc to ask for the Settlement

-4-

Conference. Herc's inability to provide the Debtor with an accurate accounting, invoices or other documentation to support its claim for unpaid post-petition rent was an open issue for the Debtor.

8. After listening to both parties during the Settlement Conference, this Court expressed its views on a reasonable resolution of this matter and made it very clear to both parties that payment of Herc's prepetition invoices should not be included in any settlement. The Court also made it clear that the parties should focus on reconciling post-petition invoices and the amount Herc claims is due and owing for post-petition rent and then agree to a number <u>that was a percentage of that amount</u>. The Court clearly laid out its reasoning for this suggestion, as well as alternative outcomes if the parties are unable to reach an agreement in the near term. Based on the Court's clear recommendations during the Settlement Conference, the Debtor believes the proposal it made to Herc on June 23, 2020 – prior to the Settlement Conference – was superseded by the Court's statements to both parties during the Settlement Conference.

9. Immediately after the Settlement Conference, Debtor's counsel requested copies of all invoices and supporting documentation for the post-petition rent claim asserted by Herc during the Settlement Conference. The next day, Herc's counsel increased the post-petition rent claim again, which only heightened the Debtor's continuing concerns with the information being provided by Herc. After receiving the invoices and a spreadsheet from Herc on June 26, 2020 and reconciling them, it was clear that Herc had again included invoices for prepetition rent, contrary to the Court's directive during the Settlement Conference that prepetition invoices should be excluded from any settlement the parties may reach.[3]

10. On June 30, 2020, while the Debtor was still reconciling Herc's latest submission of invoices to ascertain the actual amount of Herc's alleged post-petition claim, Herc's counsel sent an e-mail to Debtor's counsel advising that "Herc agrees to proceed with the settlement outlined in your email (the June 23, 2020 email) with one additional provision;…". Herc did not

---

[3] Herc also included pre-petition invoices in the Herc Application and Amended Application seeking allowance and payment of invoices as an administrative expense claim. After several months trying to ascertain the actual amount of Herc's alleged post-petition administrative expense claim, Herc ultimately withdrew the Herc Application and Amended Application.

acknowledge that the Settlement Conference took place or any of the Court's comments and recommendations made during the Settlement Conference. Ignoring the Court's statements to both parties during the Settlement Conference, Herc chose not to engage with the Debtor to reach a settlement along the parameters suggested by this Court during the Settlement Conference. Herc's June 30, 2020 e-mail is attached to the Motion as Exhibit A.

11. On July 6, 2020, Debtor's counsel sent Herc's counsel an e-mail confirming that the Debtor had completed its review of Herc's invoices and spreadsheet and confirming the amounts the Debtor had calculated for post-petition rent, <u>excluding the prepetition invoices Herc provided</u>. Consistent with the Court's recommendations during the Settlement Conference, the Debtor also proposed a specific percentage reduction to be applied to both the post-petition rent balance and any future invoices issued by Herc on the HUB at Harrison Project, which is the only Project where Herc's equipment is still "on site". A copy of the July 6, 2020 email ("<u>July 6 Email</u>") is attached hereto as Exhibit A.

12. On July 7, 2020, Herc responded to the July 6 Email asserting that there is a settlement between the parties based on the June 23, 2020 email and that Herc's counsel would not go back to Herc with a "revised" payout. Again, Herc did not acknowledge the Settlement Conference or the Court's recommendations to the parties. A copy of the July 7, 2020 email ("<u>July 7 Email</u>") is attached hereto as Exhibit B.

13. On July 10, 2020, Debtor's counsel sent another e-mail to Herc's counsel reiterating the Debtor's proposal in the July 6 Email and noting again that the Debtor's proposal in the July 6 Email followed this Court's recommendations to the parties during the Settlement Conference. A copy of the July 10, 2020 email ("<u>July 10 Email</u>") is attached hereto as Exhibit C.

14. As this Court is aware, the Debtor has spent significant time and money attempting to reach a resolution with Herc on myriad issues arising out of and related to the Lift Stay Motion. After seven months of hard work, the Debtor has (i) addressed issues related to bonded projects that involved Arch, (ii) assisted Arch and Herc to reach a resolution of the Lift Stay Motion as it impacted bonded projects, (iii) negotiated a partial resolution of the Lift Stay Motion with respect

to non-bonded projects where the rental equipment could be returned to Herc, and (iv) attempted to negotiate with Herc on terms of a settlement of the Lift Stay Motion with respect to three projects where Herc's equipment was still on site. Due to the inordinate amount of time that has been spent attempting to reach a settlement agreement with Herc on these three sites, the Debtor advised that two of the three projects had been completed and Herc's equipment was returned to Herc, yet Herc was still sending invoices to the Debtor for that equipment.

15. While the Debtor typically would not disclose settlement communications, the Debtor believes it is necessary to do so here in light of the complete disconnect between Herc's position that the Settlement Conference never occurred and had no impact on the Debtor's settlement proposal (made before the Settlement Conference) and the Debtor's position that the Court's recommendations and proposed settlement terms during the Settlement Conference superseded the proposal made prior to the Settlement Conference.

16. Simply put, Herc has failed to carry its burden of proving that a valid, binding and enforceable settlement agreement exists between the Debtor and Herc. Even if the Settlement Conference had not taken place, the Debtor's settlement proposal was specifically subject to the Debtor and Herc reaching agreement on the actual post-petition amounts to be paid pursuant to a settlement which never occurred before or after the Settlement Conference and Herc's June 30 e-mail purporting to accept the Debtor's June 23 proposal. Contrary to Herc's position that there was an offer and acceptance of definite essential terms, there was no agreement on the most essential term - the amount of Herc's alleged post-petition rental claims to be paid under a settlement.

17. Unlike the cases cited by Herc in the Motion, the actual amount to be paid under the settlement at issue here is not simply "mechanics" that can be fleshed out later. With no agreement in place as to the amount the Debtor will be obligated to pay Herc, there is no binding settlement that just needs to be reduced to writing.

18. As there is no binding and enforceable agreement between Herc and the Debtor, Herc's requested relief as set forth in the Motion must be denied. The Debtor has not refused to abide by the June 2020 Settlement Agreement as there is no such agreement and thus no right of

enforcement by Herc. Similarly, Herc has not breached the June 2020 Settlement Agreement by receiving payment from the owner of the HUB Project and refusing to remit payment to Herc as agreed. Herc's counsel has been made aware throughout these negotiations that the Debtor cannot pay Herc unless and until the owner of the HUB Project pays the Debtor. As recently as the Settlement Conference on June 24, 2020, counsel for the Debtor made clear to Herc's counsel that the Debtor has not yet been paid by the HUB Project owner for post-petition work. Herc's allegations in the Motion that the Debtor received funds and is refusing to remit them to Herc is simply false.

19.     Further, Herc's claim that it is entitled to attorneys' fees should be denied. The Debtor and its professionals have spent countless hours trying to resolve the Lift Stay Motion and Herc's Administrative Application and Amended Application. Those efforts have been repeatedly delayed or thwarted by Herc's inability or refusal to provide accurate and up-to-date invoices and supporting documentation for the key issue at the heart of all of the pleadings filed by Herc – the actual amount of post-petition rent that is allegedly due to Herc. There is no basis for Herc's attorneys' fees to be paid by the Debtor. In fact, given the expenses incurred by the Debtor's estate over the past seven months dealing with Herc, Herc should be required to reimburse the Debtor's estate for the attorneys' fees and expenses incurred by the estate.

20.     Finally, Herc asks for relief from the automatic stay in order to remove its equipment from the HUB Project site. Should the Court be inclined to grant that relief – which means Herc's Lift Stay Motion is granted – any order granting stay relief must make clear that Herc is not entitled to payment at this time and must file a separate request for payment of its post-petition rental claims. This is consistent with the Lift Stay Motion and the Court's comments during the Settlement Conference. The Debtor reserves all rights with respect to any such request that may be asserted by Herc.

21.     For the foregoing reasons, Herc has failed to carry its burden of proof and has not established that there is a valid and enforceable settlement agreement by and between the Debtor and Herc or that the Debtor in violation of any such agreement.

## RESERVATION OF RIGHTS

22.     The Debtor reserves and preserves all of its rights to supplement, modify and amend this Objection and to raise other or further arguments with respect to this Objection and the Motion either before or at the hearing on the Motion.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court (i) sustain the Objection, (ii) deny the Motion, and (iii) grant such other and further relief as the Court deems just and proper.

Dated:  August 12, 2020

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Kenneth A. Rosen, Esq.
Bruce Buechler, Esq.
Mary E. Seymour, Esq.
Jennifer B. Kimble, Esq. (admitted *pro hac vice*)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
bbuechler@lowenstein.com
mseymour@lowenstein.com
jkimble@lowenstein.com

*Counsel to the Debtor and Debtor-in-Possession*

# EXHIBIT A

**filed under seal**

# EXHIBIT B

**filed under seal**

# EXHIBIT C

**filed under seal**