**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**HOLLISTER CONSTRUCTION SERVICES, LLC,**[1]<br><br>Liquidating Debtor. | Chapter 11<br><br>Case No. 19-27439 (MBK)<br><br>Hearing Date: January 26, 2023 at 10:00 a.m.<br><br>Objection Deadline: January 19, 2023 at 4:00 p.m. |

**NOTICE OF MOTION FOR ENTRY OF ORDER (I) ENFORCING CONFIRMATION ORDER AND PLAN AGAINST BRENDAN MURRAY, (II) ENFORCING SETTLEMENT AGREEMENT BY AND BETWEEN HOLLISTER'S MEMBERS AGAINST BRENDAN MURRAY, (III) DETERMINING THAT STATE COURT LITIGATION VIOLATES PLAN AND CONFIRMATION ORDER, AND (IV) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on **January 26, 2023 at 10:00 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard, Christopher Johnson ("Johnson"), a former member of Hollister Construction Services, LLC, the above-captioned debtor ("Hollister" or the "Debtor"), by and through his counsel, shall move (the "Motion") before the Honorable Michael B. Kaplan, United States Bankruptcy Judge, in Courtroom #8 of the United States Bankruptcy Court for the District of New Jersey, 402 East State Street, Trenton, New Jersey 08608, for entry of an order, substantially in the form submitted herewith, (i) enforcing the Confirmation Order and Plan (as defined in the Motion) against Brendan Murray, the former president and member

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

37322/2
12/15/2022 212810663.1

-2-

of the Debtor ("Murray"), (ii) enforcing a settlement agreement by and between Johnson, Murray, and Hollister's other former members which was entered into in connection with confirmation of Hollister's Plan, (iii) determining that the State Court Litigation (as defined in the Motion) violates the Plan and Confirmation Order and requiring Murray to withdraw his Complaint and file a notice of dismissal of the State Court Litigation, and (iv) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that the Johnson shall rely upon the Motion filed herewith.  No brief is necessary as no novel issues of fact or law are presented by the Motion.  A proposed form of order was also submitted therewith.  Oral argument is requested in the event an objection is timely filed.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Motion must be filed with the Clerk of the Court together with proof of service thereof, and served so as to be actually received no later than January 19, 2023 at 4:00 p.m. (ET) by counsel to the Debtors, Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068, Attention: Kenneth A. Rosen, Esq (krosen@lowenstein.com) and Mary E. Seymour (mseymour@lowenstein.com).

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; and (c) state with particularity the legal and factual basis for the objection.

*(Remainder of page intentionally left blank.)*

-3-

**PLEASE TAKE FURTHER NOTICE** that unless an objection is timely filed and served in accordance with this notice, it may not be considered by the Bankruptcy Court. In the event no objections are filed, the relief requested in the Motion may be granted without a hearing.

Dated: December 15, 2022

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

/s/ *Kenneth A. Rosen*
Kenneth A. Rosen, Esq.
Mary E. Seymour, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
mseymour@lowenstein.com

**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen, Esq. (krosen@lowenstein.com)
Mary E. Seymour, Esq. (mseymour@lowenstein.com)
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: <br><br> **HOLLISTER CONSTRUCTION SERVICES, LLC**,[1] <br><br> Liquidating Debtor. | Chapter 11 <br><br> Case No. 19-27439 (MBK) <br><br> Hearing Date: January 26, 2023 at 10:00 a.m. <br><br> Objection Deadline: January 19, 2023 at 4:00 p.m. |

**MOTION FOR ENTRY OF ORDER (I) ENFORCING CONFIRMATION ORDER AND PLAN AGAINST BRENDAN MURRAY, (II) ENFORCING SETTLEMENT AGREEMENT BY AND BETWEEN HOLLISTER'S MEMBERS AGAINST BRENDAN MURRAY, (III) DETERMINING THAT STATE COURT LITIGATION VIOLATES PLAN AND CONFIRMATION ORDER, AND (IV) GRANTING RELATED RELIEF**

Christopher Johnson ("Johnson"), a former member of Hollister Construction Services, LLC, the above-captioned debtor ("Hollister" or the "Debtor"), by and through his counsel, hereby submits this motion (this "Motion") seeking entry of an order, substantially in the form submitted herewith, (i) enforcing the Confirmation Order and Plan (each defined herein) against Brendan Murray, the former president and member of the Debtor ("Murray"), (ii) enforcing a settlement agreement by and between Johnson, Murray, and Hollister's other former members which was entered into in connection with confirmation of Hollister's Plan, (iii) determining that the State Court Litigation (defined herein) violates the Plan and Confirmation Order and requiring Murray

---

[1] The Debtor in this chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404).

37322/3
12/15/2022 212258298.6

to withdraw his Complaint and file a notice of dismissal of the State Court Litigation, and (iv) granting related relief. In support of this Motion, Johnson states as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.). This Court also has jurisdiction over this Motion pursuant to the Plan and Confirmation Order (each defined below).

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested in this Motion are sections 105(a) and 1142(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3020(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

5. On September 11, 2019 (the "Petition Date"), Hollister filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, initiating the above-captioned chapter 11 case (the "Chapter 11 Case").

6. On September 23, 2019, the Office of the United States Trustee appointed an official committee of unsecured creditors in this Chapter 11 Case (the "Committee"). On October 25, 2019, the Committee was authorized to employ the law firm of McManimon, Scotland & Baumann, LLC as its counsel [Docket No. 379].

7. Pre-petition and up to confirmation, Hollister had five (5) members that held membership interests in it - Johnson, Murray, Kieran Flanagan ("Flanagan"), Joseph Furey ("Furey"), and Matthew Higgins ("Higgins") (collectively, the "Members").

8. Bernard Katz ("Katz") was engaged as the Debtor's independent manager on November 19, 2019 [Docket No. 644].

9. On June 19, 2020, Hollister filed a *Chapter 11 Plan of Liquidation* [Docket No. 1196] and a *Disclosure Statement for the Plan of Liquidation* [Docket No, 1195]. Both prior to, and after the filing of, the initial plan and disclosure statement, Hollister, PNC Bank, National Association ("PNC"), Arch Insurance Company and Arch Reinsurance Company (together, "Arch"), the Committee and the Members engaged in extended, intensive, and often contentious negotiations towards a global resolution of issues in the Chapter 11 Case.

10. The negotiations between and among Hollister, its Members, Arch, PNC and the Committee focused, *inter alia*, on the nature and extent of the claims of PNC, Arch, and the Members, as well as the Committee's pending motion to convert the Chapter 11 Case and the Committee's alleged claims against the Members. These extended negotiations ultimately led to a consensual, global settlement of all outstanding issues by and among these parties.

11. On March 10, 2021, the *Debtor's First Amended Plan of Liquidation* was filed [Docket No. 1703] (as further modified, supplemented and amended, the "Plan"). A Disclosure Statement for the First Amended Plan of Liquidation [Docket No. 1702] (as further modified, supplemented, and amended, the "Disclosure Statement") was also filed that same day.

12. The Plan was confirmed on April 16, 2021 pursuant to this Court's order (the "Confirmation Order") [Docket No. 1769].

13. The Plan became effective on April 30, 2021 (the "Effective Date").

14. Pursuant to the Plan and Confirmation Order, a liquidating trust was established on the Effective Date and BAK Advisors, LLC was appointed liquidating trustee, through its authorized representative, Katz (the "Liquidating Trustee"). Following the Effective Date, Katz serves as the Debtor's sole officer and director.

15. Since the Effective Date, the Liquidating Trustee has continued the liquidation of the Debtor's remaining assets, pursued causes of action assigned to the liquidating trust and has reconciled various claims against the estate.

## THE SETTLEMENTS

16. At all relevant times, Johnson was the chief executive officer of Hollister and Murray was the president of Hollister. Both Johnson and Murray were Members of Hollister, holding membership interests in Hollister of 56.72% and 10% respectively.

17. As noted above, Hollister achieved a global settlement of all open issues in the Chapter 11 Case, which was embodied in a Settlement Agreement dated March 10, 2021 (the "Global Settlement"). The Global Settlement was the foundation of the Plan and was implemented through the Plan. Approval of the Global Settlement was a prerequisite to confirmation of the Plan.

18. On April 16, 2021, this Court approved the Global Settlement in connection with confirmation of the Plan. A copy of the Global Settlement is attached to the Plan as **Schedule "A"** [Docket No. 1769] and incorporated by reference in Article IX of the Plan.

19. The Global Settlement also incorporated a settlement dated March 16, 2021 (the "Members' Settlement") between the five members of Hollister - Murray, Johnson, Flanagan, Furey and Higgins (collectively, the "Signatories") [Docket No. 1726]. A copy of the Members' Settlement is attached hereto as **Exhibit "A"**.

20. The Members' Settlement was a key component of, and a *precondition* to, the Global Settlement and the Plan. Among other things, under the Global Settlement, Johnson and Flanagan agreed to pay $2,509,746 *for and on behalf of the Signatories (which included Murray)* in order to facilitate confirmation of the Plan. The funds paid by Johnson and Flanagan were used to satisfy claims of PNC, Arch and general unsecured creditors pursuant to a payment waterfall set forth in the Global Settlement and Plan. Murray also received a release of his personal guarantee to PNC, Hollister's secured lender, as part of the Global Settlement. Murray was one of the Signatories on the Global Settlement.

21. Under the Members' Settlement, in recognition of the $2,509,746 cash contribution paid by Johnson and Flanagan for and on behalf of all of the Members, all claims alleged by Murray against Johnson and against the Debtor were fully and finally settled and released by Murray in exchange for which Murray received the rights to pursue any available insurance coverage of Hollister and of Johnson in connection with a certain altercation that occurred between them on October 29, 2019 (the "Incident").

22. Section "B" of Article III of the Members' Settlement provides that all claims of Murray related to or arising out of the Incident were expressly limited *to the extent* of available insurance coverage of Johnson. Any workers compensation claim of Murray also was limited *to the extent* of available insurance coverage of the Debtor.

> *Such cause of action and any recovery therein is expressly limited solely to the extent of available insurance coverage of Johnson.*

*See,* Members' Settlement, Section III B.

23. In connection with the negotiation and drafting of the Members' Settlement, each party was represented by their own legal counsel. All parties represented that they received the advice of counsel in the preparation, drafting and execution of the Members' Settlement. Thus, each of the Members assumed the obligation to conduct their own diligence as to the extent and amount of available insurance coverage.

> *Whereas, each of the Parties have received the advice of counsel in the preparation, drafting and execution of this Agreement, which was negotiated at arm's length.*

*See,* Members' Settlement, Whereas Clause 11.

24. As Section F of Article V of the Members' Settlement states:

> *This Agreement is the jointly-drafted product of arm's-length negotiations between the Parties with the benefit of advice from counsel….Further, this Agreement is the product of informed negotiations…*

*See,* Members' Settlement, Article V, Section F.

25. In fact, Murray acknowledged that he had his own counsel review the Members' Settlement and he agreed to the following language in the Members' Settlement:

> *The Parties acknowledge that this Agreement was drafted by counsel previously employed by the Debtor. The Parties acknowledge that they have been advised of the conflict of interest and have knowingly waived the conflict after having independently reviewed this Agreement with their own personal independent counsel.*

*See*, Members' Settlement, Article V, Section O.

26. In an e-mail dated January 25, 2021 from Michael Ochs, Esq. ("Ochs") the Debtor's general counsel, he advised Murray and Johnson to have their own counsel review the document and that he would continue drafting provided that he received comments from Murray's and Johnson's respective attorneys:

> *. . .everyone is advised to have independent counsel review this for your individual interest, I am willing to act as scrivener to draft once I have any comments from your respective attorneys.*

*See*, Ochs Email, Exhibit "B" attached hereto.

27. Section M of Article V of the Members' Settlement <u>directs, and the parties agreed, that all disputes or claims be brought in this Court.</u>

> <u>*Dispute Resolution*</u>. *The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising under, from or related to this Agreement.*

*See*, Members' Settlement, Article V, Section M.

28. Upon information and belief, Ochs included this provision in the Members' Settlement in recognition that the Members' Settlement was an essential component of the parties' agreement under the Global Settlement.

29. Further, Article V, Section C of the Members' Settlement expressly states that statements, promises or inducements that are not contained in the Members' Settlement are not valid or binding. Moreover, Section C of Article V of the Members' Settlement explicitly states:

> *Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.*

*See* Members' Settlement, Article V, Section C.

## THE STATE COURT LITIGATION

30. After confirmation of the Plan, Murray asserted claims related to the Incident against both Hollister and Johnson's insurance policies. The claim of Murray against Hollister's insurance was denied in a letter from the Travelers Insurance Company ("Travelers") dated October 7, 2021. Murray's claim against Johnson's insurance was also denied in two letters from AIG Property and Casualty Company ("AIG") dated January 29, 2021 and August 11, 2021. As a result of the denials of coverage under Johnson's insurance, Murray was precluded from filing the personal injury state court litigation in Morris County Superior Court under Article III, Section B of the Members' Settlement.

31. After learning that his claims against Hollister's and Johnson's insurance with Travelers and AIG were denied, Murray filed a complaint against Johnson in the New Jersey Superior Court, Law Division, Morris County (Docket MRS-L-1338-21), which was subsequently amended on June 30, 2022 (the "Complaint"), thereby commencing litigation (the "State Court Litigation") seeking to recover from Johnson individually. The State Court Litigation was commenced despite the fact that Murray explicitly agreed to limit his right to commence a cause

of action and any recovery therefrom exclusively to *available* insurance proceeds and granted a release to Johnson in the Members' Settlement. *See* Section B of the Members' Settlement[2].

32. Murray asserts in the Complaint (without legal or factual bases) that Johnson assumed an obligation to secure sufficient insurance funds to compensate Murray for alleged injuries to Murray arising out of the Incident. This is despite *no such representation or obligation being contained in the Members' Settlement*. Further, the Complaint does not (nor can it) identify any language in the Members' Settlement requiring that Johnson procure insurance. It is hornbook law that an insurance company will not cover events that occurred prior to the effective date of coverage. This is a fact that Murray and/or his counsel knew or should have known.[3]

33. In the Complaint, Murray also asserts that the limitation on his recovery to the extent of insurance proceeds is voidable and unenforceable because Murray relied on Johnson as to the existence and availability of insurance. Despite this statement to the contrary in the Complaint, nothing contained in the Members' Settlement constitutes (or could be interpreted to constitute) a representation by Johnson as to the extent or amount of insurance coverage.

34. Moreover, Section C of Article V of the Members' Settlement explicitly states:

> *Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms.*

35. As noted above, Section C of Article V of the Members' Settlement clearly provides that statements, promises or inducements that are not contained in the Members' Settlement *are not valid or binding*.

---

[2] Murray and/or his counsel may be subject to sanctions and claims for malicious prosecution for intentionally mischaracterizing the terms of the Members' Settlement in the Complaint. Murray and his counsel were in possession of the Members' Settlement when the Complaint was filed. They intentionally misled the Superior Court with the statements of "fact" made in the Complaint. Johnson has spent considerable money defending the frivolous Complaint.

[3] Murray may have a malpractice claim against his legal counsel who represented him in the negotiation of the Members' Settlement. However, it is not Johnson's burden to compensate Murray for his or his attorneys' errors and/or omissions.

36. Besides disavowing any representations or promises, as set forth above, the Members' Settlement explicitly states that Murray and Johnson both were represented by their own legal counsel. It also states that the Members' Settlement was the product of arms-length negotiations and informed negotiations.

37. Murray is aware of the denial of coverage by AIG and by Travelers, yet he continues to refuse to withdraw the Complaint, notwithstanding the clear limitations set forth in the Members' Settlement.

38. Further, Murray was the president of Hollister and, in that capacity, oversaw executives who were direct reports to him and who oversaw insurance matters for Hollister. Murray knew or should have known the nature and extent of Hollister's insurance policies.

39. According to Section C of Article V of the Members' Settlement, it is a single, integrated written contract. Nevertheless, Murray now seeks to void only *one* provision of the Members' Settlement. As explicitly set forth in the Members' Settlement, Murray cannot pick and choose which provisions he wants to void and which ones he wants to retain.

40. Through the State Court Litigation, Murray ignores the Plan and Confirmation Order and now effectively seeks to overturn the Members' Settlement that was a condition to the Global Settlement and a critical component and predicate to confirmation of Hollister's Plan.

**RELIEF REQUESTED**

41. By this Motion, Johnson respectfully requests the entry of an order (i) enforcing the Confirmation Order and terms of the Plan against Murray, (ii) enforcing the Global Settlement, which incorporates the Members' Settlement, against Murray, (iii) determining that the State Court Litigation violates the Plan and Confirmation Order and requiring Murray to withdraw his complaint and file a notice of dismissal of the State Court Litigation, and (iv) granting related relief. An order of this Court enforcing the Confirmation Order and terms of the Plan - which approved the Global Settlement and the Members' Settlement - and directing Murray to dismiss the State Court Litigation - is necessary in order to stop Murray's efforts to disrupt the conclusion

-9-

of the successful liquidation of Hollister through the State Court Litigation currently pending in State Court.

### BASIS FOR RELIEF

42. This Court has both the authority and discretion to rule on this Motion and is uniquely situated to interpret and enforce the Confirmation Order and the Plan. Section 1142(b) of the Bankruptcy Code authorizes the bankruptcy court to "direct the debtor and any other necessary party…to perform any other act…that is necessary for the consummation of the plan," and Bankruptcy Rule 3020(d) provides that "notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Courts have held that "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *Luan Inv. S.E. v. Franklin 145 Corp. (in re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2nd Cir. 2002) (citations omitted); *see also Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) (finding that the "Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior order."); *In re Charter Commc'ns*, No. 09-11435(JMP), 2010 WL 502764, at *3 (Bankr. S.D.N.Y. Feb. 8, 2010) (stating that the bankruptcy court "unquestionably has the authority and discretion to rule on the Enforcement Motion and consider whether the causes of action [brought in another court] have been released and should be enjoined.").

43. Moreover, this Court retained the fullest and most extensive jurisdiction permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out. *See* Plan, Article X. The Plan specifically provides that the Bankruptcy Court shall retain specific post-confirmation jurisdiction to, among other things, "to issue such orders in aid of execution and consummation of the Plan and Settlement Agreement", Plan, Article 10.1(d); "to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and Settlement Agreement", Plan, Article 10.1(g); "to determine any other matters that may arise in connection with or related to the Plan, Settlement Agreement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or

document created or implemented in connection with the Plan", Plan, Article 10.1(o).

44. The Confirmation Order further provides that "the Bankruptcy Court shall retain and have jurisdiction over any matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including but not limited to, the matters set forth in Article X of the Plan." Confirmation Order, para. KK.

45. Bankruptcy courts have jurisdiction and authority to interpret and enforce their own orders. *See In Re Residential Capital, LLC*, 508 B.R. 838, 849 (Bankr. S.D.N.Y. 2014); *see also Travelers Indemnity Co. v. Bailey*, 129 S. Ct. 2195 2205 (2009) (acknowledging and upholding bankruptcy court's authority to enforce an injunction imposed in connection with confirmation of the debtor's Chapter 11 plan). This is particularly true where, as here, the bankruptcy court expressly retains jurisdiction to enforce its previous orders, *see, e.g.*, *Travelers Indemnity Co. v. Bailey*, 129 S. Ct. at 2205.

46. Accordingly, this Court is the appropriate forum to enforce the provisions of the Plan, Confirmation Order and Global Settlement (which incorporates the Members' Settlement) against Murray and prevent Murray from maintaining the State Court Litigation which violates the terms of the Members' Settlement, Global Settlement and Plan.

47. Through the State Court Litigation, Murray now effectively seeks to overturn the Members' Settlement that was a condition to the Global Settlement and a critical component and predicate to confirmation of the Plan. Murray was well aware of the terms of the Members' Settlement, the Global Settlement and the Plan when the State Court Litigation was commenced.

48. Apparently, Murray is unaware (or chooses to ignore) that voiding the Members' Settlement would (a) negate the release(s) granted to him under the Plan, (b) reinstate Murray as a guarantor of the indebtedness to PNC, and (c) make him personally liable to fund his share of the $2,509,746 cash contribution made by Johnson and Flanagan under the Global Settlement *for the benefit of all of the Members* (referenced as "Insiders" in the Global Settlement). Among other things, Murray would also be subject to officer and director liability claims arising out of his gross mismanagement of Hollister and malfeasance/misfeasance as President of the Debtor.

-11-

49. Murray effectively now seeks to read things into the Members' Settlement that are not in there. Murray knew or should have known what he was signing when he signed the Members' Settlement. He cannot now disavow it.

50. Despite Johnson's repeated requests that Murray dismiss the State Court Litigation as it violates the terms of the Members' Settlement, the Global Settlement, Plan and Confirmation Order, Murray has refused to do so. Thus, Johnson has no choice but to request this Court's assistance in obtaining an order enforcing the Confirmation Order and Plan against Murray and dismissal of the State Court Litigation. Accordingly, Johnson submits that it is necessary and appropriate for this Court to enforce the terms of the Members' Settlement, the Global Settlement and the Plan as against Murray, and enter an order determining that the State Court Litigation violates the Plan and Confirmation Order and requiring Murray to withdraw his complaint and file a notice of dismissal of the State Court Litigation in the state court.

51. This Court may also impose sanctions and award Johnson attorneys' fees and costs for the fees and expenses Johnson has been forced to incur in connection with the State Court Litigation. Courts may impose sanctions (particularly attorneys' fees and costs) when a party has " 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.' ". *Chambers v. NASCO, Inc.*, 501 U.S. 32,45-46 (1991) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-259 (1975)); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000). The imposition of sanctions against a party who acts in bad faith or vexatiously "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself… ." *Chambers v. NASCO, Inc.*, 501 U.S. at 46 (citing *Hutto v. Finney*, 437 U.S. 678, 689, n.14 (1978)). A court's inherent power to impose sanctions aids courts in making non-offending parties "…whole for expense caused by his opponent's obstinancy." *Id*.

52. Additionally, a court may impose sanctions on any attorney who vexatiously delays or increases the cost of a proceeding. 28 U.S.C. § 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United State or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The purpose of this statute is to "deter unnecessary delays in litigation." H.R. Conf. Rep. No. 1234, 96th Cong., 2d Sess. 8(1980). By filing the State Court Litigation, Murray is in direct violation of the Confirmation Order, Plan and Global Settlement. Accordingly, Murray should be held in contempt of court. Likewise, Murray should pay Johnson's reasonable attorneys' fees and costs.

53. To determine the reasonableness of an award of attorneys' fees, "[a] 'useful starting point' … is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holding Corp.)*, 2006 Bankr. LEXIS 2218 at *13 (Bankr .S.D.N.Y. July 1, 2006). (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 89 (1989)). The party seeking an award of attorneys' fees must document the request "with contemporaneous time records" that contain "for each attorney, the date, the hours expended, and the nature of the work done." *Id*. (quoting *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). In addition, the requesting party "must establish the reasonableness of the hourly rate by demonstrating that the rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.' " *Id*. at *14. (quoting *Blum v. Stenson*, 465 U.S. 886,896,n.11 (1984) and citing *Savoie v. Merchs. Bank*, 166 F.3d 456,463 (2d. Cir. 1999)).

54. Accordingly, this Court should order Murray to pay Johnson's reasonable attorneys' fees and expenses incurred in connection this Motion and the prior attempts by Johnson to attain a resolution and dismissal of the State Court Litigation.

## RESERVATION OF RIGHTS

55. Johnson hereby reserves all rights to amend, modify or supplement this Motion prior to the hearing on the Motion and to respond to any pleadings filed by Murray in response to the Motion.

-13-

## WAIVER OF MEMORANDUM OF LAW

56. Johnson respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which Johnson relies is set forth herein and the Motion does not raise any novel issues of law.

## NO PRIOR REQUEST

57. No prior request for the relief sought in this Motion has been made to this or any other court.

## NOTICE

58. Notice of this Motion has been given to (i) counsel for Brendan Murray; (ii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn: Lauren E. Bielskie, Esq.; (iii) the Liquidating Trustee, BAK Advisors, LLC; and (vi) each of the Signatories that are parties to the Members' Settlement, and their counsel, if known. In light of the nature of the relief requested herein, Johnson respectfully submits that no other or further notice is required.

## CONCLUSION

**WHEREFORE**, Johnson respectfully requests that the Court enter the proposed order in the form submitted herewith, (i) enforcing the Confirmation Order against Brendan Murray; (ii) enforcing the Global Settlement and the Members' Settlement against Brendan Murray, (iii) determining that the State Court Litigation violates the Plan and Confirmation Order and requiring Murray to withdraw his complaint and file a notice of dismissal of the State Court Litigation, and (iv) granting such other and further relief as the Court deems just and equitable.

Dated:  December 15, 2022               Respectfully submitted,

                                        **LOWENSTEIN SANDLER LLP**

                                        /s/ *Kenneth A. Rosen*
                                        Kenneth A. Rosen, Esq.
                                        Mary E. Seymour, Esq.
                                        One Lowenstein Drive
                                        Roseland, New Jersey 07068
                                        (973) 597-2500 (Telephone)
                                        (973) 597-2400 (Facsimile)
                                        krosen@lowenstein.com
                                        mseymour@lowenstein.com