# Exhibit A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is as of March 16, 2021, made by and among: Christopher Johnson ("Johnson"), Kieran Flanagan ("Flanagan"), Brendan Murray ("Murray"), Joseph Furey ("Furey"), and Matthew Higgins ("Higgins"), each which may be referred to herein individually as a "Party", or together as the "Parties" or "Interest Holders."

## RECITALS

WHEREAS, Hollister Construction Services, LLC, ("Debtor") is a New Jersey limited liability company and currently a debtor and debtor-in-possession under the bankruptcy case 19-27439-MBK (the "Case").

WHEREAS, on September 11, 2019 ("Petition Date") the Debtor commenced the Case.

WHEREAS, the Case was commenced in order to preserve and maximize the value of the estate for the benefit of all its stakeholders by providing the Debtor with the time, breathing room, and resources necessary to analyze its existing projects and to negotiate with the project owners, subcontractors, vendors, materialmen, real property owners, PNC and Arch to complete the Debtor's projects and maximize their value.

WHEREAS, since the Petition Date and as of the date hereof the Debtor has 5 Interest Holders.

WHEREAS, as of the Petition Date and the date hereof, the Interest Holders and the percentage held by each are: (i) Christopher Johnson (56.72%); (ii) Kieran Flanagan (23.28%); (iii) Brendan Murray (10%); (iv) Joseph Furey (5%); and (v) Matthew Higgins (5%).

WHEREAS, pursuant to various agreements, the Debtor's Interest Holders guaranteed various liabilities in varying amounts owed by the Debtor to PNC Bank, N.A. ("PNC") and Arch Insurance Company ("Arch") and the Debtor, Estate and/or Creditors Committee have identified potential claims as against the Interest Holders.

WHEREAS, for many months the Parties have been negotiating a consensual, global resolution of the Case with PNC, Arch, and the estate that provides for an orderly liquidation of the Debtor's assets for the benefit of the estate, the Debtor's creditors and such parties have collectively come to a final agreement as set forth in Exhibit "A," the terms of which are incorporated herein by reference (the "Global Settlement").

WHEREAS, pursuant to the Global Settlement, Johnson and Flanagan are paying certain amounts and providing certain security to obtain releases and/or benefits on behalf of all Interest Holders.

WHEREAS, prior to and following the Petition Date, certain claims and disputes between the Interest Holders arose.

WHEREAS, this Agreement reflects the agreements reached between and among the Parties to resolve the various claims and disputes between the Interest Holders.

WHEREAS, each of the Parties have received the advice of counsel in the preparation, drafting and execution of this Agreement, which was negotiated at arm's length.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, and intending to be legally bound hereby, the Parties hereby agree as follows:

**I.      CONSTRUCTION**

A.      Construction. The following rules of construction shall apply to this Agreement:

1.      Unless the context of this Agreement otherwise requires, (a) words of any gender include each other gender; (b) words using the singular or plural number also include the plural or singular number; (c) the words "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement; (d) the words "each" and "all" includes "each" and "every"; (e) the words "include," "includes" or "including" shall be deemed to be followed by the words "without limitation;" (f) the word "or" shall be disjunctive but not exclusive; and (g) the phrase "relating to" means "relating to", "with regard to", "by reason of", "based on", "arising out of", or "in any way connected with."  (These phrases are not capitalized herein.)

2.      All exhibits and schedules attached to this Agreement or otherwise referenced in this Agreement are incorporated herein to the same extent as if fully set forth herein.

3.      References to agreements and other documents shall be deemed to include all subsequent amendments and other modifications thereto.

4.      All references to "Sections" are references to sections of this Agreement unless otherwise specified.

5.      References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions consolidating, amending or replacing the statute or regulation.

6.      The wording of this Agreement was reviewed by legal counsel for all Parties and each has had sufficient opportunities to propose and negotiate changes prior to its execution. No Party will be entitled to have any wording of this Agreement construed against the other based on any contention as to which Party drafted the language in question.

**II.     CONSIDERATION**

A.      Except as otherwise set forth in the Global Agreement and this Section II, no separate payments shall be required by the Parties.

B.      Upon the Effective Date of this Agreement, Murray shall cause the transfer of his 20 Shares of Top Safety Products Inc. to Johnson or a designee of Johnson in

2

        consideration for the release of certain personal obligations between Murray and Johnson. Murray and Johnson shall deliver documents as may reasonably be required to effectuate this transaction upon the Effective Date.

    C.    Upon the Effective Date of this Agreement, Murray, Higgins, and Furey waive any rights to collect any residual recovery from the Debtor or the Estate (if any), including, but not limited to any future insurance proceeds, except for the claims assigned pursuant to Paragraph D below.

    D.    Upon the Effective Date of this Agreement, Murray, Higgins, Flanagan, and Furey assign their filed administrative claims for deferred salary and compensation within the Case to Johnson.

## III.    RELEASES

    A.    Upon the Effective Date, and in consideration of the payments under the Global Agreement, the Parties waive and release all Causes of Action against each other, except as set forth in Section B herein. For the purposes of this Agreement, a Cause of Action is defined as follows: Any and all claims, causes of action , objections to claims or interests, demands, actions, suits, obligations, liabilities, cross-claims, counter-claims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counter-claim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring at any time prior to or after the Effective Date relating to the Debtor, the Estate, Arch, PNC and/or the Interest Holders, Johnson, Flanagan, Higgins, Murray, Furey and/or any parent, subsidiaries, related, affiliated, other entities and/or their successors and/or assigns and with respect to any person, such person's current and former officers, directors, principals, partners, members, managers, shareholders, attorneys, accountants, financial advisors, investment bankers, spouses, and their respective successors and/or assigns.

    B. Excluded Cause of Action. Murray expressly reserves a cause of action against Johnson relating to personal injuries sustained by Murray in connection with an altercation that occurred in January, 2020 with Johnson during the course of Murray's employment with the Debtor (the "Altercation"). Such cause of action and any recovery therein is expressly limited solely to the extent of available insurance coverage of Johnson. Johnson agrees to reasonably cooperate with Murray regarding the claims in connection to the Altercation. Nothing contained herein shall constitute a waiver or release by Murray of any worker's compensation claim against Debtor, such cause of action and any recovery therein is expressly limited solely to the extent of available insurance coverage of the Debtor.

    C. Excluded Right To Enforce. Excluded from the release in Paragraph A above as well as from any confidentiality provision(s) below is the right to enforce this Agreement.

3

D. No Assignment of Released Causes of Action. Each Interest Holder warrants and represents to each other Interest Holder that he has not assigned any Cause of Action released in Paragraph A herein.

## IV.  CONFIDENTIALITY AND NONDISPARAGEMENT

A.   The Parties agree that they shall treat the fact of this settlement between the parties, and the contents of this Agreement, as absolutely confidential. No Party shall disclose anything regarding this compromise settlement to any other person or entity not directly affiliated with the parties, unless legally compelled to do so, and then, only upon timely prior notice to all other Parties, giving it sufficient time to contest any such disclosure. In the event any inquiry is made of a Party concerning the contents of this Agreement, they shall indicate only that "the disputes have been resolved," and shall give no other indication of the outcome.

B.   The Parties all agree that they shall not make or publish any statement (orally, electronically, or in writing), or instigate, assist or participate in the making or publication of any statement, which would or could libel, slander, expose to hatred, contempt or ridicule, or intentionally disparage (whether or not such disparagement legally constitutes libel or slander) any other Party, or any of their respective services, affairs or operations, or the reputations of any of its or their respective past or present directors, officers, employees, agents, shareholders, members, or investors, including via the internet and social media. Nothing contained in this Section is intended to prohibit a Party from providing truthful testimony in order to comply with any order of a court of competent jurisdiction, applicable laws, regulations of any governmental or regulatory body, or request of any governmental entity.

## V.  MISCELLANEOUS

A.   <u>Cooperation In Enforcing Agreement</u>.  In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any person not a Party hereto to invalidate, interpret, or prevent the validation, enforcement, or carrying out of all or any of the provisions of this Agreement, the Parties shall cooperate in opposing such action or proceeding.

B.   <u>Additional Necessary Documents</u>.  Each Party agrees to take such steps and to execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

C.   <u>Entire and Integrated Agreement</u>. This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between the Parties. Except as otherwise expressly provided, this Agreement supersedes all prior communications, settlements, and understandings between the Parties and their representatives regarding the matters addressed by this Agreement. Except as explicitly set forth in this Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Agreement or alter or supplement its terms. Any statements,

4

promises, or inducements, whether made by any Party or any agents of any Party, that are not contained in this Agreement shall not be valid or binding.

      D.      <u>Severability</u>.  If any provisions of this Agreement, or the application thereof, shall for any reason or to any extent be construed by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, and application of such provisions to other circumstances, shall remain in effect and be interpreted so as best to reasonably effect the intent of the Parties.

      E.      <u>No Modification</u>.  This Agreement may not be amended, altered or modified except by a written agreement duly executed by each Party.

      F.      <u>Interpretation</u>.  This Agreement is the jointly-drafted product of arm's-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall so be construed.  As such, no Party will claim that any ambiguity in this Agreement shall be construed against any other Party.  Further, this Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions, and the execution and delivery of this Agreement by either of the Parties shall not constitute or be construed as an admission of any liability, a course of performance, or wrongdoing on the part of either of them.  Accordingly, this Agreement does not reflect the Parties' views as to rights and obligations with respect to matters or persons outside the scope of this Agreement.

      G.      <u>Section Headings</u>. Section titles or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

      H.      <u>Notices</u>. Any notices, consents and other communications required or permitted herein shall be in writing and shall be effective, and any applicable time period shall commence when (a) delivered to the following address by hand or by a nationally recognized overnight courier service (costs prepaid) or (b) transmitted electronically to the following facsimile or e-mail addresses with confirmation of receipt of transmission, in each case marked to the attention of the person (by name or title) designated below (or to such other address, facsimile number, e-mail address, or Person as a Party may designate by notice to the other Party).

| If to Christopher Johnson:<br><br>[to be provided]<br><br>With a copy to:<br><br>[to be provided] | If to Kieran Flanagan:<br><br>[to be provided]<br><br>With a copy to:<br><br>[to be provided] |
|---|---|
| If to Brendan Murray:<br><br>[to be provided] | If to Joseph Furey:<br><br>[to be provided] |

5



| | |
|---|---|
| <u>With a copy to</u>:<br><br>[to be provided] | <u>With a copy to</u>:<br><br>[to be provided] |
| <u>If to Matthew Higgins:</u><br><br>[to be provided]<br><br><u>With a copy to</u>:<br><br>[to be provided] | |

I.    <u>Multiple Counterparts</u>.  This Agreement may be executed in multiple counterparts, which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile or email, which facsimile or email counterparts shall be deemed to be originals.

J.    <u>No Waiver</u>.  Any Party may specifically and expressly waive in writing any portion of this Agreement or any breach hereof, but only to the extent such provision is for the benefit of the waiving Party, and no such waiver shall constitute a further or continuing waiver of any preceding or succeeding breach of the same or any other provision.  The consent by a Party to any act for which such consent was required shall not be deemed to imply consent or waiver of the necessity of obtaining such consent for the same or similar acts in the future, and no forbearance by a Party to seek a remedy for noncompliance or breach by another Party shall be construed as a waiver of any right or remedy with respect to such noncompliance or breach.

K.    <u>Governing Law</u>.  This Agreement shall be governed by and shall be construed in accordance with the laws of State of New Jersey without regard to its conflict of law principles and, where necessary, in accordance with federal bankruptcy law.

L.    <u>Voluntary Agreement</u>.  This Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them.

M.    <u>Dispute Resolution</u>.  The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising under, from or related to this Agreement. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of either the (i) Superior Court of New Jersey in Morris County, or (ii) the United States District Court for the District of New Jersey located in Essex, New Jersey.  THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER, FROM  OR RELATED TO THIS AGREEMENT.

N.    <u>Effective Date</u>. This Agreement is subject to the satisfaction by Johnson and Flanagan of their funding obligations as set forth in the Global Agreement, other than with respect

to the Five Year Note The Effective Date of this Agreement shall be deemed the date that all such obligations are satisfied pursuant to the Global Agreement.

        O.      <u>Independent Legal Counsel</u>. The Parties acknowledge that this Agreement was drafted by previously employed by the Debtor. The Parties acknowledge that they have been advised of the conflict of interest and have knowingly waived the conflict after having independently reviewed this Agreement with their own personal independent counsel.

*[SIGNATURE PAGES TO FOLLOW]*

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

_____
Christopher Johnson

_____
Kieran Flanagan

_____
Brendan Murray

_____
Joseph Furey

_____
Matthew Higgins

8

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

_____
Christopher Johnson

_____
Kieran Flanagan

_____
Brendan Murray

_____
Joseph Furey

_____
Matthew Higgins

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

_____
Christopher Johnson

_____
Kieran Flanagan

_____
Brendan Murray

_____
Joseph Furey

_____
Matthew Higgins

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first set forth above.

_____
Christopher Johnson

_____
Kieran Flanagan

_____
Brendan Murray

_____
Joseph Furey

_____
Matthew Higgins

8