| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br>Mitchell Malzberg, Esq.<br>Law Offices of Mitchell J. Malzberg, LLC<br>PO Box 5122<br>6 E. Main Street, Suite 7<br>Clinton, New Jersey 08809<br>Telephone: (908) 323-2958<br>Facsimile: (908) 933-0808<br>mmalzberg@mjmalzberglaw.com<br>*Counsel to the Liquidating Trustee* | |
| In Re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC[1]<br><br>Debtor. | Chapter 7<br><br>Case No.: 19-27439/MBK<br><br>Chief Judge: Honorable Michael B. Kaplan<br><br>Hearing Date: May 18, 2023 @ 10 am |

**MOTION OF LIQUIDATING TRUSTEE FOR ENTRY OF AN ORDER APPROVING SECOND AMENDMENT TO SETTLEMENT AGREEMENT BY AND BETWEEN THE LIQUIDATING TRUSTEE AND ACCORDIA HARRISON URBAN RENEWAL, LLC, PURSUANT TO FED. R. BANKR. P. 9019 AND GRANTING RELATED RELIEF**

The Application of Bernard A. Katz, the Liquidating Trustee (the "Trustee" or "LT") by and through his counsel, the Law Offices of Mitchell J. Malzberg, LLC, seeking entry of an Order Approving the Second Amendment to Settlement Agreement[2] by and Between the LT and Accordia Harrison Urban Renewal, LLC ("Accordia" or the "HUB Owner"), and for such other relief as this court deems just and necessary. In support of this Motion, the LT through his counsel states as follows:

---

[1] The Debtor of this Chapter 11 case and the last four digits of its taxpayer identification number is: Hollister Construction Services, LLC (5404)

[2] Terms not otherwise defined herein shall have the meaning afforded to them in the HUB Settlement Agreement, as amended.

**JURISDICTION, VENUE, AND STATUTORY PREDICATES**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The LT consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4. The statutory predicates for the relief requested in this Motion are sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

5. On September 11, 2019 (the "Petition Date"), Hollister Construction Services, LLC ("Debtor or Hollister") filed a Chapter 11 Petition.

6. The Debtor's Plan was confirmed and an Order confirming the Debtor's First Amended Plan of Liquidation (Docket No. 1769) was entered on April 16, 2021. The effective date of the Plan occurred on April 30, 2021. A liquidating Trust was formed pursuant to the confirmed Plan. The Plaintiff, BAK Advisors, LLC. was appointed as Liquidating Trustee of the Hollister Construction Liquidating Trust.

7. The Debtor had operated a substantial construction management firm.

8. Additional details regarding the Debtor's business, the facts and circumstances

leading up to the filing of the Chapter 11 Case and supporting the relief requested herein are set forth in the Declaration of Brendan Murray in Support of First Day Relief. [Docket No. 15].

## THE AMENDMENT TO THE HUB SETTLEMENT AGREEMENT

A.  *The Hub PRIOR Settlements*

9. As this Court is aware, the Debtor previously reached a settlement (the "HUB Settlement") with Accordia and certain subcontractors to continue construction on, and completion of, the construction project described as the HUB at Harrison, located at 700 Frank E. Rogers Boulevard, Harrison, New Jersey (the "HUB Project").

10. On December 13, 2019, the Debtor filed the *Debtor's Motion for Entry of One or More Orders Approving Various Settlements and Compromises by and Among the Debtor, Project Owners, and Certain Subcontractors Pursuant to Fed. R. Bankr. P. 9019 and Granting Related Relief* (the "HUB Settlement Motion") [Docket No. 649]. The HUB Settlement Motion attached as an exhibit the Settlement Agreement between the Debtor and Accordia, as Project Owner, and certain subcontractors (the "HUB Settlement Agreement").

11. Among other things, the HUB Settlement Agreement set forth procedures for the Debtor and subcontractors to return to work on the HUB Project, and a schedule for the proposed payment of certain pre-petition and post-petition amounts owed to the Debtor and certain subcontractors on the HUB Project from funds to be deposited by Accordia into an escrow account to be established pursuant to the HUB Settlement Agreement (the "Escrow Account").

12. On February 5, 2020, the Court entered an Order approving the HUB Settlement

Motion and the HUB Settlement Agreement. [Docket No. 899].

13.    Thereafter, the Debtor and Accordia entered into another amendment to the settlement, a First Amendment (hereinafter "First Amendment") and sought Bankruptcy Court approval via a motion filed on December 1, 2020.  The court entered an order approving the First Amendment on or about December 4, 2020 [Docket No.  1522].

14.   Following the Court's approval of the HUB Settlement Motion, the Debtor and Accordia worked diligently together to recommence the HUB Project and ensure that all terms of the HUB Settlement Agreement were met, including, but not limited to, confirming the release of all filed and asserted pre-petition construction liens filed by subcontractors on the HUB Project's real property and the funding of settlement payments as required under the HUB Settlement Agreement.

15.   Additionally, to resolve several construction liens filed by subcontractors post-petition—including some who were parties to the HUB Settlement—without obtaining stay relief or Court authorization, the Debtor also filed a *Motion for Entry of an Order Determining That Certain Asserted Liens Filed Post-Petition on the HUB Project Are Void Ab Initio and Granting Related Relief* (the "<u>HUB Liens Motion</u>"). [*See* Docket No. 974].

16.   On March 5, 2020, the Court entered an Order granting the HUB Liens Motion. [Docket No. 982].

17.   Since the resumption of work on the HUB Project, there have disputes between the parties over the terms of the HUB Settlement Agreement and Accordia's performance thereunder.

18.   After the Plan was confirmed, the LT took over oversight as it related to the Trust and monies due to come in relating to this project pursuant to the Plan.  In light of Accordia's

alleged defaults under the HUB Settlement Agreements, the LT made the determination to file a construction lien in May 2022.

B. *The Amendment to the HUB Settlement Agreement negotiated by the LT*

19.  In addition, the LT negotiated a Second Amendment to the Contract which is the subject of this Motion. The within Second Amendment is annexed hereto as **Exhibit "A"**. The Second Amendment not only addresses the prior alleged defaults under the First Amendment, but also addresses the LT claims, owners claims, subcontractors claims and to facilitate the closeout of the project. The Second Amendment allows the owner to release retainage to subcontractors whose work has been completed on the project. Lastly, the Second Amendment assigns the contract and all liabilities of the project to Accordia and provides for Accordia to assume all obligations and relieve Hollister of all obligations under the project as of the date of the Second Amendment. The Second Amendment was signed on or about July 14, 2022.

20.  One of the conditions of the Second Amendment was that court approval would not be sought until payment to the LT under the Second Amendment was received.

21.  Accordia did not initially make the payment under the Second Amendment and as a result, the LT commenced an adversary proceeding in this court on August 23, 2022.

22.  The adversary proceeding was resolved by Consent Order dated March 16, 2023, [Docket No. 15] annexed hereto as **Exhibit "B"**. The payments and conditions pursuant to the Consent Order were made and the LT now seeks approval of the Second Amendment.

23.  Through this Motion, the LT seeks approval of the Second Amendment.

24. Pursuant to the Second Amendment[3], the parties have agreed to certain amendments to the terms of the HUB Settlement Agreement. Subject to the specific terms identified therein, the Amendment provides, among other things:

A. Amendment to Settlement Agreement. The Settlement Agreement as amended by the First Amendment is further amended as follows:

(i) The balance of any amounts due to subcontractors under the Settlement Agreement as Pre-Petition Retainage shall be due within seven (7) business days of completion of a subcontractor's scope of work and the subcontractor providing all required closeout documentation, including construction lien waivers for all work. Nothing herein shall require completion of the entire HUB Project to release a specific subcontractor's Pre-Petition Retainage. Owner shall retain any amount of Pre-Petition Retainage not otherwise paid out to the subcontractors.

(ii) The amounts held as Post-Petition Retainage under the Settlement Agreement shall be due within seven (7) business days of completion of a subcontractor's scope of work and the subcontractor providing all required closeout documentation, including construction lien waivers for all work. Nothing herein shall require completion of the entire HUB Project to release a specific subcontractor's Post-Petition Retainage.

(iii) Pre-Petition Retainage and Post-Petition Retainage shall be paid simultaneously by Owner. Accordia and the LT have amended the duration of the HUB Project and increased the HUB Project budget by $1,100,000.00 to cover the additional expenses. Accordia and the LT have amended the HUB Settlement Agreement to reinforce

---

3 Consent Order entered may have affected payment terms but did not alter the material terms of the Agreement.

and revise payment terms, approve additional acceleration costs and provide the Debtor, LT and Trust with indemnities against future administrative expense claims related to the HUB Project..

      B.    Assignment and Assumption. Simultaneously with the execution of this Agreement, the parties have executed that certain assignment and assumption agreement ("Assignment and Assumption Agreement") set forth on Exhibit A. As set forth in the Assignment and Assumption Agreement, the Owner has taken an assignment of all active subcontracts for the HUB Project ("Assigned subcontracts"). Pursuant to the Assignment and Assumption Agreement, the Owner shall continue completion of the HUB Project pursuant to the Contract and the Assigned Subcontracts directly without any further involvement of Hollister.

      C.    Payment to Subcontractors for Work To Be Performed or Goods To Be Provided.  Notwithstanding anything to the contrary in the Contract, the Settlement Agreement, the First Amendment and Second Amendment or herein, Owner will assume all construction supervisory responsibilities under the Contract as of the date of this Agreement. All payments to subcontractors under Assigned Subcontracts, or the Settlement Agreement as amended, shall be paid in the ordinary course of business through the Escrow Account in accordance with the terms of the Assigned Subcontracts, and/or the Settlement Agreement as amended.

## **RELIEF REQUESTED**

25. By this Motion, the Debtor seeks the entry of an order approving the Second Amendment to the Hub Settlement Agreement pursuant to Bankruptcy Rule 9019.

**BASIS FOR RELIEF**

26. Bankruptcy Rule 9019(a) provides, in pertinent part, that upon a motion, and after notice and a hearing, the Court may approve a compromise or settlement. Approval of a settlement remains in the sound discretion of the Bankruptcy Court. See In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986). In determining whether to approve a settlement, the Court should determine whether the proposed settlement is in the best interests of the estate. Id.; see also In re Energy Coop., Inc., 886 F.2d 921, 927 (7th Cir. 1989).

27. The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange a settlement of claims in which there is substantial and reasonable doubts." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (noting that "[c]ompromises are 'a normal part of the process of reorganization.'") (citation omitted), reh'g denied, 391 U.S. 909 (1968).

28. Further, the settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. See In re Penn Central Transp., 596 F.2d 1102 (3d Cir. 1979); In re Mavrode, 205 B.R. 716, 719 (Bankr. D.N.J. 1997).

29. The Third Circuit, applying TMT Trailer in the context of a settlement pursuant to Bankruptcy Rule 9019(a), has set forth four factors to be considered:

> (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors.

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

30. In determining whether to approve a settlement, the Bankruptcy Court should not substitute its judgment for that of the debtor and the parties. See Neshaminy Office Bldg. Assocs., 62 B.R. at 803. The Bankruptcy Court is not to decide the numerous questions

of fact or law raised by the controversy, but rather should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Cosoffi v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608, 613 (2d Cir.) (citations omitted), cert denied, 464 U.S. 822 (1983); Mavrode, 205 B.R. at 720. Thus, in reaching its decision regarding the approval of the proposed compromise this Court need not conclusively determine the claims which are the subject of the compromise, nor find that the compromise constitutes the best result obtainable. See W.T. Grant, 699 F.2d at 613.

31. The LT respectfully submits that the proposed Second Amendment to the HUB Settlement Agreement is fair and prudent, in the best interests of the estate and Liquidating Trust and fall within the "range of reasonableness." The Second Amendment allows subcontractors who completed all their work to get paid their retainage despite the project not being closed out. Subcontractors with continued work can look directly to Accordia for payment. Accordia would also suffer substantial damages, including the costs and additional delays in completion of the HUB Project. The Amendment will (i) allow the LT to be removed from the project, (ii) provide for payment of outstanding amounts owed to subcontractors who completed work on the project to be paid their retainage, (iii) allow the contract and all obligations under the contract to be assigned to Accordia; and (iv) allow Accordia to change the scope of the project and complete the project. Thus, the Second Amendment will benefit the Trust, Estate and its creditors.

32. Absent the compromises contained in the Second Amendment, future proceedings related to the HUB Project could be protracted and expensive, may require the resolution of complex issues and involve substantial uncertainties and risks inherent in litigation. Indeed, the LT has already expended significant time and resources to obtain Court

approval of the HUB Settlement Agreement and to address issues that subsequently arose related to the HUB Project. With these forgoing considerations in mind, the LT has concluded that the Second Amendment is (i) fair and equitable, (ii) a reasonable resolution of the issues that have arisen with respect to the HUB Project and the HUB Settlement Agreement and Second Amendment, (iii) in the best interests of the Trust and its estate, and (iv) in the paramount interests of the creditors and subcontractors on the HUB project.

33. The LT also believes that approval of the Second Amendment is appropriate and authorized under Fed. R. Bankr. P. 9019(a) because the Second Amendment modifies the HUB Settlement Agreement that has already been approved by this Court and because it is fair and equitable and in the best interests of the estate. *See, e.g., In re Martin*, 91 F.3d at 394; *In re McDermott*, No. 05– 17387 (DHS), 2008 WL 877964, at *4-5 (Bankr. D.N.J. Mar. 27, 2008).

34. For the foregoing reasons, the Debtor submits that this Court should approve the Second Amendment to the HUB Settlement Agreement.

## WAIVER OF BANKRUPTCY RULE 6004

35. The Debtor seeks a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a), and (ii) the stay of any order under Bankruptcy Rule 6004(h), to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor, its estate and creditors.

## WAIVER OF MEMORANDUM OF LAW

36. The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies is set forth herein and the Motion does not raise any novel issues

of law.

## NOTICE

37. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attention: Lauren E. Bielskie, Esq.; (ii) counsel for PNC Bank, the Debtor's pre-petition secured lender, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attention: James J. Holman, Esq.; (iii) counsel for Accordia.; (iv) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002;(v) counsel for Accordia; and (vi) all subcontractors on the HUB Project. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

WHEREFORE, the LT respectfully requests that the Court enter the Proposed Order in the form submitted herewith, (i) approving the Second Amendment to the HUB Settlement Agreement with Accordia and certain subcontractors and authorizing and directing the LT to carry out and perform its obligations under the Second Amendment, and (ii) granting the LT such other and further relief as the Court deems just and equitable.

LAW OFFICES OF MITCHELL J. MALZBERG, LLC

*/s/ Mitchell Malzberg*
MITCHELL MALZBERG, ESQ.
Dated:  April 27, 2023        Counsel to the Liquidating Trustee