# EXHIBIT "A"

**SECOND AMENDMENT TO THE SETTLEMENT AGREEMENT BY AND BETWEEN
HOLLISTER CONSTRUCTION SERVICES, LLC, AND THE PROJECT OWNER AND
CERTAIN SUBCONTRACTORS SO AS TO DISCHARGE ALL FILED LIENS AND
ENFORCEMENT MOTIONS**

This Second Amendment ("Amendment") to the Settlement Agreement (the "Settlement Agreement") by, between and among Bernard Katz as Liquidating Trustee of Hollister Construction Services, LLC, ("Hollister" or "Contractor"); Accordia Harrison Urban Renewal, LLC, as Owner ("Accordia" or "Owner") (each a "Party," and collectively, the "Parties") is entered into as of July 14, 2022; and

WHEREAS, Hollister and Owner are parties to certain contract documents dated as of September 25, 2017, including, without limitation, certain AIA Documents, A201 and A101, and all Schedules annexed thereto, and all subsequent riders, modifications, and change orders (collectively, the "Contract"),[1] relating to  construction of 700 Frank E. Rogers Boulevard, Harrison, New Jersey (the "HUB Project"); and

WHEREAS, on September 11, 2019 (the "Petition Date"), Hollister filed a voluntary petition under Chapter 11, Title 11 of the United States Code ( the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 19-27439 (MBK); and

WHEREAS, Hollister and various subcontractors, provided goods and/or services to the HUB Project prior to the Petition Date; and

WHEREAS, after the Petition Date, Hollister, Owner and various subcontractors, engaged in negotiations regarding a global settlement which would provide a mechanism for payment of certain pre-petition and post-petition amounts due to Hollister and certain subcontractors on the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Contract or the Settlement Agreement.

HUB Project, provide for the restart of construction and completion of the HUB Project and the exchange of releases between Hollister, Owner and the subcontractors; and

WHEREAS, on December 13, 2019, the Parties entered into the Settlement Agreement and sought Bankruptcy Court approval of the Settlement Agreement; and

WHEREAS, by Order dated February 6, 2020, the Bankruptcy Court approved the Settlement Agreement; and

WHEREAS, on December 4, 2020, the Parties entered into the Amendment to Settlement Agreement (the "First Amendment") and sought Bankruptcy Court approval of the First Amendment to Settlement Agreement; and

WHEREAS, by Order dated December 4, 2020, the Bankruptcy Court approved the First Amendment; and

WHEREAS, by Order dated April 16, 2021 the Bankruptcy Court approved Contractor's plan of liquidation and appointed Bernard Katz as the liquidating trustee of the Contractor's bankruptcy estate ("Liquidating Trustee"); and

WHEREAS, pursuant to the Settlement Agreement, Owner and Hollister established an escrow account at PNC Bank, N.A. ("Escrow Account") administered by SM Financial Services Corporation, a New Jersey corporation ("Escrow Agent"); and

WHEREAS, subsequent to approval of the First Amendment, Hollister and certain subcontractors resumed work on the HUB Project; and

WHEREAS, certain payments were to be made by Owner pursuant to the terms and conditions of that the Settlement Agreement and First Amendment to Settlement Agreement; and

WHEREAS, Owner failed to make payments for services and work performed after approval of the First Amendment and disputes have arisen among the Parties regarding the

payments which were to be paid pursuant to the terms and conditions of that First Amendment; and

WHEREAS, Hollister has repeatedly noticed Owner as to outstanding amounts due under the Contract and defaults in payment obligations for the HUB Project as set forth in the Settlement Agreement (the "Hollister Claims"); and

WHEREAS, Owner has made allegations against Hollister relating to workmanship, project costs and delays (the "Owner Claims"); and

WHEREAS, certain subcontractors have filed enforcement actions against Hollister and Owner seeking payments of unpaid amounts for both work in place and closeout amounts representing retainage under their respective subcontracts (the "Subcontractor Claims"); and

WHEREAS, the Settlement Agreement as amended by the First Amendment, does not permit the early payment of Subcontractor Claims relating to retainage; and

WHEREAS, Hollister and the Owner have engaged in negotiations to further amend the Settlement Agreement in order to address the defaults under the First Amendment, address the Hollister Claims, Owner Claims, the Subcontractor Claims and to facilitate the completion and close out of the HUB Project; and

WHEREAS, the Parties believe it is in the best interests of Owner, Hollister, and subcontractors, to close out the HUB Project and have Hollister assign the Contract and all related subcontracts to Owner for Owner's assumption of all obligations therein to permit the Owner to complete the HUB Project as soon as possible; and

WHEREAS, the Parties further believe it is in the best interests of Owner, Hollister, and the subcontractors to amend the Settlement Agreement to permit the Owner to release certain retainage prior to completion of the entire HUB Project.

NOW, THEREFORE, the Parties stipulate and agree as follows:

1.    <u>Amendment to Settlement Agreement</u>. The Settlement Agreement as amended by the First Amendment is further amended as follows:

    a.  The balance of any amounts due to subcontractors under the Settlement Agreement as Pre-Petition Retainage shall be due within seven (7) business days of completion of a subcontractor's scope of work and the subcontractor providing all required closeout documentation, including construction lien waivers for all work. Nothing herein shall require completion of the entire HUB Project to release a specific subcontractor's Pre-Petition Retainage. Owner shall retain any amount of Pre-Petition Retainage not otherwise paid out to the subcontractors.

    b.  The amounts held as Post-Petition Retainage under the Settlement Agreement shall be due within seven (7) business days of completion of a subcontractor's scope of work and the subcontractor providing all required closeout documentation, including construction lien waivers for all work. Nothing herein shall require completion of the entire HUB Project to release a specific subcontractor's Post-Petition Retainage.

    c.  Pre-Petition Retainage and Post-Petition Retainage shall be paid simultaneously by Owner.

2.    <u>Assignment and Assumption</u>.    Simultaneously with the execution of this Agreement, the parties have executed that certain assignment and assumption agreement ("<u>Assignment and Assumption Agreement</u>") set forth on Exhibit A. As set forth in the Assignment and Assumption Agreement, the Owner has taken an assignment of all active subcontracts for the HUB Project ("<u>Assigned Subcontracts</u>"). Pursuant to the Assignment and Assumption Agreement, the Owner shall continue completion the HUB Project pursuant to the Contract and the Assigned Subcontracts directly without any further involvement of Hollister.

-4-

3.    <u>Payments</u>.    Within seven(7) days from the execution of this Agreement, Owner shall paid $1,170,00.00 ("<u>Settlement Amount</u>") to counsel for the Owner, Rufolo & Marotta, LLC ("<u>Owner's Escrow Agent</u>"). In the event the Settlement Amount is not paid within (7) days the Settlement Amount shall automatically increase by $500.00 per day until paid. In the event the Settlement Amount is paid before seven (7) days from the execution of this Agreement, the Settlement Amount shall be reduce by $29,250.00 for an early pay discount to Owner.

4.    <u>Allocation of Settlement Amount</u>. The Settlement Amount shall be allocated as follows:

  a.    $500,000.00 to the Escrow Agent representing payment towards unpaid general conditions of Hollister and work performed on the HUB Project;

  b.    $600,000.00 to the Escrow Agent representing a final negotiated closeout payment;

  c.    $70,000.00 to the Escrow Agent representing the Owner's contribution to the transactional costs and fees to Hollister.

5.    The Settlement Amount shall be released from Owner's Escrow Agent to the Escrow Agent upon the entry of an Order approving this Amendment.

6.    <u>Payment to Subcontractors for Work To Be Performed or Goods To Be Provided</u>. Notwithstanding anything to the contrary in the Contract, the Settlement Agreement, the First Amendment, or herein, Owner will assume all construction supervisory responsibilities under the Contract as of the date of this Agreement.  All payments to subcontractors under Assigned Subcontracts, or the Settlement Agreement as amended, shall be paid in the ordinary course of business through the Escrow Account in accordance with the terms of the Assigned Subcontracts, and/or the Settlement Agreement as amended.

7.    <u>Procedure for Owner Payments</u>. Any and all references herein to Owner payments shall be effectuated in  accordance with the Settlement Agreement, First Amendment, and this

5

Amendment as approved by the Bankruptcy Court, pursuant to which payments are made to the Escrow Account at PNC Bank, N.A. administered by the Escrow Agent.

8.      <u>Payment of Escrow Agent</u>. Owner shall be solely responsible for all costs and expenses of the Escrow Agent attributable to the HUB Project after the date of this Agreement.

9.      <u>Future Project Payments</u>.  Owner shall pay all subcontractor requisitions within twenty (20) business days of submission to Owner in accordance with the terms of the Contract, as modified herein. Such requisitions shall include construction lien waivers for work together with normal and customary backup and support (including, but not limited to, invoices, lien waivers, and confirmation of work in place). Said payments will be paid directly to the Escrow Agent pursuant to this Amendment for distribution to individual subcontractors.

10.     <u>Acknowledgement of Certain Subcontractor Amounts</u>. Owner and Hollister further acknowledge that any existing or future funds due and owing or otherwise paid by Owner to any subcontractor completing the scope of work of Friends Carpentry, FM Construction Group, LLC, or MASA Architectural as replacement contractors are direct reductions in the amount Owner would have otherwise paid to Hollister.

11.     <u>Waiver of Defaults</u>.  The Parties waive the asserted defaults against each other as of the date of this Amendment, without prejudice to any other rights and remedies of the parties which may arise from and after execution of this Amendment, except to the extent expressly provided herein.

12.     <u>Releases</u>.

(a)     Release by Owner.  Upon the execution of this Agreement and receipt of the Assignment and Assumption pursuant to this Amendment, the Owner and its parents, subsidiaries, divisions and affiliates, and the officers, directors, partners, members, and managers and their respective predecessors, successors and assigns (collectively, the "Owner Releasors") do hereby

6

release and forever discharge Hollister and its officers, directors, partners, members, and managers and their respective predecessors, trustees, successors and assigns (collectively, the "Hollister Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Owner Releasors, or any of them, ever had or now has against any one or more of the Hollister Released Parties, arising out of or related to the Settlement Agreement, First Amendment, this Amendment, any contract assigned and assumed under the Assignment and Assumption, the Contract or the Project.

(b)    Release by Hollister. Upon receipt of the Settlement Payment and delivery of the Assignment and Assumption pursuant to this Amendment, Hollister and its officers, directors, partners, members and managers and their respective predecessors, trustees, successors and assigns (collectively, the "Hollister Releasors") do hereby release and forever discharge the Owner and its parents, divisions, subsidiaries and affiliates, and the officers, directors, partners, members and managers and their respective predecessors, successors and assigns (collectively, the "Owner Released Parties") of and from any and all claims (as defined in section 101(5) of the Bankruptcy Code), obligations and causes of action, of any nature whatsoever, whether known or unknown, asserted or unasserted, fixed or contingent, which the Hollister Releasors, or any of them, ever had or now has against any one or more of the Owner Released Parties, arising out of or related to the Settlement Agreement, First Amendment, this Amendment the Contract or the Project.

13.    Releases as a Defense.  Owner and Hollister acknowledge and agree that (i) the releases set forth in this Amendment may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release; and (ii) no fact,

event, circumstance, evidence or transaction which could now be asserted or which may hereafter arise or be discovered shall affect in any manner the final and unconditional nature of such releases.

14.     <u>No Assignment of Released Claims</u>. Owner and Hollister represent and warrant that as of the date of this Agreement, it has not assigned, transferred, encumbered, or sold (or purported to assign, transfer or sell) all or portion of any claim (as defined in section 101(5) of the Bankruptcy Code), obligation or cause of action against any Party herein released.

15.     <u>Governing Law</u>. This Amendment shall be governed and construed in accordance with the laws of the State of New Jersey without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States, including the Bankruptcy Code, governs any matters set forth herein, in which case such federal law shall govern.

16.     <u>Contracts as Assigned and Assumed by Owner</u>.  Except as modified herein, the Contract, as modified by the Settlement Agreement, the First Amendment, and this Amendment, and the subcontracts assigned under the Assignment and Assumption, shall be binding upon, and shall inure to the benefit of, the parties to the Assignment and Assumption and remains in full force and effect.

17.     <u>Headings</u>.  The heading references herein are for convenience purposes only, and shall not be deemed to limit or affect any of the provisions of this Amendment.

18.     <u>Counterparts</u>.  This Amendment may be executed in one of more counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

19.     <u>No Oral Modification, Termination or Waiver</u>.  This Amendment cannot be modified, terminated or waived orally, but only in a writing executed by each of the Parties hereto.

20.     <u>Further Assurances</u>.  The Parties hereto shall execute and deliver such additional documents and take such additional action as may be necessary or desirable to effectuate the

provisions and purposes of this Amendment without the need for further Order of the Bankruptcy Court.

21. _Jurisdiction and Venue_. The Parties submit and consent to the jurisdiction (both personal and subject matter) of the Bankruptcy Court to adjudicate any dispute or claim arising from or related to this Amendment. In the event the Bankruptcy Court declines to or cannot exercise jurisdiction over any such disputes, then the Parties agree to the jurisdiction (both personal and subject matter) of the Superior Court of New Jersey in Morris County. THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATED TO THIS AMENDMENT.

22. _Authorization_. Each Party signing this Amendment hereby covenants and warrants that he/she is fully authorized to sign the Amendment on behalf of the Party he/she represents and is fully authorized to bind the Party to all of the terms of this Amendment. The Parties to this Amendment acknowledge that they have read all of the terms of this Amendment, that they have consulted with the counsel of their choice (or had the opportunity to consult with the counsel of their choice) regarding the terms of this Amendment, and enter into this Amendment voluntarily and without duress.

23. _Jointly Drafted_. The Parties to this Amendment acknowledge and stipulate that it has been drafted through a joint effort of the Parties and, therefore, shall not be construed in favor of or against any of the Parties. The terms of this Amendment shall be deemed to have been jointly negotiated and drafted by the Parties.

24. _Bankruptcy Court Approval_. The Parties stipulate and agree that this Amendment shall only become effective upon the approval of the Bankruptcy Court and entry of an order approving this Amendment (the "_Approval Order_"). Hollister will seek Bankruptcy Court approval of this Amendment and a waiver of any stay provided for under Bankruptcy Rule 6004(h).

Notwithstanding anything set forth to the contrary herein, the provisions set forth in Section 11, and Section 12(a) herein shall be effective upon execution of this Amendment notwithstanding any Approval Order. The Parties hereto shall support this Amendment and shall not file any objection to same.

26.    Costs of Enforcement. In the event of a default or breach of this Amendment by Owner, the Owner shall indemnify and hold harmless Hollister against any and all costs, damages, fees, including reasonable attorney's fees, and bankruptcy administrative expense claims.

27.    Filing of Amendment with Recorder of Deeds and Lien Releases.  Upon payment of all monies due pursuant to this Amendment, the Owner may file this Amendment, together with the Approval Order, with the Recorder of Deeds of Hudson County, New Jersey or any other State, County or real property register for the purpose of terminating any and all liens, claims and encumbrances filed by Hollister for all liens, claims and encumbrances existing as of the date of this Amendment or which could have been filed for work, services or goods performed or delivered prior to date of this Amendment.  Additionally, the Parties hereto represent to any party providing financing to the Owner that such signatory agrees, warrants and covenants that it shall release any liens, claims or encumbrances against Owner or the HUB Project arising on or before the date hereof, provided that it is paid in accordance with this Amendment.

IN WITNESS WHEREOF, the Parties hereto have executed, or caused this Amendment to

be executed by their duly authorized representatives, as of the date set forth above.

**HOLLISTER CONSTRUCTION SERVICES, LLC**
By: Bernard Katz, Liquidating Trustee

By: _____

     Name: BERNARD A. KATZ
     Title: LIQUIDATING TRUSTEE
     Address: c/o BAK ADVISORS, INC,
         626 S State St
         Newtown, Pa 18940

**OWNER**
Accordia Harrison Urban Renewal, LLC

By: _____

     Name: Anthony Lee
     Title: Authorized Signatory
     Address:

11

## SCHEDULE A

Assignment and Assumption Agreement

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("Agreement") is made ("Effective Date"), by, between and among Bernard Katz as Liquidating Trustee of Hollister Construction Services, LLC, ("Hollister" or "Contractor"); Accordia Harrison Urban Renewal, LLC, as Owner ("Accordia" or "Owner") (each a "Party," and collectively, the "Parties") is entered into as of July    , 2022;

### RECITALS

**WHEREAS,** Hollister and Owner are parties to certain contract documents dated as of September 25, 2017, including, without limitation, certain AIA Documents, A201 and A101, and all schedules annexed thereto, and all subsequent riders, modifications, and change orders (collectively, the "Contract"),[1] relating to  construction of 700 Frank E. Rogers Boulevard, Harrison, New Jersey (the "HUB Project"); and

**WHEREAS,** Hollister and various subcontractors are parties to certain subcontract documents of various dates and all schedules annexed thereto, and all subsequent riders, modifications, and change orders (collectively, the "Subcontracts"); and

**WHEREAS,** Hollister has obtained various building and construction permits based on certain plans and specifications for the HUB Project (the "Plans and Permits"); and

**WHEREAS,** on or about ~~June~~ July 14, 2022 XXXX_____, Hollister and Owner entered into that certain Second Amendment to the Settlement Agreement by between and among Hollister and Owner ("Second Amendment");

**WHEREAS,** pursuant to the Second Amendment, the Parties have agreed that in consideration for a final payment to Hollister and other good and valuable consideration, Owner

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Contract or Amendment.

will accept an assignment of the Contract, the Subcontracts, and the Plans and Permits and assume all of the obligations therein.

**WHEREAS**, as set forth in the terms and conditions herein, and in the Second Amendment, the Parties have reached an agreement to fully and finally settle and discharge all matters in controversy between and among them in connection with the HUB Project; and,

**NOW, THEREFORE**, in consideration of the agreements, promises and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged and intending to be legally bound hereby, the Parties agree as follows:

1.    <u>Whereas Clause Incorporation</u>.    The precatory ("Whereas") clauses are incorporated herein and made a part of this Agreement.

2.    <u>Assignment.</u>  In consideration of the terms and conditions set forth in the Second Amendment and undertakings set forth herein, Hollister assigns, transfers and sets over unto Owner all of Hollister's right, title, interests, obligations and liabilities in and to the following contracts (collectively the "Assigned Contracts") i) the Contract; ii) the Subcontracts; iii) the Plans and Permits all, as set forth in  set forth in Exhibit A.

3.    <u>Assumption</u>. Owner assumes all of Hollister's right, title, interests, obligations and liabilities in and to the Assigned Contracts, including, but not limited to all of the terms, conditions and covenants including all payment and performance obligations without limitation.

4.    <u>Indemnification</u>.  Owner shall indemnify, defend and hold harmless Hollister and its officers, directors, partners, members, and managers and their respective predecessors, trustees, successors and assigns against any and all claims, loss, liability, cost, default, damages, expenses (including without limitation, reasonable attorney's fees, costs and disbursements), fees

liens, demands, and or other amounts, without limitation, relating to or in any way connected with the Second Amendment and the Assigned Contracts, whenever occurring or having previously occurred and specifically including but not limited to any non-payment for work performed or materials supplied in connection with the HUB Project by any subcontractors, suppliers or vendor of any tier.

5.    <u>Obligations Unconditional</u>.    The obligations under this Agreement shall be complied with strictly in accordance with the terms hereof, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of the Assigned Contracts or affecting any of the rights of any party with respect thereto. The liability of the Owner hereunder shall not be impaired, abated, deferred, diminished, modified, released, terminated or discharged, in whole or in part, or otherwise affected, by any event, condition, occurrence, circumstance, proceeding, action or failure to act, with or without notice to, or the knowledge or consent of, Hollister, including, without limitation:

(a)        any amendment, modification or extension of any of the Assigned Contracts;

(b)        any extensions of time for performance, whether in whole or in part, of any obligation given prior to or after default under any of the Assigned Contracts;

(c)        any waiver of or assertion or enforcement or failure or refusal to assert or enforce, in whole or in part, any payment of any obligation, claim, cause of action, right or remedy which Hollister, at any time, had under any Assigned Contract; or

(d)        any assignment, conveyance, merger or other transfer, voluntary or involuntary (whether by operation of law or otherwise) of all or any Assigned Contract or rights under any Assigned Contract;

(e)        any accuracy or inaccuracy of any representations or warranties made by Hollister;

(f)        any conditions of the HUB Project including any latent defects;

6.     <u>No Admission of Liability</u>.  The Second Amendment and this Agreement represents a compromise of numerous matters that are in controversy.  The purpose of this Agreement is to resolve such matters and the Parties agree that in no event shall this Agreement, or any of its provisions, or any negotiations, statements, or proceedings relating to it, be construed in any way as, offered as, received as, used as, or deemed to be evidence of any kind in any action or in any judicial, administrative, or other proceeding, except in a proceeding to enforce the terms of this Agreement.  Without limiting the foregoing, neither this Agreement, nor any related correspondence, negotiations, statements, or proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence of, any admission or concession by any person or entity of any liability or wrongdoing on the part of any party to this Agreement.

7.     <u>Cooperation</u>. Owner agrees to reasonably cooperate with Hollister in connection with Hollister's ongoing contract disputes relating to any terminated subcontracts not assigned herein, including, but not limited to providing reasonable access to the HUB Project and any documents related thereto. Owner acknowledges and agrees that any recovery by Hollister in connection with the terminated subcontracts shall solely be to benefit of Hollister.

8.      <u>Severability</u>.  If any term or provision of this Agreement is determined by a court of competent jurisdiction to be illegal or unenforceable, all other terms and provisions of this Agreement will remain effective and will be enforced to the fullest extent permitted by applicable law.

9.      <u>Any Amendment Shall Be In Writing</u>.  This Agreement shall not be amended, altered, revised, modified, terminated, or changed except by a subsequent written agreement executed by all parties hereto, and then such amendment shall be effective only in the particular instance and for the purpose for which it is given.

10.      <u>No Reliance on Representations of Other Parties</u>.  It is understood and agreed that, in connection with the negotiation and consummation of this Agreement, the Parties have relied and are relying wholly upon their own judgment, beliefs, knowledge, and the advice of counsel, and have not relied and are not relying upon any statement, representation, or conduct of the other or any other person or the various representatives, agents, employees, or attorneys of the other or any other person.

11.      <u>Access to Legal Counsel</u>.

A.      The Parties acknowledge that they each have had the opportunity to consult with legal counsel of their choosing prior to entering into this Agreement, that they have relied upon the legal advice of such counsel, that the terms of this Agreement have been completely read and explained to them by their attorney(s) and that those terms are fully understood and voluntarily accepted by them.

B.    The Parties further stipulate and agree that they each have had an opportunity to participate in the negotiation and drafting of this Agreement and that any ambiguity in this Agreement will not be construed for or against either party.

11.    <u>Each Party to Bear Own Costs</u>.    Except as provided for in the Second Amendment, each party will bear its own costs, including but not limited to legal fees and expenses, concerning the matters set forth in this Agreement, and the negotiations for and preparation of this Agreement.

12.    <u>Miscellaneous Terms and Conditions</u>.

A.    <u>Entire Agreement and Successors in Interest</u>.    This Agreement, as well as the documents annexed hereto, contains the entire agreement among the Parties with regard to the matters set forth herein and, unless otherwise explicitly stated herein, supersedes any prior written or oral agreements, understandings or arrangements, and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors, and assigns of each.

B.    <u>Execution in Counterparts</u>.    This Agreement may be executed in several counterparts, and as so executed shall constitute an agreement, binding to the extent provided herein on the Parties, notwithstanding the fact that the Parties have not physically signed the signature page of the original or the same counterpart.    Facsimile and electronic signatures shall be accepted and deemed to be original signatures and shall be binding on the parties upon signing.

C.    <u>Headings</u>.    The headings contained in this Agreement are merely for convenience of reference and shall not under any circumstances affect the meaning or interpretation of this Agreement.

D.    <u>Authority</u>.    The persons executing this Agreement represent and warrant that they have the authority to sign on behalf of their respective Parties.

E.    <u>Third-Party Beneficiaries</u>.    This Agreement is solely for the benefit of the Parties.    No provision of this Agreement shall in any way inure to the benefit of, provide a release to or create any rights whatsoever in any other person or entity (including the public at large) unless expressly provided for herein.

F.    <u>Governing Law</u>. This Agreement shall be construed in accordance with the laws of the State of New Jersey.

G.    <u>Assignment</u>. This Agreement shall not be assigned by either party without the prior written consent of the other party hereto.

IN WITNESS WHEREOF, we have hereunto set our hand and seals as of the date above written.

HOLLISTER CONSTRUCTION
SERVICES, LLC
By: Bernard Katz, Liquidating Trustee

By: _____

     Name: BERNARD A. KATZ
     Title: LIQUIDATING TRUSTEE
     Address: C/O BAK ADVISORS LLC
     626 S. State St.
     Newtown, Pa. 18940

OWNER
Accordia Harrison Urban Renewal, LLC

By: _____

     Name: Anthony Lee
     Title: Authorized Signatory
     Address:

**The Hub – Contracts Assigned**

| Contract |
| --- |
| Hollister Construction Services, LLC |

AIA Documents, A201 and A101, and all schedules annexed thereto, and all subsequent riders, modifications, and approved change orders through CO#197.

| Subcontracts | Original Contract | Approved Change Orders | Revised Contract Amount | Payments Prior to Filing | Payments Made Direct by Owner | Pre-Petition Payments | Post-Petition Payments | Total Payments | Balance Remaining | Contract Assigned |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Able Door | $ 6,950.00 | $ (417.00) | $ 6,533.00 | $ 6,255.00 | $ - | $ - | $ - | $ 6,255.00 | $ 278.00 | Project Agreement |
| Advanced Scaffold | $ 8,929.84 | $ 20,773.45 | $ 29,703.29 | $ 29,703.29 | $ - | $ - | $ - | $ 29,703.29 | $ - | Project Agreement |
| Baileys | $ 9,750.00 | $ 104,525.00 | $ 114,275.00 | $ 8,775.00 | $ - | $ - | $ 105,500.00 | $ 114,275.00 | $ - | Project Agreement |
| Barcelona Fence | $ 2,200.00 | $ 2,700.00 | $ 4,900.00 | $ 4,900.00 | $ - | $ - | $ - | $ 4,900.00 | $ - | Project Agreement |
| Benco | $ 110,000.00 | $ (31,965.00) | $ 78,035.00 | $ - | $ - | $ 11,986.88 | $ - | $ 11,986.88 | $ 66,048.12 | Project Agreement |
| Chutes Enterprises | $ 61,000.00 | $ (1,153.50) | $ 59,846.50 | $ 17,302.50 | $ - | $ - | $ 8,122.50 | $ 25,425.00 | $ 34,421.50 | Project Agreement |
| Dyer Insulation | $ 484,000.00 | $ (18,630.00) | $ 465,370.00 | $ 427,950.00 | $ - | $ 9,000.00 | $ - | $ 436,950.00 | $ 28,420.00 | Project Agreement |
| Edgeboro International | $ 186,959.34 | $ 6,785.83 | $ 193,745.17 | $ 183,212.39 | $ - | $ - | $ - | $ 183,212.39 | $ 10,532.78 | Project Agreement |
| Esposito Construction | $ 369,988.75 | $ 468,789.71 | $ 838,778.46 | $ 819,573.99 | $ - | $ - | $ - | $ 819,573.99 | $ 19,204.47 | Project Agreement |
| Fast Signs | $ 10,936.61 | $ - | $ 10,936.61 | $ - | $ - | $ - | $ - | $ - | $ 10,936.61 | Project Agreement |
| FM Construction | $ 4,090,000.00 | $ (818,301.07) | $ 3,271,698.93 | $ 3,063,875.78 | $ - | $ 99,823.15 | $ 108,000.00 | $ 3,271,698.93 | $ - | Contract Terminated Not Assigned. Estate Retains claims. |
| Friends Carpentry | $ 476,000.00 | $ (258,455.03) | $ 217,544.97 | $ 112,453.38 | $ - | $ 49,748.10 | $ 55,343.49 | $ 217,544.97 | $ - | Contract Terminated Not Assigned. Estate Retains claims. |
| Hadded Heating and Plumbing | $ 1,913,083.00 | $ 305,719.84 | $ 2,218,802.84 | $ 1,677,064.78 | $ - | $ - | $ 442,564.25 | $ 2,119,629.03 | $ 99,173.81 | Project Agreement |
| Imperial Floors | $ 1,380,083.00 | $ 81,091.68 | $ 1,461,174.68 | $ 371,503.09 | $ 137,668.28 | $ 50,372.83 | $ 716,638.23 | $ 1,276,182.43 | $ 184,992.25 | Project Agreement |
| Iron Works and Design | $ 749,000.00 | $ 227,765.96 | $ 976,765.96 | $ 665,102.05 | $ - | $ 20,228.05 | $ 98,803.09 | $ 784,133.19 | $ 192,632.77 | Project Agreement |
| James Dean Custom Carpentry | $ 32,245.00 | $ 151,653.00 | $ 183,898.00 | $ 174,200.00 | $ - | $ - | $ - | $ 174,200.00 | $ 9,698.00 | Project Agreement |
| JM Pereira and sons | $ 479,665.70 | $ (13,210.68) | $ 466,395.02 | $ 198,160.05 | $ - | $ - | $ - | $ 198,160.05 | $ - | Project Agreement |
| Joffe | $ 716,797.00 | $ 134,506.25 | $ 851,303.25 | $ 322,185.67 | $ 122,811.47 | $ 113,714.32 | $ 218,784.74 | $ 777,496.20 | $ - | Project Agreement |
| Kone Ince | $ 643,700.00 | $ (79,456.20) | $ 564,243.80 | $ 494,753.00 | $ - | $ 27,013.50 | $ - | $ 521,266.50 | $ 42,977.30 | Project Agreement |
| Kemsco Construction | $ 705,000.00 | $ (23,295.10) | $ 681,704.90 | $ 609,108.30 | $ 63,872.22 | $ 8,724.38 | $ - | $ 681,704.90 | $ - | Project Agreement |
| MASA Architectural | $ 335,000.00 | $ (79,346.50) | $ 255,653.50 | $ 112,099.50 | $ - | $ - | $ 143,554.00 | $ 255,653.50 | $ - | Contract Terminated Not Assigned. Estate Retains claims. |
| Maverick Building Services | $ 52,500.00 | $ 30,281.50 | $ 82,781.50 | $ - | $ - | $ - | $ 30,281.50 | $ 30,281.50 | $ 52,500.00 | Project Agreement |
| Meli Plumbing | $ 2,050,000.00 | $ (72,408.22) | $ 1,977,591.78 | $ 1,710,278.10 | $ - | $ 21,592.13 | $ 185,138.13 | $ 1,917,008.36 | $ 60,583.42 | Project Agreement |
| Midway Glass and Mirror | $ 624,624.00 | $ 6,713.15 | $ 631,337.15 | $ 373,801.02 | $ - | $ 33,686.85 | $ 101,077.43 | $ 508,565.30 | $ 122,771.85 | Project Agreement |
| Mito Insulaton | $ 493,629.01 | $ (93,962.33) | $ 399,666.68 | $ 328,550.22 | $ - | $ 19,589.07 | $ 5,905.07 | $ 354,044.36 | $ 39,622.32 | Project Agreement |
| Mr. Concrete Corp | $ 2,247,300.00 | $ 70,560.96 | $ 2,317,860.96 | $ 2,129,519.44 | $ - | $ - | $ 78,840.00 | $ 2,208,359.44 | $ 109,501.52 | Project Agreement |
| Nomad Framing | $ 1,494,627.83 | $ 172,293.65 | $ 1,666,921.48 | $ 1,525,577.05 | $ - | $ 4,859.63 | $ 129,974.80 | $ 1,660,411.48 | $ 6,510.00 | Project Agreement |
| Nomad Supply | $ 2,441,819.28 | $ (119,711.28) | $ 2,322,108.00 | $ 2,197,637.33 | $ - | $ - | $ 120,580.18 | $ 2,318,217.51 | $ 3,890.49 | Project Agreement |
| Ocean Steel Corp | $ 2,166,700.00 | $ (47,617.00) | $ 2,119,083.00 | $ 2,070,029.25 | $ - | $ 285.00 | $ - | $ 2,070,314.25 | $ 48,768.75 | Project Agreement |
| Orion Interiors | $ 148,276.00 | $ 2,128.50 | $ 150,404.50 | $ 150,404.50 | $ - | $ - | $ - | $ 150,404.50 | $ - | Project Agreement |
| PC Richards | $ 578,948.05 | $ 55,702.82 | $ 634,650.87 | $ 261,238.65 | $ - | $ - | $ - | $ 261,238.65 | $ 66,993.35 | Project Agreement |
| Pella Window and doors | $ 1,011,551.37 | $ (48,867.46) | $ 962,683.91 | $ 921,718.63 | $ - | $ - | $ - | $ 921,718.63 | $ 40,965.28 | Project Agreement |
| Pentel Drywall | $ 2,095,000.00 | $ (172,495.49) | $ 1,922,504.51 | $ 1,437,155.44 | $ - | $ 181,288.43 | $ 125,028.36 | $ 1,743,472.23 | $ 179,032.28 | Project Agreement |
| Pereira Electric | $ 2,645,000.00 | $ 278,934.76 | $ 2,923,934.76 | $ 2,025,502.85 | $ - | $ 161,349.20 | $ 430,427.10 | $ 2,617,279.15 | $ 306,655.61 | Project Agreement |
| PSG Interiors | $ 1,975,000.00 | $ (49,296.00) | $ 1,925,704.00 | $ 1,234,800.00 | $ 49,296.00 | $ 54,450.00 | $ 284,400.00 | $ 1,622,946.00 | $ 302,758.00 | Project Agreement |
| Reynolds Painting Group | $ 445,000.00 | $ (42,834.00) | $ 402,166.00 | $ 67,500.00 | $ - | $ 44,469.00 | $ 34,627.50 | $ 146,596.50 | $ 255,569.50 | Project Agreement |
| Schnell contracting | $ 154,500.00 | $ (114,262.00) | $ 40,238.00 | $ 38,430.00 | $ - | $ - | $ - | $ 38,430.00 | $ 1,808.00 | Project Agreement |
| Sea Box | $ 1,727.28 | $ 4,617.59 | $ 6,344.87 | $ 4,486.73 | $ - | $ - | $ - | $ 4,486.73 | $ 1,858.14 | Project Agreement |
| SP Builders | $ 100,000.00 | $ 73,966.00 | $ 173,966.00 | $ 81,000.00 | $ - | $ - | $ - | $ 81,000.00 | $ 92,966.00 | Project Agreement |
| STMR | $ 398,387.00 | $ 65,127.00 | $ 463,514.00 | $ - | $ - | $ - | $ 419,488.30 | $ 419,488.30 | $ - | Project Agreement |
| S&S Roofing | $ 293,000.00 | $ 446,895.00 | $ 739,895.00 | $ - | $ - | $ - | $ 383,295.40 | $ 383,295.40 | $ - | Project Agreement |
| Target Fire Protection Inc. | $ 599,000.00 | $ - | $ 599,000.00 | $ 483,986.00 | $ - | $ 41,408.73 | $ 20,142.00 | $ 545,536.82 | $ 53,463.18 | Project Agreement |
| 5th Avenue Millwork | | $ 119,680.00 | $ 119,680.00 | $ - | $ - | $ - | $ 83,012.00 | $ 83,012.00 | $ 36,668.00 | Project Agreement |
| Bailey's Square Janitorial | | $ 120,000.00 | $ 120,000.00 | $ - | $ - | $ - | $ 30,191.16 | $ 30,191.16 | $ 89,808.84 | Project Agreement and T&M |
| Legends Contracting | | $ 35,000.00 | $ 35,000.00 | $ - | $ - | $ - | $ 12,500.00 | $ 12,500.00 | $ 22,500.00 | Project Agreement |
| DCI Awnings | | $ 83,700.00 | $ 83,700.00 | $ - | $ - | $ - | $ 33,480.50 | $ 33,480.50 | $ 50,219.50 | Project Agreement |
| MILDEC | | | | | | | $ - | $ - | $ 1,650,000.00 | Staffing Agreement |
| | $ - | $ - | $ - | | | | $ - | $ - | | |
| | $ 34,787,818.06 | $ 978,227.79 | $ 35,766,045.85 | $ 26,339,293.07 | | $ 953,589.25 | $ 4,405,699.73 | $ 32,072,230.02 | $ 4,294,726.64 | |

| Plans and Permits |
| --- |
| All plans, permits, certificates of occupancy, or other project related documents in the possession of Hollister Construction Services, LLC. |

All contracts are subject to that certain Settlement Agreement between Owner and Hollister as amended through the 2nd Amendment.