| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY**<br><br>CONNELL FOLEY LLP<br>Philip W. Allogramento III, Esq.<br>Mitchell W. Taraschi, Esq.<br>56 Livingston Avenue<br>Roseland, NJ 07068<br>Telephone: (973) 535-0500<br>Facsimile: (973) 535-9217<br>PAllogramento@connellfoley.com<br>MTaraschi@connellfoley.com<br>*Counsel to Creditor FM Construction Group, LLC* | |
| In re:<br><br>Hollister Construction Services, LLC,<br><br>           Debtor. | Bankr. Case No.: 19-27439 (MBK)<br><br>Chapter 11<br><br>Hearing Date/Time: May 18, 2023 @10am<br><br>Hon. Michael B. Kaplan, U.S.B.J. |

**FM CONSTRUCTION GROUP, LLC'S OBJECTION TO LIQUIDATING TRUSTEE'S MOTION FOR AN ORDER APPROVING SECOND AMENDMENT TO SETTLEMENT AGREEMENT BY AND BETWEEN THE LIQUIDATING TRUSTEE AND ACCORDIA HARRISON URBAN RENEWAL, LLC PURSUANT TO FED. R. BANKR. P. 9019 AND GRANTING RELATED RELIEF**

TO:    THE HONORABLE MICHAEL B. KAPLAN
         UNITED STATES BANKRUPTCY JUDGE:

FM Construction Group, LLC ("FM"), by and through its undersigned counsel, Connell Foley LLP, hereby files this objection and reservation of rights (the "Objection") in response to the Motion of BAK Advisors, LLC, by and through Bernard A. Katz, in his capacity as Liquidating Trustee (the "Trustee" or "Hollister") for an Order Approving Second Amendment to the Settlement Agreement concerning the HUB Project[1]. FM, in support of this Objection, respectfully states as follows:

---

[1] Terms not defined herein shall be applied their meaning as set forth in the Motion.

7392593-1

1.      FM and the Trustee are involved in an ongoing adversary proceeding before this Court (Adv. Pro. No. 22-01037-MBK; the "Adversary Proceeding") involving multiple claims and defenses that directly relate to contracts and subcontracts on the HUB Project and the HUB Settlement Agreement.  In response to the Motion and the relief it seeks, FM objects to any modification of the terms of the HUB Settlement Agreement by less than all interested parties that could potentially serve to collaterally attack, impair, and/or negate the claims and defenses of the FM in the ongoing Adversary Proceeding or that may serve to impact FM's rights against the Owner directly in a different forum[2].  Additionally, the terms of the bi-lateral Assignment and Assumption Agreement attached to the proposed Second Amendment should also not be binding and enforceable upon FM, nor should it modify any of FM's now existing rights and defenses against Owner or Trustee.

2.      As an initial matter, the proposed Second Amendment to the HUB Settlement Agreement is not signed by all parties to the HUB Settlement Agreement.  No attempt was made to seek FM's consent to this proposed Second Amendment despite FM being a direct signatory to the HUB Settlement Agreement.  Instead, it is simply a bi-lateral agreement between Owner and Trustee that seeks to be so ordered by this Court.  Under the express terms of the HUB Settlement Agreement, the global settlement that the parties entered into in 2019 so as to move the long suffering HUB Project forward "cannot be modified, terminated or waived orally, but only in writing executed by each of the Parties hereto" (HUB Settlement Agreement, Para. 19). "Parties" was defined in the HUB Settlement Agreement to include all subcontractors, including FM.  This provision exists so that the rights of FM and others are not unfairly modified without

---

[2] In the Adversary Proceeding, the Court issued a Memorandum Decision on March 10, 2023 wherein it ruled, *inter alia*, that the Court lacks subject matter jurisdiction to consider FM's claims against the Owner post plan confirmation. Adversary Proceeding, Document No. 19, p. 8.  It would be inconsistent with this prior Memorandum Decision to now permit the modification/adjudication of such non-debtor claims/defenses via a R. 9019 process.

their consent as appears to be occurring here and such a modification should not be permitted to harm FM.

3. FM believes that the proposed Second Amendment and its attached Assumption and Assignment Agreement unfairly attempt to impact the rights of FM in the following ways: a) the Trustee's Proposed settlement with the Owner should not be deemed in any way to conclusively determine how the settlement payment or decision by Trustee to withdraw from the HUB Project can be characterized in the Adversary Proceeding; b) the attempt by Trustee in Paragraph 10 of the proposed Second Amendment should not be deemed conclusive of any fact or issue in the Adversary Proceeding, especially with respect to FM's right to challenge the damages asserted by Trustee; and c) any attempt by the Trustee to retain claims against FM and assign all liabilities of the Hub Project to Owner should not be deemed conclusive of any fact or issue in the Adversary Proceeding.  Furthermore, FM asserts that it is in privity with the Owner and has claims against the Owner based upon the Settlement Agreement.  Nothing in the Motion should act to release or modify claims that FM has against Owner.  Any releases contained in the proposed Second Amendment should also therefore not impact the rights of FM to claim damages/setoff from either Trustee or Owner.

4. The Trustee's reliance upon R. 9019 and its broad cited principles to justify the proposed Second Amendment are misplaced where the proposed settlement placed before the Court is not agreed to by all of the parties that it seeks to bind.  What exists before the Court instead is merely a proposed settlement of one adversary case between two parties that now seeks to unfairly burden FM with their proposed resolution.  There is no equitable reason to now allow the Trustee, a Trustee that chose to sue the Owner and FM separately (despite the obvious commonality of facts and issues and the potential judicial efficiencies to include them together),

to now bind FM to this new deal with the Owner that does not need to tie directly into the HUB Settlement Agreement. To allow the Trustee to proceed this way will be permitting the R. 9019 process to be grossly misused in a post-confirmation setting as essentially a non-consensual vehicle to strip non-parties to the proposed compromise of their rights that are already in litigation before the Court (or that this Court has already concluded it lacks jurisdiction to address). This is inequitable to FM and should not be permitted.

5. Even overlooking the fact that most of the parties to be impacted by the proposed settlement did not sign or otherwise agree to the document presented to the Court for approval, the Trustee's Motion still fails to carry its burden under the standards of R. 9019. To determine whether a settlement is fair and equitable, Third Circuit courts consider four factors: "(1) the probability of success in litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interest of the creditors." In re Nutraquest, 434 F.3d 639, 644 (3d. Cir. 2006)(reciting the factors from its prior Martin case). In addition to the Martin factors, the Court must also consider the "fair and equitable" standard as articulated by the Third Circuit which requires the Court "to look to the fairness of the settlement to other persons, i.e. the parties who did not settle." In re Nutraquest, 434 F.3d at 645. The Trustee fails on each of these considerations.

6. With respect to the Martin factors, the Trustee is taking a very curious interpretation of the facts to argue its case and, with some points, even fails to articulate why they apply in favor of the Motion. First, with respect to probability of success in litigation, a review of the adversary case against the Owner (22-01276-MBK) shows that the Trustee was at the finish line with respect to its case against the Owner. Owner had waived its right to file a

responsive pleading early on in the case (see Dkt. No. 8), default was entered against Owner on February 6, 2023 (see Dkt. No. 13), a Default Judgment Motion was filed on February 15, 2023 (see Dkt. No. 15), no opposition to the Default Judgment Motion was filed, and a Proof Hearing was set for March 16, 2023 (see Dkt. No. 16).  Only on the eve of success does it appear that the Trustee backed away from achieving its requested relief to reach the proposal before the Court today.  There is no explanation from the Trustee why success on the merits was not a foregone conclusion and accordingly this factor fails on its face[3].  Second, the difficulties of collection factor, is also not argued with particularity by the Trustee.  The Motion and proposed Second Amendment reveal that the Owner has $1,170,000 on hand to fund the settlement and its presumably holds ownership of the HUB Project which could both serve as sources of collection if the Trustee completed its Motion for Default Judgment and sought collection.  Oddly, the Trustee also argues that "Subcontractors with continued work can look directly to [Owner] for payment" – which is contrary to arguing, for example, that Owner was hopelessly insolvent and unable to pay any judgment obtained.  The Trustee has failed to substantively address why collection would be an issue requiring settlement here and this factor should be weighed against granting the Motion.  Third, with respect to the complexity of litigation factor, the Trustee fails to do more than recite that the litigation of the <u>current</u> Owner and Trustee adversary case would be complex or difficult to prosecute.  Instead, as noted above, the Trustee had a Motion for Default Judgment against the Owner scheduled, with no answer, motion, or opposition pending in that case by the Owner to the relief sought.  There is simply no basis to call the pending adversary case complex given that the Owner had not contested the same.  Seeming to know this,

---

[3] The Trustee improperly suggests that there could be "future proceedings related to the HUB Project that could be protracted and expensive . . .".  FM contends that these hypothetical future disputes are not before this Court today, may never exist at all, may not even be subject to the jurisdiction of this Court (in whole or in part), those persons who may be parties to those cases may not be on notice of this Motions, and the Trustee seems to be implying that this Court should act in this post-confirmation case to deny unknown future third parties rights they may have.

the Trustee just points to how some hypothetical <u>future</u> litigation(s) could be complex and protracted, but that is not before the Court and it does not speak to why this present case needs to be settled between the Owner and Trustee. Finally, with respect to the fourth factor involving paramount interest of the creditors, the Trustee again fails to articulate how this settlement would be in the best interest of the creditors of <u>this bankruptcy</u>[4]. FM is a creditor, but many of the subcontractors that Trustee speaks of benefiting from the case may not be. Instead, we have a proposal to settle what seems like an easy win for the Trustee on a case that had already reached its conclusion of legal spend that could be used to obtain money on the HUB Project, but no explanation or analysis at all as to why this Settlement is better for the creditors of this case compared to a money judgment. Thus, this fourth <u>Martin</u> factor again fails to support the Motion proposed today.

7. With respect to the "fair and equitable" standard that overlays the entire <u>Martin</u> factor analysis, the burdens placed on FM should not be ignored by the Court. Trustee had the ability to seek, without opposition, a judgment for everything it was seeking against the Owner, which would have not impacted FM. Instead, Trustee chooses to negotiate a settlement with terms that impact FM and other parties beyond the confines of that adversary proceeding. As noted herein, this is unfair to FM, which has engaged in substantive litigation with Trustee since prior to the Trustee's suit against the Owner. FM is entitled to have this Court consider all of the facts and issues that are being developed in FM's Adversary Case without attempts to collaterally attack FM's right to its day in Court. The damage that could be done to FM's case should not be lightly thrown away for a settlement with the Owner that doesn't even appear necessary under the <u>Martin</u> factors or the "fair and equitable" standard.

---

[4] The Motion seems to confuse the fourth <u>Martin</u> factor by arguing that the proposed Second Amendment is "in the paramount interest<u> of creditors and subcontractors on the HUB [P]roject</u>." (Motion at para. 32, emphasis added).

8. Should the Trustee want to enter into what is essentially a new settlement by and between itself and the Owner <u>only</u>, FM does not begrudge it that ability. However, as currently proposed in the Motion and its proposed form of Order, it is unfair to permit Trustee and Owner to impact the claims or defenses of FM with their new agreement.

9. Accordingly, while the Liquidating Trustee and Owner may ultimately enter into a bi-lateral arrangement addressing what funds are owed between them related to the HUB Project, such agreement should not be deemed to modify the terms or the HUB Settlement Agreement as it impacts non-signatories to the newly proposed settlement terms and nothing agreed to between these two parties should be allowed to impact or have legal effect upon the ongoing Adversary Proceeding between the Trustee and FM or a potential litigation by FM against the Owner in a different forum.

Wherefore, it is respectfully requested that the Motion only be approved by this Court if the Order granting the same provides that the proposed Second Amendment and its attached Assumption and Assignment Agreement shall not bind FM or impact the legal rights of FM and that it shall not be deemed a determination by this Court of any fact or issue in the pending Adversary Proceeding.

        CONNELL FOLEY LLP
        *Counsel to FM Construction Group, LLC*

        By:    /s/ *Philip W. Allogramento III*
                  Philip W. Allogramento III, Esq.
                  Mitchell W. Taraschi, Esq.
                  CONNELL FOLEY LLP
                  56 Livingston Avenue
                  Roseland, NJ 07068
                  Telephone: (973) 535-0500
                  Facsimile: (973) 535-9217
                  PAllogramento@connellfoley.com
                  MTaraschi@connellfoley.com

Date: May 11, 2023