| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br>Mitchell Malzberg, Esq.<br>Law Offices of Mitchell J. Malzberg, LLC<br>PO Box 5122<br>6 E. Main Street, Suite 7<br>Clinton, New Jersey 08809<br>Telephone: (908) 323-2958<br>Facsimile: (908) 933-0808<br>mmalzberg@mjmalzberglaw.com<br>*Counsel to the Liquidating Trustee* | |
| In Re:<br><br>HOLLISTER CONSTRUCTION SERVICES, LLC[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 19-27439/CMG<br><br>Chief Judge: Hon. Christine M. Gravelle<br><br>Hearing Date: |

**MOTION OF LIQUIDATING TRUSTEE FOR ENTRY OF AN ORDER AUTHORIZING AND ALLOWING THE LIQUIDATING TRUSTEE TO PAY THE ADMINISTRATIVE CLAIM OF THE SIX FORMER EMPLOYEES' KEY EMPLOYEE RETENTION PAYMENTS AS IF IT WAS PART OF THE SETTLEMENT IN AND UNDER THE PLAN AND ALLOW FOR FEE ENHANCEMENTS TO THE LIQUIDATING TRUST PROFESSIONALS IF AVAILABLE**

The Application, by and through his counsel, the Law Offices of Mitchell J. Malzberg, LLC, of Bernard A. Katz, President of BAK Advisors Inc., the Liquidating Trustee (the "Trustee" or "LT") of the Hollister Construction Liquidating Trust ("Hollister Trust") seeking entry of an Order (1) Authorizing and Allowing the Liquidating Trustee authority to allow and to pay the Key Employee Retention payments as if it was part of the Settlement in and under the Plan and (2) allow for fee enhancements to the Liquidating Trust professionals including the Liquidating Trustee if the funds are available, and for such other relief as this court deems just and necessary. In support of this Motion, the LT through his counsel states as follows:

---

[1] The Debtor of this Chapter 11 case and the last four digits of it's taxpayer identification number is: Hollister Construction Services, LLC (5404)

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey entered on July 23, 1984, as amended on September 18, 2012 (Simandle, C.J.). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The LT consents to the entry of a final order on the Motion by this Court if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4. The statutory and legal predicates for the relief sought herein are Sections 1142 and Section 105 of the Bankruptcy Code, the Hollister Trust and the Confirmation Order. The within motion is a core proceeding.

## BACKGROUND

A. **GENERAL BACKGROUND**

5. On September 11, 2019 (the "Petition Date"), Hollister Construction Services, LLC ("Debtor or Hollister") filed a Chapter 11 Petition.

6. The Debtor's Plan was confirmed and an Order confirming the Debtor's First Amended Plan of Liquidation (Docket No. 1769) was entered on April 16, 2021. The effective date of the Plan occurred on April 30, 2021. A liquidating Trust was formed pursuant to the confirmed Plan. The Movant, BAK Advisors, Inc. was appointed as Liquidating Trustee of the Hollister Construction Liquidating Trust.

7. The Debtor had operated a substantial construction management firm.

8. Additional details regarding the Debtor's business, the facts and circumstances

leading up to the filing of the Chapter 11 Case and supporting the relief requested herein are set forth in the Declaration of Brendan Murray in Support of First Day Relief. [Docket No. 15].

9. As the Court is aware, the LT has been administering the Hollister Trust for over four (4) years. The Court recently entered an Order approving the Settlement in the SAX malpractice litigation ("SAX Settlement") in Adversary Proceeding No. 21-01358 by way of motion (See Docket No 96). The terms and conditions of the settlement were filed under seal (Docket No. 97). This Court entered an Order approving the SAX Settlement on October 28, 2025 (Docket No. 102).

B. **THE CHAPTER 11 KEY EMPLOYEE RETENTION PLAN MOTION**

10. As this Court is aware, prior to confirmation of the Plan on December 31, 2020, the Debtor filed a motion for entry of an Order (I) approving the Debtors Key Employee Retention Plan (hereinafter "KERP Motion") (Docket No. 1582). On or about January 13, 2021, Mr. Katz as the Independent Manager of the Debtor, submitted a declaration in support of the KERP Motion (Docket No. 1617). An Order was entered authorizing and allowing the KERP Motion as to the six (6) former Employees (Docket No. 1618). The KERP Order was entered on January 13, 2021.

11. As per the KERP Motion, in order to trigger the KERP allowance and payment, certain conditions had to be met (Docket 1582). The conditions were as follows:

> The KERP Bonuses will only be paid if the sum of the following items (the "Net Recovery of Escrow Jobs (hereinafter, "Net Recovery"") is $6,000,000 or greater, up to the maximum amount of $357,062.50. For every dollar the Net Recovery is less than $6,000,000, there will be a dollar-for-dollar reduction in the KERP. Thus, if the Net Recovery is less than $5,642,937.50, the amount of the KERP will be $0.00. Calculation of Net Recovery is as follows:
>     a. Cash balances in the Debtor's accounts (specifically account numbers ending 7598 and 4167) available for distribution, plus

    b. Cash balances in the Escrow Account available for distribution maintained by the third-party Escrow Agent pursuant to the Escrow Agreement dated November 6, 2019, minus

    c. Amount distributed to fund the Liquidating Trust (to be formed under a Chapter 11 plan in this case), minus

    d. Amount distributed to Chris Johnson's wife (Mr. Johnson is a member of the Debtor and its Head Coach) ($134,345.51) for her share of Just Below 70 MLK investment.

**C. THE LT IS SEEKING ENTRY OF AN ORDER ALLOWING THE KEY EMPLOYEE RETENTION PAYMENTS AS IF PART OF THE SETTLEMENT IN AND UNDER THE PLAN**

  12. The conditions to trigger and allow for the payment to the KERP Employees were not met. Now that all adversary proceedings have been concluded, the LT is in the process of finalizing and winding down the Hollister Trust. The within motion is being filed seeking authority for the LT to allow the Key Employee Retention payments as if it was part of the Settlement in and under the Plan and authority to pay same.

  13. The LT seeks this authority because most, if not all of these six (6) employees assisted and played a critical role in assisting the LT as it related to the SAX malpractice litigation which resulted in the SAX Settlement. The KERP Employees provided critical information, sat for depositions, and turned over documents in discovery that aided in the litigation and recovery. In other words, these six (6) employees provided critical insight and information to the LT and his counsel in the malpractice litigation which resulted in the SAX Settlement.

  14. Prior to making the within application, the LT sought and obtained the approval of the oversight Committee to seek to authorize and allow the KERP payments to the six (6) employees. In an abundance of caution, the LT filed the within motion on notice to all parties for the Court to enter an Order approving the KERP payments to allow the KERP payments to be paid as if it was part of the Settlement in and under the Plan.

15. The KERP bonuses which the LT seeks authority to allow as a Chapter 11 Administrative Claim to the 6 employees are as follows:

| NAME | KERP Bonus |
|---|---|
| Sean Camo | $67,230.77 |
| Sam Perrotta | $70,769.23 |
| Mike Ochs | $84,615.38 |
| Alexis Capozzi | $13,692.31 |
| Steve Knapp | $44,524.04 |
| Luis Gutierez | $69,230.77 |

The aforementioned amounts are the same amounts as the court previously authorized and approved but for the conditions to be met.

16. By the within motion, the LT seeks entry of an Order allowing and authorizing the administrative claim to the KERP Employees to be authorized and paid and to be paid as it was part of the Settlement in and under the Plan.

**D.  THE LIQUIDATING TRUSTEE SEEKS TO ALLOW FOR THE PAYMENT OF FEE ENHACMENTS TO THE LIQUIDATING TRUSTEE AND HIS PROFESSIONALS**

17. As the Court is aware, the LT has worked diligently to administer the Hollister Trust and effectuate the Plan and Settlement pursuant to the Plan. From the onset, this was a difficult Trust to administer with little to no money or prospect of recovery to satisfy the Settlement that was in the Plan. By and through the LT's efforts, along with the LT's professionals, to date, the Hollister Trust by the way of investigating and pursuing, prosecuting, and resolving estate causes of actions, have recovered in excess of $15 Million. From the onset of the Hollister Trust, this amount of recovery was never expected nor anticipated by the Parties in interest, let alone the LT.

18.   But for the Settlement reached at confirmation, the Plan would not have been confirmed. The Debtor was administratively insolvent. Pursuant to the Settlement contained in the Plan, the parties never expected that the LT on behalf of the Hollister Trust would recover

in excess of $15 Million to fund the Settlement and Waterfall in the Settlement and Plan.

19. After the SAX Settlement, the LT sought approval from PNC, Lowenstein Sandler, ARCH, and other parties to the Oversight Committee to pay a fee enhancement to the Liquidation Trust professionals which includes the LT. The Oversight Committee have approved same. By the within motion, the LT seeks authority to pay the Liquidating Trustee and each of the following of his professionals a fee enhancement in an amount not to exceed $450,000.00 or three percent (3%) of the $15 Million, if the funds are available. The LT in his discretion, seeks the Entry of an order allowing the payment to the following LT professionals:

    a. Sills Cummis & Gross P.C.

    b. Law offices of Mitchell J. Malzberg LLC

    c. Eisner Amper Advisory

    d. BAK Advisors Inc. as Liquidating Trustee

## RELIEF REQUESTED

20. The LT seeks entry of the Proposed Order approving payment of the Key Employee Retention payments as a Chapter 11 Administrative Claim and paid as if it was part of the Settlement in and under the Plan and (2) allowing for fee enhancements to the Liquidating Trustee and his professionals if the funds are available.

## BASIS FOR RELIEF REQUESTED

21. As stated above, the LT seeks the entry of the Order authorizing the payment to the KERP Employees as if it was part of the Settlement in and under the Plan and due to their critical assistance in aiding in the SAX Settlement. In and of itself, the assistance warrants allowing the administrative payment to the KERP Employees to be paid as if was part of the Settlement in and under the Settlement and Plan.

22. Likewise, authorizing the payment of the fee enhancements is within the sound

discretion of this Court. The LT is also seeking approval of a fee enhancement to the LT and each of his professionals in light of the extraordinary and exceptional work done over these last four (4) years.

23. The LT has authority to take these actions pursuant to the Hollister Trust and in particular Sections 3.8, 3.12, and 3.13 of the Hollister Trust by the LT exercising his powers and business judgment under the Trust.

Section 3.8 provides, in pertinent part:

> <u>Agents and Professionals</u>. Subject to the Plan and this Agreement, the Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants or other professionals and employees as the Trustee deems appropriate in the reasonable exercise of his or her discretion, and whom the Trustee reasonably determines to have qualifications necessary to assist the Trustee in the proper administration of the Trust. Subject to Section 7.8 of this Agreement, the Trustee may pay the reasonable fees, costs and expenses of such persons (including himself/ herself), together with the reasonable costs incurred…

Section 3.12 in relevant part reads as follows:

> <u>Trustee Action</u>. The Trustee shall hold, collect, conserve, protect, and administer the Trust in accordance with the provisions of this Agreement, the Settlement Agreement, and the Plan, and pay and distribute amounts as set forth therein for the purposes set forth in the Plan, the Settlement Agreement and this Agreement. Any good faith determination by the Trustee as to what actions are in the best interests of the Trust shall be determinative, subject to approval by the Liquidating Trust Committee, if required by the Plan.

Section 3.13 reads as follows:

> <u>Bankruptcy Court Approval of Trustee Actions</u>. Except as provided in the Plan or as otherwise specified in this Agreement, the Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder to the Trustee. Except as provided in the Plan, the Settlement Agreement, the Confirmation Order or otherwise specified in this Agreement, the Trustee, with the oversight of the Liquidating Trust Committee as set forth herein, shall exercise his or her business judgment for the benefit of the Beneficiaries in order to maximize the value of the Assets and distributions to the Beneficiaries, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding

the foregoing in this Section 3.13, the Trustee may seek Bankruptcy Court approval for authority to take a particular action which the Trustee may desire to have explicit approval of the Bankruptcy Court with respect to the Assets, the Trust, and the Settlor, and as provided in the Plan, the Settlement Agreement or this Agreement, including the administration and distribution of the Assets or resolution of any of the Known Litigation Claims. The Bankruptcy Court shall retain jurisdiction for such purposes and shall approve or disapprove any such proposed action upon motion with notice to the Rule 2002 service list which may be made by e-mail, where available.

Section 7.8 in pertinent part reads as follows:

<u>Trust Expenses and Professional Fees</u>. Subject to the Settlement Agreement, the Liquidating Trust Budget and the Plan, the Trustee may retain and compensate professionals (including himself/herself) as provided for in Section 3.8 of this Agreement.

24. Section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.] 11 U.S.C. <u>Section</u> 105(a). Moreover, this Court retained jurisdiction pursuant to the Hollister Trust and Confirmation Order. This Court has the power to enter the relief requested pursuant to <u>Section</u> 105, the Trust, and the Plan.

25. The LT does not believe court approval is necessary to take these actions as said authority is granted to the LT pursuant to Sections 3.12 and 3.13 as well as pursuant to his business judgment under the Hollister Trust. However, while not necessarily required, the LT believes it prudent to obtain the court's approval under these circumstances and the court may issue the Order pursuant to Section 105(a) of the Code. Therefore, the LT has filed the within Motion on notice for the entry of the Proposed Order.

26. The LT has authority in his business judgment to pay the Key Employee Retention payments as if it was part of the Settlement in and under the Plan pursuant to Section 3.12 of the Hollister Trust. Likewise, the LT has authority to pay the professionals pursuant to Sections 3.8, 7.8, 3.12 and 3.13 of the Hollister Trust.

27. While post confirmation compensation to the Trust professionals is governed by the Hollister Trust, to be guided on allowance of fee enhancements, the court can look to Section 330 and relevant case law regarding fee enhancement orders entered in Chapter 11 analogous scenarios for guidance and authority. In that vein, courts have held that a fee enhancement (i.e. an upward adjustment of the lodestar or standard fee) is appropriate where services produce rare and exceptional results or benefits for a debtor's estate. In re Meronk, 249 B.R. 208 (BAP 9th Cir. 2000), *affd* 24 Fed. Appx. 737 (9th Cir. 2001). *See* In re Arnold & Baker Farms, 2005 WL 1213818 (Bankr. D. Ariz. 2005) (Debtor's attorneys granted 50% fee enhancement as a result of their involvement in a sale of assets that paid all creditors in full and produced a significant remainder for the debtor). Here, the LT seeks a fee enhancement because of, among other reasons, the unusual and almost unprecedented and significant recovery on behalf of the Hollister Trust. Under the particular circumstances of this case and applicable law, the LT submits that the request to pay a fee enhancement is reasonable and proper. In appropriate cases, "reasonable compensation" under Section 330 of the Bankruptcy Code may include a fee enhancement over and above the fee calculated using the lodestar calculation. *See* In re Mirant Corp. 354 B.R. 113, 142-43 (Bankr. N.D. Tex. 2006) (holding that "enhancement of fees are permissible in suitable cases"); 3 Collier on Bankruptcy, 1f 328.03[4] (15th ed. rev. 2005) (stating that "[p]remiums are authorized under Section 330" and therefore, "[a] professional may apply for an upward adjustment of a fee previously agreed to and approved by the court").[1]

---

[1] Other cases in which the debtor(s) in possession's or trustee's lead bankruptcy counsel received a fee enhancement include: In re Nucentrix Broadband Networks, Inc., 314 B.R. 574 (Bankr. N.D. Tex. 2004) (fee enhancement of 10% of lodestar amount approved for debtor's counsel where counsel was able to navigate debtors through a sale and plan process that resulted in full recovery to creditors and substantial recovery to equity holders); In re Hillsborough Holdings Corp., 191 B.R. 937, 940 (Bankr. M.D. Fla. 1995) (fee enhancements awarded to debtor's counsel, bondholder committee's counsel, and counsel to major creditor constituencies for "yeoman effort" in formulating consensual plan and accommodating asbestos claimants); In re Blue Coal Corp., 206 B.R. 721 (Bankr. M.D. Pa. 1997) (granting a bonus to counsel for trustee because counsel's efforts resulted in full payment of secured and priority claims and 60% payment to non-priority unsecured claims); In re Atlas, 202 B.R. 1019 (Bankr. S.D. Fla. 1996) ($4,500 fee enhancement awarded to debtor's counsel due to exceptional results and superior representation in case involving sale at higher than expected price of debtor's stock); In re Farah, 141 B.R. 920 (Bankr. W.D. Tex. 1992) (fee enhancement of two times lodestar approved for counsel where initial recovery projections for general unsecured

28. In considering a fee enhancement, courts generally consider the results obtained as a result of the professional's work, the extent to which those results exceed the expectations of the parties, the efficiency with which the work was performed, the quality of the services rendered and the relative amount of fees received by the professional under the lodestar calculation. See Mirant 354 B.R. at 142-43 (fee enhancements are appropriate where there has been an "excellent result" and "exceptional efficiency"); See also In re Morris Plan Co. of Iowa, 100 B.R. 451 (Bankr. N.D. Iowa 1989) (fee enhancement of 10% awarded); In re The White Motor Credit Corp., 50 B.R. 885 (Bankr. N.D. Ohio) (fee enhancement of 12%); In re Penn Dixie Industries, Inc., 18 B.R. 834 (Bankr. S.D.N.Y. 1982) (fee enhancement awarded); In the Matter of Aminex Corp., 15 B.R. 356 (Bankr. S.D.N.Y. 1981) (awarding counsel premiums for "extraordinary efforts and remarkable results" achieved by counsel).

29. Application of these factors on behalf of the Hollister Trust demonstrates that the request to pay a fee enhancement to the LT and his professionals are reasonable and just.

30. All services on behalf of the Hollister Trust were necessary and beneficial to the Hollister Trust as the services were necessary to proceed to assist in the administering of the Hollister Trust and Plan and exceptional results were achieved.

31. After distributions under the Plan Settlement and payment, the LT estimates that the Hollister Trust will have remaining approximately $750,000. The amount of Administrative and Priority claims total in excess of approximately $11,700,000bon made up of approximately 34 claims. The Priority and Administrative claims were never reconciled nor objected to inasmuch as in the LT's business judgment, the fees and costs to do same exceeded any benefits given the limited

---

creditors were 5% or less, and ultimately all claims were paid in full and debtor emerged from chapter 11 with substantial net worth); In re Summit Comm. of Fla., Inc., 84 B.R. 863 (Bankr. S.D. Fla. 1988) (fee enhancement approved for general counsel of debtor, acting as debtor's counsel, who brought extra $5 million into estate for distribution to creditors and negotiated consensual resolution of contested adversary proceeding); In re Baldwin-United Corp., 79 B.R. 321 (Bankr. S.D. Ohio 1987) (fee enhancement approved for debtor's counsel where, among other things, counsel was largely responsible providing a substantially greater recovery for creditors than the recovery expected at the outset of the cases).

Budget and funding in the Hollister Trust at inception. In addition, the LT did not ever contemplate that recovery to the Hollister Trust for distributions would reach Administrative or Priority Creditors. From the onset of the Hollister Trust, the LT never imagined collecting enough monies to pay even the Settlement in full under the Plan. At this time, the LT is unable to reconcile the Administrative and Priority claims as the LT does not have the records. Some of Administrative Creditors may also have been paid on the completed projects by the Surety which would result in payment of duplicative payment of claims. As such, further investigation, inquiry and fees and costs would be required before payment.

32. Any distribution of net Surplus Funds to Administrative Claims and Priority Claims would likely be *de minimis* and the costs of making such distributions would likely make such distributions impracticable. Specifically, even ignoring the costs associated with issuing additional distributions, based on the quantum of approximately 34 Administrative and Priority claims (approximately $11,700,000.00 million), the Surplus Funds would likely only result in less than a one percent (1%) distribution. However, the costs associated with issuing any such distributions would likely have a materially dilutive effect due to: (i) the professional fees needed to further review, calculate and issue such distributions (including certain *de minimis* claims that may now exceed the $50 threshold needed to qualify for a Minimum Distribution), validate claims that may qualify for a new distribution, and prepare an updated final account; (ii) the expense associated with preparing additional tax returns based on such distributions; (iii) the costs of continuing to maintain the Hollister Construction Liquidating Trust (including documenting distributions, tracking claims, and other associated costs and expenses); and (iv) the costs of maintaining bank accounts (including reconciling accounts) and other administrative expenses. For these reasons, the LT respectfully submits that it is most practical, cost-effective and beneficial to distribute the Surplus Funds as requested herein.

33. For the foregoing reasons, the LT submits that this Court should approve and enter the within form of Order authorizing and approving the LT to (1) pay the Key Employee Retention payments as a Chapter 11 Administrative Claim as if it was part of the Settlement in and under the Plan and (2) allow for fee enhancements to the LT and the Liquidating Trust professionals if available.

## WAIVER OF MEMORANDUM OF LAW

34. The LT respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the LT relies is set forth herein and the Motion does not raise any novel issues of law.

LAW OFFICES OF MITCHELL J. MALZBERG, LLC

Dated: December 22, 2025

*/s/ Mitchell Malzberg*
MITCHELL MALZBERG, ESQ.
Counsel to the Liquidating Trustee